1 | **LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
2 | dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
3 | msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
4 | Woodland Hills, CA 91367
Phone: (818) 347-3333
5 | Fax:    (818) 347-4118

6 | **GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
7 | tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
8 | Riverside, CA 92506
Phone: (951) 682-9311

9 | *Attorneys for Plaintiff*

10

11

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

14

15 | GEORGE GONZALEZ,

16 |                 Plaintiff,

17 |         vs.

18 | STATE OF CALIFORNIA; CITY OF
19 | HEMET; PATRICK SOBASZEK;
ANDREW REYNOSO; SEAN IRICK;
20 | and DOES 1-10, inclusive,

21 |                 Defendants.

22

23

24

25

26

27

28

---

Case No.: 5:25-cv-00331-KK-DTB

[*Honorable Kenly Kiya Kato*]
Magistrate Judge David T. Bristow

**PLAINTIFF'S ~~FIRST~~ SECOND AMENDED COMPLAINT FOR DAMAGES**

1. Fourth Amendment—Excessive Force (42 U.S.C. §1983)
2. Municipal Liability—Ratification (42 U.S.C. §1983)
3. Municipal Liability—Inadequate Training (42 U.S.C. §1983)
4. Municipal Liability—Unconstitutional Custom, Practice, or Policy (42 U.S.C. §1983)
5. Battery
6. Negligence
7. Violation of Cal. Civil Code §52.1

**DEMAND FOR JURY TRIAL**

---

## **COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff GEORGE GONZALEZ, for his Complaint against Defendants STATE OF CALIFORNIA, by and through the California Highway Patrol ("CHP"); CHP Officer SEAN IRICK; and CITY OF HEMET; and Hemet Police Department Officers PATRICK SOBASZEK and ANDREW REYNOSO; and DOES 1-10, inclusive, and allege as follows:

## **JURISDICTION AND VENUE**

1.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States, including 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

2.    This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred within this district.

4.    On or around July 8, 2024, Plaintiff served his comprehensive and timely claim for damages with the CITY OF HEMET and the STATE OF CALIFORNIA pursuant to applicable sections of the California Government Code. On July 15, 2024, the CITY OF HEMET rejected Plaintiff's claim. On August 15, 2024, the STATE OF CALIFORNIA rejected Plaintiff's claim.

## **INTRODUCTION**

5.    This civil rights and state tort action arises out of the January 24, 2024, use of excessive and unreasonable force, including deadly force, on

Plaintiff GEORGE GONZALEZ by Defendant Officer PATRICK SOBASZEK and Defendant Sergeant ANDREW REYNOSO, both CITY OF HEMET Police Officers, as well as Defendant Officer SEAN IRICK, a STATE OF CALIFORNIA Highway Patrol Officer. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and costs from Defendants for violating various rights guaranteed to Plaintiff by the Bill of Rights, the United States Constitution, the California Constitution, and the laws of the State of California.

6.     Defendants PATRICK SOBASZEK, ANDREW REYNOSO, SEAN IRICK, and DOES 1-10, inclusive, caused various injuries by directly shooting Plaintiff who was not an immediate threat of death or serious bodily injury as described herein, and/or by integrally participating or failing to intervene in the use of excessive and unreasonable force used against Plaintiff.

7.     This action is in the public interest as Plaintiff seeks by means of this action to hold accountable those responsible for the shooting, and serious bodily injury inflicted by Defendants.

### **PARTIES**

8.     At all relevant times, Plaintiff GEORGE GONZALEZ ("GONZALEZ") is and was an individual residing in the County of Riverside, California.

9.     At all relevant times, Defendant CITY OF HEMET ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Hemet Police Department ("HPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the HPD and its employees and

agents complied with the laws of the United States and of the State of California. At all relevant times, CITY was the employer of Defendant Officer PATRICK SOBASZEK, Defendant Sergeant ANDREW REYNOSO, and DOES 1-7, inclusive. As set forth below, Plaintiff GONZALEZ alleges that Defendant CITY is directly liable for compensatory damages under federal law pursuant to *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) and its progeny. Plaintiff GONZALEZ further alleges that Defendant CITY is vicariously liable for compensatory damages under Plaintiff's state law claims, given Plaintiff's allegations that the officers who committed the acts and omissions complained of herein were acting in the course and scope of their employment at the time that the acts and omissions occurred. Plaintiff makes no claim for punitive damages against the Defendant CITY.

10.    At all relevant times, Defendant PATRICK SOBASZEK ("SOBAZCEK") was a duly appointed CITY Officer and/or employee or agent of CITY, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant SOBASZEK acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the HPD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant SOBASZEK acted within the course and scope of his employment as a CITY police officer. On information and belief, Defendant SOBASZEK is and was at all relevant times a resident of this judicial district. Defendant SOBASZEK used excessive and unreasonable deadly force against Plaintiff SOLIS.

11.    At all relevant times, Defendant ANDREW REYNOSO ("REYNOSO") was a duly appointed CITY Sergeant and/or employee or agent of CITY, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant REYNOSO acted under color

of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the HPD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant REYNOSO acted within the course and scope of his employment as a CITY police officer. On information and belief, Defendant REYNOSO is and was at all relevant times a resident of this judicial district. Defendant REYNOSO used excessive and unreasonable deadly force against Plaintiff GONZALEZ.

12.    At all relevant times, Defendants DOES 1-4 ("HPD DOE OFFICERS") were Officers for the HPD, including but not limited to patrol officers, crisis negotiations officers, corporals, sergeants, field training officers, dispatchers, and other officers and agents of HPD. HPD DOE OFFICERS were acting under color of law within the course and scope of their duties as officers for the HPD. HPD DOE OFFICERS were acting with complete authority and ratification of their principal, Defendant CITY.

13.    Defendants DOES 5-7 ("DOE SUPERVISORS") are supervisory officers, officials, agents, and/or employees for the HPD who were acting under color of law within the course and scope of their duties as officials for the HPD. DOE SUPERVISORS were acting with complete authority and ratification of their principal, Defendant CITY. Defendants DOE SUPERVISORS are managerial, supervisorial, and policymaking employees of the HPD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the HPD. DOE SUPERVISORS were acting with complete authority and ratification of their principal, Defendant CITY.

14.    At all relevant times, Defendant STATE OF CALIFORNIA ("STATE") has the capacity to be sued. STATE is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the California Highway Patrol ("CHP") and its agents and

employees. At all relevant times, Defendant STATE was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the CHP and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, STATE was the employer of Defendant California Highway Patrol Officer SEAN IRICK and Defendant DOES 8-10, inclusive. Defendant STATE and CHP are not being sued individually or directly by this action but are parties to this action under the theory of *respondeat superior* as Defendant STATE is vicariously liable for the actions of its CHP officers.

15. At all relevant times, Defendant SEAN IRICK ("IRICK") was a duly appointed STATE CHP Officer and/or employee or agent of CHP, subject to the oversight and supervision of STATE'S elected and non-elected officials. At all relevant times, Defendant IRICK acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant STATE, the CHP, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant IRICK acted within the course and scope of his employment as a CHP officer. On information and belief, Defendant IRICK is and was at all relevant times a resident of this judicial district. Defendant IRICK used excessive and unreasonable deadly force against Plaintiff GONZALEZ.

