In the Matter of:

GEORGE GONZALEZ

vs

STATE OF CALIFORNIA, ET AL.

---

GEORGE GONZALEZ, VOL. 2

December 11, 2025

---



GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025

```
 1                    UNITED STATES DISTRICT COURT

 2                    CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5    GEORGE GONZALEZ,                  )
                                        )
 6        Plaintiff,                    )
                                        )
 7                    VS.               )    No. 5:25-cv-00331
                                        )        KK(DTBx)
 8    STATE OF CALIFORNIA,              )
      et al.,                           )    Volume 2
 9                                      )
          Defendants.                   )
10    _____)

11                         CERTIFIED
                           TRANSCRIPT
12

13

14                   REMOTE VIDEOCONFERENCE

15              DEPOSITION OF GEORGE GONZALEZ

16                        CALIFORNIA

17            THURSDAY, DECEMBER 11, 2025

18

19

20

21

22

23

24    Reported by:        LAURA A. RUTHERFORD, RPR
                          CSR No. 9266
25    Job No. 2420
```

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4

5   GEORGE GONZALEZ,                    )
                                        )
6       Plaintiff,                      )
                                        )
7                   VS.                 )    No. 5:25-cv-00331
                                        )         KK(DTBx)
8   STATE OF CALIFORNIA,                )
    et al.,                             )
9                                       )
        Defendants.                     )
10  _____)

11

12

13

14         Remote videoconference deposition of GEORGE

15  GONZALEZ, taken on behalf of Defendants, at

16  California, beginning at 8:01 a.m., and ending at

17  12:53 p.m., on Thursday, December 11, 2024, before

18  LAURA A. RUTHERFORD, RPR, Certified Shorthand Reporter

19  No. 9266.

20

21

22

23

24

25

```
 1    APPEARANCES (VIA ZOOM):

 2

 3    For Plaintiff:

 4          LAW OFFICES OF DALE K. GALIPO
            BY:  MARCEL F. SINCICH, ESQ.
 5          21800 Burbank Boulevard, Suite 310
            Woodland Hills, CA  91367
 6          (818) 347-3333
            msincich@galipolaw.com
 7

 8    For Defendants CITY OF HEMET, PATRICK SOBASZEK and
      ANDREW REYNOSO:
 9
            MANNING & KASS, ELLROD, RAMIREZ, TRESTER, LLP
10          BY:  ANDREA KORNBLAU,ESQ.
            801 S. Figueroa Street, 15th Floor
11          Los Angeles, CA  90017
            (213) 624-6900
12          andrea.kornblau@manningkass.com

13

14    For Defendants STATE OF CALIFORNIA and OFFICER SEAN
      IRICK:
15
            CALIFORNIA ATTORNEY GENERALS OFFICE
16          BY:  MARIO E. GARCIA, ESQ.
            300 S. Spring Street, Suite 1702
17          Los Angeles, CA  90013
            (213) 269-6294
18          mario.garcia@doj.ca.gov

19

20    VIDEOGRAPHER:

21          AMARIS AKER, VIDEOGRAPHER

22

23

24

25
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                              Page 9

```
 1                            INDEX

 2    WITNESS:                                      PAGE

 3    GEORGE GONZALEZ

 4         BY MS. KORNBLAU                             13

 5

 6

 7                          EXHIBITS

 8    NUMBER        DESCRIPTION                      PAGE

 9    1          AUDIO RECORDING (RETAINED)         94

10

11

12                   INFORMATION REQUESTED

13                        (None)

14

15

16               INSTRUCTION NOT TO ANSWER

17                    PAGE        LINE

18                     26          24

19                     42           6

20                     46           2

21                     68           5

22                     74          10

23                     81          19

24                     85           5

25                     86           4
```

```
 1              INDEX (CONT.)

 2

 3   INSTRUCTION NOT TO ANSWER (CONT.)

 4          PAGE          LINE

 5           86            22

 6           88            20

 7           89             1

 8          106            20

 9          107            16

10          107            23

11          108             2

12          157            14

13          158             1

14          159            12

15

16

17

18

19

20

21

22

23

24

25
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 11

```
 1              CALIFORNIA; THURSDAY, DECEMBER 11, 2025

 2                   8:01 A.M. - 12:53 P.M.

 3                        ---oOo---

 4

 5              THE VIDEOGRAPHER:  We are now on the

 6   record.  Date is December 11, 2025, and the time is

 7   8:01 a.m.  We are all attending remotely via web

 8   conference for the deposition of George Gonzalez, in

 9   the matter of George Gonzalez versus the State of

10   California, et al., case number 5:25-cv-00331-KK(DTB).

11              My name is Amaris Aker, and I'll be your

12   videographer today on behalf of Nationwide Legal.  The

13   court reporter is Laura Rutherford.

14              And the following stipulation applies to

15   this remote deposition by web conference:

16              The parties consent to the matter of

17   remotely swearing in, transcribing and recording this

18   deposition by videoconference;

19              All parties agree that the court reporter

20   shall serve as the officer for this remote deposition

21   and will swear in the witness via video conference.

22              Counsel, can you please identify

23   yourselves and who you represent and acknowledge your

24   agreement to the remote swearing in and manner of

25   deposition?
```

1        MS. KORNBLAU:  Andrea Kornblau on behalf

2   of the City of Hemet, and I do agree to the remote

3   swearing in of the witness and the remote taking of

4   this deposition.

5        MR. GARCIA:  Deputy Attorney General Mario

6   E. Garcia on behalf of the State of California, acting

7   by and through the California Highway Patrol, as well

8   as Sean Irick.  And I consent and I agree to the

9   remote deposition and the remote swearing in of the

10  witness.

11       MR. SINCICH:  Marcel Sincich on behalf the

12  Plaintiff George Gonzalez, and I consent to the remote

13  swearing in and remote deposition.  Thank you.

14       THE VIDEOGRAPHER:  Will the court reporter

15  please swear in the witness?

16

17                GEORGE GONZALEZ,

18       having been first duly placed under oath,

19           was examined and testified as follows:

20

21       THE REPORTER:  Thank you.

22       My name is Laura Rutherford, Certified

23  Shorthand Reporter, license number 9266.

24       You may begin.

25  //

```
 1                              EXAMINATION
 2    BY MS. KORNBLAU:
 3              Q.   Good morning.  My name is Andrea Kornblau,
 4    and I will be deposing George Gonzalez this morning on
 5    behalf of defendants.
 6              Mr. Gonzalez, can you hear me clearly?
 7         A.   Yes, ma'am.
 8              Q.   Can you please state and spell your full
 9    name for the record?
10         A.   George Falcon Lara Gonzalez.  G-e-o-r-g-e,
11    F-a-l-c-o-n, L-a-r-a, G-o-n-z-a-l-e-z.
12         Q.   Thank you.
13              Have you ever been deposed before?
14         A.   I don't understand that question.
15         Q.   So this is a deposition today.  Have you
16    ever gone through this process before?
17         A.   I don't believe so.
18         Q.   Have you ever been a party to a lawsuit?
19         A.   Yes.
20         Q.   How many occasions?
21         A.   One.
22         Q.   What is name of that case?
23         A.   I was a minor, and it's hard to remember.
24    It was a very hard time for me.  I just -- I can't
25    remember.  I was just a minor.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                              Page 14

1      Q.   Was that a criminal case or a civil case?

2      A.   It was a civil.

3      Q.   Can you tell me --

4      A.   I think it was both.  I'm not sure, ma'am.

5   I know it was both.  It was a molestation.  I was

6   molested.

7           MR. SINCICH:  George, wait for a question

8   to be pending.  Thank you.

9      Q.   BY MS. KORNBLAU:  So what was the nature

10  of that lawsuit?

11     A.   It was a case against Riverside County

12  Juvenile Hall.

13     Q.   Okay.

14          How old were you?

15     A.   I was only -- I was a minor.  I can't -- I

16  can't -- I don't recall exactly my age.

17     Q.   Were you older than 10 years old?

18     A.   Yes, ma'am.

19     Q.   Were you older than 15?

20     A.   I was about -- I would say I was about

21  15.

22     Q.   Okay.

23     A.   When it happened or when -- when the -- I

24  don't understand that question.  Like, if it was when

25  the incident happened or when the deposition happened?

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 15

1          Q.    Okay.

2                When was the lawsuit filed, the civil

3     lawsuit?

4          A.    I think I was 16 years old, ma'am.

5          Q.    All right.

6                And so the alleged incident that you're

7     talking about, molestation, that occurred when you

8     were 15 years old; is that right?

9          A.    14, 15.

10         Q.    And were you the plaintiff in a civil

11    lawsuit?

12         A.    Am I the plaintiff now?

13         Q.    No.  At the other case, against Riverside

14    County, were you a plaintiff in a civil lawsuit?

15         A.    Plaintiff?  Am I a plaintiff now?

16         Q.    Okay.

17               My question is in the civil lawsuit

18    against the County of Riverside involving allegations

19    of molestation, were you a plaintiff in a civil case?

20         A.    I don't understand what a plaintiff is,

21    exactly what a plaintiff is, ma'am.

22         Q.    Okay.

23               The plaintiff is one that is bringing the

24    claims, the one that files the lawsuit.

25         A.    Oh, it was my mother.  I was a minor.  It

1    was my mother.  But, yeah, I guess I was a plaintiff.

2             Q.    Okay.

3                   Was your mother a guardian ad litem for

4    you?

5                   MR. SINCICH:  Lacks foundation.

6                   THE WITNESS:  I don't understand the

7    question, ma'am.  I know that I was the minor, and my

8    mother was my mother.

9             Q.    BY MS. KORNBLAU:  Okay.

10                  Any other civil or criminal lawsuits that

11   you've been involved in?

12            A.    No, ma'am.

13            Q.    What about criminal charges?

14                  MR. SINCICH:  Overbroad.

15                  THE WITNESS:  I don't know.  I don't

16   understand the question.

17            Q.    BY MS. KORNBLAU:  Okay.

18                  We'll come back to that.  Let me go

19   through -- so you have been deposed before; correct?

20                  MR. SINCICH:  I think it misstates the

21   testimony.

22                  THE WITNESS:  I believe I answered that

23   question.

24            Q.    BY MS. KORNBLAU:  And your answer was yes,

25   you were?

```
 1              A.   Yes.
 2              Q.   So since it sounds like it was when you
 3   were much younger, I'm going to go through the general
 4   admonitions for a deposition, which is what we're here
 5   for today.
 6                   So a deposition is an unusual process.
 7   It's not like a normal conversation, and there are
 8   certain rules that we need to follow in order for this
 9   to run smoothly.
10                   We have a court reporter and a
11   videographer today, and they will be recording or
12   transcribing everything that is said during this
13   deposition today.  And we will turn those words into a
14   written record or a transcript of the deposition
15   today.
16                   In order to help the court reporter make
17   an accurate record of this deposition, it's important
18   that only one person speak at any given time.  So as a
19   result, it is important that you allow me to finish my
20   questions before you give your answers, just as I will
21   let you finish your answers before I ask additional
22   questions.
23                   Is that fair?
24              A.   Yes, ma'am.
25              Q.   The court reporter will only take down
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 18

```
1   what we say out loud.  The court reporter cannot
2   record nods of the head or shakes of head.  Thus, it's
3   important that all of your responses be verbal and
4   clearly understandable.
5              From time to time, you may hear counsel
6   making objections.  These objections are not directed
7   to you but are for the record and for a judge.
8              As you heard at the start of this
9   deposition, your testimony today is give under an oath
10  to tell the truth.  That means your sworn testimony
11  today is given under penalty of perjury, and that your
12  testimony here has the same effect as if it were given
13  in a court of law before a judge or a jury.
14             Do you understand that?
15       A.   Yes, ma'am.
16       Q.   Because your testimony today is sworn
17  testimony, it's important that you give your best
18  answers to my questions.  Please listen carefully to
19  the questions, wait for my question to complete, and
20  then give me your best answer.
21             If you do not understand my question,
22  please let me know, and we will see what we can do to
23  help your understanding.  If you answer my question,
24  I'm going to take that as you having heard the entire
25  question and having understood the question.
```

```
 1                    Do you understand that?
 2           A.    Yes, ma'am.
 3           Q.    So will you let me know if you do not
 4   understand my question?
 5           A.    Yes, ma'am.
 6           Q.    Thank you.
 7                 During this deposition, we don't want you
 8   to guess or speculate.  We are entitled to your best
 9   estimate when you're able to provide that.  Okay?
10           A.    (No audible response.)
11           Q.    Is that a "yes"?
12           A.    Yes, ma'am.
13           Q.    Thank you.
14                 Do you understand the difference between a
15   guess and an estimate?
16           A.    Yeah.  I was just guessing my age right
17   now.  And I was, like, I guess -- I guessed I was 15
18   years.
19           Q.    Okay.
20                 A guess would be you have no idea what the
21   answer would be.  So, for example --
22           A.    Okay.  No, an estimate.
23           Q.    Okay.
24                 So, for example, if you have a table in
25   front of you -- I can't tell, because I can only see,
```

1    kind of, chest up.  But if you have a table in front

2    of you, if I were to ask you what is the length of

3    that table you are sitting at, you might not know the

4    exact length, but you can give me an estimate.

5                    Okay?

6                    Now, if I were to ask you what is the

7    length of the table I'm sitting at, you can't see it,

8    you've never been to my home, you would be guessing at

9    how long my table is.

10                   Do you understand?

11        A.    (No audible response.)

12        Q.    Is that a "yes"?

13        A.    Yes, ma'am.

14        Q.    And the reason I keep asking is because I

15   do see you nodding your head.  But as I said before,

16   the court reporter cannot take down nods of head.  So

17   just give us a verbal response, a "yes" or a "no" or a

18   substantive answer, when I ask a question.

19                   Okay?

20        A.    Yes, ma'am.

21        Q.    Thank you.

22                   Sometimes, someone may ask you to repeat a

23   statement that someone else made.  When that happens,

24   you should try to repeat it in the exact words spoken

25   as you remember them.  This is called verbatim.

```
 1                    For example, telling me that someone was

 2    mad and said mean things is not the same thing as

 3    telling me the verbatim, word for word, things that

 4    were spoken.

 5                    Do you understand that?

 6            A.    Yes.

 7            Q.    If at any time you need to take a break,

 8    we can do so.  I would just ask that if I have a

 9    question pending, that you go ahead and give that

10    response.

11                    Are you able to take breaks where you are?

12            A.    I'm not sure.  But I'm pretty sure, like,

13    to use the facility.

14            Q.    Okay.  Great.

15                    So if you need to take a break, please let

16    me know, and we will facilitate that for you.  Okay?

17            A.    (No audible response.)

18            Q.    All right.

19                    Was this a "yes"?

20            A.    I didn't hear --

21                    THE REPORTER:  I'm sorry.  The screen is

22    frozen.  There we go.

23            Q.    BY MS. KORNBLAU:  Can you hear me now?

24                    I think he froze again.

25                    THE REPORTER:  Off the record?
```

```
 1                    MS. KORNBLAU:  Yeah.  Let's go off the

 2    record.

 3                    THE VIDEOGRAPHER:  We're going off the

 4    record at approximately -- still going on?

 5                    MS. KORNBLAU:  I think he's back.

 6                    THE WITNESS:  It says the Internet

 7    connection is unstable.

 8                    THE VIDEOGRAPHER:  Do you still want to go

 9    off, Counsel?

10                    MS. KORNBLAU:  Yes.  Let's go off the

11    record for a second.

12                    THE VIDEOGRAPHER:  We're going off the

13    record at approximately 8:15 a.m.

14                    (Pause in proceeding.)

15                    THE VIDEOGRAPHER:  We are on record for

16    the remote deposition of George Gonzalez.  The date is

17    December 11, 2025, and time is approximately 8:17 a.m.

18            Q.   BY MS. KORNBLAU:  Good morning, again,

19    Mr. Gonzalez.  We just took a short break, because we

20    might be having some technical difficulties, but we're

21    going to try to get through this deposition.

22                    But it's going to be very important for

23    you to tell me if you do not hear my entire question.

24    Okay?

25            A.   Okay.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 23

```
 1              Q.    Okay.

 2                    You understand you are still under oath?

 3              A.    Yes, I do.

 4              Q.    What is your date of birth?

 5              A.    December 22, 1993.

 6              Q.    You said 1993.

 7              A.    '93.

 8              Q.    Do you have a driver's license?

 9              A.    I've had a driver's license.

10              Q.    On the date of this incident, which was

11    January 24, 2023, did you have a driver's license?

12              A.    No, ma'am.

13              Q.    Was it -- you said you did have one

14    before.  When did you first have a driver's license?

15              A.    I had a driver's license last when I was,

16    I think, 25 or 26.

17              Q.    25 or 26 years old?

18              A.    Yes, ma'am, yes.  I had a driver's

19    license.  I had one for a little while, yes.

20              Q.    Was it a California driver's license?

21              A.    Yes, ma'am.

22              Q.    When were you first issued a California

23    driver's license?

24              A.    When I was 16.

25              Q.    Passed it on the first try?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 24

1          A.   Yeah.

2          Q.   Good job.

3               So you said that the last time that you

4    had a license was when you were 25 or 26 years old?

5          A.   Yeah.

6          Q.   Why did you not have one after you were 25

7    or 26 years old?

8          A.   Because I have PTSD, and it's just hard

9    for me to go places and stand in line.  I don't like

10   to.  I don't like to be in rooms with people.  I

11   don't -- I just -- I can't do it.  I just don't want

12   to go.  I can't go.  I don't go.  I don't go for

13   long.

14         Q.   So at the time of this incident, was your

15   driver's license suspected, revoked?

16              What was the nature of your license?

17         A.   I'm not sure, ma'am.  It's been so long.

18         Q.   But you know that you did not have a

19   driver's license, a valid driver's license on the date

20   of the incident; is that correct?

21         A.   Yes, ma'am.

22         Q.   And you were aware of that at the time of

23   the incident?

24         A.   I don't know if I was aware of that, but I

25   know that -- I know it now.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2               12/11/2025                          Page 25

```
 1            Q.   Okay.
 2                 When did you renew your driver's license,
 3    after you turned 16?
 4            A.   I'm not -- I wouldn't -- I wouldn't be
 5    able to tell you, ma'am.  Probably when I was 25,
 6    26.
 7            Q.   So you knew when you were 25 or 26 that
 8    you needed to renew your license, but you said you
 9    didn't like to stand in lines?
10            A.   I just -- I just --
11                 MR. SINCICH:  Vague and ambiguous, the
12    question.
13                 THE REPORTER:  I'm sorry.  Who is
14    speaking?
15                 MR. SINCICH:  Counsel Marcel Sincich.
16                 THE REPORTER:  Thank you.
17                 MR. SINCICH:  Vague and ambiguous.
18    Thanks.
19            Q.   BY MS. KORNBLAU:  Okay.
20                 So you said that you did not renew your
21    license when you were 25 or 26, because you did not
22    like to stand in lines at the DMV; is that right?
23            A.   No.  I renewed it then.  But then when I
24    was 30, when I was -- you're talking about when I was
25    shot?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                          Page 26

1              Q.    I'm asking you about when you renewed your

2    driver's license, and how many times you renewed it.

3    So when you were 16, you got your driver's license.

4              When did you renew it?

5              A.    I renewed it when I was 25 or 26.

6              Q.    And for how long was it valid?

7              A.    I don't know.  It could still be valid.  I

8    know I didn't go to the DMV when I was 30, but it

9    could still be valid.  I'm not sure.

10             Q.    Okay.

11             So at the time of the incident, did you

12   have a valid driver's license?

13             MR. SINCICH:  Speculation.

14             THE WITNESS:  It's speculation.  I know

15   you asked me the question, because you know.  But I'm

16   not sure.  I don't know.

17             Q.    BY MS. KORNBLAU:  But, earlier, you said

18   you didn't.

19             A.    Yeah, because I don't think I did, ma'am.

20   I, honestly, don't think I had a proper driver's

21   license, ma'am.  I do not think I had one.  I'm not

22   going to lie to you.

23             Q.    So why were you driving a vehicle then?

24             MR. SINCICH:  I'm going to instruct you

25   not to answer, Fifth Amendment.

1      Q.   BY MS. KORNBLAU:  Okay.

2           Mr. Gonzalez, are you going to take your

3   counsel's advice and not answer the question that I

4   just asked you?

5      A.   Yes.

6      Q.   Okay.

7           I will reserve my right to bring

8   Mr. Gonzalez back for a further deposition if I decide

9   to bring a motion to compel that response and a judge

10  decides that I was entitled to a response.

11          Okay.

12          What was your address at the time of the

13  incident?

14     A.   I was homeless.

15          THE REPORTER:  I'm sorry.  I can't hear.

16          THE WITNESS:  I was homeless, ma'am.

17          THE REPORTER:  Thank you.

18     Q.   BY MS. KORNBLAU:  Did you stay at your

19  wife's house?

20     A.   No.

21     Q.   So where were you staying then?

22          MR. SINCICH:  Asked and answered.

23          THE WITNESS:  I was homeless.  I was

24  staying wherever I could.

25     Q.   BY MS. KORNBLAU:  And where is "wherever

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 28

1   you could"?

2              A.   Usually, I'd be at 305 W. 4th Street, in

3   Beaumont, California, my parent's tow yard.  They had

4   a trailer there.

5              Q.   So did you consider that your home?

6              A.   No.  I considered that my mailing address.

7              Q.   And you stayed at 305 West 4th Street on

8   occasion?

9              A.   Yes, on occasion.

10             Q.   And then you said you would stay wherever

11  you could.  So did you sleep on the street?

12             A.   No.  I had a car.  I would try to sleep in

13  the car.

14             Q.   Okay.

15                  And you said, "I had a car"; right?

16             A.   Yeah.  At the tow yard, I had a car.

17             Q.   I'm sorry.  What did you say?

18             A.   I had a car at the tow yard.

19             Q.   What kind of car?

20             A.   I can't remember, ma'am.

21             Q.   Was it a black Hyundai?

22             A.   No.

23             Q.   You don't know the make or model of the

24  vehicle?

25             A.   No, ma'am.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                          Page 29

1        Q.    What color was it?

2        A.    I can't remember.

3        Q.    How often did you say in that car?

4        A.    Not often.

5        Q.    But you don't remember the color of it?

6        A.    It was a -- it was like a -- it was a

7    trailer.  Like, it was a camper, like a camper

8    trailer.

9        Q.    Okay.

10             So at one point, though, you said, "I had

11   a car at the tow yard."

12       A.    I meant to say I had a camper.  I meant to

13   say I had a camper.  Like, I had a fifth wheel, a

14   trailer.  My parents would let me stay in their

15   fifth-wheel, in their trailer.

16       Q.    So we're going to get into this in a

17   little bit, but, at some point, you were inside a

18   black Hyundai during this incident; is that correct?

19       A.    I believe so.  Yes, ma'am.

20       Q.    Whose vehicle was it?

21       A.    Yvette Nieves.

22       Q.    Can you spell the last name?

23       A.    N-i-e-v-e-s.

24       Q.    Who is Yvette?

25       A.    She is the mother of my child.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 30

```
 1              Q.    So the vehicle belonged to Yvette;

 2   correct?

 3              A.    Yes, ma'am.

 4              Q.    And you had access to that vehicle?

 5              A.    Yes, ma'am.  I had access to that vehicle

 6   that day.

 7              Q.    And did you drive it on occasion?

 8              MR. SINCICH:  Vague and ambiguous.

 9              THE WITNESS:  I drove it that day.

10              THE REPORTER:  I'm sorry?

11              THE WITNESS:  I drove it that day.

12              THE REPORTER:  Thank you.

13              Q.    BY MS. KORNBLAU:  Did you drive it at any

14   point before that day?

15              A.    I believe so.  I had drove it back and

16   forth before that day, yes.

17              Q.    Do you have a cell phone?

18              A.    No, ma'am.

19              Q.    Did you have a cell phone on the date of

20   the incident?

21              A.    No, ma'am.

22              Q.    On the date of the incident, were you

23   married?

24              A.    No, ma'am.

25              Q.    Have you ever been married?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                              Page 31

```
 1              A.   No, ma'am.
 2              Q.   On date of the incident, did you have a
 3     fiance or a girlfriend?
 4              A.   Yes, ma'am.
 5              Q.   Which one?
 6              A.   Fiance.
 7              Q.   Who was your fiance?
 8              A.   Yvette.
 9              Q.   Do you have any children?
10              A.   Yes, ma'am.
11              Q.   How many?
12              A.   Between each other, we share six
13     children.
14              Q.   You said, "between us," you and Yvette
15     Nieves?
16              A.   Yes.  And I have another child in Palm
17     Springs.
18              Q.   And who is the mother of the child in Palm
19     Springs?
20              A.   Briana Ochoa.
21              Q.   Can you spell the last name?
22              A.   O-c-h-o-a.
23              Q.   What is her name?  Briana Ochoa.
24                   What is the child's name?
25              A.   Aubriana Gonzalez.   A-u-b-r-i-a-n-a,
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 32

 1  Aubriana.

 2          Q.   And what are the names of your six

 3  children with Yvette?

 4          A.   I have a biological child, which is

 5  Jasmine, Jasmine Joellee Gonzalez.  Jasmine,

 6  J-a-s-m-i-n-e, Joellee, J-o-e-l-l-e-e, Gonzalez,

 7  G-o-n-z-a-l-e-z.

 8          Q.   So when you said you have six children

 9  with Yvette, five of them are not your children?

10          A.   No.  I'm the paternal father of Richard

11  Anthony Nartates.

12          Q.   How many children that are with Yvette are

13  also your children?

14          A.   She shares them with me, but there's three

15  other children that have a father, and their father's

16  in their lives.  I do not want to disclose her three

17  other children, but I do -- she does share them with

18  me.

19          Q.   Let me ask it this way.  How many

20  biological children do you have?

21          A.   Two.

22          Q.   Aubriana Ochoa and Jasmine?

23          A.   Yes, ma'am.

24          Q.   Okay.

25               Richard is not your biological child; is

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                              Page 33

```
 1    that correct?

 2            A.   No, just paternal.

 3            Q.   Okay.

 4                 "Paternal" would be you, your child?

 5            A.   Yeah, through the courts.  Through the

 6    courts, I'm the paternal father.

 7            Q.   Okay.

 8                 What is the highest level of education

 9    that you've completed?

10            A.   12th grade.

11            Q.   "12th grade"?

12            A.   Yes, ma'am.

13            Q.   Did you graduate from high school?

14            A.   Yes, ma'am.

15            Q.   What high school?

16            A.   Riverside County High School.

17            Q.   Have you attended any trade schools or

18    college?

19            A.   No, ma'am.  I've crashed.  No, ma'am.  No.

20    This is like crash classes but never attended.

21            Q.   Do you have any problems with your

22    hearing?

23            A.   No, ma'am.

24            Q.   Do you have any problems with your

25    eyesight?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                    Page 34

```
 1              A.   Yes, ma'am.
 2              Q.   What is the issue with your eyesight?
 3              A.   I have a crooked eye.
 4              Q.   What does that mean?
 5              A.   Like, one of my eyes is, like, they veer
 6    off.  And I have to concentrate, like, on one of my
 7    eyes.  Like, when my eyes go crooked, like, I don't
 8    know.  I got a crooked eye.
 9              Q.   Is there a term -- a medical term for
10    that?
11              A.   I'm not sure.  I'm not sure.  But I can't,
12    I can't see -- I can't see in the dark.
13              Q.   Okay.
14                   Have you been diagnosed with any issues
15    with your eyesight.
16              A.   No.  I have not been diagnosed, no.
17              Q.   It appears you're wearing glasses today?
18              A.   Yes, ma'am.
19              Q.   Are those corrective lens?
20              A.   Yeah.  They correct my eyes, and I can
21    see.  I can see you guys clearly.
22              Q.   Great.  Okay.
23                   When were you prescribed those glasses?
24              A.   They are not prescription.  They are not
25    prescription.  But they are 125.  They're reading
```

1    glasses.  But I always wear 125, because I can see

2    clear with them.  Like, I didn't know I could see

3    clearer with the glasses on until I wore them.  I

4    usually didn't go to the doctor.  Like, I've been.  I

5    usually don't go to the doctor.

6              Q.    Okay.

7                    **When did you get the glasses that you're**

8    **wearing now?**

9              A.    I've been wearing prescription 125 glasses

10   for, like, maybe, since I was 25, 26.  I've been

11   wearing the same prescription.

12             Q.    **Okay.**

13                   **Are you nearsighted or farsighted?**

14             A.    I would not know, ma'am.

15             Q.    **Okay.**

16                   **Can you see well up close or far away?**

17             A.    I can see well up close.  I can see okay

18   up close, but I can clearer with my glasses on.

19             Q.    **Can you see things far away?**

20             A.    Yeah.  I can see things far away, too,

21   yeah.  I can see.  I've got -- it's just things are a

22   little blurry.  Things are a little bit clearer with

23   glasses when I read.  I read a lot.  I read all day.

24   Like, I'm a reader.

25             Q.    **What's your favorite book?**

 1          A.    My favorite book is the Bible.  Well, 60

 2   of the books inside the Bible -- 66 of the books

 3   inside the Bible.

 4          Q.    Great.  All right.

 5                Any problems with your memory?

 6          A.    I feel like I have memory problems, yeah.

 7   I do.  I've been diagnosed with a lot of different

 8   things, but I don't know if they -- they looked into

 9   me like that.  I don't think they -- contribute like I

10   should have, like I should be.

11                Like, I'm in institutions, you know?  They

12   don't -- like, I'm not medically cared for like I

13   should be inside of an institution.

14          Q.    When you say that you believe you have

15   memory problems, why do you think that?

16          A.    Because every day is the same.  Nothing

17   ever changes.  Every day is the same.  So how can you

18   remember what happened?  It's like everything's -- it

19   seems like it's the same.  I mean, years go by and

20   then you get out.

21                We're just hoping -- I'm hoping.  I'm

22   thinking about the streets.  I'm thinking about my

23   family.  Every day is the same.  I'm thinking about my

24   family.  So you couldn't remember things.  It's hard

25   to remember things.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 37

```
 1              Q.    So you've had memory problems ever since
 2    you've been incarcerated?
 3              A.    I feel like, yeah.  I feel like, yeah.
 4    I've been -- I've been abused inside here.  And it's
 5    just like from the abuse, it's hard for me to remember
 6    things.  I don't want to remember things.
 7              Q.    When was the first time you were
 8    incarcerated?
 9              A.    When I was 10 years old.
10              Q.    And so that would have been juvenile
11    hall?
12              A.    Yes, ma'am.
13              Q.    And so you've had memory problems ever
14    since juvenile hall?
15              A.    I feel like it's hard for me to remember
16    things.  Yes.  I can't remember names.  I can't
17    remember -- I can't remember nothing.  Like, I can't
18    remember things.  Like, it's hard for me to remember.
19              Q.    So do you have problems with short-term
20    memory or long-term memory or both?
21              A.    I have problems with -- memories that are,
22    like, emotional memories, things that had affected me
23    emotionally.
24              Q.    Okay.
25                    So things that affect you emotionally are
```

```
 1   what cause you memory problems?

 2           A.   Yeah.  I feel like my mind is a blank

 3   shell.  It doesn't want to think about them.

 4           Q.   Okay.

 5                Any other psychological-type issues that

 6   buff been diagnosed with?

 7                MR. SINCICH:  Vague and ambiguous.

 8                THE WITNESS:  I don't understand.

 9           Q.   BY MS. KORNBLAU:  Have you ever been

10   diagnosed with any psychological conditions?

11           A.   I don't understand the question.  Like, I

12   wouldn't know.  Like, I'm not a doctor.

13           Q.   Right.  That's why I'm asking if you've

14   ever been diagnosed by a doctor with having any

15   psychological conditions?

16           A.   I honestly wouldn't know what the doctors

17   say about me.  Like, I go to the meetings, and I tell

18   them way I feel, tell them how I think.  I don't know

19   what they diagnosis.  I just --

20           Q.   Have you ever been diagnosed with PTSD?

21           A.   Yes.

22           Q.   Okay.

23                So when I asked you if you've ever been

24   diagnosed with a psychological condition --

25           A.   I wouldn't know what a psychological
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                                Page 39

```
 1   condition is.  I'm not a doctor.

 2             Q.   Okay.

 3                  But you just said that you do consider

 4   PTSD a psychological condition; is that right?

 5             A.   No.  You just asked me if I was diagnosed

 6   with PTSD, and I told you yes.  I didn't know it was a

 7   psychological condition.

 8             Q.   Okay.

 9                  Have you been diagnosed with things?

10                  MR. SINCICH:  Vague and ambiguous.

11   Overbroad.

12                  THE WITNESS:  I don't understand what

13   that has -- I feel like I'm being prosecuted here.

