**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax:    (818) 347-4118

**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Phone: (951) 682-9311

*Attorneys for Plaintiff* GEORGE GONZALEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE GONZALEZ,<br><br>            Plaintiff,<br><br>    vs.<br><br>STATE OF CALIFORNIA; CITY OF HEMET; PATRICK SOBASZEK; ANDREW REYNOSO; SEAN IRICK; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No.: 5:25-cv-00331-KK-DTB<br><br>[*Honorable Kenly Kiya Kato*]<br>Magistrate Judge David T. Bristow<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Plaintiff's Opposition to Defendants' Motion for Summary Judgment; Memorandum of Points and Authorities in support thereof; Separate Statement of Genuine Disputes and Additional Material Facts; Objections to Defendants Separate Statement; Decl. of Marcel F. Sincich and attached exhibits; Decl. of Jeffrey J. Noble; Decl. of Scott Holdaway; Decl. of George Gonzalez *filed concurrently herewith*]<br><br>Hearing:   March 12, 2026<br>Time:      09:30 a.m.<br>Crtrm:     Courtroom 3<br>Trial Date: May 11, 2026<br>Complaint Filed: December 24, 2024<br>Removal: February 5, 2025 |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.      INTRODUCTION .................................................................................1

II.     STATEMENT OF RELEVANT FACTS .............................................2

III.    LEGAL STANDARD UNDER RULE 56........................................4

IV.     DEFENDANTS USED EXCESSIVE FORCE.................................5

        A.      Government Interest Factors Confirm Excessive Force.........................6

                1.      No immediate threat of death or serious bodily injury................7

                2.      Other Graham factors weigh in Plaintiff's favor........................10

        B.      It Was Obviously Clearly Established That Shooting a Man that
                Does Not Attempt to Point, and while Unarmed, Is Excessive............11

V.      PLAINTIFF'S STATE LAW CLAIMS SURVIVE .......................................15

VI.     PLAINTIFF'S MUNICIPAL LIABILITY CLAIMS MUST SURVIVE ......17

VII.    CONCLUSION ...............................................................................18

# TABLE OF AUTHORITIES

## Cases

*A.D. v. Cal. Highway Patrol,*
    712 F.3d 446 (9th Cir. 2013)................................................................8

*A.K.H. ex rel. Landeros v. City of Tustin,*
    837 F.3d 1005 (9th Cir. 2016)..........................................................9, 22

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970)..........................................................................7

*Aguirre v. County of Riverside,*
    29 F.4th 624 (9th Cir. 2022)................................................................18

*Anderson v. Creighton,*
    483 U.S. 635 (1987)..........................................................................7

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..........................................................................7

*Blanford v. Sacramento County,*
    406 F.3d 1110 (9th Cir. 2005)..............................................................9

*Blankenhorn v. City of Orange,*
    485 F.3d 463 (9th Cir. 2007)................................................................9

*Breithaupt v. Abram,*
    352 U.S. 432 (1957)..........................................................................8

*Bryan v. MacPherson,*
    630 F.3d 805 (9th Cir. 2010)......................................................9, 10, 12

*C.V. by & through Villegas v. City of Anaheim,*
    823 F.3d 1252 (9th Cir. 2016)..............................................................16

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..........................................................................7

*Chew v. Gates,*
    27 F.3d 1432 (9th Cir. 1994)................................................................9

*Collender v. City of Brea,*
    605 F.App'x 624 (9th Cir. 2015)..........................................................17

*Cousins v. Lockyer,*
    568 F.3d 1063 (9th Cir. 2009)..............................................................23

*Cruz v. City of Anaheim,*
    765 F.3d 1076 (9th Cir. 2014)..............................................................22

*Curnow v. Ridgecrest Police,*
    952 F.2d 321 (9th Cir. 1991)..........................................................10, 20

*Davis v. City of Las Vegas,*
    478 F.3d 1048 (9th Cir. 2007)..............................................................15

*Deorle v. Rutherford,*
    272 F.3d 1272 (9th Cir. 2001)..............................................................15

*Drummond v. City of Anaheim,*
    343 F.3d 1052 (9th Cir. 2003)..............................................................10

*Est. of Aguirre v. Cnty. of Riverside*,
    29 F.4th 624 (9th Cir. 2022)...................................................................15

*Garlick v. Cnty. of Kern*,
    167 F. Supp. 3d 1117 (E.D. Cal. 2016).....................................................8

*George v. Morris*,
    736 F.3d 829 (9th Cir. 2013)..........................................................10, 20

*Glenn v. Washington County*,
    673 F.3d 864 (9th Cir. 2011)....................................................7, 10, 15

*Green v. City and Cty. of San Francisco*,
    751 F.3d 1039 (9th Cir. 2014)...............................................................15

*Harris v. Roderick*,
    126 F.3d 1189 (9th Cir. 1997)..................................................10, 17, 19

*Hayes v. Cnty. of San Diego*,
    736 F.3d 1223 (9th Cir. 2013)..................................................................8

*Hayes v. County of San Diego*,
    57 Cal.4th 622 (2013).......................................................................17, 23

*Hervey v. Estes*,
    65 F.3d 784 (9th Cir. 1995).......................................................................8

*Hunter v. City of Leeds*,
    941 F.3d 1265 (11th Cir. 2019)..............................................................19

*Isayeva v. Sacramento Sheriff's Dep't*,
    872 F.3d 938 (9th Cir. 2017)..................................................................10

*Johnson v. Bay Area Rapid Transit Dist.*,
    724 F.3d 1159 (9th Cir. 2013)................................................................23

*Knapps v. City of Oakland*,
    647 F. Supp. 2d 1129 (N.D. Cal. 2009)..................................................25

*Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*,
    841 F.2d 872 (9th Cir. 1987)....................................................................7

