**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax:    (818) 347-4118

**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Phone: (951) 682-9311

*Attorneys for Plaintiff* GEORGE GONZALEZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE GONZALEZ,<br><br>              Plaintiff,<br><br>      vs.<br><br>STATE OF CALIFORNIA; CITY OF HEMET; PATRICK SOBASZEK; ANDREW REYNOSO; SEAN IRICK; and DOES 1-10, inclusive,<br><br>              Defendants | Case No.: **5:25-cv-00331-KK-DTB**<br><br>[*Honorable Kenly Kiya Kato*]<br>Magistrate Judge David T. Bristow<br><br>**DECLARATION OF JEFFREY J. NOBLE**<br><br>[Plaintiff's Opposition to Defendants' Motion for Summary Judgment; Memorandum of Points and Authorities in support thereof; Separate Statement of Genuine Disputes and Additional Material Facts; Decl. of Marcel F. Sincich and attached exhibits; Decl. of Jeffrey J. Noble; Decl. of Scott Holdaway; Decl. of Dr. Ryan O'Connor *filed concurrently herewith*]<br><br>Hearing:    March 12, 2026<br>Time:        09:30 a.m.<br>Crtrm:      Courtroom 3<br>Trial Date: May 11, 2026<br>Complaint Filed: December 24, 2024<br>Removal: February 5, 2025 |

## DECLARATION OF JEFFREY J. NOBLE

I, Jeffrey J. Noble, hereby declare as follows:

1. I am a police practices expert retained in this matter to review material and render opinions, if any, related to police tactics and force according to standard law enforcement training.

2. I am a competent adult and personally familiar with the facts contained herein and would and could competently testify thereto if called upon to do so.

### Qualifications

3. Attached hereto as "**Exhibit A**" is a true and correct copy of my Expert Report in this matter, including my Curriculum Vitae setting forth my qualifications to provide expert testimony, both of which I incorporate herein. A summary of those qualifications is also as follows:

    a. I was a police officer in the City of Irvine for 28 years rising to the position of Deputy Chief of Police prior to my retirement as an Officer, Senior Officer, Sergeant, Lieutenant, Commander and Deputy Chief, including Patrol, Traffic, Detective, SWAT, Training, Internal Affairs, Emergency Management and Crime Prevention. I served as an interim Deputy Chief of Police at the Westminster Police Department for nine months, directly responsible for all police operations including Patrol, Traffic, Criminal Investigations, Emergency Management, Crime Prevention, DARE, K9s, Training, and SWAT. As a police supervisor and manager, I have extensive knowledge, skills, and experience conducting internal administrative investigations on a wide range of issues including use of force, vehicle pursuits, officer misconduct, criminal interrogations and interviews.

    b. As a police consultant and expert witness, I have extensive experience on matters involving police investigative procedures, misconduct and corruption. I have consulted with police organizations on a wide range of police practices, procedures, including criminal and administrative

investigations.  I have been retained as both a defense and a plaintiff's expert in over 350 cases and have testified as an expert in several states in both state and federal court.

   c. I served as an independent policy advisor to the Large City Internal Affairs Project, which was funded by the United States Department of Justice.  The project was an effort to develop national best practices in internal investigations for police agencies.  I was the chair of a sub-committee whose efforts were focused on the investigation of allegations of officer misconduct.  Because of this project the COPS Office published a document entitled, "Standards and Guidelines for Internal Affairs: Recommendations from a Community of Practice."

   d. I have published 21 articles on policing which discussed the subject matters of: Internal Affairs, personnel issues, pursuits, use of force issues and investigative procedures.  I have published two chapters for policing textbooks on tactical recklessness and the code of silence.  I have co-authored a textbook on police Internal Affairs investigations and co-authored a textbook on evaluating police uses of force.

## **Materials Reviewed**

4. I have reviewed the following materials in making my opinions: Plaintiff's Second Amended Complaint; Protective Order; Depositions of Officers Reynoso, Sobaszek and Irick; Incident Reports and Investigative Records; CAD Report; Dispatch Audio; Involved Officer Body-Worn Camera Videos; Photographs of the scene and evidence; Policies and Training documents; Defendants' Responses to Discovery Requests; Video Expert Scott Holdaway Videos; and POST Learning Domains.

## **Methodology**

5. To ensure my methodology was reliable, my opinions are based on a comprehensive review of the provided materials that establishes my understanding

of the facts of the case and on the professional and generally accepted principles and practices in policing as of the date of this incident.  "Generally accepted practices" refers to those protocols, techniques, and procedures that are widely known, acknowledged, and relied upon in the field.  A practice is generally accepted when well-educated, well-trained, and experienced professionals would agree that it is conventional, customary, and reasonably standard.  Generally accepted practices in policing reflect technical and specialized knowledge in the law enforcement field.  A practice can be generally accepted without necessarily being universally adopted or rising to the level of a long established, empirically validated best practice.

6.    To identify and apply the applicable generally accepted practices in policing, I rely on my knowledge, skill, experience, training, and education in law enforcement.  This includes work in my field of study as a policing scholar and author; my knowledge of historical and contemporary law enforcement standards and methods; and the relevant professional and academic literature.  The methodology I applied in this case is consistent with the methodology utilized by other experts in the field of law enforcement when analyzing incidents of this type.

<u>Opinions</u>

**The Uses of Deadly Force by Sergeant Reynoso, Officer Sobaszek, and Officer Irick were Excessive, Objectively Unreasonable, and Inconsistent with Generally Accepted Police Practices.**

7.    Police officers are trained that for their force to be appropriate the level and manner of force must be proportional to the level of resistance and threat with which they are confronted. Proportionality is best understood as a range of permissible conduct based on the totality of the circumstances, rather than a set of specific, sequential, predefined force tactics arbitrarily paired to specified types or levels of resistance or threat.

8.    Police officers are trained, to use deadly force, there must be an immediate threat of death or serious bodily injury.  An officer's perception that a

threat exists is reasonable when the officer has reason to believe that an individual has the ability, opportunity, and intent to cause harm. Ability means the individual's physical capability to cause an identifiable type of harm. Opportunity refers the environment and situation, specifically with regard to the individual's proximity to the potential target were targets. And demonstratable intent refers to the individual's perceived mental state, their apparent desire to cause physical harm the target or targets.

9. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

10. The objective video evidence speaks for itself, showing that Mr. Gonzalez never pointed a gun at any officer or person. Mr. Gonzalez was looking forward and away from the officers, and had put his hand down, then after taking approximately six steps forward, the officers began to open fire. Several shots were fired while Mr. Gonzalez was on his feet moving away from the officers, not looking back and not pointing a gun at the officers. Several more shots were fired as Mr. Gonzalez was falling to the ground, including after he had already dropped the gun. Finally, over ten shots were fired while Mr. Gonzalez was on his knees and lying on the ground and unarmed. Under these facts alone, no reasonable officer would believe that Mr. Gonzalez was an immediate threat of death or serious bodily injury to any officer or person. Mr. Gonzalez never had the requisite present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to any person or officer. Therefore, it is my opinion that all shots fired were excessive, objectively unreasonable and inconsistent with generally accepted police practices, including POST. It is not acceptable or justifiable to use deadly force against a person while running away, even with a gun in hand, under these circumstances, and especially not while the person is unarmed and on the ground.

11. The officers had the opportunity to give a deadly force warning to Mr. Gonzalez during the foot pursuit given that they gave several commands including "get on the ground" and "drop it." However, the officer did not give a verbal warning to Mr. Gonzalez that if he did not stop, did not get on the ground, or if he did not drop the gun that he would be shot by officers.

I declare under penalty of perjury that the foregoing is true and correct. Executed February 18, 2026, Rancho Santa Margarita, CA,

_____                    2/18/24
Jeffrey J. Noble                                                      Date

DECLARATION OF JEFFREY J. NOBLE

# "EXHIBIT A"

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

GEORGE GONZALEZ,           )
                                )
            Plaintiff,     )
                                )
vs.                       )     Case No.: 5:25-cv-00331-KK-DTB
                                )
STATE OF CALIFORNIA;      )
CITY OF HEMET; PATRICK SOBASZEK; )
ANDREW REYNOSO; SEAN IRICK;    )
and DOES 1-10, inclusive,      )
                                )
           Defendants.   )

**EXPERT REPORT OF JEFFREY J. NOBLE**

1.      My name is Jeffrey J. Noble, and I make this report at the request of plaintiff's counsel.

**Qualifications**

2.      I was a police officer in the City of Irvine for 28 years rising to the position of Deputy Chief of Police prior to my retirement. I served as an interim Deputy Chief of Police at the Westminster Police Department for nine months.

      a.      I was a police officer for 28 years and retired in July 2012 as the Deputy Chief of Police with the Irvine Police Department, located in southern California. As a Deputy Chief, I was directly responsible for all police operations including Patrol, Traffic, Criminal Investigations, Emergency Management, Crime Prevention, DARE, K9s, Training, and SWAT. The City of Irvine encompasses over 70 square miles with a population of over 218,000. I served in a wide range of assignments as an Officer, Senior Officer, Sergeant, Lieutenant, Commander and Deputy Chief, including Patrol, Traffic, Detective, SWAT, Training, Internal Affairs, Emergency Management and Crime Prevention. The Irvine Police Department had over 200 police officers and over 100 civilian employees during my employment with the department.

      b.      In April 2014, I was hired by the Westminster, California Police Department as an interim Deputy Chief of Police. My employment with the Westminster Police Department was by means of a temporary contract, and I was asked to review the department's Internal Affairs unit; department policies relating to Internal Affairs investigations, discipline and police officer conduct; conduct department

1

audits and inspections; and act as a liaison with a civilian oversight monitor who was hired during the same period.  My employment was at the request of the Chief of Police, was ratified by the City Council and was sought due to the arrest of a police officer for an off-duty criminal sexual assault, the arrest of an on-duty officer for extortion and a lawsuit filed by three Latino officers alleging discrimination and retaliation.  I concluded this interim position in January 2015.  The Westminster Police Department had 87 police officers and 40 civilian employees during my temporary contracted employment.

c.      As a police supervisor and manager, I have extensive knowledge, skills, and experience conducting internal administrative investigations on a wide range of issues including use of force, vehicle pursuits, officer misconduct, criminal interrogations and interviews, harassment and sexual assaults.

4.      I have a Juris Doctor degree, with honors, from Western State University College of Law and I am admitted to practice law in the State of California.  I have a Bachelor's degree in Criminal Justice with an emphasis on Administration from California State University at Long Beach.

5.      As a police consultant and expert witness, I have extensive experience on matters involving police investigative procedures, misconduct and corruption.  For example:

a.      In 2014, I was part of a Carnegie Institute of Peace Think Tank for addressing police use of force in developing countries.

b.      I have consulted with police organizations on a wide range of police practices, procedures, including criminal and administrative investigations.  For instance, I was retained in 2004 as an expert to review and evaluate the internal investigation conducted by the San Francisco, California, Office of Community Complaints of the case widely known as "Fajitagate" involving the indictment of seven command staff members and three officers of the San Francisco Police Department.  In 2007 and again in 2009, I was retained by the City of Austin, Texas to review the police department's internal homicide and Internal Affairs investigation of two officer involved fatal shootings.

c.      I have been retained as both a defense and a plaintiff's expert in over 350 cases and have testified as an expert in state court in California, Washington, Tennessee, Connecticut, Minnesota, Illinois, Florida, Georgia, Oregon, Colorado, and New Mexico and in federal court in Illinois, Tennessee, Georgia, South Carolina, Oregon, North Carolina, Virginia, Texas and California.

d.      I have prepared expert reports for cases in the states of California, Washington, Pennsylvania, Georgia, Illinois, Tennessee, Idaho, Arkansas, Texas, Colorado, New York, Oklahoma, Connecticut, Florida, Nevada, Utah, Minnesota, Michigan, Ohio,

2

Kentucky, Louisiana, Indiana, Wisconsin, Virginia, Delaware, Oregon, Arizona, New Mexico, New Jersey, Mississippi, North Carolina, South Carolina, Wyoming, Kansas, Maryland, Nebraska, and Missouri.

e.      I have been retained in criminal cases involving allegations of criminal uses of force by police officers in the states of New Mexico, Delaware, Minnesota, Pennsylvania, California, Georgia, Washington, Colorado and Florida.

f.      I served as an independent policy advisor to the Large City Internal Affairs Project, which was funded by the United States Department of Justice.  This group consists of the 12 largest police agencies in the United States as well as a select group of independent policy advisors and academics.  The project was an effort to develop national best practices in internal investigations for police agencies.  I was the chair of a sub-committee whose efforts were focused on the investigation of allegations of officer misconduct.  Because of this project the COPS Office published a document entitled, "Standards and Guidelines for Internal Affairs: Recommendations from a Community of Practice."

g.      I have given presentations at the International Association of Chiefs of Police conference in 2004, 2009, 2012, and 2014; the national COPS conference on Internal Affairs issues and the Academy of Criminal Justices Sciences annual meeting on tactical reckless decision making in 2009; the American Psychological Association annual conference in 2013; and National Tactical Officers' Association annual conference in 2004.

h.      In 2013, I gave a presentation in Mexico at the request of the Mexican government on preventing corruption in police institutions.

i.      I have published 21 articles on policing which discussed the subject matters of: Internal Affairs, personnel issues, pursuits, use of force issues and investigative procedures.  Those articles are listed in my attached resume.

j.      I have published two chapters for policing textbooks on tactical recklessness and the code of silence.

k.      I have co-authored, along with Geoffrey Alpert, Ph.D., a textbook on police Internal Affairs investigations titled, "Managing Accountability Systems for Police Conduct: Internal Affairs and External Oversight."

l.      As evidence that the opinions in our book are accepted by other experts of police administrative investigations, my book was cited extensively in the COPS 2009 publication, "Building Trust Between the Police and the Citizens They Serve: An Internal Affairs Promising Practice Guide for Local Law Enforcement."

3

m.  In 2020, I co-authored a textbook, "Evaluating Police Uses of Force," with Seth Stoughton and Geoffrey Alpert.

6.  My experience, training and background are more fully described in my attached resume.

7.  My areas of expertise in policing include, but are not limited to: police use of force; pursuits; police administration; training; police operations; criminal investigations; interviews and interrogations; civil rights violations and investigations; internal/administrative investigations; criminal investigations; police discipline; citizen complaints; and police policies and procedures.

