ROB BONTA
Attorney General of California
CATHERINE WOODBRIDGE
Supervising Deputy Attorney General
AMIE C. BEARS
DEPUTY ATTORNEY GENERAL
State Bar No. 242372
MARIO E. GARCIA
Deputy Attorney General
State Bar No. 339990
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013-1230
 Telephone:  (213) 269-6294
 Fax:  (916) 731-2120
 E-mail:  Mario.Garcia@doj.ca.gov
*Attorneys for Defendant State of California acting by and
through the California Highway Patrol and Sean Irick*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GEORGE GONZALEZ,**<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF CALIFORNIA; CITY OF HEMET; PATRICK SOBASZEK; ANDREW REYNOSO; SEAN IRICK; and DOES 1-10, inclusive,**<br><br>Defendants. | 5:25-cv-00331-KK-DTB<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 5: TO EXCLUDE PLAINTIFF'S NON-EXPERT OPINION TESTIMONY REGARDING CAUSATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF MARIO E. GARCIA; EXHIBIT 1-2**<br><br>Date:          April 23, 2026<br>Time:          10:30 a.m.<br>Courtroom:    3<br>Judge:         The Honorable Kenly Kiya Kato<br>Trial Date:     May 11, 2026<br>Action Filed:   12/24/2024 |

TO THE COURT, PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that prior to the trial in the above-entitled action, at the pretrial

1

conference on April 23, 2026, at 10:30 a.m. or as soon thereafter as counsel may be heard in Courtroom 3 of the United States District Court located at 3470 Twelfth Street Riverside, CA 92501, Defendants State of California acting by and through the California Highway Patrol and Sean Irick (collectively "Defendants") will and hereby does move the Court for an order excluding at trial any and all non-expert opinion testimony by Plaintiff George Gonzalez ("Plaintiff") relating to the issue of causation of Plaintiff's alleged injuries, diagnosis, and prognosis resulting from Defendants' conduct.

This motion is based on Federal Rules of Evidence 701 702, 801, and 803(4), subd. (4) on the following grounds:

(1) Plaintiff, a lay witness, is precluded from testifying as to the causation, diagnosis, and prognosis of his alleged injuries;

(2) Plaintiff's testimony of his medical diagnosis and prognosis    heard from his medical providers are inadmissible hearsay.

This motion is and will be based upon this notice of motion, the attached memorandum of points and authorities, the accompanying declaration of Mario E. Garcia, all pleadings and records on file in this action, and on such further authority, evidence, or argument as may be presented at or before the time of any hearing on this motion.

This motion is made following the undersigned counsel's meet and confer discussions with Plaintiff's counsel on March 19, 2026. pursuant to Central District of California Local Rule 7-3.

2

Dated: March 26, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
CATHERINE WOODBRIDGE
Supervising Deputy Attorney General

_/s/ Mario E. Garcia
MARIO E. GARCIA
Deputy Attorney General
*Attorneys for Defendant State of California
acting by and through the California
Highway Patrol and Sean Irick*

3

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff alleges that Defendants acted with excessive force when California Highway Patrol (CHP) and City of Hemet officers shot Plaintiff while he was armed and evading apprehension. Defendants move this Court for an order excluding any and all non-expert testimony or argument relating to the causation, diagnosis and prognosis of Plaintiff's alleged injuries arising from his gunshot injuries. This motion is based upon the ground that a non-expert may not testify on such matters, under Federal Rule of Evidence 701,702, 801 and therefore, such testimony is inadmissible. Defendants anticipate that Plaintiff will attempt to testify, as he did at deposition, that the gunshot injuries arising from this incident caused him to have multiple health-related injuries. Defendants also anticipate that Plaintiff' will attempt to testify to his medical diagnosis and prognosis arising from the injuries sustained in this incident based upon interactions with his medical providers. The Court should grant this motion because Plaintiff is not a medical expert qualified to testify on causation, diagnosis and prognosis of his injuries. Furthermore, Plaintiff should be precluded from testifying as to what his medical providers communicated to him pertaining to his injuries while he underwent treatment resulting from the shooting because they are inadmissible hearsay.

### ARGUMENT

**I. THIS COURT SHOULD PRECLUDE ALL LAY WITNESS OPINION TESTIMONY REGARDING THE ISSUE OF CAUSATION, DIAGNOSIS, AND PROGNOSIS ARISING FROM PLAINTIFF'S ALLEGED INJURIES.**

It is well established that lay witness opinion testimony is limited to opinions that are (a) rationally based on perception, (b) helpful to understanding the witness' testimony on an issue, and (c) not based on scientific, technical or specialized knowledge within the scope of Rule 702. Fed. R. Evid.701(c); *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1062-63 (9th Cir. 2005). Once a lay witness' testimony ventures into the realm where scientific, technical or specialized knowledge is required to assist the jury in understanding the issue under consideration, that witness' testimony falls squarely within the province of expert testimony. To satisfy these Rule

701 requirements, the trial judge should rigorously examine the reliability of the lay opinion by ensuring that the witness possesses sufficient special knowledge or experience which is germane to the lay opinion offered. *Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Engineering*, 57 F.3d 1190, 1194-1207 (3d Cir. 1995).

"Courts do not allow lay witnesses to testify as to the cause, effect, diagnosis or prognosis of their injuries, because such opinions require testimony from a medical expert. *Gray v. Clark*, 654 F.Supp.3d 1062, 1071 (E.D. Cal. 2023.) Plaintiff cannot attempt to make medical diagnoses at trial, either. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996) ("Such medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence."); *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

### A.   Plaintiff's Testimony Regarding Causation from His Injuries.

In his deposition, Plaintiff testified that the bullets caused him the following injuries:

(1)  He has fecal incontinence because he was shot in his left thigh and the bullet traveled through his colon. Declaration of Mario E. Garcia (Garcia Decl.), ¶ 4 at Exhibit (Ex.) 2.

