ROB BONTA
Attorney General of California
CATHERINE WOODBRIDGE
Supervising Deputy Attorney General
AMIE C. BEARS
Deputy Attorney General
State Bar No. 242372
MARIO E. GARCIA
Deputy Attorney General
State Bar No. 339990
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013-1230
 Telephone:  (213) 269-6294
 Fax:  (916) 731-2120
 E-mail:  Mario.Garcia@doj.ca.gov
*Attorneys for Defendants*
*California Highway Patrol and Officer Irick*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GEORGE GONZALEZ,**<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF CALIFORNIA; CITY OF HEMET; PATRICK SOBASZEK; ANDREW REYNOSO; SEAN IRICK; and DOES 1-10, inclusive,**<br><br>Defendants. | 5:25-cv-00331-KK-DTB<br><br>**DEFENDANTS CALIFORNIA HIGHWAY PATROL AND SEAN IRICK'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Date:        April 23, 2026<br>Time:        10:30 a.m.<br>Courtroom:  3<br>Judge:       The Honorable Kenly Kiya Kato<br>Trial Date:  May 11, 2026<br>Action Filed: 12/24/2024 |

# TABLE OF CONTENTS

**Page**

I.  Plaintiff's Claims ...................................................................................1
  A.  Legal Theories .........................................................................1
  B.  Elements of Plaintiff's Claims................................................1
  C.  Defendants' Evidence in Opposition .......................................7
II.  Defendants' Affirmative Defenses........................................................8
  A.  Legal Theories .........................................................................8
  B.  Elements of Affirmative Defenses..........................................10
III.  Third Parties ........................................................................................11
IV.  Anticipated Evidentiary Issues............................................................11
V.  Other Germane Issues of Law..............................................................12
VI.  Bifurcation of Issues ...........................................................................13
VII.  Jury Trial .............................................................................................13
VIII.  Attorneys' Fees ...................................................................................13
IX.  Abandonment of Issues........................................................................13

# TABLE OF AUTHORITIES

**Page**

CASES

*Allen v. City of Sacramento*
234 Cal.App.4th 41 (2015) ...................................................................................7

*Anderson v. Creighton*
483 U.S. 641 (1987) .............................................................................................12

*Elliott v. Leavitt*
99 F.3d at 644 (1996) ...........................................................................................13

*Graham v. Connor*
490 U.S. 386 (1989) ..........................................................................................2, 3

*Hayes v. County of San Diego*
57 Cal. 4th 622 (2013).......................................................................................6, 7

*Herndon v. County of Marin*
25 Cal.App.3d 933 (1972).....................................................................................9

*Johnson v. Breeden*
280 F.3d 1308 (11th Cir. 2002)...........................................................................12

*Lampkins v. Thompson*
337 F.3d 1009 (8th Cir. 2003)..............................................................................12

*Nehad v. Browder*
929 F.3d 1125 (9th Cir. 2019)................................................................................3

*Orn v. City of Tacoma*
949 F.3d 1167 (9th Cir. 2020)................................................................................3

*Ortiz v. Jordan*
562 U.S. 180 (2011) .............................................................................................10

*S.B. v. Cty. of San Diego*
864 F.3d 1010 (9th Cir. 2017)................................................................................3

*Saucier v. Katz*
533 U.S. 194 (2001) .............................................................................................13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Scott v. Harris*
550 U.S. 372 (2007) ......................................................................................3

*Stephenson v. Doe*
332 F.3d 68 (2d Cir. 2003) ..........................................................................12

*Sullivan v. County of Los Angeles*
12 Cal.3d 710 (1974)......................................................................................9

*Tennessee v. Garner*
471 U.S. 1 (1985) ...........................................................................................3

*Tuuamalemalo v. Greene*
946 F.3d 471 (9th Cir. 2019)..........................................................................3

*Wilkinson v. Torres*
610 F.3d 546 (9th Cir. 2010)...........................................................................3

STATUTES

United States Code, Title 42
§ 1983 ..........................................................................................................1, 8

California Bane Act .............................................................................................7

California Government Code
§ 815.2 .......................................................................................................9, 10
§ 815.2(b) ......................................................................................................11
§ 820.2 ....................................................................................................9, 10, 11
§ 820.4 ..........................................................................................................11

Federal Civil Rights Act ................................................................................8, 9

CONSTITUTIONAL PROVISIONS

United States Constitution
Fourth Amendment.......................................................................................1, 3

**TABLE OF AUTHORITIES**
(continued)

**Page**

COURT RULES

Local Rule
  16-4.................................................................................................................1
  50 ............................................................................................................10, 12

Defendants California Highway Patrol (CHP) and Sean Irick submit the following Memorandum of Contentions of Fact and Law, pursuant to L.R. 16-4.

