**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Tel:    (951) 682-9311

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE GONZALEZ, | Case No. 5:25-cv-00331-KK-DTB |
| Plaintiff, | [*Honorable Kenly Kiya Kato*] Magistrate Judge David T. Bristow |
| vs. | |
| STATE OF CALIFORNIA; CITY OF HEMET; PATRICK SOBASZEK; ANDREW REYNOSO; SEAN IRICK; and DOES 1-10, inclusive, | **PLAINTIFF'S OPPOSITION TO CITY DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE REFERENCE TO ANY PRIOR OR SUBSEQUENT INCIDENTS INVOLVING DEFENDANT OFFICERS, UNRELATED CLAIMS, AND UNRELATED INCIDENTS INVOLVING OTHER EMPLOYEES [DOC. 79]** |
| Defendants. | |
| | **FPTC/Hearing on Motions *in Limine*:** Date:   April 23, 2026 Time:   10:30 a.m. **Jury Trial** Date:   May 11, 2026 Time:   08:30 a.m. Courtroom 3, 3470 Twelfth Street, 3rd Floor, Riverside, California |

1          Case No. 5:25-cv-00331-KK-DTB

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This civil rights action arises from the excessive and unreasonable shooting of Plaintiff George Gonzalez by Officers Sean Irick, Patrick Sobaszek, and Andrew Reynoso, on January 24, 2024. Here, video evidence contradicts Defendants' assertions, putting their credibility in question, and supports Plaintiff's claims. The video shows that Defendants did not give a warning, never attempted less-lethal options, and shot Plaintiff in the back. Then, after the shooting, the Defendants claim that Plaintiff pointed the gun at them in order to justify their use of excessive and unreasonable force. But the videos show that Plaintiff never pointed the gun at anyone. Instead, the Officers assessed, shots Plaintiff in the back, then after he dropped the gun, the continued shooting even as Plaintiff was unarmed and on the ground. This pattern and practice was followed by these and other officers, on other occasions, showing the City's unconstitutional practice, inadequate training, and unconstitutional ratification of excessive force as well as the Officers motive, intent, bias and lack of credibility. The City, Sobaszek and Reynoso (only) now move to exclude all evidence of any other incidents (presumably officer-involved shooting incidents) involving City officers. The City Defendants' conclusory motion claims that other incidents are irrelevant, unduly prejudicial and improper character evidence. Defendants' motion fails because other incidents are relevant, not only to *Monell* liability but also individual liability, exclusion would prejudice Plaintiff, and such evidence would not be offered as character evidence.

Importantly, Plaintiff has repeatedly attempted to keep this trial focused on the central factual issue, whether the use of deadly force was excessive and unreasonable, without the use of hindsight evidence and character evidence. However, Defendants refuse to exclude obviously irrelevant information unknown, unduly prejudicial and impermissible character evidence (see Plaintiff's

Motions *in Limine* Nos. 1 and 2). Defendants apparently seek to make this trial about everything Plaintiff has ever done wrong in his life to take the focus off the Officers shooting him in the back and unarmed on the ground, and at the same time suppress evidence of the Officers malicious intent. Further, everything Plaintiff anticipates Defendants may argue in opposition to Plaintiff's first two motions *in limine* can be said in opposition to this motion. Plaintiff would stipulate to the exclusion of other use of force incidents, as used against the individual officers, if all the information from Plaintiff's motions *in limine* nos. 1-2 were also excluded. Nevertheless, this civil rights case should remain focused on Defendants' wrongdoing, not Plaintiff's. Therefore, Plaintiff requests that City Defendants' motion be denied.

