# EXHIBIT A

Andrew Reynoso

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--


GEORGE GONZALEZ,

       Plaintiff,

v.                     Case No.  5:25-cv-00331-KK-DTB

STATE OF CALIFORNIA; CITY OF
HEMET; PATRICK SOBASZEK;
ANDREW REYNOSO; SEAN IRICK;
and DOES 1-10, inclusive,

       Defendants.
_____/


STENOGRAPHIC REPORTER'S TRANSCRIPT OF

REMOTE VIDEO DEPOSITION OF ANDREW REYNOSO

THURSDAY, AUGUST 14, 2025


Reported Stenographically by:

KIMBERLY D'URSO, CSR 11372, RPR

Job No.  18115

THE WITNESS:  -- there is some missing context with this.  But based on that specific statement you're saying on just holding a firearm alone, with no other context, no, we are not trained in that capacity.

BY MR. GALIPO:

Q.    Prior to the day of the incident with Mr. Gonzalez, had you ever seen a suspect with a gun in their hand before?

A.    Yes, sir.

Q.    On how many occasions, approximately?

A.    Approximately, 25.

Q.    And that would be a gun in the hand; is that correct?

A.    Sir -- yes, sir.

Q.    How many prior officer-involved shootings had you been involved in when you actually were one of the officers who fired?

A.    Prior to this incident, sir?

Q.    Yes.

A.    It's been a total of four prior officer-involved shootings.

Q.    Okay.  Have you been involved in any officer-involved shootings since this incident?

A.    No, sir.

Q.    So the first one would have happened in what

George Gonzalez v. State of California, et al.
Focus Litigation Solutions

Page: 34

Andrew Reynoso

year, approximately?

A.   I don't recall specifically, sir. Approximately, 2017.   It could be late 2016 -- or approximately.

Q.   How long had you been a police officer at that time?

A.   Since February, March of 2014, sir.

Q.   Were you assigned to Patrol at that time?

A.   I was assigned to Patrol as a canine handler; yes, sir.

Q.   How many shots did you fire in that incident?

A.   There was one round that I discharged during that incident, sir.

Q.   Do you remember the name of the person that you shot?

MS. KORNBLAU:   Objection.   Vague.

THE WITNESS:   I don't recall the name of the subject or suspect involved in that incident.

BY MR. GALIPO:

Q.   Did you deploy your canine at that subject?

A.   No, sir.

Q.   And do you know if your round struck the suspect or not?

A.   I did not strike the suspect in that one, sir.

Q.   And did that suspect have a weapon in their

George Gonzalez v. State of California, et al.
Focus Litigation Solutions

Page: 35

hand?

A.    I don't specifically recall if the suspect had a weapon in their hand at that time, sir.

Q.    How about the second shooting you were involved in, when was that?

A.    Approximately, 2017, sir.

Q.    How many shots did you fire in that incident?

A.    I don't recall specifically, sir, but more than one.

Q.    Do you recall the name of the person that you fired shots at in that incident?

A.    I don't recall the name specifically, sir.

Q.    Did you deploy your canine in that incident?

A.    No, sir.

Q.    Do you know whether your shots struck the person or not?

A.    Yes, sir.

Q.    And do you believe they did?

A.    Oh, I apologize, sir.  I would be misspeaking. I don't know specifically if my rounds struck that person.  There was no way to determine that.  The suspect in that was struck by gunfire, but I wasn't a sole shooter in that, so there's no way to know if it was me or not.

Q.    Did that suspect survive, if you know?

A.    Yes, sir.

Q.    You just don't recall the name?

A.    Correct, sir.

Q.    When was your third shooting -- oh, did that suspect have a weapon in their hand?

A.    Yes, sir.

Q.    What was the weapon?

A.    A knife.

Q.    Do you have a recollection of how far you were from this person with the knife when you fired?

A.    I -- I do not, sir.

Q.    When was your third shooting?

A.    Approximately, beginning of 2018.  Maybe the end of 2017, sir.  I'm not sure.

Q.    How many shots did you fire in that incident?

A.    I don't recall specifically, sir, but it was more than one.

Q.    Do you have any estimate other than "more than one"?

A.    I would be lying, sir -- or guessing at that point.

Q.    Did you deploy your canine in that incident?

A.    Yes, I did.

Q.    Do you recall the name of the person you shot at?

George Gonzalez v. State of California, et al.
Focus Litigation Solutions

Page: 37

Andrew Reynoso

A.   I -- I don't recall, sir.

Q.   Was that a Mr. Acosta?

A.   I -- I don't recall, sir.

Q.   Was a lawsuit filed in that case, to your knowledge?

A.   Yes, sir.

Q.   Were you named as a defendant in that case?

A.   Yes, sir.

Q.   Do you recall if I was the attorney representing the person who was shot?

A.   I do.

Q.   And was I?

A.   Yes.

Q.   And if you recall, did I take your deposition in that case?

A.   Yes, sir.

Q.   And that case did not go to trial.  Is that your understanding?  It was resolved in some way?

A.   I believe so.  I didn't testify federally, no, sir.

Q.   And then when was your fourth shooting?

A.   I believe the end of -- approximately, the end of 2018.

Q.   So between 2016 and the end of 2018, you would have had four shootings; is that approximately correct?

Andrew Reynoso

A.   Yes, sir.

Q.   When were you promoted to sergeant?  In what year?

A.   I was promoted to sergeant in 2022 -- or actually, I apologize, 2022 or 2023, sir.

Q.   And then in your shooting in 2018, do you recall how many rounds you fired in that shooting?

A.   I don't, sir.  But again, more than one.  But I would be guessing if I gave you a round count, sir.

Q.   And in the 2018 shooting, when you deployed your dog, did you see a weapon in that person's hand when you fired?

A.   So the weapon used against me in that, sir, was a vehicle.  So there was a weapon in his hand, yes, the vehicle.

Q.   The vehicle.

And then this fourth shooting you had towards the end of 2018, did that person have a weapon in their hand?

