# EXHIBIT 3

Eugene P. Ramirez (State Bar No. 134865)
   *eugene.ramirez@manningkass.com*
Andrea Kornblau (State Bar No. 291613)
   *andrea.kornblau@manningkass.com*
Khouloud Pearson (State Bar No. 323108)
   *Khouloud.Pearson@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants CITY OF HEMET, PATRICK SOBASZEK, and ANDREW REYNOSO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| GEORGE GONZALEZ, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF CALIFORNIA; CITY OF HEMET; PATRICK SOBASZEK; ANDREW REYNOSO; SEAN IRICK; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 5:25-cv-00331 KK(DTBx) <br><br> SUPPLEMENTAL EXPERT DISCLOSURES OF DEFENDANTS CITY OF HEMET, PATRICK SOBASZEK, and ANDREW REYNOSO (DESIGNATION OF EXPERT WITNESS INFORMATION) [Fed. R. Civ. P. 26(a)(2)] |

**TO PLAINTIFFS, ALL PARTIES, & THEIR ATTORNEYS OF RECORD:**

Pursuant to Federal Rule of Civil Procedure 26(a)(2), defendants CITY OF HEMET, PATRICK SOBASZEK, and ANDREW REYNOSO (collectively "Hemet Defendants") hereby submit Hemet Defendants' supplemental disclosures regarding designation of expert and related witness information. [*See* Fed. R. Civ. P. 26(a)(2)(C)(i).]

Hemet Defendants hereby anticipate using and/or intend to offer the following experts' witness supplemental opinions and related evidence at trial:

**RETAINED EXPERTS.**

1.    **Dr. Swathi Kode**, Vollmer-Gray Engineering Laboratories, Inc., 2421 Palm Drive., Signal Hill, CA 90755, (562) 427-8435.  Dr. Kode's supplemental expert report including exhibits thereto are collectively attached as attached as **Exhibit "A"** to these disclosures.  Defendants anticipate that Dr. Kode's expert opinion testimony is expected to address the **biomechanical analysis of the incident, including human motion analysis and related implications for forensic incident reconstruction** as such relate(s) to the events at issue in plaintiffs' operative complaint allegations.

2.    **Rod Englert**, Englert Forensic Consultants, P.O. Box 605, West Linn, Oregon 97068, (503) 656-0953. Mr. Englert's supplemental expert report including exhibits thereto are collectively attached as attached as **Exhibit "C"** to these disclosures. Defendants anticipate that Mr. Englert's expert opinion testimony is expected to address issues regarding **forensic incident evidentiary analysis and reconstruction,** the forensic aspects of the officer-involved shooting at issue, including the expert's forensic examination of the pertinent physical evidence, incident scene, pertinent forensic issues re relative positioning of officers and suspect, bullet trajectory, witness statements, etc. as such relate to the events at issue in plaintiff's operative complaint allegations.

Hemet Defendants further reserve the right to call any and all parties, or its employees or in-house or non-retained expert witnesses, in this matter, or to read the deposition of any and all such witnesses who have testified or are called at the time of trial to testify and to elicit from such witnesses their percipient knowledge as well as any and all expert opinions and testimony for which they may be competent to give.

Hemet Defendants further reserve the right to call any and all expert witnesses designated by any other party in the above entitled matter.

2

**CONFIDENTIAL DOCUMENTS DESIGNATION.**

Pursuant to the Stipulation of the Parties and/or the associated Court Order, all reports, exhibits, photographs, recordings, and documents identified herein above, and/or produced as part of the Defendant's Rule 26 expert disclosures, including but not limited to all documents attached to this set of expert disclosures or referenced in expert reports, are hereby designated as "Confidential Documents" subject to the terms of the Stipulation and Protective Order, unless specifically identified in writing herein as documents that are not Confidential Documents and thus exempted from the terms of the Protective Order or related Stipulation, if any.

DATED:  January 8, 2026              **MANNING & KASS**
                                     **ELLROD, RAMIREZ, TRESTER LLP**

                                     By: _Khouloud E. Pearson_
                                     Eugene P. Ramirez
                                     Andrea Kornblau
                                     Khouloud Pearson
                                     Attorneys for Defendants, CITY OF
                                     HEMET,  PATRICK SOBASZEK, and
                                     ANDREW REYNOSO

3

# **PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 801 S. Figueroa St, 15th Floor, Los Angeles, CA 90017-3012.

On January 8, 2026, I served true copies of the following document(s) described as **SUPPLEMENTAL EXPERT DISCLOSURES OF DEFENDANTS CITY OF HEMET, PATRICK SOBASZEK, and ANDREW REYNOSO (DESIGNATION OF EXPERT WITNESS INFORMATION) [Fed. R. Civ. P. 26(a)(2)]** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address Khouloud.Pearson@manningkass.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 8, 2026, at Los Angeles, California.

_Khouloud E. Pearson_
_____
Khouloud Pearson

1

**SERVICE LIST**
**George Gonzalez v. City of Hemet, et al.**
**Case No. 5:25-cv-00331-KK-DTB**
**Our File Number:  7893-70029**

Dale K. Galipo
Marcel F. Sincich
Law Offices of Dale K. Galipo
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel:  (818) 347-3333
Fax: (818) 347-4118
Email: dalekgalipo@yahoo.com
msincich@galipolaw.com

*Attorney for George Gonzalez*

Rob Bonta
Attorney General of California
Norman D. Morrison
Supervising Deputy Attorney General
Ashley Reyes
Deputy Attorney General
Mario E. Garcia
Deputy Attorney General
California Attorney Generals Office
2550 Mariposa Mall, Room 5090
Fresno, CA 93721-2271
Telephone: (559) 705-2312
Fax: (559) 445-5106
E-mail: Ashley.Reyes@doj.ca.gov
Mario.Garcia@doj.ca.gov

*Attorneys for Defendants, State of California, acting by and through the California Highway Patrol and Officer Sean Irick*

Trenton C. Packer
GRECH PACKER & HANKS
7095 Indiana Avenue, Suite 200
Riverside, CA 92506
Tel:  (951) 682-9311
Fax: (951) 682-4289
Email: tpacker@grechpackerlaw.com

