# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

GEORGE GONZALEZ,

      Plaintiff,

v.                Case No.  5:25-cv-00331-KK-DTB

STATE OF CALIFORNIA; CITY OF
HEMET; PATRICK SOBASZEK;
ANDREW REYNOSO; SEAN IRICK;
and DOES 1-10, inclusive,

      Defendants.
_____/

STENOGRAPHIC REPORTER'S TRANSCRIPT OF

REMOTE VIDEO DEPOSITION OF SEAN IRICK

TUESDAY, JULY 22, 2025

Reported Stenographically by:

KIMBERLY D'URSO, CSR 11372, RPR

Job No.  18401

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 1

APPEARANCES (Remote)

FOR THE PLAINTIFFS:

       LAW OFFICES OF DALE K. GALIPO
       BY:  DALE K. GALIPO, ESQ.
         MARCEL SINCICH, ESQ.
       21800 Burbank Boulevard, Suite 310
       Woodland Hills, California 91367
       818.347.3333
       dalekgalipo@yahoo.com
       msincich@galipolaw.com

FOR THE DEFENDANTS CITY OF HEMET, PATRICK SOBASZEK, and ANDREW REYNOSO:

       MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP
       BY:  ANDREA KORNBLAU, ESQ.
       801 S. Figueroa St, 15th Floor
       Los Angeles, California 90017
       213.624.6900
       andrea.kornblau@manningkass.com

FOR THE DEFENDANTS STATE OF CALIFORNIA, ACTING BY AND THROUGH THE CALIFORNIA HIGHWAY PATROL, AND OFFICER SEAN IRICK:

       ATTORNEY GENERAL OF CALIFORNIA
       BY:  ASHLEY REYES, ESQ.
       Deputy Attorney General
       State Bar No. 312120
       2550 Mariposa Mall, Room 5090
       Fresno, CA 93721-2271
       559.705.2312
       ashley.reyes@doj.ca.gov

       MARIO E. GARCIA, ESQ.
       Deputy Attorney General

ALSO PRESENT:  Dennis Saelee, Videographer

       Patrick Sobaszek

       --oOo--

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 2

INDEX OF EXAMINATION

WITNESS:  SEAN IRICK

EXAMINATION BY                                          PAGE

        MR. GALIPO.............................4


              EXHIBITS FOR REFERENCE

EXHIBIT                 DESCRIPTION                      PAGE

                    (NONE MARKED.)

                      --oOo--

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 3

A.   It wouldn't be an estimate.  It would be more of a guess.

Q.   Oh.  Well, let me ask you this:  Do you think it's been more than 20 or 30 times that that's happened?

A.   No.

Q.   Somewhere less than 20?

A.   Yes.

Q.   Were you trained as a law enforcement officer that you can shoot someone merely for seeing a gun in their hand?  That fact alone?

A.   That fact alone, no.

Q.   The other three or four people that you saw with guns in their hand, did you shoot any of those people?

A.   No.

Q.   Had you ever been present for an officer-involved shooting before the date of the incident we're here to talk about?

A.   Yes.

Q.   And how many other incidents had you been present when there had been an officer-involved shooting?

A.   Two.

Q.   And the first one, do you know approximately what year that happened?

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 18

pursuit, did he get out on the driver's side?

A.    I don't remember if --

(Simultaneous speakers.)

BY MR. GALIPO:

Q.    If you recall.

A.    I don't remember.

Q.    You're not sure what side he got out of?

A.    I don't recall that detail, no.

Q.    Okay.  That's fine.

When he got out of the vehicle, whatever side it was, do you recall if you were in your car still or out?

A.    I was still in the car when he got out and was running.

Q.    And do you have an estimate as to how far you were from him when he first got out of the vehicle?

A.    I don't.

Q.    Okay.  Do you know, for example, if it was within 50 feet or not?

A.    I don't.  And if I was to give you a number, it would be a guess.

Q.    Okay.  That's fine.  I don't want you to guess. Sometimes you might be able to give a range, but if you don't feel comfortable with that, that is fine.

