# EXHIBIT B

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--


GEORGE GONZALEZ,

       Plaintiff,

v.                       Case No.  5:25-cv-00331-KK-DTB

STATE OF CALIFORNIA; CITY OF
HEMET; PATRICK SOBASZEK;
ANDREW REYNOSO; SEAN IRICK;
and DOES 1-10, inclusive,

       Defendants.
_____/


STENOGRAPHIC REPORTER'S TRANSCRIPT OF

REMOTE VIDEO DEPOSITION OF PATRICK SOBASZEK

WEDNESDAY, JULY 23, 2025


Reported Stenographically by:

KIMBERLY D'URSO, CSR 11372, RPR

Job No.  18114

Patrick Sobaszek

APPEARANCES (Remote)

FOR THE PLAINTIFFS:

          LAW OFFICES OF DALE K. GALIPO
          BY:  DALE K. GALIPO, ESQ.
          21800 Burbank Boulevard, Suite 310
          Woodland Hills, California 91367
          818.347.3333
          dalekgalipo@yahoo.com
          msincich@galipolaw.com


FOR THE DEFENDANTS CITY OF HEMET, PATRICK SOBASZEK, and
ANDREW REYNOSO:

          MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP
          BY:  ANDREA KORNBLAU, ESQ.
          801 S. Figueroa St, 15th Floor
          Los Angeles, California 90017
          213.624.6900
          andrea.kornblau@manningkass.com

FOR THE DEFENDANTS STATE OF CALIFORNIA,
ACTING BY AND THROUGH THE CALIFORNIA HIGHWAY
PATROL, AND OFFICER SEAN IRICK:

          ATTORNEY GENERAL OF CALIFORNIA
          BY:  ASHLEY REYES, ESQ.
          Deputy Attorney General
          State Bar No. 312120
          2550 Mariposa Mall, Room 5090
          Fresno, CA 93721-2271
          559.705.2312
          ashley.reyes@doj.ca.gov

          MARIO E. GARCIA, ESQ.
          Deputy Attorney General

ALSO PRESENT:  Dennis Saelee, Videographer


                    --oOo--

Patrick Puszek

BY MR. GALIPO:

Q.    Okay.   I'm just wondering, were you trained that if someone's running from you, you could automatically shoot them?

MS. KORNBLAU:   Objection.   Vague.

THE WITNESS:   If you're just giving me the scenario that someone is running, then, no.

BY MR. GALIPO:

Q.    How about were you trained you can shoot someone automatically if you see a gun in their hand?

MS. KORNBLAU:   Objection.   Vague.

THE WITNESS:   Again, without certain facts, it's hard to answer.   But if you're just giving me the scenario of I see someone running with a gun with no other basis, then, no.   We weren't trained we could just shoot them.

BY MR. GALIPO:

Q.    So let's talk a little bit -- I think you mentioned that the incident with Mr. Helman happened before the incident with Mr. Gonzalez; is that correct?

A.    Yes.

Q.    And in the Solis case, it's my recollection that you did not specifically see Mr. Solis at the time the shots were fired; is that accurate?

A.    Correct.

George Gonzalez v. State of California, et al.
Focus Litigation Solutions

Page: 17

Patrick Zoszek

you can and cannot use deadly force; is that correct?

A.    Correct.

Q.    And you heard me go over some of it with the officer yesterday?

A.    Correct.

Q.    And part of it is someone having the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury.  That's part of your training; correct?

A.    Correct.

Q.    I'm just wondering, based on your training and what you observed Mr. Gonzales do when he first got out of the car, did you, in your mind, think it was appropriate to shoot him at that point?

A.    As he's getting out of the car, no.

Q.    And could you see his hands at all as he was getting out of the car?

A.    Yes.

Q.    After he got out of the car, did he start running away from you?

A.    He did.

Q.    And we heard that there were some right turns you had to make during the foot pursuit?

A.    Correct.

Q.    I think you described them in your statement as

George Gonzalez v. State of California, et al.
Focus Litigation Solutions

Page: 39

Patrick Misiaszek

THE WITNESS:  Well, I mean, there's a lot of factors that go into that.  Obviously, the totality of circumstances in this case.  I guess, what we haven't really clarified here is his actions during the foot pursuit.