16. At all relevant times, Defendant DOES 8-10 ("CHP DOE OFFICERS") were and are duly appointed CHP officers and/or employees or agents of Defendant STATE, including but not limited to patrol officers, crisis negotiations officers, corporals, sergeants, and field training officers, subject to the oversight and supervision of STATE'S elected and non-elected officials. At all relevant times, CHP DOE OFFICERS acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant STATE, the CHP, and under the color of the statutes and

regulations of the State of California. At all relevant times, CHP DOE OFFICERS acted within the course and scope of his employment as a STATE officer. On information and belief, CHP DOE OFFICERS are and were at all relevant times residents of this judicial district. Defendant CHP DOE OFFICERS used excessive and unreasonable deadly force against Plaintiff GONZALEZ. This action is being brought against Defendant CHP DOE OFFICERS in their individual capacity only.

17.    The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

18.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

19.    All the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Also, Defendants and their agents ratified all the acts complained herein.

20.    All Defendants who are natural persons, including Defendants SOBAZSEK, REYNOSO, IRICK, and DOES 1-10, inclusive, are sued in their individual capacity, and punitive damages are only being requested as to these Defendants only, and not Defendants CITY or STATE.

21.   Pursuant to Cal. Govt. Code §815.2(a), Defendants CITY and STATE are vicariously liable for the nonfeasance and malfeasance of the individual Defendants, including Defendants SOBAZSEK, REYNOSO, IRICK, and DOES 1-10, inclusive, as alleged by Plaintiff's state law claims. ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). The individual Defendants, including Defendants SOBAZSEK, REYNOSO, IRICK, and DOES 1-10, inclusive, are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code §820(a). Defendant CITY and STATE are also liable pursuant to Cal. Govt. Code §815.6.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

22.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 21 of this Complaint with the same force and effect as if fully set forth herein.

23.   On January 24, 2024, at approximately 8:30 p.m., at or around the 500 block of B St., in the City of Beaumont, County of Riverside, California, Defendants SOBAZSEK, REYNOSO, and IRICK each individually used excessive and unreasonable force, including deadly force, against Plaintiff GONZALEZ and employed negligent tactics, including their individual and collective pre-shooting conduct and tactics and when each of them shot Plaintiff multiple times including in the back and while he was on the ground.

24.   On information and belief, Defendants SOBAZSEK, REYNOSO, IRICK, and DOES 1-10 were not responding to a serious or violent crime, the Defendants did not have any information that Plaintiff GONZALEZ had just committed or was about to commit a serious or violent crime and had no

1  information that Plaintiff GONZALEZ had just harmed or was threatening to

2  harm any person or law enforcement officer.

3      25.    Defendants SOBAZSEK, REYNOSO, and IRICK were pursuing

4  Plaintiff GONZALEZ on foot through an industrial area without any information

5  that any third parties were in the area. At all relevant times, Plaintiff

6  GONZALEZ's back was to Defendants SOBAZSEK, REYNOSO, and IRICK.

7      26.    Upon information and belief, the Defendant Officers, and each of

8  them, had time to assess the situation, plan, contain Plaintiff, and safely take

9  him into custody. Instead, the Defendant Officers failed to utilize the time they

10  had, failed to adequately formulate and implement a plan, and failed to de-

11  escalate the situation leading to their use of excessive and unreasonable force.

12      27.    Plaintiff GONZALEZ was shot multiple times from behind by

13  Defendants SOBAZSEK, REYNOSO, and IRICK. On information and belief,

14  Defendant REYNOSO fired approximately six shots at Plaintiff GONZALEZ,

15  Defendant IRICK fired approximately 5 shots at Plaintiff GONZALEZ, and

16  Defendant SOBAZSEK fired approximately 10 shots at Plaintiff GONZALEZ.

17  On information and belief, Defendants SOBAZSEK, REYNOSO, and IRICK

18  collectively fired more than 20 times at Plaintiff GONZALEZ, each officer

19  striking him several times. Many of the shots were filed almost simultaneously

20  and/or as a result of contagious fire.

21      28.    Prior to being shot, Plaintiff was slowing down to a stop. As he was

22  shot, Plaintiff GONZALEZ fell to his knees, then collapsed to the floor in a

23  prone position, face down.

24      29.    After Plaintiff GONZALEZ collapsed to the floor, Defendants

25  SOBAZSEK, REYNOSO, and IRICK continued shooting him.

26      30.    Upon information and belief, at all relevant times, Plaintiff

27  GONZALEZ was not harming any person, was not about to harm any person,

28  had not harmed any person, and had not threatened to harm any person, including

the Defendant Officers. Further, Plaintiff was not running toward any person, and no person's life was threatened by Plaintiff. Plaintiff did not make a threatening or furtive movement with or towards any weapon, pocket, or waistband immediately prior to or while he was being shot by the Defendant Officers. Thus, Plaintiff was not an immediate threat of death or serious bodily injury to any person or officer at the time of the uses of excessive and unreasonable force.

31.    The use of deadly force against Plaintiff GONZALEZ by Defendants SOBAZSEK, REYNOSO, and IRICK was excessive and unreasonable because immediately prior to and at the time of the use of deadly force: Plaintiff GONZALEZ was not an immediate threat of death or serious bodily injury to any person; Plaintiff GONZALEZ was not given a verbal warning that deadly force was going to be used, despite it being feasible to do so; and Defendants SOBAZSEK, REYNOSO, and IRICK had reasonable, less-intrusive alternatives to the use of deadly force at the time available to them, yet failed to use those alternatives, and failed to exhaust those alternatives.

32.    Defendants unreasonably escalated the situation when they began using deadly force against Plaintiff GONZALEZ, causing him great fear, pain, and harm.

33.    Throughout the incident, the Defendants displayed negligent tactics, prior to, during, and after their uses of deadly force, including, but not limited to their: poor positioning, poor planning, lack of communication with each other and deficient communication with Plaintiff, unreasonable use of force, escalating the situation, and failing to de-escalate the situation.

34.    Further, Defendants' actions and inactions were unreasonable and in violation of basic officer training.

35.    Each Defendant performed an affirmative act, participated in another Defendant's affirmative act, and/or omitted to perform an act which that

Defendant is legally required to do. Each Defendant either directly and personally participated in the deprivation of Plaintiff GONZALEZ's rights or set in motion a series of acts by others which that Defendant knew or reasonably should have known would cause others to inflict a constitutional injury on Plaintiff GONZALEZ. Each Defendant was an integral participant in their own use of excessive force upon Plaintiff GONZALEZ and in each of their fellow Defendants' use of force against Plaintiff GONZALEZ.

36. As a direct and proximate result of the individual Defendants' actions, omissions, misjudgments, including their use of excessive and unreasonable force, Plaintiff GONZALEZ was caused to suffer great physical and mental pain and suffering, harm, injury, damages, loss of enjoyment of life, and permanent injury.