14   Like, I don't understand what that has to do with me

15   being -- like, gunned down.

16             Q.   BY MS. KORNBLAU:  Okay.

17                  So you said that you had been diagnosed

18   with PTSD; is that correct?

19             A.   (Inaudible response.)

20             Q.   That was a "yes"?

21             A.   Yes, ma'am.

22             Q.   Okay.

23                  What is PTSD?

24             A.   Post --

25                  MR. SINCICH:  Calls for speculation.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2            12/11/2025                    Page 40

```
 1                    THE WITNESS:  -- Traumatic Stress
 2    Syndrome.
 3            Q.   BY MS. KORNBLAU:   Post Traumatic Stress?
 4            A.   Yes, ma'am.
 5            Q.   Disorder?
 6            A.   Syndrome, disorder, yes, ma'am.
 7            Q.   Okay.
 8                 Any other disorders you have that you're
 9    aware of?
10            A.   Disorders?  No.  I don't -- I don't -- I
11    don't -- I don't think so.  Like, you'd have to ask my
12    doctors, ma'am.  I don't think there's anything that I
13    have.  I don't know.
14            Q.   Any other conditions that you have?
15            A.   Medical conditions?
16            Q.   Yes.
17            A.   Yes.  I have fecal incontinence.  I was
18    shot in my colon, and now I leak mucous, blood, feces.
19            Q.   Any other medical conditions?
20                 MR. SINCICH:  Overbroad.  Vague.
21                 THE WITNESS:  I don't understand.
22            Q.   BY MS. KORNBLAU:  Do you have any medical
23    conditions?
24            A.   I am in a wheelchair.  Like, I can't walk
25    long distance.  I wear a diaper.  Do you want to see
```

```
 1   my diaper?

 2              I have a binder from where I got shot.

 3   I'm -- I have -- my intestines are coming out of my

 4   stomach, and I have to wear a binder to hold them in

 5   from when I was shot, the surgery.  I wear a diaper

 6   because I leak.

 7         Q.    What about emotional or mental?

 8              MR. SINCICH:  It's overbroad.  Vague.

 9   It's irrelevant to this cause of action.  As we

10   discussed previously, I'm going to instruct him not to

11   answer any further questions about pre-existing and

12   unrelated psychological conditions.

13         Q.    BY MS. KORNBLAU:  Mr. Gonzalez, are you

14   going to take your attorney's advice and not answer my

15   question?

16         A.    I've answered your question so many times,

17   ma'am.  I told you that I am not of knowledge to tell

18   you that what I'm diagnosed with.  Like, I have no

19   idea.  You have -- like, I don't know, ma'am.  I don't

20   know.  I don't understand the question.  I told you

21   that I have PTSD.  I know that.

22              MR. SINCICH:  Mr. Gonzalez, just wait for

23   the next question.

24              THE WITNESS:  Yeah.  My attorney's telling

25   me to wait for the next question.  I'm going to wait
```

```
 1  for the next question.  He's a law person.  He's a law

 2  person.  I'm just trying to help you out doing this

 3  deposition.

 4          Q.    BY MS. KORNBLAU:  Okay.  Thank you.

 5                So you said you have PTSD; right?

 6                MR. SINCICH:  Asked and answered.  I'm

 7  going to instruct him not to answer.

 8                MS. KORNBLAU:  Okay.

 9                I think we might contact the Magistrate,

10  because you're obstructing my deposition, Marcel,

11  so --

12                MR. SINCICH:  -- if I am, and I'm happy to

13  be on the phone with the Magistrate, because we've

14  discussed this previously, and I think it's

15  irrelevant.  It's privileged.  It's unrelated to his

16  injuries related to this incident.  It's asked and

17  answered.  It's harassing.

18                THE WITNESS:  Yeah.  I was speaking about

19  the --

20                MR. SINCICH:  George, George, let me

21  handle it.  Let me handle it.

22                So we can get on the phone with the

23  Magistrate if you like.

24                MS. KORNBLAU:  Marcel, because you're not

25  dismissing any of the emotional psychological claims,
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 43

1    you've brought that as part of this lawsuit, so I'm

2    entitled to investigate that, which is exactly what

3    I'm trying to do, and you're preventing me from doing

4    that.

5              I have every right to ask him.  I can play

6    audio from a statement that he gave, and I can do it

7    that way, or you can let me do it the way that I'm

8    preferring to do it now.

9              Otherwise, then, if you're going to

10   obstruct this deposition and prevent me from asking

11   these relevant questions, then I am going to contact

12   the Magistrate.

13             MR. SINCICH:  We have a difference the

14   opinion on what is relevant in this matter.  But

15   outside of it being relevant or irrelevant, it's

16   privileged.

17             And we talked to the Magistrate already.

18   There was not a ruling on whether or not it is going

19   to be discoverable, because we clarified repeatedly

20   that we are not seeking severe emotional distress

21   damages, but, instead, the garden variety.

22             And so, therefore, diagnoses or mental

23   disorders from years prior to this incident are

24   unrelated and, in our opinion, privileged and not

25   discoverable.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                         Page 44

```
 1              So I'd be happy to get clarity from the
 2    Magistrate, because we haven't received an order, or
 3    we can move on.  It doesn't matter the form of the
 4    question.
 5              MS. KORNBLAU:  It looks like your client
 6    is knocking on the door.
 7              MR. SINCICH:  Because he's muted.
 8              Yes.  Thank you, Deputy.
 9              Mr. Gonzalez is not allowed to touch the
10    screen, so the deputy has to come in to touch the
11    screen for unmuting the screen.
12              So, again, like we discussed before, if
13    it's coming to unrelated mental health conditions,
14    I'll instruct him not to answer.
15              MS. KORNBLAU:  -- determine what is
16    unrelated or related?  I get to ask the questions, and
17    you make an objection, and then we have the Court
18    determine whether it's relevant or not.
19              So are you in disagreement with what I've
20    just said?
21              MR. SINCICH:  I said unrelated, unrelated
22    medical conditions.  That's not being claimed.  The
23    door has not been opened by his lawsuit because we are
24    seeking the garden variety mental health.
25              MS. KORNBLAU:  Okay.
```

```
1              Again, this is my deposition.  Okay?
2              I'm going to ask questions.  I am going to
3    ask questions about things that he has been diagnosed
4    with mentally, emotionally, physically.  If you are
5    going to instruct him not to answer those questions,
6    then I suggest we take a break, and we can contact the
7    Magistrate.
8              MR. SINCICH:  I'm going to instruct him
9    not to answer those kind of privileged questions.  If
10   you ask a privileged question, I'm going to instruct
11   him not to answer.  You can ask whatever question you
12   like.
13             MS. KORNBLAU:  How is it privileged if I'm
14   asking him about a PTSD diagnosis?
15             MR. SINCICH:  It is unrelated to this
16   issue.  The door has not been opened.  And everybody's
17   medical conditions are privileged unless the door is
18   opened.
19             MS. KORNBLAU:  I can open the door then by
20   playing the recorded statement that he gave to police.
21   Do you want me to --
22             MR. SINCICH:  That doesn't open the door.
23             MS. KORNBLAU:  We can do it that way.
24             MR. SINCICH:  That doesn't open the door.
25   You can play whatever recorded statement you like.  If
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                    Page 46

 1   you ask him a question about something privileged, I'm
 2   going to instruct him not to answer.
 3                MS. KORNBLAU:  Why don't we contact the
 4   Magistrate then.  Let's do that.
 5                MR. SINCICH:  That's fine.
 6                MS. KORNBLAU:  Let's -- and I am going to
 7   also remind you, though, that we may need to, then,
 8   carry this over onto a second day if we're going to
 9   have to wait to speak to a Magistrate judge.
10                MR. SINCICH:  We can talk to the
11   Magistrate about that as well.
12                MS. KORNBLAU:  Okay.  Great.  All right.
13                So let's go off the record please.
14                THE VIDEOGRAPHER:  Approximately 8:45 a.m.
15                (Pause in proceeding.)
16                THE VIDEOGRAPHER:  We are back on the
17   record for remote deposition of George Gonzalez.  The
18   date is December 11, 2025, and the time is 8:59 a.m.
19           Q.   BY MS. KORNBLAU:  Okay.
20                Mr. Gonzalez, we just took a short break
21   so that I could contact the Magistrate Judge.  I did
22   contact the clerk.  I have sent an email, and I have
23   copied Mr. Sincich, your attorney.  I also copied the
24   State's attorney, Mr. Garcia.
25                So we will wait to see if we get a

1  response.  But in the meantime, I'm going to proceed
2  with some other questions.
3          Okay.
4          You understand you're still under oath?
5      A.   Yes, ma'am.
6      Q.   When -- how did you retain your lawyer?
7      A.   My mother had a friend lawyer.  Greenberg
8  and Greenberg referred to me to Trent and Packer.  And
9  then Trent and Packer were -- contacted somehow by
10  Dale Galipo's law office, and they linked up and now
11  they're my lawyers.
12      Q.   How did Dale Galipo's office become
13  involved?
14          MR. SINCICH:  Calls for speculation.
15          THE WITNESS:  I'm not -- I want to say my
16  lawyers.
17      Q.   BY MS. KORNBLAU:  Okay.  All right.
18          When was the first time that you spoke
19  with a lawyer about this action?
20      A.   I was in hospital.  I was in a coma, and I
21  was in the hospital recovering.  And my mother, she
22  contacted the lawyer.  It was my mother.  My mother
23  contacted the lawyer, because I was indisposed.
24      Q.   What was your mother's name?
25      A.   Lisa Lara Martinez.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                    Page 48

```
1            Q.   Middle name, how do you spell it?

2            A.   A-n-n, Ann, Lisa Ann, and then Lara,

3    L-a-r-a, Martinez, with a Z.

4            Q.   So lawyers came to the hospital when you

5    were in a coma?

6            A.   No.  I was -- I got out of the coma, and I

7    was in the hospital repairing.  And then while -- and

8    during my recovery, a couple different lawyers came to

9    the hospital, and I -- was advised to --

10           MR. SINCICH:  Mr. Gonzalez, don't mention

11   anything that an attorney said to you or anything you

12   said to them.

13           THE WITNESS:  Yeah.  Like I -- like, yeah.

14   I answered the question, yeah.  Lawyers I first saw in

15   the hospital on January 2024, January 2024 -- February

16   2024.

17           Q.   BY MS. KORNBLAU:  January of 2024?

18           A.   In February of 2024.

19           Q.   So without telling me the substance of any

20   communications, can you tell me the names of the

21   lawyers that visited you in the hospital in February

22   of 2024?

23           A.   That would be so hard for me to remember,

24   ma'am.

25           Q.   Was it Trent Packer?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 49

1          A.   Yes, I believe -- I believe -- I

2   believe -- I believe Trent -- you know what?  Trent

3   Packer seen me the first time over a video chat at

4   Smith Correctional Facility in Banning over video

5   chat.

6          **Q.   Okay.**

7               **On how many occasions have you spoken with**

8   **lawyers about this case?**

9               **Again, without telling me the substance,**

10  **just on how occasions did you speak with lawyers about**

11  **this case?**

12         A.   Quite a few.

13         **Q.   Can you give me an estimate?**

14         A.   No, I cannot.

15         **Q.   More than five?**

16         A.   Yes, ma'am.

17         **Q.   More than 10?**

18         A.   I don't know if they were all lawyers.

19  Some of them could have been, like, paralegals.  Some

20  of them could have been lawyer helpers.  I don't know

21  if they were all lawyers every time I spoke to

22  someone.

23               But they were from lawyer offices, and,

24  yes, about 10, maybe 10, maybe more.  I'm sure

25  probably -- I just -- every day's the same, ma'am.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                    Page 50

```
 1    It's hard for me to remember.
 2             Q.   Okay.
 3                  And so you can't remember.  Is that what
 4    you're saying?
 5             A.   Yeah.  I can't remember how many times.
 6             Q.   And that's because you have issues with
 7    your memory?
 8             A.   It's just because I can't remember how
 9    many times.  Like, I'm not -- I just live my life.  I
10    don't count days.  I don't count.  I just -- I just
11    read the Bible and try to just get through every
12    single day hoping that I can just be a regular person
13    just like you.
14             Q.   Okay.
15                  So you think maybe 10 or more times you've
16    spoken with lawyers about this case?
17                  MR. SINCICH:  Asked and answered.
18                  THE WITNESS:  Yes, ma'am.
19                  You're estimation.  You're saying five;
20    you're saying 10.  I'm saying, like, sure.  Yeah.
21    Like, I'm guessing.  I'm guestimating.  I can't tell
22    you an exact number.  I'd be lying to you if I told
23    you an exact number.
24                  I could sit here and try to remember how
25    many times, but I know that the lawyer's offices
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 51

```
 1   wasn't the same lawyer's offices.  It was two

 2   different lawyer's offices.

 3              And I know that it's been several amount

 4   of times.  But I don't understand why that is -- like,

 5   I don't understand why that would have anything to do

 6   with what's going on right now.

 7              Q.   BY MS. KORNBLAU:  So before today, in

 8   preparation for this deposition, how many times have

 9   you spoken with lawyers?

10              A.   I don't know how many times, but I have

11   spoken with lawyers before this deposition, ma'am.

12              Q.   Okay.

13              How many times have you spoken with

14   lawyers to prepare you for this deposition?

15              A.   I think you're asking the same question,

16   like -- in a lot of different ways, but I am answering

17   it as best I can.  I'm telling you I have no idea how

18   many times, ma'am.

19              Q.   Okay.

20              More than once?

21              A.   I just -- yes, ma'am.  More than once.  I

22   said maybe about -- maybe -- maybe around double

23   digits.  I know it hasn't been 30, 40 times.  I know

24   it hasn't been less than 10.  I know it's been in the

25   range between 10 and 20, maybe.  I would be lying to
```

```
 1   you if I told you I knew exactly how many.

 2            Q.   What did do you in preparation for this

 3   deposition?

 4            A.   I was shot.  What do you mean?  Like -- I

 5   was shot, and I -- I was in hospital.  I was hurt,

 6   like, I was trying to --

 7            Q.   Do you understand my question?

 8            A.   Yeah.

 9            Q.   Remember, I told you at the beginning of

10   this deposition, and you agreed to it, that if you do

11   not understand my question to let me know.

12                 Do you remember that?

13            A.   Yes, ma'am.

14            Q.   And I asked you what did you do to prepare

15   for this deposition?

16            A.   And I answered it.

17            Q.   And what was your response?

18            A.   I was shot.

19            Q.   Okay.

20                 So how did you prepare to give this

21   deposition?

22            A.   My lawyers.

23                 MR. SINCICH:  Calls for speculation.

24   Lacks foundation.  Asked and answered.

25            Q.   BY MS. KORNBLAU:  Okay.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                           Page 53

```
 1                Go ahead.  You can answer.
 2        A.    My lawyers prepared for this deposition.
 3   They did paperwork.  I just know truth.  I know facts,
 4   and you're asking me questions, and I'm answering to
 5   my best abilities.
 6        Q.    Did you --
 7        A.    This is not a school test.  This is not an
 8   essay.  This is a deposition.  This is my deposition.
 9   I don't understand what I can do to prepare.
10             Like, it's not like a test, like I'm
11   trying to ace the test or cheat, or something.  Like,
12   I didn't nothing to prepare.  All I did was wait for
13   you to call me to the deposition, so I can tell you
14   what happened.
15        Q.    Okay.
16             I'm going to ask the court reporter if we
17   are able to get a roughly draft of this deposition.
18   If we are able to have a conference call with the
19   Magistrate Judge, because I would like to show them
20   this rough transcript.
21                  Are we able to do that?
22             THE REPORTER:  Can we go off the record?
23             MS. KORNBLAU:  Yes.
24             THE VIDEOGRAPHER:  We're going off the
25   record at approximately 9:09 a.m.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2            12/11/2025                    Page 54

```
 1                    (Pause in proceeding.)
 2                    THE VIDEOGRAPHER:  We are back on the
 3     record at approximately 9:11 a.m. for the remote
 4     deposition of George Gonzalez.  The date is December
 5     11, 2025.
 6                    Q.   BY MS. KORNBLAU:  Mr. Gonzalez, so we just
 7     took a short break so that I could communicate and see
 8     if we could get a rough draft of this transcript if
 9     we're able to get a conference call with the
10     Magistrate Judge to resolve some disputes.
11                    Okay.
12                    So I'm asking you some questions.  I need
13     responses to these questions.  If your attorney has
14     objections, just give a couple of seconds after I ask
15     my question before you respond so that your attorney
16     can make objections, and a judge can decide what's
17     going to happen with that question and answer at a
18     later time.
19                    Are you okay, Mr. Gonzalez?
20                    Okay.
21                    So -- but I do need responses to my
22     questions.  Okay?
23                    A.   Yes, ma'am.
24                    Q.   And I'll give you an opportunity to at the
25     end, if there are certain things that, you know, you
```

1    feel that you need to say because you said this is my

2    deposition, so we can handle it that way later.

3              But for now, I really need responses to my

4    questions.  I'm trying to get through this.  We are

5    very limited on our time, so please just respond to my

6    questions.  Okay.

7              So I was asking you about what you've done

8    to prepare for the deposition.  Did you review any

9    documents?

10         A.   Yes.

11         Q.   What documents?

12         A.   I was emailed a lot of documents.

13         Q.   Okay.

14              And who emailed you the documents?

15         A.   Trent Packer and Dale Gapilo's office.

16         Q.   Okay.

17              And what was emailed?

18         A.   It was a lot of questions, and I went over

19    the questions, and we answered them to best of my

20    abilities.  We --

21         Q.   What questions?

22         A.   All the questions --

23              MR. SINCICH:  (Unintelligible.)

24              THE REPORTER:  I'm sorry.  What was the

25    objection?

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2               12/11/2025                          Page 56

```
 1              MR. SINCICH:  Overbroad.

 2              THE REPORTER:  Thank you.

 3              THE WITNESS:  All the questions that were

 4   sent in the -- I forget how to say the word.  But

 5   it's -- it's a big word.  It's like when you search

 6   for something.  You guys' -- I don't know the word.

 7         Q.   BY MS. KORNBLAU:  Who wrote the

 8   questions?

 9         A.   The questions were, like, a hundred

10   questions, and it was just asking me my -- everything,

11   my children, my -- where I went to school, where

12   I -- just, like, everything.  It was asking me

13   everything about everything but nothing about what

14   happened that day.

15         Q.   Who wrote the questions that were sent to

16   you?

17              MR. SINCICH:  Calls for speculation.

18              THE WITNESS:  I have no idea, ma'am.  I

19   think -- I have no idea.

20         Q.   BY MS. KORNBLAU:  Was it on pleading

21   paper?

22              MR. SINCICH:  Lacks foundation.

23              THE WITNESS:  It was court documents.  It

24   said "George Gonzalez against the State of" --

25         Q.   BY MS. KORNBLAU:  So the questions were
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 57

1    court documents?

2              I'm just trying to understand what these

3    questions are that you're talking about.  What did

4    they look like?

5              Was it on just plain white paper with

6    questions, like one through 100?

7         A.   They were read to me.  I -- I have my

8    mother, and she -- and she --

9         Q.   Stop.  Stop.  Stop.  Can you start over

10   again, because you broke up.

11             A.   I have lawyers that call me, and they ask

12   me questions, and they have assistants that call me,

13   and they ask me questions, and I answer the questions

14   that are asked by you guys.

15             It's the questions that are the defense of

16   the County of Riverside or State of California or City

17   of Hemet, it's the questions that you guys are asking

18   me for.  It's the questions that you want to know.

19   It's those questions.

20        Q.   Okay.

21             I just wanted to know who prepared the

22   questions, if it was on pleading paper, and it was

23   questions that the City of Hemet prepared or the State

24   of California prepared or questions that your

25   attorney's prepared and sent to you.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2            12/11/2025                    Page 58

```
 1              That's all I'm asking you.  I'm not asking
 2   for -- don't tell me the words of what the questions
 3   were.  Just who prepared the questions that were
 4   emailed to you?
 5         A.   I have no idea, ma'am.  I wouldn't be able
 6   to tell you that.  I can ask my attorney who prepared
 7   the questions.
 8         Q.   Okay.
 9              So other than questions, what else did you
10   review in preparation for your deposition today?
11         A.   I haven't reviewed anything.
12         Q.   Have you reviewed any audio?
13         A.   No, ma'am.
14         Q.   Have you reviewed --
15         A.   Well, I've seen audio from my family
16   members, their Ring doorbells, and, like, just listen
17   to all the shots.  It sounded like 80-something shots,
18   or something.
19         Q.   What are you talking about now?
20         A.   I'm talking about I've seen audio -- I've
21   seen audio, like Ring doorbells of, like, the
22   neighborhood right there, just a bunch of shots.
23   Everyone was, like, hey.  That's the day I got shot.
24   It was just -- it just could hear on Ring doorbell.
25         Q.   You've heard or seen video from Ring
```

1    doorbells from this incident?

2              A.    Yes.

3              Q.    Who provided you with -- is it video or

4    audio or both?

5              A.    Both.  But my parents, my mother and

6    father have it.

7              Q.    And what's your father's name?

8              A.    Abel Eddie Martinez.

9              Q.    Can you spell his first name?

10             A.    A-b-e-l.

11             Q.    Last name, Martinez, M-a-r-t-i-n-e-z?

12             A.    Yeah.

13             Q.    What's his phone number?

14             A.    951-769-2345.

15             Q.    So he has audio and video, and your mother

16   does as well; is that right?

17             A.    My father.  My father has audio and video.

18             Q.    Okay.

19                   Your mother, does she?

20             A.    I don't know if she has it.  She doesn't

21   want to listen to it.  She -- she doesn't want to hear

22   it.  It's too -- it's so -- it's like -- just sounds

23   like Afghanistan, or something.  Like, it sounds like

24   a war clip or something.

25             Q.    And how were you shown the audio or

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                                Page 60

```
1    video -- or you said both.  So how were you shown the
2    video and audio?
3              A.   My dad had it on his phone.
4              Q.   And, again, you believe these are Ring
5    doorbells.  Do you know the source?
6              A.   I'm not sure.  You'd have to ask my
7    father.
8              Q.   We will do that.  Okay.  All right.
9                   So other than emailed questions and Ring
10   doorbell video and audio footage, any other items that
11   you reviewed in preparation for your deposition?
12             A.   No, ma'am.
13             Q.   Okay.
14                  Did you watch any video other than Ring
15   footage?
16             A.   No, ma'am.
17             Q.   Did you watch any video footage from this
18   incident?
19             A.   I wasn't provided any.
20             Q.   Have you ever seen video footage of this
21   incident?
22             A.   No.
23             Q.   All right.
24                  So back to a little bit more background.
25   What crimes have you been convicted of during your
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                              Page 61

1   lifetime?

2            A.   I don't understand what that has to do

3   with me being shot in my back with my hands up

4   surrendering.

5            Q.   Okay.

6                 I'm going to object and move to strike

7   your entire response as non-responsive.

8                 Mr. Gonzalez, what crimes have you been

9   convicted of during your lifetime?

10           A.   I don't understand what that has to do

11  with me being shot in the back with my hands up.

12           Q.   Objection.  Move to strike the entire

13  response as non-responsive.

14                Mr. Gonzalez, what crimes have you been

15  convicted of during your life time?

16           A.   I cannot recall all the crimes I've been

17  convicted of, but they are mostly just drug-related

18  crimes.

19           Q.   Okay.

20                So you said that you were first

21  incarcerated when you were 10 years old.  What was

22  that for?

23           A.   I can't remember.  I was fighting someone

24  at school, or something, and the teacher said she was

25  going to take me to my parents.  And I told her -- I

1   gave her a dumb response.  I was just a little child.

2           Q.   Okay.

3                So fighting at school?

4           A.   Something like that, yeah.  I was being

5   bullied at school, and I just always got the bad end

6   of the stick.

7           Q.   How many times did you get into fights at

8   school?

9           A.   I cannot remember.  I was always fighting

10  for other people that couldn't fight, who couldn't

11  stand up for their self.

12          Q.   Okay.  All right.

13               So after the first time that you were

14  incarcerated when you were 10 years old, when was the

15  next time that you were arrested?

16          A.   When I was 12.

17          Q.   Okay.

18               And what for?

19          A.   I forget.  Maybe having marijuana, or

20  something.

21          Q.   At 12 years old?

22          A.   Yeah.  I had marijuana.

23          Q.   Where did you get it from?

24          A.   I have no idea, ma'am.  I don't know.  I

25  found it on the street, or something.  Found it at the

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 63

```
 1   park.
 2            Q.   Were you in a gang?
 3            A.   No.  I'm not in no gang.
 4            Q.   Have you ever been in a gang?
 5            A.   No, ma'am.
 6            Q.   I see tattoos on your face.  Can you tell
 7   me what those are?
 8            A.   My significant other's name.  It's a
 9   song.
10            Q.   Okay.
11                 So after 12 years old, when was the next
12   time you were arrested?
13            A.   I came a ward, a ward of the state, I
14   guess, or -- from there on, I went to placement.  I
15   went to it a lot of different placements.  I
16   can't -- it's over -- just over and over placements.
17   They put me inside of a broken system.
18                 And I was just -- put inside of a cell
19   with no friend, water, no toilet, no nothing.  Like, I
20   was -- no book.  It was bad.  I can't recall.
21            Q.   Let's start with when you turned 18.  So
22   when was the first time after you turn 18 that you
23   were convicted of a crime?
24            A.   I can't remember.  I don't -- I don't
25   understand the question.  I can't -- I can't remember
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 64

```
1   my crimes.  Like, I'm 33 years old now, and I -- I
2   think it was, like, just for -- it was because the
3   police left drugs in my pocket when they took me to
4   jail, and they charged me when I got to jail.
5                I was sleeping, and I get to the bench,
6   and they pull drug out off me, like, "Oh, you brought
7   it into the jail," and they charged me for that.
8           Q.   What were you arrested for, though, before
9   you were in custody, and you're claiming that there
10  was drugs found in your pocket?
11          A.   It was just for a DUI.
12          Q.   "DUI"?  Okay.
13               So driving while intoxicated?
14          A.   No.  They just -- they said that I was
15  under the influence of something, not intoxicated.
16          Q.   Okay.
17               What were you under the influence of?
18          A.   Marijuana, I think.
19          Q.   Did you have a driver's license?
20          A.   Yeah.
21          Q.   And was it active?
22          A.   Yeah.
23          Q.   How old were you?
24          A.   I was 18.
25          Q.   Okay.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 65

```
 1              So after DUI when you were 18, what was
 2     the next crime that you were convicted of?
 3              A.   I have no idea, ma'am.  I have no idea.
 4     Like, I wouldn't even be able to tell you.
 5              Q.   So -- and you've said you have no idea.
 6     Is that because you have issues with your memory?
 7              A.   Well, yeah.  Like, I cannot remember -- I
 8     can't remember my crimes.  Like, I can't remember my
 9     crimes.  Like, I try to forget my crimes.  I try to
10     have a better life.
11              Q.   Okay.
12              And have you always been unable to
13     remember all of your crimes?
14              MR. SINCICH:  Argumentative.  Vague.
15              THE WITNESS:  I don't understand.
16              Q.   BY MS. KORNBLAU:  Okay.
17              So were you arrested when you were 20
18     years old?
19              A.   (No audible response.)
20              Q.   Do you need a break, Mr. Gonzalez?
21              A.   I'm okay.
22              Q.   Okay.
23              Let me know if at any time you need a
24     break, we can take one.
25              Okay?  Even if it's just you need to stand
```

1    up, or you just need to breathe for a minute.  Okay?

2              A.   I don't know.  I -- I -- it was just

3    always drug-related.  It was just -- me -- it was

4    me -- I just -- I self-medicate, because I had a

5    really rough childhood, really rough childhood.

6              Q.   Okay.

7                   So you said you have a rough childhood,

8    and you self-medicate.  What do you self-medicate

9    with?

10                  MR. SINCICH:  Overbroad.  Vague and

11   ambiguous.  Vague as to time.

12                  THE WITNESS:  I don't understand why that

13   matters.  Like, what I -- I've been -- I've been given

14   medication.  I've self-medicated.  I don't understand

15   what that has to do with any of this.  I don't --

16             Q.   BY MS. KORNBLAU:  Okay.

17                  What do you self-medicate with?

18                  MR. SINCICH:  Same objections.

19                  THE WITNESS:  I don't understand.  Why are

20   you asking me that?

21             Q.   BY MS. KORNBLAU:  Okay.

22                  Can you answer question?

23             A.   Why would I answer you that question?

24   Like, it has nothing to do with the day I was shot by

25   the police officer.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                              Page 67

1           Q.    Are you refusing to answer the question?

2           A.    I'm not refusing to answer your question.

3    I just don't understand what you're asking me.

4           Q.    What do you self-medicate with?

5           A.    Why are you asking me this?

6                 MR. SINCICH:  Same objections.

7                 Mr. Gonzalez, you can answer to best of

8    your knowledge, please.

9                 MS. KORNBLAU:  Please doesn't coach the

10   witness.

11                MR. SINCICH:  I asked him to answer your

12   question to the best of his knowledge.

13                MS. KORNBLAU:  It's coaching.

14                MR. SINCICH:  No, it's not coaching.

15                MS. KORNBLAU:  That is coaching.  What is

16   your objection, Mr. Sincich?

17                MR. SINCICH:  I gave the same objections,

18   and I'm asking him to answer your question.  It's not

19   coaching.

20                THE WITNESS:  I self-medicated with

21   marijuana, with anything, alcohol.

22          Q.    BY MS. KORNBLAU:  What about meth?

23          A.    Sure.

24          Q.    What about Fentynal?

25          A.    No.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2            12/11/2025            Page 68

1        Q.    You've never self-medicated with Fentynal?

2        A.    At that age?  No.

3        Q.    Okay.

4              What about at the time of the incident?

5              MR. SINCICH:   I'm going to instruct him

6    not to answer under Fifth Amendment privilege.

7        Q.    BY MS. KORNBLAU:  Okay.

8              Have you been convicted of any crimes as

9    it relates methamphetamine, marijuana, alcohol or

10   Fentynal?

11       A.    I said nothing about Fentynal.  You did.

12       Q.    I'm asking the question.

13       A.    But why?

14       Q.    Okay.

15             Mr. Gonzalez, I'm asking you the

16   questions.  Please just give me answers to the

17   questions.

18             Do you understand?

19       A.    No.

20       Q.    You don't understand that I'm asking you

21   questions, and that you need to give me responses?

22       A.    I understand that I want to move forward

23   with this deposition.  I don't want to answer

24   questions like that.

25       Q.    So you're telling me that you're going to

```
 1   decide what questions you will answer.  Is that what
 2   you're saying?
 3                   MR. SINCICH:  Misstates testimony.
 4                   THE WITNESS:  I'm an American citizen.  As
 5   an American citizen, I have the right to answer what I
 6   want to and what I don't want to.
 7                   If I don't understand why you're asking
 8   the question, and if it doesn't pertain to the
 9   lawsuit, why would I answer a question that doesn't
10   pertain to this lawsuit?
11           Q.   BY MS. KORNBLAU:  Okay.
12                   So I'm making a record that I am asking
13   you questions, and you are telling me that you will
14   decide what questions you will answer?
15           A.   Well, we're deciding what questions you
16   ask; right?
17           Q.   Mr. Gonzalez, we're going to have to
18   suspend this deposition if you are going to refuse to
19   answer my questions.  Okay?
20                   This is your lawsuit.  I have a right to
21   investigate and ask you questions about it.  Do you
22   understand that?
23           A.   You're trying to make me look like a bad
24   person, or like I'm an abuser, or like something
25   like -- I am just a regular person like anyone else.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                          Page 70

```
 1              Like, why are you trying to make me look
 2   like I'm a druggie, or, like, why are you asking me
 3   questions about stuff --
 4         Q.   I'm not giving any appearance.  I am
 5   simply asking you questions.
 6              MR. SINCICH:  I don't want this to turn
 7   into an argument.  If we can take -- because there's
 8   no question pending, let's take a five-minute break.
 9   I want to talk to my client, so that we can try to
10   move forward and not have to --
11              MS. KORNBLAU:  Sure.
12              MR. SINCICH:  Go off the record, please.
13              MS. KORNBLAU:  Let's take a 10-minute
14   break, sure.  Off the record.
15              THE VIDEOGRAPHER:  We're going off the
16   record at approximately 9:29 a.m.
17              (Pause in proceeding.)
18              THE VIDEOGRAPHER:  We are back on the
19   record for the remote deposition of George Gonzalez.
20   The date is December 11, 2025, and time is
21   approximately 9:44 a.m.
22         Q.   BY MS. KORNBLAU:  Okay.
23              Mr. Gonzalez, we're back from a short
24   break.  Do you understand you're still under oath?
25         A.   Yes, ma'am.
```

```
 1              Q.    Thank you.