*Longoria v. Pinal County*,
    873 F.3d 699 (9th Cir. 2017)..................................................................21

*Lopez v. Gelhaus*,
    871 F.3d 998 (9th Cir. 2017)..........................................................passim

*Lui v. DeJoy*,
    129 F.4th 770 (9th Cir. 2025)................................................................13

*Medina v. Cram*,
    252 F.3d 1124 (10th Cir. 2001)..............................................................21

*Megargee v. Wittman*,
    550 F.Supp.2d 1190 (E.D. Cal. 2008)....................................................25

*Mullenix v. Luna*,
    577 U.S. __, 136 S. Ct. 305 (2015)........................................................16

*Munoz v. City of Union City*,
    120 Cal.App.4th 1077 (2004).................................................................23

*Nelson v. City of Davis*,
    685 F.3d 867 (9th Cir. 2012)..................................................................10

*Nicholson v. City of Los Angeles*,
    935 F.3d 685 (9th Cir. 2019)..............................................................8, 14

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ...............................................................................16

*Porter v. Osborn*,
    546 F.3d 1131 (9th Cir. 2008)..................................................................8

*Roque v. Harvel*,
    993 F.3d 325 (5th Cir. 2021)..................................................................17

*S.R. Nehad v. Browder*,
    929 F.3d 1125 (9th Cir. 2019)............................................................7, 10

*Santos v. Gates*,
    287 F.3d 846 (9th Cir. 2002)....................................................................9

*Saucier v. Katz*,
    533 U.S. 194 (2001) ...............................................................................15

*Scott v. Harris*,
    550 U.S. 372 (2007) ..............................................................................7, 9

*Smith v. City of Hemet*,
    394 F.3d 689 (9th Cir. 2005)....................................................9, 10, 15

*Strickland v. Nevada County*,
    69 F.4th 614 (9th Cir. 2023)...............................................1, 12, 16

*Tabares v. City of Huntington Beach*,
    988 F.3d 1119 (9th Cir. 2021)..........................................................10, 23

*Tan Lam v. City of Los Banos*,
    976 F.3d 986 (9th Cir. 2020)...........................................................16, 20

*Tennessee v. Garner*,
    471 U.S. 1 (1985) ...................................................................................10

*Tennison v. City and Cnty. of San Francisco*,
    570 F.3d 1078 (9th Cir. 2009).................................................................8

*Ting v. United States*,
    927 F.2d 1504 (9th Cir. 1991)................................................................19

*Torres v. City of Madera*,
    648 F.3d 1119 (9th Cir. 2011)..........................................................11, 14

*Tubar v. Clift*,
    453 F. Supp. 2d 1252 (W.D. Wash. 2006)............................................20

*Velazquez v. City of Long Beach*,
    793 F.3d 1010 (9th Cir. 2015)..................................................................9

*Vos v. City of Newport Beach*,
    892 F.3d 1024 (9th Cir. 2018)..................................................................7

*Wall v. County of Orange*,
    364 F.3d 1107 (9th Cir. 2004)................................................................21

*Wealot v. Brooks*,
    865 F.3d 1119 (8th Cir. 2017)................................................................14

*Wilkins v. City of Oakland*,
    350 F.3d 949 (9th Cir. 2003)....................................................................7

*Wilkinson v. Torres,*
    610 F.3d 546 (9th Cir. 2010) ................................................................. 7

*Williams v. City of Burlington, Iowa,*
    27 F.4th 1346 (8th Cir. 2022) ............................................................... 14

*Wilson v. City of Des Moines,*
    160 F. Supp. 2d 1038 (S.D. Iowa 2001) .............................................. 20

*Zion v. County of Orange,*
    874 F.3d 1072 (9th Cir. 2017) ......................................... 8, 10, 18, 23

Statutes

42 U.S.C. § 1983 ................................................................................................ 10

CACI No. 1305B ............................................................................................... 24

California Government Code § 815.1 ............................................................. 25

California Government Code § 820 ................................................................ 25

California Government Code § 820.2 ............................................................. 25

California Penal Code § 835a ......................................................................... 10

Federal Rules of Civil Procedure, Rule 56 .............................................. 2, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This civil rights action arises from the excessive and unreasonable shooting of Plaintiff George Gonzalez by California Highway Patrol Officers Sean Irick, and Hemet Police Department Officers Patrick Sobaszek and Andrew Reynoso, on January 24, 2024. Viewing the evidence in the light most favorable to Gonzalez, after a vehicle pursuit and during a subsequent foot pursuit, Gonzalez never pointed a gun and did not verbally threaten anyone, yet Defendants fired twenty-five (25) rounds at Gonzalez, without warning, including while he was moving away, falling to the ground, on the ground, after dropping the gun. Gonzalez was shot in the back after officers failed to de-escalate, failed to attempt less-intrusive alternatives, and while Gonzalez was slowing down to surrender—when he did not pose an immediate threat of death or serious bodily injury. Defendants' Motion must fail by their impermissible addition of hindsight evidence, and unsupported arguments based on self-serving statements that lack credibility and require jury scrutiny. Here, <u>officers **assessed between every round**, thus saw that they were shooting Gonzalez in the back, saw him **drop a gun** and **fall** to the ground, yet kept shooting</u>. All the extraneous "facts" that Defendants seek to admit for nothing other than a character assassination are "largely irrelevant" to this Court's analysis, which must focus on whether Gonzalez posed an immediate threat of death or serious bodily injury at the "exact moment" of the shots. *See Figueroa v. Gates*, 207 F.Supp.2d 1085, 1093 (C.D. Cal. 2002).