8.  I reviewed the following material in making my opinions:

- Plaintiff's Second Amended Complaint
- Protective Order
- Depositions
  - Andrew Reynoso
    - Exhibit 1 – Reynoso BWC Video
    - Exhibit 2 – Sobaszek BWC Video
  - Patrick Sobaszek
    - Exhibits 1-17 – Still Shots from BWC Videos
  - Sean Irick
    - Exhibits 2-16 – Still Shots from BWC videos
- 1. Incident Report – Officer Cooley (COH0001-10)
- 2. Incident Report. Notice & Response. by Inv. Alfaro. 020224 (COH00011-13)
- 3. Incident Report. N&R. by Inv. Mendoza. 031524 (COH00014-15)
- 4. Incident Report. N&R Call Out. by Dpty. DiMaggio (COH00016-17)
- 5. Incident Report. Notice & Response. by Inv. Letterly (COH00018-20)
- 6. Incident Report. Notice & Response. by Inv. Castaneda (COH000021-22)
- 7. Incident Report. Notice & Response. by Inv. Manjarrez (COH000223-24)
- 8. Incident Report. Notice & Response. by Inv. Ramirez. 012624 (COH00025-28)
- 9. Incident Report. N&R Call Out. by Ofcr. Ditfurth. 071524 (COH00029-30)
- 10. Incident Report. N&R Call Out. DA Inv. Ferrer. 031224_Redacted (COH000031-32)
- 11. Incident Report. Response & Public Safety Statement. by Sgt. Button. 012524_Redacted (COH00033-35)
- 12. Incident Report. Suspect Ambulance Ride. by Ofcr. Hibbler. 012624 (COH00036-39)
- 13. Incident Report. Response to RUHS. by Ofcr. Enriquez. 012524. 012524 (COH00040-41)
- 14. Incident Report. Critical Incident Log. by Ofcr. Waters. 012524 (COH00042-43)
- 15. Incident Report. Response to RUHS. by Ofcr. Henson. 012524 (COH00044-46)

4

- 16. Incident Report. Response. by Ofcr. Chavez. 012524 (COH00047-54)
- 17. Incident Report. Response. by Ofcr. Christopherson. 012524_Redacted (COH00055-56)
- 18. Incident Report. Response to RUHS. by Ofcr. Gomez. 012524 (COH00057-59)
- 19. Incident Report. Dog Bite. by Ofcr. Kellet. 022524 (COH00060-62)
- 20. Incident Report. CHU. by Inv. Birmingham. 012524_Redacted (COH00063-66)
- 21. Supp Incident Report. 002. Ofcr. Vera. by Inv. Alfaro. 083024_Redacted (COH00067-70)
- 22. Supp Incident Report. 003. Ofcr. Reynoso, Alex. by Inv. Alfaro. 083024_Redacted (COH00071-74)
- 23. Supp Report. 001. Assisting Narrative. by Ofcr. Godward. 012824_Redacted (COH00075-78)
- 24. Supp Report. 002. Assisting Narrative. by Ofcr. Vera. 020524_Redacted (COH00079-81)
- 25. Supp Report. 003. Assisting Narrative. by Ofcr. Reynoso, Alex. 012924_Redacted (COH0082-84)
- 26. Supp Report. 004. Assisting Narrative. by Ofcr. Del Bono. 021324_Redacted (COH0085-93)
- 27. Supp Report. 006. Assisting Narrative. by Ofcr. Godward. 020224_Redacted (COH0094-95)
- 28. Incident Report. Interview. Sgt. Reynoso. by Inv. Alfaro. 020524 (COH0096-100)
- 29. Incident Report. Interview. Transcript. Sgt. Reynoso. by Inv. Alfaro. 020524_Redacted (COH00101-129)
- 30. Incident Report. Interview. CHP Ofcr. Irick. by Inv. Alfaro. 020524 (COH00130-133)
- 31. Incident Report. Interview. Transcript. CHP Ofcr. Irick by Inv. Alfaro. 020524 (COH00134-158)
- 32. Incident Report. Interview. Salgado, Rina. by Inv. Letterly. 013124_Redacted (COH00159-163)
- 33. Incident Report. Interview. Witness. Bonilla, Erick. by Inv. Ramirez. 012624_Redacted (COH00164-169)
- 34. Incident Report. Interview. Witness. Lopez, Israel. by Inv. Ramirez. 012624_Redacted (COH00170-176)
- 35. Incident Report. Interview. Nieves, Yvette. by Inv. Ramirez. 013124_Redacted (COH00177-183)
- 36. Incident Report. Interview. Suspect Family. by DA Inv. Ferrer. 031224_Redacted (COH00184-186)
- 37. Incident Report. Interview. Incl Transcript. Det. Sobaszek. by DA Inv. Ferrer. 041624_Redacted (COH00187-223)
- 38. Supple Incident Report. 001. Ofcr. Godward. Interview. Salgado, Rina & Nieves, Yvette. by Alfaro. 083024_Redacted (COH00224-227)

- 39. Incident Report. Interview. Suspect Gonzalez, George. by Inv. Alfaro. 012824_Redacted (COH00228-230)
- 40. Incident Report. Interview. Suspect Parents. by Inv. Alfaro. 020524_Redacted (COH00231-233)
- 41. Incident Report. Interview. Witness. Barajas, Paul. by Inv. Letterly. 012424 (COH00234-237)
- 42. Incident Report. OIS Scene. by Inv. Mendoza. 031524 (COH00238-256)
- 43. Incident Report. Hospital RUHS Scene. by Inv. Castaneda. 012924 (COH00257—259)
- 44. Incident Report. Collect Blood & Projectile Evidence from RUHS. by Inv. Castaneda. 020224_Redacted (COH00260-267)
- 45. Incident Report. Process Vehicle. by Inv. Manjarrez. 021524_Redacted (COH00268-286)
- 46. Incident Report. Suspect Weapon to Forensics. by Dpty. Ditfurth. 071524 (COH00287-301)
- 47. Incident Report. Officer Weapons to Forensics and Armory. by Dpty. Ditfurth. 071524 (COH00302-333)
- 48. Incident Report. Forensics Scene. by FT. Kelly. 020324_Redacted (COH00334-337)
- 49. Incident Report. Forensics Scene. by FT. Kroll. 020224 (COH00338-341)
- 50. Incident Report. Process Vehicle.  by FT. Murphy. 013124_Redacted (COH00342-344)
- 51. Incident Report. Test Officer Firearms. by FT. Mercado. 013024 (COH00345-347)
- 52. Incident Report. Suspect Handgun. by FT Alvarado. 013124 (COH00348-350)
- 53. Incident Report. Aerial Photos. by FT. Almandariz. 012524 (COH00351-352)
- 54. Incident Report. Charting CHP Ofcr. Irick. by FT. Arellanes. 013024 (COH00353-354)
- 55. Incident Report. Process Firearm. by FT. Torres. 013024 (COH00355-358)
- 56. Incident Report. Assist in Scene. by FT. Leon. 052524 (COH00359-360)
- 57. Incident Report. Charting Photos. by FT. Murphy. 012524 (COH00361-363)
- 58. Incident Report. Forensics Photos. by FT. Feer. 020524 (COH00364-365)
- 59. Incident Report. Assist in Scene. by FT. Rodriguez. 012624 (COH00366-367)
- 60. Incident Report. Charting. CHP Ofcr. Irick. by Inv. Manjarrez. 020224 (COH00368-372)
- 61. Incident Report. Charting. by Dpty. Ditfurth. 071524 (COH00373-378)
- 62. Incident Report. Surveillance Review. from Perricone Juices. by Dpty. DiMaggio. 012924_Redacted (COH00379-380)
- 63. Incident Report. CAL-ID Results. by Inv. Manjarrez. 020824_Redacted (COH00381-383)
- 64. Incident Report. Dispatch Records. by Inv. Alfaro. 020524_Redacted (COH00384-400)

- 65. Incident Report. Bio Tox Results. by Inv. Alfaro. 021924_Redacted (COH00401-403)
- 66. Incident Report. Evidence Handling. by Inv. Alfaro. 021924 (COH00404-408)
- 67. Incident Report. HPD Event Document. by Inv. Alfaro. 091024_Redacted (COH00409-415)
- 68. Incident Report. BWC Review. Reynoso & Sobaszek. by DA Inv. Ferrer. 031224 (COH00416-418)
- 69. Incident Report. Helicopter Video Footage. by Inv. Alfaro. 082824_Redacted (COH00419-433)
- 70. DOJ. Physical Evidence Exam Report. by Inv. Alfaro. 051424 (COH00434)
- 71. Incident Report. SW and Vehicle Return. by Inv. Letterly. 022024_Redacted (COH00435-442)
- 72. Incident Report. SW RUHS. by Inv. Alfaro. 100224 (COH00443-451)
- 73. CAD. Report. HPD. Ofcr. Scafani. 012424_Redacted (COH00452-456)
- 74. CII. Report. Gonzalez, George. Sgt. Gomez. 021225_Redacted (COH00457-473)
- 75. Incident Report. Case Closed. by Inv. Alfaro. 122024 (COH00474-478)
- 76. CPO-DV. Gonzalez, George. 031522_Redacted (COH00479-480)
- 77. Audio. Dispatch. 001. 012424 [COH000481] (COH00481)
- 78. Audio. Dispatch. 002. 012424 [COH000482] (COH00482)
- 79. Video. Star 9 Helicopter. By Ofcr. Coley. 012624 [COH000483] (COH00483)
- 80. Video. Warehouse. Exterior Surveillance. 012424 [COH000484] (COH00484)
- 81. BWC. Ofcr. Reynoso, Alex. 001. 012424 [COH000485] (COH00485)
- 82. BWC. Ofcr. Reynoso, Alex. 002. 012424 [COH000486] (COH00486)
- 83. BWC. Reynoso, Andrew. 012424 [COH000487] (COH00487)
- 84. BWC. Ofcr. Bishop. 012424 [COH000488] (COH00488)
- 85. BWC. Ofcr. Coley. 001. 042424 [COH000489] (COH00489)
- 86. BWC. Ofcr. Coley. 002. 042424 [COH000490] (COH00490)
- 87. BWC. Ofcr. Coley. 003. 042424 [COH000491] (COH00491)
- 88. BWC. Ofcr. Del Bono. 012424 [COH000492] (COH00492)
- 89. BWC. Ofcr. Godward. 001. 012424 [COH000493] (COH00493)
- 90. BWC. Ofcr. Godward. 002. 012424 [COH000494] (COH00494)
- 91. BWC. Ofcr. Godward. 003. 012424 [COH000495] (COH00495)
- 92. BWC. Ofcr. Godward. 004. 012424 [COH000496] (COH00496)
- 93. BWC. Ofcr. Tabor. 001. 012424 [COH000497] (COH00497)
- 94. BWC. Ofcr. Tabor. 002. 012424 [COH000498] (COH00498)
- 95. BWC. Ofcr. Toledo. 001. 012424 [COH000499] (COH00499)
- 96. BWC. Ofcr. Toledo. 002. 012424 [COH000500] (COH00500)
- 97. BWC. Ofcr. Toledo. 003. 012424 [COH000501] (COH00501)
- 98. BWC. Det. Sobaszek. 012424 [COH000502] (COH00502)
- 99. Video. Clip by Sgt. Douglas. of BWC. Sgt. Reynoso, Andrew. 012424 [COH000503] (COH00503)

- 100. Video. Clip by Sgt. Douglas. of BWC. Ofcr. Del Bono. 012424 [COH000504] (COH00504)
- 101. Photos. by FT. Araellons. 012424 (COH00505-726)
- 102. Photos. by FT. Knoll. 012524 (COH00727-820)
- 103. Photos. by FT. Murphy. 012424 (COH00821-920)
- 104. Photos. by FT. Vandefeer. 012424 (COH00921-1162)
- 105. Photos. Ofcr. Kellet. K9 Bite Injuries. 012424 (COH001163-1167)
- 106. Photo. Google Satellite Image. Incident Scene (COH001168)
- 107. HPD. Policy Manual. 121423 (COH001169-2028)
- 2025.05.21 - Def. City's Rule 26 Initial Disclosures
- 2025.07.18 - HEMET Responses to RFA, Set 1.pdf
- 2025.07.18 - HEMET Responses to RFP, Set 1.pdf
- 2025.07.18 - HEMET Responses to ROGS, Set 1.pdf
- 2025.07.21 - Def. City's Rule 26 Supplemental Disclosures.pdf
- State Documents
  - [0001] 1. CIIT Cover Sheet C24-601-001
  - [0002] A. Table of Contents
  - [0003-4] B.1. Summary of Incident
  - [0005] B.2. Scene Description
  - [0006-35] B.3. Employee's Profile
  - [0036-37] B.4. Suspect's Profile_Redacted
  - [0038] B.5. Criminal Investigative Agency
  - [0039] B.6. Crime Scene Evidence Collection and Storage
  - [0040] B.7. Injury Descriptions
  - [0041] B.8. Forensic Examination
  - [0042-43] B.9. Critical Incident Debriefing
  - [0044-45] C.1. Identification of Firearms- Weapons_Redacted
  - [0046] C.2. Witnesses
  - [0047-48] C.3. Other Involved Personnel
  - [0049-53] D. Vehicles_Redacted
  - [0054-77] E.1. SEAN IRICK Statement
  - [0078] E.2. Obtaining a Public Safety Statement-Use of Force Critical Incident
  - [0079] E.3. Witness Statements
  - [0080] F. Diagrams
  - [0081-84] G. Photography and Video.
  - [0085-99] H. 1. Annexes-CHP 271, Critical Incident -- Potential CIvil Liability
  - [0100-101] H.2. CHP 36, Property Receipt
  - [0102] H.3. Blood Alcohol-Toxicology Report
  - [0103-113] H.4. Crime Scene Logs
  - [0114-119] H.5. CHP 125, Weapon Control Memorandum_Redacted
  - [0120-123] H.6. Press Releases