(2) The bullets that struck him caused his intestines to come out of his stomach. Garcia Decl., ¶3 at Ex. 1.

(3) He develop cysts inside his stomach where the bullets went through. Garcia Decl., ¶ 4 at Ex. 2.

(4) A bullet hit him in the back and caused fractures to his left ribs. Garcia Decl., ¶4 at Ex. 2.

### B.   Plaintiff's Testimony Regarding Prognosis

At this deposition, Plaintiff provided the following testimony as to the prognosis of his injuries:

(1)  Plaintiff testified he will require future surgeries for his right knee after he was shot because he fell, hit his knee and tore his anterior cruciate ligament (ACL) and medial collateral ligament (MCL). Garcia Decl., ¶ 4 at Ex. 2.

(2)  Plaintiff testified that he would need future surgeries to his colon. Garcia Decl., ¶ 4 at

Ex. 2.

Defendants request that Plaintiff be precluded from testifying as to his to the causation of his injuries and future prognosis that go beyond his own direct and personal observations.

## II. PLAINTIFF'S TESTIMONY OF HIS MEDICAL DIAGNOSIS AND PROGNOSIS HEARD FROM HIS MEDICAL PROVIDERS ARE INADMISSIBLE HEARSAY.

Defendants also anticipate that Plaintiff will testify as to the diagnoses and prognoses medical health providers conveyed to Plaintiff while a patient at Riverside University Health System. Defendants request that this Court exclude any testimony from Plaintiff regarding statements made to Plaintiff by his health care providers because they are hearsay.

Courts have ruled that in personal injury actions, plaintiffs cannot testify to any communication made by their threating physicians as it is hearsay and the statement made for medical diagnosis and treatment exception is inapplicable. *Freeman v. Ethicon, Inc.* 2022 WL 4601136, *1-2 (C.D. Cal. August 26, 2022.) In *Freeman,* plaintiff testified that several of her treating physicians told her that her alleged injuries were caused by mesh implants. *Id*. The District Court precluded plaintiff's testimony based on medical opinions received by treating physicians who did not provide written expert reports in compliance with Rule 26(a)(2)(C). *Id*. Moreover, the Court also held that statements made to plaintiff by treating physicians relating to the plaintiff's medical treatment was hearsay and Federal Rule of Evidence 803, sub. (4), did not apply. Federal Rule of Evidence 803(4) which provides an exception to hearsay for statements made for and reasonably pertinent to medical diagnosis or treatment that describes medical history; past or present symptoms or sensations; their inceptions; or their general cause was inapplicable. The Court held that this exception applies only to statements made by a patient to a doctor; it does not apply to statements made by a doctor to a patient. See *Bulthuis v. Rexall Corp.,* 789 F.2d 1315, 1316 (9th Cir. 1985) (per curiam) ("Rule 803(4) applies only to statements made by the patient to the doctor, not the reverse.")

Defendants anticipate that Plaintiff will testify as to the following:

(1)  Plaintiff's treating physicians told him that the bullets striking his left thigh traveled upwards and damaged his colon leading to fecal incontinence. Garcia Decl.,¶ 4 at Ex.

6

2.

(1) Fecal incontinence is a lifelong illness. Garcia Decl., ¶ 4 at Ex. 2.

(2) Plaintiff's treating physicians told him that the bullets caused cysts in his stomach. Garcia Decl., ¶ 4 at Ex. 2.

(3) Plaintiff's treating physicians told him that he has to undergo further surgeries to treat his colon's injuries. Garcia Decl., ¶ 4 at Ex. 2.

(4) Plaintiff's treating physicians told him he tore his ACL and MCL and each will require further surgeries. Garcia Decl., ¶ 4 at Ex. 2.

(5) Plaintiff's treating physicians told him that the bullet that struck him in his back fractured his left ribs. Garcia Decl., ¶ 4, Ex. 2

Statements communicated by treating physicians to Plaintiff regarding his injuries following the incident are out-of-court statements made for the truth the matter asserted and are inadmissible. Pursuant to *Freedman*, Plaintiff will be unable to argue that such statements fall under Fed. R. Evid. 803, subd. 4, because the statements were not made by him. Thus, Plaintiff will be unable to testify as to statement made by his treating physicians.

Thus, to the extent Plaintiff seeks to testify to communications received from his treating physicians, the Court should preclude the testimony on hearsay grounds.

## CONCLUSION

For the reasons set forth, Defendants respectfully request that the Court grant Defendant's Motion in Limine No. 5 seeking preclusion of Plaintiff's own testimony of his medical health diagnosis and prognosis as well as testimony pertaining to communications made to Plaintiff by his treating physicians relating to his medical health diagnosis and prognosis of his injuries.

7

Dated: March 26, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
CATHERINE WOODBRIDGE
Supervising Deputy Attorney General


/s. Mario E. Garcia DRAFT
MARIO E. GARCIA
Deputy Attorney General
*Attorneys for Defendant State of California*
*acting by and through the California*
*Highway Patrol and Sean Irick*

## DECLARATION OF MARIO E. GARCIA

I, MARIO E. GARCIA, declare as follows:

1. I am licensed to practice law before the courts in the State of California, and I am a Deputy Attorney General with the State of California, and I am one of the attorneys of record of Defendants State of California acting by and through the California Highway Patrol and Sean Irick (collectively "Defendants").

2. I have personal knowledge of the matters set forth herein and if called upon as a witness could and would testify competently thereto.

3. Plaintiff George Gonzalez was deposed by defendants on December 11, 2025. The deposition was not concluded and had to be continued due to time constraints at Riverside County jail. True and correct copies of the pertinent excerpts of Plaintiff's December 11, 2025, deposition transcript are attached hereto and identified as a "Exhibit 1."