## I.  PLAINTIFF'S CLAIMS

Plaintiff George Gonzalez ("Plaintiff") is pursuing a claim relate to the reasonableness of CHP Officer Sean Irick's use of force against plaintiff on January 24, 2024, under different legal theories with additional elements and differing potential recoveries.

### A.  Legal Theories

Claim 1: Plaintiff claims pursuant to 42 U.S.C. § 1983 that Officer Irick's use of force against plaintiff violated his Fourth Amendment rights.

Claim 5: Plaintiff claims that Officer Irick's use of force against plaintiff constituted a battery under state law and the CHP is vicariously liable for Officer Irick's conduct.

Claim 6: Plaintiff claims that Officer Irick was negligent under state law and the CHP is vicariously liable for Officer Irick's conduct.

Claim 7: Plaintiff claims that Officer Irick interfered with plaintiff's exercise or enjoyment of rights under state law secured by the Constitution or laws of the United States and CHP is vicariously liable for Officer Irick's conduct.

Claims 2, 3, 4, are against co-defendants City of Hemet and City of Hemet Police Officers only and are inapplicable against CHP and Sean Irick.

### B.  Elements of Plaintiff's Claims

Claim 1: The elements of a section 1983 excessive force claim arising under the Fourth Amendment are:

1. Officer Irick acted under color of state law;

2. Officer Irick intentionally seized plaintiff's person;

3. The use of force was objectively unreasonable under all of the circumstances;

4. The use of force caused plaintiff harm.

1

*See* Ninth Circuit Model Civil Jury Instrs. 9.3, 9.20, 9.25*; Graham v. Connor,* 490 U.S. 386, 395 (1989).

In determining whether the officer used excessive force, all of the circumstances known to the officer on the scene must be considered, including:

(1) the nature of the crime or other circumstances known to Officer Irick at the time force was applied;

(2) whether plaintiff posed an immediate threat to the safety of Officer Irick or others;

(3) whether plaintiff was actively resisting arrest or attempting to evade arrest by flight;

(4) the amount of time Officer Irick had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) the relationship between the need for the use of force and the amount of force used;

(6) any effort made by Officer Irick to temper or to limit the amount of force;

(7) the severity of the security problem at issue;

(8) the availability of alternative methods to subdue plaintiff;

(9) the number of lives at risk (motorists, police officers) and the parties' relative culpability; *i.e.,* which party created the dangerous situation, and which party is more innocent;

(10) whether it was practical for Officer Irick to give warning of the imminent use of force, and whether such warning was given;

(11) whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

(12) whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.

2

Ninth Circuit Model Civil Jury Inst. 9.25.

In general, all claims of excessive force, whether deadly or not, should be analyzed under the objective reasonableness standard of the Fourth Amendment as applied in *Scott v. Harris*, 550 U.S. 372, 381-85 (2007), *Graham v. Connor*, 490 U.S. 386, 397 (1989), *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985), and *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

In assessing reasonableness, the fact-finder should give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (citation omitted). In addition, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

The Ninth Circuit has repeatedly emphasized that the most important factor is "whether the suspect posed an immediate threat to the safety of the officers or others." *See, e.g.*, *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (internal quotation marks omitted); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020); *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). It is well-established that where a suspect threatens an officer with a weapon or where the officer has probable cause to believe that the suspect poses a threat of death or serious physical harm to the officer or others, the officer is justified in using deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Wilkinson v. Torres*, 610 F.3d 546, 546 (9th Cir. 2010).