**II.    ARGUMENT**

    **A.    Other Incidents are Relevant and Not Character Evidence**

The City Defendants' first argument assumes that other incidents are only relevant to *Monell* and if summary judgment is granted on *Monell*, other incidents will not have any relevance to this matter. Plaintiff contends that other incidents are obviously relevant to *Monell* and given that Plaintiff opposes Defendants' Motion *in Limine* No. 1 to trifurcate, other incident evidence should not be excluded from trial (see Pl's Opp to Defs' Motion *in Limine* No. 1). Second, regardless of whether the Court grants summary judgment regarding *Monell* or trifurcates *Monell* into a different phase, evidence of other incidents is admissible in liability of the Defendant Offices.

Evidence of other uses of excessive force or retaliation by the individual officers is admissible against these Defendant Officers on the issue of liability to determine whether they violated Plaintiff's constitutional rights. *See Taylor v. The Los Angeles Police Dep't*, 1999 WL 33101661, 4-7 (C.D. Cal. 1999) (prior complaints about officers who shot at plaintiff "may show, among other things, a proclivity of such officers toward violent behavior or possible bias"). Any prior

3       Case No. 5:25-cv-00331-KK-DTB

complaints against the individual defendants are also relevant to such issues as the officers' motive when they used unreasonable force on Plaintiff, their credibility, and whether they acted with a malicious intent, thereby justifying an award of punitive damages. *See Hampton v. City of San Diego*, 147 F.R.D. 227, 229 (S.D. Cal. 1993) (internal affairs history may be relevant to issues of credibility and the motive of the officers, and may demonstrate a continuing course of conduct reflecting malicious intent); *Porter v. Osborn*, 2009 WL 5068632 (D. Alaska, Dec. 17, 2009) ("Certainly, evidence of prior acts of violence that are of the same or similar nature to the incident in question might be admissible to show Osborn's intent as to the claim alleged, given that the question on remand is whether Osborn had a "purpose to harm" Casey, which Osborn denies.").

Plaintiff does not seek to offer impermissible character evidence against the Defendant Officers. However, pursuant to Federal Rule of Evidence 404(b)(2), evidence of Defendants' other wrongs and acts may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Here, evidence of Defendant Officers other incidents that similarly shows officers using deadly force against individuals who are not an immediate threat of death or serious bodily injury, especially when the officers claim the subject was pointing a weapon and video shows that the subject was not (as here), is relevant to show the Defendant Officers' motive and intent when using deadly force, giving their initial statement and testimony; their plan, knowledge and practice when presented with a subject running with a gun; and their absence of mistake when shooting a person who is falling to the ground, in the back, and on the ground, yet later stating that the subject was pointing the gun.

In this same regard, evidence of Defendants' other wrongs and acts from other incidents may be used to attack the Officers credibility and impeach the Officers. Fed R. Evid. 607; Ninth Circuit Model Jury Instruction No. 1.14. If Defendants have a practice of shooting individuals running away with a gun in

hand in the back based on claims that the subject was pointing the gun, yet video evidence shows otherwise, the jury ought to be allowed to assess the Officers motive and intent with testifying, interest in the outcome of the case, contradictory evidence, and lack of believability. Further, where there is evidence that the Defendant Officers provided statements under oath in other matters where deadly force was used, that is contradictory to physical, forensic, and/or video evidence, such evidence is relevant to show the Officers' reputation for untruthfulness.

Additionally, punitive damages are only available against the individual officers, not the City as it relates to *Monell. See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 254 (1981)*; Monell v. New York City Dept. of Soc. Services*, 436 U.S. 658 (1978)*.* Punitive damages asks the jury to assess whether the Defendant Offices' conduct that harmed Plaintiff was malicious, oppressive, or in reckless disregard to Plaintiff's rights. Ninth Circuit Model Jury Instruction No. 5.5. The Ninth Circuit explains,

> Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff [Gonzalez]. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

*Id.*; *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). Other incidents show the Defendant Officers ill will and indifference towards Plaintiff and similarly situated individuals, abusing their authority and power. Further, the degree of reprehensibility of the Officers' conduct must be assessed, not to compensate Plaintiff, but to punish the Defendant Officers and deter the Defendant Officers from engaging in similar conduct in the future. *See* Model Instruction No. 5.5.