A.   Yes, sir.

Q.   What was that weapon?

A.   That individual had two firearms, one in each hand.

Q.   And do you know if you struck that person?

A.   I do not, sir.

George Gonzalez v. State of California, et al.
Focus Litigation Solutions

Page: 39

Andrew Reynoso

Q.    Was that person running away from you when you fired?

A.    That individual was in a doorway of a residence.

Q.    So the shooting we're here to talk about would actually be your fifth shooting?   Do I have that correct?

A.    Yeah.   The fifth shooting of where I discharged my firearm, yes.   There was an incident prior to this where I was shot at, in a vehicle pursuit, but I did not shoot back.

Q.    And how many officer-involved shootings had you been present for where you heard shots fired but didn't fire yourself?

A.    It would be a total of -- actually, I apologize.

Can you ask that question one more time, sir?

Q.    Sure.   How many officer-involved shootings had you been present for when you heard the shots but you didn't -- you weren't one of the shooting officers?

A.    There's only one that comes to mind, sir, when I was a supervisor on Patrol.

Q.    Do you know the name of the person that was shot in that case?

A.    I do not, sir.

George Gonzalez v. State of California, et al.
Focus Litigation Solutions

Page: 40

Andrew Reynoso

Q.    Was that a case where you were looking for a suspect, and you went to the front door and talked to the wife, and then the individual ended up being shot in the backyard?

A.    There was an individual shot in the backyard while looking for a suspect; yes, sir.

Q.    Was that a Mr. Drye, if you know?

A.    Again, sir, I would be lying if I agreed with that.  I don't recall the name.

(Reporter clarification.)

BY MR. GALIPO:

Q.    Other than the one case that you referenced that you were aware that I represented the individual shot by you, were you aware of any of the other shootings that you had, or were involved in, where my office represented the person or the family?

MS. KORNBLAU:  Objection.  May misstate testimony.

But go ahead.

THE WITNESS:  The only time I was made aware of you being involved, sir, the other one would be the one you just referenced for the backyard, sir.

BY MR. GALIPO:

Q.    Okay.  During the foot pursuit -- I'm going back to the case with Mr. Gonzalez now -- there were

Andrew Reynoso

Said.

THE VIDEOGRAPHER:  Yep.  Going off the record at 11:08 a.m.

(Break taken.)

THE VIDEOGRAPHER:  We're back on record at 11:24 a.m.

BY MR. GALIPO:

Q.   Okay.  So the one shooting you told me about with the person with the knife, do you recall us talking about that to some extent --

A.   Previously just -- yes.

Q.   -- today?

A.   Yes, sir.

Q.   Was that person's name Martin?  Does that ring a bell?

A.   Michael Martin.  Yes, sir.

Q.   Do you recall that I took your deposition in that case, as well?

A.   I didn't specifically recall that, sir.

Q.   Do you remember that there was a lawsuit filed in that case, where you were named as a defendant?

A.   Yes, sir.

Q.   And the case with Mr. Acosta where you, in addition to shooting, deployed your canine, you remember you were named as a defendant in that case; is that

correct?

A.    If that's the Florida incident, then, yes, sir.

Q.    Okay.   And you do remember me taking your deposition in that case?

A.    Yes, sir.   I do.

Q.    Were you named a defendant in any other case, other than those two and this one?

A.    Not that I'm recalling offhand, sir.

Q.    Now, with respect to Mr. Gonzalez, did you have any specific information before that day, that Mr. Gonzalez had ever shot anyone?

A.    Before January 24th, sir, I did not have any knowledge of Mr. Gonzalez, that I recall.

Q.    Okay.  Any specific information, for example, that he had ever seriously injured or killed someone?

A.    No, sir.

Q.    Did you have any specific information that he had ever specifically physically injured anyone?

A.    There -- the day of, there was a restraining order that was mentioned, and a hit in relation -- I apologize -- "hit" being layman terms for a match to his name and the ex, Yvette.  I don't recall her name.

So there was a domestic violence restraining order that populated when she was ran as a protected party, and he was restrained.

George Gonzalez v. State of California, et al.
Focus Litigation Solutions

Page: 50

Andrew Reynoso

STATE OF CALIFORNIA)
                           ) ss:
COUNTY OF BUTTE       )

I, KIMBERLY E. D'URSO, do hereby certify:

That the witness named in the foregoing deposition was present remotely and duly sworn to testify to the truth in the within-entitled action on the day and date and at the time and place therein specified;

That the testimony of said witness was reported by me in shorthand and was thereafter transcribed through computer-aided transcription;

That the foregoing constitutes a full, true and correct transcript of said deposition and of the proceedings which took place;

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

That I am a certified stenographic reporter and a disinterested person to the said action;

IN WITNESS WHEREOF, I have hereunder subscribed my hand this 29th day of August, 2025.

_____
KIMBERLY D'URSO, CSR NO. 11372, RPR

George Gonzalez v. State of California, et al.
Focus Litigation Solutions

Page: 86