*Attorney for George Gonzalez*

Mario E. Garcia
Deputy Attorney General
California Department of Justice –
Office of the Attorney General
300 S. Spring Street, Suite 1702
Los Angeles, CA 90013
Tel:  (213) 269-6294
Fax:  (916) 731-2120
Email:  Mario.Garcia@doj.ca.gov

*Attorney for Defendants, State of California and Officer Sean Irick*

2

# EXHIBIT A



January 8, 2026

Laboratory Number 250721

Reference:          George Gonzalez

Case Name:          George Gonzalez v. City of Hemet

Case Number:        5:25-cv-0331-KK-DTB

Date of Incident:   January 24, 2024

## SUPPLEMENTAL REPORT

## BACKGROUND: MATERIALS.

The following additional documents were submitted for review:

1. Jeffrey Noble Expert Rule 26 Report
2. Scott Holdaway Rule 26 Report
3. Dr. Ryan O'Connor Rule 26 Report
4. 74986-02_GEORGE GONZALEZ_WASCO STATE PRISON_INMATE RECORDS.rec'd 120525
5. FARO SCENE DATA

### *Scene Data*

FARO raw scan data collected at the scene following the incident was processed using *SCENE 2019.2*. Figure 1 depicts the scanned walkway area, including the end of the truck ramp, the rest position of Mr. Gonzalez, and the locations of cartridge casings.



Figure 1

Figure 2 shows a detailed view of the jacket, shorts, pistol, and magazine of Mr. Gonzalez at the scene.



Figure 2

Figure 3 shows a detailed view of the two clusters of casings identified as Cluster 1 and Cluster 2 associated with the three officers.  Based on the review of the evidence, Cluster 1 belongs to Officer Irick and Corporal Sobaszek, Cluster 2 belongs to Sergeant Reynoso.

**VOLLMER·GRAY**
ENGINEERING LABORATORIES



Figure 3

Based on the review of the body-worn camera of Corporal Sobaszek, the approximate position of Mr. Gonzalez and Corporal Sobaszek when the first shots were heard is seen in Figure 4. The distance between them was approximately in the range of 35 feet.



Figure 4

### *Body-worn camera Footage*

Video analysis of the body-worn camera footage from Corporal Sobaszek indicated that Mr. Gonzalez turned his torso and head to his left [20:04:42 and 20:04:44] in the seconds leading up to the first shots being heard, as illustrated in Figures 5 and 6.



Figure 5



Figure 6

Mr. Gonzalez's right arm is seen raised approximately 1.5 seconds before the shots were heard, as seen in Figure 7.



Figure 7

Mr. Gonzalez then ran from the right side of the walkway to the left side of the walkway. Figure 8 shows a zoomed view of Mr. Gonzalez dropping an object, approximately 1 second after the shots are heard.



Figure 8

Figure 9 shows a zoomed view of Mr. Gonzalez with his torso bent forward at the end of the walkway at 20:04:47.



Figure 9

Figure 10 shows a zoomed view of Mr. Gonzalez on his knees at 20:04:48.

**VOLLMER-GRAY**
ENGINEERING LABORATORIES



Figure 10

### *Medical Record Review*

Medical records from Wasco State Prison indicate that Mr. Gonzalez was shot in foot and leg and he complained of a torn ACL and MCL of right knee.

A report from Riverside Health System dated January 24, 2024, indicates that the bullet entered through the left thigh, traveled into the peritoneal cavity via the left retroperitoneal space, and caused a serosal injury. Figure 11 shows the entrance wound on the left thigh.



Figure 11



Gunshot wound to the left lateral chest was extrathoracic. Contusion of the lung was reported. Imaging of the chest indicated that there were comminuted fractures of the left 8th and 9th ribs, and multiple bullet fragments were identified in the lower chest wall. Figure 12 shows the entrance wound to the left torso.



Figure 12

### Evidence Inspection

The following evidence was inspected on December 18, 2025, at 43950 Acacia Avenue, Hemet, CA.

1) A size 4XL jacket with a hoodie was examined. The total length of the jacket is 39 inches. The width of the jacket is 25 inches. The following defects were noted on the jacket:

   o An oblique through-and-through defect at an approximate 45-degree angle was located 2 inches from the bottom of the jacket and 3 inches from the left seamline. This is labeled "A" in Figure 13.



- o A cluster of defects was located inside the left pocket, approximately 6.5 inches from the bottom of the jacket and 6 inches from the side seam. Additional defects on the left pocket were located approximately 8.5 inches from the side seam and 4 inches from the left seamline. This is labeled "C" in Figure 13. These defects are consistent with the puncture wound on the left side of Mr. Gonzalez's torso.

- o An unknown defect was located 4.75 inches from the left seamline and 14.5 inches from the bottom of the jacket.



Figure 13

2) YAGO XL shorts were examined. The length of the shorts is approximately 24.5 inches, and the waist width is approximately 15 inches. The following defects were identified:

- o An unknown defect was located approximately 8.5 inches from the top and 5 inches from the right seam. No associated defect on the body of Mr. Gonzalez is identified.

- o A defect was located approximately 12 inches from the top and 3.75 inches from the left seamline. This defect on the left side of the shorts is consistent with the puncture

wound on the left thigh. This is identified as "B" in Figure 14. The red arrow shows the upward travel path of the projectile.



Figure 14

3) Nike Men's US size 10 Air Max shoes were examined. The length of the shoes is approximately 12 inches, and the width is 4.5 inches. The maximum height of the shoes is approximately 5 inches. The following defects were located on the left shoe.

o An exterior defect was located on the left side of the left shoe at approximately 1.75 inches from the bottom and 4.75 inches from the back of the shoe. This is identified as "A" in Figure 15. The red arrow shows the direction the bullet traveled inside the shoe.

**VOLLMER·GRAY**
ENGINEERING LABORATORIES



Figure 15

o   A defect was located inside the shoe, approximately 3 inches from the top of the left

shoe. This is identified as "A1" in Figure 16.



Figure 16

o   The two defects on the shoe are consistent with the projectile traveling from the left

outside edge of the shoe toward the middle ball of the foot. The interior defect on the

left shoe is consistent with the puncture wound on the ball of the left foot.