Prior to Mr. Gonzalez getting out of the

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions                                    Page: 32

vehicle, did you have any information from any source that he had seriously injured or killed anyone?

A.    No.

Q.    Prior to him getting out of the vehicle, did you have any information from any source that he had physically injured anyone?

A.    No.

Q.    And finally, prior to him getting out of the vehicle, did you have any specific information that he had verbally threatened to harm anyone?

A.    No.

Q.    When he got out of the vehicle, was he running initially in a manner that led you to believe that he had a firearm on his person?

A.    Yes.

Q.    Was he essentially holding, like, his right waistband area, to some extent, with his right hand?

A.    He was holding his waistband area.  I don't recall which hand.  But he was hunched over, holding something.

Q.    As if to possibly keep it from falling out?

A.    Yeah.  I don't know at that point what his motivation for that was.

Q.    Okay.  But you've seen similar conduct before, with people running and holding their waistbands?

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 33

A.   Yes.

Q.   When he first got out of the vehicle, did he turn and try to shoot at either you or your partner?

A.   No.

Q.   When he first got out of the vehicle, did you see a gun in either one of his hands?

A.   I did not.

Q.   When he started running, was he running towards you or away from you?

A.   Away.

Q.   Was it your initial impression that he was trying to get away from you?

A.   Yes.

Q.   And you and your partner gave pursuit, in essence, a foot pursuit?

A.   Yes.

Q.   When you started the foot pursuit, do you have an estimate as to how far behind him you were?

MS. REYES:  Vague.  Calls for speculation.

BY MR. GALIPO:

Q.   Yeah.  In distance, basically.

A.   I'd approximate a hundred feet.

Q.   And was you and your partner generally close to each other during that time?

A.   Yes.

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 34

into the actual business area of the commercial facility.

Q.    Okay.  So do you have an estimate as to how long the foot pursuit went on before that first right turn, either in distance or timing?

A.    10 to 15 seconds.

Q.    And the distance between yourself and Mr. Gonzalez during that time frame, would it be about that hundred feet, or did that change?

A.    It changed.  We were, I guess, making ground on him.  We were closing the distance.

Q.    Okay.  Do you think you got within 50 or 60 feet at that time, or what would be your estimate?

A.    I'd say, estimate, 50 feet, is the closest we got to him.

Q.    So during that approximate 10 to 15 seconds before the first right turn, did you ever see Mr. Gonzalez turn and point a gun at you or your partner?

A.    No.

Q.    Did you ever see a gun in his hand during that first 10 to 15 seconds before the right turn?

A.    No.

Q.    And then after that right turn, do you have an estimate as to how far you traveled or the timing before

the next right turn?

A.    I do not.

Q.    Do you know if it was more or less than a hundred feet until that next right turn?

A.    It was less than that.

Q.    Less than a hundred feet?

A.    Yeah.

Q.    So between the first right turn and the second right turn, did Mr. Gonzalez ever turn and point a gun at you?

A.    No.

Q.    Did you see any gun in his hand during the first right turn and the second right turn?

A.    No.

Q.    Prior to the first right turn, based on your training, did you think it would have been appropriate to shoot him?

A.    No.

Q.    Prior to the second right turn, based on your training, did you think it would have been appropriate to shoot him?

A.    No.

Q.    After the second right turn, was there some distance before you got to this narrow place?

A.    There was -- yeah, there was a distance, but I

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 38

-- I don't know how far.

Q.   Okay.  So after the second right turn but before you got to this narrow place, did Mr. Gonzalez turn and point a gun at you, prior to getting to the narrow place?

A.   No.

Q.   Did you see a gun in either one of his hands prior to getting to the narrow place?

A.   No.

Q.   Based on your training, did you think it would have been appropriate to shoot him prior to getting to the narrow place?