Would you like me to elaborate on that more so I can answer the question?

BY MR. GALIPO:

Q.   Well, before -- right now, I'm taking into everything you observed up to that first right turn, and we'll go through it after our break.

I understand you thought he had a gun.  I understand that it appeared that he was holding his waistband as he was running, swinging his left arm, and the right arm more holding the waistband.  Is that your recollection?

A.   Yes.  Yeah.  Yeah.

Q.   And I'm not saying that's everything.  But everything that you observed -- and I'll give you a chance to describe that after the break -- I'm just wondering, did you think, based on what you observed in that first hundred yards, it was appropriate to shoot him, based on your training?

MS. KORNBLAU:  Objection.  Vague.

THE WITNESS:  If we're answering that off face

George Gonzalez v. State of California, et al.
Focus Litigation Solutions

Page: 41

Patrick Blaszek

frame, in the car or on Mr. Gonzalez?

A.   Mr. Gonzalez had something in his hand on initial approach once he got into the vehicle.  I couldn't determine if it was a firearm a hundred percent or not, that he was kind of stuffing into his jacket or waistband area.

Q.   Okay.  So that would have been before he got in the car?

A.   No, sir.  It would have been like right after he got into the vehicle, like on the initial approach.

Q.   Okay.  Did it appear to you during the approximate eight or nine minutes that Mr. Gonzalez was in the vehicle, that he was trying to shoot anyone?

A.   No.

Q.   During the initial part of the foot pursuit, before you got to that first right turn, did it appear to you that Mr. Gonzalez was trying to shoot anyone?

MS. KORNBLAU:  Objection.  Vague.

THE WITNESS:  No.

BY MR. GALIPO:

Q.   In between the two right turns, did it appear to you that Mr. Gonzalez was trying to shoot anyone?

MS. KORNBLAU:  Objection.  Vague.

THE WITNESS:  No.

BY MR. GALIPO:

Patrick Oliszek

MS. KORNBLAU:  I'm going to mark that, though, as an exhibit, and I'll send it to you.

THE CERTIFIED STENOGRAPHER:  Okay.  What exhibit number are you marking that as?

MR. GALIPO:  I think my last one, I think, was 16.  So that should be 17, Andrea.

MS. KORNBLAU:  Okay.  Thank you.

(Exhibit Number 17 was marked.)

THE CERTIFIED STENOGRAPHER:  Ms. Kornblau, are you ordering a copy?

MS. KORNBLAU:  Yes, please.

THE CERTIFIED STENOGRAPHER:  Mr. Garcia, are you ordering a copy?

MR. GARCIA:  Yes, please.

THE VIDEOGRAPHER:  We are going off the record.  The time is 12:35 p.m.

(12:35 p.m., deposition concluded.)

--oOo--

Patrick Janiszek

STATE OF CALIFORNIA)
                   ) ss:
COUNTY OF BUTTE     )

I, KIMBERLY E. D'URSO, do hereby certify:

That the witness named in the foregoing deposition was present remotely and duly sworn to testify to the truth in the within-entitled action on the day and date and at the time and place therein specified;

That the testimony of said witness was reported by me in shorthand and was thereafter transcribed through computer-aided transcription;

That the foregoing constitutes a full, true and correct transcript of said deposition and of the proceedings which took place;

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

That I am a certified stenographic reporter and a disinterested person to the said action;

IN WITNESS WHEREOF, I have hereunder subscribed my hand this 2nd day of August, 2025.

_____

KIMBERLY D'URSO, CSR NO. 11372, RPR

George Gonzalez v. State of California, et al.
Focus Litigation Solutions

Page: 87