## DAMAGES

37. After being shot from behind, Plaintiff GONZALEZ violently collapsed face-first to the ground; repeatedly complained that he was in pain; and begged the HPD and CHP Officers to not let him die. Plaintiff GONZALEZ was handcuffed while Officers maneuvered his body, looking for the locations GONZALEZ had been struck.

38. Paramedics arrived and transported Plaintiff GONZALEZ to Riverside University Health System Medical Center. Plaintiff GONZALEZ was treated for multiple gunshot wounds. Plaintiff GONZALEZ underwent emergency surgery.

39. As a direct and proximate result of the intentional conduct, negligent conduct, reckless disregard, deliberate indifference and otherwise wrongful conduct of Defendants, Plaintiff GONZALEZ suffered and continues to suffer economic and non-economic damages including for the nature and extent of his injuries, his past and future disability, physical impairment, disfigurement, loss of enjoyment of life, mental, physical, emotional pain and suffering,

1  inconvenience, grief, anxiety, humiliation and emotional distress, need for

2  assistance, and loss of ability to provide household services.

3      40.  The conduct of the individual Defendant Officers was malicious,

4  wanton, oppressive, and accomplished with a conscious disregard for the rights

5  of Plaintiff GONZALEZ in that Plaintiff GONZALEZ'S constitutional rights

6  were intentionally deprived and violated, and/or there was reckless disregard for

7  the constitutional rights of Plaintiff GONZALEZ. As such, their conduct as

8  alleged herein entitles Plaintiff GONZALEZ an award of exemplary and

9  punitive damages from the individual Defendants. Plaintiff GONZALEZ brings

10  no action for punitive damages against Defendant CITY or STATE.

11     41.  Pursuant to 42 U.S.C. §1988(b), Plaintiff GONZALEZ is entitled to

12  recover reasonable attorney fees, costs, and interests incurred herein. Pursuant

13  to Cal. Civ. Code §52.1, Plaintiff GONZALEZ is entitled to recover civil

14  penalties, costs, and reasonable attorney fees including treble damages. Pursuant

15  to Cal. Code of Civ. Pro. §1021.5, Plaintiff seeks reasonable attorneys' fees.

16

17                    **FIRST CLAIM FOR RELIEF**

18          **Fourth Amendment —Excessive Force (42 U.S.C. §1983)**

19      (Plaintiff against Defendants SOBAZSEK, REYNOSO, IRICK and DOES 1-10)

20     42.  Plaintiff repeats and re-alleges each and every allegation in

21  paragraphs 1 through 41 of this Complaint with the same force and effect as if

22  fully set forth herein.

23     43.  The Defendants SOBAZSEK, REYNOSO, IRICK and DOES 1-10

24  were acting under the color of state law and within the course and scope of their

25  employment.

26     44.  Defendants SOBAZSEK, REYNOSO, IRICK and DOES 1-10 used

27  excessive force against Plaintiff GONZALEZ when they fired lethal rounds,

28  striking Plaintiff GONZALEZ. Defendants' unjustified shooting and other uses

-11-

of force, deprived Plaintiff GONZALEZ of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff GONZALEZ under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

45.    Plaintiff did not fire a weapon at Defendants or any other person; Plaintiff did not point a weapon at Defendants or any other person; Plaintiff was not reaching for a weapon, pocket, or waistband immediately prior to or during the Defendants' use of deadly force; Plaintiff did not make a threatening or furtive movement with any weapon; Plaintiff was not immediately about to harm anyone, including Defendants immediately prior to or during the Defendants' use of deadly force; Plaintiff did not verbally threaten any person or officer prior to the Defendants' use for deadly force; Plaintiff was not running or lunging toward any officer or person immediately prior to or during Defendants' use of deadly force; Plaintiff did not harm any person and was not about to harm any person prior to and during Defendants' use of deadly force; and Plaintiff was shot in the back while moving slowly away from officers. Thus, Plaintiff was not an immediate threat of death or serious bodily injury to any officer or person at the time of the shots.

46.    Defendants had several reasonable less-intrusive alternatives available to them prior to their use of deadly force, but failed to attempt and/or exhaust those alternatives, including but not limited to: seeking cover; maintaining a safe and tactically advantageous distance from Plaintiff; de-escalating the situation with communication; planning and coordinating movements and responsibilities of officers; containing Plaintiff; and/or utilizing less-lethal force such as a K-9, 40mm launcher, Taser, or OC spray.

47.    Defendants had time and opportunity to provide a deadly force warning prior to their use of force, but failed to do so, despite it being safe, reasonable, and feasible to do so.

48.    The Defendants greatly outnumbered Plaintiff; had superior training and experience to Plaintiff; and were in better physical condition than Plaintiff.

49.    Therefore, Defendants violated Plaintiff GONZALEZ'S Fourth Amendment rights when they used excessive and unreasonable force against Plaintiff GONZALEZ, firing several lethal rounds at him, and striking him several times, when Plaintiff GONZALEZ was not an immediate threat of death or serious bodily injury at the time, there were other reasonable alternatives to the use of deadly force, and no verbal warning was given prior to the shots that deadly force would be used.

50.    As a result of the foregoing, Plaintiff GONZALEZ suffered great physical and mental pain and suffering, loss of enjoyment of life, and permanent injury.

51.    The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff GONZALEZ, and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

52.    As a result of their misconduct, Defendants are liable for Plaintiff GONZALEZ'S injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

53.    Plaintiff GONZALEZ seeks compensatory and punitive damages.

54.    Plaintiff GONZALEZ also seeks reasonable stautory attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(Plaintiff against Defendants CITY and DOE SUPERVISORS)

55.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 54 of this Complaint with the same force and effect as if fully set forth herein.

56.    The Defendants SOBAZSEK, REYNOSO, HPD DOE OFFICERS, and SUPERVISORS were acting under the color of state law and within the course and scope of their employment with Defendant CITY.

57.    The acts of Defendants deprived Plaintiff GONZALEZ of his particular rights under the United States Constitution as alleged herein.

58.    Upon information and belief, a final policymaker, including DOE SUPERVISORS, ratified Defendants acts and the bases for their actions. Upon information and belief, the final policymaker knew of and specifically approved of Defendants' conduct and the bases for them, including their actions and inactions, pre-shooting tactics, and use of deadly force.

59.    Upon information and belief, the written policies and basic officer training with respect to the incident include that law enforcement officers are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the officers or others. The Defendants' actions deviated from these written policies and basic law enforcement training because Plaintiff GONZALEZ did not pose an immediate threat of death or serious bodily injury to the involved law enforcement officers or anyone else.

60.    Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendants were "within policy," and have ratified multiple prior incidents of the use of excessive force, including excessive less-lethal force and deadly force.