 2                    So I was asking you about what crimes

 3      you've been convicted of during your lifetime.  Are

 4      you able to give me a list of those crimes?

 5              A.    I have been convicted of possession of

 6      methamphetamines.  I've been convicted of possession

 7      of a firearm.  I've been convicted of possession of

 8      paraphernalia.  I've been convicted of domestic

 9      violence.

10                    I've been convicted of obstructing -- I've

11      been convicted -- what's it called?  I've been

12      convicted of running -- running from the police, like

13      running, absconding -- not absconding.  It's called --

14              Q.    Evading?

15              A.    -- evading, yes, ma'am.  I've been

16      convicted of evading.

17                    I've been convicted of possession of drugs

18      inside of a prison.  I've been convicted of taking a

19      vehicle without the owner's consent.

20              Q.    Is that theft?

21              A.    No.  It was just -- it wasn't -- I

22      think -- I'm pretty sure -- I think it was -- you know

23      what?  I'm thinking maybe that was dropped, because

24      the owner sent a letter saying that he let me take the

25      car.  So I haven't been convicted of that.
```

```
 1                  I've been convicted of assaults.  Like, I
 2   think it was like a battery one time when I was a
 3   minor, I think.  Oh, you said after I was 18.  Yeah.
 4   I can't think of many other things, just like drug
 5   charges.
 6              Q.   Okay.
 7                   So domestic violence, is it your
 8   understanding that that is a violence-related crime?
 9              A.   No.  It wasn't a violent-related crime.
10   It was a corporal -- corporal injury.  It was a verbal
11   dispute over laundry.
12                   They said because we were arguing over
13   laundry, and that it was not a violent crime, there
14   was no violence committed.
15              Q.   Has anyone accused you of violence?
16              A.   No.  I'm not a violent person.  I have no
17   violence on my record.
18              Q.   Your wife or -- fiance, you said, right,
19   Yvette?
20              A.   Yeah.
21              Q.   Has she ever accused you of domestic
22   violence?
23              A.   No.  It was City of Hemet that accused me
24   of it.  She told them that I did not do anything, that
25   it was not that.  She told them that it was an
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                      Page 73

 1    argument over laundry.

 2              And they said that a neighbor called, and

 3    they charged me for domestic violence.  They said that

 4    because we were arguing over laundry, that it is

 5    considered domestic violence, because we're not

 6    allowed to argue.

 7         **Q.   Have you ever had a restraining order**

 8    **placed against you?**

 9              A.   Yes.  But that was only because CPS took

10    my children, and forcefully, out of their

11    jurisdiction, told her she had to go get a restraining

12    order in order to get her children back.

13              And I was already told by a senior CPS

14    officer, a supervisor, that that was out of

15    her -- their jurisdiction, that they should have never

16    done that.  So, yeah.  She placed it to get her kids

17    back.

18         **Q.   Is it your understanding that a**

19    **restraining order is meant to prevent someone from**

20    **having contact with another?**

21              A.   I understand, but -- yeah.  We understand

22    that.  But we were caught together so many times,

23    because we never wanted a restraining order.

24         **Q.   Was that restraining order granted by a**

25    **judge?**

```
 1            A.    In order to get our kids back, yeah.

 2            Q.    Okay.

 3            So a restraining order was granted by

 4   Yvette against you; is that right?

 5            A.    Yes, because CPS took her kids and said if

 6   she wanted her children back, she had to put it.

 7            Q.    So you conspired to lie to get a

 8   restraining order.  Is that what you --

 9            A.    I didn't conspire to lie ever.

10            MR. SINCICH:  I'll instruct you not to

11   answer.  You're not going to answer that question.

12   Fifth Amendment privilege.

13            MS. KORNBLAU:  Okay.

14            Well --

15            MR. SINCICH:  It's argumentative.

16            Q.    BY MS. KORNBLAU:  Mr. Gonzalez, you've

17   been saying that someone got a restraining order, so

18   you could get your kids back.

19            So are you saying --

20            A.    So she can get them tooken back.  I was in

21   prison.  I never got the kids back.  They were never

22   in my custody.  I went to jail.  I was in jail.  She

23   did it so she could get her children back.  I wasn't

24   even out.  There was no issues to even being around

25   me.  So it didn't even matter.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                              Page 75

```
 1              Q.   You were aware of what was occurring with
 2     regard to the restraining order; right?
 3              A.   No.
 4              Q.   "No"?
 5              A.   I'm just telling you now that the
 6     supervisor told me that they were out of their
 7     jurisdiction, to tell her to get it.
 8              Q.   Well, we can look up that case then,
 9     but -- okay.
10              So -- but the restraining order was
11     granted against you by Yvette.  When was restraining
12     order granted?
13              A.   I'm not sure.
14              Q.   Can you give me a year?
15              A.   I have no idea.
16              Q.   Can you give me an estimate?
17              A.   No, ma'am.
18              Q.   Was it 2020?
19              A.   I have no idea.
20              Q.   Was it before this incident?
21              A.   Yes.
22              Q.   All right.
23              You said that you were convicted of
24     running from police.  When was that?
25              A.   I was convicted of evading that day I was
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                          Page 76

```
1    shot.

2              Q.    What year?

3              A.    2024.

4              Q.    Okay.

5                    Is that only time you were convicted of

6    running from police?

7                    MR. SINCICH:  Misstates testimony.

8                    THE WITNESS:  I have no idea, ma'am.  I

9    don't know, because when they convict you, they put a

10   lot of charges.  But then they end up only convicting

11   you for one or two of them, and I can't remember every

12   time.

13                   I know that I'm just signing the paper to

14   go to be done with the court system.  I don't

15   even -- I just sign paper, and I go.  I do whatever my

16   attorney tells me to do.  I'm not a lawyer.  I don't

17   look over the papers.  I just sign.  I know how much

18   time I'm getting, and I go.

19             Q.    BY MS. KORNBLAU:  Okay.

20                   Is "running from police" and "evading" the

21   same thing?

22             A.    No.

23             Q.    Okay.

24                   So those were two separate charges or

25   convictions?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                    Page 77

```
 1              A.   No.  It was -- evading is what they
 2   charged me for when I went to -- when I was shot.
 3              Q.   Okay.
 4                   And I don't know what you're talking
 5   about.  So, okay.
 6                   You said you were convicted of running
 7   from police; is that correct?
 8              A.   The day I was shot, I was convicted for
 9   evading.
10              Q.   Okay.
11                   Were you convicted of running from police?
12              A.   That's not a charge.  It's the same thing.
13              Q.   Okay.
14                   I'm asking about the things that you
15   listed when I asked if you've been convicted of
16   crimes, and you gave me a list, and I wrote it down.
17                   You wrote -- DV -- or you said DV.  After
18   that, you said running from police, and then evading.
19   And you're saying "running from police" and "evading"
20   are two separate crimes?
21              A.   No.  You're saying that.  I'm telling you
22   it's the same thing.  It's the same day.
23              Q.   All right.
24                   So what were you convicted of as a result
25   of the January 2024 incident that we're here talking
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 78

1   about?

2              A.   Evading and possession of a firearm.

3              Q.   **And did you take a plea deal, or were you**

4   **convicted by a jury?**

5              A.   I took a plea deal.

6              Q.   **And those were only two that you**

7   **were -- that you pled to?**

8              A.   I'm not -- I'm not positive, ma'am.

9              Q.   **Okay.**

10                  **But the only two you're aware of is**

11  **evading and possession of a firearm?**

12             A.   That day, I'm pretty sure, ma'am.  But I

13  have open -- I have open court case for maybe four

14  years, and, like, over -- like, I don't know what I

15  pled to.  I'm not sure that day.  I know that it was a

16  lot of signing.

17                  But I think I pled to a violation of my

18  restraining order.  I pled -- like, it was -- it was a

19  whole package deal, but I end up getting, like, three

20  years of half and something.

21             Q.   **Okay.  Yeah.**

22                  **I was going to ask you.  What is the**

23  **sentence?**

24             A.   It was three years and eight months with

25  half.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                              Page 79

```
1              Q.    What does that mean?
2              A.    Three years and eight months, and I do
3    half the time.  So I would do a year and a half, plus
4    four months, so that would be 22 months.
5              Q.    Okay.
6                    And when are you expecting to be
7    released?
8              A.    No.  I already was released for that.
9              Q.    Okay.
10                   And what are you currently in custody for?
11             A.    Those are open cases, and I do not wish to
12   speak about any open cases during this deposition.
13             Q.    Okay.
14                   So have you been convicted?
15             A.    I haven't been convicted of anything since
16   then.
17             Q.    Okay.
18                   So you've only been charged?
19             A.    I haven't been charged with nothing.  I
20   don't know.
21             Q.    Okay.
22                   So why are you currently in custody?
23   What's your understanding?
24             A.    I don't choose -- I choose not to speak
25   about anything that has to do with any open cases,
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 80

1   because I know it can be used against me in the court

2   of law.  I do not want to do that.  Thank you.  I can

3   take my Fifth Amendment.

4           **Q.    So you're pleading the Fifth as to any**

5   **questions about why you're currently in custody?**

6           A.    I'm pleading the Fifth about any open

7   cases that I have, which is my right as an American

8   citizen.

9           **Q.    Okay.  Okay.**

10          **And I will reserve my right to bring you**

11  **back for a further deposition to answer questions**

12  **about your current custody.  Okay.**

13          **So you already did your time as it relates**

14  **to the incident in January of 2024; correct?**

15          A.    Yes, ma'am.

16          **Q.    And when were you released?**

17          A.    I can't remember.

18          **Q.    You don't remember the date?**

19          A.    No, ma'am.

20          **Q.    Okay.**

21          **When were you arrested again?**

22          A.    I can't remember.

23          **Q.    How soon after you were released as a**

24  **result of this incident were you then arrested again?**

25          A.    I just said I don't want to speak about

 1   anything -- like, I don't want to speak on any open

 2   cases that I have.  I don't --

 3          **Q.   I'm not asking for the substance of it.**

 4   **I've simply asking about when you were arrested?**

 5          A.   And I plead the Fifth.

 6          MR. SINCICH:  You can provide the dates,

 7   Mr. Gonzalez.

 8          THE WITNESS:  Okay.

 9          Well, I was arrested like eight months

10   later.

11          **Q.   BY MS. KORNBLAU:  Okay.**

12          A.   Ten months.  No, 10 months later.

13          **Q.   Do you remember the date?**

14          A.   I don't remember.

15          **Q.   Okay.**

16          **Have you ever used any drugs or had any**

17   **substance abuse problems?**

18          MR. SINCICH:  Vague and ambiguous.

19   Overbroad.

20          If it has to do within the statute of

21   limitations and within the last three, years I'm going

22   to instruct you not to answer.  But outside of the

23   last three years, you can respond to whether or not

24   you had used drugs.

25          MS. KORNBLAU:  So, Mr. Sincich, you are

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                          Page 82

 1  narrowing the scope of what my question was; is that
 2  right?
 3              MR. SINCICH:  If you would like to take it
 4  that way; otherwise, I'm going to instruct him not to
 5  answer within the last three years.
 6              MS. KORNBLAU:  And on what basis are you
 7  going to instruct him not to answer my question?
 8              MR. SINCICH:  Privilege.
 9              MS. KORNBLAU:  What privilege?
10              MR. SINCICH:  The Fifth Amendment.
11              MS. KORNBLAU:  Okay.
12              I'm asking him if he's ever used any
13  drugs.
14              MR. SINCICH:  Right.  That would encompass
15  any kind of drug use that was within the statute of
16  limitations.  And so if the question is beyond that,
17  then I'll allow it, but that's up to you.
18              THE WITNESS:  Why are you asking if I used
19  drugs?
20          Q.  BY MS. KORNBLAU:  Okay.
21              I'm not going to limit my question, so --
22          A.  Then I don't want to answer that question.
23          Q.  Okay.
24              And I will reserve my right to bring you
25  back.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 83

```
 1              A.   I already answered that question.  You
 2   asked that question, and I answered that question.  I
 3   told I used marijuana.  I told you I used alcohol.
 4              But I didn't say that I use it during the
 5   crime, within the last few years, or anything like
 6   that.  I'm telling you I used it as a minor to
 7   self-medicate for my bad childhood, I told you.
 8              Q.   Okay.
 9              And I'm not just asking you about when you
10   were a minor.  I'm asking you from when you were born
11   until present, have you ever used any drugs or had any
12   substance abuse problems?
13              MR. SINCICH:  Overbroad.  Vague and
14   ambiguous.
15              THE WITNESS:  I don't understand what that
16   has to do with anything, ma'am, and you know the
17   answer to that question already.
18              Q.   BY MS. KORNBLAU:  Okay.
19              I'm reserving my right to bring you back
20   for a further deposition if you are not going to
21   answer my question now.
22              So are you going to answer my question?
23              MR. SINCICH:  It's asked and answered.
24              THE WITNESS:  Asked and answered.  I
25   answered it.
```

```
 1              Q.   BY MS. KORNBLAU:  Okay.

 2              I'd like you to answer it again, please.

 3   Have you ever used any drugs?

 4              MR. SINCICH:  You can respond to that

 5   question.

 6              THE WITNESS:  I have used drugs as a minor

 7   growing up, and I have used drugs three years prior

 8   to --

 9         Q.   BY MS. KORNBLAU:  And I'm not limiting my

10   question.  So you just limited it.  I'm not doing

11   that.  So I will bring you back for a further

12   deposition.

13              Okay?

14              MR. SINCICH:  I'll object to that for that

15   question.

16         Q.   BY MS. KORNBLAU:  Okay.

17              So have you ever had any substance abuse

18   problems?

19              MR. SINCICH:  Vague and ambiguous.

20              THE WITNESS:  I don't think I have.

21         Q.   BY MS. KORNBLAU:  I'm not asking if you

22   think you have.  Have you had any substance abuse

23   problems?

24              MR. SINCICH:  Same objection.

25              THE WITNESS:  I don't understand why that
```

```
 1   has to do with anything.
 2              Q.    BY MS. KORNBLAU:  Okay.
 3              I will reserve my right to bring you back
 4   for a further deposition to respond to that question.
 5              Have you ever gone to rehab?
 6              MR. SINCICH:  I'm going to instruct him
 7   not to answer anything that has to do with any kind of
 8   drug or substance treatment programs.  And that's
 9   HIPAA, CFR, Part 2.
10              THE WITNESS:  I plead the Fifth.
11   Actually, I have a right to --
12              MR. SINCICH:  It's a privilege.  It's
13   privileged.
14              I'll instruct you not to answer.
15              MS. KORNBLAU:  Mr. Sincich, we have a
16   protective order in this case, and you're raising
17   HIPAA.  You've produced his medical records -- some
18   medical records.
19              So what is the basis for your objection to
20   answer that question?
21              MR. SINCICH:  I've already put my basis on
22   the record.  You can continue.
23              MS. KORNBLAU:  Okay.
24              I'm reserving my right to bring this
25   witness back for a further deposition.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                          Page 86

```
 1              MR. SINCICH:  I object to that.
 2         Q.   BY MS. KORNBLAU:  Okay.
 3              Mr. Gonzalez, have you ever attended rehab
 4   for drugs?
 5              MR. SINCICH:  Instruct not to answer.
 6   Privilege.
 7              MS. KORNBLAU:  What privilege?
 8              MR. SINCICH:  HIPAA, CFR, Part 2.
 9              MS. KORNBLAU:  Again, we have a protective
10   order in this case.  All right.
11         Q.   BY MS. KORNBLAU:  On the date of the
12   incident, January 24, 2024, had you consumed any
13   alcohol?
14         A.   No, I don't -- I don't -- I don't -- I
15   plead the Fifth.  I don't know if I can answer that.
16              MR. SINCICH:  You can answer that
17   question.
18              THE WITNESS:  Had I consumed any alcohol?
19   No, on that day.
20         Q.   BY MS. KORNBLAU:  Okay.
21              Had you taken any drugs on January 23,
22   2024, or January 24, 2024?
23              MR. SINCICH:  Instruct not to answer.
24   Privilege.
25              MS. KORNBLAU:  What privilege?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                    Page 87

```
 1              MR. SINCICH:  Fifth Amendment.

 2              MS. KORNBLAU:  Okay.

 3              Could you please -- he has already

 4   testified that he was charged, convicted, completed

 5   his time.

 6              Why are you saying he's needs to plead the

 7   Fifth at this point if he's already been convicted and

 8   served his time?

 9              THE WITNESS:  I didn't do drug charges.

10              MS. KORNBLAU:  Mr. Sincich, he's already

11   completed his time as it relates to this incident;

12   right?

13              MR. SINCICH:  For the charges filed.

14              MS. KORNBLAU:  Okay.

15              So --

16              MR. SINCICH:  With respect to the plea

17   deal that was given.

18              MS. KORNBLAU:  Okay.

19              So are you saying that he can be charged

20   today or at some time in the future as it relates to

21   something involving the incident in January of 2024?

22              MR. SINCICH:  That would not be my

23   jurisdiction, but it is a possible, because it appears

24   to be within the statute of limitations, and that is

25   why he has a Fifth Amendment privilege.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                            Page 88

```
 1              MS. KORNBLAU:  Okay.

 2              So I'm going to reserve my right to bring

 3    this witness back for a further deposition to answer

 4    these questions.  Okay.

 5              MR. SINCICH:  I object to a further

 6    deposition.

 7              MS. KORNBLAU:  And because I want to just

 8    briefly meet and confer with you, these questions go

 9    to the negligence claim and the defenses that the

10    defendants have regarding contributory negligence.  So

11    I'm entitled to responses to these questions.  Okay.

12              MR. SINCICH:  We disagree on your

13    entitlement to the responses to the questions.

14    There's a testimonial privilege in the Fifth

15    Amendment.  So my objection and instruction stands.

16         Q.   BY MS. KORNBLAU:  And I'm going to reserve

17    my right to bring you back for a further deposition.

18    Okay.

19              So on the date of this incident, had you

20    taken any drugs?

21              MR. SINCICH:  Instruct not to answer.

22    Asked and answered.

23              THE WITNESS:  I plead the Fifth, ma'am.

24         Q.   BY MS. KORNBLAU:  Have you attended any

25    programs to assist with sobriety from drugs or
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                            Page 89

1    alcohol?

2              MR. SINCICH:  Instruct not to answer.

3    Privilege.

4              MS. KORNBLAU:  What privilege?

5              MR. SINCICH:  As part of HIPAA, 42 CFR,

6    Part 2, has to do with any kind of substance treatment

7    program.  And that will stand as the objection for any

8    substance treatment program questions.

9         Q.   BY MS. KORNBLAU:  Have you ever had any

10   psychological problems or counseling?

11             MR. SINCICH:  Overbroad.

12        Q.   BY MS. KORNBLAU:  You can answer.

13        A.   I plead the Fifth.  I have no idea what

14   you're asking.

15        Q.   Okay.

16             So you're refusing to answer my questions

17   with regard to that question?

18        A.   I don't even know what you're asking.

19        Q.   Okay.  Let me ask it again.

20             Have you ever had any psychological

21   problems or counseling?

22             MR. SINCICH:  Compound.  Vague and

23   ambiguous.

24             THE WITNESS:  I still don't understand the

25   question at all.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                    Page 90

1          Q.    BY MS. KORNBLAU:  Okay.

2                Have you ever had any psychological

3    problems?

4                MR. SINCICH:  Overbroad.  Vague.

5                THE WITNESS:  I don't think -- I don't

6    understand.  Like, I'm not a doctor.  I am not a

7    psychiatrist.

8          Q.    BY MS. KORNBLAU:  Have you ever been

9    diagnosed with any psychological conditions?

10         A.    You'd have to ask my -- you'd have to ask

11   my doctor.

12         Q.    Okay.

13               I'm asking you.

14         A.    I don't know.

15         Q.    Have you ever had any counseling as it

16   relates to psychological conditions?

17         A.    As a minor.

18         Q.    Okay.

19               At what age?

20         A.    12, 13, 14, 15, 16, 17.

21         Q.    And did it stop when you were 17?

22         A.    Yeah, because of prison politics, you

23   can't.

24         Q.    So you have not had any psychological

25   counseling since you were 17 years old?

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2            12/11/2025            Page 91

```
 1            A.   Counseling?  No.  I haven't had a regular
 2   counselor or therapist, like when I was a minor, when
 3   I was in the youth programs.
 4            Q.   Have you ever got into any fights with
 5   anyone, other than when you were 10 years old at
 6   school?
 7            A.   Not -- not often, no.  Like, I don't fight
 8   people unless I'm being hit.  Like, I don't know.  I
 9   haven't been -- I haven't fought in awhile.  I don't
10   hit people.
11            Q.   You said, "not often."  So how many times
12   have you gotten into fights with people?
13            A.   Since I was 10 years old, you're saying?
14            Q.   Yes.
15            A.   I mean, I apologize.  Maybe once or twice,
16   or something.  Like, I don't -- I don't remember.
17   Like, I can't remember.
18            Q.   So only once or twice?
19            A.   Maybe.  I'm not a fighter, no.
20            Q.   Do you own any firearms?
21            A.   No.
22            Q.   At the time of incident, did you own a
23   firearm?
24            A.   No.
25            Q.   At the time of incident, were you in
```

1    possession of a firearm?

2         A.   At the time of the incident?

3         Q.   Yes.

4         A.   (No audible response.)

5         Q.   I'm going to --

6              THE REPORTER:  I'm sorry.  I didn't get

7    the answer.

8              THE WITNESS:  Yes.

9              THE REPORTER:  Thank you.

10        Q.   BY MS. KORNBLAU:  Okay.

11             At any time before today, were you

12   interviewed by law enforcement as it relates to the

13   incident in January of 2024?

14        A.   Yes.

15        Q.   Who interviewed you?

16        A.   I don't know.  A sheriff.  I was highly

17   medicated in the hospital.  I was just shot.  I was

18   on -- I was on so much medication I can't even

19   remember.  It was just like a fog.  I don't even

20   know.

21        Q.   I'm going to object and move to strike

22   that response as non-responsive.

23             Were you interviewed by an investigator by

24   the last name of Alfaro as it relates to this

25   incident?

```
 1            A.   Yes, and I was in the hospital.
 2            Q.   Okay.
 3                 So Alfaro interviewed you at the hospital.
 4   Do you remember the date?
 5            A.   I was on pain medication from being shot.
 6   I cannot remember the date.
 7            Q.   Were you being truthful with law
 8   enforcement when you gave your statement?
 9                 MR. SINCICH:  Foundation.
10                 THE REPORTER:  I'm sorry.  The objection?
11                 MR. SINCICH:  Foundation.
12                 THE REPORTER:  Thank you.
13            Q.   BY MS. KORNBLAU:  Mr. Gonzalez, were you
14   being truthful with law enforcement when you gave your
15   statement?
16            A.   To the best of my abilities and to my
17   knowledge, I was telling what I remember.  Like, I
18   wasn't lying to him.  Why would I lie to him?
19                 I told you the truth.  I told him -- I
20   told him what I remember.  I was scared, and I
21   was --
22            Q.   Okay.
23            A.   Like, I was scared, yes.  I was being
24   honest.  And I'm scared of law enforcement, so, like,
25   I'm pretty truthful with them.  I was just shot by
```

 1  them, and they're in there interrogating me.  Like,

 2  what do you mean?

 3          Q.   Okay.

 4               I'm going to ask you some questions about

 5  the statement that you gave.  Let me -- I'm going to

 6  mark this as Exhibit 1 -- as Exhibit 1.

 7               (Exhibit Number 1 was marked for

 8  identification.)

 9          Q.   BY MS. KORNBLAU:  So, Mr. Gonzalez, I'm

10  going to play part of a recording, and then I'm going

11  to ask you if you recognize that as being your voice.

12               And the court reporter does not need to

13  transcribe the audio.

14               (Audio plays.)

15          Q.   BY MS. KORNBLAU:  Okay.

16               Mr. Gonzalez, is that your voice that we

17  here on the recording?

18          A.   Yeah.

19          Q.   Let me play more.

20               (Audio plays.)

21          Q.   BY MS. KORNBLAU:  Were you given your

22  Miranda rights before questions were asked of you?

23          A.   No, ma'am.  I don't remember being given

24  my Miranda rights.

25          Q.   I will play it for you.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                      Page 95

```
 1                     (Audio plays.)
 2          Q.   BY MS. KORNBLAU:  I stopped the recording
 3     at 3 minutes and 20 seconds into the audio that we
 4     have marked as Exhibit 1.
 5               Did you hear that you were being offered
 6     to read the Miranda rights and asked if you wanted to
 7     speak with law enforcement?
 8          A.   Yeah.
 9          Q.   And were you read the Miranda rights?
10          A.   No.
11          Q.   Okay.
12               I'm going to continue playing the audio.
13          A.   Well, I don't remember.  I don't know.
14          Q.   Then let's play the audio so you can hear
15     it.
16               (Audio plays.)
17               THE WITNESS:  Okay.
18               I remember.  Yeah, he did it.
19          Q.   BY MS. KORNBLAU:  Okay.
20               So the investigator did read you the
21     Miranda rights?
22          A.   I'm pretty sure, yeah.  He might have read
23     them all, or he might have stopped.  I might have just
24     told him, like, he didn't have to.
25          Q.   Okay.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                    Page 96

```
 1                    I'm going to continue playing more of the
 2    audio.
 3                    (Audio plays.)
 4         Q.    BY MS. KORNBLAU:   Okay.
 5                    I stopped the video at 4 minutes and 8
 6    seconds.  Did you hear all of the Miranda rights being
 7    given to you?
 8         A.    Yeah.
 9         Q.    And you responded to each question; is
10    that correct?
11         A.    Yeah.
12         Q.    I'm going to play more of the video.
13                    (Audio plays.)
14         Q.    BY MS. KORNBLAU:   Okay.
15                    I stopped the audio at 4 minutes and 34
16    seconds.  What were you referring to when you said, "I
17    have mental health issues"?
18         A.    That's -- that has to do with me and my
19    doctor.  Like, this has nothing to do with this -- it
20    has nothing to do with this.
21         Q.    Are you refusing to answer my question?
22         A.    What was I referring to?
23         Q.    Yes.
24         A.    I have PTSD.
25         Q.    Okay.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2            12/11/2025                                      Page 97

1              Is that the only mental health condition

2    you were referring to?

3              A.    At that moment, yeah.  Because I was

4    scared.  I'm scared of police.  As you can hear, I'm

5    scared.  You can hear that I'm scared.  I'm in a room

6    with the cops after I got shot.  Obviously, I'm

7    scared.

8              Q.    I'm going to play more of the audio.

9              (Audio plays.)

10             Q.    BY MS. KORNBLAU:  I just stopped the audio

11   at 4 minutes and 37 seconds.  You said, "I have

12   paranoia and I'm schizophrenic."

13             Did you hear that?

14             A.    Yeah.

15             Q.    When were you diagnosed with paranoia?

16             A.    As a minor.

17             Q.    What age?

18             A.    14.

19             Q.    Okay.

20             And when were you diagnosed with

21   schizophrenia?

22             A.    When I was 14.

23             Q.    Okay.

24             And did you still have paranoia and

25   schizophrenia at the time of the incident on January

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                          Page 98

1    24, 2024?

2              A.    (Unintelligible.)

3                    THE REPORTER:  I'm sorry.  I didn't get

4    that.

5                    THE WITNESS:  Yeah.  Well, I'm scared.

6    Yeah, I'm scared.  I was scared, schizophrenic.  I'm

7    scared.  I wasn't having no voices in my head.  I was

8    just paranoid, scared that I was going to get killed.

9    I hear that people are yelling.  I heard one yelling.

10             Q.    BY MS. KORNBLAU:  Who diagnosed you

11   with --

12             A.    I told the cops not to shot, because

13   there's people in the house.

14             Q.    Who diagnosed you with paranoia when you

15   were 14?

16             A.    Dr. Patel.

17             Q.    Last name, can you spell it?

18             A.    P-a-t-e-l.

19             Q.    What hospital or facility does he work at?

20             A.    Indio Juvenile Hall, Youth Defender's

21   Program.

22             Q.    And who diagnosed with schizophrenia when

23   you were 14?

24             A.    Dr. Patel.

25             Q.    And same location; correct?

1          A.    Riverside Juvenile Hall.

2          Q.    So you were diagnosed with paranoia on a

3    different day than you were diagnosed with

4    schizophrenia?

5          A.    No.   It was the same diagnosis but two

6    different juvenile halls.

7          Q.    By the same doctor?

8          A.    Yes.

9          Q.    Okay.

10               I'm going to play more of the audio.

11               (Audio plays.)

12         Q.    BY MS. KORNBLAU:  Okay.

13               And you just said you were also suffering

14   from PTSD.  When were you diagnosed with PTSD?

15         A.    Same time.

16         Q.    Can you give me the year?

17         A.    Say 2000, when I was in juvenile hall.

18         Q.    Which one?

19         A.    I can't remember now.

20         Q.    What doctor?

21         A.    Same doctor, ma'am.

22         Q.    Okay.

23               I'm going to play more of the audio.

24               (Audio plays.)

25         Q.    BY MS. KORNBLAU:  Okay.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                          Page 100

```
 1              I stopped the audio at 4 minutes and 44
 2   seconds.  You said, "You've been shot at so many
 3   times."
 4                   What does that mean?
 5         A.   That I've been shot at before.
 6         Q.   By whom?
 7         A.   I believe it was the police.
 8         Q.   Before this incident in January of 2024,
 9   you were previously shot at by police?
10         A.   Yes, I believe so.
11         Q.   When?
12         A.   Huh.
13         Q.   When?
14         A.   I'd like to talk to my lawyer about
15   something real fast.  I don't know.  I'm pretty sure
16   to talked to him about it.
17         Q.   No.  Your lawyer can't coach you during
18   this deposition.  You need to answer my questions.
19   Okay?
20                   So when, before this incident, were you
21   shot at by police?
22         A.   (Unintelligible.)
23         Q.   Hold on.  I think you're breaking up.
24         A.   -- outside of my car, and then --
25         Q.   Wait.  Wait.  Stop.  We didn't hear what
```

```
1    you were saying.  Okay?  It was -- there's a glitch.

2              So can you start again with your answer?

3              So when, before this incident, were you

4    shot at by police?

5              I think you froze.

6              THE REPORTER:  Off the record?

7              THE WITNESS:  In 2000 --

8              THE REPORTER:  Can we go off the record?

9              MS. KORNBLAU:  Yes.

10             THE WITNESS:  In 2010.

11        Q.   BY MS. KORNBLAU:  In 2010?

12        A.   It was like 2011 or '12.  I was

13   part -- hold on.  If I'm born in '93, and I was 17 or

14   18, how old -- what year were you?

15        Q.   Okay.

16             So you were shot at by police in 2010 or

17   2011.  Is that what you're saying?

18        A.   When I was 18 years old.

19        Q.   Okay.

20             What other times were you shot at?

21             THE VIDEOGRAPHER:  I think he's frozen,

22   Counsel.

23        Q.   BY MS. KORNBLAU:  Mr. Gonzalez, can you

24   hear me?

25        A.   (Unintelligible.)
```

```
 1            Q.   Hold on.  Hold on.  Hold on.  Hold on.
 2    It's breaking up.
 3            A.   That was only --
 4            Q.   Stop, please.  Okay.
 5                 You're still frozen.  I don't know if you
 6    can hear us, but we can't see any movement on your
 7    side.  So let's give it a second and see.
 8                 Okay.  I think you're coming back.
 9                 Okay.  So let me ask you the question
10    again.  Can you hear me?
11            A.   Yes.
12            Q.   Okay.
13                 So before the incident --
14            A.   Can you hear me?
15            Q.   Yes.
16                 Before the incident where you were shot at
17    in 2010 or 2011, what other times were you shot at?
18            A.   That's when I was shot at.  It was -- they
19    chased me down.  They charged me for -- that's when I
20    was 18, and they charged me for a DUI.  They charged
21    me for a DUI.
22                 They chased me down.  They said, "Where's
23    the gun?  Where's the gun?"  And they're acting like I
24    shot at them, but the bullet holes are in my car.  How
25    can I shoot at myself?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2               12/11/2025                    Page 103

```
 1                    They said, "Well, who shot at you?  Who

 2    shot at you?"

 3                    I said, "I think it was Officer Stewart,"

 4    and then they laughed it off, and they took me to

 5    jail.

 6             Q.   Okay.

 7                    So other than that incident that you just

 8    spoke about when you were 18 involving a DUI, any

 9    other times you were shot at?

10             A.   By the police?  No.

11             Q.   How about by anybody?

12             A.   They held a gun to me.  They held a gun to

13    my head when I was 12 -- when I was 9 when they raided

14    my house.  They held a shotgun to my --

15             Q.   Who raided your house?

16             A.   Because I was hiding underneath the -- the

17    Beaumont police.

18             Q.   "Beaumont police"?

19                    Okay.

20                    Other than police --

21             A.   Yeah.  They held to shotgun to my head

22    when I was a minor, because --

23             Q.   Okay.

24                    So any other times you were shot at by

25    anyone other than police?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 104

```
 1              A.   No.