Further, Defendants' Motion fails because it is based on their disregard of Rule 56's requirement that there be no disputed issues of material fact and that the record must be viewed in the light most favorable to the nonmoving party. Here, <u>video evidence contradicts Defendants' assertions, supports Gonzalez's claims</u>, and shows **significant material disputes** including: Officers failed to give a warning; Officres had reasonable alternatives; Gonzalez never pointed or made a future movement with

the gun; was not looking or turning towards the officers; was trying to surrender; never verbally threatened anyone including bystanders; was shot on the ground; and was not an imminent threat of death or serious bodily injury. **<u>Undisputed facts</u>** from videos also preclude summary judgment: Gonzalez dropped the gun and Officers kept firing; fell unarmed to the ground and Officers kept firing; Gonzalez was shot in the back; Officers never attempted less-lethal; Officers assessed between every round; and an unarmed down man is obviously not a threat. Gonzalez was not an immediate threat of death or serious bodily injury. Thus, use of deadly force was excessive and unreasonable and obviously violated clearly established law. Therefore, Defendants' Motion should be denied.

## II.    <u>STATEMENT OF RELEVANT FACTS</u>

Officers understand that subjects with something in their waistband will run holding the object in place so that it does not fall and do not want to get caught with a gun, so they run and try to discard it. (Plaintiff's Additional Facts ("AF") 28-29.) It would be inappropriate to use deadly force when Gonzalez exited the car and ran because he did not have a gun in hand and was not an imminent deadly threat. (AF 30-32.) Officers closed the distance with guns drawn during the foot pursuit through an industrial facility. (AF 33-35.) The shooting occurred after exiting a pathway; but prior to then, Gonzalez never pointed a gun, did not attempt to shoot anyone, and Officers did not see a gun, thus it would be inappropriate to use deadly force at that time as well. (AF 36-38.)

Officers did not give a deadly force warning despite having the opportunity to do so. (AF 39-41, 152.) Officers should "use the lowest level of force possible." (AF 42.) There were eight officers in pursuit with less-intrusive means available including de-escalation, 40-mm launcher, Taser, air unit, and K9. (AF 43.) The Officers were in good physical condition, each with 11 years of law enforcement experience. (AF 44.) Despite his initial flight, prior to the use of deadly force, Gonzalez was slowing down to surrender. (AF 45-46.) Further, Gonzalez never attempted to harm any bystander,

take a hostage, point a gun at any bystander, or enter any door to any building, and no
bystanders were nearby or in his path. (AF 47-49.)

Officers did not have any information that Gonzalez had ever physically
injured or had ever verbally threatened anyone. (AF 50-51.) Reynoso did not know
what Gonzalez was convicted of, had never seen him before and had no knowledge
of him before the incident. (AF 52.) Here, the videos show the undisputed and
disputed facts. (See, e.g., AF 53-54.) For reference, Irick was on the left of Sobaszek
with Reynoso following. (AF 55.)

**Gonzalez never pointed or attempted to point the gun, never name a
future movement with the gun, never fired the gun, and never verbally
threatened Officers**. (AF 56-58.) Gonzalez never turned his body to face or orient
himself toward Officers. (AF 59.) During all shots fired at Gonzalez, he was not
looking at or turning towards Officers but was moving away when shot in the back
from 20-25 yards. (AF 60-62.) Officers intentionally aimed their 9 mm pistols at
Gonzalez's back prior to seeing a gun and prior to Gonzalez looking back or raising
his hand up. (AF 63-65, 82.) About 4 seconds prior to the first shot, Gonzalez looked
over his left shoulder while moving away and raised his right hand. (AF 66-67.) Then
Gonzalez looked forward and lowered his right hand back to its prior position and
continued forward. (AF 68.) Then Gonzalez moved away from Officers, without
looking back, without turning or attempting to point the gun. (AF 69.)

**Officers assessed between each shot**. (AF 102, 108.) Sobaszek admits that he
saw the gun for all ten shots fired. (AF 103.) Without Gonzalez looking back,
turning, or attempting to point the gun, Sobaszek fired the first shot at his back. (AF
70.) Gonzalez took another step, without looking back, turning, or attempting to point
the gun, then Sobaszek fired his second shot. (AF 71.) Gonzalez took another step,
still without looking back, turning, or attempting to point the gun, then Sobaszek
fired his third shot. (AF 72.) Then, while Gonzalez began falling forward, Sobaszek
fired his fourth shot at Gonzalez's back. (AF 73, 104-105.)

It would be inappropriate to any reasonable officer to use deadly force against Gonzalez after seeing him drop the gun. (AF 75.) Reynoso claims he was not paying attention to whether Gonzalez was on the ground, because he was just focused on the gun in the right hand, which he would indicate *if* he was an imminent threat. (AF 106.) Reynoso admitted, the second the firearm is no longer in his hand, Gonzalez was not an imminent threat. (AF 107-108.) After the first 5 shots, Gonzalez dropped the gun, which can be seen falling to the ground; thereafter, all the following shots were fired while Gonzalez was visibly unarmed. (AF 76.) Also, after dropping the gun, Gonzalez fell to the ground away from the gun and Officers. (AF 77.) Once Gonzalez started to fall, even Irick admits he was not a threat. (AF 79.) Still, Sobaszek fired his fifth shot; *gun clearly on the ground*. (AF 80.) Only then did Reynoso fire his first shot at Gonzalez while unarmed and falling to the ground, not turning or pointing, and never shooting at officers; only after officers repeatedly fired at Gonzalez—i.e., contagious fire. (AF 82-83, 109.)