- o  [0124-129] H.7. The DA's Findings
- o  [0130] H.7.a. Riverside County District Attorney's Findings
- o  [0131-136] H.8. Criminal Report
- o  [0137] H.9. Coroner's Report
- o  [0138-153] Det. Sobaszek - charting_Redacted
- o  [0154-253] Photos - Hemet PD Charting Photos
- o  [0254-278] Photos - Officer Irick - Charting_Redacted
- o  [0279-310] Photos - More Officer Irick Charting Photos_Redacted
- o  [0311-329] Photos - Sgt Reynoso-Charting_Redacted
- o  [0330-354] Photos - Suspect Hospital Scene
- o  [0355-413] Photos - Photos Suspect vehicle
- o  [0414-602] Photos - Initial & OIS Scene photos
- o  [0603-844] Photos - More photos of Initial IOS and Scene (folder 101413)
- o  [0845-1034] Photos - More photos of IOS and Scene (folder 101414)
- o  [1035-1128] Photos - More photos of IOS and Scene (folder 101415)
- o  [1129-1303] Riverside County Sheriff's Dept. Investigation Reports
- o  [1304-1308] 601.01242024.2005.UOF.Final
- o  [1309-1316] 2022 UOF A&C POST Certified ECO - AOST
- o  [1317-1318] LD 20 - UOF Quiz (with 6 Rs)
- o  [1319-1321] LD20 - Graham v Connor Handout
- o  [1322-1418] LD20-MOD 1 - ET Pick-Up Day Presentation (Working Copy) [20200714]
- o  [1419-1445] LD20-MOD 2
- o  [1446-1490] LD20-MOD 3
- o  [1491-1512] LD20-MOD 4
- o  [1513-1539] LD20-MOD 5
- o  [1540-1549] LD20-MOD 6
- o  [1550] 2-6 Gang Task Force Officer
- o  [1551] 855-19-004 Molina M - Signed 240G Complaint Transmittal
- o  [1552-1554] 020690 ETRS 2023
- o  [1555-1558] 020690 ETRS 2024
- o  [1559-1560] 020690 ETRS 2025
- o  [1561] Closing Correspondence
- o  [1562-1586] GTF MOU 2025-2030_signed
- o  [1587-1591] HPG 0.1
- o  [1592-1613] 1613HPM 70.6, Ch. 1 12-2020
- o  [1614-1639] HPM 100.71, Ch. 1
- o  [1640] Officer Irick Interview
- o  [1641] Reynoso_Axon_Body_3_Video_2024-01-24_1936_X6033520Y
- o  [1642] Snapshot-2024-01-25 02.52.58.888 AM
- o  [1643] Sobaszek_Axon_Body_3_Video_2024-01-24_1936_X6033467W
- o  [1644] STAR 9 Aerial
- o  [1645-1669] RCRGTF MOU 2021-2025 Signed
- o  [1670-1743] CHP Risk Management Docs

- o  2025.07.01 - Defs' Privilege Log
- o  2025.07.01 - State Deft's Responses to P's ROGS, Set 1
- o  2025.07.01 - State Deft's Resps to Pltf's RFA, Set 1
- o  2025.07.01 - State Deft's Resps to Pltf's RFP, Set 1
- o  2025.07.01 - State's Verification to Pltf's Interrogatories
- o  2025.08.25 - Deft State's Supp Resp to Pltf's RFPD #1
- Video Expert Scott Holdaway Videos
  - o  Sergeant Reynoso BWC with Graphics – Video
  - o  Sergeant Reynoso BWC with Graphics – pdf file
  - o  4x Enlargement and Stabilization Comparison – Image Sequence – Video
  - o  4x Enlargement and Stabilization Comparison – pdf file
  - o  Officer Sobaszek and Reynoso – Side by Side – Video
  - o  Officer Sobaszek and Reynoso - Side by Side – pdf file
  - o  Officer Sobaszek and Reynoso – Side by Side – With Graphics – Video
  - o  Officer Sobaszek and Reynoso – Side by Side – With Graphics – pdf File
  - o  Officer Sobaszek BWC – 4x Enlargement and Stabilized – Video
  - o  Officer Sobaszek BWC – 4x Enlargement and Stabilized – pdf File
  - o  Officer Sobaszek BWC – 4x Enlargement and Stabilized – With Graphics – pdf File
  - o  Officer Sobaszek BWC – 4x Enlargement and Stabilized – With Graphics – Video
  - o  Officer Sobaszek BWC with Graphics – Video
  - o  Officer Sobaszek BWC with Graphics – pdf file

9.  At this point in the development of this case, other than potentially displaying a particular portion of the materials reviewed, I do not know whether I will be using any demonstrative aids during my testimony.  Should I decide to use any such aid, I will ensure that they are made available for review, if requested, prior to their use.

10.  My professional charges for this litigation work is an hourly fee of $495 plus expenses including all travel time.  My fees for deposition and trial testimony are a flat rate of $3,000 for the first four hours and $650 per hour for every additional hour, plus travel time and expenses.

11.  If I am provided additional materials that changes, alter or amends my opinions, I will prepare a supplemental report.

12.  To ensure my methodology was reliable, my opinions are based on a comprehensive review of the provided materials that establishes my understanding of the facts of the case and on the professional and generally accepted principles and practices in policing as of the date of this incident.  "Generally accepted practices" refers to those protocols, techniques, and procedures that are widely known, acknowledged, and relied upon in the field.  A practice is generally accepted when well-educated, well-trained, and experienced professionals would agree that it is conventional, customary, and

reasonably standard.  Generally accepted practices in policing reflect technical and specialized knowledge in the law enforcement field.  A practice can be generally accepted without necessarily being universally adopted or rising to the level of a long-established, empirically validated best practice.  Generally accepted practices may be, but are not necessarily, reflected in Department of Justice consent decrees, publications by professional associations (such as the International Association of Chiefs of Police, the Police Executive Research Forum, the National Police Foundation, etc.), in agency policies, and in reputable training materials.

13.    To identify and apply the applicable generally accepted practices in policing, I rely on my knowledge, skill, experience, training, and education in law enforcement.  This includes work in my field of study as a policing scholar and author; my knowledge of historical and contemporary law enforcement standards and methods; and the relevant professional and academic literature. I employ a similar methodology when I conduct professional evaluations of police officers or agencies as a consultant and when writing for reputable academic and professional publishers. The methodology I applied in this case is consistent with the methodology utilized by other experts in the field of law enforcement when analyzing incidents of this type.

14.    My use of terminology such as "excessive," "unreasonable," and "disproportionate," etc., is intended to and should be read as references to the professional and generally accepted standards in policing and is not intended and should not be interpreted as references to or the application of legal standards within the sole province of the factfinder or judge.

15.    I do not opine on the credibility of any witness, as the jury will need to decide for itself whether it believes witness testimony.  Where some evidence conflicts with other evidence, if possible, my opinions will rely upon video or other objective evidence, rather than witness reports or testimony, as that is consistent with police practices for investigating alleged improper uses of force and crimes.

16.    The opinions that follow are made within a reasonable degree of certainty within the field of police practices based on over 35 years of professional law enforcement experience and scholarship.

### Summary of Incident

17.    On January 24, 2024, Officers Sobaszek and Irick made a car stop on Rina Salgado in the driveway of Ms. Salgado's mother's residence at 40525 Whittier Avenue, in the city of Hemet because she failed to stop for a stop sign.  Ms. Salgado's sister, Yvette Nieves, and Ms. Salgado's two young sons were passengers in the vehicle.[1]

---

[1] COH00160.

18.  Officer Sobaszek (Hemet PD) and Officer Irick (CHP) are members of the multiagency Riverside County Gang Region 3 Task force that includes Sergeant Reynoso (Hemet PD), Deputy Kellett (Riverside County Sheriff's Department), Officer Reynoso (Hemet PD), Officer Del Bono (K9 officer – Hemet PD), Officer Hibbler (Hemet PD), Officer Godward (Hemet PD), and Officer Vera (Hemet PD).

19.  Sergeant Reynoso, and his partner Deputy Kellett, responded to the scene of the car stop briefly and Sergeant Reynoso said a computer query was made on Ms. Nievas and it returned that she had a domestic violence restraining order protecting her from George Gonzalez.  Officer Sobaszek said Ms. Nieves is the ex-girlfriend of Mr. Gonzalez whom he knew from prior contacts.[2]  Ms. Nieves said Mr. Gonzalez had been at her house earlier in the day and she agreed to call Officer Sobaszek if Mr. Gonzalez returned.[3]

20.  Officer Sobaszek said Ms. Salgado called him about 10 minutes after he left the car stop and said Mr. Gonzalez was in her driveway.  Mr. Gonzalez was yelling at Ms. Nievas to get in his vehicle, and he would not allow Ms. Nievas to enter the home.[4]  Officer Sobaszek said Ms. Salgado told him to be careful because Mr. Gonzalez was "strapped," and Officer Sobaszek said he believed "strapped" meant that Mr. Gonzalez had a gun.[5]  Ms. Salgado later confirmed this conversation with Officer Sobaszek and said she called Officer Sobaszek and told him that Mr. Gonzalez was threatening Ms. Nieves and that he was possibly "strapped up," although she did not see Mr. Gonzalez in possession of a gun.[6]

21.  Sergeant Reynoso said he received a telephone call from Officer Irick about 10 minutes after he left the car stop advising he received a call that Mr. Gonzalez was now at the home and that he was "strapped," causing Sergeant Reynoso to believe that family members were reporting that Mr. Gonzalez was armed with a firearm.

22.  At about 7:36 PM, the Riverside County Gang Region 3 Task Force officers returned to 40525 Whittier and contacted George Gonzalez.  Mr. Gonzelez had an active felony arrest warrant 11370.1 H&S (possession of a controlled substance while armed), and two misdemeanor warrants for 273.5 PC (domestic violence) and 11377 H&S (possession of a controlled substance).  The officers also knew that Mr. Gonzalez was in violation of the restraining order and that it was reported that he may be in possession of a firearm.

 a.  Officer Sobaszek said as soon as they arrived, Mr. Gonzalez jumped in the back seat of his car, was reaching under the seats and was not showing his hands.[7]

---

[2] COH00198.
[3] COH00198-199.
[4] COH00199.
[5] COH00200-201.
[6] COH00161.
[7] COH00200.

According to Officer Sobaszek, during that time, Mr. Gonzalez made statements that he was going to die and that the police were going to have to kill him.[8]

b.    Officer Irick said when they arrived, Mr. Gonzalez entered the back seat of his vehicle, was reaching into his pockets and going between the front and rear seats.  According to Officer Irick, at one point, Mr. Gonzalez said that the police would have to kill him.[9]

c.    Sergeant Reynoso said as the officers arrived, Mr. Gonzalez was standing outside a black Hyundai and when Mr. Gonzalez saw the officers, he quickly entered the backseat of the Hyundai.  Sergeant Reynoso said it appeared that Mr. Gonzaez was manipulating something in the vehicle.  Mr. Gonzalez moved into the driver's seat and Deputy Kellett moved his vehicle up so the front push bars of his vehicle were touching the rear of the Hyundai.[10]  Sergeant Reynoso said officers tried to get Mr. Gonzalez to surrender, but he made statements that "I'm going to die today," and "You're going to have to kill me."  Mr. Gonzalez continually asked to speak with Ms. Nievas.  Mr. Gonzalez began acting erratically by throwing golf clubs out of the vehicle, putting a shirt over his face and putting a sunshade on the front window.[11]

23.    About 9 minutes after Mr. Gonzalez entered the vehicle he was able to drive away, and the officers initiated a vehicle pursuit.

a.    Officer Alex Reynoso said, "the order of police vehicles in the pursuit was as follows: Hemet PD Officer Sobaszek (driver) and CHP Officer Irick (passenger), Deputy Kellett (driver) and Hemet PD Sergeant Reynoso (passenger), Hemet PD Officer Del Bono (driver) and Hemet PD Officer Godward (passenger) in Hemet, Hemet PD Officer Vera, and himself.  Additionally, Riverside County Sheriff's Department Star 9 police helicopter joined the pursuit. The vehicle pursuit lasted 18 minutes (from 1945 hours until 2003 hours), covering a distance of approximately 21.3 miles from the city streets of Hemet, then San Jacinto, and ultimately Beaumont.  Officer Reynoso said during the vehicle pursuit, Mr. Gonzalez made several dangerous and illegal driving actions which were observed and broadcasted by the officers in the pursuit.  Some of the actions included reaching speeds of over 100 miles per hour, driving on the wrong side of the road, recklessly driving through a business parking lot, and failing to stop at posted stop signs and red lights."[12]

b.    Officer Sobaszek said during the pursuit, Mr. Gonzalez ran a stop sign, was driving

---

[8] COH00207.
[9] COH00143.
[10] COH00113.
[11] COH00114.
[12] COH00083.

on the wrong side of the road, and was driving over 100 mph.[13]  Mr. Gonzalez was driving at 70-80 mph in residential neighborhoods and Officer Sobaszek said it was "super dark."[14]  Officer Sobaszek said it appeared Mr. Gonzales high-centered his vehicle on the train tracks, so he abandoned his vehicle and began to flee on foot.[15]

    c.    Sergeant Reynoso said during the pursuit, Mr. Gonzalez was driving through stop signs and reached speeds in excess of 100 mph.[16] As Mr. Gonzalez drove over train tracks, his vehicle became disabled and came to a stop.  Mr. Gonzalez exited his vehicle and began to flee on foot, being chased by Officers Sobaszek and Irick and then Sergeant Reynoso.  Sergeant Reynoso said he saw a worker in the area, and he believed that Mr. Gonzalez was running toward a dead end into a commercial building.[17]

24.    The foot pursuit went for about 275 yards and led into the industrial business yard of Perricone Juices, located at 550 B Street, Beaumont.[18] During the foot pursuit, Sergeant Reynoso, Officer Sobaszek, and Officer Irick, all fired their handguns at Mr. Gonzalez. Sergeant Reynoso fired 10 rounds,[19] Officer Sobaszek fired 6 rounds,[20] and Officer Irick fired 10 rounds.[21]

    a.    Officer Irick said Mr. Gonzalez was not running "normal," and he was holding his waist.  Officer Sobaszek told Mr. Gonzalez to stop, get on the ground, and "You're going to get shot."[22]  Officer Irick said Mr. Gonzalez "raises the right gun. He by -- use -- uses his right arm, he raises a black, semi-automatic handgun, and he looks over his shoulder and says something to the effect that I'm going to do it. I'll do it."  Officer Irick said he yelled, "Drop it," then took two more paces, drew his handgun, and fired several shots at Mr. Gonzalez.[23]  Officer Irick also said, "my thoughts two-fold. He's going to -- he -- you know, he produced -- he has a weapon. He -- he produced it. He made a direct threat. He's going to turn and shoot us, and if he doesn't, he's going into that building, and he -- he's going to barricade. He -- he's already shown reckless indifference for the public, and he's going to barricade, and it's going to be a hostage situation, and now everybody -- I mean , every body's life 's been in danger from the jump, you know, from -- from when he initially barricaded, and there's females -- women in the house

---

[13] COH00201.
[14] COH00209.
[15] COH00201.
[16] COH00115.
[17] COH00117.
[18] COH00012-13.
[19] COH00376.
[20] COH00377.
[21] COH00371.
[22] COH00145.
[23] COH00146.

surrounded by a sea of guns -- looking for a peaceful resolution. He -- he doesn't care."[24]