4. On January 30, 2026, Plaintiff George Gonzalez's deposition was continued and concluded. True and correct copies of the pertinent excerpts of Plaintiff's January 30, 2026, deposition transcript are attached hereto and identified was "Exhibit 2."

I declare under penalty of perjury under the laws of the State of California that the above information is true and correct to the best of my knowledge. Executed on 20th day of March 2026, in Los Angeles County, California.

_____

Mario E. Garcia

9

# EXHIBIT "1"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GEORGE GONZALEZ,                    )
                                    )
    Plaintiff,                      )
                                    )
                VS.                 )    No. 5:25-cv-00331
                                    )        KK(DTBx)
STATE OF CALIFORNIA,                )
et al.,                             )    Volume 2
                                    )
    Defendants.                     )
_____ )

CERTIFIED
TRANSCRIPT

REMOTE VIDEOCONFERENCE

DEPOSITION OF GEORGE GONZALEZ

CALIFORNIA

THURSDAY, DECEMBER 11, 2025

Reported by:        LAURA A. RUTHERFORD, RPR
                    CSR No. 9266
Job No. 2420

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GEORGE GONZALEZ,                        )
                                       )
     Plaintiff,                        )
                                       )
                    VS.                )    No. 5:25-cv-00331
                                       )        KK(DTBx)
STATE OF CALIFORNIA,                   )
et al.,                                )
                                       )
     Defendants.                       )
_____)

          Remote videoconference deposition of GEORGE

GONZALEZ, taken on behalf of Defendants, at

California, beginning at 8:01 a.m., and ending at

12:53 p.m., on Thursday, December 11, 2024, before

LAURA A. RUTHERFORD, RPR, Certified Shorthand Reporter

No. 9266.

```
APPEARANCES (VIA ZOOM):



For Plaintiff:

     LAW OFFICES OF DALE K. GALIPO
     BY:  MARCEL F. SINCICH, ESQ.
     21800 Burbank Boulevard, Suite 310
     Woodland Hills, CA  91367
     (818) 347-3333
     msincich@galipolaw.com


For Defendants CITY OF HEMET, PATRICK SOBASZEK and
ANDREW REYNOSO:

     MANNING & KASS, ELLROD, RAMIREZ, TRESTER, LLP
     BY:  ANDREA KORNBLAU,ESQ.
     801 S. Figueroa Street, 15th Floor
     Los Angeles, CA  90017
     (213) 624-6900
     andrea.kornblau@manningkass.com



For Defendants STATE OF CALIFORNIA and OFFICER SEAN
IRICK:

     CALIFORNIA ATTORNEY GENERALS OFFICE
     BY:  MARIO E. GARCIA, ESQ.
     300 S. Spring Street, Suite 1702
     Los Angeles, CA  90013
     (213) 269-6294
     mario.garcia@doj.ca.gov


VIDEOGRAPHER:

     AMARIS AKER, VIDEOGRAPHER
```

CALIFORNIA; THURSDAY, DECEMBER 11, 2025

8:01 A.M. - 12:53 P.M.

---oOo---

THE VIDEOGRAPHER:  We are now on the record.  Date is December 11, 2025, and the time is 8:01 a.m.  We are all attending remotely via web conference for the deposition of George Gonzalez, in the matter of George Gonzalez versus the State of California, et al., case number 5:25-cv-00331-KK(DTB).

My name is Amaris Aker, and I'll be your videographer today on behalf of Nationwide Legal.  The court reporter is Laura Rutherford.

And the following stipulation applies to this remote deposition by web conference:

The parties consent to the matter of remotely swearing in, transcribing and recording this deposition by videoconference;

All parties agree that the court reporter shall serve as the officer for this remote deposition and will swear in the witness via video conference.

Counsel, can you please identify yourselves and who you represent and acknowledge your agreement to the remote swearing in and manner of deposition?

MS. KORNBLAU:  Andrea Kornblau on behalf of the City of Hemet, and I do agree to the remote swearing in of the witness and the remote taking of this deposition.

MR. GARCIA:  Deputy Attorney General Mario E. Garcia on behalf of the State of California, acting by and through the California Highway Patrol, as well as Sean Irick.  And I consent and I agree to the remote deposition and the remote swearing in of the witness.

MR. SINCICH:  Marcel Sincich on behalf the Plaintiff George Gonzalez, and I consent to the remote swearing in and remote deposition.  Thank you.

THE VIDEOGRAPHER:  Will the court reporter please swear in the witness?

GEORGE GONZALEZ,
having been first duly placed under oath,
was examined and testified as follows:

THE REPORTER:  Thank you.

My name is Laura Rutherford, Certified Shorthand Reporter, license number 9266.

You may begin.

//

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Page 41

my diaper?

I have a binder from where I got shot. I'm -- I have -- my intestines are coming out of my stomach, and I have to wear a binder to hold them in from when I was shot, the surgery.  I wear a diaper because I leak.

Q.    What about emotional or mental?

MR. SINCICH:  It's overbroad.  Vague. It's irrelevant to this cause of action.  As we discussed previously, I'm going to instruct him not to answer any further questions about pre-existing and unrelated psychological conditions.

Q.    BY MS. KORNBLAU:  Mr. Gonzalez, are you going to take your attorney's advice and not answer my question?

A.    I've answered your question so many times, ma'am.  I told you that I am not of knowledge to tell you that what I'm diagnosed with.  Like, I have no idea.  You have -- like, I don't know, ma'am.  I don't know.  I don't understand the question.  I told you that I have PTSD.  I know that.

MR. SINCICH:  Mr. Gonzalez, just wait for the next question.