///

Claim 5: The elements of a claim for battery claim by a peace officer are: A peace officer may use deadly force only when necessary in defense of human life. Plaintiffs claim that Officer Irick unnecessarily used deadly force on plaintiff. To establish this claim, plaintiff must prove all of the following:

1. That Officer Irick intentionally touched plaintiff or caused plaintiff to be touched;

2. That Officer Irick used deadly force on plaintiff;

3. That Officer Irick's use of deadly force was not necessary to defend human life;

4. That plaintiff was hurt; and

5. That Officer Irick's use of deadly force was a substantial factor in causing plaintiff's injuries.

Officer Irick's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Officer Irick at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily harm to Officer Irick.

A person being arrested/detained has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force. "Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

4

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of Officer Irick and plaintiff leading up to the use of deadly force. In determining whether Officer Irick's use of deadly force was necessary in defense of human life, you must consider Officer Irick's tactical conduct and decisions before using deadly force on plaintiff and whether Officer Irick used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to do so.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics. CACI 1305B.

Claim 6: The elements of a negligence claim against a peace officer for use of deadly force are:

1. Officer Irick was a peace officer;

2. Officer Irick used deadly force on plaintiff;

3. Officer Irick's use of deadly force was not necessary to defend human life;

4. Plaintiff was hurt; and

5. Officer Irick's use of deadly force was a substantial factor in causing plaintiff's injuries.

Officer Irick's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Officer Irick at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Officer Irick.

A person being arrested/detained has a duty not to use force to resist a peace

5

officer unless the peace officer is using unreasonable force.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person.  An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Officer Irick and plaintiff leading up to the use of deadly force. In determining whether Officer Irick's use of deadly force was necessary in defense of human life, you must consider Officer Irick's tactical conduct and decisions before using deadly force on plaintiff and whether Officer Irick used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat.  A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest/detain or overcome resistance. CACI 441.

Plaintiff contend that defendants are liable for negligence based on alleged tactical mistakes prior to the shooting.  Under California law negligence liability "can arise if the tactical conduct and decisions leading up to the use of deadly force [by law enforcement] show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 626 (2013).  The California, Supreme Court has held that:

[W]here the preshooting conduct did not cause the plaintiff any injury

6

independent of the injury resulting from the shooting, the reasonableness of the officers' preshooting conduct should not be considered in isolation. Rather, it should be considered in relation to the question whether the officers' ultimate use of deadly force was reasonable.

*Hayes*, 27 Cal.4th at 632.

Claim 7: The elements of a California Bane Act claim are:

1.  Officer Irick intentionally interfered or attempted interference with a state or federal constitutional legal right;

2.  The Interference or attempted interference was by threats, intimidation or coercion.

3.   Plaintiff was harmed.

4.  Officer Irick's conduct was a substantial factor in causing plaintiff's harm.

CACI No. 3066; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 67.

**C.    Defendants' Evidence in Opposition**

The key relevant evidence in opposition to plaintiff's claims will be:

1.  The prior statements and testimony of Officer Irick and other defendant officers.

2.  Testimony by eyewitnesses.

3.  Evidence gathered of the incident, including but not limited to, photographs, witness statements, dispatch recordings and logs, videos, and the reports and testimony of law enforcement investigators and forensic specialists regarding the evidence.

4.  Plaintiff's prior criminal, and medical records.

5.  Plaintiff's responses to discovery.

6.  Expert testimony by Clarence Chapman regarding police procedures, including all the underlying evidence he relied on in reaching his conclusions.

7.  Expert testimony by Rod Englert regarding shooting reconstruction,

including all the underlying evidence he relied on in reaching his conclusions

8.    Expert testimony by Samir Lyons who collaborated with Rod Englert in creating demonstratives for Rod Englert's opinions and analysis.

## II.    DEFENDANTS' AFFIRMATIVE DEFENSES

### A.    Legal Theories

Defendants have several key affirmative defenses:

Affirmative Defense 3: All happenings and events, damages and injuries, if any there were, referred to in the Complaint were proximately caused and contributed to by the negligence plaintiff and others, each and all of whom failed to exercise ordinary care in their own behalf at all times and places alleged in the Second Amended Complaint.

Affirmative Defense 8: The conduct of plaintiff stops him from claiming the damages alleged in the Second Amended Complaint.

Affirmative Defense 10: At all relevant times, plaintiff failed to mitigate injury and damages.