Finally, Defendants are asking the Court to apply this rule in one direction – only toward Plaintiff. "[T]he introduction of inadmissible evidence by one party allows an opponent, in the court's discretion to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. 1988). For example, in *Nguyen v. Southwest Leasing and Rental Inc.*, the Ninth Circuit held that the District Court properly admitted rebuttal testimony on the same topic where the other party "opened the door." 282 F.3d 1061, 1067 (9th Cir. 2002). If Defendants open the door, Plaintiffs should be allowed to introduce rebuttal evidence of the same subject matter. To permit Defendants to introduce evidence of unrelated matters but deny Plaintiff the same would be unduly prejudicial.

Plaintiff contends that other incidents are also the result of Defendant City's deliberate indifference to the rights of citizens, manifested as a failure to implement proper training and policies and investigate officer involved shooting incidents. Thus, to the extent these findings would be admissible as to either the individual or municipal claim, they directly implicate the other claims. Thus, other incidents would be admissible on the question of an officer's individual liability irrespective of whether this Court bifurcates the trial of Plaintiff's *Monell* claims.

**B.    There is Overlap in Claims that Exclusion would Prejudice**

Defendants have failed to show any evidence or binding authority that would suggest excluding other incidents in this matter is justified based on Rule 403. Defendants' argument in their motion is insufficient to exclude evidence based merely on Defendants' speculation and lack of specificity. It is unclear how Defendants claim they will be prejudiced by their motion. Still, the Officers' credibility in this matter is of such significance that the probative value of evidence that shows their lack of credibility is substantially outweighed by any speculative risk of undue prejudice. Further, examples of other incidents are substantially similar to this matter:

Reynoso has used deadly force on four other occasions; this was his fifth shooting incident. (Exh. A, Reynoso Depo at 34:15-21, 40:5-9.) Reynoso's first shooting was in 2017, where Reynoso does not remember the subject's name or if the subject was armed with a weapon. (Exh. A, Reynoso Depo at 34:25-35:4, 35:14-18, 35:25-36:3.) Reynoso's second shooting was also in 2017, where he again does not recall the name of the subject. (Exh. A, Reynoso Depo at 36:4-12.) Reynoso used deadly force against Michael Martin. (Exh. A, Reynoso Depo at 49:8-22.) In *Martin v. City of Hemet*, No. 5:18-cv-02377-JGB-KK, in October of 2017, Mr. Martin was stopped by officers in a parking lot. When Mr. Martin began to walk away from the officers, the officers commanded him to drop a small pocketknife, and Mr. Martin put his hands above his head. With Mr. Martin's hands raised and visible, two HPD officers including Reynoso fired seven to ten shots at him, killing him. The case resolved following a six-figure settlement. (Doc. 1-1, Plaintiff's First Amended Complaint ("FAC"), ¶63(h).) Reynoso's third shooting was in 2018, where the subject did not have a firearm but was in a vehicle. (Exh. A, Reynoso Depo at 37:12-38:16, 39:10-15.) Reynoso used deadly force against Massiah Acosta. (Exh. A, Reynoso Depo at 49:23-50:5.) In *Acosta. v. City of Hemet, et al.*, No. 5:19-CV-00779-CJC, Defendants settled with the unarmed Mr. Acosta who was shot in the back by officers. In May of 2018, HPD officers encountered Mr. Acosta in a truck near a business at which an alarm was going off. The officers saw Mr. Acosta begin slowly driving away, at which point Reynoso fired ten rounds at Mr. Acosta. Then an officer intentionally crashed into Mr. Acosta's truck, causing it to strike a pole. When Mr. Acosta exited the truck unarmed and began to run with his hands raised, a sergeant shot him multiple times, including in the back, without warning. The case was resolved following a seven-figure settlement. (Doc. 1-1, FAC at ¶63(b).) Reynoso's fourth shooting was in 2018, where Reynoso claimed the person had a firearm in each hand. (Exh. A, Reynoso Depo at 38:21-23, 39:17-23.) Finally, Reynoso had also