4)  A single sock was examined with no defects.

**VOLLMER-GRAY**
ENGINEERING LABORATORIES

5) A projectile in a specimen cup from the hospital was examined. The projectile was not identified as the part of the body from which it was retrieved. Additional eleven projectiles/projectile fragments were also examined.

6) A black gun with no serial number was examined. The length of the gun is approximately 6.5 inches, and the height is approximately 3.7 inches.

7) A tungsten steel ring and lighter were examined, and no defects were identified.

**ANALYSIS/RECONSTRUCTION/CONCLUSIONS**

The following are based upon my background, education, training, and experience and, except where indicated, are to a reasonable degree of engineering probability.

Based on the review of the medical records and physical and testimonial evidence, the positions of Mr. Gonzalez and the officers, and the following opinions were formed.

1. Mr. Gonzalez's arm was raised up approximately 1.5 seconds before the shots were fired. He was turning his torso and head to his left, toward the officers, before the shots were heard. Mr. Gonzalez ran from right to left of the walkway before he fell to the ground as the shots were being fired. He dropped an object, approximately one second after the first shots were heard.

2. The puncture wound on the thigh was not associated with an exit wound on the body. The projectile traveled upward, left to right and caused a serosal injury. Examination of the physical evidence of the shorts and the jacket confirms the bullet entered the left thigh, and an associated exit defect was not identified. Considering the position of the three officers and Mr. Gonzalez, the upward trajectory is consistent with Mr. Gonzalez's torso bent forward when the shot was fired.



3. The puncture wound on the left lateral torso is consistent with an obliquely oriented projectile trajectory from the left side of the jacket. No associated exit defect was located on the jacket, and no associated exit wound was reported on the body of Mr. Gonzalez. The projectile was extrathoracic and fractured the 8th and 9th lateral ribs. Figure 17 shows the location of the 8th and 9th ribs [1].



Figure 17

4. The defect to the left shoe is consistent with oblique projectile entry when the shot was fired. The projectile traveled from the left lateral side of the shoe to the central region of the ball of the foot.  Figure 18 shows the left shoe. This is consistent with the projectile entering the left shoe before he fell on his knees to the ground.



Figure 18



Should additional information become available, this report may be supplemented.

Respectfully submitted,

Swathi Kode, PhD
Biomechanical Engineer

Reviewed by,

Ahamed Shabeer, PhD
Mechanical Engineer

### **References**

1. Omar A. Safarini; Bruno Bordoni., Anatomy, Thorax, Ribs.

2421 Palm Drive, Signal Hill, CA 90755      (562)427-VGEL (8435)      info@vglabs.com
www.vglabs.com

# EXHIBIT B

**ef** englert FORENSIC CONSULTANTS

January 8, 2026

TO:        Ashley Reyes            via email: ashley.reyes@doj.ca.gov
           Mario Garcia            via email: mario.garcia@doj.ca.gov
           Deputy Attorney General
           CA Department of Justice
           Office of the Attorney General
           Tort & Condemnation Section
           2550 Mariposa Mall
           Suite 5000
           Fresno, CA 93721

           Andrea Kornbleau    via email: andrea.kornblau@manningkass.com
           Khouloud Pearson   via email: khouloud.pearson@manningkass.com

           Manning & Kass, Ellrod, Ramirez, Trester, LLP
           801 S. Figueroa Street
           15th Floor
           Los Angeles, CA 90017

FROM:      Rod Englert

RE:        **EXPERT'S RECONSTRUCTION REPORT**
           *Gonzalez v. Hemet Police Department (case no. 5:25-cv-00331-KK-DTB)*

**SUMMARY- Based upon materials reviewed**
**This summary is provided for convenience and does not necessarily itemize every single fact relied upon by this expert in the formation of my opinions and conclusions in this matter. It is based on my review of the records and materials identified herein below. I do not contend to have direct personal knowledge of the incident facts.**

On January 24, 2024, three members of the Riverside County Regional Gang Task Force Region 3 (GTF3), assigned to patrol within the city of Hemet, were involved in an officer involved shooting incident. The GTF3 team members included California Highway Patrol (CHP) Officer Sean Irick, Hemet Police Department (HPD) Detective Patrick Sobaszek, and HPD Sergeant Andrew Reynoso. George Lara Falcon-Gonzalez, Jr. was initially contacted on a felony warrant at a residence in Hemet, California. Gonzalez was standing outside of a 2007 Hyundai Sonata when the officers gave commands to take Gonzalez into custody. Gonzalez did not comply with officer commands and entered the Sonata, placed a sunscreen in the window and continued to move within the vehicle. Gonzalez threw items from the vehicle and made verbal statements to officers that they would have

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 2


to kill him. A K9 unit was onsite as well as other less lethal means of force to persuade Gonzalez to comply. Sergeant Reynoso continued to negotiate with Gonzalez through verbal commands, which he did not comply with. Gonzalez then drove away in the Sonata at a high rate of speed, at which time a pursuit ensued.

Gonzalez continued to flee law enforcement, eventually ending the pursuit in the city of Beaumont when the Sonata became disabled and stuck on train tracks. Gonzalez subsequently exited the vehicle through the driver's door and fled on foot, ignoring officer commands to stop. A foot pursuit then ensued, continuing into an industrial complex in the 500 block of B Street where Gonzalez presented a handgun in his right hand while continuing to flee. In response to Gonzalez's actions, all three GTF3 members engaged Gonzalez and discharged their firearms. Gonzalez was struck several times prior to dropping his firearm and falling to the ground. Medical aid was rendered prior to Gonzalez being transported to Riverside University Health System Medical Center in Moreno Valley where he was treated for nonfatal gunshot wound injuries.


## CHRONOLOGY

09/18/25    Englert Forensic Consultants were contacted by California Deputy Attorney General Ashley Reyes regarding being retained for case review and reconstruction.

10/01/25    Englert Forensic Consultants notified of approval for being retained for case review and reconstruction.

10/08/25    Receipt of initial case file materials.

11/18/25    Englert Forensic Consultants retained by Manning & Kass Law Firm, working in conjunction with California Deputy Attorney General Ashley Reyes.