A.   No.

Q.   This narrow place -- I'm calling it a "narrow place."  Can you describe it for me, please?

A.   So it's a concrete pathway, basically, with a chain-link fence that would have been on our left, and a commercial truck dock, elevated cement ramp with a truck parked on it on the right.  And there's this -- what I would call a "narrow pathway" that goes by on both -- with the fence on one side and the truck dock on the other.

Q.   Do you have any estimate as to how long this narrow pathway was?

A.   60 feet.

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 39

Q.   Have you ever gone back to the area, just to do a walk-through?

A.   No.

Q.   These estimates, in part, are based on your recollection of the incident and also looking at the video footage?

A.   I would say they're based mainly on my independent recollection of that night.

Q.   Okay.  And this narrow place or pathway that you described, were you -- you, yourself, in this narrow pathway when you fired your shots, or was it after you had passed that pathway that you started firing?

A.   To the best of my recollection, we had just cleared it.  We had just passed it.

Q.   At some point, did you see Mr. Gonzalez running this narrow pathway?

A.   Yes.

Q.   And during that time frame, was the distance still about 50 feet or so?

A.   Yeah, approximately.

Q.   During the time he was in that narrow pathway running away from you, did you see him turn towards you with a gun at any point?

A.   Not at that point.

Q.   Did you think, based on your training, it would

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 40

have been appropriate to shoot him as he was running through the narrow pathway?

A.    No.

MS. KORNBLAU:  Objection.  Calls for a legal conclusion.

BY MR. GALIPO:

Q.    Your answer was "No"; is that correct?

A.    Yes.

MR. GALIPO:  Okay.  We've been going about an hour.  Is it good for everyone to have, like, a ten-minute break?

THE CERTIFIED STENOGRAPHER:  Yes, please.

MR. GALIPO:  Okay.  So why don't we have the videographer take us off the record, please.

THE VIDEOGRAPHER:  Sure.

We're off the record at 2:02 p.m.

MR. GALIPO:  Okay.  Thank you, Dennis.

(Break taken.)

THE VIDEOGRAPHER:  We're back on the record.  The time is 2:16 p.m.

BY MR. GALIPO:

Q.    Prior to getting to that narrow area we discussed, did you give any commands to Mr. Gonzalez?

A.    Yes.

Q.    What commands do you recall giving?

fired first?

A.    I'm saying at the time I just didn't know.  I didn't have any impression.  I just didn't know who fired first.

Q.    But you were at some point aware that your partner was firing?

A.    Yes.

Q.    Did Mr. Gonzalez ever turn towards you and point the gun at you?

A.    He turned -- when he bladed to the right with the gun in his right hand, it appeared like it was pointing back towards my direction.

Q.    Did he ever turn to the left towards you with his upper body facing you?

MS. KORNBLAU:  Objection.  Vague.

THE WITNESS:  No, not that I can recall.

BY MR. GALIPO:

Q.    If, hypothetically, he did not point -- turn towards you or point a gun at you, do you think, based on your training, it would have been appropriate to shoot him?

MS. REYES:  Vague.  Incomplete hypothetical.

Go ahead.

MS. KORNBLAU:  Calls for a legal conclusion.

BY MR. GALIPO:

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 56

Q.   You may answer.

A.   Based on the imminent threat that he presented to both me and the workers present, yes; because he did display the firearm going back towards me at our location, and he made that statement that I took as a direct threat.

Q.   Okay.  So let me just break this down a little bit.  After you went through the narrow pathway, did you see any employees nearby, just before you fired your shots?

A.   We had passed, I want to say, approximately two employees.  There was one on, to my recollection, the diesel ramp.  Maybe there was two there, but I had passed one to two employees of this business.

Q.   Did you see Mr. Gonzalez try to attack either of those employees?

A.   I did not.

Q.   Did you see him point a weapon at either one of those employees?

A.   I did not.

Q.   So after getting through this narrow pathway, did you see any other employees near you or your partner or Mr. Gonzalez, just before you fired?