61.  Upon information and belief, Defendant CITY approved of Defendants SOBAZSEK, REYNOSO, and HPD DOE OFFICERS' actions and inactions, after which Defendant CITY officials, including DOE SUPERVISORS, found the Defendants' conduct was within the official policies of Defendants CITY and/or consistent with CITY officers' basic training. On information and belief, the basis for such approval was based on the Defendants' self-serving statements, despite evidence that Plaintiff GONZALEZ was not an immediate threat of death or serious bodily injury to anyone at the time the excessive force was used, reasonable alternatives were available, and no warning was given.

62.  Upon information and belief, after this incident, Defendants SOBAZSEK, REYNOSO, and HPD DOE OFFICERS were not disciplined, reprimanded, retrained, provided additional training, suspended, or otherwise penalized in connection with their conduct in this incident.

63.  Upon information and belief, the following are only a few examples of cases where the HPD officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the Defendant CITY routinely ratifies such behavior:

a.  In *Drye v. City of Hemet*, Case No. 5:23-cv-02152 JGB (KKx), on February 21, 2023, HPD officer(s) shot and killed a father of five young children, on his own property, while he was not committing a crime, was not suspected of committing a crime, and was not an immediate threat of death or serious bodily injury; while officers failed to give a warning and had less intrusive alternatives. The case resolved with a seven-figure settlement.

b.  In *Acosta. v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with an unarmed man who was shot

in the back by CITY officers. In May of 2018, HPD officers encountered the plaintiff in a truck near a business at which an alarm was going off. The officers saw the plaintiff begin slowly driving away, at which point one officer fired ten rounds at the plaintiff's truck. Another officer then intentionally crashed his vehicle into the plaintiff's truck, causing it to strike a pole. When the plaintiff exited the truck unarmed and began to run with his hands raised, a third officer shot him multiple times, including in the back, without warning. The case was resolved following a seven-figure settlement.

c.     In *Erickson v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with a man who was attacked by a K-9 causing serious and permanent great bodily injury.

d.     In *Edmond v. City of Hemet*, in October of 2021, HPD officers encountered the plaintiff in a store parking lot, where he was allegedly panhandling, and asked him to leave, which the plaintiff did. After the plaintiff and the officers returned, the plaintiff began to again comply with the officers' commands, and the officers grabbed him, punched him in the face, forced him to the ground, and restrained him. The case resolved following a six-figure settlement before litigation.

e.     In *Hereford v. City of Hemet*, No. 5:22-cv-00394-JWH-SHK, in March of 2021, HPD officers stopped one of the plaintiffs while he was in his parked car in front of his fiancée's home and arrested him for driving with an allegedly suspended license. The officers then began searching for his car, which his fiancée and her daughter began to film. The officers responded by threatening his fiancée and her daughter with arrest, knocking the daughter's phone out of her hand, striking the fiancée, and causing her a variety of injuries in her head, neck, shoulder, and back.

1    According to information and belief, this case is currently in litigation in
2    federal district court.

3          f.      In *Mendoza v. City of Hemet*, No. 5:21-cv-01134-JGB-SHK,
4    in May of 2020, the plaintiff — a small woman in shorts and a t-shirt —
5    was stopped while driving by HPD officers. Seven officers drew their
6    weapons and shouted commands, and the plaintiff complied with their
7    orders to exit her vehicle and turn around. As she did so, she was knocked
8    to the ground.

9          g.      In *Lagafoged v. City of Hemet*, No. 5:19-cv-00903-SVW-
10   SHK, in August of 2018, HPD officers encountered the plaintiff behaving
11   erratically while standing on a balcony and swinging a stick in the air. The
12   officers responded by releasing a K-9 dog to bite the plaintiff before tasing
13   him multiple times and hogtieing him, resulting in his death. The case
14   resolved following a six-figure settlement.

15         h.      In *Martin v. City of Hemet*, No. 5:18-cv-02377-JGB-KK, on
16   October of 2017, the plaintiff was stopped by officers in a parking lot
17   while his wife was in her car nearby. When the plaintiff began to walk
18   away from the officers and his wife, the officers commanded him to drop
19   a small pocketknife he was holding, and the plaintiff put his hands above
20   his head. With the plaintiff's hands raised and visible, two HPD officers
21   fired seven to ten shots at him, killing him. The case resolved following a
22   six-figure settlement.

23         64.     Upon information and belief, Defendant CITY, through its officials,
24   had either actual or constructive knowledge of the deficient policies, practices
25   and customs alleged herein. Despite having knowledge as stated herein, these
26   Defendant CITY officials condoned, tolerated and through actions and inactions
27   thereby ratified such deficient policies. In doing so, said Defendant CITY
28   officials acted with deliberate indifference to the foreseeable effects and

consequences of these deficient policies, including their policy of ratification, with respect to the constitutional rights of Plaintiff GONZALEZ and other individuals similarly situated.

65.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant CITY officials acted with intentional, reckless, and callous disregard for the life and rights of Plaintiff GONZALEZ. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and their officials were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff GONZALEZ.

66.    Accordingly, Defendant CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

67.    The conduct of the Defendant DOE SUPERVISORS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff GONZALEZ, and therefore warrants the imposition of exemplary and punitive damages as to the Defendant SUPERVISORS.

68.    Plaintiff GONZALEZ seeks compensatory and punitive damages.

69.    Plaintiff GONZALEZ also seeks reasonable stautory attorneys' fees and costs.


**THIRD CLAIM FOR RELIEF**

**Municipal Liability – Failure to Train (42 U.S.C. §1983)**

(Plaintiff against Defendants CITY and DOE SUPERVISORS)

70.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 69 of this Complaint with the same force and effect as if fully set forth herein.

71.    The Defendants SOBAZSEK, REYNOSO, HPD DOE OFFICERS, and DOE SUPERVISORS were acting under the color of state law and within the course and scope of their employment with Defendants CITY.

72.    The acts of Defendants deprived Plaintiff GONZALEZ of his particular rights under the United States Constitution as alleged herein.

73.    The training policies of Defendants CITY were not adequate to train their officers to handle the usual and recurring situations with which they must deal. This includes training with respect to tactics, the use of force, including deadly force, de-escalation techniques, controlling officer emotions and fears, inappropriate "shoot/don't shoot" scenarios in training that promote the use of unreasonable force, and continually assessing a situation to justify every shot fired. In addition to failing to train officers to safely handle obvious, recurring situations, Defendant CITY affirmatively chose a policy it knew was likely to lead to, and in fact had previously led to, deprivations of constitutional rights including unreasonable seizures in violation of the Fourth Amendment.

74.    Defendants CITY and DOE SUPERVISORS were deliberately indifferent to the obvious consequences of its failure to train its officers adequately, including training with respect to tactics, the use of force, including deadly force, and de-escalation techniques.

75.    The failure of Defendants CITY to provide adequate training caused the deprivation of Plaintiff GONZALEZ'S rights by Defendants; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiff GONZALEZ'S rights as to be the moving force that caused the ultimate injury.