 2              Q.   So when you said, "I was shot at so many

 3    times," you're referring to these two incidents, one

 4    when you were 9 years old and a gun was held to your

 5    head, and then once when you were 18 years old, and

 6    you said that police shot at your vehicle?

 7              A.   Yes.

 8              Q.   These are the only two incidents you were

 9    referring to?

10              A.   (No audible response.)

11              Q.   Okay.

12              A.   By the police.

13              Q.   I'm asking you more broadly have you ever

14    been shot at by other people, not police?

15              A.   I'm not sure.  I don't -- I don't -- I've

16    been shot at before, yes.  I've been shot at.  But I

17    don't know who the people were.  I don't know

18    what -- I don't know who they were, but I've been

19    shoot at many times, yeah.

20              Q.   Where?

21              A.   Growing up.  Different places.  Just a lot

22    of difference places.  I don't recall every time.

23    There's tragic situations, and I'm just there.  I try

24    not to remember them.  But I have been shot at maximum

25    times.
```

1        Q.    In various cities?

2        A.    I just don't want to talk about it.

3        Q.    Okay.

4              Well, what cities have you been shot at by

5    people you don't know?

6        A.    I don't want to disclose that.  I

7    just -- I just want to plead the Fifth, and -- because

8    of safety.  Like, I just want to -- I just -- I'd

9    rather just plead the Fifth for my safety.

10       Q.    Why were you pleading the Fifth for your

11   safety?

12       A.    I don't want to speak on anything like

13   that.  I don't want to speak on anything like that.

14       Q.    Why not?

15             MR. SINCICH:  He's plead the Fifth.  Let

16   it stand, please.

17       Q.    BY MS. KORNBLAU:  Okay.

18             I'm going to reserve my right to bring you

19   back for a further deposition to answer my questions

20   regarding other times -- many times that you have been

21   shot at.

22             Do you understand?

23             MR. SINCICH:  I object to that.

24       Q.    BY MS. KORNBLAU:  Okay.  All right.

25             Those other times that you were shot at,

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                              Page 106

```
 1   were you struck?
 2            A.   Plead the Fifth.  I don't want to talk
 3   anything about that.
 4            Q.   So you're not going to respond to my
 5   question about whether you've previously been shot?
 6            A.   I've only been shot by the police, three
 7   different police officers, CHP, Hemet police, and the
 8   Gang Task Force.  I've only been shot by police.
 9            Q.   Okay.
10            But you won't tell me about the other
11   incidents where --
12            A.   I don't know whether they're police
13   officers or not.  I don't know whether they were
14   regular people or not.  I don't know who they were.  I
15   don't know what it is.
16            I know that I've had lots since I was a
17   minor, and I know that people don't like that, and I
18   know that the police don't like that either, so --
19            Q.   Okay.  All right.  Okay.
20            What caused your paranoia?
21            MR. SINCICH:  I'm going to instruct him
22   not to answer based off of it being entirely
23   irrelevant to this case.  Well over 10 years.  As a
24   matter of fact, over 20 years at this point.  It's
25   HIPAA privileged information.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                          Page 107

```
 1            MS. KORNBLAU:  We have a protective order.

 2   We have a protective order in this case.  And as to

 3   relevance, this issue is discoverable, even if you

 4   believe it may not be admissible.  So since it is

 5   discoverable, I am going to insist on a response to my

 6   question.

 7            MR. SINCICH:  It's privileged even if you

 8   think it's discoverable.

 9            MS. KORNBLAU:  And we have a protective

10   order in place in this case.

11            MR. SINCICH:  We'll waiting for the

12   Magistrate, so my objection stands.

13            MS. KORNBLAU:  All right.

14       Q.   BY MS. KORNBLAU:  What caused your

15   schizophrenia?

16            MR. SINCICH:  Same objection; same

17   instruction not to answer.

18            MS. KORNBLAU:  Okay.

19            And, once again, I'll continue to reserve

20   my right to bring you back for a further deposition to

21   respond to these questions.

22            MR. SINCICH:  I will object to that.

23       Q.   BY MS. KORNBLAU:  How is your PTSD?

24            MR. SINCICH:  Same instruction not to

25   answer based off the same instruction -- objections.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                          Page 108

```
 1              Q.   BY MS. KORNBLAU:  And what caused your
 2    bipolar disorder?
 3              MR. SINCICH:  Same instruction not to
 4    answer based on the same objections.
 5              Q.   BY MS. KORNBLAU:  Okay.
 6              I'm going to play more of the audio.
 7              (Audio plays.)
 8              Q.   BY MS. KORNBLAU:  Okay.
 9              You said, "I got stabbed recently."  What
10    were you referring to?
11              A.   I plead the Fifth.
12              Q.   Okay.
13              So you're not going to respond to my
14    question about when you were stabbed?
15              A.   No.
16              Q.   Okay.
17              I will reserve my right to bring you back
18    for a further deposition.
19              MR. SINCICH:  I object to that.
20              (Audio plays.)
21              Q.   BY MS. KORNBLAU:  And you just said in
22    this interview that you were, "running because you
23    were scared of being incarcerated and being in jail";
24    is that correct?
25              MR. SINCICH:  Misstates testimony.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                    Page 109

```
 1                    THE WITNESS:  I was scared for my life.
 2                    MR. SINCICH:  Misstates testimony.
 3              Q.   BY MS. KORNBLAU:  Let me play more of the
 4       audio.
 5                    (Audio plays.)
 6              Q.   BY MS. KORNBLAU:  Okay.
 7                    Did you just say, "I'm scared to be in
 8       jail.  I'm scared to be incarcerated"?
 9              A.   But before that, I said, "I was running.
10       I was scared for my life," and then I said that.
11              Q.   Okay.
12                    So did you say that, "I'm scared of being
13       in jail.  I'm scared of being incarcerated"; is that
14       correct?
15              A.   I said, "I was running.  I was scared for
16       my life.  I'm scared to be in phone.  I'm scared to be
17       incarcerated."
18              Q.   Why would you have gone to jail on January
19       24, 2024?
20                    MR. SINCICH:  Calls for speculation.
21       Incomplete hypothetical.
22                    THE WITNESS:  There's 30 cops right there
23       for a failure to appear.  Like, what do you mean?
24                    They are right there with their fully
25       automatic rifles pointing at me, and my significant
```

1   other has to beg them not to shoot me right there,

2   because there's children in the house, and I have that

3   video too.

4           **Q.   BY MS. KORNBLAU:   I'm going to object and**

5   **move to strike that entire response as non-responsive.**

6           **I'm asking you why you believe why you are**

7   **feeling scared --**

8           A.   I was scared because people are --

9           **Q.   Hold on.   I'm not done.**

10          A.   -- asking them not to shoot me.

11          **Q.   I'm not done with my question, sir.   Okay?**

12          A.   I'm answering it.

13          **Q.   I'm not done.   Let me reask this question,**

14  **please.   Okay?**

15          **So why were you scared of being in jail**

16  **and being incarcerated on January 24, 2024?**

17          A.   Why do you leave out the part "scared for

18  my life"?

19          Like, why are you leaving out parts, but

20  then you want to strike parts that I'm saying?

21          Like, I don't understand.   Like, why are

22  you playing this game?

23          **Q.   Are you going to answer my question?**

24  **Because, otherwise, I will bring you back --**

25          A.   Are you going to ask me the

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 111

```
 1  question -- are you going to ask the question right,

 2  or are you going to try to, like, leave parts out of

 3  the question?

 4              Like, you're asking me --

 5          Q.   I think we're going to have to take

 6  another break, because you're refusing to answer my

 7  question, and you --

 8              A.   I'm answering the question.  I was scared

 9  for my life.

10          Q.   And you, instead, are rephrasing my

11  questions.  So why don't we take a five-minute break,

12  and we will come back and try again.

13              Off the record, please.

14              THE VIDEOGRAPHER:  We're going off the

15  record.  The time is approximately 10:33 a.m.

16              (Pause in proceeding.)

17              THE VIDEOGRAPHER:  We are back on the

18  record for the remote deposition of George Gonzalez.

19  The date is December 11, 2025, and time is 10:49 a.m.

20          Q.   BY MS. KORNBLAU:  Good morning, again,

21  Mr. Gonzalez.  We are resuming the deposition.  You

22  understand that although we had a break, you're still

23  under oath?

24              A.   Yes, ma'am.

25          Q.   All right.
```

```
 1                  So I am asking you a question when we keep

 2     having some issues with regard to this incident.  So

 3     questions about drug use, about your mental state,

 4     condition, as it relates to this incident.

 5                  And you've been pleading the Fifth, and

 6     there have been objections and instructions not to

 7     answer based on HIPAA, which is not a privilege.

 8     Again, we have a protective order in place.  So,

 9     regardless, HIPAA is not a reason to instruct someone

10     not to answer a question.

11                  Also, as it relates to drug use at the

12     time of this incident, the statute of limitations, I

13     looked it up, is one year.  Again, a misdemeanor.  So

14     you can't be charged with that.

15                  In fact, it's my understanding, and,

16     Mr. Sincich, if you can correct me if I'm wrong, but

17     you can't be charged with anything as it relates to

18     this incident, because he has already accepted a plea

19     deal as to that entire event.  He has been convicted

20     and sentenced and served out that entire sentence.

21                  So I am going to seek terminating

22     sanctions if we continue to have instructions not to

23     answer based on the Fifth Amendment and based on

24     HIPAA.

25                  So --
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                Page 113

```
 1              MR. SINCICH:  I disagree with,

 2   essentially, all of that.  Those are privileges, and

 3   they are -- because they are privileges, they are

 4   capable of being instructed not to answer.

 5              You said a lot.  I can respond to all of

 6   it if you like, but, generally speaking, if it has to

 7   do with a potential Fifth Amendment right violation,

 8   then I'll instruct him not to answer.

 9              And that's based off of what we believe

10   could be used against him, even now in the current

11   open cases.  There's enhancements that are involved in

12   it, and we don't know what the D.A. would charge or

13   seek.

14              So because there is a risk of it being

15   used against him in criminal court, the Fifth

16   amendment applies.

17              MS. KORNBLAU:  Okay.

18              And I'm only asking about the incident on

19   January 24, 2024.  From this point, I know earlier

20   we've asked background, but right now, I'm only asking

21   the incident on January 24, 2024.

22              MR. SINCICH:  Right.

23              MS. KORNBLAU:  So you're still saying that

24   he can plead the Fifth as to the incident on January

25   24, 2024?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                        Page 114

```
 1              MR. SINCICH:  As it relates to any

 2    potential criminal action that he has not been

 3    convicted of and that could affect his current open

 4    cases, then he has a Fifth Amendment right.  I would

 5    continue to instruct him not to answer those

 6    questions.

 7              As it relates to what we contend to be

 8    unrelated mental health conditions or substance

 9    treatment, those are privileged based both off of

10    HIPAA, which is a privilege, and 42 CFR, Part 2.

11              So I will maintain those objections based

12    off of those privileges for this deposition.

13              MS. KORNBLAU:  And so you said that you do

14    have a right to instruct Mr. Gonzalez not to answer if

15    you believe certain questions that I am asking are not

16    relevant?

17              MR. SINCICH:  No, that's not what I said.

18              MS. KORNBLAU:  Okay.

19              So are you determining at any point what

20    is and is not relevant?

21              MR. SINCICH:  A judge determines what is

22    and is not relevant in this matter and in every other

23    matter.  Nevertheless, I can still state an objection

24    if I need to.  A judge will later rule on that

25    objection.
```

```
 1                     MS. KORNBLAU:  And I'm asking you, though,
 2      if you are going to give an instruction not to answer
 3      based on relevance?
 4                     MR. SINCICH:  No.
 5                     MS. KORNBLAU:  Okay.
 6                     MR. SINCICH:  And I have not given an
 7      instruction not to answer based off relevance.
 8                     MS. KORNBLAU:  Okay.
 9                     MR. SINCICH:  There's been two privileges
10      that I've instructed not to answer based off of, and
11      that's what I'm telling you I'll maintain.  It's not
12      relevance.
13                     MS. KORNBLAU:  Okay.
14                     And I'm saying that Mr. Gonzalez,
15      plaintiff, cannot hide behind the Fifth Amendment to
16      avoid his discovery obligations.
17                     And I am able to obtain
18      discoverable -- and I'm not discussing whether or not
19      it's admissible.  Again, that's for a judge.
20                     But I am going to be asking him questions
21      during this process, because we're in the process of
22      obtaining discovery.  So those what are my questions
23      are going towards.
24                     So we'll just proceed, and I will just
25      continue to seek Mr. Gonzalez back for further
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 116

```
 1   deposition if you're going to continue to instruct him
 2   not to answer and advise him to plead the Fifth as it
 3   relates to this incident on January 24, 2024.
 4            Q.   BY MS. KORNBLAU:  Okay.  All right.
 5                 So we were previously playing portions of
 6   an audio recording from a statement that you gave to
 7   investigators on January 28, 2024.
 8                 And I was asking you questions about your
 9   claim that you were diagnosed with paranoia,
10   schizophrenia, PTSD and bipolar disorder.
11                 I'm going to continue to play more of the
12   audio.
13            A.   Is it playing?
14            Q.   Not yet.  I'm logging back into it.
15                 Okay.
16                 And I asked you before the break -- you
17   said that you were "running because you were scared of
18   being put back in jail and incarcerated."
19                 And I asked you, "Why would you have gone
20   to jail on January 24, 2024?"
21                 Do you have an answer for me?
22            A.   I was scared.  I was running and scared
23   for my life of being shot.
24            Q.   So when you said to police, though, "I was
25   afraid of being in jail and being incarcerated," why
```

1    would you be put in jail and incarcerated?

2                    I'm not asking about the shooting.  I'm

3    asking why were you afraid to be put in jail and

4    incarcerated?

5            A.    (Unintelligible.)

6            Q.    Hold on.  I can't hear the response.

7            A.    I did.

8            Q.    Okay.

9                    Can you start over again with your

10   response, please?

11           A.    I said because after they would have shot

12   me, they would have took me to jail, and I would have

13   been incarcerated.

14           Q.    Okay.

15                   So why would you have been taken to jail

16   and incarcerated?  For what?

17                   MR. SINCICH:  Calls for speculation.

18   Lacks foundation.

19                   THE WITNESS:  They pulled up for a failure

20   to appear.

21           Q.    BY MS. KORNBLAU:  How did you know that?

22           A.    That's what they were yelling.

23           Q.    Okay.

24                   So you heard police yelling at you where?

25           A.    They were yelling at me at the house.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Page 118

```
 1   They were saying -- I didn't know why they were there.
 2   And they were saying it's just a failure to appear.
 3   It's just a failure to appear.
 4              And I could hear Yvette telling them not
 5   to shoot.  "Please, no shoot me."
 6        Q.   So it's just a failure to appear, you
 7   said, that they kept saying it's just a failure to
 8   appear.
 9              Why not come out and talk to police?
10              MR. SINCICH:  Argumentative.
11              THE WITNESS:  They weren't trying to talk
12   to me.  They were trying to shoot me.  They had their
13   guns drawn on me.  Like, they didn't look like -- it
14   didn't look like they were trying to talk to me.
15              Like, they didn't -- like, they
16   were -- like, when they try to talk to you, two cops
17   pull up -- one cop pulls up and said, "Hey.  What's
18   all this?  You have a failure to appear.  You want to
19   come take care of this?"
20              "Yeah."  Then you get in the car, you go,
21   and you take care of it.
22              But when they pull up with 30 cars, armed
23   guards, with their shields, with all their guns drawn,
24   it looks like there they are there to shoot you.  Even
25   the people inside the house are scared.  They are
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025          Page 119

```
 1   begging not to shoot.  They're saying, "There's kids
 2   in the house."
 3            Q.   You said there were 30 people out in front
 4   of the house?
 5            A.   Thirty police officers there.  Like, there
 6   was -- it took -- they brought whole squad.  It was a
 7   Thursday.  They were trying to say that they were out
 8   there for a probation sweep.  I wasn't even on
 9   probation.
10            Q.   Did officers shoot at you in front of
11   Yvette's house?
12            A.   That wasn't Yvette's house, but --
13            Q.   Okay.
14                 Whose house was it?
15            A.   It was her sister.  I was there to see her
16   sister.
17            Q.   And who is the sister?
18            A.   Rina.
19            Q.   "Rina"?
20            A.   Rina.
21            Q.   How do you spell it?
22            A.   R-i-n-a.
23            Q.   Okay.
24                 So we're at Rina's house.  Did police
25   shoot at you in front of Rina's house?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 120

```
 1              A.   I'm not sure.  They backed up.  They
 2    let -- when she -- when Yvette was yelling from the
 3    door, "Don't shoot.  There's kids in the house.
 4    Please don't shoot him.  Please don't shoot him,"
 5    that's all I can hear is her yelling at them not to
 6    shoot.
 7              And then that's when they backed up and
 8    gave me space and allowed me to pull out so I could
 9    leave.
10         Q.   I'm going to object and move to strike as
11    non-responsive.
12              My question is, did police shoot at you in
13    front of Rina's house?
14              MR. SINCICH:  Asked and answered.
15              THE WITNESS:  I don't know.  I'm not sure.
16         Q.   BY MS. KORNBLAU:  What do you normally do
17    if someone shoots at you?
18              MR. SINCICH:  Incomplete hypothetical.
19    Calls for speculation.
20              THE WITNESS:  What?
21         Q.   BY MS. KORNBLAU:  What do you normally do
22    when someone shoots at you?
23              Did you hear my question?
24         A.   I run.
25         Q.   Okay.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                        Page 121

```
 1                    Why do you run?
 2          A.   Because they are shooting at me.
 3          Q.   Okay.
 4               So here at Rina's house, you don't know
 5  one way or the other if anyone fired at you in front
 6  of the house; correct?
 7          A.   No, I don't believe they did.
 8  (Unintelligible.)
 9          Q.   I can't hear anything.
10          A.   It felt like they were there to shoot me,
11  because everyone out -- was there to shoot me.
12          Q.   Okay.
13               I did not hear anything that you said,
14  so --
15          A.   It felt like they were there to shoot me.
16  All their guns were drawn.
17          Q.   Okay.
18               So you felt that way, but you did not see
19  or hear any gunshots; is that correct?
20          A.   I heard people yelling for them not to
21  shoot.  "Don't shoot him.  Don't shoot him.  There's
22  kids here."  That's what I heard.  That's why I
23  thought they were going to shoot me.
24          Q.   Did you communicate with the police in
25  front of Rina's house?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2            12/11/2025                          Page 122

```
 1                A.   No.

 2                Q.   Why not?

 3                A.   Because I was scared.  I didn't want -- I

 4    didn't want to get shot.  I went -- I got in the car,

 5    and I was trying to hide behind the engine in the car.

 6    I was trying to hide low in the engine, because they

 7    can't shoot through the engine.

 8                Q.   Did you put your hands up?

 9                A.   Yeah.

10                Q.   Where?

11                A.   Like that (indicating).  In the car.  I

12    put my hands up in the car.  And they -- she was

13    telling them not to shoot, that there's kids there.

14    So then I got scared for the kids' safety, and that's

15    when I started the car, and they allowed me to pull

16    out.

17                     They allowed me to pull out.  They backed

18    up and allowed me to pull out.  They allowed me to

19    leave the house.  So, in my mind, okay, they're going

20    to shoot me right now.

21                Q.   Okay.  Hold on.

22                     MR. SINCICH:  Just let him answer the

23    question, please.

24                Q.   BY MS. KORNBLAU:  I will play the video,

25    so we will see.  Okay?  And I will have you identify
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 123

1    for me when you put your hands up inside vehicle.

2    Okay?

3                    Okay?

4             A.   At first, I threw the golf clubs out,

5    because I didn't want them to think that was guns.

6             Q.   Okay.  Hold on.  There's no question

7    pending right now, but thank you for saying that.

8    Okay.

9                    You threw golf clubs out because you

10   didn't want them to think that the golf clubs were

11   guns; is that right?

12            A.   Yeah.

13            Q.   Did you have a gun on you when you were

14   inside the vehicle?

15            A.   You know the answer to that question.

16   Yes, I had a gun.

17            Q.   Okay.

18                  So why didn't you throw the gun out with

19   the golf clubs?

20            A.   What do you mean?  Because I threw the

21   golf clubs out, and I didn't want them to shoot me.

22            Q.   Okay.

23                  So why not throw the gun out that you have

24   on your person?

25                  MR. SINCICH:  Argumentative.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                    Page 124

```
 1              THE WITNESS:  Let me lift the gun
 2   up -- what happened, when I tried to surrender, I put
 3   my hands up, and I'm trying to do exactly what you're
 4   telling me to do.  I'm trying to get rid of the gun.
 5   Okay?
 6              I'm doing it.  I'm surrendering.  And they
 7   shoot me in my back.  Let me do that.  Let me pull the
 8   gun out and lift it up.  They would have shot the fuck
 9   out of the car.  They would have shot the kids in the
10   house.
11              Q.   BY MS. KORNBLAU:  Objection.  Move to
12   strike as non-responsive.  Okay.
13              So you just said that you thought those
14   golf clubs would come across as guns, so you picked
15   them up, and you throw them out the window; is that
16   right?
17              A.   The window, they're half way out the
18   window.  There are big shiny golf clubs in the back.
19   And it's nighttime, and they're shining their lights,
20   so all they see is a bunch of silver long poles.
21              Q.   I thought -- hold on.
22              And you thought that police would think
23   that those are rifles.  Is that what you think?
24              A.   Something.  So I'm pushing -- I keep
25   pushing them out the window, so they see that they are
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                    Page 125

```
 1    golf clubs.
 2             Q.   So you're trying to get rid of anything
 3    that the police might think or see as being a gun; is
 4    that right?
 5             A.   Yes.
 6             MR. SINCICH:  Misstates testimony.
 7             Q.   BY MS. KORNBLAU:  Is that correct?
 8             MR. SINCICH:  Assumes facts.
 9             THE WITNESS:  Well, like, I was trying to
10    get rid of the golf clubs, so they wouldn't shoot
11    me.
12             Q.   BY MS. KORNBLAU:  Okay.
13             Because you thought the golf clubs would
14    appear to be guns to police; right?
15             A.   Yeah.  But the gun was not within my
16    reach.  The gun was not within reach.  The gun was not
17    within reach.  I couldn't just grab it and throw it
18    out.
19             Q.   Where was the gun in the vehicle?
20             A.   It was inside of a backpack underneath the
21    seat.
22             Q.   Okay.
23             And you couldn't reach it?
24             A.   I'm not going to be digging around inside
25    the car, and then acted -- like, I don't know if
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2               12/11/2025                          Page 126

```
 1   they're going to shoot me.  I hear people say, "Don't

 2   shoot.  Don't shoot.  Don't shoot."

 3                   That's when I jumped into the --

 4           Q.   Hold on.  Calm down.

 5                   Were you moving around inside the

 6   vehicle?

 7           A.   Yes.

 8           Q.   Okay.

 9                   So why didn't you get the gun and toss it

10   out the window with the golf clubs?

11           A.   Because I didn't -- I didn't know where

12   the fuck -- I couldn't find it.  I couldn't get it

13   from under the seat.  I was trying to get it from

14   under the seat to throw it out, too, but I couldn't

15   get it from under the seat.

16                   I tried, I tried, and I tried.  I got

17   scared, because she was yelling for them not to shoot

18   me.

19                   And I seen a drone.  The drone came down,

20   and I thought the drone could shoot.  I thought the

21   drone was going to shoot something.

22           Q.   Okay.  Hold on.

23                   So gun was inside a backpack inside the

24   vehicle with you.  You said it was underneath a seat.

25   Which seat?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Page 127

```
 1              A.    It was underneath the driver's seat.

 2              Q.    Okay.

 3                    Where were you sitting in the vehicle?

 4              A.    I was in the back seat.

 5              Q.    Were you ever in driver's seat?

 6              A.    I got into the driver's seat to drive off,

 7     because she was yelling at the cops not to shoot me.

 8              Q.    Okay.

 9                    So were you ever in the driver's seat when

10     you were in front of Rina's house?

11              A.    To drive off, yes.

12              Q.    Okay.

13                    Before you were.  Okay.

14                    So you only got in the driver's seat

15     moments before you drove off; is that correct?

16              A.    Yes.

17              Q.    Did you ever move between the back seat

18     and the front seat before you turned the car on?

19              A.    Yes.

20              Q.    Okay.

21                    So you did move between the back seat and

22     the front seat while you were inside the vehicle?

23              A.    Yes.

24              Q.    Okay.

25                    You just said you didn't want police to
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                          Page 128

1    think you were digging around, but you were moving

2    back and forth between the front seat and the back

3    seat?

4              A.    I went from the back seat --

5              MR. SINCICH:  There's no question pending.

6    There's no question pending.  It's argumentative.

7              THE WITNESS:  I just went from the front

8    seat to the back seat.

9              MR. SINCICH:  Just wait for a question.

10             Q.    BY MS. KORNBLAU:  Okay.

11             How many times?

12             A.    Just once.  I got in the back seat.  I was

13   never in the front seat.  I got into the back seat.

14   So that's why I pushed the golf clubs out, because I

15   didn't want them to think I was in the back seat with

16   guns.

17             So I was in the back seat.  I got to the

18   back seat, and I pushed the golf clubs out, boom.  And

19   then I jumped over into the driver's seat looking for

20   the keys.

21             I found the keys, and I started the car.

22   And they backed off me when she told them to leave,

23   not to shoot me.  "There's kids in the house.  There's

24   kids in the house."

25             Q.    When you jumped into driver's seat, the

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 129

1   backpack with your gun is in the backpack.  Why didn't

2   you then open the backpack, get the gun, and toss it

3   out the window, just like you had tossed the golf

4   clubs out the window?

5           A.   Because the backpack came up, and the gun

6   did not.

7           Q.   What does that mean?

8           A.   Like, I pulled -- the backpack came up,

9   and the gun wasn't in there.

10          Q.   Where was the gun if it wasn't in the

11  backpack?

12          A.   It was -- I thought it was in backpack,

13  and it must have fell out, and it was underneath the

14  seat.

15          Q.   Okay.

16               So you were looking in the backpack while

17  you were inside the vehicle before you drove off?

18          A.   No.  I grabbed the backpack, and the

19  backpack was weightless.  And I was, like, "Okay.

20  There's nothing in there."

21          Q.   Okay.

22               Why didn't you reach underneath the seat

23  and grab --

24          A.   Because they would have shot me.  They

25  would have shot me anyways.  I know they were going to

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 130

```
 1    shoot me.
 2              Q.   But you tossed the golf clubs.  You
 3    grabbed golf clubs which you believed were going to
 4    appear to be firearms to police.  You grabbed those
 5    and tossed them out the window.
 6              Why not grab the gun and also toss it out
 7    the window?
 8              A.   You know how --
 9              THE REPORTER:  Just a moment.
10              MR. SINCICH:  It's argumentative.  It's
11    been asked and answered now like four times, so --
12              THE REPORTER:  I'm sorry.  Finish the
13    objection.
14              MR. SINCICH:  It's not going to keep
15    continuing.
16              You can answer.
17              Q.   BY MS. KORNBLAU:  Did they shoot you when
18    you grabbed the golf clubs that you believed appeared
19    to be guns?
20              A.   No.  But you want me to keep trying my
21    luck?  Like, obviously, they were going to shoot me.
22              Q.   Why do you say that?
23              A.   I'm not the only one who thought I was
24    going to get shot that day.
25              Q.   Okay.  All right.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                    Page 131

```
 1               I'm going to play more of the audio, and
 2   we'll come back to this.
 3                    (Audio plays.)
 4          Q.  BY MS. KORNBLAU:  So I've stopped the
 5   audio at 28:45.  And did any officer ever tell you why
 6   they were pointing a gun at you?
 7          A.  Because that's what they do.
 8          Q.  No.  That's not my question.
 9               I asked you if an officer told you why
10   they were pointing a gun at you?
11          A.  They don't explain why they're going to
12   point guns at you.  They don't tell you that.
13          Q.  Okay.
14               So, then, the reason that you're saying
15   they were going to shoot you is --
16          A.  Because they are saying, "I'm going to
17   shoot you."
18          Q.  Hold on.  Hold on.  Okay.
19               So -- okay.
20               Why are you getting upset?
21          A.  I'm not upset.  They are saying, "I'm
22   going to shoot you."
23               MR. SINCICH:  It's an argumentative
24   question.
25               THE WITNESS:  That's why I'm thinking
```

```
 1   they're going to shoot me.  "Hey, we're going to shoot
 2   you."  Oh, they're going to shoot me.
 3           Q.   BY MS. KORNBLAU:  Hold on.
 4                THE REPORTER:  I'm sorry.  What was the
 5   objection?
 6                MR. SINCICH:  Just hold on.  Wait for a
 7   question.  That's all.
 8           Q.   BY MS. KORNBLAU:  Okay.
 9                Who said, "We are going to shoot you"?
10           A.   The police say that.
11           Q.   All of them?
12           A.   Not simultaneously, but they say it when
13   they're -- "Hey, we're going to shoot.  We're going to
14   shoot."
15           Q.   Okay.
16                I'm only asking you about the incident on
17   January 24, 2024.  And as I said, I have video of this
18   incident that I will play for you.  Okay?
19                So who -- did anyone tell you on January
20   24, 2024, that they were going to shoot you?
21           A.   Yeah.  I'm pretty sure the police said
22   that, because I heard people in the house telling them
23   not to shoot me.
24           Q.   Okay.
25                So you're pretty sure.  So you don't know
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025          Page 133

1  one way or the other?

2          A.   I've never seen the video.  I can't --

3  it's a traumatic experience for me.

4          Q.   Okay.

5               I'm asking you what you --

6          A.   I'm telling you I can't remember.  I

7  didn't see the video, and it's a traumatic experience

8  for me.

9          Q.   Okay.  Thank you.

10              You don't remember.  Okay.  All right.

11              So I'm going to play more of the video.

12              (Audio plays.)

13         Q.   BY MS. KORNBLAU:  So in the interview, we

14  hear you saying that you had not done anything wrong

15  on January 24, 2024.

16              So had you committed any crimes that day?

17         A.   No.

18         Q.   Had you threatened anyone on January 24,

19  2024?

20         A.   No.

21         Q.   Had you gotten into any argument with Rina

22  or Yvette on January 24, 2024?

23         A.   No.

24         Q.   Is it your understanding that Yvette

25  and/or Rina contacted law enforcement to report you --

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                              Page 134

```
1              A.   No.
2              Q.   Hold on.
3                   Is it your understanding that Yvette or
4     Rina contacted law enforcement to report you on
5     January 24, 2024?
6              A.   No.  I had no idea.
7              Q.   How did police come to arrive in front of
8     Rina's house on January 24, 2024?
9                   MR. SINCICH:  Calls for speculation.
10                  THE WITNESS:  I have no idea.
11             Q.   BY MS. KORNBLAU:  Okay.
12                  So it's not your understanding that one of
13    them or both of them contacted police and told police
14    where you were?
15                  MR. SINCICH:  Asked and answered.
16                  THE WITNESS:  I was -- No.  I was told
17    that they got pulled over for -- some shit.  And
18    Rina -- I was just told that they got pulled over for
19    running a stop sign.
20             Q.   BY MS. KORNBLAU:  Okay.
21                  And were you told that they contacted
22    police to inform them of your location?
23             A.   No.  I was told by Yvette --
24                  THE REPORTER:  I'm sorry.  What was the
25    objection?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2            12/11/2025                          Page 135

```
 1              MR. SINCICH:  Vague as to time.

 2              THE REPORTER:  Thank you.

 3              The answer?

 4              THE WITNESS:  I was -- no.  I was told

 5    that Rina ran a stop sign, and that Gang Task starts

 6    interrogating Yvette, like they always do, asking her

 7    where I'm at.

 8         Q.   BY MS. KORNBLAU:  Okay.

 9              On January 24, 2024, did you have an

10    active warrant?

11         A.   I guess I did.  I didn't know that I did,

12    because my lawyer told me that she put me back on

13    calendar and for me not to go to court, because I have

14    going to be late.

15              He said, "No.  Don't even show up."  And

16    it was Thomas Stillman.  He told me that.  He said --

17              MR. SINCICH:  Don't -- don't do

18    attorney/client privilege, please.