Sobaszek fired his sixth round at the unarmed Gonzalez, while he was on his knees. (AF 85.) Gonzalez fell to the ground, indicating that he was struck by gunfire. (AF 87.) Obviously, it would be inappropriate to any reasonable officer to use deadly force after Gonzalez was on the ground and no had a gun. (AF 88.) The gun was about 1-2 feet behind Gonzalez's right foot, not within reaching distance, and Gonzalez never reached for it. (AF 89.) Then Reynoso **fired five more shots** at the visibly unarmed Gonzalez while he was on the ground. (AF 90, 93, 96, 99, 100.) All of Reynoso's shots were fired dangerously close to Irick. (AF 101.) And Sobaszek **fired four more shots** at the visibly unarmed Gonzalez while he was on the ground. (AF 91, 94, 97, 100.)

## III.    LEGAL STANDARD UNDER RULE 56

Defendants failed to show there is no genuine issue of material fact. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Here, a court's function is not to weigh evidence, make credibility determinations, or determine the

truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if its proof or disproof is essential to an element of Plaintiff's case. *Celotex*, 477 U.S. at 322-23. A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Even circumstantial evidence is sufficient to create a triable issue. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). Further, the reasonableness of an officer's belief "is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law.'" *Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) (Stevens J., dissenting); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003). In ruling here, the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to Gonzalez, which here is all supported by video evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018); *see also Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

    Disputed facts preclude Defendants' Motion. Though a jury could draw divergent conclusions from videos, (*see S.R. Nehad v. Browder*, 929 F.3d 1125, 1132-39 (9th Cir. 2019); *Glenn v. Washington County*, 673 F.3d 864, 878 (9th Cir. 2011)), here, the undisputed video evidence showing Gonzalez never pointed a gun or threatened anyone, yet Officers shot him in the back for running away, then continued firing at the unarmed Gonzalez while on the ground, is sufficient for the Court to *sua sponte* enter judgment for Gonzalez. (Standing Order at 9:23-25.)

## IV.    DEFENDANTS USED EXCESSIVE FORCE

    Defendants' use of excessive force is analyzed under the Fourth Amendment's objective reasonableness standard, which, questions "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *See Graham v. Connor*, 490

U.S. 386, 395-97 (1989). The *Graham* test applies "the clear principle that the force used to make an arrest must be balanced against the need for force." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (*citing Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)). It is a careful balance of "the nature of the harm and quality of the intrusion" on Gonzalez's rights "against the countervailing governmental interests at stake." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010); *see also Scott*, 550 U.S. at 383-84; *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002). This inquiry begins by assessing the type and amount of force used. *See Bryan*, 630 F.3d at 824; *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)). It is well-established that deadly force is "extreme," and should only be used in limited circumstances. *Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016). "The use of deadly force implicates the highest level of Fourth Amendment interests both because the suspect has a fundamental interest in his own life and because such force frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment." *Id.* (citations omitted). The nature and quality of the intrusion here cannot be understated; the moving Officers used deadly force firing 16 shots. *See Blanford v. Sacramento County*, 406 F.3d 1110, 1117-19 (9th Cir. 2005).

## A.    Government Interest Factors Confirm Excessive Force

The use of deadly force must be balanced against the purported need for it. *See Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017); *see also Glenn*, 673 F.3d at 871; *Bryan*, 630 F.3d at 823. The government interest factors include (1) the severity of crime at issue, (2) the immediacy of the specific threat at issue, (3) whether there is attempt to evade (*Graham*, 490 U.S. at 396), (4) the availability of alternative methods (*Smith*, 394 F.3d at 701), and (5) whether a warning was given (*Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012)). The Ninth Circuit has cautioned that summary judgment in excessive force cases should be granted sparingly. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir.

2003). Further, "summary judgment is not appropriate in §1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt." *Nehad*, 929 F.3d at 1133. These factors do not support the use of deadly force here.

    1.    *No immediate threat of death or serious bodily injury.*

The most important *Graham* factor is whether the subject posed an immediate threat of death or serious physical injury. *Smith*, 394 F.3d at 702; *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1126 (9th Cir. 2021); *Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017). The fact that a suspect was armed with a gun does not render the officers' response reasonable. *See George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013); *Glenn*, 673 F.3d at 872-73; *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 323, 325 (9th Cir. 1991). Deadly force is only permissible in the most limited circumstances—when necessary to prevent death or serious bodily injury. *Tennessee v. Garner*, 471 U.S. 1, 3 (1985); Pen. Code §835a. Here, all the shots were not necessary.

Officers decided to shoot Gonzalez merely for fleeing and aimed at his back prior to seeing a gun or Gonzalez look back. (AF 64-65, 82.) Officers assessed between each shot and saw the gun for all the shots. (AF 102, 103, 108.) Thus, Officers saw that Gonzalez never pointed the gun, never fired the gun, never verbally threatened anyone, never oriented his body in the direction of Officers, was not turning towards Officers, and was not facing the officers. (AF 56-61.) Without looking back, without turning, without attempting to point the gun, Sobaszek fired four shots, aiming at Gonzalez's back. (AF 70-73, 104-105.) It is obviously inappropriate to use deadly force against Gonzalez after he dropped the gun and fell to the ground. (AF 75, 79, 88, 106-108.) Yet, after Gonzalez dropped the gun and fell to the ground, and Officers assessed and fired 10 more rounds at the visibly unarmed Gonzalez. (AF 76, 77, 80, 90, 91, 93, 94, 96, 97, 99, 100.) Reynoso's shots were clearly a product of contagious fire. (AF 82-83, 101.)