1.    Officer Irick said Mr. Gonzalez was turning to his right and looking over his left shoulder, and he had the gun in his right hand.[25]  Officer Irick said Mr. Gonzales did not turn to his left.[26]

2.    Officer Irick said when he began firing his handgun, Mr. Gonzalez "wasn't facing me in a shooting stance, but the direction of the firearm in his right hand was tending to show back towards my direction."[27]  Officer Irick said he does not know if Mr. Gonzalez's gun was ever pointed at him when he was shooting at Mr. Gonzalez.[28]

b.    Officer Sobaszek said he saw that Mr. Gonzalez's left hand was swinging as he ran, but his right hand was in his waistband area as though he were holding something that he believed may be a gun.  As he was running, Mr. Gonzalez said, "I got something," or "I have something," and "You better stop.  Back up."  Mr. Gonzalez then raised his right hand holding a handgun.  Mr. Gonzalez raised the handgun as he was still running forward and looking over his left shoulder.[29] Officer Sobaszek said he could see people through a window inside the business, and he believed that Mr. Gonzalez had the present ability to hurt him or his partners, and he was running toward people inside the business, so he shot his handgun at Mr. Gonzalez and Mr. Gonzalez fell to the ground.[30] Officer Sobaszek said he does not recall if he gave Mr. Gonzalez any commands after he saw the gun.[31]

1.    Officer Sobaszek said prior to firing his first shot, Mr. Gonzalez was turning toward him with a gun in his hand above his chest.[32]  Officer Sobaszek did not state Mr. Gonzalez was turning in his statement, rather he said that Mr. Gonzalez was an imminent threat "where he could have turned and shot at me or my partners."[33]

2.    Officer Sobaszek said he was trained that he could not shoot someone if they were running with a gun and there was no other basis to use force.[34]

---

[24] COH00155.
[25] Irick deposition at 45.
[26] Irick deposition at 56.
[27] Irick deposition at 73.
[28] Irick deposition at 73-74.
[29] COH00202.
[30] COH00203.
[31] COH00214.
[32] Sobaszek deposition at 54.
[33] COH00222.
[34] Sobaszek deposition at 17.

c.    Sergeant Reynoso said he drew a "line in my head" that Mr. Gonzalez was not going to enter the occupied warehouse because he is a danger and he may take people hostage or harm someone.[35]  Sergeant Reynoso said he saw Mr. Gonzalez produce a handgun as he was looking back to the left and he believed that Mr. Gonzalez was getting ready to engage in a gun fight with the officers.  Sergeant Reynoso said as he was drawing his handgun from his holster, he heard a "pop"[36] and believed that Mr. Gonzalez was shooting at the other officers,[37] so he fired his handgun at Mr. Gonzalez.[38]  Sergeant Reynoso said during the foot pursuit, he heard other officers telling Mr. Gonzalez, "Stop.  Now you're going to get shot."[39]

1.    In his deposition, Sergeant Reynoso said Mr. Gonzalez presented an imminent threat of death or serious bodily injury during the foot pursuit the moment he presented a firearm.  Sergeant Reynoso said Mr. Gonzalez presented an imminent threat even if he did not turn or look at him because of the woman and children in danger at the home; the perception that he was armed during the vehicle pursuit; Mr. Gonzalez's erratic driving and evading officer during the vehicle pursuit; and because he was running through an occupied business.[40]

2.    Sergeant Reynoso said when the firearm became visible, he could not allow Mr. Gonzalez to enter the building and potentially take anyone hostage or cause them great bodily injury or harm.[41]

3.    Sergeant Reynoso said Mr. Gonzalez turned to his left and was facing officers when he heard a gunshot,[42] and when he fired his first round.[43] Sergeant Reynoso said he could see the gun in Mr. Gonzalez's hand prior to each shot that he fired.[44]

d.    Deputy Kellett said he drove his unmarked police vehicle during the vehicle pursuit, with Sergeant Reynoso as a passenger, and they were the second police vehicle in the pursuit.  Mr. Gonzalez's vehicle became immobilized, and a foot pursuit was initiated.  Deputy Kellett said he was bitten by a police K9 and he was unable to continue with the foot pursuit.[45]  Deputy Kellett did not witness the

---

[35] COH00117.
[36] COH00118.
[37] COH00121.
[38] COH00118.
[39] COH00126.
[40] Reynoso deposition at 46-48.
[41] Reynoso deposition at 53.
[42] Reynoso deposition at 62.
[43] Reynoso deposition at 64.
[44] Reynoso deposition at 65.
[45] COH00061-62.

shooting.

e.    Officer Del Bono said he was the third unit in the pursuit,[46] and during the foot pursuit he released his K9 partner without a lead.[47]  Officer Del Bono said his K9 bit Deputy Kellett on his left thigh and right forearm during the foot pursuit.[48]  Officer Del Bono did not witness the shooting.

f.    Officer Hibbler said he was the fourth police vehicle in the vehicle pursuit. Officer Hibbler said he heard gunshots, but he was not sure how many shots were fired and when he arrived at the shooting scene, he saw that Mr. Gonzalez had been shot four times: twice in the back; once in his left thigh; and once to the bottom of his left foot.[49]

25.    On January 28, 2024, Officer Alfaro interviewed Mr. Gonzalez at the hospital.[50]  Mr. Gonzalez said he was afraid of the police, and he did not want to go back to jail, so he drove away.  Mr. Gonzalez said a train was blocking the road and he could not go any further, so he ran on foot from his vehicle.  Mr. Gonzalez said as he ran away from the officers, he removed a handgun that was in his pants and was holding the gun in his right hand when he was shot by the police.  Mr. Gonzalez said he was hit by three gunshots: once in the back, once in his left thigh; and once in his foot.  Mr. Gonzalez said the magazine of his gun was loaded, but there was no bullet in the chamber[51] (Mr. Gonzalez's claim that there was no round in the chamber is disputed by Officer Mendoza[52] and Deputy Ditfurth[53]).

26.    Isreal Lopez has been employed with Perricone Farms since May 6, 2022.  Israel said his current position at Perricone Farms is offloading the fruit produce from the tractor trailers. Israel was standing near the offloading ramp, unloading the tractor trailer, when he heard someone yelling "Stop!" Israel then saw about five uniform officers chasing behind a Hispanic male yelling at him to stop, but the Hispanic male continued to evade the officers. Israel then saw the Hispanic male raise his right hand above his head and noticed that the Hispanic male had a black handgun in his right hand. The Hispanic male appeared to look back towards the officers while holding the handgun in his right hand. Israel said it appeared as if the Hispanic male was going to turn and face the officers while holding the firearm, but the officers reacted quickly and fired at the Hispanic male before he turned completely. Israel stated that after the officers discharged their

---

[46] COH00088.
[47] COH00090.
[48] COH00091.
[49] COH00037-38.
[50] COH00229.
[51] COH00229-230.
[52] COH00242.
[53] COH00289.

firearms, he saw the Hispanic male fall face down to the ground.[54]

27.   Erick Bonilla is an employee of Perricone Farms. Mr. Bonilla said "he was standing near the offloading ramp, when he heard someone yelling Stop! Erick stated he then saw about four uniform officers chasing behind a Hispanic male yelling to stop, but the Hispanic male continued to evade the officers. Erick stated he then saw the Hispanic male raised both hands above his head and noticed that the Hispanic male had a black handgun in his right hand. Erick stated the Hispanic male appeared to look back towards the officers while holding the handgun in his right hand. Erick stated when the Hispanic male looked back towards the officers, while holding the handgun, several officers fired towards the Hispanic male."[55]

**The Uses of Deadly Force by Sergeant Reynoso, Officer Sobaszek, and Officer Irick were Excessive, Objectively Unreasonable, and Inconsistent with Generally Accepted Police Practices**

28.   Police officers are trained about the U.S. Supreme Court's landmark decisions in *Graham v. Connor* and *Tennessee v. Garner.* Those decisions held that to determine whether the force used to affect a particular seizure is reasonable, one must balance the nature and quality of the intrusion on the individual's rights against the countervailing government interests at stake. This balancing test is achieved by the application of what the Court labeled the objective reasonableness test. The factors to be considered include in *Graham* and *Garner*: 1.) The severity of the crime, 2.) Whether the suspect poses an immediate threat to the safety of the officers or others, 3.) Whether the suspect is actively resisting or attempting to evade arrest by flight, and 4.) Whether a warning was given, if feasible.

29.   Whether one's actions were objectively reasonable cannot be considered in a vacuum, but must be considered in relation to the totality of the circumstances.[56] The standard for evaluating a use of force reflects deference to the fact that peace officers are often forced to make split-second judgments in tense circumstances concerning the amount of force required. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Police officers are trained and prepared to assess dangerous situations and respond accordingly. Police officers are trained that for their force to be appropriate the level and manner of force must be proportional to the level of resistance and threat with which they are confronted. Proportionality is best understood as a range of permissible conduct based on the totality of the circumstances, rather than a set of specific, sequential, predefined force tactics arbitrarily paired to specified types or levels of

---

[54] COH00173.

[55] COH00167.

[56] "Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of the officer and the subject leading up to the use of deadly force. *See*, CA Penal Code section 835a(e)(3)

resistance or threat.

30. Whether or not the suspect poses an immediate threat to the safety of the officer or others is the most important of the *Graham* and *Garner* factors. There must be objective factors to justify an immediate threat, as a simple statement by an officer that he fears for his safety or the safety of others is insufficient. There is no requirement that a police officer wait until a suspect inflicts harm to confirm that a serious threat of harm exists, but merely a subjective fear or a hunch will not justify the use of force by police.[57]

31. Police officers are trained, to use deadly force, there must be an immediate threat of death or serious bodily injury. An officer's perception that a threat exists is reasonable when the officer has reason to believe that an individual has the ability, opportunity, and intent to cause harm.[58] Ability means the individual's physical capability to cause an identifiable type of harm. Opportunity refers the environment and situation, specifically with regard to the individual's proximity to the potential target were targets. And demonstratable intent refers to the individual's perceived mental state, their apparent desire to cause physical harm the target or targets.

32. Where ability and opportunity may be relatively easy for an officer to diagnose based on readily observable physical characteristics, demonstratable intent is more complicated. Because police officers, like everyone else, lack the ability to divine another's intentions by peering into their mind, officers must rely on behavioral indicators and physical manifestations indicative of intent. For example, lunging at an officer with a knife is a clear physical manifestation of the intent to stab the officer. In contrast, an individual who is merely conversing with an officer while standing next to a knife block in a kitchen does not present any physical behaviors from which an officer could identify an intent to use a knife aggressively. Nor is walking toward an officer. Nor is failing to obey an officer's commands. Nor is merely possessing a weapon.[59]

33. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.[60]

34. The objective video evidence speaks for itself, showing that Mr. Gonzalez never pointed a gun at any officer or person. Mr. Gonzalez was looking forward and away from the

---

[57] *See*, "National Consensus Policy and Discussion Paper on the Use of Force," IACP (Revised July 2020) https://www.theiacp.org/sites/default/files/2020-07/National_Consensus_Policy_On_Use_Of_Force%2007102020%20v3.pdf; POST LD 20, Hemet Police Department policy section 300 (COH001214-1222); and, CHP Use of Force policy (STATEOFCALIFORNIA 001592-1613).
[58] *See*, Hemet Police Department policy section 300.4; CA Penal Code section 835a; CHP Use of Force Policy (STATEOFCALIFORNIA 001595).
[59] Seth W. Stoughton, Jeffrey J. Noble, and Geoffrey P. Alpert, EVALUATING POLICE USES OF FORCE, New York University Press (2020) at 35.
[60] *See*, POST LD 20 at 4-7; CA Penal Code section 835a(e)(2).

19

officers, and had put his hand down, then after taking approximately six steps forward, the officers began to open fire. Several shots were fired while Mr. Gonzalez was on his feet moving away from the officers, not looking back and not pointing a gun at the officers. Several more shots were fired as Mr. Gonzalez was falling to the ground, including after he had already dropped the gun. Finally, over ten shots were fired while Mr. Gonzalez was on his knees and lying on the ground and unarmed. Under these facts alone, no reasonable officer would believe that Mr. Gonzalez was an immediate threat of death or serious bodily injury to any officer or person. Mr. Gonzalez never had the requisite present ability, opportunity, or apparent intent to immediately cause death or serious bodily injury to any person or officer. Therefore, it is my opinion that all shots fired were excessive, objectively unreasonable and inconsistent with generally accepted police practices, including POST. It is not acceptable or justifiable to use deadly force against a person while running away, even with a gun in hand, under these circumstances, and especially not while the person is unarmed and on the ground.

*Sergeant Reynoso*

35.    Sergeant Reynoso said he saw Mr. Gonzalez produce a handgun as he was looking back to the left and he believed that Mr. Gonzalez was getting ready to engage in a gun fight with the officers. Sergeant Reynoso said as he was drawing his handgun from his holster, he heard a "pop"[61] and believed that Mr. Gonzalez was shooting at the other officers,[62] so he fired his handgun at Mr. Gonzalez.[63]

36.    Here, Sergeant Reynoso's uses of deadly force were excessive, objectively unreasonable, and inconsistent with generally accepted police practices. Sergeant Reynoso used deadly force because he saw Mr. Gonzalez in possession of a handgun, he said that Mr. Gonzalez was looking back toward the officers, and he heard a gunshot and believed that Mr. Gonzalez had fired his handgun. Sergeant Reynoso never said that he saw Mr. Gonzalez point his handgun at anyone, or that he was raising the handgun as though he were about to point the gun. Mr. Gonzalez never fired any rounds from the gun and the shot that he heard was fired by another police officer, not Mr. Gonzalez. Moreover, the video analysis shows that Mr. Gonzalez was running away from the officers when he was shot and he was not looking back toward the officers or raising the handgun in their direction.[64]

37.    Sergeant Reynoso said Mr. Gonzalez presented an imminent threat of death or serious bodily injury during the foot pursuit the moment he presented a firearm, although he was not an imminent threat when he exited his vehicle.[65] Sergeant Reynoso said Mr. Gonzalez presented an imminent threat even if he did not turn or look at him because of

---

[61] COH00118.
[62] COH00121.
[63] COH00118.
[64] Officer Sobaszek and Reynoso BWC – Side by side with graphics.
[65] Reynoso deposition at 32.

the woman and children in danger at the home; the perception that he was armed during the vehicle pursuit; Mr. Gonzalez's erratic driving and evading officer during the vehicle pursuit; and because he was running through an occupied business.[66] A reasonable police officer would not believe that Mr. Gonzalez presented an imminent threat of death or serious injury in these circumstances.  Mr. Gonzalez was no longer at the home, and the women and children were not in danger, the vehicle pursuit had concluded, and Mr. Gonzalez was fleeing on foot.  Indeed, Sergeant Reynoso acknowledged that he had been trained he could not shoot someone who was merely armed with a handgun.[67]

38.  Finally, Sergeant Reynoso said he drew a "line in my head" that Mr. Gonzalez was not going to enter the occupied warehouse because he is a danger and he may take people hostage or harm someone.  Sergeant Reynoso said when the firearm became visible, he could not allow Mr. Gonzalez to enter the building and potentially take anyone hostage or cause them great bodily injury or harm.[68] Any reliance that Sergeant Reynoso places on possible future actions of Mr. Gonzalez for his uses of deadly force are unreasonable. Police officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

*Officer Irick*

39.  Officer Irick said Mr. Gonzalez was not running "normal," and he was holding his waist. Officer Sobaszek told Mr. Gonzalez to stop, get on the ground, and "You're going to get shot."[69] Officer Irick said Mr. Gonzalez "raises the right gun. He by -- use -- uses his right arm, He raises a black, semi-automatic handgun, and he looks over his shoulder and says something to the effect that I'm going to do it. I'll do it."  Officer Irick said he yelled, "Drop it," then took two more paces, drew his handgun, and fired several shots at Mr. Gonzalez.[70] Officer Irick also said, "my thoughts two-fold. He's going to -- he -- you know, he produced -- he has a weapon. He -- he produced it. He made a direct threat. He's going to turn and shoot us, and if he doesn't, he' s going into that building, and he -- he's going to barricade. He -- he's already shown reckless indifference for the public, and he's going to barricade, and it's going to be a hostage situation, and now everybody -- I mean , every body's life 's been in danger from the jump, you know, from -- from when he initially barricaded, and there's females -- women in the house surrounded by a sea of guns -- looking for a peaceful resolution. He -- he doesn't care."[71]

---

[66] Reynoso deposition at 46-48.
[67] Reynoso deposition at 33.
[68] Reynoso deposition at 53.
[69] COH00145.
[70] COH00146.
[71] COH00155.