THE WITNESS:  Yeah.  My attorney's telling me to wait for the next question.  I'm going to wait

REPORTER'S CERTIFICATE

I, the undersigned, a Certified Shorthand Reporter for the State of California, do hereby certify:

That prior foregoing proceeding was taken completely video before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath;

That a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated:  December 24, 2025

*Laura Rutherford*

_____

Laura A. Rutherford, RPR
CSR No. 9266

# EXHIBIT "2"

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CENTRAL DISTRICT OF CALIFORNIA

GEORGE GONZALEZ,                        )
                                        )
                PLAINTIFF,              )
                                        )
        VS.                             )   NO.
                                        )   5:25-CV-00331-KK-DTB
STATE OF CALIFORNIA; CITY OF            )
HEMET; PATRICK SOBASZEK; ANDREW         )
REYNOSO; SEAN IRICK; AND DOES           )
1-10, INCLUSIVE,                        )
                                        )
                DEFENDANTS.             )
_____)

REMOTE VIDEO-RECORDED ZOOM DEPOSITION OF

GEORGE GONZALEZ

VOLUME IV

JANUARY 30, 2026

REPORTED BY:   CHERYL S. ORTEGA, CSR NO. 13709
                          STENO

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CENTRAL DISTRICT OF CALIFORNIA

GEORGE GONZALEZ,                          )
                                          )
                PLAINTIFF,                )
                                          )
     VS.                                  )   NO.
                                          )   5:25-CV-00331-KK-DTB
STATE OF CALIFORNIA; CITY OF              )
HEMET; PATRICK SOBASZEK; ANDREW           )
REYNOSO; SEAN IRICK; AND DOES             )
1-10, INCLUSIVE,                          )
                                          )
                DEFENDANTS.               )
_____)

REMOTE VIDEO-RECORDED ZOOM DEPOSITION OF GEORGE GONZALEZ,

VOLUME IV, TAKEN BEFORE CHERYL S. ORTEGA, CSR NO. 13709,

A CERTIFIED COURT REPORTER FOR THE STATE OF CALIFORNIA,

COMMENCING AT 9:08 A.M., FRIDAY, JANUARY 30, 2026.

STENO

APPEARANCES OF COUNSEL:


          For the Plaintiff:

               GRECH, PACKER & HANKS
               7095 INDIANA AVENUE
               SUITE 200
               RIVERSIDE, CALIFORNIA   92506
               951.682.9311
               TPACKER@GRECHPACKERLAW.COM
               BY:   TRENTON C. PACKER, ESQ.

          For the Defendant CITY OF HEMET, CORPORAL
          PATRICK SOBASZEK, SERGEANT ANDREW REYNOSO

               MANNING & KASS, ELLROD, RAMIREZ,
               TRESTER
               801 S FIGUEROA STREET
               15TH FLOOR
               LOS ANGELES, CALIFORNIA   90017
               213.486.2250
               ANDREA.KORNBLAU@MANNINGKASS.COM
               BY:   ANDREA KORNBLAU, ESQ.
                     KIMBERLY ACEVES, ESQ.

          For the Defendants STATE OF CALIFORNIA ACTING
          BY AND THROUGH THE CALIFORNIA HIGHWAY PATROL
          AND OFFICER SEAN IRICK:

               DEPUTY ATTORNEY GENERAL
               300 SOUTH SPRING STREET
               SUITE 1702
               LOS ANGELES, CALIFORNIA 90017
               213.269.6294
               AMIE.BEARS@DOJ.CA.GOV
               BY:   AMIE BEARS, ESQ.
                     MARIO E. GARCIA, ESQ.


          Also Present:

               DIOGO ROSENBLATT-SILVA, VIDEOGRAPHER




                         STENO

hole and (audio breaking up.)

BY MR. KORNBLAU:

Q.   Okay.  So we are talking about four impacts. The first impact you said was located somewhere on your back.  Where exactly on your back?

A.   Like, where my thumb is at.  (Indicating.)

Q.   Okay.  So the left midback area?

A.   Yeah, where my ribs are at.  It went -- it went -- it followed my ribs all the way around and stopped right here in my chest.

Q.   Okay.  And is it your understanding that the bullet entered at an angle?

MR. PACKER:  Objection.  Calls for speculation. Calls for expert opinion.

Go ahead.

THE WITNESS:  No, I don't know.

BY MR. KORNBLAU:

Q.   Did you receive medical care immediately after the shooting incident?

A.   No, they handcuffed me.  I had to wait for -- not immediately.

Q.   Okay.  So how soon after you were shot did you receive medical care?

A.   I don't know.  I (audio breaking up.)

Q.   What was your answer?

STENO

by ambulance to a hospital; is that right?

A.    Yeah.

Q.    What hospital were you taken to?

A.    Moreno Valley, Riverside, University.

Q.    So since we are there, let's talk about your damages.  What damages are you claiming in this case?

A.    You have to check the medical records.

Q.    Okay.  What damages or injuries are you claiming in this lawsuit?

A.    Am I claiming?  I don't know.  You have to check the medical records.  Like, whatever the medical records say.

Q.    Okay.

A.    I was shot in my colon.  I was shot in my chest.  I was shot in my back.  When it came out my chest, I have fecal incontinence.  I leak blood, mucus and feces.

Q.    Okay.  Let's talk first about your medical physical injuries.  Okay?

So what physical injuries did you suffer as it relates to this incident?

A.    I was shot in my foot.  I couldn't walk.  I had to learn how to walk again.  I was shot in my thigh twice, went up through my colon.  I wasn't able -- I have -- I have -- I shit out blood for like two years.

STENO

Q.   Will you need any future surgeries on your foot?

MR. PACKER:  Objection.  Calls for speculation, calls for an expert opinion.

Go ahead.

THE WITNESS:  Yeah, I don't know.  I'm not a doctor.