Affirmative Defense 11: Plaintiff willingly, voluntarily and knowingly took the risk of inciting a confrontation with, and being in proximity to a confrontation with, defendants, whom plaintiff knew or reasonably should have known to be peace officers, and thereby assumed each, every and all the risks and hazards implicated by the events alleged in the Second Amended Complaint.  Such conduct is a reasonable implied assumption of risk.

Affirmative Defense 13: Neither the State of California nor any of its departments is a "person" within the meaning of the Federal Civil Rights Act, 42 United States Code section 1983 et seq.

Affirmative Defense 14: The Second Amended Complaint fails to state a cause of action for violation of civil rights, as any deprivation of civil rights alleged in the Second Amended Complaint was not without due process of law.

Affirmative Defense 15: Answering defendants have not deprived any person

8

of any right, privilege or immunity guaranteed by the Constitution or laws of the United States. There has been no deprivation of any right, privilege or immunity guaranteed by the laws or Constitution of the United States.

Affirmative Defense 16: There is no imputed liability between public officers in actions under the Federal Civil Rights Act.

Affirmative Defense 17: There is no imputed liability between a public officer and the employing public entity in actions under the Federal Civil Rights Act.

Affirmative Defense 18: All acts of defendants, if any there were, occurred in the proper exercise of police powers without malice or intent to deprive any person of any right arising under the Constitution or laws of the United States, or to do any person any other injury.

Affirmative Defense 20: Answering defendants are entitled to qualified immunity.

Affirmative Defense 21: Public entities are immune from suit when their employees are immune from suit. Gov. Code, §815.2.

Affirmative Defense 26: To the extent that the complaint herein attempts to predicate liability upon any public entity defendant or any agent or employee thereof for purported negligence in retention, hiring, employment, training, or supervision of any public employee, liability is barred by Government Code sections 815.2 and 820.2 and *Herndon v. County of Marin*, 25 Cal.App.3d 933, 935-936 (1972) reversed on other grounds by *Sullivan v. County of Los Angeles* 12 Cal.3d 710 (1974); by the lack of any duty running to plaintiff; by the fact that any such purported act or omission is governed exclusively by statute and is outside the purview of any public employees authority; and by the failure of any such acts or omissions to be the proximate cause of any injury alleged in the Second Amended Complaint.

Affirmative Defense 27: Neither the public entity nor any employee within

9

the scope of employment stood in such a special relationship to any person alleged in the Second Amended Complaint so as to give rise to any duty running to any person.

Affirmative Defense 28: To the extent that any answering defendant used force during the incident alleged in the Second Amended Complaint, it was privileged as reasonably necessary, and was believed to be reasonably necessary, in the lawful defense of third parties.

Affirmative Defense 29: At the times and places alleged in the Second Amended Complaint, plaintiff willfully and unlawfully used force and violence upon the person of another and provoked the altercation and events alleged in the Second Amended Complaint by unlawful and wrongful conduct. The force employed, if any, to prevent the continuance of such conduct was reasonable and not excessive.

Affirmative Defense 30: To the extent that any answering defendant used force in the incident alleged in the Second Amended Complaint, such use of force was in the exercise of the right of self-defense. The acts of answering defendants were in the exercise of the right of self-defense or the right to defend others.

Affirmative Defense 32: There is no liability for any injury or damages, if any there were, resulting from an exercise of discretion vested in a public employee, whether or not such discretion be abused. Cal. Gov. Code, §§ 815.2, 820.2

**B.    Elements of Affirmative Defenses**

Affirmative Defense 20: Qualified immunity is a legal defense for the Court to decide when raised by a non-suit or post-verdict motion. *Ortiz v. Jordan*, 562 U.S. 180, 191 (2011) (holding qualified immunity must be raised by a Rule 50 motion following trial where disputed facts precluded resolution on summary judgment).

Affirmative Defense 2: The elements of self-defense are:

1. Officer Irick reasonably believed plaintiff was going to harm him; and

2. Officer Irick only used the amount of force necessary to protect himself.

CACI 1304 - Self-Defense/Defense of Others.

Affirmative Defenses 3,8, 10, and 30: The elements of comparative fault are:

1. Plaintiff was negligent; and

2.  Plaintiff's negligence was a substantial factor in causing his death or plaintiffs' harm.

CACI 406, Comparative Fault.