been present for a sixth officer-involved shooting incident where Hemet officers shot an innocent bystander in his backyard while looking for a suspect. (Exh. A, Reynoso Depo at 40:18-41:6.)  In *Drye v. City of Hemet*, Case No. 5:23-cv-02152 JGB (KKx), on February 21, 2023, HPD officer(s) shot and killed a father of five young children, on his own property, while he was not committing a crime, was not suspected of committing a crime, and was not an immediate threat of death or serious bodily injury; while officers failed to give a warning and had less intrusive alternatives, as alleged in the plaintiffs' complaint. The case resolved with a seven-figure settlement. Doc. 1-1, FAC at ¶63(a).

Sobaszek was involved as a witness in two other Gang Task force officer involved shooting cases prior to this incident. (Exh. B, Sobaszek Depo at 5:20-6:6, 8:18-20, 8:15-24.) Like here, Timothy Helman was running from officers, officers claimed he pointed a gun at them, but he did not, and Mr. Helman was shot in the back without warning. (Exh. B, Sobaszek Depo at 22:11-24:4. [defense counsel instructed Sobaszek not to answer whether Mr. Helman was running away when he was shot, whether Mr. Helman ever pointed a gun, whether Sobaszek was aiming at Mr. Helman's back, how many shot were fired at Mr. Helman, whether a verbal warning was given, and whether Sobaszek saw an object in Mr. Helman's hand before firing].) This incident was caught on camera. This matter is in current litigation, with no trial set. (*See Helman v. City of Hemet, et al.*, Case No. 5:24-cv-02209-JGB-DTB.) Sobaszek was also a witness to the officer-involved shooting of Edgar Solis by a CHP officer and a Riverside Deputy, all part of the same Gang Task Force the Defendants were on at the time of this incident. There the CHP officer claimed that Mr. Solis was hunkering down and pointing a gun when he shot from 12 feet away, despite physical, forensic and medical evidence that Mr. Solis was shot in the back running away from 24 feet away. Then after Mr. Solis fell to the ground from being shot in the back, with no gun in hand, but hands raised in surrender sitting against a door, the Task Force deputy charged in from

the other direction and repeatedly shot Mr. Solis. That matter was settled after a hung jury. (*See Solis v. State of California, et al.*, Case No. 5:23-cv-00515-HDV-JPR.)

Defendant City officers have used deadly force on other occasions against persons who were not armed with a deadly weapon. On January 18, 2022, Hemet offices searched for a man, Joseph Tracy, suspected of having drugs and a gun at a hotel. During the pursuit, Hemet officers shot the unarmed Mr. Tracy as he fled. Like here, and all the other cited cases, the officers claimed Mr. Tracy was going to shoot officers. The officers fired fifteen rounds at Mr. Tracy while he was unarmed, killing him, without warning and while less-intrusive alternatives were available. The incident was captured on surveillance and body-worn camera videos. No officer saw Mr. Tracy with a gun in his hand; no officer saw Mr. Tracy pointing a gun; no officer saw Mr. Tracy about to harm anyone. Still, the involved officers including Hemet Sergeant Arthur Paez, claimed he was going to shot them, so they shot and killed Mr. Tracy. Among the officers involved were Hemet Sergeant Paez, Riverside Deputy Salvador Waltermire, and CHP Officer Micheal Bell, who were all officers involved in the officer involved shooting of Mr. Solis.[1] On July 4, 2024, Hemet officers responded to a call reporting a man, Jimmy Lopez, with a gun. The officers claimed that Mr. Lopez produced a firearm and aimed it at them, then eight (8) Hemet officers fired sixty-nine (69) rounds at Mr. Lopez, killing him. It was discovered that Mr. Lopez had an airsoft gun. The watch commander was Sergeant Byan Cunningham, the officer who shot Mr. Acosta in the back while unarmed. This incident was caught on camera.[2]