11/20/25    Englert Forensic Consultants traveled to Hemet and Beaumont, California to conduct meetings and a walkthrough of the incident location.

12/18/25    Englert Forensic Consultants traveled to Hemet, California to conduct an evidence review at Riverside County Sheriff's Office.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 3

## MATERIALS/RECORDS REVIEWED:

| DESCRIPTION | Quantity |
|---|---|
| **Case File Materials** | |
| STATEOFCA000001; 1. CIIT Cover Sheet C24-601-001 | 1 page |
| STATEOFCA000002; A. Table of Contents | 1 page |
| STATEOFCA000003-4; B.1. Summary of Incident | 2 pages |
| STATEOFCA00005; B.2. Scene Description | 1 page |
| STATEOFCA0000006-35; B.3. Employee's Profile | 30 pages |
| STATEOFCA000036-37; B.4. Suspect's Profile Redacted | 2 pages |
| STATEOFCA000038; B.5. Criminal Investigative Agency | 1 page |
| STATEOFCA000039; B.6. Crime Scene Evidence Collection and Storage | 1 page |
| STATEOFCA000040; B.7. Injury Descriptions | 1 page |
| STATEOFCA000041; B.8. Forensic Examination | 1 page |
| STATEOFCA000042-43; B.9. Critical Incident Debriefing | 2 pages |
| STATEOFCA000044-45; C.1. Identification of Firearms-Weapons_Redacted | 2 pages |
| STATEOFCA000046; C.2. Witnesses | 1 page |
| STATEOFCA000047-48; C.3. Other Involved Personnel | 2 pages |
| STATEOFCA000049-53; D. Vehicles Redacted | 5 pages |
| STATEOFCA000054-77; E.1. Officer's Statement | 24 pages |
| STATEOFCA000078; E.2. Obtaining a Public Safety Statement-Use of Force Critical Incident | 1 page |
| STATEOFCA000079; E.3. Witness Statements | 1 page |
| STATEOFCA000080; F. Diagrams | 1 page |
| STATEOFCA000081-84; G. Photography and Video | 4 pages |
| STATEOFCA000085-99; H. 1. Annexes-CHP 271, Critical Incident -- Potential Civil Liability | 15 pages |
| STATEOFCA000100-101; H.2. CHP 36, Property Receipt | 2 pages |
| STATEOFCA000102; H.3. Blood Alcohol-Toxicology Report | 1 page |
| STATEOFCA000103-113; H.4. Crime Scene Logs | 11 pages |
| STATEOFCA000114-119; H.5. CHP 125, Weapon Control Memorandum Redacted | 6 pages |

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 4

| | |
|---|---|
| STATEOFCA000120-123; H.6. Press Releases | 4 pages |
| STATEOFCA000124-129; H.7. The DA's Findings | 6 pages |
| STATEOFCA000130; H.7.a. Riverside County District Attorney's Findings | 1 page |
| STATEOFCA000131-136; H.8. Criminal Report | 6 pages |
| STATEOFCA000137; H.9. Coroner's Report – not applicable | 1 page |
| STATEOFCA000138-153; Det. Sobaszek - Charting_Redacted | 16 pages |
| STATEOFCA000154-253; Photos - Hemet PD Charting Photos | 100 pages |
| STATEOFCA00254-278; Photos - Officer Irick - Charting_Redacted | 25 pages |
| STATEOFCA000279-31; More Officer Irick Charting Photos_Redacted | 32 pages |
| STATEOFCA000311-329; Photos Sgt Reynoso- Charting_Redacted | 19 pages |
| STATEOFCA000330-354; Suspect Hospital Scene | 25 pages |
| STATEOFCA000355-413; Photos of Suspect vehicle | 59 pages |
| STATEOFCA000414-489; Photos of Suspect vehicle | 76 pages |
| STATEOFCA000490-536; Photos of Suspect vehicle | 47 pages |
| STATEOFCA000537-602; Photos of Suspect vehicle | 66 pages |
| STATEOFCA000603-687; More photos of Initial IOS and Scene (folder 101413) | 85 pages |
| STATEOFCA000688-722; More photos of Initial IOS and Scene (folder 101413) | 35 pages |
| STATEOFCA000723-802; More photos of Initial IOS and Scene (folder 101413) | 80 pages |
| STATEOFCA000803-844; More photos of Initial IOS and Scene (folder 101413) | 42 pages |
| STATEOFCA000845-1034; More photos of IOS and Scene (folder 101414) | 190 pages |
| STATEOFCA001035-1128; More photos of IOS and Scene (folder 101415) | 94 pages |
| STATEOFCA001129-1303; Redacted Riverside County Sheriff's Incident Reports (1) | 175 pages |
| 1304. SDT. RUHS Medical Records. 001. 112125 | 432 pages |
| 1305. SDT. RUHS Medical Records. 002. 112125 | 442 pages |
| 1306. SDT. RUHS Medical Records. 003. 112125 | 442 pages |
| **Audio/Video Recordings** | |
| STATEOFCA001640; Irick Interview- SUBJECT TO PROTECTIVE ORDER | 39 minutes, 37 seconds |

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 5

| | |
|---|---|
| STATEOFCA001641; Reynoso_Axon_Body_3_Video_2024-01-24_1936_X6033520Y- SUBJECT TO PROTECTIVE ORDER | 1 hour, 16 minutes, 49 seconds |
| STATEOFCA001642; Snapshot-2024-01-25 02.52.58.888 AM - SUBJECT TO PROTECTIVE ORDER | 28 minutes, 2 seconds |
| STATEOFCA001643; Sobaszek_Axon_Body_3_Video_2024-01-24_1936_X6033467W - SUBJECT TO PROTECTIVE ORDER | 1 hour, 16 minutes, 57 seconds |
| STATEOFCA001644; STAR 9 Aerial- SUBJECT TO PROTECTIVE ORDER – unable to open | |
| **Transcriptions** | |
| Transcript of Remote Video Deposition of Sean Irick, dated 07/22/25 | 108 pages |
| Transcript of Remote Video Deposition of Patrick Sobaszek, dated 07/23/25 | 109 pages |
| **Court Records** | |
| Plaintiff's Second Amended Complaint for Damages, dated 06/05/25 | 42 pages |