A.   Behind Mr. Gonzalez was a -- offset to his right or our right was a door and a window, some type of

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 57

maybe Plexiglass.  I'm not sure what it was.  And the lights were on, and it appeared to me that there were people in there.  That this place was open for business.

Q.    I'm wondering whether you actually saw any person?

A.    At that moment, I did -- I did not.

Q.    So you told me earlier that just because someone has a gun in their hand, that fact alone, you could not shoot someone, based on your training.  Do you recall that?

A.    Yes.

Q.    I guess what I'm wondering -- and you told me earlier also, that when Mr. Gonzalez was, you know, running away, the first right turn, the second right turn, going through this narrow pathway, you had not seen a gun yet, and based on your training, you did not think it was appropriate to shoot him at that point.  Do you recall us talking about that?

A.    Yes.

Q.    So I'm kind of asking you a hypothetical based on your training.  If you had just seen him take out the gun, with a gun in his hand -- this is my hypothetical -- but not point it at you, not turn towards you, just running away from you with the gun in his hand, do you understand my hypothetical?

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 58

A.   Yes.

Q.   I realize it's different from what you're saying happened.  But I'm just wondering, did you, in your mind, think, based on your training, you could shoot him just for running away with the gun in hand if he had not turned towards you or pointed the gun towards you?

A.   No.

MS. REYES:  Incomplete hypothetical.

BY MR. GALIPO:

Q.   Your answer is no?

A.   No.

Q.   Is that correct?

A.   No.

Q.   No, you can't shoot him or no, it's not correct.  This is why I'm confused.

A.   No, given your hypothetical, with no other facts, no.

Q.   And when you say, "No," you're saying no, based on your training, you could not use deadly force under that hypothetical.  Am I understanding you correctly?

A.   Yes.

Q.   So just because you thought he had a gun or even saw a gun and he's running away, under the facts of this case, you would agree you would need more to use

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 59

deadly force?

A.    In this specific case, I believe there was more.

Q.    I get that part.  I'm just talking more about your training.  I mean, you're not trained, are you, to shoot people who are running away from you that you think have a gun, or even if you see a gun, if they're just running away; is that fair?

A.    Yeah.  Absent a bunch of other facts, no.

Q.    Right.  Because I think even at the end of your statement, the attorney is asking you about the ability, the opportunity, and the apparent intent.  Do you recall those questions --

A.    Yes.

Q.    -- at the end of your statement?

And is it your understanding that based on police officer standards and training and the revised Penal Code, that those are requirements for an officer to use deadly force?

A.    Yes.

Q.    And do I have it right that the person would have to have the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury?

A.    That's my understanding, yes.

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 60

perimeters and containments in foot pursuit situations?

A.    Yes.

Q.    You have training with taking cover, when you can, if you think someone has a firearm?

A.    Yes.

Q.    You have training in the concept of de-escalation?

A.    Yes.

Q.    Let me ask you just a few questions about your training with respect to the use of deadly force. Obviously, you're trained that deadly force is the highest level of force an officer can use?

A.    Yes.

Q.    Are you trained that shooting someone center mass is likely to cause death or serious bodily injury?

A.    Yes.

Q.    As part of your uniform, do you have a ballistic vest to protect you against, to some extent, of being shot in the upper torso area?

A.    To some extent, yes.

Q.    And just like we just learned, you're trained that deadly force should only be used if there's an imminent or immediate threat of death or serious bodily injury?

A.    Yes.

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 62

Q.    And then we have the components we talked about:  the ability, the opportunity, and the apparent intent?

A.    Yes.

Q.    Are you trained that you're responsible to justify each of your shots?

A.    Yes.

Q.    Are you trained to give a verbal warning before using deadly force, when feasible?

A.    Yes, when feasible.

Q.    Are you trained to consider your background or backdrop when using deadly force?

A.    Yes.

Q.    Did you see any people in your backdrop or background when you fired?

A.    No.

Q.    What was, essentially, your background or backdrop?

A.    It was a wall, a wall of the building.

Q.    Did you have any training, either at the academy or thereafter, about controlling your fear or not overreacting in certain situations?