76.    On information and belief, Defendants CITY failed to train Defendants properly and adequately, including regarding the following:

  a. Not providing adequate time and resources for officers to train when the training does exist so that the officers can rely on that training during incidents.

b.  Not enforcing the basic training standards, when they do exist, that are designed to prevent officers from using excessive and unreasonable force.

c.  Not adequately providing recurring training so that officers do not lose necessary perishable skills, and not re-training officers who have used force in the field.

d.  Effective communication to enable officers to gain cooperation and voluntary compliance in stressful situations.

e.  Effective communication as a basic element of the use of force; the goal of which to gain voluntary compliance without resorting to physical force, especially deadly force.

f.  That the use of deadly force is the most serious decision a peace officer may ever have to make, and such a decision should be guided by the reverence for human life and used only when other means of control are unreasonable or have been exhausted.

g.  Reverence for life as the foundation on which the use of deadly force rests. Deadly force is always the last resort to be used in the direst of circumstances. The authority to use deadly force is an awesome responsibility given to peace officers by the people who expect them to exercise that authority judiciously. In the law enforcement/community partnership, the expectation that peace officers are self-disciplined and accountable.

h.  Self-control as one of a peace officer's greatest assets in dealing with a person or a situation.

i.  Unreasonable fear includes overreactions to true potential threats as well as reactions to unreal threats based on prejudice or poor application of experience.

j.  Unreasonable fear can be responsible for inappropriate responses

such as a failure to respond or responding inappropriately (using unreasonable force).

k.  Unreasonable force occurs when the type, degree, and duration of force employed was neither necessary nor appropriate.

l.  The community expects that its peace officers will use only reasonable amounts of force and only use deadly force when absolutely necessary. Likewise, it expects that someone, including peace officers, will intervene if reasonable force is exceeded.

m. Use of other techniques to the use of deadly force including but are not limited to de-escalation, communication, conflict resolution, defensive tactics, less-lethal force, and use of time and distance.

n.  That a officers' subjective fear of future harm alone is insufficient as an imminent threat. An imminent threat is one that requires instant attention.

o.  Training with respect to tactics.

p.  Training with respect assessing when it is appropriate to use of force, including deadly force, and training on how much force is appropriate even when some force is appropriate.

77.    Upon information and belief, the following are only a few examples of cases where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the County of Riverside failed to adequately train its officers with regard to the use of force:

a.    In *Drye v. City of Hemet*, Case No. 5:23-cv-02152 JGB (KKx), on February 21, 2023, HPD officer(s) shot and killed a father of five young children, on his own property, while he was not committing a crime, was not suspected of committing a crime, and was not an immediate threat of death or serious bodily injury; while officers failed to give a warning and

had less intrusive alternatives. The case resolved with a seven-figure settlement.

b.    In *Acosta. v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with an unarmed man who was shot in the back by CITY officers. In May of 2018, HPD officers encountered the plaintiff in a truck near a business at which an alarm was going off. The officers saw the plaintiff begin slowly driving away, at which point one officer fired ten rounds at the plaintiff's truck. Another officer then intentionally crashed his vehicle into the plaintiff's truck, causing it to strike a pole. When the plaintiff exited the truck unarmed and began to run with his hands raised, a third officer shot him multiple times, including in the back, without warning. The case was resolved following a seven-figure settlement.

c.    In *Erickson v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with a man who was attacked by a K-9 causing serious and permanent great bodily injury.

d.    In *Edmond v. City of Hemet*, in October of 2021, HPD officers encountered the plaintiff in a store parking lot, where he was allegedly panhandling, and asked him to leave, which the plaintiff did. After the plaintiff and the officers returned, the plaintiff began to again comply with the officers' commands, and the officers grabbed him, punched him in the face, forced him to the ground, and restrained him. The case resolved following a six-figure settlement before litigation.

e.    In *Hereford v. City of Hemet*, No. 5:22-cv-00394-JWH-SHK, in March of 2021, HPD officers stopped one of the plaintiffs while he was in his parked car in front of his fiancée's home and arrested him for driving with an allegedly suspended license. The officers then began searching for his car, which his fiancée and her daughter began to film. The officers

responded by threatening his fiancée and her daughter with arrest, knocking the daughter's phone out of her hand, striking the fiancée, and causing her a variety of injuries in her head, neck, shoulder, and back. According to information and belief, this case is currently in litigation in federal district court.

f.      In *Mendoza v. City of Hemet*, No. 5:21-cv-01134-JGB-SHK, in May of 2020, the plaintiff — a small woman in shorts and a t-shirt — was stopped while driving by HPD officers. Seven officers drew their weapons and shouted commands, and the plaintiff complied with their orders to exit her vehicle and turn around. As she did so, she was knocked to the ground.

g.      In *Lagafoged v. City of Hemet*, No. 5:19-cv-00903-SVW-SHK, in August of 2018, HPD officers encountered the plaintiff behaving erratically while standing on a balcony and swinging a stick in the air. The officers responded by releasing a K-9 dog to bite the plaintiff before tasing him multiple times and hogtieing him, resulting in his death. The case resolved following a six-figure settlement.

h.      In *Martin v. City of Hemet*, No. 5:18-cv-02377-JGB-KK, on October of 2017, the plaintiff was stopped by officers in a parking lot while his wife was in her car nearby. When the plaintiff began to walk away from the officers and his wife, the officers commanded him to drop a small pocketknife he was holding, and the plaintiff put his hands above his head. With the plaintiff's hands raised and visible, two HPD officers fired seven to ten shots at him, killing him. The case resolved following a six-figure settlement.

78.    By reason of the aforementioned acts and omissions, Plaintiff GONZALEZ has suffered past and future pain and suffering, loss of enjoyment of life, and permanent injury.

79.     Upon information and belief, Defendant CITY, through its officials, had either actual or constructive knowledge of the deficient training policies, practices and customs alleged herein. Despite having knowledge as stated herein, these Defendant CITY officials condoned, tolerated and through actions and inactions thereby ratified such deficient training. In doing so, Defendant CITY officials acted with deliberate indifference to the foreseeable effects and consequences of such deficient training with respect to the constitutional rights of Plaintiff GONZALEZ and other individuals similarly situated.

80.     Through its deficient training, Defendant CITY officials acted with intentional, reckless, and callous disregard for the life and rights of Plaintiff GONZALEZ. Furthermore, the deficient training tolerated by Defendants CITY and its officials were affirmatively linked to and was a significantly influential force behind the injuries of Plaintiff GONZALEZ.

81.     Accordingly, Defendant CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

82.     The conduct of the Defendant DOE SUPERVISORS in condoning, maintaining, and providing deficient training was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff GONZALEZ, and therefore warrants the imposition of exemplary and punitive damages as to the Defendant SUPERVISORS.

83.     Plaintiff GONZALEZ seeks compensatory and punitive damages.

84.     Plaintiff GONZALEZ also seeks reasonable stautory attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)

(Plaintiff against Defendants CITY and DOE SUPERVISORS)

85.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 84 of this Complaint with the same force and effect as if fully set forth herein.

86.     Defendants SOBAZSEK, REYNOSO, HPD DOE OFFICERS, and DOE SUPERVISORS were acting under the color of state law and within the course and scope of their employment with Defendant CITY and HPD.