19              THE WITNESS:  Okay.

20              Never mind.

21              MR. SINCICH:  Yeah.  If he's an attorney

22    that represented you, then it's attorney/client

23    privilege.

24         Q.   BY MS. KORNBLAU:  On January 24, 2024, did

25    you have a Fourth Waiver?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                    Page 136

```
 1              A.   I don't know what that is.

 2              Q.   Okay.

 3                   It's when someone agrees to give up their

 4    Constitutional right to be free from searches,

 5    seizures, typically as a condition of probation or

 6    parole --

 7              A.   I wasn't on probation or parole.

 8              Q.   Hold on.

 9                   -- or a plea deal allowing law enforcement

10    to search their person, property, vehicle, or

11    electronic devices without a warrant or probable

12    cause?

13              A.   No.  I don't have no idea what that is.

14              Q.   Okay.

15                   I'm going to play more of the audio.

16                   (Audio plays.)

17              Q.   BY MS. KORNBLAU:  Okay.

18                   I stopped the audio at 7 minutes and 14

19    seconds in.  Did you tell law enforcement that you had

20    in your possession on January 4, 2024, a firearm, and

21    that you keep it for protection?

22              A.   Yes.

23              Q.   Are you legally allowed to possession a

24    firearm?

25              A.   No.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 137

```
 1                Q.    On January 24, 2024, were you legally
 2     allowed to possession a firearm?
 3                A.    No.
 4                Q.    And, yet, you had one anyway?
 5                      MR. SINCICH:  Argumentative.
 6                      THE WITNESS:  They shot me in the back.
 7                      MR. SINCICH:  Asked and answered.  It's
 8     argumentative, and it's not even a question.  Wait for
 9     a question.
10                Q.    BY MS. KORNBLAU:  Objection.  Move to
11     strike that response.
12                      Okay.
13                      So you were not legally allowed to possess
14     a firearm; is that correct?
15                      MR. SINCICH:  Asked and answered.  It's
16     harassing.
17                Q.    BY MS. KORNBLAU:  Okay.  All right.
18                      Let me play more of the audio.
19                      (Audio plays.)
20                Q.    BY MS. KORNBLAU:  Okay.
21                      So you said that if less or fewer than 20
22     police officers had approached you and said, "You're
23     not supposed to be here.  I'm going to take you in,"
24     then you said, "I would have been in jail."
25                      What does that mean?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                                      Page 138

1          A.   It means if they would have just pulled up
2   like regular, like, "Hey."   One, two cops, like, "Hey,
3   man.   Dude, do you know you've got a warrant?"
4               "Oh, I didn't know.   Dang.   All right.
5   Let's go.   Let's go take care of this warrant."   It's
6   not a big deal.   But when --
7          Q.   Okay.
8               Why -- okay.
9               Why does it matter --
10              MR. SINCICH:   He was still answering the
11  question.   He was still answering the question.
12              THE WITNESS:   But when they pulled the
13  SWAT Team, all their guns drawn at nighttime flashing
14  lights, fucking, like -- I don't know what the fuck's
15  going on.   It couldn't even be the cops.   It could be
16  someone just pretending to be the cops, because --
17         Q.   BY MS. KORNBLAU:   But you already -- but
18  you said already -- you said already that you knew it
19  was the cops.   You said 20 police showed up, SWAT, in
20  fact.
21         A.   Exactly.
22         Q.   So you knew it was --
23         A.   Yeah.
24         Q.   -- the police.
25         A.   No, I'm saying it could be.   You never

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025          Page 139

```
 1   know.  It could be someone else.  There's rich gangs.

 2   There's rich people.  There's rich people that want to

 3   kill me.  Who knows?

 4            Q.   Okay.

 5                 So why does it matter the number of

 6   people, if it's one person that's a police officer,

 7   five people, 20?

 8            A.   Because I'm scared.  I am scared.

 9            Q.   So why not then just put your hands up and

10   talk to them?

11                 MR. SINCICH:  Argumentative.  Incomplete

12   hypothetical.

13                 THE WITNESS:  Forget Everything And Run.

14   Do you know what FEAR means?  Forget Everything And

15   Run.

16                 You don't remember anything I've said.

17   It's a traumatic experience.  I've been -- I've been

18   in a lot of traumatic experience with police.  They

19   have handcuffed me.  Done weird shit to me.  Beat me

20   up.  Hogtied me.  I've been beat up by the cops so

21   many times.

22                 Like, you don't think I'm scared now?

23   I've been tasered in my spine.  I've been

24   tasered -- they --

25            Q.   BY MS. KORNBLAU:  Objection.  Move to
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 140

```
 1  strike as non-responsive.  You're not answering my
 2  questions.  Okay?
 3              MR. SINCICH:  Argumentative.
 4         Q.   BY MS. KORNBLAU:  On January 24, 2024 --
 5         A.   I am answering your questions.
 6         Q.   Now you're interpreting me when I'm trying
 7  to ask a question.  Okay?
 8         A.   Because you're not letting me answer your
 9  question.
10         Q.   On January 24, 2024, when police arrived,
11  why didn't you surrender to them?
12         A.   Because every time they pull up like that,
13  they beat the fuck out of me.
14         Q.   Okay.
15              What other times have they "beat the fuck
16  out of you"?
17         A.   When I was a minor, when they released me
18  to my mom, they took me to the hospital.  Released me.
19  They hogtied me.  They beat me up in front of AM/PM.
20  Beat me all the way to Jack-in-the-Box.  They jumped
21  me.  Hogtied me.  Put me back in the cop car.
22              They had me strapped to a chair.  Recorded
23  it.  Strapped to the chair -- and didn't even take me
24  to the police station -- in a parking lot and had a
25  doctor administer drugs on me and take blood from me
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                    Page 141

 1  when I was minor without my mother's consent.

 2          Q.    Okay.

 3                So these are all allegations.  Okay?

 4          A.    They are not allegations.  They are

 5  true.

 6          Q.    Okay.

 7                So this occurred, you claim, when you were

 8  10 years old?

 9          A.    No.  That's when they put a shotgun to my

10  head, because they thought I was someone else because

11  I had a beanie on.  And I was hiding underneath the

12  bed.  I didn't know who it was.  I didn't know if it

13  was robbers.  They kicked in the door.

14          Q.    On what -- can you give me dates when you

15  were beat up by police?

16          A.    They should be able to.  Police -- police

17  should have a report.

18          Q.    No.  Can you give me -- can you give me

19  dates, please?

20          A.    How can I give you a date?  I don't even

21  remember the traumatic experience.  My mother might

22  remember what day it was.  She picked me up from the

23  hospital.  The hospital has remember, because I was

24  logged in there.  It was Banning Hospital.  That was

25  the day --

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                    Page 142

```
 1               Q.   Okay.

 2                    Can you give me dates when you --

 3               A.   Banning Hospital can give you dates.

 4               Q.   Wait.  I'm not done.  Okay?

 5                    What I'm asking you to give me dates when

 6     police, your words, beat your ass?

 7               A.   I can give you dates, yeah.  I can give

 8     you dates.  I can't give you dates right now, but I

 9     can get them to you.  I promise you I'll get you the

10     date.  I promise you I'll get you every shred of

11     evidence I can about it.  I promise you I will.

12                    MR. SINCICH:  Objection.

13               Q.   BY MS. KORNBLAU:  We're here today for

14     your deposition.  Okay?

15                    So I need information today.  So can you

16     tell me dates when you claim police beat your ass?

17               A.   You have to contact my mother.  You have

18     to contact the hospital.

19               Q.   Okay.

20                    So you can't provide those for me today?

21               A.   How could I provide the date?  Like, I've

22     tried not to even remember it.

23               Q.   But --

24               A.   They hogtied me to a chair.

25               Q.   Okay.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 143

```
 1                    You said you were scared.  But you had

 2      enough of a thought process to consider golf clubs to,

 3      potentially, appear to police to be firearms.  So you

 4      took those, and you threw them out the window.

 5                    Okay?  Is that right?

 6                    MR. SINCICH:  Assumes facts.  Lacks

 7      foundation.

 8                    THE WITNESS:  Why does it bother you

 9      that -- like, why does it bother you that I was

10      scared?  Like, I was scared, and I threw the golf

11      clubs out.

12             Q.   BY MS. KORNBLAU:  Okay.

13                    I'm asking you questions, and you're

14      always trying to find ways around answering them.  So

15      we are definitely going to need --

16                    MR. SINCICH:  Object to that.

17             Q.   BY MS. KORNBLAU:  -- to come back for a

18      further deposition.

19                    Because there's no way I'm completing this

20      today since you're not answering my questions, and I

21      have to keep reasking them after you refuse to answer,

22      and then you the narrow scope of my questions.

23                    And we're getting --

24             A.   Can I ask someone else to do it?

25             Q.   Hold on.  I'm making a record, sir.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                              Page 144

```
 1                     And then we're getting your attorney

 2     advising you to plead the Fifth and instructing you

 3     not to answer based on HIPAA.

 4                     So we are certainly going to need to bring

 5     you back for a further deposition.  We will address

 6     that later.  Okay?

 7                     So I'm trying to get through this as

 8     quickly as I can.  Okay?

 9                     So I'm asking you, you did have enough of

10     a thought process.  Okay?

11                     You were attempting to do something by

12     taking golf clubs and throwing them out the window.

13     Why were you doing that?

14               MR. SINCICH:  Asked and answered.

15               THE WITNESS:  Because I was scared.

16          Q.   BY MS. KORNBLAU:  Okay.

17                     And, previously, you said because you

18     thought police might shoot at you if they believed

19     that those were guns, and you wanted to get rid of

20     them; is that right?

21          A.   I said I didn't want them to think that I

22     was scared they were going to shoot me.

23          Q.   Okay.

24                     So you were doing things to try to aid in

25     your safety.  Why not put your hands up?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                          Page 145

```
 1                    MR. SINCICH:  Argumentative.  Asked and
 2     answered.
 3                    THE WITNESS:  When I put my hands up, they
 4     shot me.
 5             Q.   BY MS. KORNBLAU:  Okay.
 6                  So the only time you put your hands up was
 7     at the factory?
 8                    MR. SINCICH:  Misstates testimony.
 9             Q.   BY MS. KORNBLAU:  Is that right?
10             A.   I put my hands up in the car, but
11     then -- then I got scared, and they let -- they let me
12     pull off.
13             Q.   Okay.
14                  How long did you put your hands up inside
15     the vehicle?
16             A.   I can't remember.
17             Q.   Give me an estimate.
18             A.   I can't remember.
19             Q.   Okay.
20                  Can you give me an estimate?
21             A.   I can't remember.
22             Q.   Was it a split second?
23                  Was it one second?
24                  Was it more than 5?
25                  Can you give me an estimate?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                          Page 146

```
 1              A.   I cannot remember.
 2              Q.   Okay.
 3                   Do you remember putting your hands up in
 4  the car?
 5              A.   Yes.
 6              Q.   And were you in the back seat or the front
 7  seat?
 8              A.   I can't remember.
 9              Q.   Okay.
10                   I'm going to play more of the audio.
11                   (Audio plays.)
12              Q.   BY MS. KORNBLAU:  I stopped the audio at 9
13  minutes and 21 seconds.  Why do you want to kill
14  yourself every day?
15              A.   That was then; this is now.
16              Q.   Back then, on January 28, 2024, when you
17  were interviewed, you said, "I want to -- I fucking
18  want to kill myself every day."
19                   Why did you say that?
20              A.   I don't want to talk about that.
21              Q.   So why are you refusing to answer my
22  question?
23              A.   Because I don't want to think about that.
24  I don't want to think about that.
25              Q.   So you're refusing to answer my question?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                    Page 147

```
 1              A.   I'm refusing to want to think about that.
 2              Q.   Okay.
 3                   So you're not answering my question?
 4              A.   Who would want -- my children were gone.
 5    I just wanted to be with my kids.
 6              Q.   I'm going to reserve my right to bring you
 7    back for a further deposition, since you are refusing,
 8    once again, to answer my questions.  Okay?
 9                   All right.
10                   We're going to play more of Exhibit 1.
11                   (Audio plays.)
12              Q.   BY MS. KORNBLAU:  I stopped the audio at 9
13    minutes and 28 seconds.  And you said, "I thought you
14    would have finished the job.  Fuck, I wish you would."
15                   What did that mean?
16              A.   I was going through something.  They took
17    my children.  I was shot by the police.  I thought
18    that I didn't have my -- I thought my wife was leaving
19    me.  I don't know what's going on.
20                   Like, I was in the hospital.  They were
21    torturing me in the hospital.  You're not allowed to
22    see your family.  I want to see my family.  I was
23    under -- I was highly medicated.
24              Q.   Okay.
25                   What did it mean when you said, "I thought
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                          Page 148

1  you would have finished the job"?

2                    MR. SINCICH:  Asked and answered.

3                    THE WITNESS:  I don't know.  You guys are

4  trying to kill me; right?

5            Q.   BY MS. KORNBLAU:  Okay.

6                 What is, "finished the job"?

7            A.   I don't know.  I was under -- I was under

8  the influence when I said all that.

9            Q.   Okay.

10                When you said, "I wish you would.  I wish

11  you would," what does that mean?

12                    MR. SINCICH:  Asked and answered.

13                    THE WITNESS:  I don't know.  I was under

14  the influence when I said all that.  I was under the

15  influence of Dilaudid and Suboxone and some other

16  fucking mental health drug or some bullshit.  I don't

17  know.

18           Q.   BY MS. KORNBLAU:  Okay.

19                What mental health drugs were you on?

20           A.   I don't know what the hospital gave me.

21  They gave me -- you'd have to ask the hospital.

22           Q.   Okay.

23                How do you know -- hold on.

24                How do you know they were mental health

25  drugs?

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                    Page 149

```
 1              A.   I don't know.  I'm just guessing.  Like, I
 2   know that they give me something.  They were giving me
 3   something.  I'm just guessing.  Like, I'm just telling
 4   you.  Like, I was under the influence of drugs when I
 5   say all that.
 6              Q.   So earlier, we were talking about you
 7   tossing golf clubs out the window.  We've already
 8   established why.
 9                   So is it your belief that if police see
10   with you a gun, they will shoot you?
11                   MR. SINCICH:  Incomplete hypothetical.
12                   THE REPORTER:  I'm sorry.  Was there an
13   objection?
14                   MR. SINCICH:  Incomplete hypothetical.
15                   THE REPORTER:  Thank you.
16                   THE WITNESS:  I think the cops would shoot
17   me regardless if they see me on the streets.
18              Q.   BY MS. KORNBLAU:  Okay.
19                   Objection.  Move to strike as
20   non-responsive.
21                   Do you believe that if police see you with
22   a gun, they will shoot you?
23                   MR. SINCICH:  Asked and answered.
24                   THE WITNESS:  I believe that cops will
25   shoot me regardless.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Page 150

```
 1              Q.   BY MS. KORNBLAU:  So, once again, I'm
 2    going to move to strike as non-responsive.
 3              My question is specifically whether or not
 4    you believe that if police see you with a gun, only
 5    with a gun --
 6         A.   I believe that police see me --
 7         Q.   I was not done.  Hold on.  Okay?
 8              Do you believe that if police see you with
 9    a gun, they will shoot you?
10         A.   I believe that police will shoot me
11    regardless if they see me --
12         Q.   Okay.
13              So --
14         A.   -- after 50.
15         Q.   So will they shoot you if they see you
16    with a gun?
17         A.   I believe that police will shoot me if
18    they see me regardless.
19         Q.   Okay.
20              So does that mean that they will shoot
21    whether or not you have a gun?
22              MR. SINCICH:  Asked and answered.
23              THE WITNESS:  I believe that police will
24    shoot me regardless if they see me or not.
25         Q.   BY MS. KORNBLAU:  Okay.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 151

```
 1            I'm asking you specifically, and you
 2    haven't answered the question.
 3            MR. SINCICH:  He answered the question
 4    multiple times.  It's becoming harassing.  That was
 5    his response.
 6            Q.   BY MS. KORNBLAU:  Okay.
 7            I'll ask it a different way.  Do you
 8    believe that if police see you with a gun in your
 9    hand, that they will shoot you?
10            A.   Not if my hands are pointed up and I'm
11    surrendering.  They are not supposed to shoot you in
12    the back.  They're not supposed to shoot you with your
13    hands up surrendering.  I believe that if you put your
14    hands up and you surrender, they would not shoot you.
15            Q.   Okay.  Okay.
16            My question is if you have a gun in your
17    hand.  So you believe --
18            A.   Not if you're surrendering.  Why would
19    they -- if you're surrendering, why would they shoot
20    you?
21            Why wouldn't they talk to you?
22            Why wouldn't they say, "Hey, hey.  All
23    right now.  Thank you.  Thank you for stopping.  Thank
24    you for surrendering.  Thank you for slowing down.
25    Thank you for putting your hands up.  Thank you for
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                    Page 152

```
 1   complying"?
 2           Q.   Wait.
 3           A.   "Now, can you drop it?  Can you drop the
 4   weapon?  Can you lay down on the ground?  Can you" --
 5           Q.   Hold on.
 6           A.   -- "go away from the gun?"  Like, there's
 7   a procedure; right?
 8           Q.   Okay.
 9           So how do you surrender?
10           MR. SINCICH:  Overbroad.
11           THE WITNESS:  You put your hands up and
12   you surrender.
13           Q.   BY MS. KORNBLAU:  Both hands in the air?
14           A.   Yes.
15           Q.   Okay.
16           And how do you surrender?
17           You said you put both hands in the air,
18   and you surrender.  How do you surrender?
19           A.   Like this.
20           Q.   And are you standing still when you have
21   both hands in the air?
22           MR. SINCICH:  Incomplete hypothetical.
23   Vague.
24           THE WITNESS:  As long as you have your
25   hands up, and they -- and you're surrendering, yeah,
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2            12/11/2025                          Page 153

1   you're surrendering.

2            Q.   BY MS. KORNBLAU:  So tell me what entails

3   surrendering?

4            Is it both hands in the air and that's it,

5   or is there more to it?

6                 MR. SINCICH:  It's overbroad.

7                 THE WITNESS:  Both hands in the air, and

8   you have to -- you have to -- you have to slow down.

9   Like, I was -- I was slowing down.  I was stopping.

10                But the only reason I was still running

11  was because -- I wasn't even running, because I

12  couldn't even run at that point.

13                I was slowing down, and I had both my

14  hands up, and I was talking steps.  I was taking steps

15  to stop.  But I wanted to get to the people, so the

16  people could see me, so they wouldn't be able to shoot

17  me in front of the people.  I felt like I wanted to be

18  in front of people.

19            Q.   BY MS. KORNBLAU:  Okay.

20            So you had not yet surrendered, because

21  you were trying to make it to the people in the

22  building?

23                MR. SINCICH:  Misstates testimony.

24                THE WITNESS:  No, no.  I was surrendered.

25  I surrendered, and I put my hands up.  But they're

```
 1   still chasing me with the guns and a dog.  They

 2   released a dog.

 3              Q.   BY MS. KORNBLAU:  Okay.

 4                   So I will play the video, and I will ask

 5   you to show me at what point you have both of your

 6   hands in the air.  Okay?

 7                   So -- but when you have both hands in the

 8   air, do you also have a gun in your hand?

 9              A.   Okay.

10                   Are we going to play the video, or are you

11   going to ask me a question?

12              Q.   I just asked you a question first.

13              A.   Yes.  I was surrendering.  I put the -- I

14   had the gun up like this, and I was surrendered.

15              Q.   And you said you hadn't stopped.  You were

16   still running, because you were trying to make it

17   to --

18              A.   I can't stop.  My ACL is torn.  My right

19   ACL and my MCL is torn in my right knee.  I can't stop

20   that.  I have to take at least four, five, six steps

21   to stop from running.

22                   So I put my hands up, and I was attempting

23   to stop.  I can't just stop instantly like anyone

24   else, because the cops kicked my knee in when I was a

25   minor.  They basically kicked me knee in, and they
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                Page 155

1    tore my ACL and my MCL.

2              Q.    Okay.

3                    And we'll get to this in a little bit

4    more, but --

5              A.    A Banning cop stabbed -- stabbed me with a

6    knife.

7              Q.    Okay.

8                    So why -- why not toss the gun instead of

9    keeping it in your hand?

10                   MR. SINCICH:  Asked and answered.

11                   THE WITNESS:  I want it to go off and

12   shoot somebody?

13             Q.    BY MS. KORNBLAU:  That would be your

14   assumption; correct?

15             A.    Well --

16                   MR. SINCICH:  (Unintelligible.)

17                   THE REPORTER:  I sorry.  I need the

18   objection first.

19                   MR. SINCICH:  It's an incomplete

20   hypothetical.  It's vague.

21                   THE REPORTER:  Thank you.

22             Q.    BY MS. KORNBLAU:  Okay.

23                   You said you were worried that if you

24   tossed the --

25             A.    I'm trying to do the right thing.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                              Page 156

```
 1              Q.   Hold on.
 2              A.   I'm trying to surrender.
 3              Q.   Hold on.  Stop.  I'm asking questions one
 4    at a time, please.  Okay?
 5                   You said you didn't want to toss the gun,
 6    okay, because you were worried it would go off and
 7    shoot someone; is that correct?
 8              A.   Well, like -- yeah.
 9              Q.   Okay.
10                   Who did you see outside?
11              A.   Police, dog workers, a dog.
12              Q.   Okay.
13                   I'll play more of the audio, okay, in a
14    minute.
15                   So you were only concerned -- the only
16    reason you didn't toss the gun was because you were
17    concerned it was going to go off and shoot someone?
18                   MR. SINCICH:  Misstates testimony.
19                   THE WITNESS:  I just answered your
20    question.  The police, the dog, the people and the
21    dog, like myself.  Like, it's a gun.
22              Q.   BY MS. KORNBLAU:  How do you know the gun
23    would have gone off?
24              A.   You don't know.  That's why I didn't do
25    it.  Why would I -- I hope that it don't.  Let me just
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                        Page 157

```
 1   throw this gun with bullets in it and hope it don't go

 2   off.

 3            Q.   Okay.  Hold on.

 4            A.   Have you ever had a gun?

 5            Q.   Hold on.  Okay?

 6                 All right.  We'll come back to this in one

 7   second.  Okay?  Okay.  All right.

 8                 On January 24, 2024, at the time of this

 9   incident, were you intoxicated?

10            A.   No.

11            Q.   Okay.

12                 On January 24, 2024, were you on

13   Fentynal?

14                 MR. SINCICH:  I'll object and instruct you

15   not to answer based on the date of the incident.

16                 THE WITNESS:  No.

17                 MS. KORNBLAU:  He's already answered.

18                 MR. SINCICH:  I'll instruct you not to

19   answer.

20                 MS. KORNBLAU:  He's already answered.

21                 MR. SINCICH:  My objection is going to

22   stand.

23            Q.   BY MS. KORNBLAU:  Okay.

24                 On January 24, 2024, at the time of the

25   incident, were you on methamphetamines?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                              Page 158

```
 1                    MR. SINCICH:  Privileged.  Instruct not to

 2      answer.

 3                    THE WITNESS:  I have not -- I can't

 4      remember.

 5                    MR. SINCICH:  It's a privilege.  Instruct

 6      not to answer.

 7                    MS. KORNBLAU:  What privilege?

 8                    MR. SINCICH:  Fifth Amendment.

 9                    MS. KORNBLAU:  Fifth Amendment privilege,

10      okay, as to the methamphetamine.

11                    What was your instruction not to have him

12      answer as it relates to being intoxicated?

13                    MR. SINCICH:  I don't believe I did

14      instruct him not to answer as to being intoxicated,

15      but we'd have to see the record on that.

16              Q.   BY MS. KORNBLAU:  Okay.

17                    So let me ask it again.  On January 24,

18      2024, at the time of the incident, were you

19      intoxicated?

20                    MR. SINCICH:  Asked and answered.

21                    MS. KORNBLAU:  You just said you couldn't

22      remember what happened, so -- okay.

23                    MR. SINCICH:  I asked a question.  He

24      answered the question.

25              Q.    BY MS. KORNBLAU:  Go ahead, Mr. Gonzalez.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 159

```
 1                    MR. SINCICH:  It's asked and answered.

 2              Q.   BY MS. KORNBLAU:  Go ahead, Mr. Gonzalez.

 3    On January 24, 2024, at the time of the incident, were

 4    you intoxicated?

 5              A.   I don't remember.  I don't think -- no.

 6    No.  Like, I don't remember.  I don't get intoxicated.

 7    Like, I don't -- I'm not a drunk.  I don't get drunk.

 8              Q.   Okay.

 9                   So you said you don't remember.  On

10    January 24, 2024, were you on Fentynal?

11                    MR. SINCICH:  Fifth Amendment privilege.

12    Instruct not to answer.

13                    THE WITNESS:  I'm pretty sure I wasn't.

14                    MR. SINCICH:  I'm instructing you not to

15    answer.

16              Q.   BY MS. KORNBLAU:  Okay.

17                   And for record, Mr. Gonzalez, pretty sure

18    not, so --

19              A.   I can't be -- to be honest, ma'am --

20                    MR. SINCICH:  Just wait for a question.

21                    THE WITNESS:  -- I'm not trying to lie to

22    you.

23                    MR. SINCICH:  Mr. Gonzalez, just wait for

24    a question.  It's okay.

25                    THE WITNESS:  I'm not going to lie to
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                 12/11/2025                              Page 160

1   you.

2                    MR. SINCICH:  Mr. Gonzalez, don't worry

3   about it.  I understand what's going through your

4   mind.  Just answer her questions unless I instruct you

5   not to answer.

6                    Okay?

7           Q.   BY MS. KORNBLAU:  And just so that there

8   isn't anything that, you know, counsel can say that

9   I'm doing, Mr. Gonzalez, just wait a couple of seconds

10  after I ask my question, so that your attorney can

11  make objections and instruct you not to answer if

12  that's what he wants to do.

13                   Okay?

14          A.   Okay.

15          Q.   Okay.

16                   So -- all right.

17                   On January 24, 2024, at the time of the

18  incident, were you on weed?

19          A.   I can't remember now.

20          Q.   On January 24, 2024, at the time of the

21  incident, had you consumed liquor?

22          A.   I can't remember now.  I don't know.

23          Q.   So you don't remember if you were under

24  the influence of alcohol?

25          A.   I don't remember anything from that day

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                          Page 161

```
 1   except for running from the police --
 2          Q.   Okay.
 3          A.   -- and being scared.
 4          Q.   You knew police were present when you were
 5   inside the black Hyundai parked in the driveway of
 6   Rina's residence; correct?
 7          A.   Yes.
 8          Q.   Okay.
 9               And you said that you were involved in a
10   lawsuit with Riverside County.  Was that the lawsuit
11   we previously spoke about?
12          A.   Yes.
13          Q.   When you were inside the black Hyundai in
14   front of Rina's house, were police telling you to give
15   up?
16          A.   I don't know.  I can't remember.
17          Q.   Okay.
18               When you drove away from Rina's house, you
19   got in the driver's seat, and you drove away, at what
20   speed were you driving?
21          A.   Like, 2 miles an hour, 3 miles.  Like, I
22   was pulled out so slow, like the cops backed up, and
23   they let me.  They literally backed up to let me out.
24               Like, I wasn't going fast.  Like, they had
25   to reverse, and they had to back up, which they did
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2               12/11/2025                              Page 162

1   before I pulled out.  They backed up, and all that, to

2   let me out once she yelled that there's kids inside,

3   "Don't shoot."

4        **Q.   So why do you believe that they backed up**

5   **to let you out?**

6        A.   Because they didn't want to shoot at the

7   house with kids inside.

8        **Q.   How do you know that?**

9        A.   Because their intentions were to shoot me.

10       **Q.   How do you know that?**

11       A.   Because they backed up to let me out after

12   she told them there were kids inside, not to shoot.

13       **Q.   So it's your assumption?**

14       A.   Well, anybody with brains can see.

15       **Q.   Okay.**

16       A.   (Unintelligible.)

17            THE REPORTER:  I'm sorry?  Okay.

18       **Q.   BY MS. KORNBLAU:  Okay.**

19            **While you were driving, did you tell**

20   **investigators that you thought you were going to get**

21   **killed?**

22       A.   Yeah.

23       **Q.   Were you killed while you were driving?**

24       A.   They were shooting at me while I was

25   driving.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                    Page 163

1          Q.    Who was?

2          A.    The police.

3          Q.    On January 24, 2024, police were shooting

4    at you while you were driving?

5          A.    Yes.  While we were driving up the canyon,

6    they were shooting at me with a shotgun.

7          Q.    I'm going to play more of the audio.

8    We're almost done with the audio.

9               (Audio plays.)

10         Q.    BY MS. KORNBLAU:  So you told

11   investigators that if you took off running, "they were

12   going to shoot you in your back."

13              Why did you say that?

14         A.    I said if I took off running, they

15   wouldn't shoot me.  They're not supposed to shoot me

16   in my back.  When you have your back to them, they are

17   not supposed to shoot you in your back.

18         Q.    Why not stay in the vehicle?

19         A.    Because if I stayed in the vehicle, they'd

20   walk up and just fucking shoot me, boom, boom, boom,

21   boom.  I'm thinking they're going to shoot me.  I'm

22   thinking they're going to gun me down.  This whole

23   thing is to kill me.

24         Q.    Did you put your hands out the window at

25   any point while you were inside the vehicle?

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Page 164

```
 1              A.   I got out of the car and ran.

 2                   What are you talking about?

 3              Q.   One second.  This may be the clerk

 4    calling.  One moment.

 5              A.   I'm going to take a restroom break.  I

 6    have a diaper, and I need to use the restroom bad.

 7                   MR. SINCICH:  We're going off the record.

 8                   THE VIDEOGRAPHER:  We're going off the

 9    record.  The time is approximately 11:45 a.m.

10                   (Pause in proceeding.)

11                   THE VIDEOGRAPHER:  We are back on the

12    record for the remote deposition of George Gonzalez.

13    The date is December 11, 2025, and the time is

14    approximately 12:36 p.m.

15              Q.   BY MS. KORNBLAU:  Good afternoon,

16    Mr. Gonzalez.  We were on a break so that we could

17    communicate with the Magistrate Judge.  We're going to

18    try to proceed for another 20 minutes here today, and

19    then we'll have you return to complete this

20    deposition.

21                   Okay?

22              A.   Okay.

23              Q.   All right.

24                   So we'll see how things go, but we did get

25    some guidance from the Court, so we may need to just
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2            12/11/2025                                    Page 165

1    end, depending on things are going to proceed.

2                      So we were talking about date of the

3    incident, and I was asking you some questions about

4    the pursuit, so when you got into vehicle, and then

5    you were driving.  So I just want to ask you some

6    questions about that.

7                      So you said that you drove away from

8    Rina's house; is that right?

9            A.    Yeah.

10           Q.    Why?

11           A.    Because the cops allowed me to.

12           Q.    But what was the basis for you wanting to

13   leave in the first place?

14           A.    Because I heard my significant other,

15   Yvette, screaming for them not to shoot me, because

16   there were kids in the house.  So I was -- I didn't

17   want them to shoot me while there was kids in the

18   house.

19           Q.    Okay.

20                    So it was your understanding that you

21   would not be fired at if you began driving the

22   vehicle?

23                    MR. SINCICH:  Misstates testimony.

24                    THE WITNESS:  Yeah, they backed up.  Once

25   she started screaming at, they backed up.  Because

 1   they were coming in for the kill, and you could tell

 2   they were coming in for the kill.  They were coming in

 3   to shoot.  They were ready to shoot.

 4                    And she was screaming, "Don't shoot.

 5   Don't shoot him.  Please don't shoot him.  There's

 6   kids right here.  Please don't shoot him."

 7            **Q.   BY MS. KORNBLAU:  How could you tell they**

 8   **were, quote, coming in for the kill?**

 9            A.   Why would they all have their guns like

10   that?  Like, why --

11            **Q.   Look, if they were coming in for the kill,**

12   **why did they then let you leave?**

13            A.   Because --

14                    MR. SINCICH:  Calls for speculation.

15   Calls for speculation.  Lacks foundation.

16                    THE WITNESS:  Because she was screaming

17   that there's kids in the house.  That's why they let

18   me leave.

19            **Q.   BY MS. KORNBLAU:  How do you know that?**

20            A.   Because after she screamed, they backed up

21   and let me leave.

22            **Q.   Okay.**

23                    **So if they let you leave, then they don't**

24   **want to shoot you; right?**

25            A.   Then why did they shoot me in the back?

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2            12/11/2025                    Page 167

```
 1                    MR. SINCICH:  (Unintelligible.)

 2                    THE REPORTER:  I'm sorry.  The objection?

 3                    MR. SINCICH:  Calls for speculation.

 4                    Take just a half a second to allow me to

 5   make the objection before you respond, Mr. Gonzalez.