Viewing the facts and all reasonable inferences in the light most favorable to Gonzalez, he did not pose an immediate threat of death or serious bodily injury to any person at the time. *See Lopez v. Gelhaus*, 871 F.3d 998, 1008 (9th Cir. 2017). Officers had no information that anyone was harmed; no information that Gonzalez was about to harm anyone; Officers never heard Gonzalez verbally threaten anyone; never saw Gonzalez attempt to harm anyone. Gonzalez could not get away, so he began to slow down and surrender. Then Officers began shooting him. Then, Gonzalez dropped the gun and fell to the ground. But Defendants assessed, saw the non-threatening, unarmed, and down Gonzalez, and intentionally continued to fire. The Ninth Circuit has "held over and over that a suspect's possession of a gun does not itself justify deadly force." *Calonge v. City of San Jose*, 104 F.4th 39, 48 (9th Cir. 2024). "An immediate threat might be indicated by a furtive movement, harrowing gesture, or serious verbal threat." *Id*. at 46. If a person possesses a gun but does not reach for it or make some similar threatening movement, then it would clearly be unreasonable for officers to shoot him. *Id*. Gonzalez made no furtive movement, harrowing gesture, or serious verbal threat.

Not all errors in perception or judgment are reasonable, as displayed here, and Officers are not judged with 20/20 hindsight. *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). Defendants' contention that they fired while the gun was orienting towards them, fired all shots while the gun was in hand, and while he was standing are all contradicted by objective video evidence, making their credibility a jury question. Here, *Officers admit that they assessed between every shot, paying attention to the gun*. Thus, <u>Officers saw that Gonzalez never attempted to point the gun, never fired the gun, was moving away, dropped the gun, and fell to the ground—yet used deadly force anyway</u>. There is no excuse for their unreasonable perceptions, which requires factfinder scrutiny. Further, Officers admit shooting a subject who discards a gun would be inappropriate—because the subject is unarmed and not a threat. Yet, when Officers intentionally shot Gonzalez, he was not looking

at them and not turning towards them. Thus, there was no opportunity for to
immediately cause death or serious bodily injury. Gonzalez was merely trying to get
away, not harm anyone, never verbally threatened anyone, then attempted to slow in
surrender. Thus, there was no apparent intent to immediately cause death or serious
bodily injury. Finally, after dropping the gun and falling unarmed to the ground,
there was obviously no present ability to immediately cause death or serious bodily
injury. Pen. Code §835a. "A desire to resolve quickly a potentially dangerous
situation is not the type of governmental interest that, standing alone, justifies the
use of force that may cause serious injury." *Bryan*, 630 F.3d at 826; *Deorle*, 272
F.3d at 1281 ("a simple statement by an officer that he fears for his safety or the
safety of others is not enough; there must be objective factors to justify such a
concern."); *Lopez*, 871 F.3d at 1008-1010 (finding the armed subject's position and
movement immediately prior to the shooting did not support a reasonable belief of a
threat). Gonzalez was not an immediate deadly threat—as seen on video.

Defendants' reliance on *Strickland* are misplaced. Judge Bumatay was clear in
the opinion's opening paragraph, given the obviousness that pointing a gun at an
officer entitles the officer to respond in self-defense, *Strickland* only asks whether it
was objectively reasonable to mistakenly believe a toy rifle was real. 69 F.4th at 617.
Gonzalez does not dispute that he had a gun. Gonzalez disputes that he ever pointed
at officers, and it is undisputed that it was not pointing at officers when the shots
were fired. The reasonably held mistaken nature of the threat in *Strickland* was the
belief that the toy gun was real despite the orange tip and Stickland saying it is fake.
*Id*. at 622. Once that was resolved as being a reasonable mistake, it logically led to
the Court's opinion that the use of deadly force was justified because Stickland was
pointing "a gun in the direction of officers." *Id*. Here, Officers are unjustifiably and
egregiously mistaken – as contradicted by video evidence – that the gun was ever
pointed and it was obviously not pointed when they opened fire and continued to fire
at Gonzalez even while the gun was on the ground. Defendants do not argue that the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Officers mistakenly believed Gonzalez pointed the gun, instead they assumed the disputed fact that Gonzales shot the gun and was pointing the gun during the shots. Thus, Defendants forfeited any argument in reply as to a mistake in pointing the gun. *See Lui v. DeJoy*, 129 F.4th 770, 780 (9th Cir. 2025). <u>*Strickland* does not control</u>.

Additionally, Gonzalez was not in a residential area, but outside a commercial factory; Gonzalez did not have a gun out upon officer approach, but it in his waistband; Officers did not see the gun upon approach; **<u>Gonzalez never pointed the gun at any officer</u>**; then Gonzalez **dropped the gun**; and **while Gonzalez's hands were empty, Officers continued to fire at him**. In fact, *Stickland* informs how courts should rule where the "decision [does not] hinge on the misidentification of the gun" but on whether the subject was pointing it at anyone. *Id*. at 622. Showing that in those cases, like this case, *Nicholson*, 935 F.3d 685 and *Lopez*, 871 F.3d 998 controls. *See also Williams v. City of Burlington, Iowa*, 27 F.4th 1346, 1351 (8th Cir. 2022) (excessive force where body-camera video shows officer looked directly at the dropped gun, subject was nearly prone on the ground when fatally shot, rather than in a "firing position"); *Wealot v. Brooks*, 865 F.3d 1119, 1122-23 (8th Cir. 2017) (officers responded to a domestic call, saw man fire shots at people, drop the gun as he ran, then officer fired several times as man turn around—court found genuine disputes of material fact: whether the officers saw the man throw his gun and thus knew he was unarmed, and whether he was turning around with his hands raised to surrender). Gonzalez was not an immediate threat of death or serious bodily injury.