40.    Officer Irick said Mr. Gonzalez was turning to his right and looking over his left shoulder, and he had the gun in his right hand.[72]  Officer Irick said Mr. Gonzales did not turn to his left.[73]  Officer Irick said when he began firing his handgun, Mr. Gonzalez "wasn't facing me in a shooting stance, but the direction of the firearm in his right hand was tending to show back towards my direction."[74]  Officer Irick said he does not know if Mr. Gonzalez's gun was ever pointed at him when he was shooting at Mr. Gonzalez.[75]

41.    Officer Irick's uses of deadly force against Mr. Gonzalez was excessive, objectively unreasonable and inconsistent with generally accepted police practices.  Officer Irick said he used deadly force because Mr. Gonzalez raised his handgun and said something to the effect of 'I'll do it," causing Officer Irick to believe Mr. Gonzalez was going to shoot at him or the other officers.  Officer Irick said he believed that Mr. Gonzalez may turn and shoot at the officers, or that he would go inside the business and take hostage. Officer Irick formed his basis for using deadly force on possible future actions of Mr. Gonzalez rather than an imminent threat of death or serious bodily injury.  Any reliance that Officer Irick places on possible future actions of Mr. Gonzalez for his uses of deadly force are unreasonable.  Police officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed. Moreover, the video analysis shows that Mr. Gonzalez was running away from the officers when he was shot and he was not looking back toward the officers or raising the handgun in their direction.[76]

*Officer Sobaszek*

42.    Officer Sobaszek said he saw that Mr. Gonzalez's left hand was swinging as he ran, but his right hand was in his waistband area as though he were holding something that he believed may be a gun.  As he was running, Mr. Gonzalez said, "I got something," or "I have something," and "You better stop.  Back up."  Mr. Gonzalez then raised his right hand holding a handgun.  Officer Sobaszek said Mr. Gonzalez raised the handgun as he was still running forward and was looking over his left shoulder.[77]  Officer Sobaszek said he could see people through a window inside the business, and he believed that Mr. Gonzalez had the present ability to hurt him or his partners, and he was running toward people inside the business, so he shot his handgun at Mr. Gonzalez and Mr. Gonzalez fell to the ground.[78] Officer Sobaszek said he does not recall if he gave Mr. Gonzalez any

---

[72] Irick deposition at 45.
[73] Irick deposition at 56.
[74] Irick deposition at 73.
[75] Irick deposition at 73-74.
[76] Officer Sobaszek and Reynoso BWC – Side by side with graphics.
[77] COH00202.
[78] COH00203.

22

commands after he saw the gun.[79]

43.  Here, Officer Sobaszek did not articulate an immediate threat of death or serious bodily injury to himself or anyone else.  Rather, he said he used deadly force because he feared that Mr. Gonzalez may do something in the future.  While Officer Sobaszek describes that Mr. Gonzalez had both the ability (he possessed a handgun), and the opportunity (he had the handgun in his hand) during the foot pursuit, Officer Sobaszek does not provide information that Mr. Gonzalez had the intent to cause harm as he was running away from the officers and he did not make a motion as though he were going to point the gun toward the officers or anyone else.  Indeed, the video analysis shows that Mr. Gonzalez was running away from the officers when he was shot and he was not looking back toward the officers or raising the handgun in their direction.[80]  Thus, Officer Sobaszek's use of deadly force was excessive, objectively unreasonable and inconsistent with generally accepted police practices.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Rancho Santa Margarita, CA.

_____                 _____
Jeffrey J. Noble                                                              Date     12/4/25

---

[79] COH00214.
[80] Officer Sobaszek and Reynoso BWC – Side by side with graphics.

# Washington
# JEFFREY J. NOBLE

Rancho Santa Margarita, CA 92688

Telephone: (949) 279-4678
*Email:* jeffnoble@cox.net
www.policeconduct.net

## EXPERIENCE

*CONSULTANT/EXPERT WITNESS* (2005 – Present)

Provide consulting and expert witness services on a wide range of law enforcement and personnel issues including misconduct, corruption, use of force, workplace harassment, pursuits, police administration, training, police operations, criminal and administrative investigations, interviews and interrogations, civil rights violations, police procedures, and investigations.

*FEDERAL COURT APPOINTED MONITOR*

Santa Clara, California, Sheriff's Department (March 2019 – present)

Review of policies, procedures and use of force applications in the Santa Clara County Jails as part of a federal court consent decree in the matter of *Chavez v. County of Santa Clara*.

*DEPUTY CHIEF OF POLICE* (April 2014 – January 2015)

Westminster Police Department, California
(Sworn 87; Civilian – 40; Population- 91,377; 10 sq. mi.)

Served as an interim Deputy Chief of Police to review Internal Affairs, auditing processes, department policies and procedures, risk management and to facilitate the efforts of a new external oversight agency.

*DEPUTY CHIEF OF POLICE* (September 1984 – July 2012)

Irvine Police Department, California
(Sworn – 205, Civilian – 100; Population: 217,000; 70 sq. mi.)

Served as a Patrol Officer, Narcotics Detective, Traffic Detective, Training Sergeant, SWAT sergeant and Commander, Internal Affairs, Sergeant, Lieutenant, Commander and Deputy Chief of Police.  As the Deputy Chief of Police, I was responsible for all operations of the Irvine Police Department including Patrol, Traffic and Investigations.

# JEFFREY J NOBLE

## EDUCATION

*Western State University, College of Law* (Irvine, California)
J.D. *with honors*, 1993.
Assistant Editor, Consumer Law Journal.  California State Bar, 1994, #170911.

*California State University at Long Beach*
B.A. Criminal Justice, 1989

*Senior Management Institute for Police*
Police Executive Research Forum.  Boston University, Boston, Massachusetts, 2002

## PUBLICATIONS

### Books:

Stoughton, S., Noble, J. and G. Alpert, *Evaluating Police Uses of Force*, New York University Press (2020).
Noble, J., and G. Alpert, *Managing Accountability Systems for Police Conduct: Internal Affairs and External Oversight*.  Prospect Heights, IL. Waveland Press (2008).

### Book Chapters:

Alpert, G., J. Noble and J. Rojek, *Solidarity and the Code of Silence,*  Dunham, R. and G. Alpert (Eds.).  Critical Issues in Policing: Contemporary Readings.  Prospect Heights, IL, Waveland Press.  Seventh Edition (2015).
Noble, J., and G. Alpert, *State Created Danger: Should Police Officers be Accountable for Reckless Tactical Decision Making?* (Updated) Dunham, R. and G. Alpert (Eds.). Critical Issues in Policing: Contemporary Readings.  Prospect Heights, IL, Waveland Press.  Seventh Edition (2015).
Noble, J., and G. Alpert, *State Created Danger: Should Police Officers be Accountable for Reckless Tactical Decision Making?* Dunham, R. and G. Alpert (Eds.).  Critical Issues in Policing: Contemporary Readings.  Prospect Heights, IL, Waveland Press.  Sixth Edition (2009).

# JEFFREY J NOBLE

*Articles:*

Alpert, Geoffrey, Jeff Noble, Seth Stoughton, *Evaluating the Police Shooting of Ashli Babbitt,* Lawfare (Sept. 2021)

Stoughton, S., Noble, J., and Alpert, G., *How to Actually Fix America's Police*, The Atlantic (June 2020)

Stoughton, S., Noble, J., and Alpert, G., *George Floyd's death shows exactly what police should not do,* The Washington Post (May 29, 2020)

Stoughton, S., Alpert, G. and Noble, J., *Why Police Need Constructive Criticism*, The Atlantic (December 23, 2015)   http://www.theatlantic.com/politics/archive/2015/12/officer-porter-mistrial-police-culture/421656/

Stoughton, S., Noble, J. and Alpert G., *Better Information is the Key to Policing Reform,* The Atlantic, (September 24, 2015) http://www.theatlantic.com/politics/archive/2015/09/better-information-is-the-key-to-policing-reform/406696/

Noble, J., *Rethinking Tactical Team Warrant Entries*, The Tactical Edge (Summer 2014).

Noble, J. *Assessing Police Discretion,* The Journal of California Law Enforcement (Vol. 47, No. 4, 2013).

Noble, J. and G. Alpert, *Criminal Interrogations of Police Officers After Use-of-Force Incidents,* FBI Law Enforcement Bulletin (September 2013).

Noble, J. and G. Alpert, *What Do We Really Know About American Policing?* The Journal of California Law Enforcement (Vol. 47, No. 1, 2013).

Noble, J., *Do I Need A SWAT Team?  Threat Assessments for Warrant Services*, The Tactical Edge (Winter 2013).

Alpert, G., J. Rojek and J. Noble, *The Cognitive Interview in Policing: Negotiating Control*. ARC Centre of Excellence in Policing and Security: Briefing Paper, Australian Government Research Council (June 2012).

Noble, J. and G. Alpert, *Evaluating the Quality of Law Enforcement Investigations: Standards for Differentiating the Excellent, Good and Reasonable, From the Unacceptable*.  The Journal of California Law Enforcement (Vol. 46, No. 1, 2012)

Noble, J., *Police Explorers: Protecting a Valued Asset.* The Journal of California Law Enforcement (Vol. 45, No. 3, 2011).

Noble, J., and G. Alpert, *Lies, True Lies and Conscious Deception: Police Officers and the Truth*.  Police Quarterly, Volume 12, Number 2 (June 2009).

Noble, J., Assessing *Witness Credibility*.  International Association of Chiefs of Police, Training Key #597 (2006).

Noble, J., Albertsons *Homicide: An Active "Shooter" Response*, The Tactical Edge (Fall 2004).

Noble, J., Police *Officer Truthfulness and the <u>Brady</u> Decision*, Police Chief Magazine (October 2003).

Noble, J., *The Boomerang Employee – What to do When a Fired Employee Comes Back*, The Journal of California Law Enforcement (Volume 37, No. 1, 2003).

## JEFFREY J NOBLE

Noble, J., Why *Appearance Matters*, Network – California Peace Officers' Association Newsletter (August 2001).

Noble, J., *Tactical Team Basics: Warrants*, The Tactical Edge (Summer 2000).

Noble, J., Encouraging *Interaction*, Minnesota Cities Magazine (Volume 84, Issue 11, November 1999).

Noble, J., *Neighborhood Watch Evolves Into Community Engagement Tool in Irvine*, Community Policing Consortium.  www.communitypolicing.org/publications/artbytop/w6/w6noble.htm (October 1999).

Noble, J., Childhood Experiences Find a Place in Today's Public-Safety Strategies, Community Links (Ph. VI, No.3, Issue 9 - Summer 1999).

Noble, J., *Police Pursuits: Law Enforcement or Public Safety?* The Journal of California Law Enforcement (Volume 33, No.1, 1999).

Noble, J., *Alternative Work Schedules can be an Evolution of Team Policing*, Network - California Peace Officers' Association Newsletter (December 1998).

Noble, J., *Continuing Police Training: The Interactive Multimedia Approach*, The Journal of California Law Enforcement (Volume 29, No.1, 1995).

Noble, J., *Environmental Advertising Claims: "Ozone Friendly"* Consumer Protection, 2 W. St. U. Consumer L.J. 95 (1993).

## SELECTED PROFESSIONAL ACTIVITIES

*Peer Review* – "Risk and Public Judgments on Police Pursuits: A Nationally Representative Conjoint Experiment," Police Quarterly (August 2025)

*Peer Review* – Law Enforcement Dog Encounters Training Toolkit for Law Enforcement, DOJ, Office of Community Oriented Policing Services, COPS, (December 2018)

*Presenter* – Developing or Revitalizing an Internal Affairs Unit.  Public Agency Training Council: Internal Affairs Conference (December 2014)

*Presenter* – Addressing Police Misconduct: Standards to Consider.  The International Association of Chiefs of Police Annual Conference (October 2014).

*Presenter* – Reducing Traffic-Related Officer Injuries and Deaths.  The International Association of Chiefs of Police Annual Conference in Orlando, Florida (October 2014).

*Participant* – Reducing Violence and Improving the Rule of Law: Organized Crime, Marginalized Communities, and the Political Machine.  Carnegie Endowment for International Peace. Washington, D.C. (September 2014)

*Presenter* – Preventing Corruption in Police Institutions.  Police Accountability in Democracies: First International Congress on Police Internal Affairs. Los Cabos, Baja California Sur, Mexico (October 2013).

*Presenter* – Testilying: Lies, True Lies, and Conscious Deception: Police Officers' Truth and the Brady Decision. American Psychological Association Annual Conference in Honolulu, Hawaii (July 2013).