BY MR. KORNBLAU:

Q.   Have you been informed that you will require any future surgeries or care for your foot?

A.   Yes.

Q.   What?

A.   Not for my foot.  For my foot, I have not been informed for my foot, no.  For my knee, yes.  I fell and hit my knee when I got shot.

Q.   Okay. But you didn't mention that before.

So you said you have an injured knee?

A.   Yeah.

Q.   Which knee?

A.   My right knee.

Q.   How was it injured?

A.   I told you my ACL and MCL is torn.  We've been talking about it all day.

Q.   You said your ACL and MCL were previously torn before the incident, right?

STENO

A.   Yes.

Q.   Okay.  So I'm asking you how you injured your knee on the date of the incident or did you?

A.   When I got shot in my back, I fell on to my right knee.  Boom.  And it tore it -- tore it even more and now, like, I need knee reconstructive surgery.

Q.   Okay.  When were you told you need knee reconstructive surgery?

A.   In the hospital after I was shot.

Q.   And why haven't you had the surgery done yet?

A.   Because it's expensive surgery and I need it -- to see specialists.  I need to get a record of specialists.  I have been -- I've been -- it's hard to do that.  It's just hard to get the surgeries done.  The County don't want to pay for it.

Q.   Okay.  Did you explore that option while you were out of custody?

A.   Yeah, I was -- I'm saying I was seeing a specialist since like I'm supposed to get -- I'm scheduled for re -- colon -- colon repair surgery.  I'm supposed to get my colon redone.  My colon.

Q.   All right.  So tell me more about your thigh injury and everything that's connected to that injury.

A.   Okay.  I was shot twice in my thigh so I wasn't able to walk on it.  I wasn't able to walk for six

STENO

months.  I'm still -- I'm still -- I'm still in a walker.

Q.   Okay.  So when you say you weren't able to walk for six months, why?

A.   Because I had -- I got shot in my foot and I got shot twice in my thigh.  I fell and hit my knee when I -- I tore my ACL and MCL when I got shot.  I was in a wheelchair.  I wasn't able to walk.  I wasn't -- my legs weren't strong enough, like, they were -- they were -- they were weak.

They were -- they were like tore up from being -- having 45-caliber bullets rip through my thigh --

(Speaking simultaneously.)

Q.   And --

A.   -- in the same hole like.

Q.   Okay.  And I'm just asking you specifically about your thigh right now.  Okay?

So what was the path of travel through your thigh as you understand it?

A.   It went (audio breaking up.)  It went up my thigh because I was laying down flat.

MR. PACKER:  Okay.  I -- I didn't catch any of that.

MR. KORNBLAU:  I didn't either.

So -- okay.
                              STENO

Q.    Okay.  So what care have you received as it relates to your thigh and anything related to those two bullets?

A.    I had colon repair surgery.  They took -- I had colon repair surgery.  They took my whole stomach and (audio breaking up) from here to here, all my guts out to take the bullets out and then they put my guts back in me and they repaired my guts back to my colon and they took about that much out.

They took like a foot of -- 14 inches of my colon and my guts out because they were ripped up from being shot through.  I'm lucky I didn't have a colostomy bag.

Q.    Do you need any future surgeries?

A.    Yes.

Q.    And what?

A.    I'm scheduled for colon repair surgery again because I leak mucus and blood and it's bad.  It's called fecal incontinence.  It's a lifelong illness.

Q.    When are you going to have those surgeries?

A.    I'm scheduled to go to Loma Linda but now I got to do it all in here again so I have to -- I have to go see the gastro doctor.  And I have to -- it's a long -- it's a process.  It's hard to get care.  It's hard to get the care in here.  It's hard to get care in here.

STENO

Q.   Okay.  And --

(Speaking simultaneously.)

A.   The County doesn't want to pay for colon repair.  It's a fucking -- I mean, it's like a really expensive surgery.

Q.   When you were out of custody for several months did you try to get --

(Speaking simultaneously.)

A.   Yes.

Q.   -- colon repair surgery?

A.   Yes.  I was finally -- I was finally able to get it approved for -- to see a surgeon in Loma Linda.  After trying and trying and trying, I was finally approved to see a surgeon in Loma Linda now.  So that's why I'm trying to bail out and go get my surgery.

Q.   All right.  Any other care, future, present related to the two bullets that entered your thigh?

A.   I don't know.  I have to go get a MRI and further -- I could have cysts inside my stomach.  I ended up having a cyst inside of my stomach where the bullets went through and my colon wasn't repaired right so I might have cysts inside.

I might have cysts inside my body right now.  If they need to pop but they did pop a cyst, and drain it month, like a month after when I was in the hospital.

STENO

They had us do another surgery because I was getting cysts from -- from that.

And then I had to get a bullet taken out of my chest when I was shot in my back but that's not my back, though.

Q.   Okay.  So let's talk about your back, then.

So what injuries did you sustain with respect to your back?

A.   It broke all my ribs on my -- on my left side. The bullet went and it ran across all my ribs and it, like, fractured -- it fractured all my ribs on this left side and it ended up in my chest.

Q.   And was the bullet removed?

A.   Yeah, it got removed like -- like months later.

Q.   Do you need any future surgeries?

A.   I don't know.  I haven't been able to see a doctor and follow-up with yet about that but I don't think so.  I should be good on that.

Q.   Okay.  Any other physical injuries that we haven't discussed?

A.   No.

Oh, well, I had like little scrapes and bruises here and there but they were -- they were like -- they were nothing like life threatening.  It was just like from me falling and hitting -- hitting the rocks.

STENO

GEORGE GONZALEZ - VOL. IV                                      JOB NO. 2372189
JANUARY 30, 2026

I, CHERYL ORTEGA, Certified Shorthand Reporter for the

State of California, do hereby certify:

That the proceeding was taken by me in machine shorthand

and later transcribed into typewriting, under my

direction, and that the foregoing contains a true record

of the testimony of the witness.