Affirmative Defense 20: Immunity under California Government Code § 820.4.  The elements for this affirmative defense are:

1. Officer Irick was exercising due care;

2. Officer Irick was enforcing the law.

Affirmative Defense 21: Immunity under California Government Code § 815.2(b).  Defendant State of California is not "liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Affirmative Defense 32: Immunity under California Government Code § 820.2.  The elements for this affirmative defense are:

1. Officer Irick exercised discretion in using force on plaintiff;

2. The discretion was vested in Officer Irick pursuant to his duties as a peace officer.

**III.  THIRD PARTIES**

There are no third parties asserting claims or defenses in this matter.

**IV.  ANTICIPATED EVIDENTIARY ISSUES**

There are no witnesses that are anticipated to be presented by deposition testimony at this time.

CHP and Sean Irick have filed the following motions in limine:

1. Defendants' Motion in Limine No. 3 to exclude the reconstruction videos

of plaintiff's videographer expert Scott Holdaway videographer and testimony derived therefrom;

2. Defendants' Motion in Limine No. 4 to limit plaintiff's retained medical expert Dr. Ryan O'Connor's testimony to plaintiff's Emergency Medical Department treatment and non-retained expert testimony to their perception while treating plaintiff in their respective disciplines

3. Defendants' Motion in Limine No. 5 to exclude plaintiff's opinion pertaining to causation, diagnosis, and prognosis of his injuries.

## V.   OTHER GERMANE ISSUES OF LAW

Officer Irick plans to raise the defense of qualified immunity by Rule 50 motion.  If raised after the close of evidence, the qualified immunity defense may require special interrogatories.  "In a proper case, the use of special jury interrogatories going to the qualified immunity defense is not discretionary with the court." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002).  "Because a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted." *Id; see also Lampkins v. Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003) (holding district court properly allowed special interrogatories relating to facts underpinning qualified immunity defense); *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ("We believe that use of special interrogatories in this case resolves the difficulty of requiring the jury to decide 'what the facts were that the officer faced or perceived' and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts.").

There is no law clearly establishing that a law enforcement officer is not entitled to use deadly force when confronted with a subject under the circumstances in this case.  Even if Officer Irick may have been mistaken about the nature of the threat posed by Plaintiff, any such mistake was reasonable.  *Anderson v. Creighton*,

12

483 U.S. at 641; *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Elliott*, 99 F.3d at 644. There is not a "robust 'consensus of cases of persuasive authority'" on this issue, either. To the contrary, officers are on notice that they are permitted to use deadly force when there is probable cause to believe there is an immediate threat of serious bodily injury or death, which was the case here.

## VI. BIFURCATION OF ISSUES

Defendant City of Hemet has filed a Motion in Limine seeking bifurcation of the issue of punitive damages.

## VII. JURY TRIAL

All issues are triable to a jury (except as discussed in Sections IV and V), and timely demands for jury have been made by all parties.

## VIII. ATTORNEYS' FEES

Defendants do not waive their right to attorneys' fees if the court finds the action was brought in bad faith.

## IX. ABANDONMENT OF ISSUES

No affirmative defenses have been abandoned by defendants.

Dated:  April 2, 2026                    Respectfully submitted,

ROB BONTA
Attorney General of California
CATHERINE WOODBRIDGE
Supervising Deputy Attorney General


*/s/ Amie Bears*

AMIE C. BEARS
Deputy Attorney General
MARIO E. GARCIA
Deputy Attorney General
*Attorneys for Defendant California
Highway Patrol and Officer Irick*

13

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for **DEFENDANT CALIFORNIA HIGHWAY PATROL and OFFICER IRICK**, certifies that this brief contains 3,637 words, which:

_x_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated.

Dated:  April 2, 2026                    Respectfully submitted,

ROB BONTA
Attorney General of California
CATHERINE WOODBRIDGE
Supervising Deputy Attorney General


*/s/ Amie Bears*

AMIE C. BEARS
Deputy Attorney General
MARIO E. GARCIA
Deputy Attorney General
*Attorneys for Defendant California Highway Patrol and Officer Irick*

14