Defendant City officers' use of excessive force also includes use of unreasonable and unnecessary less-lethal force: In *Erickson v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, City settled with a man who was attacked

---

[1] https://oag.ca.gov/system/files/ois/report/2024_06_Tracy_AB1506_Report.pdf
[2] https://oag.ca.gov/system/files/ois/report/2025_09_Lopez_AB1506_Report.pdf

P's Opp. to Defs' Motion *in Limine* No. 2 to Exclude Other Incidents

by Reynoso's K-9 causing permanent great bodily injury. This incident was caught on camera. (Doc. 1-1, FAC at ¶63(c).) In *Mendoza v. City of Hemet*, No. 5:21-cv-01134-JGB-SHK, a small woman in shorts and a t-shirt was stopped by HPD officers. Seven officers drew their weapons and shouted commands, and Ms. Mendoza complied with their orders to exit her vehicle and turn around. As she complied and was no threat, she was shot with less-lethal force. This incident was caught on camera. (Doc. 1-1, FAC at ¶63(f).) In *Lagafoged v. City of Hemet*, No. 5:19-cv-00903-SVW-SHK, in August of 2018, HPD officers encountered the erratic plaintiff while standing on a balcony and swinging a stick. The officers released a K-9, tased the plaintiff multiple times and hogtieing him, resulting in his death. The case resolved following a six-figure settlement. (Doc. 1-1, FAC at ¶63(g).) Finally, on April 29, 2022, after fleeing from the police, Hemet officers violently beat and used deadly force against a compliant, non-resistive, surrendered, unarmed and grounded Henry Barnhill, without warning, while several reasonable alternatives were available, and while Mr. Barnhill was not a threat of harm to any officer or person. The officers repeatedly punched, Tased, and kneed Mr. Barnhill, used the Taser as an impact weapon on his head, and picked up and slammed Mr. Barnhill's face on the ground, causing him serious bodily injury. This incident was also caught on camera. This matter is in current litigation, trial set for June 16, 2026. (*See Barnhill v. City of Hemet, et al.*, Case No. 5:23-cv-00589-JGB-SP.)

## III.   CONCLUSION

For the forgoing reasons, Plaintiff requests that the Court deny Defendants' Motion in full and allow evidence of other incidents as it relates to *Monell*, impeachment, credibility, motive, intent, plan, and lack of mistake.

/ / /

/ / /

Respectfully Submitted,

DATED:  April 2, 2026

**LAW OFFICES OF DALE K. GALIPO**
**GRECH, PACKER, & HANKS**

By: _____/s/_____Marcel F. Sincich_____
Dale K. Galipo, Esq.
Trenton C. Packer, Esq.
Marcel F. Sincich, Esq.
*Attorneys for Plaintiff*

## <u>DECLARATION OF MARCEL F. SINCICH</u>

I, Marcel F. Sincich, hereby declare as follows:

I am an attorney duly licensed to practice law in the State of California and the United States District Court for the Central District of California. I am one of the attorneys of record for the Plaintiff.  I make this declaration in support of Plaintiff's Opposition to Defendants' Motion to Exclude Reference to Any Prior or Subsequent Incidents Involving Defendant Officers, Unrelated Claims, and Unrelated Incidents Involving Other Employees. I have personal knowledge of the facts contained herein and could testify competently thereto if called.

1.      Attached hereto as "**Exhibit A**" is a true and correct copy of Reynoso Depo ("**Exh. A, Reynoso Depo**").

2.      Attached hereto as "**Exhibit B**" is a true and correct copy of Scott Sobaszek Depo ("**Exh. B, Sobaszek Depo**").

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 2nd day of April, 2026.

_____
Marcel F. Sincich

12        Case No. 5:25-cv-00331-KK-DTB

P'S OPP. TO DEFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE OTHER INCIDENTS