**The foregoing list underscores those records to which I have devoted substantial consideration. In the event any items reviewed were inadvertently omitted from the foregoing list, this expert will gladly supplement this list upon questioning under oath and reserves the right to supplement this list in a supplemental report.**

## REVIEW OF PHOTOGRAPHS/VIDEO AND ASSOCIATED DOCUMENTS CRITICAL TO RECONSTRUCTION PURPOSES

*NOTE: For purposes of this report, all substances that have the appearance, color, and physical characteristics of blood will be referred to as blood or blood-like. No presumptive tests were utilized.*

*NOTE: All listed measurements are approximations.*

*NOTE: All diagrams and sketches are not to scale.*

**MEDICAL PROTOCOL: Description of Injuries**

Gonzalez was treated at the Riverside University Health System Medical Center in Moreno Valley. Gonzalez was initially referred to as "Davie Tracy Doe" upon admission to the hospital, as annotated in his medical records. Evidence of multiple gunshot wound (GSW) injuries were noted, which included the following:

- One (1) GSW to the lower, left, lateral chest.
- One (1) GSW to the left lateral thigh.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 6

- One (1) superficial GSW to the sole of the left foot.

**Lower Left Lateral Chest:**

One (1) perforating GSW to the left, lower, lateral chest with fractures of ribs eight and nine.



*Image 1: Perforating GSW to the left lower, lateral chest.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 7



Image 2: Anatomical location of ribs eight and nine.

## Left Lateral Thigh:

One (1) penetrating GSW to the left lateral thigh.



*Image 3: GSW to the left lateral thigh.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 8


**GSW to the Sole of the Left Foot:**

One (1) superficial GSW to the sole of the left foot.



*Image 4: GSW to the sole of the left foot.*

**PHYSICAL EVIDENCE ANALYSIS:**
Date:        12/18/2025
Time:        11:25 a.m.
Location:    Riverside County Sheriff's Officet, Hemet Station
             43950 Acacia St
             Hemet, CA 92544

Present:     Mario Garcia – Attorney Representative, Department of Justice (DOJ)
             Sean Irick – Officer, California Highway Patrol (CHP)
             Angela Brunson – Attorney, Manning & Kass (MKERT)
             Dr. Swathi Kode – Biomechanical Engineer, Vollmer-Gray Engineering
                          Laboratories (VGL)
             Stacey Chepren – Analyst, Englert Forensic Consultants (EFC)

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 9

Ramon Purcell – Photographer, EFC
Rod Englert – Analyst, EFC
Martin Alfaro – Investigator, Riverside County Sheriff's Office (RCSO)

All items of evidence were opened and resealed by Investigator Martin Alfaro.

**EFC Item #1** – (CM30)

One (1) brown paper bag containing one black and grey hoodie reported to belong to George Falcon-Gonzalez, Jr.; Tapout brand, size 4XL, 100% polyester, with two pockets in the front.

- The hoodie measured 39 inches in overall length, and 25 inches across the bottom. The sleeves measured 19.5 inches in length from the underarm to the end of the sleeve. The sleeves measured 5.5 inches in width.
- Negative findings in the pockets.
- Two (2) medical intervention cuts were observed to the front and sleeves.



*Image 5: Black and grey Tapout brand hoodie, size 4XL, 100% polyester (CM30).*

- Blood saturation was observed on the left front chest.
- A bloodstain transfer was observed on the right sleeve and right side of the hood.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 10



*Image 6: Blood saturation on left chest, transfer on right sleeve, and Defect A to lower left (CM30).*

- Two defects of significance were observed to the hoodie.
    - One (1) to the front lower left quadrant.
    - One (1) to the mid left back.

- Bullet Type Defect labeled A: Lower left seam of hoodie.
    - On the lower left quadrant of the hoodie crossing the bottom seam
    - Located 3 inches in from the left side seam of the hoodie and 2-1/2 inches up from the bottom seam.
    - The defect measured 1 inch by 1/4 inch.
    - The defect was diagonally oriented and appeared to be at a 45-degree, upward angle.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 11



*Image 7: Bullet Defect A, lower left seam (CM30).*

- A saturation bloodstain was observed on the right side
- <u>Defect labeled B</u>: Left mid-back left of hoodie.
    - Located 4-3/4 inches in from the left seam and 14-1/2 inches up from the bottom seam.
    - The defect was oval in shape, and measured 1/8 inch.



*Image 8: Bloodstain right side, mid-back and Defect B (CM30).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 12

**EFC Item #2** – (CM29)
One (1) brown paper bag containing one dark plaid pair of men's shorts reported to belong to George Falcon-Gonzalez, Jr.; Yago brand, size XL, 100% polyester, elastic waistband, with two pockets in the front, two cargo style pockets on the sides (one per leg), and two rear pockets, with the left rear pocket pulled inside out.

- The shorts measured 24-1/2 inches in overall length, and 15 inches wide. The inseam measured 12 inches in length, and the leg width 12 inches.
- $340.00 in cash was located in the right waist pocket. Investigator Alfaro took possession of the cash and logged it into evidence.
- Two (2) medical intervention cuts were observed to the left leg of the shorts.
- A saturation bloodstain was observed on the right rear pocket.
- A bloodstain was observed on the back of the elastic waistband.
- Two (2) defects were observed to the front of the shorts.



*Image 9: Men's shorts, Yago brand, size XL, 100% polyester (CM29).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 13

- Defect labeled A: Right side of the front of the shorts.
  - Between the right-side cargo pocket and waist pocket.
  - Located 8-1/2 inches down from the top of the shorts and 5 inches in from the right side of the shorts.
  - This defect appeared to have scorched edges, resembling a cigarette burn.