A.    I mean, just in general to keep a calm head and stay objective.

Q.    Okay.  Have you had any training on the concept

police because they don't want to get caught with illegal items on them, such as weapons or contraband?

A.   Yes.

Q.   And based on your training and experience, is it your understanding that sometimes people that have firearms on them that don't want to get caught with the firearms, may run and even try to discard the firearm during the foot pursuit?

A.   Yes.

Q.   And is it your experience when people are running from the police and trying to discard the firearm, they may try to do it in an area or place where they can't be seen by the officers pursuing them, like after they round a corner or something to that effect?

A.   Yes.

Q.   Have you had that situation happen to you, where people try to discard a firearm in a foot pursuit?

A.   Yes.

Q.   Did you ever see Mr. Gonzalez attempt to enter in any of these doors you've talked about, from the building?

A.   Personally, I did not.

Q.   Did you see him attempt to take any hostage?

A.   I did not.

Q.   Did you see him attempt to harm any civilian?

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions                                     Page: 67

A.    During this foot pursuit?

Q.    Yes.

A.    No.

Q.    So I have a few questions about your statement, and I'm going to put my glasses on, so I can see.  But a lot of this we already covered.  So if there's, like, a pause now between my questions, it's because I'm just reviewing portions that I underlined, and if we already covered it, I'm just going to skip it.  So bear with me, and then in about another ten minutes or so, we'll take our last break?

Does that sound okay?

A.    Sounds good.

Q.    Okay.  The date of the statement says January 29th, 2024.  Does that sound about right?

A.    Sounds about right.

Q.    Do you know why there was that time frame between the incident and the statement?

A.    I don't.

Q.    So it sounds like you were not even aware that Officer Reynoso was somewhat behind you at the time you fired your shots?

A.    That is correct.

Q.    Are you now aware that he was firing, to some extent, past your location?

questions?

I did -- does someone know the spelling of the facility that the shooting happened at?

MS. REYES:  I believe it's P-E-R-R-I-C-O-N-E.

THE CERTIFIED STENOGRAPHER:  Thank you.

MR. GALIPO:  Thank you, Ashley.

Any other spelling questions, Kimberly?

THE CERTIFIED STENOGRAPHER:  No, thank you.

MR. GALIPO:  Any order requests?  Do you want to find out how they want their transcripts?

THE CERTIFIED STENOGRAPHER:  Yes.

Ms. Reyes, are you ordering a copy?

MS. REYES:  Yes.

THE CERTIFIED STENOGRAPHER:  Okay.  One moment.

And, Ms. Kornblau, are you ordering a copy?

MS. KORNBLAU:  Yes, please.

THE CERTIFIED STENOGRAPHER:  All right.  Thank you.

And we can have the videographer read us off, then.

THE VIDEOGRAPHER.  We are off the record.  The time is 3:41 p.m.

(3:41 p.m., deposition concluded.)

--oOo--

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 85

STATE OF CALIFORNIA)
                    ) ss:
COUNTY OF BUTTE     )

          I, KIMBERLY E. D'URSO, do hereby certify:

          That the witness named in the foregoing deposition was present remotely and duly sworn to testify to the truth in the within-entitled action on the day and date and at the time and place therein specified;

          That the testimony of said witness was reported by me in shorthand and was thereafter transcribed through computer-aided transcription;

          That the foregoing constitutes a full, true and correct transcript of said deposition and of the proceedings which took place;

          Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

          That I am a certified stenographic reporter and a disinterested person to the said action;

          IN WITNESS WHEREOF, I have hereunder subscribed my hand this 31st day of July, 2025.

_____

KIMBERLY D'URSO, CSR NO. 11372, RPR

George Gonzalez v. State of California, City of Hemet, Et Al.

Focus Litigation Solutions

Page: 86