87.     Defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

88.     On information and belief, Defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Plaintiff GONZALEZ'S harm.

89.     Upon information and belief, in addition to those policies alleged above, Defendants CITY and DOE SUPERVISORS maintained, inter alia, the following unconstitutional customs, practices, and policies:

      a.  Using excessive force, including excessive deadly force.

      b.  Providing inadequate training regarding the use of deadly force.

      c.  Employing and retaining as employees Defendants SOBAZSEK, REYNOSO, and HPD DOE OFFICERS, who Defendant CITY at all times material herein knew or reasonably should have known used excessive force.

      d.  Inadequately supervising, training, controlling, assigning, and disciplining CITY officers, and other personnel, including Defendants SOBAZSEK, REYNOSO, and HPD DOE OFFICERS, who Defendant CITY knew or in the exercise of reasonable care should have known had the propensities to use excessive force.

e.  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by CITY officials, Defendants SOBAZSEK, REYNOSO, and HPD DOE OFFICERS.

f.  Failing to adequately discipline CITY officers, including Defendants SOBAZSEK, REYNOSO, and HPD DOE OFFICERS, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

g.  Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional.

h.  Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved.

i.  Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which officials do not report other officials' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another official, while following the code, the official being questioned will claim ignorance of the other officials' wrongdoing.

j.  Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of law enforcement shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officials for criminal prosecution who participate in unreasonable shootings.

k.  Upon information and belief, CITY, including but not limited to

HPD, has an unofficial policy, practice and/or custom of finding almost all—if not all—of its officer involved shootings to be within policy, of not disciplining its officers involved in shootings, not retraining or firing officers involved in shootings, and of not recommending criminal charges against their officers involved in excessive and unreasonable officer-involved shootings. As a result, officers involved in excessive uses of deadly force are allowed back to patrol the streets even though CITY knew, or should have known, that these officers have a propensity for using excessive deadly force against the citizens that the officers are supposed to protect and serve, especially against minorities and the mentally ill.

l. Upon information and belief, as a result of CITY policy, custom and/or practices, HPD officers know that if they use deadly excessive force against someone, they will not be disciplined and their use of force will be found within policy, which results in a significant number of CITY officers being involved in numerous shootings. This policy, custom and/or practice was established by supervising and managerial employees of CITY, specifically, those employees tasked with determining whether officer-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for those employees responsible for making recommendations of criminal charges being filed against officers who use excessive deadly force; and

m. Upon information and belief, this policy, custom and/or practice long lasting and persistent, and existed well before Plaintiff GONZALEZ was shot by Defendants SOBAZSEK, REYNOSO, and HPD DOE OFFICERS. This policy, custom and/or practice was

established so that CITY officers do not bear the responsibility for the people that they use excessive deadly force against. This policy, custom and/or practice exists so that the public does not have such a negative perception of CITY and its departments so that CITY can avoid the repercussions associated with its officers' use of excessive deadly force against citizens, including negative publicity, avoiding criminal prosecution, and avoiding civil liability. A significant reason that this policy, custom and/or practice was established was to avoid CITY being liable, under a theory of vicarious liability, for the uses of excessive and unreasonable deadly force by its employees. In other words, there is a large financial incentive for CITY to erroneously determine that most, if not all, of its officers' uses of deadly force are within policy. If CITY, through its policymakers and supervisors, would admit that their officers were at fault for using excessive and unreasonable deadly force, then CITY is aware of how much they would have to pay for any associated litigation.

90.    Defendants CITY and DOE SUPERVISORS, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff GONZALEZ and other individuals similarly situated.

91.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, DOE SUPERVISORS acted with

intentional, reckless, and callous disregard for the life of Plaintiff GONZALEZ and for Plaintiff GONZALEZ'S constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY, STATE, and DOE SUPERVISORS were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff GONZALEZ.

92.    Based on information and belief, the following are only a few examples of cases evidencing Defendant CITY'S unconstitutional policies, where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that CITY routinely ratifies such behavior and maintains a practice of allowing such behavior:

a.    In *Drye v. City of Hemet*, Case No. 5:23-cv-02152 JGB (KKx), on February 21, 2023, HPD officer(s) shot and killed a father of five young children, on his own property, while he was not committing a crime, was not suspected of committing a crime, and was not an immediate threat of death or serious bodily injury; while officers failed to give a warning and had less intrusive alternatives. The case resolved with a seven-figure settlement.

b.    In *Acosta. v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with an unarmed man who was shot in the back by CITY officers. In May of 2018, HPD officers encountered the plaintiff in a truck near a business at which an alarm was going off. The officers saw the plaintiff begin slowly driving away, at which point one officer fired ten rounds at the plaintiff's truck. Another officer then intentionally crashed his vehicle into the plaintiff's truck, causing it to strike a pole. When the plaintiff exited the truck unarmed and began to run with his hands raised, a third officer shot him multiple times, including

1    in the back, without warning. The case was resolved following a seven-

2    figure settlement.

3            c.    In *Erickson v. City of Hemet, et al.*, case number 5:19-CV-

4    00779-CJC, Defendant CITY settled with a man who was attacked by a

5    K-9 causing serious and permanent great bodily injury.

6            d.    In *Edmond v. City of Hemet*, in October of 2021, HPD officers

7    encountered the plaintiff in a store parking lot, where he was allegedly

8    panhandling, and asked him to leave, which the plaintiff did. After the

9    plaintiff and the officers returned, the plaintiff began to again comply with

10   the officers' commands, and the officers grabbed him, punched him in the

11   face, forced him to the ground, and restrained him. The case resolved

12   following a six-figure settlement before litigation.

13           e.    In *Hereford v. City of Hemet*, No. 5:22-cv-00394-JWH-SHK,

14   in March of 2021, HPD officers stopped one of the plaintiffs while he was

15   in his parked car in front of his fiancée's home and arrested him for driving

16   with an allegedly suspended license. The officers then began searching for

17   his car, which his fiancée and her daughter began to film. The officers

18   responded by threatening his fiancée and her daughter with arrest,

19   knocking the daughter's phone out of her hand, striking the fiancée, and

20   causing her a variety of injuries in her head, neck, shoulder, and back.

21   According to information and belief, this case is currently in litigation in

22   federal district court.

23           f.    In *Mendoza v. City of Hemet*, No. 5:21-cv-01134-JGB-SHK,

24   in May of 2020, the plaintiff — a small woman in shorts and a t-shirt —

25   was stopped while driving by HPD officers. Seven officers drew their

26   weapons and shouted commands, and the plaintiff complied with their

27   orders to exit her vehicle and turn around. As she did so, she was knocked

28   to the ground.

g.    In *Lagafoged v. City of Hemet*, No. 5:19-cv-00903-SVW-SHK, in August of 2018, HPD officers encountered the plaintiff behaving erratically while standing on a balcony and swinging a stick in the air. The officers responded by releasing a K-9 dog to bite the plaintiff before tasing him multiple times and hogtieing him, resulting in his death. The case resolved following a six-figure settlement.

h.    In *Martin v. City of Hemet*, No. 5:18-cv-02377-JGB-KK, on October of 2017, the plaintiff was stopped by officers in a parking lot while his wife was in her car nearby. When the plaintiff began to walk away from the officers and his wife, the officers commanded him to drop a small pocketknife he was holding, and the plaintiff put his hands above his head. With the plaintiff's hands raised and visible, two HPD officers fired seven to ten shots at him, killing him. The case resolved following a six-figure settlement.