 6   Thank you.

 7                    THE REPORTER:  The answer?

 8                    THE WITNESS:  Then why did they shoot me

 9   in my back?

10            Q.  BY MS. KORNBLAU:  Objection.  Move to

11   strike as non-responsive.

12                    So please answer the questions that I am

13   asking you.  Okay?

14                    So if it's your understanding the police,

15   20, 30 or more, police showed up in front of Rina's

16   house, you're sitting inside a black Hyundai vehicle,

17   and it's your testimony that police are coming in for

18   the kill, why didn't they shoot you, and why, instead,

19   did they let you leave?

20            A.  Because she was screaming that there's

21   kids in the house.

22                    MR. SINCICH:  Belated.  Calls for

23   speculation as to the mindset of someone else.

24            Q.  BY MS. KORNBLAU:  Exactly.

25                    And so how did you know that police let
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 168

1    you go for that reason?

2                    MR. SINCICH:  Asked and answered.

3                    THE WITNESS:  They started to back up

4    after that happened.

5            Q.   BY MS. KORNBLAU:  But how do you know what

6    the police were thinking?

7            A.   I didn't say what they were thinking.  I

8    said what they were doing.  They started to back up

9    and let me leave.

10           Q.   Okay.

11                And how do you know they weren't just

12   backing up but didn't want you to leave?

13           A.   Because they didn't tell me not to

14   leave.

15           Q.   Did they give you any commands when you

16   were inside the vehicle?

17           A.   I can't remember.  I don't think

18   they -- no.  They were saying for me to -- they were

19   saying that, "Oh, he's got a gun," or something.

20   Like, "Oh, he got a gun.  He got a gun."

21                Like, "No.  I don't got a gun.  I don't

22   got a gun."

23           Q.   Okay.

24                So you said someone said, "You've got a

25   gun," to you?

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                          Page 169

```
 1              A.   I was, like, "They're not guns.  They're
 2    golf clubs."
 3              Q.   Okay.
 4                   And so you responded to them with,
 5    "They're golf clubs"?
 6              A.   Yeah.
 7              Q.   Was that before or after you threw the
 8    golf clubs out the window?
 9              A.   Before.
10              Q.   Okay.
11                   So you said, "They're not golf clubs."
12    And then you threw the golf clubs out the window?
13              A.   I said, "They're not guns."
14              Q.   Okay.
15                   You said, "They're not guns," and then you
16    threw the golf clubs out the window; is that correct?
17              A.   Yeah.
18              Q.   Okay.
19                   Did police instruct you to throw the golf
20    clubs out the window?
21              A.   No.
22              Q.   Were you concerned that police might think
23    that those golf clubs were guns?
24              A.   We already went through this.  Yes.
25              Q.   Okay.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                        Page 170

```
 1                    Then why would you touch them?

 2          A.    To show them that they weren't.

 3                MR. SINCICH:  (Unintelligible.)

 4                THE REPORTER:  What was the objection?

 5                MR. SINCICH:  Argumentative.

 6                THE REPORTER:  Thank you.

 7          Q.    BY MS. KORNBLAU:  Okay.

 8                So when you were inside the

 9   vehicle -- we'll get back to that, I think, later,

10   but -- so you were involved in a pursuit with police.

11                You said you were driving 2 or 3 miles an

12   hour; is that correct?

13          A.    To leave?  Yeah.  I was really going out

14   real slow.  Like, they weren't trying to stop me.

15   They weren't tell me to stop.  They were just backing

16   up with me.  They were letting me pull out.

17          Q.    Did you hit trash cans when you were

18   leaving in front of Rina's house?

19          A.    I don't -- I don't remember nothing, so --

20          Q.    Okay.

21                Did you have to drive around police

22   vehicles to flee?

23          A.    No.  They backed -- they were backing

24   out.

25          Q.    Okay.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 171

```
 1              So then you drove out of the driveway to
 2    leave Rina's house?
 3              A.   Her driveway is a U.  Her driveway goes
 4    out, and then it's a big ass U.  So, yeah.
 5              Q.   So there would be no reason for you to hit
 6    trash cans, then, if the police backed out and let you
 7    leave; is that correct?
 8              MR. SINCICH:  Calls for speculation.
 9    Lacks foundation.
10              THE WITNESS:  You don't even know where
11    the trash cans are at.
12              Q.   BY MS. KORNBLAU:  Okay.
13              Why did you hit trash cans?
14              A.   I don't know.
15              Q.   But you did hit them?
16              A.   I don't -- I didn't say that.
17              Q.   Okay.
18              A.   You said that.
19              Q.   Okay.
20              So how fast were you driving after you
21    left Rina's house?
22              A.   I can't recall.
23              Q.   Can you give me an estimate?
24              A.   No.
25              Q.   Were you driving the speed limit?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                          Page 172

```
 1              A.   Yes.
 2              Q.   The entire time that you were driving
 3     after you left Rina's house until your car came to a
 4     rest at or on the train tracks, you drove at the speed
 5     limit.
 6                   Is that your testimony?
 7              A.   Yes.
 8              Q.   Okay.
 9                   You never exceeded it?
10              A.   No.
11              Q.   Were you obeying all of the traffic laws
12     when you were driving?
13              A.   Yeah, for the most part.
14              Q.   Okay.
15                   What does "for the most part" mean?
16              A.   Like, I didn't do anything outrageous.
17     Like, I didn't stop and try to run through no red
18     lights, or, like -- I don't remember running through
19     red lights, or anything like that.
20              Q.   So you did not run any red lights or blow
21     through any stop signs; is that correct?
22              A.   Yeah.  Not that I can recall.
23              Q.   Okay.
24                   And did you ever drive on the wrong side
25     of the road?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                              Page 173

```
 1          A.   Yes, I did.

 2          Q.   Why?

 3          A.   Because I was trying not to hurt nobody.

 4          Q.   You were driving on the wrong side of the

 5   road because you didn't want to hurt someone?

 6               MR. SINCICH:  Argumentative --

 7          Q.   BY MS. KORNBLAU:  I don't understand.

 8               MR. SINCICH:  -- the way it's phrased.

 9               THE WITNESS:  Because you weren't in the

10   pursuit.  You'll never understand.  You're just

11   arguing with me.

12          Q.   BY MS. KORNBLAU:  Okay.

13               We might need to end this if this is how

14   it's going to continue.

15               But when you exited the vehicle when the

16   car came to a rest at the train tracks, where was the

17   gun?

18          A.   It was in -- it was on me.

19          Q.   When did you -- because earlier, you said

20   that the gun came out of your backpack in the vehicle

21   and was underneath the driver's seat; is that correct?

22          A.   Yeah.

23          Q.   Okay.

24               At what point did you pick up the gun and

25   put it on your person?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Page 174

```
 1              A.   When it was stuck in between the -- it was
 2   stuck when I was driving.  Like, it was getting -- it
 3   was getting -- the -- the gas.  Like, it was stuck
 4   next to the gas pedal.
 5              Q.   When?
 6              A.   It flew out from under that.  When I
 7   braked, it flew out from under the seat under the gas
 8   pedal.  So I grabbed it, and I put it in my lap,
 9   because I didn't want it to go off and shoot me.
10              Q.   Okay.
11                   So you put the gun in the lap while you
12   were driving?
13              A.   Because it was stuck underneath the gas
14   pedal.  I didn't want it to get stuck, and then me hit
15   somebody, or me hit -- crash into somebody or
16   something.
17              Q.   Why didn't you just throw it in the back
18   seat of the vehicle?
19              A.   Why -- why do I got to throw it?  I don't
20   want to throw guns around.  Why would I just throw a
21   gun?
22              Q.   Why didn't you set it down gently in the
23   passenger seat?
24              A.   Why didn't I set it down gently in the
25   passenger?  I don't know.  Like, I didn't want to get
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                     12/11/2025                          Page 175

```
 1   caught with it.  I wanted to get rid of it.  I wanted
 2   to throw it.  Like --
 3              Q.   Why didn't you throw it out the window?
 4              A.   Why would I throw a gun out the window and
 5   it go off and shoot somebody?
 6                   Why would I do that?
 7                   Why would I throw a gun out a window?
 8                   Why would I throw a gun out of a window?
 9                   Like, I might -- do I look stupid to you?
10                   MR. SINCICH:  (Unintelligible.)
11                   THE WITNESS:  I'm not saying you're stupid
12   at all.  But I'm saying, like, only a stupid person
13   would suggest that.
14              Q.   BY MS. KORNBLAU:  Okay.
15                   You said you don't want to get caught with
16   it.  Why not put it in the center console of the
17   vehicle?
18              A.   Then they'd search the car and catch it.
19   What do you mean?
20              Q.   Okay.
21                   So you were driving with it in your lap.
22   When you exit the vehicle when it's on the train
23   tracks, where was the gun?
24              A.   I just told you.  It was in my lap, my
25   waistband.  I put it in my waistband.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Page 176

```
 1              Q.   Okay.  No.  I'm asking you a different

 2    question.

 3                   When you exit the vehicle, when you first

 4    exit the vehicle, where was the gun?

 5              A.   I just answered your question.  It was my

 6    waistband in my lap.  I put it in my lap.

 7              Q.   Okay.

 8                   When did you move the gun from your lap to

 9    your waistband?

10              A.   What are you talking about?  I put it

11    straight into my waistband.  I am not just going to

12    leave a gun sitting on my lap while I'm driving a car

13    around.

14              Q.   Okay.

15                   So when did you put the gun in your

16    waistband?

17              A.   When it was underneath the -- when it

18    flew.  It was under the seat, and it flew.  Like, it

19    was stuck on the floor.  So I got to grab it and put

20    it in my waistband.

21              Q.   Okay.

22                   So you said earlier, I thought, that you

23    picked it up from under the gas pedal and put it in

24    your lap.

25                   Did you say that?
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2              12/11/2025                        Page 177

```
 1              A.   Where is the waistband?  Where is your
 2    waistband at?
 3              Q.   Okay.
 4              A.   Is it in my lap, or is it not?
 5              Q.   Okay.
 6                   Mr. Gonzalez, again, I'm asking you
 7    specific questions.  Okay?
 8                   If you don't understand my question,
 9    please tell me you don't understand the question.  Or
10    you can clarify and explain what actually happened if
11    you think that I'm not asking questions that are
12    consistent with what happened, so --
13              A.   I can't remember.  I'm just giving you a
14    brief -- like a -- of -- of -- from memory as much as
15    I can.
16                   Like, I'm just telling you what I -- like,
17    from how I remember it.  Like, if it's not -- if it's
18    not how -- if it's not how you want me to say it, or
19    how you're trying to trick me into saying, or, like,
20    trying to make me say one way, and then, instead, I
21    said it another way, like, I really don't care.
22                   Like, I don't know care what you want to
23    do, like, how you're trying to make me look.  I don't
24    care.  Like, I really don't care.
25              Q.   Okay.
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                Page 178

```
 1            So then just please answer my simple
 2   question.
 3            A.   I am.  I'm simply answering it, and you're
 4   simply just, like, "Okay.  So was it here, or it was
 5   there?  Or was the car yellow, or was it, kind of,
 6   like, orangish?  Or was it like" --
 7            MR. SINCICH:  Mr. Gonzalez, there's no
 8   question pending.  So just try to answer the questions
 9   but without asking the question.  Unless you need
10   clarity, ask a question.  Otherwise, just answer the
11   question.
12            Okay?
13            Q.   BY MS. KORNBLAU:  Mr. Gonzalez -- and if
14   you don't remember something, that's a perfectly fine
15   response.  You don't -- I'm not expecting you to
16   remember every detail when you don't.
17            So you need to then tell me, though, "I
18   don't recall," "I don't remember."  You can respond in
19   that way.  I'm not expecting you to remember things if
20   you don't.
21            Do you understand?
22            A.   Okay.
23            Q.   Okay.  All right.
24            So we only have a few more minutes.  So
25   when you were driving, though, you said you picked the
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2          12/11/2025                Page 179

1   gun up.

2           Do you remember what you did with it when

3   you picked it up from under the gas pedal or near the

4   gas pedal?

5       A.  I put it in my lap in my waistband for the

6   third time.

7       Q.  In your lap in your waistband?

8       A.  Yes.  In my lap.  I put it in my lap.

9   Bam.

10       Q.  Okay.

11           So you're describing lifting your shirt up

12   and putting it into your pants.  And is that what you

13   consider your "lap"?

14       A.  Well, yeah.

15       Q.  Okay.

16           So you were driving with a gun in your

17   waistband?

18       A.  Well, yeah, because I'm going to jump out

19   and run.

20       Q.  When did you decide to jump out and run?

21       A.  That's the whole plan is to jump out and

22   run.  I'm not going to say in the car.  I can't stay

23   in the car forever.  I have to jump out and run

24   eventually.

25       Q.  Were you intending on driving home?

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                                    Page 180

```
 1              A.    I was intending on going to my mom's

 2     house.

 3              Q.    Okay.

 4                    So you made the decision to put a gun in

 5     your waistband and exit the vehicle and run with it?

 6              A.    Yeah.  What else am I going to do with it?

 7     Leave it in the car and be caught with it, and,

 8     hopefully, they catch it?  Like, no.  I'm trying to

 9     get rid of it.  I'm not supposed to have it.

10              Q.    Okay.

11              A.    I'm trying to hide it.  I'm trying to get

12     rid of it.  I'm not trying to get caught with it.

13     That's years of my life.  They are going to send me to

14     prison.  I'm going to have to do years of my life for

15     it.  I already did years of my life for getting caught

16     with a gun.  I'm not trying to do that again.

17              Q.    Okay.

18                    So you had the gun.  You put it in your

19     waistband.  Why didn't you discard the gun when you

20     exited the vehicle?

21              A.    What?

22                    Why am I just going to throw a gun

23     somewhere?

24                    Like, why am I going to just do that?

25                    I'm trying to look for a trash can or,
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2             12/11/2025                    Page 181

```
 1  like, for something.  Like, you don't just throw a gun
 2  by the train tracks, and, like, the train run it over,
 3  and it just go off and shoot somebody.  Like, you
 4  can't just throw a gun anywhere.  You just can't throw
 5  a gun anywhere.  You can't.
 6        Q.   Okay.
 7             You said you didn't want to get caught
 8  with it; is that right?
 9        A.   Yeah.
10        Q.   Okay.
11             Why can't you gently set it down on the
12  ground?
13        A.   Because you can't put guns anywhere.  It's
14  a gun.  It shoots people.  You can't just set it down
15  places.
16             You can't just say, "Hey, you know what?
17  I'm just going to put this gun there.  Here.  There.
18  This is a good place for a gun.  Right here.  There
19  you go.  Hope your little kid grabs it and shoots
20  you."
21        Q.   Then why did you have it in the first
22  place?
23             MR. SINCICH:  Argumentative.
24             THE WITNESS:  I have PTSD.
25             THE REPORTER:  I'm sorry.  What was the
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                          Page 182

 1   objection?

 2              MR. SINCICH:  Argumentative.

 3              THE REPORTER:  Thank you.

 4              Answer?

 5              THE WITNESS:  I already answered that

 6   question the day of my interview.  Because I have

 7   PTSD, and I keep it for protection.

 8              I'm an American citizen.  I'm allowed to

 9   have it.  Just because they say whatever, I'm an

10   American citizen.  I'm allowed to bear arms.  I'm a

11   red blooded American, just like anyone else.

**12              Q.   BY MS. KORNBLAU:  On January 24, 2024,**

**13   were you allowed to own and possess a firearm?**

14              MR. SINCICH:  Asked and answered.

15              THE WITNESS:  As an American, yeah.  Yeah,

16   I am, I believe.

17              MS. KORNBLAU:  Okay.  All right.

18              We're going to go ahead and end the depo

19   for today and continue it on December -- I believe

20   it's 23rd, but --

21              MR. SINCICH:  The 23rd was from your

22   previous email.  I believe that that's what you

23   secured.  But we should probably confirm with the

24   deputy since we've got him here.

25              MS. KORNBLAU:  We will do that.

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                                    Page 183

1                    Okay.  We can go off the record, though,

2     for now.

3                    THE VIDEOGRAPHER:  Counsel, real quickly,

4     will you get the video?

5                    MS. KORNBLAU:  Please.

6                    THE VIDEOGRAPHER:  Mr. Sincich?

7                    MR. SINCICH:  I don't need a video at this

8     point.  Thank you.

9                    THE VIDEOGRAPHER:  Mr. Garcia?

10                    MR. GARCIA:  Yes, we'll take a video.

11                    THE VIDEOGRAPHER:  Yes, sir.

12                    This concludes the deposition of George

13    Gonzalez.  We are now off the record.  The time is

14    approximately 12:53 p.m.

15                    THE REPORTER:  Mr. Garcia, a copy of the

16    transcript?

17                    MR. GARCIA:  Yes, please.

18                    THE REPORTER:  And, Mr. Sincich, a copy

19    also of the transcript?

20                    MR. SINCICH:  Yes, please.  Thank you.

21                    (Ending time:  12:53 p.m.)

22

23

24

25

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 184

```
1

2

3

4              I, GEORGE GONZALEZ, do hereby declare under

5     penalty of perjury that I have read the foregoing

6     transcript of my deposition; that I have made such

7     corrections as noted herein, in ink, initialed by me,

8     or attached hereto; that my testimony as contained

9     herein, as corrected, is true and correct.

10             EXECUTED this _____ day of _____,

11    at _____, _____.
                    (City)                   (State)
12

13

14

15

16

17             _____
                     GEORGE GONZALEZ
18

19

20

21

22

23

24

25
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                    Page 185

```
 1                      REPORTER'S CERTIFICATE

 2

 3             I, the undersigned, a Certified Shorthand

 4    Reporter for the State of California, do hereby

 5    certify:

 6             That prior foregoing proceeding was taken

 7    completely video before me at the time and place

 8    herein set forth; that any witnesses in the foregoing

 9    proceedings, prior to testifying, were placed under

10    oath;

11             That a verbatim record of the proceedings was

12    made by me using machine shorthand which was

13    thereafter transcribed under my direction; further,

14    that the foregoing is an accurate transcription

15    thereof.

16             I further certify that I am neither

17    financially interested in the action nor a relative or

18    employee of any attorney of any of the parties.

19             IN WITNESS WHEREOF, I have this date

20    subscribed my name.

21    Dated:  December 24, 2025

22

23                      Laura Rutherford

24    _____

25                      Laura A. Rutherford, RPR
                        CSR No. 9266
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                                        Page 186

```
1    Errata Sheet

2

3    NAME OF CASE: GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.

4    DATE OF DEPOSITION: 12/11/2025

5    NAME OF WITNESS: GEORGE GONZALEZ, VOL. 2

6    Reason Codes:

7          1. To clarify the record.

8          2. To conform to the facts.

9          3. To correct transcription errors.

10   Page _____ Line _____ Reason _____

11   From _____ to _____

12   Page _____ Line _____ Reason _____

13   From _____ to _____

14   Page _____ Line _____ Reason _____

15   From _____ to _____

16   Page _____ Line _____ Reason _____

17   From _____ to _____

18   Page _____ Line _____ Reason _____

19   From _____ to _____

20   Page _____ Line _____ Reason _____

21   From _____ to _____

22   Page _____ Line _____ Reason _____

23   From _____ to _____

24

25                         _____
```

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Index: ---ooo---..9:44

**-**

**---ooo---** 11:3

**1**

**1** 94:6,7 95:4 147:10

**10** 14:17 37:9 49:17,24 50:15,20 51:24,25 61:21 62:14 81:12 91:5,13 106:23 141:8

**10-minute** 70:13

**100** 57:6

**10:33** 111:15

**10:49** 111:19

**11** 11:1,6 22:17 46:18 54:5 70:20 111:19 164:13

**11:45** 164:9

**12** 62:16,21 63:11 90:20 101:12 103:13

**125** 34:25 35:1,9

**12:36** 164:14

**12:53** 11:2 183:14,21

**12th** 33:10,11

**13** 90:20

**14** 15:9 90:20 97:18,22 98:15,23 136:18

**15** 14:19,21 15:8,9 19:17 90:20

**16** 15:4 23:24 25:3 26:3 90:20

**17** 90:20,21,25 101:13

**18** 63:21,22 64:24 65:1 72:3 101:14,18 102:20 103:8 104:5

**1993** 23:5,6

**2**

**2** 85:9 86:8 89:6 114:10 161:21 170:11

**20** 51:25 65:17 95:3 106:24 137:21 138:19 139:7 164:18 167:15

**2000** 99:17 101:7

**2010** 101:10,11,16 102:17

**2011** 101:12,17 102:17

**2020** 75:18

**2023** 23:11

**2024** 48:15,16,17,18,22 76:3 77:25 80:14 86:12,22 87:21 92:13 98:1 100:8 109:19 110:16 113:19,21,25 116:3,7,20 132:17,20 133:15,19,22 134:5,8 135:9,24 136:20 137:1 140:4,10 146:16 157:8,12,24 158:18 159:3,10 160:17,20 163:3 182:12

**2025** 11:1,6 22:17 46:18 54:5 70:20 111:19 164:13

**21** 146:13

**22** 23:5 79:4

**23** 86:21

**23rd** 182:20,21

**24** 23:11 86:12,22 98:1 109:19 110:16 113:19,21,25 116:3,20 132:17,20 133:15,18,22 134:5,8 135:9,24 137:1 140:4,10 157:8,12,24 158:17 159:3,10 160:17,20 163:3 182:12

**25** 23:16,17 24:4,6 25:5,7,21 26:5 35:10

**26** 23:16,17 24:4,7 25:6,7,21 26:5 35:10

**28** 116:7 146:16 147:13

**28:45** 131:5

**3**

**3** 95:3 161:21 170:11

**30** 25:24 26:8 51:23 109:22 118:22 119:3 167:15

**305** 28:2,7

**33** 64:1

**34** 96:15

**37** 97:11

**4**

**4** 96:5,15 97:11 100:1 136:20

**40** 51:23

**42** 89:5 114:10

**44** 100:1

**4th** 28:2,7

**5**

**5** 145:24

**50** 150:14

**5:25-cv-00331-kk(dtb)** 11:10

**6**

**60** 36:1

**66** 36:2

**7**

**7** 136:18

**8**

**8** 96:5

**80-something** 58:17

**8:01** 11:2,7

**8:15** 22:13

**8:17** 22:17

**8:45** 46:14

**8:59** 46:18

**9**

**9** 103:13 104:4 146:12 147:12

**9266** 12:23

**93** 23:7 101:13

**951-769-2345** 59:14

**9:09** 53:25

**9:11** 54:3

**9:29** 70:16

**9:44** 70:21

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Index: A-B-E-L..Aubriana

## A

**A-B-E-L** 59:10

**A-N-N** 48:2

**A-U-B-R-I-A-N-A** 31:25

**a.m.** 11:2,7 22:13,17 46:14,18
53:25 54:3 70:16,21 111:15,19
164:9

**Abel** 59:8

**abilities** 53:5 55:20 93:16

**absconding** 71:13

**abuse** 37:5 81:17 83:12 84:17,
22

**abused** 37:4

**abuser** 69:24

**accepted** 112:18

**access** 30:4,5

**accurate** 17:17

**accused** 72:15,21,23

**ace** 53:11

**acknowledge** 11:23

**ACL** 154:18,19 155:1

**acted** 125:25

**acting** 12:6 102:23

**action** 41:9 47:19 114:2

**active** 64:21 135:10

**ad** 16:3

**additional** 17:21

**address** 27:12 28:6 144:5

**administer** 140:25

**admissible** 107:4 115:19

**admonitions** 17:4

**advice** 27:3 41:14

**advise** 116:2

**advised** 48:9

**advising** 144:2

**affect** 37:25 114:3

**affected** 37:22

**Afghanistan** 59:23

**afraid** 116:25 117:3

**afternoon** 164:15

**age** 14:16 19:16 68:2 90:19
97:17

**agree** 11:19 12:2,8

**agreed** 52:10

**agreement** 11:24

**agrees** 136:3

**ahead** 21:9 53:1 158:25 159:2
182:18

**aid** 144:24

**air** 152:13,17,21 153:4,7 154:6,8

**Aker** 11:11

**alcohol** 67:21 68:9 83:3 86:13,
18 89:1 160:24

**Alfaro** 92:24 93:3

**allegations** 15:18 141:3,4

**alleged** 15:6

**allowed** 44:9 73:6 120:8 122:15,
17,18 136:23 137:2,13 147:21
165:11 182:8,10,13

**allowing** 136:9

**AM/PM** 140:19

**Amaris** 11:11

**ambiguous** 25:11,17 30:8 38:7
39:10 66:11 81:18 83:14 84:19
89:23

**amendment** 26:25 68:6 74:12
80:3 82:10 87:1,25 88:15 112:23
113:7,16 114:4 115:15 158:8,9
159:11

**American** 69:4,5 80:7 182:8,10,
11,15

**amount** 51:3

**and/or** 133:25

**Andrea** 12:1 13:3

**Ann** 48:2

**answering** 51:16 53:4 110:12
111:8 138:10,11 140:1,5 143:14,
20 147:3 178:3

**answers** 17:20,21 18:18 68:16

**Anthony** 32:11

**apologize** 91:15

**appearance** 70:4

**appeared** 130:18

**appears** 34:17 87:23

**applies** 11:14 113:16

**approached** 137:22

**approximately** 22:4,13,17
46:14 53:25 54:3 70:16,21
111:15 164:9,14 183:14

**argue** 73:6

**arguing** 72:12 73:4 173:11

**argument** 70:7 73:1 133:21

**argumentative** 65:14 74:15
118:10 123:25 128:6 130:10
131:23 137:5,8 139:11 140:3
145:1 170:5 173:6 181:23 182:2

**armed** 118:22

**arms** 182:10

**arrested** 62:15 63:12 64:8 65:17
80:21,24 81:4,9

**arrive** 134:7

**arrived** 140:10

**ass** 142:6,16 171:4

**assaults** 72:1

**assist** 88:25

**assistants** 57:12

**Assumes** 125:8 143:6

**assumption** 155:14 162:13

**attempting** 144:11 154:22

**attended** 33:17,20 86:3 88:24

**attending** 11:7

**attorney** 12:5 46:23,24 48:11
54:13,15 58:6 76:16 135:21
144:1 160:10

**attorney's** 41:14,24 57:25

**attorney/client** 135:18,22

**Aubriana** 31:25 32:1,22

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                                12/11/2025                                    Index: audible..camper

**audible** 19:10 20:11 21:17 65:19 92:4 104:10

**audio** 43:6 58:12,15,20,21 59:4, 15,17,25 60:2,10 94:13,14,20 95:1,3,12,14,16 96:2,3,13,15 97:8,9,10 99:10,11,23,24 100:1 108:6,7,20 109:4,5 116:6,12 131:1,3,5 133:12 136:15,16,18 137:18,19 146:10,11,12 147:11, 12 156:13 163:7,8,9

**automatic** 109:25

**avoid** 115:16

**aware** 24:22,24 40:9 75:1 78:10

**awhile** 91:9

---

**B**

---

**back** 16:18 22:5 27:8 30:15 46:16 54:2 60:24 61:3,11 70:18, 23 73:12,17 74:1,6,18,20,21,23 80:11 82:25 83:19 84:11 85:3,25 88:3,17 102:8 105:19 107:20 108:17 110:24 111:12,17 115:25 116:14,18 124:7,18 127:4,17,21 128:2,4,8,12,13,15,17,18 131:2 135:12 137:6 140:21 143:17 144:5 146:6,16 147:7 151:12 157:6 161:25 163:12,16,17 164:11 166:25 167:9 168:3,8 170:9 174:17

**backed** 120:1,7 122:17 128:22 161:22,23 162:1,4,11 165:24,25 166:20 170:23 171:6

**background** 60:24 113:20

**backing** 168:12 170:15,23

**backpack** 125:20 126:23 129:1, 2,5,8,11,12,16,18,19 173:20

**bad** 62:5 63:20 69:23 83:7 164:6

**Bam** 179:9

**Banning** 49:4 141:24 142:3 155:5

**based** 106:22 107:25 108:4 112:7,23 113:9 114:9,11 115:3,7, 10 144:3 157:15

**basically** 154:25

**basis** 82:6 85:19,21 165:12

**battery** 72:2

**beanie** 141:11

**bear** 182:10

**beat** 139:19,20 140:13,15,19,20 141:15 142:6,16

**Beaumont** 28:3 103:17,18

**bed** 141:12

**beg** 110:1

**began** 165:21

**begging** 119:1

**begin** 12:24

**beginning** 52:9

**behalf** 11:12 12:1,6,11 13:5

**Belated** 167:22

**belief** 149:9

**believed** 130:3,18 144:18

**belonged** 30:1

**bench** 64:5

**Bible** 36:1,2,3 50:11

**big** 56:5 124:18 138:6 171:4

**binder** 41:2,4

**biological** 32:4,20,25

**bipolar** 108:2 116:10

**birth** 23:4

**bit** 29:17 35:22 60:24 155:3

**black** 28:21 29:18 161:5,13 167:16

**blank** 38:2

**blood** 40:18 140:25

**blooded** 182:11

**blow** 172:20

**blurry** 35:22

**book** 35:25 36:1 63:20

**books** 36:2

**boom** 128:18 163:20,21

**born** 83:10 101:13

**bother** 143:8,9

**brains** 162:14

**braked** 174:7

**break** 21:7,15 22:19 45:6 46:20 54:7 65:20,24 70:8,14,24 111:6, 11,22 116:16 164:5,16

**breaking** 100:23 102:2

**breaks** 21:11

**breathe** 66:1

**Briana** 31:20,23

**briefly** 88:8

**bring** 27:7,9 80:10 82:24 83:19 84:11 85:3,24 88:2,17 105:18 107:20 108:17 110:24 144:4 147:6

**bringing** 15:23

**broadly** 104:13

**broke** 57:10

**broken** 63:17

**brought** 43:1 64:6 119:6

**buff** 38:6

**building** 153:22

**bullet** 102:24

**bullets** 157:1

**bullied** 62:5

**bullshit** 148:16

**bunch** 58:22 124:20

---

**C**

---

**calendar** 135:13

**California** 11:1,10 12:6,7 23:20, 22 28:3 57:16,24

**call** 53:13,18 54:9 57:11,12

**called** 20:25 71:11,13 73:2

**calling** 164:4

**Calls** 39:25 47:14 52:23 56:17 109:20 117:17 120:19 134:9 166:14,15 167:3,22 171:8

**Calm** 126:4

**camper** 29:7,12,13

**cans** 170:17 171:6,11,13

**canyon** 163:5

**capable** 113:4

**car** 28:12,13,15,16,18,19 29:3,11 71:25 100:24 102:24 118:20 122:4,5,11,12,15 124:9 125:25 127:18 128:21 140:21 145:10 146:4 164:1 172:3 173:16 175:18 176:12 178:5 179:22,23 180:7

**care** 118:19,21 138:5 177:21,22,24

**cared** 36:12

**carefully** 18:18

**carry** 46:8

**cars** 118:22

**case** 11:10 13:22 14:1,11 15:13, 19 49:8,11 50:16 75:8 78:13 85:16 86:10 106:23 107:2,10

**cases** 79:11,12,25 80:7 81:2 113:11 114:4

**catch** 175:18 180:8

**caught** 73:22 175:1,15 180:7,12, 15 181:7

**caused** 106:20 107:14 108:1

**cell** 30:17,19 63:18

**center** 175:16

**Certified** 12:22

**CFR** 85:9 86:8 89:5 114:10

**chair** 140:22,23 142:24

**charge** 77:12 113:12

**charged** 64:4,7 73:3 77:2 79:18, 19 87:4,19 102:19,20 112:14,17

**charges** 16:13 72:5 76:10,24 87:9,13

**chased** 102:19,22

**chasing** 154:1

**chat** 49:3,5

**cheat** 53:11

**chest** 20:1

**child** 29:25 31:16,18 32:4,25 33:4 62:1

**child's** 31:24

**childhood** 66:5,7 83:7

**children** 31:9,13 32:3,8,9,12,13, 15,17,20 56:11 73:10,12 74:6,23 110:2 147:4,17

**choose** 79:24

**CHP** 106:7

**cities** 105:1,4

**citizen** 69:4,5 80:8 182:8,10

**City** 12:2 57:16,23 72:23

**civil** 14:1,2 15:2,10,14,17,19 16:10

**claim** 88:9 116:9 141:7 142:16

**claimed** 44:22

**claiming** 64:9

**claims** 15:24 42:25

**clarified** 43:19

**clarify** 177:10

**clarity** 44:1 178:10

**classes** 33:20

**clear** 35:2

**clearer** 35:3,18,22

**clerk** 46:22 164:3

**client** 44:5 70:9

**clip** 59:24

**close** 35:16,17,18

**clubs** 123:4,9,10,19,21 124:14, 18 125:1,10,13 126:10 128:14,18 129:4 130:2,3,18 143:2,11 144:12 149:7 169:2,5,8,11,12,16, 20,23