### 2. Other Graham factors weigh in Plaintiff's favor.

Although Gonzalez was initially in flight, prior to the shooting <u>he was surrendering</u>. (AF 45-46.) Additionally, Defendants cannot argue that he was in flight or resisting while he was unarmed on the ground. *See Lopez*, 871 F.3d at 1006-07; *Zion*, 874 F.3d at 1076. Next, before using deadly force, officers must issue a warning, when feasible. *Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022). Here, <u>Officers did not give Gonzalez a verbal warning</u>. *See Lopez*, 871 F.3d at

1007; *S.R. Nehad*, 929 F.3d at 1137. In fact, Officers used deadly force even after Gonzalez stopped and dropped the gun. Finally, <u>Officers ignored numerous less-intrusive alternatives</u>, such as de-escalation, verbal commands, pursuit with the drone/air unit, containment, K9 deployment, or with other available less-lethal force. *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007) (quoting *Smith*, 394 F.3d at 701) (courts may consider the availability of alternative methods). Deadly force was not necessary to seize Gonzalez, and no force was necessary after he dropped the gun and fell to the ground. *See Glenn*, 673 F.3d at 872; *Green v. City and Cty. of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014). These factors also weigh heavily in Plaintiff's favor. Thus, Defendants are not entitled to summary judgment.

### B. It Was Obviously Clearly Established That Shooting a Man that Does Not Attempt to Point, and while Unarmed, Is Excessive

Next in the qualified immunity analysis is whether that constitutional or statutory right was "clearly established" at the time of the incident. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The touchstone is whether "officers [had] fair notice of the illegality of their conduct." *Orn v. City of Tacoma*, 949 F.3d 1167, 1178 (9th Cir. 2020); *Brosseau*, 543 U.S. at 198. Although this ordinarily requires "cases relevant to the situation [officers] confronted," *Brosseau*, 543 U.S. at 200, it does "not require a case directly on point," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (qualified immunity should be denied even "despite notable factual distinctions…, so long as the prior decisions gave reasonable warning that the conduct…violated constitutional rights"). Training on use of force can also provide notice that force is unreasonable. *Drummond*, 343 F.3d at 1062.

Here, under Plaintiff's facts, which must be assumed, the use of deadly force was obviously excessive: the surrendering Gonzalez was shot in the back having never attempted to point the gun; then dropped the gun; was unarmed; never verbally threaten anybody; and while no warning was given even though it was feasible; with

reasonable alternatives available; and when Gonzalez was not an immediate threat of death or serious bodily injury, Officers fired 16 rounds at Gonzalez's back including while he was on the ground and after he dropped the gun. Based on Plaintiff's facts and all reasonable inferences therefrom, the Officers are not entitled to qualified immunity. *See C.V. v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016) (deadly force is not objectively reasonable even when the subject <u>had</u> a gun, officers ordered the subject to put his hands up, and as he was complying, an officer resorted to deadly force without warning); *Aguirre*, 29 F.4th at 629 (where the subject posed no immediate threat to the officers or others, the "'general constitutional rule' applies 'with obvious clarity'" rendering the officer's decision to shoot objectively unreasonable); *Strickland*, 69 F.4th at 620 (citing *Tan Lam v. City of Los Banos*, 976 F.3d 986, 1001 (9th Cir. 2020)) ("it is 'clearly established that shooting a nonthreatening suspect would violate the suspect's constitutional rights.'").

In 2024, "it was clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions…even in circumstances in which the suspect has allegedly committed a violent crime in the immediate past." *N.E.M. v. City of Salinas*, 761 F. App'x 698, 700 (9th Cir. 2019) (*citing Lopez*, 871 F.3d at 1006-13, 1020 ("On these facts, a reasonable jury could conclude that [Gonzalez] did not pose an 'immediate threat to the safety of the officers or others'"); *George*, 736 F.3d at 838; *Harris*, 126 F.3d 1189, 1203-04 (mere possession of a weapon is insufficient to justify deadly force); *Curnow*, 952 F.2d at 325; *Hayes*, 736 F.3d at 1227-28 (unreasonable force where officers shot man without warning while holding a weapon in a non-threatening manner); *Collender v. City of Brea*, 605 F.App'x 624, 628-29 (9th Cir. 2015) (unreasonable deadly force on armed robbery suspect who was unarmed, non-compliant, and lowering arm towards his pocket, when an officer shot him); *see Cole Estate of Richards v. Hutchins*, 959 F.3d 1127, 1134 (8th Cir. 2020) ("it was clearly established that a person does not pose an immediate threat of serious physical harm to

another when, although the person is in possession of a gun, he does not point it at another or wield it in an otherwise menacing fashion").

In *Lopez*, deputies attempted to stop a teenager who was walking away with an apparent AK-47, toward "several houses," with "individuals outside." 871 F.3d at 1002-03. A deputy claimed he "glance[d] backwards" before "rotat[ing] his body clockwise," and he "saw the gun come around" toward him, "with the barrel… coming up." *Id*. Other testimony, however, disputed whether the teenager ever glanced backwards or raised the gun. *Id*. at 1002-03. Due to factual disputes, "most importantly, …the movement of [the] gun," and the deputy's failure to issue any warning, summary judgment was denied. *Id*. at 1007-13.

In *Harris*, 126 F.3d at 1203, defendant was not entitled to qualified immunity "even though the suspect had engaged in a shoot-out with law enforcement officers on the previous day and may have been the person responsible for the death of one of the officers." Also, in *Hopkins*, 958 F.2d at 886-87, an officer's second use of lethal force was excessive where the suspect was wounded and unarmed. In *Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir. 1991), the use of lethal force against the suspect was unreasonable where the suspect, who was previously armed, was shot while he was unarmed. The Ninth Circuit again explained that a jury could find the agent's use of deadly force unreasonable because "he was shot at close range while in a prone position or on his hands and knees." *Id.* Thus, it was obviously established and Officers could not justify shooting Gonzalez when he was already shot and on the ground. *See*, *e.g.*, *Tan Lam*, 976 F.3d at 998, 1001.