*Presenter* – Police Misconduct Issues: Police Explorers and Reasonableness of Internal Affairs Investigations, The International Association of Chiefs of Police Annual Conference in San

## JEFFREY J NOBLE

Diego, California (October 2012).

*Peer Review* – Building and Enhancing Criminal Justice Researcher-Practioner Partnerships, National Institute of Justice (June 2012).

*Committee Chairperson* – California Peace Officers' Association Communications Sub-Committee. Responsible for publication of the Journal of California Law Enforcement (Jan. 2012)

*Presenter* – The Lying Police Officer: Is Any Deception Acceptable?  With Karen Kruger.   The International Association of Chiefs of Police Annual Conference in Denver, Colorado (Nov. 2009).

*Presenter* – State-Created Danger: Should Police Officers be Accountable for Reckless Tactical Decision Making?  The Academy of Criminal Justice Sciences Annual Meeting in Boston, Massachusetts. (March 2009).

*Committee Chairperson* – Major Cities Chiefs of Police Task Force in Internal Affairs. Los Angeles, California (2005-2008).

*Peer Review* – Boston Police Department: Enhancing Cultures of Integrity Technical Assistance Guide, Office of Community Oriented Policing Services #TDL 2008-371 (July 2008)

*Peer Review* – Undocumented Immigrants in U.S./Mexico Border Counties: The Cost of Law Enforcement and Criminal Justice Services, National Institute of Justice #TDL 2008- 321 (December 2007).

*Presenter* – Truth or Consequences: Dealing with the Deceitful Police Officer, with Jeffrey Schlanger and Michael Stone, The International Association of Chiefs of Police Annual Conference, Los Angeles, California (November 2004).

*Presenter* - Albertsons Homicide: An Active "Shooter" Response, The California Association of Tactical Officers Annual Conference, Palm Springs, California (September 2004).

*Presenter* – Boomerang Employees, COPS Conference, Washington, D.C. (2002).

## PROFESSIONAL AFFILIATIONS

*California Peace Officers' Association* – Chair, Communications Sub-Committee (2012 – 2018)
*Police Executive Research Forum*
*International Association of Chiefs of Police*
*National Tactical Officers' Association*
*Special Olympics Torch Run* Southern California Region, Assistant Director (1997 – 2012)

## CONSULTING/EXPERT WITNESS

2026   Gonzalez v. Hemet, (Plaintiff) (Expert Report)
       Officer Involved Shooting
       Marcel Sincich, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367

2025   Maccani v. Los Angeles (Plaintiff) (Expert Report)
       Officer Involved Shooting

# JEFFREY J NOBLE

Eric Valenzuela, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367

2025    Wilder v Lafayette Police Department, LA (Plaintiff) (Expert Report)
Use of Force
Adrian M. Simm, Jr., Unglesby & Macy, LLC, 607 St. Charles Ave., Ste. 300, New Orleans, LA 70130

2025    Washington v City of Gardena (Defense) (Arbitration)
Use of Force
Scott Tiedemann, Liebert Cassidy Whitmore, 6033 W. Century, Blvd., Fifth Floor, Los Angeles, CA 90045

2025    Estate of Jones v. City of Lumberton, North Carolina (Plaintiff) (Expert Report)
Officer Involved Shooting
Cate Edwards, Edwards Beightol, 1033 Oberlin Road, Suite 100, Raleigh, North Carolina 27605

2025    Quan v. Los Angeles County Sheriff's Department (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Hang Le, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367

2025    Ockinga v. City of Cheyenne, WY (Plaintiff) (Expert Report)
Use of Force
Devon Petersen, Fleener & Petersen, 506 S. 8th Street, Laramie, WY 82070

2025    Stanton v City of Portland (Defense) (Expert Report)
Officer Involved Shooting
Carey Caldwell, Senior Deputy City Attorney, Portland Office of the City Attorney, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204

2025    Lemagne v. Fairfax County Police, VA (Plaintiff) (Expert Report)
Officer Involved Shooting
Victor M. Glasberg & Associates, 121 S. Columbus Street, Alexandria, VA 22314

2025    Baxter v. Hardy (Hill County Sheriff, TX) (Plaintiff) (Expert Report)
Use of Force
David James, Edwards Law, 603 W. 17th St.,Austin, Texas 78701

2025    Chavira v West Covina (Plaintiff) (Expert Report)
Failure to Provide Medical Aid
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660

2025    DB v. City of Stockton (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
T. Kennedy Helm, IV,  Helm Law Office, PC, MacArthur Annex, 644 40th Street, Suite 305, Oakland, CA 94609

2025    Randolph v Chicago (Defense) (Expert Report)
*Monell* Allegations
Dan Nolan, Burns Noland LLP, 311 S Wacker Drive, Suite 5200, Chicago IL 60606

2025    Johnson v Fairfax County Police (Plaintiff) (Expert Report)

## JEFFREY J NOBLE

Officer Involved Shooting
Victor M. Glasberg & Associates, 121 S. Columbus Street, Alexandria, VA 22314

2025    Simpson v Loma Linda Hospital (Plaintiff) (Deposition) (Trial)
Use of Force
Jeremy Jass, Balaban & Spielberger, LLP, 1999 San Vicente Boulevard, Ste.345 Los Angeles, CA 90049

2025    Gardner v Newton (Plaintiff) (Deposition)
Officer Involved Shooting
John A. Picerno, 2526 Holmes Street, Kansas City, Mo. 64108

2025    Su v. Seattle (Defense) (Deposition)
Allegation of Vehicle Pursuit
Janay Ferguson, Seattle City Attorney's Office, Civil Division, 701 Fifth Avenue, Suite 2050, Seattle, WA 98104-7095

2025    Pacheco v. Safariland (Plaintiff) (Expert Report)
Police Tactics
Brett Norris, Fox Law, 201 Lomas Santa Fe Dr., Suite 420, Solana Beach, CA 92075

2025    Sims and Lindsey v City of Chicago (Defense) (Expert Report)
*Monell* Allegation
Daniel Nolan, Burns Noland LLP, 311 S Wacker Drive, Suite 5200, Chicago IL 60606

2025    Diaz Cruz v. USA, (Plaintiff) (Expert Report)
Officer Involved Shooting
Gabriel P. Harvis, Partner / Co-Chair, Civil Rights Division, Elefterakis, Elefterakis & Panek 80 Pine Street, 38th Floor, New York, NY 10005

2025    Blanchard v. County of Los Angeles, et. al. (Plaintiff) (Expert Report) (Deposition)
Use of Force
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660

2025    Puckett v. County of Sacramento (Plaintiff) (Expert Report) (Deposition)
*Monell* allegation
Chelsea Wein, Simpson Thacher & Bartlett LLP, 2475 Hanover Street, Palo Alto, CA 94304

2025    Mackie v Santa Cruz County Sheriff's Department (Plaintiff) (Expert Report) (Deposition)
Police Created Danger
John Burton, The Law Offices of John Burton, The Marine Building, 128 North Fair Oaks Avenue, Pasadena, California 91103

2025    Hensley v. Teets, et. al. (Plaintiff) (Expert Report) (Deposition)
Use of Force
Cate Edwards, Edwards Beightol, 1033 Oberlin Road, Suite 100, Raleigh, North Carolina 27605

2025    Kirsch v City of Austin (Plaintiff) (Expert Report)
Use of Force
Rebecca Webber, Hendler Flores Law, 901 S. MoPac Expressway, Bldg 1, Suite 300, Austin, TX 78746

2025    Medel v City of Austin (Plaintiff) (Expert Report)

Updated December 4, 2025

# JEFFREY J NOBLE

Officer Involved Shooting
David James, Edwards Law, 603 W. 17th St.,Austin, Texas 78701

2025    Ciccarelli v. County of Riverside (Plaintiff) (Expert Report)
Arrest and Use of Force
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660

2025    Jones v Archuleta (Defense) (Expert Report)
Use of Deadly Force
Kerri Booth, Adams County Attorney's Office, 4430 South Adams County Parkway, Suite C5000B, Brighton, CO 80601-8206

2025    Opbroek v. City of Portland (Defense) (Expert Report)
*Monell* claim training and accountability
Mike Porter and Caroline Turco, Portland Office of the City Attorney,1221 SW Fourth Avenue, Room 430, Portland, OR 97204

2025    Schaffer v Thurston County, WA (Plaintiff) (Deposition)
Vehicle Pursuit
Michael Fisher, Rush, Hannula, Harkins & Kyler, 4701 S. 19th St., Tacoma, WA 98405

2025    Cavicante v LAPD (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Rodney Diggs, Ivie McNeill Wyatt Purcell & Diggs, 444 South Flower Street, Suite 3200, Los Angeles, CA 90071

2024    Koutantos v. County of Los Angeles (Plaintiff) (Expert Report) (Deposition)
High-Risk Car Stop
Brian Olney, Hadsell, Stormer, Renick & DAI, LLP, 128 N. Fair Oaks Ave., Pasadena, California 91103

2024    Lerum v. City of Seattle (Defense) (Expert Report)
Allegation of Vehicle Pursuit
Rebecca Widen, Seattle City Attorney's Office, Civil Division, Constitutional & Complex Litigation, 701 Fifth Avenue, Suite 2050, Seattle, WA 98104-7095

2024    White v. City of Chicago (Defense) (Expert Report) (Deposition)
*Monell* Allegation
Daniel Nolan, Burns Noland LLP, 311 S Wacker Drive, Suite 5200, Chicago IL 60606

2024    Ortiz v. Trinity County (Plaintiff) (Expert Report)
Civil Standby
Benjamin Mainzer, Law Office of Benjamin Mainzer, A.P.C., 305 K Street, Eureka, CA 95501

2024    Otero v. City of Stockton (Plaintiff) (Deposition)
Vehicle Pursuit
Steven Brady, Brady Law Group, 1015 Irwin Street, San Rafael, CA 94901

2024    Carter v. City of Chicago (Defense) (Expert Report)
*Monell* Allegation
Daniel Nolan, Burns Noland LLP, 311 S Wacker Drive, Suite 5200, Chicago IL 60606

2024    Lopez v. Manhatten Beach (Plaintiff) (Deposition)

# JEFFREY J NOBLE

Use of Force
Denisse Gastelum, Gastelum Law, APC, 3767 Worsham Ave., Long Beach, CA 90808

2024 <u>Wallis v. County of Riverside</u> (Plaintiff) (Deposition)
Officer Involved Shooting
Christian Contreras, 360 E. 2nd St., 8th Floor, Los Angeles, CA 90012

2024 <u>Whaling v. County of Riverside</u> (Plaintiff) (Expert Report)
Use of Force
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660

2024 <u>Gipson v. City of Chicago</u> (Defense) (Expert Report) (Deposition)
*Monell* Allegations
Daniel Nolan, Burns Noland LLP, 311 S Wacker Drive, Suite 5200, Chicago IL 60606

2024 <u>Coronel v. City of San Bernardino</u> (Plaintiff) (Expert Report)
Unreasonable Investigation and Arrest
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660

2024 <u>Townsend v. Portland</u> (Defense) (Trial)
Officer Involved Shooting
Naomi Sheffield, Senior Deputy City Attorney, Portland Office of the City Attorney, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204

2024 <u>Jones v. St. Mary-Corwin Hospital</u> (Plaintiff) (Expert Report) (Deposition) (Trial)
Use of Force
Michael Harris, Jordan Law, 5445 DTC Parkway, Suite 1000, Greenwood Village, Colorado 80111

2024 <u>Olson v. Escondido</u> (Defense) (Expert Report)
Officer Involved Shooting
Keith Phillips, Assistant City Attorney, City Attorney's Office, City of Escondido

2024 <u>Baker-Glenn v. City of Chicago</u> (Defense) (Expert Report)
Monell allegations
Daniel Nolan, Burns Noland LLP, 311 S Wacker Drive, Suite 5200, Chicago IL 60606

2024 <u>Doe v. Vanderpool</u> (Plaintiff) (Expert Report) (Deposition)
Sexual Assault by Police Officer
Jack Preis, Professor of Law, University of Richmond School of Law

2024 <u>Cortez v. USC</u> (Plaintiff) (Expert Report) (Deposition) (Trial)
Use of Force
Kaveh Navab, Navab Law, 13160 Mindanao Way, Ste. 280, Marina Del Rey, CA 90292

2024 <u>Gonzales v. Austin</u> (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Donald Puckett, Devlin Law Firm, LLC, 1526 Gilpin Ave.,Wilmington, DE 19806

2024 <u>Flores v. Austin</u> (Plaintiff) (Expert Report)
Use of Force
David James, Edwards Law, 603 W. 17th St.,Austin, Texas 78701

2024 <u>Nguyen v County of Orange</u> (Plaintiff) (Expert Report)

# JEFFREY J NOBLE

Officer involved shooting
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660

2024    Smith v. City of Bakersfield (Plaintiff) (Expert Report) (Deposition) (Trial)
Use of Force
Brian Bush, 4695 MacArthur Court, 11th Floor, Newport Beach, CA 92660

2024    Corado v LAPD (Plaintiff) (Deposition)
Officer Involved Shooting of Innocent Bystander
Neil Gehlawat, Taylor Ring, 1230 Rosecrans Ave., Suite 360, Manhattan Beach, CA 90266

2024    Sillah v. City of Madison (Plaintiff) (Expert Report) (Deposition)
Failure to Search and Provide Medical Care
Thomas C. Lenz, First, Albrecht & Blondis, S.C., 158 N. Broadway, Suite 600, Milwaukee, WI 53202

2024    Lowrie v. County of Riverside (Plaintiff) (Expert Report) (Deposition)
Use of Force
Christian Contreras, 360 E. 2nd St., 8th Floor, Los Angeles, Ca 90012

2024    Johnson v City of Austin (Plaintiff) (Expert Report)
Use of Force
David James, Edwards Law, 603 W 17th St., Austin, Texas 78701

2023    Scott v. Riverside County (Plaintiff) (Expert Report)
Use of Force
Jeremy Jass, Jass Law, 4340 Von Karman Avenue, Suite 100, Newport Beach, CA 92660

2023    Pizarro v. City of San Diego (Plaintiff) (Deposition)
Failure to Reasonably Investigate
Deborah Chang, Chang, Klein, LLP, 126 Lomita Street, El Segundo, CA 90245

2023    Maysonet v. City of Chicago (Defense) (Expert Report) (Deposition)
Monell Allegations
Theresa Carney, Rock Fusco & Connelly, LLC, 333 W. Wacker Drive, 19th Floor Chicago, Illinois 60606

2023    Waddy v. City of Chicago (Defense) (Deposition)
Monell Allegations
Dan Nolan, Reiter Burns, 311 S. Wacker, 5200, Chicago, IL 60606