Dated:  This 30th of January, 2026 at San Bernardino,

California.

_____
Cheryl Ortega
CSR NO. 13709

# BINDER "2"

# EXHIBIT 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GEORGE GONZALEZ,                    )
                                    )
    Plaintiff,                      )
                                    )
                VS.                 )   No. 5:25-cv-00331
                                    )      KK(DTBx)
STATE OF CALIFORNIA,                )
et al.,                             )   Volume 2
                                    )
    Defendants.                     )
_____)

CERTIFIED
TRANSCRIPT

REMOTE VIDEOCONFERENCE

DEPOSITION OF GEORGE GONZALEZ

CALIFORNIA

THURSDAY, DECEMBER 11, 2025

Reported by:          LAURA A. RUTHERFORD, RPR
                      CSR No. 9266
Job No. 2420

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GEORGE GONZALEZ,                    )
                                    )
    Plaintiff,                      )
                                    )
                    VS.             )    No. 5:25-cv-00331
                                    )        KK(DTBx)
STATE OF CALIFORNIA,                )
et al.,                             )
                                    )
    Defendants.                     )
_____)

        Remote videoconference deposition of GEORGE

GONZALEZ, taken on behalf of Defendants, at

California, beginning at 8:01 a.m., and ending at

12:53 p.m., on Thursday, December 11, 2024, before

LAURA A. RUTHERFORD, RPR, Certified Shorthand Reporter

No. 9266.

APPEARANCES (VIA ZOOM):


For Plaintiff:

    LAW OFFICES OF DALE K. GALIPO
    BY:  MARCEL F. SINCICH, ESQ.
    21800 Burbank Boulevard, Suite 310
    Woodland Hills, CA  91367
    (818) 347-3333
    msincich@galipolaw.com


For Defendants CITY OF HEMET, PATRICK SOBASZEK and ANDREW REYNOSO:

    MANNING & KASS, ELLROD, RAMIREZ, TRESTER, LLP
    BY:  ANDREA KORNBLAU,ESQ.
    801 S. Figueroa Street, 15th Floor
    Los Angeles, CA  90017
    (213) 624-6900
    andrea.kornblau@manningkass.com


For Defendants STATE OF CALIFORNIA and OFFICER SEAN IRICK:

    CALIFORNIA ATTORNEY GENERALS OFFICE
    BY:  MARIO E. GARCIA, ESQ.
    300 S. Spring Street, Suite 1702
    Los Angeles, CA  90013
    (213) 269-6294
    mario.garcia@doj.ca.gov


VIDEOGRAPHER:

    AMARIS AKER, VIDEOGRAPHER

CALIFORNIA; THURSDAY, DECEMBER 11, 2025

8:01 A.M. - 12:53 P.M.

---oOo---

THE VIDEOGRAPHER:  We are now on the record.  Date is December 11, 2025, and the time is 8:01 a.m.  We are all attending remotely via web conference for the deposition of George Gonzalez, in the matter of George Gonzalez versus the State of California, et al., case number 5:25-cv-00331-KK(DTB).

My name is Amaris Aker, and I'll be your videographer today on behalf of Nationwide Legal.  The court reporter is Laura Rutherford.

And the following stipulation applies to this remote deposition by web conference:

The parties consent to the matter of remotely swearing in, transcribing and recording this deposition by videoconference;

All parties agree that the court reporter shall serve as the officer for this remote deposition and will swear in the witness via video conference.

Counsel, can you please identify yourselves and who you represent and acknowledge your agreement to the remote swearing in and manner of deposition?

MS. KORNBLAU:  Andrea Kornblau on behalf of the City of Hemet, and I do agree to the remote swearing in of the witness and the remote taking of this deposition.

MR. GARCIA:  Deputy Attorney General Mario E. Garcia on behalf of the State of California, acting by and through the California Highway Patrol, as well as Sean Irick.  And I consent and I agree to the remote deposition and the remote swearing in of the witness.

MR. SINCICH:  Marcel Sincich on behalf the Plaintiff George Gonzalez, and I consent to the remote swearing in and remote deposition.  Thank you.

THE VIDEOGRAPHER:  Will the court reporter please swear in the witness?

GEORGE GONZALEZ,
having been first duly placed under oath,
was examined and testified as follows:


THE REPORTER:  Thank you.

My name is Laura Rutherford, Certified Shorthand Reporter, license number 9266.

You may begin.

//

my diaper?

I have a binder from where I got shot. I'm -- I have -- my intestines are coming out of my stomach, and I have to wear a binder to hold them in from when I was shot, the surgery.  I wear a diaper because I leak.

Q.    What about emotional or mental?

MR. SINCICH:  It's overbroad.  Vague. It's irrelevant to this cause of action.  As we discussed previously, I'm going to instruct him not to answer any further questions about pre-existing and unrelated psychological conditions.

Q.    BY MS. KORNBLAU:  Mr. Gonzalez, are you going to take your attorney's advice and not answer my question?

A.    I've answered your question so many times, ma'am.  I told you that I am not of knowledge to tell you that what I'm diagnosed with.  Like, I have no idea.  You have -- like, I don't know, ma'am.  I don't know.  I don't understand the question.  I told you that I have PTSD.  I know that.

MR. SINCICH:  Mr. Gonzalez, just wait for the next question.