*Image 10: Defect A with scorched edges, possible cigarette burn (CM29).*

- Defect labeled B: Left front side of cargo pocket on left leg.
  - Located 12 inches down from the top of the shorts and 3-3/4 inches in from the left seam.
  - An associated defect (B-1) was located in the cargo pocket.
  - Defect B corresponds with the left thigh wound injury, which traveled in a back to front, and upward direction.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 14



*Image 11: Trajectory rod placed through Defect B1 on left side cargo pocket (CM29).*

## EFC Item #3 – (GC101)

One (1) brown paper bag containing one pair of black and white shoes, and one sock reported to belong to George Falcon-Gonzalez, Jr. Nike brand, Air Max, size men's U.S. 10. The sock was white and appeared to have been on a right foot. Only one sock was present with no defect.

- The shoes measured 12 inches in length, 4-1/2 inches in width, and 5 inches in height.
- The sock had no significant findings.
- The left shoe had one defect to the left midsole.
- <u>Bullet Defect labeled A</u>: Left side of left shoe.
  - ○ Located 1-3/4 inches up from the bottom of the shoe, 4-1/4 inches forward from the back of the shoe, and 3 inches down from the top of the shoe.
  - ○ An associated defect (A-1) was located in the sole of the shoe. It was visible inside the shoe and was palpable in the sole.
  - ○ Defect A corresponds to the left foot wound.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 15



*Image 12: Men's Nike shoe with bullet Defect A (GC101).*



*Image 13: Close-up photograph of Defect A (GC101).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 16



*Image 14: Trajectory rod to demonstrate the path of travel of Defect A (GC101).*

**\*NOTE: The calibers of <u>EFC Items #4-16</u> are undetermined and therefore cannot be assigned at this time without further forensic examination and testing.**

<u>**EFC Item #4**</u> – (GC202)

One (1) manila envelope containing one small plastic bag and small plastic cup containing a projectile reported to have been removed from the body of George Falcon-Gonzalez, Jr.

The projectile was engraved on one end and appeared to have traces of biological material on the other end.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 17


*Image 15: Damaged bullet, removed from Gonzalez (GC202).*


*Image 16: Damaged bullet with possible biological material present (GC202).*

**EFC Item #5** – (CM25)
One (1) brown paper bag containing a manila envelope with one deformed copper jacket and lead bullet fragments. The projectile was deformed with unknown powder residue present.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 18


*Image 17: Deformed copper jacket and lead bullet fragments (CM25).*

**EFC Item #6** – (CM31)
One (1) brown paper bag containing a manila envelope with one deformed copper jacketed bullet with lead core. The projectile was mostly intact with unknown powder residue present.


*Image 18: Deformed copper jacketed bullet (CM31).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 19

**EFC Item #7** – (CM32)

One (1) brown paper bag containing a manila envelope with multiple copper jacket bullet
fragments.



*Image 19: Copper jacket bullet fragments (CM32).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 20

**EFC Item #8** – (CM34)
One (1) brown paper bag containing a manila envelope with one deformed copper jacketed bullet with lead core. The projectile was flattened with unknown powder residue present. A small amount of apparent fibers were present on the end of the bullet petals.



*Image 20: Deformed copper jacketed bullet with lead core (CM34).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 21



*Image 21: Deformed copper jacketed bullet with intact petals (CM34).*

**<u>EFC Item #9</u>** – (CM35)
One (1) brown paper bag containing a manila envelope with one deformed intact copper jacketed bullet. The lead core was not exposed and no petals peeled back. Striation marks were present along the entire length of one side, indicating it may have impacted a hard surface such as a paved or concrete type surface.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 22



*Image 22: Deformed copper jacketed bullet with striations on a flattened side present (CM35).*

**EFC Item #10** – (CM36)

One (1) brown paper bag containing a manila envelope with one deformed copper jacketed bullet with intact lead core. Striations were present along the entire length of a flattened side, indicating it may have impacted a hard surface such as a paved or concrete type surface.



*Image 23: Deformed copper jacketed bullet (CM36).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 23

**EFC Item #11** – (CM36)
One (1) brown paper bag containing a manila envelope with one deformed copper jacketed bullet.



*Image 24: Deformed copper jacketed bullet (CM36).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 24

**EFC Item #12** – (CM39)
One (1) brown paper bag containing a manila envelope with one deformed copper jacketed bullet that appeared to still contain the lead core. Unknown powder residue was present.



*Image 25: Deformed copper jacketed bullet (CM39).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 25

**EFC Item #13** – (CM40)

One (1) brown paper bag containing a manila envelope with one deformed copper jacketed bullet with lead core exposed. The copper jacket had an unknown powder residue present.



*Image 26: Deformed copper jacketed bullet (CM40).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 26

**EFC Item #14** – (CM41)
One (1) brown paper bag containing a manila envelope with one deformed copper jacketed bullet with intact petals.


*Image 27: Deformed copper jacketed bullet (CM41).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 27



*Image 28: Deformed copper jacketed bullet with intact petals (CM41).*

**EFC Item #15** – (CM46)
One (1) brown paper bag containing a manila envelope with one deformed copper jacketed bullet and copper jacket fragment. A partial lead core was present.



*Image 29: Copper jacketed bullet and copper jacket fragment (CM46).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 28

**EFC Item #16** – (CM27)
One (1) cardboard box containing a black semi-automatic handgun described as "Ghost Gun Pistol, Glock Style" on the evidence label; reportedly recovered from George Falcon-Gonzalez, Jr. at the scene.

- The slide of the gun measured 6-1/4 inches long and 3-3/4 inches wide. The bottom of the hand grip to the top of the back of the slide measured 3-3/4 inches.
- The gun did not contain a serial number or any other potential numeric or alphanumeric identifiers.
- Inside the barrel a light red/rust colored substance was visible.



*Image 30: Semiautomatic, Glock style, pistol (CM27).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 29



*Image 31: Light red/rust colored material inside the barrel of the Glock style pistol (CM27).*

**INITIAL MEETING WITH ATTORNEYS AND OFFICERS:**

Date:       11/20/2025
Time:       9:00 a.m.
Location:   Hemet Police Department (HPD)
            450 E Latham Avenue
            Hemet, CA

Present:    Mario Garcia – Attorney Representative, Department of Justice (DOJ)
            Sean Irick – Officer, California Highway Patrol (CHP)
            Angela Brunson – Attorney, Manning & Kass (MKERT)
            Patrick Sobaszek – Detective, HPD
            Gabriel Gomez – Sergeant, HPD Liaison
            Dr. Swathi Kode – Biomechanical Engineer, Vollmer-Gray Engineering
                        Laboratories (VGL)
            Stacey Chepren – Analyst, Englert Forensic Consultants (EFC)
            Ramon Purcell – Photographer, EFC
            Rod Englert – Analyst, EFC

On November 20, 2025, at 9:00 a.m., members of EFC met with the above listed individuals to discuss facts of the case. This meeting was conducted in the presence of

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 30

counsel for Officer Irick and Detective Sobaszek. An overview of the incident was discussed, to include future evidence examination and a site visit.