93.    By reason of the aforementioned acts and omissions, Plaintiff GONZALEZ has suffered past and future pain and suffering, loss of enjoyment of life, and permanent injury.

94.    Accordingly, Defendants CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

95.    The conduct of the Defendant DOE SUPERVISORS in condoning, maintaining, and providing these longstanding unconstitutional policies, customs, and/or practices was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff GONZALEZ, and therefore warrants the imposition of exemplary and punitive damages as to the Defendant DOE SUPERVISORS.

96.    Plaintiff GONZALEZ seeks compensatory and punitive damages.

97.    Plaintiff GONZALEZ also seeks reasonable stautory attorneys' fees and costs.

## **FIFTH CLAIM FOR RELIEF**

### **Battery (Cal. Govt. Code §820 and California Common Law)**

(Plaintiff against Defendants SOBAZSEK, REYNOSO, IRICK, HPD DOE OFFICERS, and CHP DOE OFFICERS in their individual capacity, directly; and Defendants CITY and STATE vicariously)

98.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 97 of this Complaint with the same force and effect as if fully set forth herein.

99.    Defendants SOBAZSEK, REYNOSO, IRICK, and DOE OFFICERS, while working as officials for the HPD and CHP respectively and acting within the course and scope of their duties, intentionally shot Plaintiff GONZALEZ multiple times and used unreasonable and excessive force against him as alleged herein in violation of the Fourth Amendment.

100.   The use of deadly force against Plaintiff GONZALEZ by Defendants was unreasonable because Plaintiff GONZALEZ did not pose an immediate threat of death or serious bodily harm to any person at any time, there were less lethal alternatives, and no verbal warning was given.

101.   At all relevant times, Plaintiff GONZALEZ was not an immediate threat of bodily injury to anyone, including Defendants.

102.   Plaintiff GONZALEZ never consented to the use of force used against him by Defendants.

103.   Plaintiff GONZALEZ was harmed when he was shot multiple times, and experienced severe pain and suffering, injury, and damages.

104.   The Defendants' use of unreasonable force, including deadly force, was the direct cause, proximate cause, and only cause of Plaintiff GONZALEZ'S pain and suffering, injury, harm, and damages. In other words, the unreasonable force was at least a substantial factor in causing Plaintiff GONZALEZ'S pain and suffering, injury, harm, and damages.

105.  Defendants caused various injuries as mentioned herein and are liable either because they directly harmed Plaintiff GONZALEZ or integrally participated in or failed to intervene in the incident, and engaged in other acts and/or omissions around the time of the incident. Defendants' acts and omissions resulted in harmful and offensive touching of Plaintiff GONZALEZ.

106.  Defendants are directly liable for their actions and inactions pursuant to Cal. Govt. Code §820(a).

107.  Defendants CITY and STATE are vicariously liable for the wrongful acts of their employees, including Defendants SOBAZSEK, REYNOSO, IRICK, and DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

108.  The conduct of Defendants SOBAZSEK, REYNOSO, IRICK, and DOE OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling Plaintiff GONZALEZ to an award of exemplary and punitive damages as to these Defendants.

109.  Plaintiff GONZALEZ seeks compensatory damages, and punitive damages.


**SIXTH CLAIM FOR RELIEF**

**Negligence (Cal. Govt. Code §820 and California Common Law)**

(Plaintiff against Defendants SOBAZSEK, REYNOSO, IRICK, HPD DOE OFFICERS, and CHP DOE OFFICERS in their individual capacity, directly; and Defendants CITY and STATE vicariously)

110.  Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 109 of this Complaint with the same force and effect as if fully set forth herein.

111.   At all relevant times, Defendants SOBAZSEK, REYNOSO, IRICK, and DOE OFFICERS were working as officials for the HPD and CHP, respectively, and acting under color of state law and within the course and scope of their duties.

112.   Peace officers, including Defendants, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort. when there is an imminent threat of death or serious bodily injury, meaning that the individual has the apparent ability, opportunity, and apparent intent to immediately cause death or serious bodily injury and not a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm. These duties also include providing proper training and equipment to officials so that they may perform their duties in accordance with the department policies, properly investigate use of force incidents, and punish, re-train, terminate, and/or prosecute violators of those policies and the law.

113.   Defendants SOBAZSEK, REYNOSO, IRICK, and DOE OFFICERS breached their duty of care by their conduct as alleged herein. Upon information and belief, the actions and inactions of Defendants were negligent and reckless, including but not limited to:

      a.  The failure to properly and adequately assess the need to use force or deadly force against Plaintiff GONZALEZ.

      b.  The negligent tactics and handling of the situation with Plaintiff SOLIS, including pre-shooting negligence.

      c.  The failure to properly train and supervise employees, both professional and non-professional, including Defendants SOBAZSEK, REYNOSO, IRICK, and DOES 1-10.

      d.  The negligent handling of evidence and witnesses.

e.  The negligent communication of information during the incident.

114.  As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Plaintiff GONZALEZ was caused to suffer severe pain and suffering. In other words, the Defendants' negligence was at least a substantial factor in causing Plaintiff GONZALEZ'S harm, injury, and damages.

115.  At all relevant times, Plaintiff GONZALEZ was not an immediate threat of death or serious bodily injury to anyone, including Defendants, no warning was given that deadly force was going to be used prior to the use of deadly force, and less than lethal alternatives were available to Defendants.

116.  Further, Plaintiff GONZALEZ'S harm, specifically being shot by the Defendants when Plaintiff GONZALEZ was not an immediate threat of death or serious bodily injury to anyone, ordinarily would not have happened unless Defendants were negligent.

117.  The harm inflicted by Defendants was caused by something that only the Defendants controlled. The Defendants had control over their firearms, as well as control over the tactical decisions made during the incident.

118.  As a result of their misconduct, Defendants SOBAZSEK, REYNOSO, IRICK, and DOES 1-10 are liable for Plaintiff GONZALEZ'S injuries, either because they were integral participants in their negligence, or because they failed to intervene to prevent these violations.

119.  Pursuant to Cal. Gov't Code §820(a), "a public employee is liable for injury caused by his act or omission to the same extent as a private person."

120.  Plaintiff is not alleging direct liability against the Defendants CITY and State California for negligently hiring, supervising, and/or retaining an unfit employee. Further, Plaintiff is not alleging vicarious liability against the Defendants CITY and State California for any employee who negligently hired, supervised, and/or retained an unfit employee.