**coach** 67:9 100:17

**coaching** 67:13,14,15,19

**college** 33:18

**colon** 40:18

**color** 29:1,5

**coma** 47:20 48:5,6

**commands** 168:15

**committed** 72:14 133:16

**communicate** 54:7 121:24 164:17

**communications** 48:20

**compel** 27:9

**complete** 18:19 164:19

**completed** 33:9 87:4,11

**completing** 143:19

**complying** 152:1

**Compound** 89:22

**concentrate** 34:6

**concerned** 156:15,17 169:22

**concludes** 183:12

**condition** 38:24 39:1,4,7 97:1 112:4 136:5

**conditions** 38:10,15 40:14,15, 19,23 41:12 44:13,22 45:17 90:9, 16 114:8

**confer** 88:8

**conference** 11:8,15,21 53:18 54:9

**confirm** 182:23

**connection** 22:7

**consent** 11:16 12:8,12 71:19 141:1

**considered** 28:6 73:5

**consistent** 177:12

**console** 175:16

**conspire** 74:9

**conspired** 74:7

**Constitutional** 136:4

**consumed** 86:12,18 160:21

**contact** 42:9 43:11 45:6 46:3,21, 22 73:20 142:17,18

**contacted** 47:9,22,23 133:25 134:4,13,21

**contend** 114:7

**continue** 85:22 95:12 96:1 107:19 112:22 114:5 115:25 116:1,11 173:14 182:19

**continuing** 130:15

contribute 36:9

contributory 88:10

conversation 17:7

convict 76:9

convicted 60:25 61:9,15,17
63:23 65:2 68:8 71:3,5,6,7,8,10,
11,12,16,17,18,25 72:1 75:23,25
76:5 77:6,8,11,15,24 78:4 79:14,
15 87:4,7 112:19 114:3

convicting 76:10

convictions 76:25

cop 118:17 140:21 155:5

copied 46:23

cops 97:6 98:12 109:22 118:16
127:7 138:2,15,16,19 139:20
149:16,24 154:24 161:22 165:11

copy 183:15,18

corporal 72:10

correct 16:19 24:20 29:18 30:2
33:1 34:20 39:18 77:7 80:14
96:10 98:25 108:24 109:14
112:16 121:6,19 125:7 127:15
137:14 155:14 156:7 161:6
169:16 170:12 171:7 172:21
173:21

Correctional 49:4

corrective 34:19

counsel 11:22 18:5 22:9 25:15
101:22 160:8 183:3

counsel's 27:3

counseling 89:10,21 90:15,25
91:1

counselor 91:2

count 50:10

County 14:11 15:14,18 33:16
57:16 161:10

couple 48:8 54:14 160:9

court 11:13,19 12:14 17:10,16,
25 18:1,13 20:16 44:17 53:16
56:23 57:1 76:14 78:13 80:1
94:12 113:15 135:13 164:25

courts 33:5,6

CPS 73:9,13 74:5

crash 33:20 174:15

crashed 33:19

crime 63:23 65:2 72:8,9,13 83:5

crimes 60:25 61:8,14,16,18 64:1
65:8,9,13 68:8 71:2,4 77:16,20
133:16

criminal 14:1 16:10,13 113:15
114:2

crooked 34:3,7,8

current 80:12 113:10 114:3

custody 64:9 74:22 79:10,22
80:5,12

D

D.A. 113:12

dad 60:3

Dale 47:10,12 55:15

damages 43:21

Dang 138:4

dark 34:12

date 11:6 22:16 23:4,10 24:19
30:19,22 31:2 46:18 54:4 70:20
80:18 81:13 86:11 88:19 93:4,6
111:19 141:20 142:10,21 157:15
164:13 165:2

dates 81:6 141:14,19 142:2,3,5,
7,8,16

day 30:6,9,11,14,16 35:23 36:16,
17,23 46:8 50:12 56:14 58:23
66:24 75:25 77:8,22 78:12,15
86:19 99:3 130:24 133:16
141:22,25 146:14,18 160:25
182:6

day's 49:25

days 50:10

deal 78:3,5,19 87:17 112:19
136:9 138:6

December 11:1,6 22:17 23:5
46:18 54:4 70:20 111:19 164:13
182:19

decide 27:8 54:16 69:1,14
179:20

decides 27:10

deciding 69:15

decision 180:4

defendants 13:5 88:10

Defender's 98:20

defense 57:15

defenses 88:9

depending 165:1

depo 182:18

deposed 13:13 16:19

deposing 13:4

deposition 11:8,15,18,20,25
12:4,9,13 13:15 14:25 17:4,6,13,
14,17 18:9 19:7 22:16,21 27:8
42:3,10 43:10 45:1 46:17 51:8,
11,14 52:3,10,15,21 53:2,8,13,17
54:4 55:2,8 58:10 60:11 68:23
69:18 70:19 79:12 80:11 83:20
84:12 85:4,25 88:3,6,17 100:18
105:19 107:20 108:18 111:18,21
114:12 116:1 142:14 143:18
144:5 147:7 164:12,20 183:12

deputy 12:5 44:8,10 182:24

describing 179:11

detail 178:16

determine 44:15,18

determines 114:21

determining 114:19

devices 136:11

diagnosed 34:14,16 36:7 38:6,
10,14,20,24 39:5,9,17 41:18 45:3
90:9 97:15,20 98:10,14,22 99:2,
3,14 116:9

diagnoses 43:22

diagnosis 38:19 45:14 99:5

diaper 40:25 41:1,5 164:6

difference 19:14 43:13 104:22

difficulties 22:20

digging 125:24 128:1

digits 51:23

Dilaudid 148:15

directed 18:6

**disagree** 88:12 113:1

**disagreement** 44:19

**discard** 180:19

**disclose** 32:16 105:6

**discoverable** 43:19,25 107:3,5, 8 115:18

**discovery** 115:16,22

**discussed** 41:10 42:14 44:12

**discussing** 115:18

**dismissing** 42:25

**disorder** 40:5,6 108:2 116:10

**disorders** 40:8,10 43:23

**dispute** 72:11

**disputes** 54:10

**distance** 40:25

**distress** 43:20

**DMV** 25:22 26:8

**doctor** 35:4,5 38:12,14 39:1 90:6,11 96:19 99:7,20,21 140:25

**doctors** 38:16 40:12

**documents** 55:9,11,12,14 56:23 57:1

**dog** 154:1,2 156:11,20,21

**domestic** 71:8 72:7,21 73:3,5

**door** 44:6,23 45:16,17,19,22,24 120:3 141:13

**doorbell** 58:24 60:10

**doorbells** 58:16,21 59:1 60:5

**double** 51:22

**draft** 53:17 54:8

**drawn** 118:13,23 121:16 138:13

**drive** 30:7,13 127:6,11 170:21 172:24

**driver's** 23:8,9,11,14,15,18,20, 23 24:15,19 25:2 26:2,3,12,20 64:19 127:1,5,6,9,14 128:19,25 161:19 173:21

**driveway** 161:5 171:1,3

**driving** 26:23 64:13 161:20 162:19,23,25 163:4,5 165:5,21

170:11 171:20,25 172:2,12 173:4 174:2,12 175:21 176:12 178:25 179:16,25

**drone** 126:19,20,21

**drop** 152:3

**dropped** 71:23

**drove** 30:9,11,15 127:15 129:17 161:18,19 165:7 171:1 172:4

**drug** 64:6 72:4 82:15 85:8 87:9 112:3,11 148:16

**drug-related** 61:17 66:3

**druggie** 70:2

**drugs** 64:3,10 71:17 81:16,24 82:13,19 83:11 84:3,6,7 86:4,21 88:20,25 140:25 148:19,25 149:4

**drunk** 159:7

**Dude** 138:3

**DUI** 64:11,12 65:1 102:20,21 103:8

**duly** 12:18

**dumb** 62:1

**DV** 77:17

---

### E

**earlier** 26:17 113:19 149:6 173:19 176:22

**Eddie** 59:8

**education** 33:8

**effect** 18:12

**electronic** 136:11

**email** 46:22 182:22

**emailed** 55:12,14,17 58:4 60:9

**emotional** 37:22 41:7 42:25 43:20

**emotionally** 37:23,25 45:4

**encompass** 82:14

**end** 54:25 62:5 76:10 78:19 165:1 173:13 182:18

**ending** 183:21

**enforcement** 92:12 93:8,14,24 95:7 133:25 134:4 136:9,19

**engine** 122:5,6,7

**enhancements** 113:11

**entails** 153:2

**entire** 18:24 22:23 61:7,12 110:5 112:19,20 172:2

**entitled** 19:8 27:10 43:2 88:11

**entitlement** 88:13

**essay** 53:8

**essentially** 113:2

**established** 149:8

**estimate** 19:9,15,22 20:4 49:13 75:16 145:17,20,25 171:23

**estimation** 50:19

**et al** 11:10

**evading** 71:14,15,16 75:25 76:20 77:1,9,18,19 78:2,11

**event** 112:19

**eventually** 179:24

**everybody's** 45:16

**everything's** 36:18

**evidence** 142:11

**exact** 20:4,24 50:22,23

**EXAMINATION** 13:1

**examined** 12:19

**exceeded** 172:9

**exhibit** 94:6,7 95:4 147:10

**exit** 175:22 176:3,4 180:5

**exited** 173:15 180:20

**expecting** 79:6 178:15,19

**experience** 133:3,7 139:17,18 141:21

**explain** 131:11 177:10

**eye** 34:3,8

**eyes** 34:5,7,20

**eyesight** 33:25 34:2,15

---

### F

**F-A-L-C-O-N** 13:11

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                Index: face..golf

**face** 63:6

**facilitate** 21:16

**facility** 21:13 49:4 98:19

**fact** 106:24 112:15 138:20

**factory** 145:7

**facts** 53:3 125:8 143:6

**failure** 109:23 117:19 118:2,3,6, 7,18

**fair** 17:23

**Falcon** 13:10

**family** 36:23,24 58:15 147:22

**farsighted** 35:13

**fast** 100:15 161:24 171:20

**father** 32:10,15 33:6 59:6,17 60:7

**father's** 32:15 59:7

**favorite** 35:25 36:1

**FEAR** 139:14

**February** 48:15,18,21

**fecal** 40:17

**feces** 40:18

**feel** 36:6 37:3,15 38:2,18 39:13 55:1

**feeling** 110:7

**fell** 129:13

**felt** 121:10,15,18 153:17

**Fentynal** 67:24 68:1,10,11 157:13 159:10

**fewer** 137:21

**fiance** 31:3,6,7 72:18

**fifth-wheel** 29:15

**fight** 62:10 91:7

**fighter** 91:19

**fighting** 61:23 62:3,9

**fights** 62:7 91:4,12

**filed** 15:2 87:13

**files** 15:24

**find** 126:12 143:14

**fine** 46:5 178:14

**finish** 17:19,21 130:12

**finished** 147:14 148:1,6

**firearm** 71:7 78:2,11 91:23 92:1 136:20,24 137:2,14 182:13

**firearms** 91:20 130:4 143:3

**fired** 121:5 165:21

**five-minute** 70:8 111:11

**flashing** 138:13

**flee** 170:22

**flew** 174:6,7 176:18

**floor** 176:19

**fog** 92:19

**follow** 17:8

**footage** 60:10,15,17,20

**Force** 106:8

**forcefully** 73:10

**forever** 179:23

**forget** 56:4 62:19 65:9 139:13,14

**form** 44:3

**forward** 68:22 70:10

**fought** 91:9

**found** 62:25 64:10 128:21

**foundation** 16:5 52:24 56:22 93:9,11 117:18 143:7 166:15 171:9

**Fourth** 135:25

**free** 136:4

**friend** 47:7 63:19

**front** 19:25 20:1 119:3,10,25 120:13 121:5,25 127:10,18,22 128:2,7,13 134:7 140:19 146:6 153:17,18 161:14 167:15 170:18

**froze** 21:24 101:5

**frozen** 21:22 101:21 102:5

**fuck** 124:8 126:12 140:13,15 147:14

**fuck's** 138:14

**fucking** 138:14 146:17 148:16 163:20

**full** 13:8

**fully** 109:24

**future** 87:20

---

**G**

---

**G-E-O-R-G-E** 13:10

**G-O-N-Z-A-L-E-Z** 13:11 32:7

**Galipo's** 47:10,12

**game** 110:22

**gang** 63:2,3,4 106:8 135:5

**gangs** 139:1

**Gapilo's** 55:15

**Garcia** 12:5,6 46:24 183:9,10,15, 17

**garden** 43:21 44:24

**gas** 174:3,4,7,13 176:23 179:3,4

**gave** 43:6 45:20 62:1 67:17 77:16 93:8,14 94:5 116:6 120:8 148:20,21

**general** 12:5 17:3

**generally** 113:6

**gently** 174:22,24 181:11

**George** 11:8,9 12:12,17 13:4,10 14:7 22:16 42:20 46:17 54:4 56:24 70:19 111:18 164:12 183:12

**girlfriend** 31:3

**give** 17:20 18:9,17,20 20:4,17 21:9 49:13 52:20 54:14,24 68:16, 21 71:4 75:14,16 99:16 102:7 115:2 136:3 141:14,18,20 142:2, 3,5,7,8 145:17,20,25 149:2 161:14 168:15 171:23

**giving** 70:4 149:2 177:13

**glasses** 34:17,23 35:1,3,7,9,18, 23

**glitch** 101:1

**golf** 123:4,9,10,19,21 124:14,18 125:1,10,13 126:10 128:14,18 129:3 130:2,3,18 143:2,10 144:12 149:7 169:2,5,8,11,12,16, 19,23

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                                12/11/2025                                Index: Gonzalez..hurt

**Gonzalez** 11:8,9 12:12,17 13:4, 6,10 22:16,19 27:2,8 31:25 32:5, 6 41:13,22 44:9 46:17,20 48:10 54:4,6,19 56:24 61:8,14 65:20 67:7 68:15 69:17 70:19,23 74:16 81:7 86:3 93:13 94:9,16 101:23 111:18,21 114:14 115:14,25 158:25 159:2,17,23 160:2,9 164:12,16 167:5 177:6 178:7,13 183:13

**good** 13:3 22:18 24:2 111:20 164:15 181:18

**grab** 125:17 129:23 130:6 176:19

**grabbed** 129:18 130:3,4,18 174:8

**grabs** 181:19

**grade** 33:10,11

**graduate** 33:13

**granted** 73:24 74:3 75:11,12

**Great** 21:14 34:22 36:4 46:12

**Greenberg** 47:7,8

**ground** 152:4 181:12

**growing** 84:7 104:21

**guardian** 16:3

**guards** 118:23

**guess** 16:1 19:8,15,17,20 63:14 135:11

**guessed** 19:17

**guessing** 19:16 20:8 50:21 149:1,3

**guestimating** 50:21

**guidance** 164:25

**gun** 102:23 103:12 104:4 123:13, 16,18,23 124:1,4,8 125:3,15,16, 19 126:9,23 129:1,2,5,9,10 130:6 131:6,10 149:10,22 150:4,5,9,16, 21 151:8,16 152:6 154:8,14 155:8 156:5,16,21,22 157:1,4 163:22 168:19,20,21,22,25 173:17,20,24 174:11,21 175:4,7, 8,23 176:4,8,12,15 179:1,16 180:4,16,18,19,22 181:1,4,5,14, 17,18

**gunned** 39:15

**guns** 118:13,23 121:16 123:5,11 124:14 125:14 128:16 130:19 131:12 138:13 144:19 154:1 166:9 169:1,13,15,23 174:20 181:13

**gunshots** 121:19

**guys** 34:21 57:14,17 148:3

**guys'** 56:6

---

# H

**half** 78:20,25 79:3 124:17 167:4

**hall** 14:12 37:11,14 98:20 99:1, 17

**halls** 99:6

**hand** 151:9,17 154:8 155:9

**handcuffed** 139:19

**handle** 42:21 55:2

**hands** 61:3,11 122:8,12 123:1 124:3 139:9 144:25 145:3,6,10, 14 146:3 151:10,13,14,25 152:11,13,17,21,25 153:4,7,14, 25 154:6,7,22 163:24

**happen** 54:17

**happened** 14:23,25 36:18 53:14 56:14 124:2 158:22 168:4 177:10,12

**happy** 42:12 44:1

**harassing** 42:17 137:16 151:4

**hard** 13:23,24 24:8 36:24 37:5, 15,18 48:23 50:1

**head** 18:2 20:15,16 98:7 103:13, 21 104:5 141:10

**health** 44:13,24 96:17 97:1 114:8 148:16,19,24

**hear** 13:6 18:5 21:20,23 22:23 27:15 58:24 59:21 95:5,14 96:6 97:4,5,13 98:9 100:25 101:24 102:6,10,14 117:6 118:4 120:5, 23 121:9,13,19 126:1 133:14

**heard** 18:8,24 58:25 98:9 117:24 121:20,22 132:22 165:14

**hearing** 33:22

**held** 103:12,14,21 104:4

**helpers** 49:20

**Hemet** 12:2 57:17,23 72:23 106:7

**hey** 58:23 118:17 132:1,13 138:2 151:22 181:16

**hide** 115:15 122:5,6 180:11

**hiding** 103:16 141:11

**high** 33:13,15,16

**highest** 33:8

**highly** 92:16 147:23

**Highway** 12:7

**HIPAA** 85:9,17 86:8 89:5 106:25 112:7,9,24 114:10 144:3

**hit** 91:8,10 170:17 171:5,13,15 174:14,15

**hogtied** 139:20 140:19,21 142:24

**hold** 41:4 100:23 101:13 102:1 110:9 117:6 122:21 123:6 124:21 126:4,22 131:18 132:3,6 134:2 136:8 143:25 148:23 150:7 152:5 156:1,3 157:3,5

**holes** 102:24

**home** 20:8 28:5 179:25

**homeless** 27:14,16,23

**honest** 93:24 159:19

**honestly** 26:20 38:16

**hope** 156:25 157:1 181:19

**hoping** 36:21 50:12

**hospital** 47:20,21 48:4,7,9,15,21 52:5 92:17 93:1,3 98:19 140:18 141:23,24 142:3,18 147:20,21 148:20,21

**hour** 161:21 170:12

**house** 27:19 98:13 103:14,15 110:2 117:25 118:25 119:2,4,11, 12,14,24,25 120:3,13 121:4,6,25 122:19 124:10 127:10 128:23,24 132:22 134:8 161:14,18 162:7 165:8,16,18 166:17 167:16,21 170:18 171:2,21 172:3 180:2

**hundred** 56:9

**hurt** 52:5 173:3,5

---

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                                                    12/11/2025                                                    Index: hypothetical..kill

**hypothetical** 109:21 120:18 139:12 149:11,14 152:22 155:20

**Hyundai** 28:21 29:18 161:5,13 167:16

---

**I**

**idea** 19:20 41:19 51:17 56:18,19 58:5 62:24 65:3,5 75:15,19 76:8 89:13 134:6,10 136:13

**identification** 94:8

**identify** 11:22 122:25

**important** 17:17,19 18:3,17 22:22

**inaudible** 39:19

**incarcerated** 37:2,8 61:21 62:14 108:23 109:8,13,17 110:16 116:18,25 117:1,4,13,16

**incident** 14:25 15:6 23:10 24:14, 20,23 26:11 27:13 29:18 30:20, 22 31:2 42:16 43:23 59:1 60:18, 21 68:4 75:20 77:25 80:14,24 86:12 87:11,21 88:19 91:22,25 92:2,13,25 97:25 100:8,20 101:3 102:13,16 103:7 112:2,4,12,18 113:18,21,24 116:3 132:16,18 157:9,15,25 158:18 159:3 160:18,21 165:3

**incidents** 104:3,8 106:11

**incomplete** 109:21 120:18 139:11 149:11,14 152:22 155:19

**incontinence** 40:17

**indicating** 122:11

**Indio** 98:20

**indisposed** 47:23

**influence** 64:15,17 148:8,14,15 149:4 160:24

**inform** 134:22

**information** 106:25 142:15

**injuries** 42:16

**injury** 72:10

**inside** 29:17 36:2,3,13 37:4 63:17,18 71:18 118:25 123:1,14 125:20,24 126:5,23 127:22 129:17 145:14 161:5,13 162:2,7,

12 163:25 167:16 168:16 170:8

**insist** 107:5

**instantly** 154:23

**institution** 36:13

**institutions** 36:11

**instruct** 26:24 41:10 42:7 44:14 45:5,8,10 46:2 68:5 74:10 81:22 82:4,7 85:6,14 86:5,23 88:21 89:2 106:21 112:9 113:8 114:5, 14 116:1 157:14,18 158:1,5,14 159:12 160:4,11 169:19

**instructed** 113:4 115:10

**instructing** 144:2 159:14

**instruction** 88:15 107:17,24,25 108:3 115:2,7 158:11

**instructions** 112:6,22

**intending** 179:25 180:1

**intentions** 162:9

**Internet** 22:6

**interpreting** 140:6

**interrogating** 94:1 135:6

**interview** 108:22 133:13 182:6

**interviewed** 92:12,15,23 93:3 146:17

**intestines** 41:3

**intoxicated** 64:13,15 157:9 158:12,14,19 159:4,6

**investigate** 43:2 69:21

**investigator** 92:23 95:20

**investigators** 116:7 162:20 163:11

**involved** 16:11 47:13 113:11 161:9 170:10

**involving** 15:18 87:21 103:8

**Irick** 12:8

**irrelevant** 41:9 42:15 43:15 106:23

**issue** 34:2 45:16 107:3

**issued** 23:22

**issues** 34:14 38:5 50:6 65:6 74:24 96:17 112:2

**items** 60:10

---

**J**

**J-A-S-M-I-N-E** 32:6

**J-O-E-L-L-E-E** 32:6

**Jack-in-the-box** 140:20

**jail** 64:4,7 74:22 103:5 108:23 109:8,13,18 110:15 116:18,20,25 117:1,3,12,15 137:24

**January** 23:11 48:15,17 77:25 80:14 86:12,21,22 87:21 92:13 97:25 100:8 109:18 110:16 113:19,21,24 116:3,7,20 132:17, 19 133:15,18,22 134:5,8 135:9, 24 136:20 137:1 140:4,10 146:16 157:8,12,24 158:17 159:3,10 160:17,20 163:3 182:12

**Jasmine** 32:5,22

**job** 24:2 147:14 148:1,6

**Joellee** 32:5,6

**judge** 18:7,13 27:9 46:9,21 53:19 54:10,16 73:25 114:21,24 115:19 164:17

**jump** 179:18,20,21,23

**jumped** 126:3 128:19,25 140:20

**jurisdiction** 73:11,15 75:7 87:23

**jury** 18:13 78:4

**juvenile** 14:12 37:10,14 98:20 99:1,6,17

---

**K**

**keeping** 155:9

**keys** 128:20,21

**kicked** 141:13 154:24,25

**kid** 181:19

**kids** 73:16 74:1,5,18,21 119:1 120:3 121:22 122:13 124:9 128:23,24 147:5 162:2,7,12 165:16,17 166:6,17 167:21

**kids'** 122:14

**kill** 139:3 146:13,18 148:4 163:23 166:1,2,8,11 167:18

**killed** 98:8 162:21,23

**kind** 20:1 28:19 45:9 82:15 85:7 89:6 178:5

**knee** 154:19,24,25

**knew** 25:7 52:1 138:18,22 161:4

**knife** 155:6

**knocking** 44:6

**knowledge** 41:17 67:8,12 93:17

**Kornblau** 12:1 13:2,3 14:9 16:9, 17,24 21:23 22:1,5,10,18 25:19 26:17 27:1,18,25 30:13 38:9 39:16 40:3,22 41:13 42:4,8,24 44:5,15,25 45:13,19,23 46:3,6, 12,19 47:17 48:17 51:7 52:25 53:23 54:6 56:7,20,25 65:16 66:16,21 67:9,13,15,22 68:7 69:11 70:11,13,22 74:13,16 76:19 81:11,25 82:6,9,11,20 83:18 84:1,9,16,21 85:2,15,23 86:2,7,9,11,20,25 87:2,10,14,18 88:1,7,16,24 89:4,9,12 90:1,8 92:10 93:13 94:9,15,21 95:2,19 96:4,14 97:10 98:10 99:12,25 101:9,11,23 105:17,24 107:1,9, 13,14,18,23 108:1,5,8,21 109:3,6 110:4 111:20 113:17,23 114:13, 18 115:1,5,8,13 116:4 117:21 120:16,21 122:24 124:11 125:7, 12 128:10 130:17 131:4 132:3,8 133:13 134:11,20 135:8,24 136:17 137:10,17,20 138:17 139:25 140:4 142:13 143:12,17 144:16 145:5,9 146:12 147:12 148:5,18 149:18 150:1,25 151:6 152:13 153:2,19 154:3 155:13,22 156:22 157:17,20,23 158:7,9,16, 21,25 159:2,16 160:7 162:18 163:10 164:15 166:7,19 167:10, 24 168:5 170:7 171:12 173:7,12 175:14 178:13 182:12,17,25 183:5

---

**L**

**L-A-R-A** 13:11 48:3

**Lacks** 16:5 52:24 56:22 117:18 143:6 166:15 171:9

**lap** 174:8,11 175:21,24 176:6,8, 12,24 177:4 179:5,7,8,13

**Lara** 13:10 47:25 48:2

**late** 135:14

**laughed** 103:4

**laundry** 72:11,13 73:1,4

**Laura** 11:13 12:22

**law** 18:13 42:1 47:10 80:2 92:12 93:7,14,24 95:7 133:25 134:4 136:9,19

**laws** 172:11

**lawsuit** 13:18 14:10 15:2,3,11, 14,17,24 43:1 44:23 69:9,10,20 161:10

**lawsuits** 16:10

**lawyer** 47:6,7,19,22,23 49:20,23 76:16 100:14,17 135:12

**lawyer's** 50:25 51:1,2

**lawyers** 47:11,16 48:4,8,14,21 49:8,10,18,21 50:16 51:9,11,14 52:22 53:2 57:11

**lay** 152:4

**leak** 40:18 41:6

**leave** 110:17 111:2 120:9 122:19 128:22 165:13 166:12,18,21,23 167:19 168:9,12,14 170:13 171:2,7 176:12 180:7

**leaving** 110:19 147:18 170:18

**left** 64:3 171:21 172:3

**Legal** 11:12

**legally** 136:23 137:1,13

**length** 20:2,4,7

**lens** 34:19

**letter** 71:24

**letting** 140:8 170:16

**level** 33:8

**license** 12:23 23:8,9,11,14,15, 19,20,23 24:4,15,16,19 25:2,8,21 26:2,3,12,21 64:19

**lie** 26:22 74:7,9 93:18 159:21,25

**life** 50:9 61:15 65:10 109:1,10,16 110:18 111:9 116:23 180:13,14, 15

**lifetime** 61:1,9 71:3

**lift** 124:1,8

**lifting** 179:11

**lights** 124:19 138:14 172:18,19, 20

**limit** 82:21 171:25 172:5

**limitations** 81:21 82:16 87:24 112:12

**limited** 55:5 84:10

**limiting** 84:9

**lines** 25:9,22

**linked** 47:10

**liquor** 160:21

**Lisa** 47:25 48:2

**list** 71:4 77:16

**listed** 77:15

**listen** 18:18 58:16 59:21

**litem** 16:3

**literally** 161:23

**live** 50:9

**lives** 32:16

**location** 98:25 134:22

**logged** 141:24

**logging** 116:14

**long** 20:9 24:13,17 26:6 40:25 124:20 145:14 152:24

**long-term** 37:20

**looked** 36:8 112:13

**lot** 35:23 36:7 51:16 55:12,18 63:15 76:10 78:16 104:21 113:5 139:18 140:24

**lots** 106:16

**loud** 18:1

**low** 122:6

**luck** 130:21

**lying** 50:22 51:25 93:18

---

**M**

**M-A-R-T-I-N-E-Z** 59:11

**mad** 21:2

**made** 20:23 180:4

**Magistrate** 42:9,13,23 43:12,17 44:2 45:7 46:4,9,11,21 53:19 54:10 107:12 164:17

**mailing** 28:6

**maintain** 114:11 115:11

**make** 17:16 28:23 44:17 54:16 69:23 70:1 153:21 154:16 160:11 167:5 177:20,23

**making** 18:6 69:12 143:25

**man** 138:3

**manner** 11:24

**Marcel** 12:11 25:15 42:10,24

**marijuana** 62:19,22 64:18 67:21 68:9 83:3

**Mario** 12:5

**mark** 94:6

**marked** 94:7 95:4

**married** 30:23,25

**Martinez** 47:25 48:3 59:8,11

**matter** 11:9,16 43:14 44:3 74:25 106:24 114:22,23 138:9 139:5

**matters** 66:13

**maximum** 104:24

**MCL** 154:19 155:1

**means** 18:10 138:1 139:14

**meant** 29:12 73:19

**meantime** 47:1

**medical** 34:9 40:15,19,22 44:22 45:17 85:17,18

**medically** 36:12

**medicated** 92:17 147:23

**medication** 66:14 92:18 93:5

**meet** 88:8

**meetings** 38:17

**members** 58:16

**memories** 37:21,22

**memory** 36:5,6,15 37:1,13,20 38:1 50:7 65:6 177:14

**mental** 41:7 43:22 44:13,24 96:17 97:1 112:3 114:8 148:16, 19,24

**mentally** 45:4

**mention** 48:10

**meth** 67:22

**methamphetamine** 68:9 158:10

**methamphetamines** 71:6 157:25

**Middle** 48:1

**miles** 161:21 170:11

**mind** 38:2 122:19 135:20 160:4

**mindset** 167:23

**minor** 13:23,25 14:15 15:25 16:7 72:3 83:6,10 84:6 90:17 91:2 97:16 103:22 106:17 140:17 141:1 154:25

**minute** 66:1 156:14

**minutes** 95:3 96:5,15 97:11 100:1 136:18 146:13 147:13 164:18 178:24

**Miranda** 94:22,24 95:6,9,21 96:6

**misdemeanor** 112:13

**misstates** 16:20 69:3 76:7 108:25 109:2 125:6 145:8 153:23 156:18 165:23

**model** 28:23

**molestation** 14:5 15:7,19

**molested** 14:6

**mom** 140:18

**mom's** 180:1

**moment** 97:3 130:9 164:4

**moments** 127:15

**months** 78:24 79:2,4 81:9,12

**morning** 13:3,4 22:18 111:20

**mother** 15:25 16:1,3,8 29:25 31:18 47:7,21,22 57:8 59:5,15,19 141:21 142:17

**mother's** 47:24 141:1

**motion** 27:9

**move** 44:3 61:6,12 68:22 70:10 92:21 110:5 120:10 124:11 127:17,21 137:10 139:25 149:19 150:2 167:10 176:8

**movement** 102:6

**moving** 126:5 128:1

**mucous** 40:18

**multiple** 151:4

**muted** 44:7

---

**N**

**N-I-E-V-E-S** 29:23

**names** 32:2 37:16 48:20

**narrow** 143:22

**narrowing** 82:1

**Nartates** 32:11

**Nationwide** 11:12

**nature** 14:9 24:16

**nearsighted** 35:13

**needed** 25:8

**negligence** 88:9,10

**neighbor** 73:2

**neighborhood** 58:22

**Nieves** 29:21 31:15

**nighttime** 124:19 138:13

**nodding** 20:15

**nods** 18:2 20:16

**non-responsive** 61:7,13 92:22 110:5 120:11 124:12 140:1 149:20 150:2 167:11

**normal** 17:7

**number** 11:10 12:23 50:22,23 59:13 94:7 139:5

---

**O**

**O-C-H-O-A** 31:22

**oath** 12:18 18:9 23:2 47:4 70:24 111:23

**obeying** 172:11

**object** 61:6 84:14 86:1 88:5 92:21 105:23 107:22 108:19 110:4 120:10 143:16 157:14

**objection** 44:17 55:25 61:12 67:16 84:24 85:19 88:15 89:7 93:10 107:12,16 114:23,25 124:11 130:13 132:5 134:25 137:10 139:25 142:12 149:13,19 155:18 157:21 167:2,5,10 170:4 182:1