In *Curnow*, 952 F.2d at 325 , the defendants were not entitled to qualified immunity where, in one witness' version of the shooting, "Curnow did not point the gun at the officers and apparently was not facing them when they shot him the first time." In *Tubar v. Clift*, 453 F. Supp. 2d 1252, 1257 (W.D. Wash. 2006), there were triable disputes regarding whether the officer acted reasonably in firing his gun a third time where there was no longer an immediate threat to his safety after the

second shot. Similarly in *Morris*, 736 F.3d at 832, the deputies were responding to a domestic disturbance call or a suspect with a gun. The deputies testified that the suspect turned and pointed the gun at them. *Id.* at 832-33. But the suspect's wife disputed that he pointed the gun at deputies. *Id.* at 833. The Court recognized that even if there was a potential future threat, the use of deadly force is not reasonable without objective provocation and while the gun was trained on the ground. *Id.* at 838-39. Thus, the Court found that the deputies could not prevail on summary judgment because, when viewing the facts in favor of plaintiff, the suspect did not make any threatening movements. *Id.*

In *Cruz v. City of Anaheim*, 765 F.3d 1076, 1077-78 (9th Cir. 2014), a confidential informant told the police that the subject was a gang member who sold methamphetamine, carried a gun, had a past felony conviction, and said that "he was not going back to prison." The officers surrounded the subject, and he tried to escape by backing his SUV into a marked patrol car. *Id.* at 1078. The subject Cruz exited his car, ignored officer commands, and reached for the waistband of his pants, prompting all five officers to open fire. *Id.* The officers fired twenty shots in about two to three seconds, killing the subject. *Id.* The Court reversed the grant of summary judgment because of multiple disputed facts and evidence undermining the officers' account. *Id.* at 1079-80. The Court further stated that if the suspect does to make a threatening gesture, it would clearly be unreasonable for the officers to shoot him because he was not an immediate threat. *Id.* at 1078-79.

The Ninth Circuit has also held that shooting an unarmed suspect who no longer poses an immediate threat is an "obvious" case in which qualified immunity does not apply. *See Aguirre v. County of Riverside*, 29 F.4th 624, 626-29 (9th Cir. 2022) (discussing pre-2024 precedent) (establishes that officers cannot shoot someone who is holding a weapon in the back, without warning, even if he ignores commands and has already engaged in violent, threatening conduct, if he is not facing the officer, approaching bystanders, or otherwise presenting an immediate threat). It

was clearly established that shooting a suspect after he has been shot and fell to the ground is unconstitutional. *See Zion*, 874 F.3d at 1075-76; *Tan Lam*, 976 F.3d at 1001-03; *Robertson v. Cnty. of Los Angeles*, No. CV-1602761-BRO-SKx, 2017 WL 5643179, at *10 (C.D. Cal. Oct. 17, 2017) (no qualified immunity even if on initial shots subject held a gun, since shots were fired after falling and not moving); *Hunter v. City of Leeds*, 941 F.3d 1265, 1272, 1280 (11th Cir. 2019) (no qualified immunity for shot after suspect dropped his gun and was no longer evading).

This is an obvious case of excessive force under Plaintiff's facts, nevertheless Ninth Circuit authority puts Officers on fair notice that their deadly force here was excessive. Thus, the Officers are not entitled to qualified immunity.

## V.    PLAINTIFF'S STATE LAW CLAIMS SURVIVE

"California law is clear that the doctrine of qualified governmental immunity is a federal doctrine that does not extend to state tort claims against government employees" and that "qualified immunity does not apply to state civil rights claims." *Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009) (cleaned up) (*citing Venegas v. County of L.A.*, 153 Cal. App. 4th 1230, 1243, 1226 (2007)). Moreover, under Plaintiff's facts there is sufficient evidence for a jury to find that Officers' use of deadly force was unreasonable. Defendants' arguments related to Plaintiff's state law claims mirror those regarding Plaintiff's excessive force claim. Given that Plaintiff's Fourth Amendment claim survives, Plaintiff's state law claims must survive. The same facts and law would be considered for Plaintiff's Fourth Amendment excessive force claim as his state law claims. *See Villalobos v. City of San Maria*, 85 Cal.App.5th 383, 389 (2022) (evaluating both battery and negligence claims against police officers under the reasonableness standard articulated in *Hayes*); *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) ("The elements of a Bane Act claim are essentially identical to the elements of a §1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right."). "[A] reckless disregard for a person's constitutional rights is evidence of specific

intent to deprive that person of those rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018). Yet negligence claims apply a more forgiving standard. *Hayes v. County of San Diego*, 57 Cal.4th 622, 629-30, 639 (2013); *see also Tabares*, 988 F.3d at 1125 ("the officer's pre-shooting decisions can render his behavior unreasonable").

Considering the disputed issues of material facts and the undisputed facts and considering that qualified immunity does not apply to state law claims, Plaintiff is entitled to a jury trial on all state law claims for the reasons discussed above. *See Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1121, fn.6 (2004); *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013); *see also Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009). Additionally, the Officers' negligent pre-shooting tactics, which can also be taken into consideration for Plaintiff's Battery action (*see* CACI No. 1305B, "totality of the circumstances" includes the conduct of the defendant leading up to the use of deadly force), preclude summary judgment. For instance, the inadequately trained K9 attacked a police officer instead of apprehending Gonzalez long before the shooting occurred.