2023    Corona v. City of Fontana (Plaintiff) (Expert Report) (Deposition)
High-Risk Car Stop
Brian Olney, Hadsell, Stormer, Renick & DAI, LLP, 128 N. Fair Oaks Ave., Pasadena, California 91103

2023    Richards v. City of Tucson (Plaintiff) (Expert Report)
Officer Involved Shooting
John H. Bradley, Strang Bradley LLC, 613 Williamson St, Suite 204, Madison WI 53703

2023    Stephenson v CHP (Plaintiff) (Expert Report) (Deposition) (Trial)
Use of Force
Nicholas Lerman, Steven A. Lerman and Associates, LLC, 6033 West Century Blvd., Suite 740

Updated December 4, 2025

## JEFFREY J NOBLE

Los Angeles, CA 90045

2023  Cikes v San Leandro (Plaintiff) (Expert Report)
Use of Force
David M. Helbraun, Helbraun Law Firm, 220 Montgomery Street, Suite 1100, San Francisco, CA  94104

2023  Sullivan v. Buena Park (Plaintiff) (Deposition) (Trial)
Officer Involved Shooting
Bobby Reagan, Dordick Law, 1122 Wilshire Blvd., Los Angeles, CA 90017

2023  Osage v. Borough of State College (Plaintiff) (Expert Report)
Use of Force
Andrew Celli, Emery, Celli, Brinckerhoff, Abady, Ward &Maazel, 600 Fifth Ave., 10th Floor, New York, NY 10020

2023  Keup v. Sarpy County, Nebraska (Plaintiff) (Expert Report)
Use of Force
Brain Fahey, Fraser Stryker PC LLO, 500 Energy Plaza, 409 South 17th Street, Omaha, NE 68102

2023  Gibson v. City of Chicago, (Defense) (Expert Report) (Deposition)
Monell Allegation
Dan Nolan, Reiter Burns, 311 S. Wacker, 5200, Chicago, IL 60606

2023  Estevis v. City of Laredo, TX, ((Plaintiff) (Expert Report)
Officer Involved Shooting
David James, Edwards Law, 603 W 17th St., Austin, Texas 78701

2023  Settle v. Escambia County Sheriff, FL (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Eric Stevenson, Stevenson Klotz, 510 E. Zaragoza Street, Pensacola, FL 32502

2023  Crosby v. Colleton County Sheriff's Office (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Mullins McLeod, McLeod Law Group, 3 Morris Street, Suite A, Charleston, SC 29403

2023  Ramos v City of Austin (Plaintiff) (Expert Report)
Officer Involved Shooting
Rebecca Weber, Hendler Flores Law, 901 S. MoPac Expressway, Bldg 1, Suite 300, Austin, TX 78746

2023  People v Roedema (Defense) (Expert Report)
Criminal allegation of use of force by a police officer
Donald Sisson, 7100 E Belleview Ave. Suite 101, Greenwood Village, CO 80111

2023  Assiff v Los Angeles County Sheriff's Department (Plaintiff) (Expert Report)
Use of Force
Thomas M. Ferlauto, 25201 Paseo de Alicia, Suite 270, Laguna Hills, CA  92653

2023  Beltran v City of Austin (Plaintiff) (Expert Report)
David James, Edwards Law, 603 W 17th St., Austin, Texas 78701

2023  Espericueta v. Riverside County (Plaintiff) (Expert Report) (Deposition)

# JEFFREY J NOBLE

Officer involved shooting
Neil Gehlawat, Taylor & Ring, 1230 Rosecrans Ave., Suite 360, Manhattan Beach, CA 90266

2023   Talley/Rodriguez v. City of Austin (Plaintiff) (Expert Report)
Use of Force
Scott Hendler, Hendler Flores Law, 901 S. MoPac Expressway, Bldg. 1, Suite #300, Austin,
Texas 78746

2023   Sparks v City of Seattle (Defense) (Expert Report)
Reasonable Policies
Tara Gillespie, Seattle City Attorney's Office, Civil Division – Torts Section, 701 Fifth Avenue,
Suite 2050, Seattle, WA 98104-7095

2023   Perez v City of Fontana (Plaintiff) (Expert Report) (Deposition)
Detention and Interrogation
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660

2023   Augustus v LAPD, (Plaintiff) (Expert Report) (Deposition) (Trial) (Second Trial)
High Risk Car Stop Tactics
Brian Olney, Hadsell, Stormer, Renick & DAI, LLP, 128 N. Fair Oaks Ave., Pasadena,
California 91103

2023   Goodale v. San Antonio, (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Patrick Toscano, Toscano Law Firm, PC, 846 Culebra Rd. Suite 500, San Antonio, Texas 78201

2023   McLaughlin v. San Bernadino Sheriff's Department (Plaintiff) (Expert Report)
Officer Involved Shooting
Renée V. Masongsong, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310,
Woodland Hills, California 91367

2023   Parsa v. Lopinto (Plaintiff) (Expert Report) (Deposition)
Use of Force
Andrew C. Clarke, The Cochran Firm – Midsouth, One Commerce Square, Suite 1700,
Memphis, Tennessee 38103

2023   Sanders v. Austin (Plaintiff) (Expert Report)
Use of Force
Jeff Edwards, Edwards Law, 603 W 17th St., Austin, Texas 78701

2023   Armijo v. Adams County (Defense) (Expert Report)
Use of Force
Kerri A. Booth, Senior Litigation Attorney, Adams County Attorney's Office, 4430 South
Adams County Parkway, 5th Floor, Suite C5000B, Brighton, CO 80601

2022   Rodriguez v. Long Beach (Plaintiff) (Deposition) (Trial)
Search and Control Hold Tactics
Arnoldo Casillas, Casillas & Associates, 3777 Long Beach Blvd, Long Beach, CA 90807

2022   Bhandari v. National City (Plaintiff) (Expert Report) (Deposition)
Use of Force
John Burton, The Law Offices of John Burton, The Marine Building, 128 North Fair Oaks

# JEFFREY J NOBLE

Avenue, Pasadena, California 91103

2022  Huerta v. County of Tulare (Plaintiff) (Expert Report) (Criminal Trial Testimony) (Deposition)
Arrest and use of force
Doug Rochen, ACTS Law, 16001 Venture Blvd., Suite 200, Encino, CA 91436

2022  Bahadoran v. City of New York (Plaintiff) (Expert Report)
Officer Involved Shooting
Jonathan Abady, Emery, Celli, Brinckerhoff, Abady, Ward & Maazel, LLP, 600 Fifth Avenue at Rockefeller Center, 10th Floor, New York, NY 10020

2022  Underwood v. Austin (Plaintiff) (Expert Report)
Use of Force
Jeff Edwards, Edwards Law, 603 W 17th St., Austin, Texas 78701

2022  People v. Simmonds (Prosecution) (Grand Jury Testimony)
Officer Involved Shooting
Anti-Corruption & Civil Rights Division, Office of the Fulton County District Attorney, Atlanta Judicial Circuit, 136 Pryor Street SW| 3rd Floor, Atlanta, GA  30303

2022  Harder v. City of Seattle (Defense) (Expert Report) (Deposition)
Allegation of vehicle pursuit
Tara Gillespie, Seattle City Attorney's Office, Civil Division – Torts Section, 701 Fifth Avenue, Suite 2050, Seattle, WA 98104-7095

2022  Womble v. City of Durham (Defense) (Expert Report)
Allegation of False Conviction
Henry Sappenfield, Kenon Cracer, PLLC, 4011 University Drive, Suite 300, Durham, NC 27717

2022  Oshan v. District of Columbia, (Plaintiff) (Expert Report) (Deposition)
Vehicle Pursuit
Patrick Regan, Regan Zambri & Long, PLLC, 1919 M Street, N.W., Suite 350, Washington, DC 20036

2022  Denk v. City of Peoria, AZ (Defense) (Expert Report)
Officer Involved Shooting
Amanda C. Sheridan, Senior Assistant City Attorney, Civil Litigation, City of Peoria, City Attorney's Office, 8401 Monroe Street, Suite 280, Peoria, AZ 85345

2022  State of Missouri v. Prichard and Brummett (Prosecution) (Deposition)
Dion Sankar, Chief Deputy Prosecutor, Jackson County Prosecutor's Office, 415 E 12th Street Kansas City, Missouri 64106

2022  Ong v. City of Beverly Hills (Plaintiff) (Deposition)
Traffic Control
Stephen Johnson, Berglund and Johnson Law Group, 21550 Oxnard, Suite 900, Woodland Hills, CA 91367

2022  Kelley v. City of San Marcos, TX, (Plaintiff) (Expert Report)
Use of Force
Rebecca Webber, Hendler Flores Law, 901 S. MoPac Expressway, Building 1, Suite 300, Austin, TX 78746

## JEFFREY J NOBLE

2022    <u>Zelaya (Juarez Cedillo) v. LAPD</u> (Plaintiff) (Expert Witness) (Deposition) (Trial)
Use of Force
Miguel Flores, Carrillo Law Firm, LLP, 1499 Huntington Drive, Suite 402, South Pasadena, CA

2022    <u>Cullinan v. LAPD</u>, (Plaintiff) (Expert Report) (Deposition) (Trial)
Use of Force
Peter M. Williamson, Williamson Law Firm, 3200 Foothill Drive, Suite 4, Westlake Village, CA
91361

2022    <u>Jane AM v. LAPD</u>, (Plaintiff) (Expert Report) (Deposition) (Trial)
Detention and Use of Force
Laura Jimenez, Carrillo Law Firm, LLP, 1499 Huntington Drive, Suite 402, South Pasadena, CA
91030

2022    <u>People v. Reynolds, Crestview, FL</u>, (State) (Grand Jury)
Use of Force
Michelle G. Sandler, Assistant State Attorney, Felony Supervisor – Fort Walton Beach Office,
1804 Lewis Turner Boulevard, Fort Walton Beach, FL 32547

2022    <u>Aden v. City of Bloomington</u>, (Plaintiff) (Expert Report)
Officer Involved Shooting
Eva Rodelius, Wilson Law Group, 3019 Minnehaha Ave, Minneapolis, MN 55406

2022    <u>Jackson v. Nassau County</u>, (Plaintiff) (Expert Report) (Deposition)
Allegation of wrongful conviction
Gabriel P. Harvis, Esq., Elefterakis, Elefterakis & Panek, 80 Pine Street, 38th Floor, New York,
New York 10005

2022    <u>Baugus v. Newton</u> (Morrow County Sheriff's Department, Ohio), (Plaintiff) (Expert Report)
Creation of danger that led to death
Connie Gadell-Newton, Fitrakis & Gadell-Newton, LLC, 100 E. Main Street, Columbus, OH
43215

2022    <u>Rios v. LAPD</u>, (Plaintiff) (Expert Report)
High-Risk Car Stop
Toni Jaramilla, 1900 Avenue of the Stars, Suite 900, Los Angeles, CA 90067

2022    <u>Sloan v. Anderson County Sheriff, SC</u>, (Plaintiff) (Expert Report)
Officer Involved Shooting
Joshua Snow Kendrick, Kendrick & Leonard, P.C., 506 Pettigru Street, Greenville, SC 29601

2022    <u>Jones v. Dupage County Sheriff's Office</u>, (Defense) (Expert Report) (Deposition)
Officer Involved Shooting
Patrick R. Moran, Rock Fusco & Connelly, LLC, 321 N. Clark Street, Suite 2200, Chicago,
Illinois 60654

2022    <u>Brown v. Turbyfill</u> (Spotsylvania County Sheriff's Department, VA), (Plaintiff) (Expert Report)
Officer Involved Shooting
Mark J. Krudys, The Krudys Law Firm, PLC, Truist Place, 919 East Main Street, Suite 2020,
Richmond, VA  23219

2022    <u>Cruz v. Riverside County Sheriff's Department</u>, (Plaintiff) (Expert Report) (Deposition)

# JEFFREY J NOBLE

Use of Force
Steven Lerman, Steven A. Lerman and Associates, LLC, 6033 West Century Blvd., Suite 740
Los Angeles, CA 90045

2022    Yancy v. Tillman, Clayton County Police, GA, (Plaintiff) (Expert Report)
Entry and Use of Force
Tanya F. Miller, Dubose Miller, LLC, 75 14th Street NE, Suite 2110, Atlanta, GA 30309

2022    Penny v. LAPD, (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Shaleen Shanbhag, Hadsell, Stormer, Renick Dai LLP, 128 N. Fair Oaks Ave., Pasadena,
California 91103

2022    Herrera v. Austin, (Plaintiff) (Expert Report)
Use of force during demonstration
Jeff Edwards, Edwards Law, 603 W 17th St., Austin, Texas 78701

2022    Barragan v. LAPD, (Plaintiff) (Expert Report)
Positional Asphyxia
Dominique Boubion, Carrillo Law Firm, 1499 Huntington Drive, Suite 402, South Pasadena, CA
91030

2022    Sen v. Los Angeles, (Plaintiff) (Expert Report) (Deposition)
High-Risk Car Stop Tactics
Brian Olney, Hadsell, Stormer, Renick & DAI, LLP, 128 N. Fair Oaks Ave., Pasadena,
California 91103

2022    Ibarra v. Lee (Rogers County, OK), (Plaintiff) (Expert Report) (Deposition)
Officer involved Shooting
Dale Galipo, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills,
CA 91367

2022    Tate v. Chicago (Defense) (Expert Report)
*Monell* Allegations
Marion C. Moore, Chief Assistant Corporation Counsel, City of Chicago Department of Law
Federal Civil Rights Litigation Division, 2 N. LaSalle St., Suite 420, Chicago, Illinois 60602

2022    Lunneen v. Berrien Springs (Plaintiff) (Expert Report)
Use of Force
Noah W. Drew, Spence Lawyers, 15 S. Jackson Street, Jackson, WY 83001

2021    Carr v San Diego County Sheriff (Plaintiff) (Expert Report) (Deposition)
Use of Force
Joseph M. McMullen, Law Offices of Joseph M. McMullen, 501 W. Broadway, Suite 1510,
San Diego, CA 92101

2021    Mountford v. City of Santa Monica (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Jeremy D. Jass, 4340 Von Karman Avenue, Suite 100, Newport Beach, CA 92660

2021    State v. Dagas (Prosecution) (Trial Testimony)
Allegation of False Police Report

# JEFFREY J NOBLE

Judy Taschner, Deputy District Attorney, Special Operations Division, San Diego County District Attorney's Office, East County Regional Center, 250 E. Main Street, El Cajon, CA 92020