THE WITNESS:  Yeah.  My attorney's telling me to wait for the next question.  I'm going to wait

GEORGE GONZALEZ vs STATE OF CALIFORNIA, ET AL.
GEORGE GONZALEZ, VOL. 2                    12/11/2025                    Page 185

REPORTER'S CERTIFICATE

I, the undersigned, a Certified Shorthand Reporter for the State of California, do hereby certify:

That prior foregoing proceeding was taken completely video before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath;

That a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated:  December 24, 2025

_Laura Rutherford_

_____

Laura A. Rutherford, RPR
CSR No. 9266

# EXHIBIT 2

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CENTRAL DISTRICT OF CALIFORNIA

GEORGE GONZALEZ,                    )
                                    )
                  PLAINTIFF,        )
                                    )
        VS.                         )   NO.
                                    )   5:25-CV-00331-KK-DTB
STATE OF CALIFORNIA; CITY OF        )
HEMET; PATRICK SOBASZEK; ANDREW     )
REYNOSO; SEAN IRICK; AND DOES       )
1-10, INCLUSIVE,                    )
                                    )
                  DEFENDANTS.       )
_____)


REMOTE VIDEO-RECORDED ZOOM DEPOSITION OF

GEORGE GONZALEZ

VOLUME IV

JANUARY 30, 2026


REPORTED BY:   CHERYL S. ORTEGA, CSR NO. 13709
                        STENO

GEORGE GONZALEZ - VOL. IV                                JOB NO. 2372189
JANUARY 30, 2026

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CENTRAL DISTRICT OF CALIFORNIA

GEORGE GONZALEZ,                       )
                                       )
                 PLAINTIFF,            )
                                       )
     VS.                               )   NO.
                                       )   5:25-CV-00331-KK-DTB
STATE OF CALIFORNIA; CITY OF           )
HEMET; PATRICK SOBASZEK; ANDREW        )
REYNOSO; SEAN IRICK; AND DOES          )
1-10, INCLUSIVE,                       )
                                       )
                 DEFENDANTS.           )
_____)

REMOTE VIDEO-RECORDED ZOOM DEPOSITION OF GEORGE GONZALEZ,

VOLUME IV, TAKEN BEFORE CHERYL S. ORTEGA, CSR NO. 13709,

A CERTIFIED COURT REPORTER FOR THE STATE OF CALIFORNIA,

COMMENCING AT 9:08 A.M., FRIDAY, JANUARY 30, 2026.

STENO

APPEARANCES OF COUNSEL:


          For the Plaintiff:

                  GRECH, PACKER & HANKS
                  7095 INDIANA AVENUE
                  SUITE 200
                  RIVERSIDE, CALIFORNIA  92506
                  951.682.9311
                  TPACKER@GRECHPACKERLAW.COM
                  BY:  TRENTON C. PACKER, ESQ.

          For the Defendant CITY OF HEMET, CORPORAL
          PATRICK SOBASZEK, SERGEANT ANDREW REYNOSO

                  MANNING & KASS, ELLROD, RAMIREZ,
                  TRESTER
                  801 S FIGUEROA STREET
                  15TH FLOOR
                  LOS ANGELES, CALIFORNIA  90017
                  213.486.2250
                  ANDREA.KORNBLAU@MANNINGKASS.COM
                  BY:  ANDREA KORNBLAU, ESQ.
                       KIMBERLY ACEVES, ESQ.

          For the Defendants STATE OF CALIFORNIA ACTING
          BY AND THROUGH THE CALIFORNIA HIGHWAY PATROL
          AND OFFICER SEAN IRICK:

                  DEPUTY ATTORNEY GENERAL
                  300 SOUTH SPRING STREET
                  SUITE 1702
                  LOS ANGELES, CALIFORNIA 90017
                  213.269.6294
                  AMIE.BEARS@DOJ.CA.GOV
                  BY:  AMIE BEARS, ESQ.
                       MARIO E. GARCIA, ESQ.


          Also Present:

                  DIOGO ROSENBLATT-SILVA, VIDEOGRAPHER


                         STENO

hole and (audio breaking up.)

BY MR. KORNBLAU:

Q.    Okay.  So we are talking about four impacts. The first impact you said was located somewhere on your back.  Where exactly on your back?

A.    Like, where my thumb is at.  (Indicating.)

Q.    Okay.  So the left midback area?

A.    Yeah, where my ribs are at.  It went -- it went -- it followed my ribs all the way around and stopped right here in my chest.

Q.    Okay.  And is it your understanding that the bullet entered at an angle?

MR. PACKER:  Objection.  Calls for speculation. Calls for expert opinion.

Go ahead.

THE WITNESS:  No, I don't know.

BY MR. KORNBLAU:

Q.    Did you receive medical care immediately after the shooting incident?

A.    No, they handcuffed me.  I had to wait for -- not immediately.

Q.    Okay.  So how soon after you were shot did you receive medical care?

A.    I don't know.  I (audio breaking up.)

Q.    What was your answer?

STENO

by ambulance to a hospital; is that right?

A.    Yeah.

Q.    What hospital were you taken to?

A.    Moreno Valley, Riverside, University.

Q.    So since we are there, let's talk about your damages.  What damages are you claiming in this case?

A.    You have to check the medical records.

Q.    Okay.  What damages or injuries are you claiming in this lawsuit?

A.    Am I claiming?  I don't know.  You have to check the medical records.  Like, whatever the medical records say.

Q.    Okay.

A.    I was shot in my colon.  I was shot in my chest.  I was shot in my back.  When it came out my chest, I have fecal incontinence.  I leak blood, mucus and feces.

Q.    Okay.  Let's talk first about your medical physical injuries.  Okay?

So what physical injuries did you suffer as it relates to this incident?

A.    I was shot in my foot.  I couldn't walk.  I had to learn how to walk again.  I was shot in my thigh twice, went up through my colon.  I wasn't able -- I have -- I have -- I shit out blood for like two years.

STENO

Q.    Will you need any future surgeries on your foot?

MR. PACKER:  Objection.  Calls for speculation, calls for an expert opinion.

Go ahead.

THE WITNESS:  Yeah, I don't know.  I'm not a doctor.