## CHRONOLOGY OF INCIDENT

### Initial Incident Beginning at 40525 Whittier Avenue in Hemet, California

At 7:16 p.m. on January 24, 2024, law enforcement units were dispatched to 40525 Whittier Avenue in Hemet, California. A female identified as Yvette Nieves had called Detective Sobaszek after speaking with him earlier that day and stated George Falcon Gonzalez, Jr. was at 40525 Whittier Avenue in Hemet, California refusing to leave, and she believed he was armed with a firearm.

The images below illustrate the initial law enforcement response where Officer Irick and Detective Sobaszek were present, the vehicle pursuit, and subsequent transition of the vehicle pursuit to a foot pursuit when the 2007 Hyundai Sonata Gonzalez was driving became disabled on railroad tracks next to Perricone Juices in Beaumont, California.

Multiple units were initially dispatched to 40525 Whittier Avenue in Hemet, California. Units with less than lethal (LTL) means of force were part of the response and subsequent pursuit. These weapons included a K-9 Unit, an officer armed with a 40mm tactical weapon with less than lethal ammunition, and spike strips.



*Image 32: Screenshot from Sergeant Reynoso's body worn camera (BWC) of law enforcement response to scene at 40525 Whittier Avenue.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 31



*Image 33: Google Maps image of distance between initial scene response and location of foot pursuit (21.6 miles).*

- Vehicle pursuit began at 7:45 p.m. at 40525 Whittier Avenue in Hemet, California.
- Multiple spike strips were deployed at locations throughout the vehicle pursuit to disable Gonzalez's vehicle. All attempts were unsuccessful.
- Throughout the pursuit, Gonzalez disregarded five stop signs, three red lights, was passing on the shoulder, and driving against traffic in a residential area.
- Gonzalez drove at a reported speed of 70 miles per hour (mph) in residential areas, 85 mph in another residential area while driving in oncoming lanes of travel.
- Gonzalez drove at a reported speed of 100 mph using all lanes of the road to pass other vehicles on the road.
- Vehicle pursuit ended at 8:03 p.m., at Perricone Juices, 550 B Street in Beaumont, California.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 32



*Image 34: Hyundai Sonata, driven by Gonzalez disabled on railroad tracks where foot pursuit began.*

**SITE VISIT:**

Date:        11/20/2025
Time:        11:25 a.m.
Location:    Perricone Juices Factory
             550 B Street
             Beaumont, CA

Present:     Mario Garcia – Attorney Representative, Department of Justice (DOJ)
             Sean Irick – Officer, California Highway Patrol (CHP)
             Angela Brunson – Attorney, Manning & Kass (MKERT)
             Patrick Sobaszek – Detective, HPD
             Gabriel Gomez – Sergeant, HPD Liaison
             Dr. Swathi Kode – Biomechanical Engineer, Vollmer-Gray Engineering
                              Laboratories (VGL)
             Stacey Chepren – Analyst, Englert Forensic Consultants (EFC)
             Ramon Purcell – Photographer, EFC
             Rod Englert – Analyst, EFC

On November 20, 2025, at 11:25 a.m., members of EFC, accompanied by the above individuals, conducted a site visit of the Perricone Juices Factory. Per entry permissions at the facility, Production Manager Victor Marquez-Vizcarra and Senior Director of Operations Jeff Hannah accompanied all persons during the site visit.

A walkthrough of the incident location was conducted with Officer Irick and Detective Sobaszek. This site walkthrough was conducted in the presence of attorneys for Officer

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 33


Irick and Detective Sobaszek. The purpose of the walkthrough was to determine the path of travel and distance covered during the pursuit.

Following the initial walkthrough of the location and determining the path of travel, pertinent measurements were collected. The following path of the foot pursuit was as follows and will be supported by a forensic animation.

- Foot pursuit began at the railroad tracks and continued in an eastward direction for 87 yards.



*Image 35: Drone image of beginning of foot pursuit; depicting direction and distance traveled.*

- The foot pursuit turned slightly southeast around a large pile of dirt and continued for 122 yards paralleling the Perricone Juices Factory wall and past a truck ramp where multiple yellow posts were located.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 34



*Image 36: Drone image of where the foot pursuit turned at a dirt pile and continued; depicting direction and distance traveled.*

- The foot pursuit turned south into an open gate entry and continued for 42 yards before turning west.



*Image 37: Drone image of foot pursuit transitioning south into an open gate entry; depicting direction and distance traveled.*

- The final leg of the foot pursuit continued for 144 yards to the termination where Gonzalez went down in front of an office entry.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 35



*Image 38: Drone image of the final leg of the foot pursuit; depicting direction and distance traveled.*

- During the final leg of the pursuit the officers chased Gonzalez through a narrow pathway measuring 3 feet wide for 88 yards to the area where the shooting initiated.
- Officers were an estimated 30 feet from Gonzalez and an office entry with a large paned window when the shooting occurred.

The total distance of the foot pursuit was 395 yards.



*Image 39: Drone image depicting the overall directions and distances of the foot pursuit.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 36


## Analysis of Body Worn Camera and Surveillance Video

Video recordings from officer BWC and surveillance video captured by factory cameras were reviewed for evidentiary and body position purposes.