121.  Vicarious responsibility is imposed on the individual Defendants' employer, here Defendants CITY and STATE, who are the employers of the individually named Defendant officers and who have given their employees the authority to act on their behalf. The liability of the Defendant CITY and STATE is vicarious for the negligent and/or wrongful conduct (i.e., acts and omissions as alleged herein) of their employees, here Defendants SOBAZSEK, REYNOSO, and IRICK, working under the color of state law and within the course and scope of their employment. (See CACI No. 3700).

122.  Plaintiff does not require a special relationship under Government Code §§815 and 820 where Defendants CITY and STATE are vicariously liable for the wrongful conduct of their employees. Where one authorizes another to act on one's behalf in relation to third persons, an agency relationship is formed. Here, the Defendants CITY and STATE are the principals and the individual officers to whom the principals gave authority are the agents, Defendants SOBAZSEK, REYNOSO, and IRICK. In California, the principal and/or employer is responsible for harm caused by the wrongful conduct of its employees/agents while acting within the scope of their employment.

123. Under the doctrine of *respondeat superior*, an employer is vicariously liable for its employees' torts committed within the scope of employment. This doctrine is based on a rule of policy, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. (*See Perez v. Can Groningen & Sons, Inc.*, 41 Cal3d. 962, 967 (1986).)

124. "[U]nder the Tort Claims Act, public employees are liable for injuries caused by their acts and omissions to the same extent as private persons. Vicarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such as entity of the acts of its employees

1  under the principal of *respondeat superior*." (Gov. Code §815.2(a), (b); *Zelig v.*
2  *County of Los Angeles*, 27 Cal.4th 1112, 1128 (2002).)

3  120.125.    Defendants CITY and STATE are vicariously liable for the
4  wrongful acts of Defendants SOBAZSEK, REYNOSO, IRICK, and DOES 1-10
5  pursuant to section 815.2(a) of the California Government Code, which provides
6  that a public entity is liable for the injuries caused by its employees within the
7  scope of the employment if the employee's act would subject him or her to
8  liability. Defendants CITY and STATE are vicariously liable under California
9  law and the doctrine of *respondeat superior*.

10  121.126.    Plaintiff seeks attorneys' fees under this claim pursuant to
11  Cal. Code of Civ. Pro. §1021.5 for enforcement of the important rights effecting
12  the public interest that Plaintiff, and those similarly situated, to be free from
13  intimidation and physical assault by law enforcement as described herein.

14  122.127.    Plaintiff    GONZALEZ    seeks    compensatory    damages,
15  including general and special damages in an amount to be proven at trial.

17  **SEVENTH CLAIM FOR RELIEF**
18  **Bane Act (Violation of Cal. Civil Code §52.1)**
19  (Plaintiff against Defendants SOBAZSEK, REYNOSO, IRICK, HPD DOE
20  OFFICERS, and CHP DOE OFFICERS in their individual capacity, directly; and
21  Defendants CITY and STATE vicariously)

22  123.128.    Plaintiff repeats and re-alleges each and every allegation in
23  paragraphs 1 through 131 of this Complaint with the same force and effect as if
24  fully set forth herein.

25  124.129.    California Civil Code, Section 52.1 (the Bane Act), prohibits
26  any person from using or attempting to use violent acts, threats, intimidation, or
27  coercion to interfere with the exercise or enjoyment by any individuals' rights
28  secured by the Constitution or laws of the United States, or of the rights secured

-37-

1   by the Constitution or laws of this state in retaliation against another person for
2   exercising that person's constitutional rights.

3   ~~125.~~130.    On information and belief, Defendants SOBAZSEK,
4   REYNOSO, IRICK, and DOES 1-10, while working for CITY and STATE and
5   acting within the course and scope of their duties, intentionally committed and
6   attempted to commit acts of violence against Plaintiff GONZALEZ, including
7   by shooting him without justification or excuse, and by integrally participating
8   and failing to intervene in the above violence.

9   ~~126.~~131.    When Defendants used excessive and unreasonable force
10  against Plaintiff GONZALEZ, they intentionally interfered with his civil rights
11  to be free from excessive force.

12  ~~127.~~132.    Further, the Defendants used excessive and unreasonable
13  force in violation of the Constitution with intent to deprive Plaintiff
14  GONZALEZ of his Constitutional rights to be free from excessive force.

15  ~~128.~~133.    On information and belief, Defendants intentionally violated
16  Plaintiff GONZALEZ'S rights to be free from excessive force by demonstrating
17  reckless disregard for his rights when Defendants shot Plaintiff GONZALEZ.

18  ~~129.~~134.    Defendants violated Plaintiff GONZALEZ'S Constitutional
19  right to be free from excessive and unreasonable force by peace officers.
20  Defendants intended to violate Plaintiff GONZALEZ'S rights and/or acted with
21  reckless disregard with regard to Plaintiff GONZALEZ'S Constitutional rights,
22  which is evidence that they intended to violate Plaintiff GONZALEZ'S rights.

23  ~~130.~~135.    The conduct of Defendants was a substantial factor in causing
24  Plaintiff GONZALEZ'S harms, losses, injuries, and damages.

25  ~~131.~~136.    Defendants CITY and STATE are vicariously liable for the
26  wrongful acts of Defendants SOBAZSEK, REYNOSO, IRICK, and DOES 1-10,
27  their respective employees, pursuant to section 815.2(a) of the California
28  Government Code, which provides that a public entity is liable for the injuries

caused by its employees within the scope of the employment if the employee's act would subject him or her to liability. Defendants CITY and STATE are vicariously liable under California law and the doctrine of *respondeat superior*.

132.137.    The conduct of the individual Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Plaintiff GONZALEZ'S rights, justifying an award of exemplary and punitive damages as to those Defendants.

133.138.    Plaintiff GONZALEZ seeks compensatory damages, punitive damages, costs, attorneys' fees, and treble damages under this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff GEORGE GONZALEZ requests entry of judgment in his favor and against Defendants STATE OF CALIFORNIA; CITY OF HEMET; PATRICK SOBASZEK; ANDREW REYNOSO; SEAN IRICK; and DOES 1-10, inclusive, as follows:

A.  For compensatory damages in whatever other amount may be proven at trial, under federal and state law.

C.  For punitive and exemplary damages against the individual defendants in an amount to be proven at trial.

D.  For statutory damages.

F.  For reasonable attorneys' fees, and treble damages, including litigation expenses.

G.  For interests and costs of suit; and

H.  For such further other relief as the Court may deem just, proper, and appropriate.


DATED:     June 5, 2025          **LAW OFFICES OF DALE K. GALIPO**
                                 **GRECH, PACKER, & HANKS**


                                 By: _____ */s/ Trenton C. Packer*_____
                                           Dale K. Galipo
                                           Trenton C. Packer
                                           Marcel F. Sincich
                                           *Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiff GONZALEZ hereby submits this demand that this action be tried in front of a jury.

DATED:      June 5, 2025              **LAW OFFICES OF DALE K. GALIPO**
                                      **GRECH, PACKER, & HANKS**


                                      By:      */s/ Trenton C. Packer*
                                               Dale K. Galipo
                                               Trenton C. Packer
                                               Marcel F. Sincich
                                               *Attorneys for Plaintiff*