**objections** 18:6 54:14,16 66:18 67:6,17 107:25 108:4 112:6 114:11 160:11

**obligations** 115:16

**obstruct** 43:10

**obstructing** 42:10 71:10

**obtain** 115:17

**obtaining** 115:22

**occasion** 28:8,9 30:7

**occasions** 13:20 49:7,10

**occurred** 15:7 141:7

**occurring** 75:1

**Ochoa** 31:20,23 32:22

**offered** 95:5

**office** 47:10,12 55:15

**officer** 11:20 66:25 73:14 103:3 131:5,9 139:6

**officers** 106:7,13 119:5,10 137:22

**offices** 49:23 50:25 51:1,2

**older** 14:17,19

**open** 45:19,22,24 78:13 79:11, 12,25 80:6 81:1 113:11 114:3 129:2

**opened** 44:23 45:16,18

**opinion** 43:14,24

**opportunity** 54:24

**orangish** 178:6

**order** 17:8,16 44:2 73:7,12,19, 23,24 74:1,3,8,17 75:2,10,12 78:18 85:16 86:10 107:1,2,10 112:8

**other's** 63:8

**outrageous** 172:16

**overbroad** 16:14 39:11 40:20 41:8 56:1 66:10 81:19 83:13 89:11 90:4 152:10 153:6

**owner** 71:24

**owner's** 71:19

---

# P

**P-A-T-E-L** 98:18

**p.m.** 11:2 164:14 183:14,21

**package** 78:19

**Packer** 47:8,9 48:25 49:3 55:15

**pain** 93:5

**Palm** 31:16,18

**pants** 179:12

**paper** 56:21 57:5,22 76:13,15

**papers** 76:17

**paperwork** 53:3

**paralegals** 49:19

**paranoia** 97:12,15,24 98:14 99:2 106:20 116:9

**paranoid** 98:8

**paraphernalia** 71:8

**parent's** 28:3

**parents** 29:14 59:5 61:25

**park** 63:1

**parked** 161:5

**parking** 140:24

**parole** 136:6,7

**part** 43:1 85:9 86:8 89:5,6 94:10 101:13 110:17 114:10 172:13,15

**parties** 11:16,19

**parts** 110:19,20 111:2

**party** 13:18

**Passed** 23:25

**passenger** 174:23,25

**Patel** 98:16,24

**paternal** 32:10 33:2,4,6

**Patrol** 12:7

**pause** 22:14 46:15 54:1 70:17 111:16 164:10

**pedal** 174:4,8,14 176:23 179:3,4

**penalty** 18:11

**pending** 14:8 21:9 70:8 123:7 128:5,6 178:8

**people** 24:10 62:10 91:8,10,12 98:9,13 104:14,17 105:5 106:14, 17 110:8 118:25 119:3 121:20 126:1 132:22 139:2,6,7 153:15, 16,17,18,21 156:20 181:14

**perfectly** 178:14

**perjury** 18:11

**person** 17:18 42:1,2 50:12 69:24,25 72:16 123:24 136:10 139:6 173:25 175:12

**pertain** 69:8,10

**phone** 30:17,19 42:13,22 59:13 60:3 109:16

**phrased** 173:8

**physically** 45:4

**pick** 173:24

**picked** 124:14 141:22 176:23 178:25 179:3

**place** 107:10 112:8 165:13 181:18,22

**placement** 63:14

**placements** 63:15,16

**places** 24:9 104:21,22 181:15

**plain** 57:5

**plaintiff** 12:12 15:10,12,14,15, 19,20,21,23 16:1 115:15

**plan** 179:21

**play** 43:5 45:25 94:10,19,25 95:14 96:12 97:8 99:10,23 108:6 109:3 116:11 122:24 131:1 132:18 133:11 136:15 137:18 146:10 147:10 154:4,10 156:13 163:7

**playing** 45:20 95:12 96:1 110:22 116:5,13

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Index: plays..question

**plays** 94:14,20 95:1,16 96:3,13 97:9 99:11,24 108:7,20 109:5 131:3 133:12 136:16 137:19 146:11 147:11 163:9

**plea** 78:3,5 87:16 112:18 136:9

**plead** 81:5 85:10 86:15 87:6 88:23 89:13 105:7,9,15 106:2 108:11 113:24 116:2 144:2

**pleading** 56:20 57:22 80:4,6 105:10 112:5

**pled** 78:7,15,17,18

**pocket** 64:3,10

**point** 29:10,17 30:14 87:7 106:24 113:19 114:19 131:12 153:12 154:5 163:25 173:24 183:8

**pointed** 151:10

**pointing** 109:25 131:6,10

**poles** 124:20

**police** 45:20 64:3 66:25 71:12 75:24 76:6,20 77:7,11,18,19 97:4 100:7,9,21 101:4,16 103:10,17, 18,20,25 104:6,12,14 106:7,8, 12,18 116:24 117:24 118:9 119:5,24 120:12 121:24 124:22 125:3,14 127:25 130:4 132:10,21 134:7,13,22 137:22 138:19,24 139:6,18 140:10,24 141:15,16 142:6,16 143:3 144:18 147:17 149:9,21 150:4,6,8,10,17,23 151:8 156:11,20 161:1,4,14 163:2,3 167:14,15,17,25 168:6 169:19,22 170:10,21 171:6

**politics** 90:22

**portions** 116:5

**positive** 78:8

**possess** 137:13 182:13

**possession** 71:5,6,7,17 78:2,11 92:1 136:20,23 137:2

**Post** 39:24 40:3

**potential** 113:7 114:2

**potentially** 143:3

**pre-existing** 41:11

**preferring** 43:8

**preparation** 51:8 52:2 58:10

60:11

**prepare** 51:14 52:14,20 53:9,12 55:8

**prepared** 53:2 57:21,23,24,25 58:3,6

**prescribed** 34:23

**prescription** 34:24,25 35:9,11

**present** 83:11 161:4

**pretending** 138:16

**pretty** 21:12 71:22 78:12 93:25 95:22 100:15 132:21,25 159:13, 17

**prevent** 43:10 73:19

**preventing** 43:3

**previous** 182:22

**previously** 41:10 42:14 100:9 106:5 116:5 144:17 161:11

**prior** 43:23 84:7

**prison** 71:18 74:21 90:22 180:14

**privilege** 68:6 74:12 82:8,9 85:12 86:6,7,24,25 87:25 88:14 89:3,4 112:7 114:10 135:18,23 158:5,7,9 159:11

**privileged** 42:15 43:16,24 45:9, 10,13,17 46:1 85:13 106:25 107:7 114:9 158:1

**privileges** 113:2,3 114:12 115:9

**probable** 136:11

**probation** 119:8,9 136:5,7

**problems** 33:21,24 36:5,6,15 37:1,13,19,21 38:1 81:17 83:12 84:18,23 89:10,21 90:3

**procedure** 152:7

**proceed** 47:1 115:24 164:18 165:1

**proceeding** 22:14 46:15 54:1 70:17 111:16 164:10

**process** 13:16 17:6 115:21 143:2 144:10

**produced** 85:17

**program** 89:7,8 98:21

**programs** 85:8 88:25 91:3

**promise** 142:9,10,11

**proper** 26:20

**property** 136:10

**prosecuted** 39:13

**protection** 136:21 182:7

**protective** 85:16 86:9 107:1,2,9 112:8

**provide** 19:9 81:6 142:20,21

**provided** 59:3 60:19

**psychiatrist** 90:7

**psychological** 38:10,15,24,25 39:4,7 41:12 42:25 89:10,20 90:2,9,16,24

**psychological-type** 38:5

**PTSD** 24:8 38:20 39:4,6,18,23 41:21 42:5 45:14 96:24 99:14 107:23 116:10 181:24 182:7

**pull** 64:6 118:17,22 120:8 122:15,17,18 124:7 140:12 145:12 170:16

**pulled** 117:19 129:8 134:17,18 138:1,12 161:22 162:1

**pulls** 118:17

**pursuit** 165:4 170:10 173:10

**pushed** 128:14,18

**pushing** 124:24,25

**put** 63:17,18 74:6 76:9 85:21 116:18 117:1,3 122:8,12 123:1 124:2 135:12 139:9 140:21 141:9 144:25 145:3,6,10,14 151:13 152:11,17 153:25 154:13,22 163:24 173:25 174:8,11 175:16, 25 176:6,10,15,19,23 179:5,8 180:4,18 181:13,17

**putting** 146:3 151:25 179:12

---

## Q

**question** 13:14 14:7,24 15:17 16:7,16,23 18:19,21,23,25 19:4 20:18 21:9 22:23 25:12 26:15 27:3 38:11 41:15,16,20,23,25 42:1 44:4 45:10,11 46:1 48:14 51:15 52:7,11 54:15,17 63:25 66:22,23 67:1,2,12,18 68:12

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                12/11/2025                Index: questions..response

69:8,9 70:8 74:11 82:1,7,16,21,
22 83:1,2,17,21,22 84:5,10,15
85:4,20 86:17 89:17,25 96:9,21
102:9 106:5 107:6 108:14
110:11,13,23 111:1,3,7,8 112:1,
10 120:12,23 122:23 123:6,15
128:5,6,9 131:8,24 132:7 137:8,9
138:11 140:7,9 146:22,25 147:3
150:3 151:2,3,16 154:11,12
156:20 158:23,24 159:20,24
160:10 176:2,5 177:8,9 178:2,8,
9,10,11 182:6

**questions** 17:20,22 18:18,19
41:11 43:11 44:16 45:2,3,5,9
47:2 53:4 54:12,13,22 55:4,6,18,
19,21,22 56:3,8,9,10,15,25 57:3,
6,12,13,15,17,18,19,22,23,24
58:2,3,7,9 60:9 68:16,17,21,24
69:1,13,14,15,19,21 70:3,5 80:5,
11 88:4,8,11,13 89:8,16 94:4,22
100:18 105:19 107:21 111:11
112:3 114:6,15 115:20,22 116:8
140:2,5 143:13,20,22 147:8
156:3 160:4 165:3,6 167:12
177:7,11 178:8

**quickly** 144:8 183:3

**quote** 166:8

—————————————

### R

**R-I-N-A** 119:22

**raided** 103:13,15

**raising** 85:16

**ran** 135:5 164:1

**range** 51:25

**reach** 125:16,17,23 129:22

**read** 35:23 50:11 57:7 95:6,9,20,
22

**reader** 35:24

**reading** 34:25

**ready** 166:3

**real** 100:15 170:14 183:3

**reask** 110:13

**reasking** 143:21

**reason** 20:14 112:9 131:14
153:10 156:16 168:1 171:5

**recall** 14:16 61:16 63:20 104:22
171:22 172:22 178:18

**received** 44:2

**recently** 108:9

**recognize** 94:11

**record** 11:6 13:9 17:14,17 18:2,7
21:25 22:2,4,11,13,15 46:13,17
53:22,25 54:3 69:12 70:12,14,16,
19 72:17 85:22 101:6,8 111:13,
15,18 143:25 158:15 159:17
164:7,9,12 183:1,13

**recorded** 45:20,25 140:22

**recording** 11:17 17:11 94:10,17
95:2 116:6

**records** 85:17,18

**recovering** 47:21

**recovery** 48:8

**red** 172:17,19,20 182:11

**referred** 47:8

**referring** 96:16,22 97:2 104:3,9
108:10

**refuse** 69:18 143:21

**refusing** 67:1,2 89:16 96:21
111:6 146:21,25 147:1,7

**regard** 75:2 89:17 112:2

**regular** 50:12 69:25 91:1 106:14
138:2

**rehab** 85:5 86:3

**related** 42:16 44:16

**relates** 68:9 80:13 87:11,20
90:16 92:12,24 112:4,11,17
114:1,7 116:3 158:12

**released** 79:7,8 80:16,23
140:17,18 154:2

**relevance** 107:3 115:3,7,12

**relevant** 43:11,14,15 44:18
114:16,20,22

**remember** 13:23,25 20:25 28:20
29:2,5 36:18,24,25 37:5,6,15,16,
17,18 48:23 50:1,3,5,8,24 52:9,
12 61:23 62:9 63:24,25 67:8,7,8,13
76:11 80:17,18,22 81:13,14
91:16,17 92:19 93:4,6,17,20
94:23 95:13,18 99:19 104:24

133:6,10 139:16 141:21,22,23
142:22 145:16,18,21 146:1,3,8
158:4,22 159:5,6,9 160:19,22,23,
25 161:16 168:17 170:19 172:18
177:13,17 178:14,16,18,19 179:2

**remind** 46:7

**remote** 11:15,20,24 12:2,3,9,12,
13 22:16 46:17 54:3 70:19
111:18 164:12

**remotely** 11:7,17

**renew** 25:2,8,20 26:4

**renewed** 25:23 26:1,2,5

**repairing** 48:7

**repeat** 20:22,24

**repeatedly** 43:19

**rephrasing** 111:10

**report** 133:25 134:4 141:17

**reporter** 11:13,19 12:14,21,23
17:10,16,25 18:1 20:16 21:21,25
25:13,16 27:15,17 30:10,12
53:16,22 55:24 56:2 92:6,9
93:10,12 94:12 98:3 101:6,8
130:9,12 132:4 134:24 135:2
149:12,15 155:17,21 162:17
167:2,7 170:4,6 181:25 182:3
183:15,18

**represent** 11:23

**represented** 135:22

**reserve** 27:7 80:10 82:24 85:3
88:2,16 105:18 107:19 108:17
147:6

**reserving** 83:19 85:24

**residence** 161:6

**resolve** 54:10

**respect** 87:16

**respond** 54:15 55:5 81:23 84:4
85:4 106:4 107:21 108:13 113:5
167:5 178:18

**responded** 96:9 169:4

**response** 19:10 20:11,17 21:10,
17 27:9,10 39:19 47:1 52:17
61:7,13 62:1 65:19 92:4,22
104:10 107:5 110:5 117:6,10
137:11 151:5 178:15

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Index: responses..short

**responses** 18:3 54:13,21 55:3 68:21 88:11,13

**rest** 172:4 173:16

**restraining** 73:7,11,19,23,24 74:3,8,17 75:2,10,11 78:18

**restroom** 164:5,6

**result** 17:19 77:24 80:24

**resuming** 111:21

**retain** 47:6

**return** 164:19

**reverse** 161:25

**review** 55:8 58:10

**reviewed** 58:11,12,14 60:11

**revoked** 24:15

**rich** 139:1,2

**Richard** 32:10,25

**rid** 124:4 125:2,10 144:19 175:1 180:9,12

**rifles** 109:25 124:23

**rights** 94:22,24 95:6,9,21 96:6

**Rina** 119:18,19,20 133:21,25 134:4,18 135:5

**Rina's** 119:24,25 120:13 121:4,25 127:10 134:8 161:6,14,18 165:8 167:15 170:18 171:2,21 172:3

**Ring** 58:16,21,24,25 60:4,9,14

**risk** 113:14

**Riverside** 14:11 15:13,18 33:16 57:16 99:1 161:10

**road** 172:25 173:5

**robbers** 141:13

**room** 97:5

**rooms** 24:10

**rough** 53:20 54:8 66:5,7

**roughly** 53:17

**rule** 114:24

**rules** 17:8

**ruling** 43:18

**run** 17:9 120:24 121:1 139:13,15 153:12 172:17,20 179:19,20,22, 23 180:5 181:2

**running** 71:12,13 75:24 76:6,20 77:6,11,18,19 108:22 109:9,15 116:17,22 134:19 153:10,11 154:16,21 161:1 163:11,14 172:18

**Rutherford** 11:13 12:22

**S**

**safety** 105:8,9,11 122:14 144:25

**sanctions** 112:22

**scared** 93:20,23,24 97:4,5,7 98:5,6,7,8 108:23 109:1,7,8,10, 12,13,15,16 110:7,8,15,17 111:8 116:17,22 118:25 122:3,14 126:17 139:8,22 143:1,10 144:15,22 145:11 161:3

**schizophrenia** 97:21,25 98:22 99:4 107:15 116:10

**schizophrenic** 97:12 98:6

**school** 33:13,15,16 53:7 56:11 61:24 62:3,5,8 91:6

**schools** 33:17

**scope** 82:1 143:22

**screamed** 166:20

**screaming** 165:15,25 166:4,16 167:20

**screen** 21:21 44:10,11

**Sean** 12:8

**search** 56:5 136:10 175:18

**searches** 136:4

**seat** 125:21 126:13,14,15,24,25 127:1,4,5,6,9,14,17,18,21,22 128:2,3,4,8,12,13,15,17,18,19,25 129:14,22 146:6,7 161:19 173:21 174:7,18,23 176:18

**seconds** 54:14 95:3 96:6,16 97:11 100:2 136:19 146:13 147:13 160:9

**secured** 182:23

**seek** 112:21 113:13 115:25

**seeking** 43:20 44:24

**seizures** 136:5

**self-medicate** 66:4,8,17 67:4 83:7

**self-medicated** 66:14 67:20 68:1

**send** 180:13

**senior** 73:13

**sentence** 78:23 112:20

**sentenced** 112:20

**separate** 76:24 77:20

**serve** 11:20

**served** 87:8 112:20

**set** 174:22,24 181:11,14

**severe** 43:20

**shakes** 18:2

**share** 31:12 32:17

**shares** 32:14

**shell** 38:3

**sheriff** 92:16

**shields** 118:23

**shining** 124:19

**shiny** 124:18

**shirt** 179:11

**shit** 134:17 139:19

**shoot** 102:25 104:19 110:1,10 118:5,12,24 119:1,10,25 120:3,4, 6,12 121:10,11,15,21,23 122:7, 13,20 123:21 124:7 125:10 126:1,2,17,20,21 127:7 128:23 130:1,17,21 131:15,17,22 132:1, 2,9,13,14,20,23 144:18,22 149:10,16,22,25 150:9,10,15,17, 20,24 151:9,11,12,14,19 153:16 155:12 156:7,17 162:3,6,9,12 163:12,15,17,20,21 165:15,17 166:3,4,5,6,24,25 167:8,18 174:9 175:5 181:3

**shooting** 117:2 121:2 162:24 163:3,6

**shoots** 120:17,22 181:14,19

**short** 22:19 46:20 54:7 70:23

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                                    12/11/2025                    Index: short-term..stopping

**short-term** 37:19

**Shorthand** 12:23

**shot** 25:25 40:18 41:2,5 52:4,5, 18 58:23 61:3,11 66:24 76:1 77:2,8 92:17 93:5,25 97:6 98:12 100:2,5,9,21 101:4,16,20 102:16, 17,18,24 103:1,2,9,24 104:2,6, 14,16,24 105:4,21,25 106:5,6,8 116:23 117:11 122:4 124:8,9 129:24,25 130:24 137:6 145:4 147:17

**shotgun** 103:14,21 141:9 163:6

**shots** 58:17,22

**show** 53:19 135:15 154:5 170:2

**showed** 138:19 167:15

**shown** 59:25 60:1

**shred** 142:10

**side** 102:7 172:24 173:4

**sign** 76:15,17 134:19 135:5

**significant** 63:8 109:25 165:14

**signing** 76:13 78:16

**signs** 172:21

**silver** 124:20

**simple** 178:1

**simply** 70:5 81:4 178:3,4

**simultaneously** 132:12

**Sincich** 12:11 14:7 16:5,14,20 25:11,15,17 26:13,24 27:22 30:8 38:7 39:10,25 40:20 41:8,22 42:6,12,20 43:13 44:7,21 45:8, 15,22,24 46:5,10,23 47:14 48:10 50:17 52:23 55:23 56:1,17,22 65:14 66:10,18 67:6,11,14,16,17 68:5 69:3 70:6,12 74:10,15 76:7 81:6,18,25 82:3,8,10,14 83:13,23 84:4,14,19,24 85:6,12,15,21 86:1,5,8,16,23 87:1,10,13,16,22 88:5,12,21 89:2,5,11,22 90:4 93:9,11 105:15,23 106:21 107:7, 11,16,22,24 108:3,19,25 109:2, 20 112:16 113:1,22 114:1,17,21 115:4,6,9 117:17 118:10 120:14, 18 122:22 123:25 125:6,8 128:5, 9 130:10,14 131:23 132:6 134:9, 15 135:1,17,21 137:5,7,15 138:10 139:11 140:3 142:12 143:6,16 144:14 145:1,8 148:2,

12 149:11,14,23 150:22 151:3 152:10,22 153:6,23 155:10,16,19 156:18 157:14,18,21 158:1,5,8, 13,20,23 159:1,11,14,20,23 160:2 164:7 165:23 166:14 167:1,3,22 168:2 170:3,5 171:8 173:6,8 175:10 178:7 181:23 182:2,14,21 183:6,7,18,20

**single** 50:12

**sir** 110:11 143:25 183:11

**sister** 119:15,16,17

**sit** 50:24

**sitting** 20:3,7 127:3 167:16 176:12

**situations** 104:23

**sleep** 28:11,12

**sleeping** 64:5

**slow** 153:8 161:22 170:14

**slowing** 151:24 153:9,13

**Smith** 49:4

**smoothly** 17:9

**sobriety** 88:25

**song** 63:9

**sounded** 58:17

**sounds** 17:2 59:22,23

**source** 60:5

**space** 120:8

**speak** 17:18 46:9 49:10 79:12,24 80:25 81:1 95:7 105:12,13

**speaking** 25:14 42:18 113:6

**specific** 177:7

**specifically** 150:3 151:1

**speculate** 19:8

**speculation** 26:13,14 39:25 47:14 52:23 56:17 109:20 117:17 120:19 134:9 166:14,15 167:3,23 171:8

**speed** 161:20 171:25 172:4

**spell** 13:8 29:22 31:21 48:1 59:9 98:17 119:21

**spine** 139:23

**split** 145:22

**spoke** 47:18 49:21 103:8 161:11

**spoken** 20:24 21:4 49:7 50:16 51:9,11,13

**Springs** 31:17,19

**squad** 119:6

**stabbed** 108:9,14 155:5

**stand** 24:9 25:9,22 62:11 65:25 89:7 105:16 157:22

**standing** 152:20

**stands** 88:15 107:12

**start** 18:8 57:9 63:21 101:2 117:9

**started** 122:15 128:21 165:25 168:3,8

**starts** 135:5

**state** 11:9 12:6 13:8 56:24 57:16, 23 63:13 112:3 114:23

**State's** 46:24

**statement** 20:23 43:6 45:20,25 93:8,15 94:5 116:6

**station** 140:24

**statute** 81:20 82:15 87:24 112:12

**stay** 27:18 28:10 29:14 163:18 179:22

**stayed** 28:7 163:19

**staying** 27:21,24

**steps** 153:14 154:20

**Stewart** 103:3

**stick** 62:6

**Stillman** 135:16

**stipulation** 11:14

**stomach** 41:4

**stop** 57:9 90:21 100:25 102:4 134:19 135:5 153:15 154:18,19, 21,23 156:3 170:14,15 172:17,21

**stopped** 95:2,23 96:5,15 97:10 100:1 131:4 136:18 146:12 147:12 154:15

**stopping** 151:23 153:9

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Index: straight..torturing

**straight** 176:11

**strapped** 140:22,23

**street** 28:2,7,11 62:25

**streets** 36:22 149:17

**Stress** 40:1,3

**strike** 61:6,12 92:21 110:5,20 120:10 124:12 137:11 140:1 149:19 150:2 167:11

**struck** 106:1

**stuck** 174:1,2,3,13,14 176:19

**stuff** 70:3

**stupid** 175:9,11,12

**Suboxone** 148:15

**substance** 48:19 49:9 81:3,17 83:12 84:17,22 85:8 89:6,8 114:8

**substantive** 20:18

**suffering** 99:13

**suggest** 45:6 175:13

**supervisor** 73:14 75:6

**supposed** 137:23 151:11,12 163:15,17 180:9

**surgery** 41:5

**surrender** 124:2 140:11 151:14 152:9,12,16,18 156:2

**surrendered** 153:20,24,25 154:14

**surrendering** 61:4 124:6 151:11,13,18,19,24 152:25 153:1,3 154:13

**suspected** 24:15

**suspend** 69:18

**SWAT** 138:13,19

**swear** 11:21 12:15

**swearing** 11:17,24 12:3,9,13

**sweep** 119:8

**sworn** 18:10,16

**Syndrome** 40:2,6

**system** 63:17 76:14

**T**

**table** 19:24 20:1,3,7,9

**taking** 12:3 71:18 144:12 153:14

**talk** 46:10 70:9 100:14 105:2 106:2 118:9,11,14,16 139:10 146:20 151:21

**talked** 43:17 100:16

**talking** 15:7 25:24 57:3 58:19,20 77:4,25 149:6 153:14 164:2 165:2 176:10

**tasered** 139:23,24

**Task** 106:8 135:5

**tattoos** 63:6

**teacher** 61:24

**Team** 138:13

**technical** 22:20

**telling** 21:1,3 41:24 48:19 49:9 51:17 68:25 69:13 75:5 77:21 83:6 93:17 115:11 118:4 122:13 124:4 132:22 133:6 149:3 161:14 177:16

**tells** 76:16

**Ten** 81:12

**term** 34:9

**terminating** 112:21

**test** 53:7,10,11

**testified** 12:19 87:4

**testimonial** 88:14

**testimony** 16:21 18:9,10,12,16, 17 69:3 76:7 108:25 109:2 125:6 145:8 153:23 156:18 165:23 167:17 172:6

**theft** 71:20

**therapist** 91:2

**thing** 21:2 76:21 77:12,22 155:25 163:23

**things** 21:2,3 35:19,20,21,22 36:8,24,25 37:6,16,18,22,25 39:9 45:3 54:25 72:4 77:14 144:24 164:24 165:1 178:19

**thinking** 36:22,23 71:23 131:25

163:21,22 168:6,7

**Thirty** 119:5

**Thomas** 135:16

**thought** 121:23 124:13,21,22 125:13 126:20 129:12 130:23 141:10 143:2 144:10,18 147:13, 17,18,25 162:20 176:22

**threatened** 133:18

**threw** 123:4,9,20 143:4,10 169:7,12,16

**throw** 123:18,23 124:15 125:17 126:14 157:1 169:19 174:17,19, 20 175:2,3,4,7,8 180:22 181:1,4

**throwing** 144:12

**Thursday** 11:1 119:7

**time** 11:6 13:24 17:18 18:5 21:7 22:17 24:3,14,22 26:11 27:12 37:7 46:18 47:18 49:3,21 54:18 55:5 61:15 62:13,15 63:12,22 65:23 66:11 68:4 70:20 72:2 76:5,12,18 79:3 80:13 87:5,8,11, 20 91:22,25 92:2,11 97:25 99:15 104:22 111:15,19 112:12 135:1 140:12 145:6 156:4 157:8,24 158:18 159:3 160:17,20 164:9,13 172:2 179:6 183:13,21

**times** 26:2 41:16 50:5,9,15,25 51:4,8,10,13,18,23 62:7 73:22 91:11 100:3 101:20 102:17 103:9,24 104:3,19,25 105:20,25 128:11 130:11 139:21 140:15 151:4

**today** 11:12 13:15 17:5,11,13,15 18:9,11,16 34:17 51:7 58:10 87:20 92:11 142:13,15,20 143:20 164:18 182:19

**toilet** 63:19

**told** 39:6 41:17,20 50:22 52:1,9 61:25 72:24,25 73:11,13 75:6 83:3,7 93:19,20 95:24 98:12 128:22 131:9 134:13,16,18,21,23 135:4,12,16 162:12 163:10 175:24

**tooken** 74:20

**tore** 155:1

**torn** 154:18,19

**torturing** 147:21

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Index: toss..wheelchair

**toss** 126:9 129:2 130:6 155:8 156:5,16

**tossed** 129:3 130:2,5 155:24

**tossing** 149:7

**touch** 44:9,10 170:1

**tow** 28:3,16,18 29:11

**tracks** 172:4 173:16 175:23 181:2

**trade** 33:17

**traffic** 172:11

**tragic** 104:23

**trailer** 28:4 29:7,8,14,15

**train** 172:4 173:16 175:22 181:2

**transcribe** 94:13

**transcribing** 11:17 17:12

**transcript** 17:14 53:20 54:8 183:16,19

**trash** 170:17 171:6,11,13 180:25

**traumatic** 40:1,3 133:3,7 139:17,18 141:21

**treatment** 85:8 89:6,8 114:9

**Trent** 47:8,9 48:25 49:2 55:15

**trick** 177:19

**true** 141:5

**truth** 18:10 53:3 93:19

**truthful** 93:7,14,25

**turn** 17:13 63:22 70:6

**turned** 25:3 63:21 127:18

**typically** 136:5

**U**

**unable** 65:12

**underneath** 103:16 125:20 126:24 127:1 129:13,22 141:11 173:21 174:13 176:17

**understand** 13:14 14:24 15:20 16:6,16 18:14,21 19:1,4,14 20:10 21:5 23:2 38:8,11 39:12,14 40:21 41:20 47:4 51:4,5 52:7,11 53:9 57:2 61:2,10 63:25 65:15 66:12, 14,19 67:3 68:18,20,22 69:7,22

70:24 73:21 83:15 84:25 89:24 90:6 105:22 110:21 111:22 160:3 173:7,10 177:8,9 178:21

**understandable** 18:4

**understanding** 18:23 72:8 73:18 79:23 112:15 133:24 134:3,12 165:20 167:14

**understood** 18:25

**Unintelligible** 55:23 98:2 100:22 101:25 117:5 121:8 155:16 162:16 167:1 170:3 175:10

**unmuting** 44:11

**unrelated** 41:12 42:15 43:24 44:13,16,21 45:15 114:8

**unstable** 22:7

**unusual** 17:6

**upset** 131:20,21

**V**

**vague** 25:11,17 30:8 38:7 39:10 40:20 41:8 65:14 66:10,11 81:18 83:13 84:19 89:22 90:4 135:1 152:23 155:20

**valid** 24:19 26:6,7,9,12

**variety** 43:21 44:24

**veer** 34:5

**vehicle** 26:23 28:24 29:20 30:1, 4,5 71:19 104:6 123:1,14 125:19 126:6,24 127:3,22 129:17 136:10 145:15 163:18,19,25 165:4,22 167:16 168:16 170:9 173:15,20 174:18 175:17,22 176:3,4 180:5, 20

**vehicles** 170:22

**verbal** 18:3 20:17 72:10

**verbatim** 20:25 21:3

**versus** 11:9

**video** 11:21 49:3,4 58:25 59:3, 15,17 60:1,2,10,14,17,20 96:5,12 110:3 122:24 132:17 133:2,7,11 154:4,10 183:4,7,10

**videoconference** 11:18

**violation** 78:17 113:7

**violence** 71:9 72:7,14,15,17,22 73:3,5

**violence-related** 72:8

**violent** 72:13,16

**violent-related** 72:9

**visited** 48:21

**voice** 94:11,16

**voices** 98:7

**W**

**waistband** 175:25 176:6,9,11, 16,20 177:1,2 179:5,7,17 180:5, 19

**wait** 14:7 18:19 41:22,25 46:9,25 53:12 100:25 128:9 132:6 137:8 142:4 152:2 159:20,23 160:9

**waiting** 107:11

**Waiver** 135:25

**walk** 40:24 163:20

**wanted** 57:21 73:23 74:6 95:6 144:19 147:5 153:15,17 175:1

**wanting** 165:12

**war** 59:24

**ward** 63:13

**warrant** 135:10 136:11 138:3,5

**watch** 60:14,17

**water** 63:19

**ways** 51:16 143:14

**weapon** 152:4

**wear** 35:1 40:25 41:4,5

**wearing** 34:17 35:8,9,11

**web** 11:7,15

**weed** 160:18

**weightless** 129:19

**weird** 139:19

**West** 28:7

**wheel** 29:13

**wheelchair** 40:24

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Index: white..Yvette's

**white** 57:5

**wife** 72:18 147:18

**wife's** 27:19

**window** 124:15,17,18,25 126:10
129:3,4 130:5,7 143:4 144:12
149:7 163:24 169:8,12,16,20
175:3,4,7,8

**word** 21:3 56:4,5,6

**words** 17:13 20:24 58:2 142:6

**wore** 35:3

**work** 98:19

**workers** 156:11

**worried** 155:23 156:6

**worry** 160:2

**written** 17:14

**wrong** 112:16 133:14 172:24
173:4

**wrote** 56:7,15 77:16,17

_____

Y

_____

**yard** 28:3,16,18 29:11

**year** 75:14 76:2 79:3 99:16
101:14 112:13

**years** 14:17 15:4,8 19:18 23:17
24:4,7 36:19 37:9 43:23 61:21
62:14,21 63:11 64:1 65:18 78:14,
20,24 79:2 81:21,23 82:5 83:5
84:7 90:25 91:5,13 101:18 104:4,
5 106:23,24 141:8 180:13,14,15

**yelled** 162:2

**yelling** 98:9 117:22,24,25 120:2,
5 121:20 126:17 127:7

**yellow** 178:5

**younger** 17:3

**youth** 91:3 98:20

**Yvette** 29:21,24 30:1 31:8,14
32:3,9,12 72:19 74:4 75:11 118:4
120:2 133:22,24 134:3,23 135:6
165:15

**Yvette's** 119:11,12