Officers decided to shoot Gonzalez merely for fleeing when they aimed at Gonzalez's back prior to seeing a gun and prior to Gonzalez looking back. (AF 64-65, 82.) The Officers assessed between each shot and saw the gun for all the shots. (AF 102, 103, 108.) Thus, Officers saw that Gonzalez never attempted to point the gun, never fired the gun, never verbally threatened anyone, never oriented his body in the direction of Officers, was not turning towards Officers, and was not facing the officers when Sobaszek first four shots were fired. (AF 56-61, 70-73, 104-105.) It is obviously inappropriate to use deadly force against Gonzalez after he dropped the gun and fell to the ground. (AF 75, 79, 88, 106-108.) Yet, after Gonzalez dropped the gun, and after he fell forward onto the ground, and after assessing and paying attention to the gun, Sobaszek fired his four more shots and Reynoso fired six more shots, at the visibly unarmed Gonzalez. (AF 76, 77, 80, 90, 91, 93, 94, 96, 97, 99,

100.) All of Reynoso's shots were fired dangerously close and passed Irick based on contagious fire. (AF 82-83, 101.) Thus, a reasonable jury could find that the Officers' used unreasonable deadly force shooting an unarmed and non-threatening man after he complied with officer commands, dropped the gun and was on the ground. *See*, *e.g.*, *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 458 (9th Cir. 2013); *Zion*, 874 F.3d at 1077; *Nicholson v. City of Los Angeles*, 935 F.3d 685, 693 (9th Cir. 2019) (noting officer's immediate force without communication, failure to seek cover, and failure to formulate a plan, all contrary to training and policy); Pen. Code §835a.

## VI.  PLAINTIFF'S MUNICIPAL LIABILITY CLAIMS MUST SURVIVE

Defendants' first argument related to Plaintiff's *Monell* claims is the contention that if there is no constitutional deprivation, there can be no *Monell* liability. (Mot. at 14:23-15:2.) In other words, because Plaintiff has shown a constitutional violation here (the use of excessive force in violation of the Fourth Amendment), Plaintiff's *Monell* claims must survive. Further, merely stating "there is no evidence" of a claim is a failure of the moving party to establish that there are no disputed issues of material fact. Fed. R. Civ. Pro. 56. This blatant violation of the standard on Rule 56 warrants denial of Defendants Motion regarding *Monell* in full. *See Wrotten v. USAA General Indemnity Company*, 535 F.Supp.3d 880, 885 n.46 (D. Alaska 2021) (failure to develop argument beyond a "single conclusory statement and two broad legal citations…is too underdeveloped to address"); *Hibbs v. Dep't of Hum. Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (declining to consider argument contained in single sentence because it was "too underdeveloped to be capable of assessment"); *Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014). Furthermore, qualified immunity does not apply to municipal liability. *See Brandon v. Holt*, 469 U.S. 464, 473 (1985); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995).

Nevertheless, Defendants claim there is no evidence of ratification. (Mot. at 15:9-10.) However, a jury could find ratification because the shootings were found to be within policy and the Officers were promoted. (AF 128-130, 143.) Defendants

claim there is no evidence of failure to train. (Mot. at 15:16-17.) However, the Officers' inadequate training is evidenced by their violation of basic officer training despite being a training sergeant and field training officer. (AF 110-121, 144.) Defendants claim there is no evidence of an unconstitutional pattern and practice. (Mot. at 15:24-26.) However, City does maintain unconstitutional training and policies—namely shooting a person merely for fleeing with a gun, based on the fear of future harm. (AF 119-149.) The pattern and practice is evident given several other HPD officer-involved shootings of persons who were not an immediate threat of death or serious bodily injury. (AF 131-141.)

Defendant City claims there is no evidence for *Monell* after its failure to respond to specific *Monell* liability discovery requests. Plaintiff contends that the Court could conclude by reasonable inference that City admits (see Fed. R. Civ. Pro. 36(a)): Officers were not disciplined and were not required to be retrained; Officers' force was in policy; a final policymaker approved of the deadly force; no officer has ever been terminated for their use of deadly force; officers have a history of using deadly force against a subject with no weapon in hand, who are attempting to flee, and on the ground. (AF 143-145.) A jury could find that the City ratified this excessive force, failed to adequately train its officers, and has an unconstitutional pattern and practice that threatening the lives of others, like Gonzalez.

## VII.  CONCLUSION

Plaintiff was not an immediate threat of death or serious bodily injury. It was obvious that officers may not use deadly force on a subject merely for fleeing with a gun in hand, and even more obvious they cannot use deadly force after the subject discards the gun and is on the ground. Defendants' contentions are disputed and lack credibility. The videos show Gonzalez never pointed the gun, never made a furtive or threatening gesture with the gun, never shot the gun, and was not facing Officers when Sobaszek opened fire, then after dropping the gun and falling to the ground Sobaszek continued to fire along with Reynoso's contagious fire against a non-

threatening, non-fleeing, unarmed and down man. Finally, Defendants State and Irick are not subject to this motion, thus all claims against them should proceed to trial.

Therefore, Plaintiff respectfully request that this Court DENY Defendants' Motion for Summary Judgment in full and DENY qualified immunity. Further, Plaintiff requests that the Court consider entering summary judgment in Plaintiff's favor based on the undisputed facts.

Respectfully submitted,

DATED:  February 19, 2026

**LAW OFFICES OF DALE K. GALIPO**
**GRECH, PACKER, & HANKS**

By: _____ /s/ ___ *Marcel F. Sincich* _____
Dale K. Galipo, Esq.
Trenton C. Packer, Esq.
Marcel F. Sincich, Esq.
*Attorneys for Plaintiff*

1  <u>**CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 11-6.2**</u>

2         The undersigned counsel of record for Plaintiff certifies that this brief

3  contains 6,694 words, which complies with the word limit of L.R. 11-6.1.

4

5  Respectfully submitted,

6  DATED:  February 19, 2026          **LAW OFFICES OF DALE K. GALIPO**

7                                                   **GRECH, PACKER, & HANKS**

8                                                   By: _____/s/_____ *Marcel F. Sincich*_____

9                                                   Dale K. Galipo, Esq.
                                                        Trenton C. Packer, Esq.

10                                                  Marcel F. Sincich, Esq.
                                                       *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28