2021   Stickney v. City of Phoenix (Defense) (Expert Report)
Use of Force
Christina Retts, Wienenke Law Group, 1095 W. Rio Salado, #209, Tempe, AZ 85281

2021   Evans v City of Austin (Plaintiff) (Expert Report)
Use of Force
Jeff Edwards, Edwards Law, 603 W 17th St., Austin, Texas 78701

2021   Rennells v. Kenealy (Plaintiff) (Expert Report)
Use of Force
James End, First, Albrecht & Blondis, 158 N. Broadway, Suite 600 Milwaukee, WI 53202

2021   Johnson v Baltimore (Defense) (Expert Report)
*Monell* Allegations
Kara K. Lynch, Chief Solicitor, Baltimore City Department of Law, 100 N. Holliday Street, Room 101, Baltimore, Maryland 21202

2021   Brown v City of Chicago (Defense) (Expert Report) (Deposition)
*Monell* Allegations
Dan Nolan, Reiter-Burns, 311 S. Wacker, 5200, Chicago, IL 60606

2021   Gonzalez v. CHP (Plaintiff) (Expert Report) (Deposition)
Use of Force
Dale Galipo, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367

2021   Baney v City of Chapin (Plaintiff) (Expert Report)
Use of Force
Joshua Snow Kendrick, Kendrick & Leonard, 1522 Lady Street, Columbia, SC 29201

2021   Washington v City of Chapin (Plaintiff) (Expert Report)
Use of Force
Joshua Snow Kendrick, Kendrick & Leonard, 1522 Lady Street, Columbia, SC 29201

2021   King v. Fontana (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Hang Le, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367

2021   Harbin v. City of Breckenridge Hills, Missouri (Plaintiff) (Expert Report) (Deposition)
Use of Force
Javad Khazaeli, Khazaeli Wyrsch LLC, 911 Washington Ave, Suite 211, St. Louis, MO 63101

2021   Green v St. Louis (Plaintiff) (Expert Report)
Officer Involved Shooting
Javad Khazaeli, Khazaeli Wyrsch LLC, 911 Washington Ave, Suite 211, St. Louis, MO 63101

2021   Debeaubien v CHP (Plaintiff) (Expert Report) (Deposition)
Failure to Investigate

# JEFFREY J NOBLE

Stewart Katz, 555 University Avenue, Suite 270, Sacramento, CA 95825

2021  <u>Love v. Chicago</u> (Defense) (Expert Report) (Deposition)
Officer Involved Shooting
Marion C. Moore, Chief Assistant Corporation Counsel, City of Chicago Department of Law
Federal Civil Rights Litigation Division, 2 N. LaSalle St., Suite 420, Chicago, Illinois 60602

2021  <u>Groom v Paso Robles</u> (Plaintiff) (Expert Report)
Sexual assault by police officer
Neda Lotfi, Taylor & Ring, 1230 Rosecrans Avenue, Suite 360, Manhattan Beach, CA 90266

2021  <u>Barrera v. City of Woodland</u> (Plaintiff) (Expert Report) (Deposition)
Use of Force
Neil Gehlawat, Taylor & Ring, 1230 Rosecrans Avenue, Suite 360, Manhattan Beach, CA 90266

2021  <u>Shorter v. City of Greenville, MS</u> (Plaintiff) (Expert Report)
Officer Involved Shooting
Tiffany Wright, Co-Director, Human and Civil Rights Clinic, Howard University School of Law

2021  <u>Andrich v. City of Phoenix</u> (Defense) (Expert Report)
Officer Involved Shooting
Christina Retts, Wienenke Law Group, 1095 W. Rio Salado, #209, Tempe, AZ 85281

2021  <u>Monk v. Gulick (Chesterfield, VA)</u>, (Plaintiff) (Expert Report)
Use of Force
Thomas Johnson, Bricker, Anderson & Johnson, 411 East Franklin Street, Suite 504, Richmond, VA 23219

2021  <u>Hernandez v. City of Los Angeles</u> (Plaintiff) (Expert Report)
Officer Involved Shooting
Arnoldo Casillas, Casillas & Associates, 3777 Long Beach Blvd, Long Beach, CA 90807

2021  <u>Garten v. City of Costa Mesa</u>, (Plaintiff) (Expert Report) (Deposition)
Detention and search.
Richard Herman, Law Office of Richard P. Herman, P. O. Box 53114, Irvine, California 92619-3114

2021  <u>Harris v. City of Phoenix</u>, (Defense) (Expert Report)
Officer Involved Shooting
Christina Retts, Wienenke Law Group, 1095 W. Rio Salado, #209, Tempe, AZ 85281

2021  <u>Gagliani v. Lexington County Sheriff, SC</u>, (Plaintiff) (Expert Report) (Deposition)
Use of Force
Eric Cavanaugh, Cavanaugh & Thickens, LLC, 1717 Marion St, Columbia, SC 29201

2021  <u>Torres v. City of Cheyenne, WY</u> (Plaintiff) (Expert Report)
Use of Force
Thomas B. Jubin, Jubin & Zerga, LLC., 2614 Pioneer Avenue, P.O. Box 943, Cheyenne, Wyoming 8203-0943

2021  <u>Velez v. City of Sacramento</u>, (Plaintiff) (Expert Report)
Officer Involved Shooting
Stewart Katz, 555 University Avenue, Suite 270, Sacramento, CA 95825

Updated December 4, 2025

# JEFFREY J NOBLE

2021  <u>Mojarrad v.  Edwards, City of Raleigh, NC</u>, (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Cate Edwards, Edwards Kirby, 3201 Glenwood Avenue, Suite 100, Raleigh, North Carolina 27612

2021  <u>Pope v. Hill</u>, (Plaintiff) (Deposition) (Trial)
Pursuit
Bart Turner, Savage, Turner, Durham, Pinckney & Savage, 102 East Liberty Street, Eight Floor (31401), PO Box 10600, Savannah, GA 31412

2021  <u>Rightsell v. Indiana State Police</u>, (Plaintiff) (Expert Report)
Officer Involved Shooting
Bruce Kehoe, Wilson Kehoe Winingham, 859 N Meridian St, Indianapolis, IN 46208

2021  <u>Mendez v City of Chicago</u>, (Defense) (Expert Report) (Deposition)
Monell Allegation
Marion Moore, Chief Assistant Corporation Counsel, City of Chicago Department of Law, Federal Civil Rights Litigation Division, 2 N. LaSalle St., Suite 420, Chicago, Illinois 60602

2021  <u>Helvie v Jenkins</u> (Adams County Sheriff, CO.), (Defense) (Expert Report)
Use of Force
Kerri A. Booth, Adams County Attorney's Office, 4430 South Adams County Pkwy., 5th Floor, Suite C5000B, Brighton, CO 80601

2021  <u>State of Minnesota v. Chauvin</u> (State) (Expert Report)
Use of Force
Steve Schlescher, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1400, St. Paul, MN 55101

2021  <u>Humphrey v. Friar (City of Millington, TN)</u>, (Plaintiff) (Expert Report) (Deposition)
Sexual Misconduct
Andrew C. Clarke, The Cochran Firm – Midsouth, One Commerce Square, Suite 1700, Memphis, Tennessee 38103

2021  <u>Skommesa v. City of Murrieta</u> (Plaintiff) (Expert Report) (Deposition)
Use of Force
Michael R. Marrinan, Law Office of Michael R. Marrinan, 501 W. Broadway, Suite 1510 San Diego, CA. 92101

2021  <u>Dominguez v. City of Escondido</u> (Defense) (Expert Report)
Use of Force
Keith Phillips, Assistant City Attorney, City Attorney's Office, City of Escondido, 201 N. Broadway, Escondido, CA 92025

2021  <u>Brown v. Ontario</u> (Defense) (Expert Report)
Use of Force
Daniel S. Roberts, Cole Huber LLP, 3401 Centrelake Dr., Ste. 670, Ontario, CA  91761

2021  <u>Galloway v. Nassau County Police</u> (Plaintiff) (Expert Report) (Deposition)
Allegation of wrongful conviction
Gabriel P. Harvis, Elefterakis, Elefterakis & Panek, 80 Pine Street, 38th Floor, New York, New

# JEFFREY J NOBLE

York 10005

2021 Richards v. Las Vegas Metropolitan Police (Plaintiff) (Expert Report)
Officer involved shooting
E. Brent Bryson, 32302 West Charleston Blvd., Las Vegas, NV 89102

2021 Hall v. City of Atlanta (Plaintiff) (Expert Report) (Deposition)
Monell Allegation
Shean Williams, The Cochran Firm, 100 Peachtree Street NW, Suite 2600, Atlanta, Georgia, 30303

2021 Drew v. Irby, Fauquier County Sheriff, VA (Plaintiff) (Expert Report) (Deposition)
Use of Force, Arrest
Victor M. Glasberg, 121 S. Columbus Street, Alexandria, VA 22314

2021 Alves v. Riverside County Sheriff's Department (Plaintiff) (Expert Report) (Deposition) (Trial)
Use of Force
John Burton, The Law Offices of John Burton, The Marine Building, 128 North Fair Oaks Avenue, Pasadena, California 91103

2020 VanGilder v. McClean and Beale (Plaintiff) (Expert Report)
Failure to Render Medical Assistance
Mark J. Krudys, The Krudys Law Firm, PLC, SunTrust Center, 919 East Main Street, Suite 2020, Richmond, VA 23219

2020 Hood/Washington v. Chicago (Defense) (Expert Report) (Deposition)
Monell Allegations
George Yamin, The Sotos Law Firm, 550 East Devon Avenue, Suite 150, Itasca, IL 60143

2020 Grabbingbear v. Europe (Defense) (Expert Report) (Deposition)
Officer Involved Shooting
Donald Sisson, Elkus and Sissnon, PC, 7100 E. Belleview Ave., Suite 101, Greenwood Village, CO 80111

2020 Thurman v. Spokane County Sheriff's Department (Defense) (Expert Report)
Reasonableness of Internal Investigation
Michael Kitson, Lane Powell, 1420 5th Avenue, #4200, Seattle, WA 98101

2020 Dew v. City of Seaside (Plaintiff) (Expert Report)
Officer Involved Shooting
Karen C. Joynt, Joynt Law, 225 S. Lake Ave., Suite #300, Pasadena, CA 91101

2020 Arnold v. City of Olathe, Kansas (Plaintiff) (Expert Report) (Deposition)
Tactical Decision Making
Ryan J. Gavin, Kamykowski, Gavin & Smith, P.C., 222 S. Central Ave., Suite 1100, St. Louis, MO 63105

2020 Scott and Johnson v. Detroit (Plaintiff) (Expert Report)
Allegation of Wrongful Convictions
Nick Bourland, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, 600 Fifth Avenue, 10th Floor, New York, NY 10020

2020 Chinaryan v. LAPD (Plaintiff) (Expert Report) (Trial)

Updated December 4, 2025

## JEFFREY J NOBLE

High-risk car stop
John Burton, The Law Offices of John Burton, The Marine Building, 128 North Fair Oaks Avenue, Pasadena, California 91103

2020    Lisner v. Huntington Park (Plaintiff) (Expert Report)
Employment Action
Michael J. Grobaty, Murtaugh Treglia Stern & Deily LLP, 2603 Main Street, Penthouse, Irvine, CA 92614

2020    Meadows v. Town of Rising Sun, MD (Plaintiff) (Expert Report)
Officer Involved Shooting
Jeffrey Nusinov, Nusinov, Smith, LLP, 6225 Smith Avenue, Suite 200B, Baltimore, MD 21209

2020    People v. Nelson (King County, Washington) (People) (Expert Report)
Officer Involved Shooting
Kathy Van Olst, King County Prosecuting Attorney's Office, 516 Third Avenue, W400
Seattle, WA 98104

2020    Mesa v. Leon Valley, Texas (Plaintiff) (Expert Report)
Pursuit
Gene Toscanao, 846 Culebra Road, San Antonio, Texas 78201

2020    Doe v. Charlotte Board of Education (Defense) (Expert Report) (Deposition)
Police investigation
Lori Keeton, The Law Offices of Lori Keeton, 13850 Ballantyne Corporate Place, Suite 500, Charlotte, North Carolina 28277

2020    Bisetti v. City of Austin (Plaintiff) (Expert Report) (Deposition)
Arrest and Disciplinary Action
Jeff Edwards, The Edwards Law Firm, 1101 East 11th Street, Austin, TX 78702

2020    Amaral v. City of San Diego (Plaintiff) (Expert Report) (Deposition)
Use of force
Gastone Bebi, 501 West Broadway, Suite 1340, San Diego, CA 92101

2020    Baker v. Coburn and McHugh (Stratford, Texas) (Plaintiff) (Expert Report)
Officer Involved-Shooting
Jeff Edwards, The Edwards Law Firm, 1101 East 11th Street, Austin, TX 78702

2020    Scott v. Charlotte (Defense) (Deposition)
Officer Involved Shooting
Mark Newbold, Deputy City Attorney, Charlotte-Mecklenburg, 601 E. Trade Street
Charlotte, NC 28202

2020    Dudley v. City of Kinston (Plaintiff) (Expert Report) (Deposition)
Allegation of Wrongful Conviction
David Rudolf, Rudolf-Widenhouse, 225 East Worthington Ave., Suite 100, Charlotte, NC 28203

2020    Taylor v. Los Angeles County Sheriff's Department (Plaintiff) (Expert Report)
Internal Investigation, Failure to Render Medical Aid
Arnoldo Casillas, Casillas & Associates, 3777 Long Beach Blvd, Long Beach, CA 90807

2020    McBean v. Peraza (Plaintiff)

# JEFFREY J NOBLE

Officer Involved Shooting
David I. Schoen, 2800 Zelda Road, Suite 100-6, Montgomery, Alabama  36106

2020     Hayes v. City of Portland (Defense) (Expert Report) (Deposition)
Officer Involved Shooting
Bill Manlove, Portland Office of the City Attorney, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204

2020     Eatherton v. County of Riverside (Plaintiff) (Expert Report)
Use of force
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660

2020     Godifay v. King County, WA (Defense) (Expert Report)
Alleged police pursuit
Daniel L. Kinerk, King County Senior Deputy Prosecuting Attorney, 900 King County Administration Building, 500 Fourth Avenue, Seattle, WA 98104-2316

2020     Doxator v. O'Brien, Green Bay Police Department (Plaintiff) (Expert Report) (Deposition)
Use of Force
Forrest K. Tahdooahnippah, Dorsey & Whitney, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402

2020     Krechmery v. City of Ontario (Plaintiff) (Expert Report)
Use of Force
Jerry Steering, 4063 Birch St., Suite 100, Newport Beach, CA 92660