BY MR. KORNBLAU:

Q.    Have you been informed that you will require any future surgeries or care for your foot?

A.    Yes.

Q.    What?

A.    Not for my foot.  For my foot, I have not been informed for my foot, no.  For my knee, yes.  I fell and hit my knee when I got shot.

Q.    Okay. But you didn't mention that before.

So you said you have an injured knee?

A.    Yeah.

Q.    Which knee?

A.    My right knee.

Q.    How was it injured?

A.    I told you my ACL and MCL is torn.  We've been talking about it all day.

Q.    You said your ACL and MCL were previously torn before the incident, right?

STENO

A.   Yes.

Q.   Okay.  So I'm asking you how you injured your knee on the date of the incident or did you?

A.   When I got shot in my back, I fell on to my right knee.  Boom.  And it tore it -- tore it even more and now, like, I need knee reconstructive surgery.

Q.   Okay.  When were you told you need knee reconstructive surgery?

A.   In the hospital after I was shot.

Q.   And why haven't you had the surgery done yet?

A.   Because it's expensive surgery and I need it -- to see specialists.  I need to get a record of specialists.  I have been -- I've been -- it's hard to do that.  It's just hard to get the surgeries done.  The County don't want to pay for it.

Q.   Okay.  Did you explore that option while you were out of custody?

A.   Yeah, I was -- I'm saying I was seeing a specialist since like I'm supposed to get -- I'm scheduled for re -- colon -- colon repair surgery.  I'm supposed to get my colon redone.  My colon.

Q.   All right.  So tell me more about your thigh injury and everything that's connected to that injury.

A.   Okay.  I was shot twice in my thigh so I wasn't able to walk on it.  I wasn't able to walk for six

STENO

months.  I'm still -- I'm still -- I'm still in a walker.

Q.   Okay.  So when you say you weren't able to walk for six months, why?

A.   Because I had -- I got shot in my foot and I got shot twice in my thigh.  I fell and hit my knee when I -- I tore my ACL and MCL when I got shot.  I was in a wheelchair.  I wasn't able to walk.  I wasn't -- my legs weren't strong enough, like, they were -- they were -- they were weak.

They were -- they were like tore up from being -- having 45-caliber bullets rip through my thigh --

(Speaking simultaneously.)

Q.   And --

A.   -- in the same hole like.

Q.   Okay.  And I'm just asking you specifically about your thigh right now.  Okay?

So what was the path of travel through your thigh as you understand it?

A.   It went (audio breaking up.)  It went up my thigh because I was laying down flat.

MR. PACKER:  Okay.  I -- I didn't catch any of that.

MR. KORNBLAU:  I didn't either.

So -- okay.

                              STENO

Q.   Okay.  So what care have you received as it relates to your thigh and anything related to those two bullets?

A.   I had colon repair surgery.  They took -- I had colon repair surgery.  They took my whole stomach and (audio breaking up) from here to here, all my guts out to take the bullets out and then they put my guts back in me and they repaired my guts back to my colon and they took about that much out.

They took like a foot of -- 14 inches of my colon and my guts out because they were ripped up from being shot through.  I'm lucky I didn't have a colostomy bag.

Q.   Do you need any future surgeries?

A.   Yes.

Q.   And what?

A.   I'm scheduled for colon repair surgery again because I leak mucus and blood and it's bad.  It's called fecal incontinence.  It's a lifelong illness.

Q.   When are you going to have those surgeries?

A.   I'm scheduled to go to Loma Linda but now I got to do it all in here again so I have to -- I have to go see the gastro doctor.  And I have to -- it's a long -- it's a process.  It's hard to get care.  It's hard to get the care in here.  It's hard to get care in here.

STENO

Q.   Okay.  And --

(Speaking simultaneously.)

A.   The County doesn't want to pay for colon repair.  It's a fucking -- I mean, it's like a really expensive surgery.

Q.   When you were out of custody for several months did you try to get --

(Speaking simultaneously.)

A.   Yes.

Q.   -- colon repair surgery?

A.   Yes.  I was finally -- I was finally able to get it approved for -- to see a surgeon in Loma Linda.  After trying and trying and trying, I was finally approved to see a surgeon in Loma Linda now.  So that's why I'm trying to bail out and go get my surgery.

Q.   All right.  Any other care, future, present related to the two bullets that entered your thigh?

A.   I don't know.  I have to go get a MRI and further -- I could have cysts inside my stomach.  I ended up having a cyst inside of my stomach where the bullets went through and my colon wasn't repaired right so I might have cysts inside.

I might have cysts inside my body right now.  If they need to pop but they did pop a cyst, and drain it month, like a month after when I was in the hospital.

STENO

They had us do another surgery because I was getting cysts from -- from that.

And then I had to get a bullet taken out of my chest when I was shot in my back but that's not my back, though.

Q. Okay. So let's talk about your back, then.

So what injuries did you sustain with respect to your back?

A. It broke all my ribs on my -- on my left side. The bullet went and it ran across all my ribs and it, like, fractured -- it fractured all my ribs on this left side and it ended up in my chest.

Q. And was the bullet removed?

A. Yeah, it got removed like -- like months later.

Q. Do you need any future surgeries?

A. I don't know. I haven't been able to see a doctor and follow-up with yet about that but I don't think so. I should be good on that.

Q. Okay. Any other physical injuries that we haven't discussed?

A. No.

Oh, well, I had like little scrapes and bruises here and there but they were -- they were like -- they were nothing like life threatening. It was just like from me falling and hitting -- hitting the rocks.

STENO

I, CHERYL ORTEGA, Certified Shorthand Reporter for the State of California, do hereby certify:

That the proceeding was taken by me in machine shorthand and later transcribed into typewriting, under my direction, and that the foregoing contains a true record of the testimony of the witness.

Dated:  This 30th of January, 2026 at San Bernardino, California.

_____
Cheryl Ortega
CSR NO. 13709