*Image 40: Screenshot from Sobaszek's BWC of Gonzalez observed fleeing officers during the foot pursuit.*



*Image 41: Screenshot from Reynoso's BWC of foot pursuit through narrow corridor with Irick and Sobaszek in the lead.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 37



*Image 42: Screenshot from Sobaszek's BWC of Gonzalez observed looking over his left shoulder with a dark-colored item raised in the air in his right hand (circled in yellow), during the foot pursuit.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 38



*Image 43: Zoomed in screenshot from Image 41 from Sobaszek's BWC of Gonzalez observed looking over his left shoulder with a dark-colored item raised in his right hand, during the foot pursuit.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 39



*Image 44: Screenshot from Sobaszek's BWC of shot fired at 20:04:46 by Sobaszek, with visible sparks and smoke leaving Sobaszek's firearm (circled in yellow).*



*Image 45: Screenshot from Sobaszek's BWC of Gonzalez observed dropping a dark-colored item one second later at 20:04:47 (circled in yellow).*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 40



*Image 46: Zoomed in screenshot from Sobaszek's BWC of Gonzalez observed dropping a dark-colored item (circled in yellow) during the foot pursuit.*



*Image 47: Screenshot from Sobaszek's BWC of Gonzalez observed with a black-colored gun on the ground next to him (circled in yellow) when officers approached after the shooting incident.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 41



*Image 48: Gun (placard 27) and loaded magazine (placard 26) in photo from scene investigation.*



*Image 49: Loaded magazine (placard 26) in photo from scene investigation.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 42



*Image 50: Inventory of magazine and live rounds (placard 26) in photo from scene investigation.*



*Image 51: Inventory of gun (placard 27) with live round chambered in photo from scene investigation.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 43


## CONCLUDING OPINIONS

**Along with the other forensic work described herein completed, but not limited to the examination of the physical evidence, site visit, review of investigative documents and photographs, medical report and photographs, scene reports and images, and audio and video recordings, the following are the forensic incident analysis opinions I have formed to a reasonable degree of scientific probability based upon my review of the evidence in this case. I reserve the right to amend my opinions should further evidence become available to me.**

- Law enforcement initially made contact with Gonzalez in response to a call for service at 40525 Whitter Avenue in Hemet, California.
- Gonzalez had a felony warrant at the time and was non-compliant with commands given by law enforcement officers attempting to take him into custody.
- Less than lethal means of force were utilized.
- Gonzalez fled in his vehicle from the residence until his vehicle became disabled on railroad tracks near the Perricone Juices Factory.
- Gonzalez fled from his vehicle on foot visibly holding a firearm in his right hand and continued to be non-compliant with commands by Sobaszek and Irick to stop.
- During the foot pursuit, Gonzalez looked back over his left shoulder with the gun raised in his right hand.
- Upon seeing Gonzalez raise the firearm in his right hand and look over his left shoulder, Sobazsek brought his gun up and put both hands on it and shot. A volley of shots followed from all three officers, including Irick and Reynoso.
- After multiple shots were fired at least one of which struck Gonzalez, Gonzalez's gun dropped to the ground followed by Gonzalez falling to the ground (observed on Sobaszek's BWC at 20:04:47).
- Gonzalez was bladed and angled left when three bullets struck the left side of his body: sole of the left foot, left lateral side, and left thigh.
- The gun remained on the ground next to Gonzalez until he was taken into custody.
- Two (2) Perricone Juices employees, later identified as Erick Bonilla and Israel Lopez, witnessed the foot pursuit and subsequent shooting.
  - Bonilla stated he "heard someone yelling 'Stop!'" then saw about four uniformed officers chasing behind and yelling for a Hispanic male to stop, but the Hispanic male continued to evade officers.
  - Bonilla then saw the Hispanic male with a black handgun in his hand and the Hispanic male "appeared to look back towards the officers while holding the handgun in his right hand."
  - Lopez stated he "heard someone yelling 'Stop!'" and saw about five uniformed officers chasing behind and yelling for a Hispanic male to stop, but the male continued to evade the officers.

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 44

- o Lopez then saw the Hispanic male raise his right hand above his head and noticed he had a black handgun in this right hand.
- o Lopez stated the Hispanic male "appeared to look back at officers while holding the handgun in his right hand" and looked as though he "was going to turn to face the officers while holding the firearm, but the officers reacted quickly and fired at the Hispanic male before he turned completely."

**BIRD'S EYE VIEW OF WITNESS LOPEZ AND BONILLA LOCATIONS**



*Image 52: A Google Earth image of where Bonilla and Lopez were located during the incident.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 45



*Image 53: Drone image of the final leg of the foot pursuit; depicting direction and distance traveled, and Lopez's location at the time of the incident.*



*Image 54: Drone image depicting the overall directions and distances of the foot pursuit with Lopez and Bonilla's locations at the time of the incident marked.*

Ashley Reyes
**EXPERT'S RECONSTRUCTION REPORT**
*Gonzalez v. Hemet PD*
January 8, 2026
Page 46


**Based upon the site visit, interviews with the officers, and evidence analysis, no inconsistencies were identified during forensic reconstruction of this incident.**

**Discovery is ongoing and all opinions stated herein are, therefore, preliminary and subject to change upon further evidence examination. This expert reserves the right to amend or supplement his opinions as further pertinent evidence is discovered and examined.  All opinions stated by this expert are based on this expert's review of all available known forensic evidence and on this expert's background, training, and experience (see Resume/CV attached).**


## EXHIBITS AND ANIMATION
Evidence examination and incident reconstruction digital images will be collected in the future as a template for forensic incident animation exhibits. Exhibits will be based on my review of the materials, statements, photographs, medical reports, and investigative reports of this case; and on my own forensic investigation associated with this case.

## MISCELLANEOUS
Also attached is Rod Englert's complete CV, which includes a listing of all cases in which he has participated. In compliance with Federal Rule 26, cases involving his deposition and/or testimony within at least the last five years are listed with a "T" or "D" in the last section of his CV. See Fed. R. Civ. P.26(a)(2)(B)(iv-v).

Publications within the last four years are listed on Page 3 of Rod Englert's resume/CV.


## FEE SCHEDULE
Compensation for Englert Forensic Consultants is at the rate of $600 per hour plus travel time and expenses.

I have reviewed this report and its exhibits and believe it accurately summarizes my conclusions/opinions in this case, and the methodology and evidentiary and other basis underlying such conclusions.


Rod Englert
Englert Forensic Consultants


RE/sc