UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-00331-KK-DTBx** | Date: | April 22, 2026 |
|---|---|---|---|

| Title: | ***George Gonzalez v. City of Hemet et al.*** |
|---|---|

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING in part and DENYING in part Plaintiff's Motions in Limine [Dkts. 116, 117, 118, 119], and GRANTING in part and DENYING in part Defendants' Motions in Limine [Dkts. 75, 76, 77]**

**I.
INTRODUCTION**

On March 26, 2026, defendants Sean Irick and the State of California (collectively, "Defendants") filed three[1] Motions in Limine seeking to exclude evidence and witness testimony. ECF Docket Nos. ("Dkts.") 75-77. On April 17, 2026, plaintiff George Gonzalez ("Plaintiff") filed four amended Motions in Limine seeking to exclude evidence and witness testimony. Dkts. 116-19.

On April 2, 2026, Plaintiff filed Oppositions to Defendants' Motions in Limine Nos. 3, 4 and 5. Dkts. 86, 89, 90. On the same day, Defendants filed the operative Oppositions to Plaintiff's Motions in Limine. Dkts. 81-82, 84, 87.[2]

---

[1] It is unclear why Defendants numbered their motions 3, 4, and 5. While defendants City of Hemet, Patrick Sobaszek and Andrew Reynoso filed motions in limine, Defendants did not join such motions. Nonetheless, for purposes of this Order and for clarity of the docket, the Court refers to Defendants' motions by the numbers they have provided.

[2] In light of Plaintiff's four amended Motions in Limine, dkts. 116-19, Plaintiff's original Motions in Limine, dkts. 71-74, are **DENIED** as **MOOT**. Further, in light of the absence of substantive differences between Plaintiff's original and amended motions, the Court construes Defendants' Oppositions to Plaintiff's original Motions in Limine as Oppositions to Plaintiff's amended Motions in Limine.

These matters, thus, stand submitted.  The Court finds these matters appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motions in Limine, and **GRANTS in part and DENIES in part** Defendants' Motions in Limine.

## II.
## PROCEDURAL HISTORY

On June 5, 2025, Plaintiff filed the operative Second Amended Complaint ("SAC") against Defendants, alleging violations of the Fourth Amendment to the U.S. Constitution and related state-law claims arising from the January 24, 2024 law enforcement shooting of Plaintiff.  Dkt. 38, SAC.

In the remaining claims,[3] Plaintiff raises a federal cause of action against defendant Irick for excessive force pursuant to 42 U.S.C. § 1983 ("Section 1983") and three state law causes of action against Defendants for battery, negligence, and a violation of section 52.1 of the California Civil Code ("Bane Act").  Id. ¶¶ 42-54, 98-138.  Pursuant to the Court's Civil Trial Scheduling Order, the Final Pretrial Conference is scheduled for April 23, 2026, and trial is set to begin on May 11, 2026.  See dkt. 31.

## III.
## DISCUSSION

### A.    PLAINTIFF'S MOTIONS IN LIMINE

#### 1.    Plaintiff's Motion in Limine No. 1

Plaintiff's Motion in Limine No. 1 seeks to exclude information unknown to defendant Irick during the January 24, 2024 incident, including information about Plaintiff's personal history and medical history, and "after-acquired investigatory information."  Dkt. 116.

Federal Rule of Evidence 401 ("Rule 401") defines relevant evidence as evidence that "[(a)] has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  However, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Here, the Court finds evidence of Plaintiff's personal history, medical history, and "after-acquired investigatory information" largely inadmissible.  First, the critical relevant issue in this case is the reasonableness of defendant Irick's actions.  Therefore, the jury may not "consider evidence of which the officers were unaware."  Glenn v. Washington Cnty., 673 F.3d 864, 873 n. 8 (9th Cir. 2011) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)).  Hence, any information unknown to

---

[3] As a result of the partial settlement, Plaintiff's claim against other defendants and claims for deprivation of civil rights under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), were dismissed.  See dkt. 110; dkt. 113 at 21.

defendant Irick at the time of the incident shall be excluded as irrelevant.[4]  Second, to the extent Defendants argue the evidence sought to be excluded is relevant to issues such as Plaintiff's state of mind, motive or Plaintiff's perception of events, the evidence is marginally relevant, at best.  Any relevance is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  Fed. R. Evid. 403.  Third, to the extent Defendants argue the evidence sought to be excluded is relevant to damages, such evidence has "marginal, if any, probative value as to damages, and none as to liability."  Est. of Diaz v. City of Anaheim, 840 F.3d 592, 603 (9th Cir. 2016); accord V.V. v. City of Los Angeles, No. CV 21-01889-MCS-PDx, 2022 WL 3598167, at *4-5 (C.D. Cal. July 6, 2022); see also Green v. Baca, 226 F.R.D. 624, 657 (C.D. Cal. Jan. 24, 2005) ("The nature of the convictions that led to the earlier incarcerations . . . is not relevant to damages [] and would have a prejudicial impact that would outweigh any probative value that exists.").  Thus, as to damages, the Court similarly finds the evidence marginally relevant and therefore subject to exclusion under Rule 403.[5]

Accordingly, Plaintiff's Motion in Limine No. 1 is **GRANTED**.

### 2.    Plaintiff's Motion in Limine No. 2

Plaintiff's Motion in Limine No. 2 seeks to exclude crimes, wrongs, and bad acts unknown to defendant Irick at the time of the incident.  This information includes Plaintiff's pre-incident criminal history, incident-related conviction, post-incident criminal actions, and post-incident investigatory findings.  Dkt. 117.  Plaintiff argues this evidence should be excluded under Federal Rules of Evidence 403, 404 ("Rule 404"), and 801.  Id. at 9-14.

Rule 404 prohibits the use of "[e]vidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(a)(1).  Rule 404(b) provides for limited exceptions to this rule of prohibition when such testimony is admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

Here, as with the Court's findings on Plaintiff's Motion in Limine No. 1, the Court finds evidence of crimes, wrongs, and bad acts unknown to defendant Irick at the time of the incident irrelevant and inadmissible under both Rule 403 and Rule 404.

---

[4] Defendants are further cautioned about the scope of defendant Irick's anticipated testimony.  Among other things, defendant Irick may not provide opinions on Plaintiff's state of mind but may only testify to what he actually witnessed and perceived.  See Bui v. City & Cnty. of San Francisco, No. 11-CV-04189-LB, 2018 WL 1057787, at *7 (N.D. Cal. Feb. 27, 2018) (holding "lay witnesses may not give opinions as to [an individual's] mental condition or what effect his mental condition had on his conduct, other than what they actually perceived").  For example, while a lay witness may testify Plaintiff about the "erratic behavior" they observed, the witness would not be permitted to testify as to what such actions indicated or otherwise signified.  Dkt. 84 at 2.  Counsel is ordered to instruct their witnesses accordingly in advance of trial.

[5] If Plaintiff opens the door to evidence concerning his personal or medical history, the Court may allow proper impeachment, including admitting prior convictions as permitted under Federal Rule of Evidence 609.

---

Accordingly, Plaintiff's Motion in Limine No. 2 is **GRANTED**.

3.      **Plaintiff's Motion in Limine No. 3**

a.      **Samir Lyons**

Plaintiff's Motion in Limine No. 3 seeks to exclude testimony and evidence from Defendants' animation and reconstruction expert Samir Lyons, including any of his animations that Defendants have failed to disclose to Plaintiff.  The motion also seeks to exclude Defendants' bullet trajectory expert Rod Englert's testimony regarding physical evidence he examined after the deadline for initial expert reports.  Dkt. 118 at 6-8.

The Court finds Mr. Lyons' testimony excludable due to Defendants' complete failure to comply with this Court's scheduling order and the Federal Rules.  In relevant part, the Court's Civil Trial Scheduling Order provided a December 4, 2025 deadline for initial expert reports and a January 8, 2026 deadline for expert discovery.  Dkt. 31.  Federal Rule of Civil Procedure 26(a)(2)(B) sets forth the requirements for expert disclosure.  Among other things, it requires disclosure of a written report that contains: a complete statement of all opinions the witness will express and the basis and reasons for them and the facts and data considered by the witness in forming them.  Fed. R. Civ. Proc. 26(a)(2)(B)(i)-(ii).  Here, Mr. Lyons' one-and-a-half-page report falls far short of what is required.  His two sentence "summary" of opinions merely states he was retained "to collaborate with Englert Forensics to create demonstratives of their opinions and analysis" and "I reserve the right to produce demonstrative animations or visuals based on Englert Forensics' analysis."  Dkt. 118-3.  Notably, Defendants do not appear to argue Mr. Lyons' report complies with the relevant rules.  Hence, Mr. Lyons' testimony shall be excluded.

b.      **Rod Englert**

Plaintiff's Motion in Limine No. 3 also seeks to exclude Defendants' bullet trajectory expert Rod Englert's testimony regarding physical evidence he examined after the deadline for initial expert reports.  Dkt. 118 at 6-8.

As an initial matter, the Court finds Mr. Englert's report sufficiently complies with Rule 26.  Hence, the Court will analyze his proffered testimony under Rule 702.

Federal Rule of Evidence 702 ("Rule 702") allows the admission of "scientific, technical, or other specialized knowledge" by a qualified expert if four conditions are met: (a) the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702(a)-(d).  To be admissible, expert testimony must be both relevant and reliable.  <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 597 (1993).  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."  <u>Primiano v. Cook</u>, 598 F.3d 558, 565 (9th Cir. 2010) (citation modified), <u>as amended</u> (Apr. 27, 2010).  Rule 702 should be applied consistently with the "liberal thrust" of the Federal Rules of Evidence and their "general approach of relaxing the traditional barriers to 'opinion testimony.'"  <u>Daubert</u>, 509 U.S. at 588.  The "proponent of expert testimony,"

however, "must always establish the admissibility criteria of Rule 702 by a preponderance of the evidence" given "there is no presumption in favor of admission." Engilis v. Monsanto Co., 151 F.4th 1040, 1049 (9th Cir. 2025).

Here, the Court finds Mr. Englert's testimony is both relevant and reliable.

First, Mr. Englert's testimony is relevant to the extent it is based on his forensic analysis of the evidence in this case.  Defendants plan for Mr. Englert to testify about his review of physical evidence, medical reports, law enforcement records, and other evidence, dkt. 87-3 at 22-67, to "educat[e] the jury how the bullets traveled and impacted Plaintiff on the night of the incident," dkt. 87 at 2.   This testimony is relevant to understanding the incident and injuries to Plaintiff.  Mr. Englert's proffered testimony regarding his forensic analysis of materials including investigative documents, physical evidence, video and audio evidence, photographs, and his visit to the scene of the incident is relevant to assist the jury in understanding the videos of the body camera footage evidence in the case.  Dkt. 87-3 at 22-67.  Further, in light of the supplemental disclosure, dkt. 87-4 at 2-6, and Mr. Englert's reconstruction report dated January 8, 2026, Mr. Englert may testify to the "forensic incident analysis opinions" he formed with "a reasonable degree of scientific probability" based on a review of case evidence, dkt. 87-3 at 22-67.  His report and derivative testimony are the product of reliable methods, reflecting a reliable application of the principles and methods of forensic analysis.

Second, Mr. Englert is qualified to testify in the areas proffered.  See Fed. R. Evid. 702(c)-(d).  Among other things, Mr. Englert has consulted over 600 criminal and civil cases throughout the United States, received numerous degrees and certifications in police sciences and police standards, and has served in the Multnomah County Sherrif's office since 1969, when he retired as a Chief Deputy following 32 years in law enforcement.  Dkt. 87 at 55-56.  Additionally, Mr. Lyons has taught over 660 training seminars on subjects relating to crime scene reconstruction and has received over 7,000 hours of specialized training relating to law enforcement.  Id. at 56, 63-84.

Accordingly, Plaintiff's Motion in Limine No. 3 is **GRANTED** with respect to Mr. Lyons and **DENIED** with respect to Mr. Englert.

### 4.        Plaintiff's Motion in Limine No. 4

Plaintiff's Motion in Limine No. 4 seeks to exclude "any argument or testimony that it would be permissible to use deadly force against a person merely for fleeing, even with a gun in hand, which is inconsistent with the law." Dkt. 119 at 6.  "Defendants do not oppose the motion to the extent it seeks to exclude any attempt by counsel for either side to [misrepresent] the law."[6] Dkt. 82 at 1-2.

Accordingly, Plaintiff's Motion in Limine No. 4 is **GRANTED**.  Any argument or testimony that it would be permissible to use deadly force against a person merely for fleeing, even with a gun in hand, shall be excluded.

---

[6] Contrary to Defendants' assertion, the motion does not seek to "preclude defendant Irick or any other officer from testifying about information received regarding officer safety and use of force."  Dkt. 119 at 2.

### B.      DEFENDANTS' MOTIONS IN LIMINE

#### 1.      Defendants' Motion in Limine No. 3

Defendants' Motion in Limine 3 seeks to exclude all testimony and video reconstructions from Plaintiff's "videographer, editor, and forensic video analyst" Scott Holdaway, dkt. 86 at 2, as irrelevant, unreliable, and more prejudicial than probative, dkt. 75 at 2, 6-11.  Mr. Holdaway intends to testify about his video analysis services and production of video reconstructions of the January 24, 2024 incident.  Id. at 20-24.  Defendants contend "the jury is fully capable of watching and interpreting the contents of the videos and audio of the incident and then using their own interpretation to assist them in making the necessary factual determinations."  Id. at 8.

The Court finds Mr. Holdaway's testimony and video reconstructions are admissible.[7]  See Alves v. Riverside Cnty., No. EDCV-19-02083-JGB-SHKx, 2023 WL 2983583, at *11 (C.D. Cal. Mar. 13, 2023) (noting "there are many situations in which an expert can recount what she observed in video or photographic evidence in order to explain the basis for her opinion, provided she is, of course, qualified to render an opinion on the subject").  As discussed above, Rule 702 allows the admission of relevant and admissible expert testimony.  See Daubert, 509 U.S. at 597.  First, Mr. Holdaway's testimony will help the jury understand the body camera footage in this case.  His observations in the synchronized videos are relevant to presenting body camera footage of the incident in a logical manner for the jury.  See Jones v. City of Los Angeles, No. CV 20-11147-FWS-SKx, 2023 WL 2559230, at *3 (C.D. Cal. Feb. 24, 2023) (finding an expert's "conclusions regarding the positioning of certain individuals depicted in video footage and his enhancements to that footage are relevant, would be helpful to the jury, and are thus admissible"); dkt. 86 at 5-6 (describing the expert's efforts to synch officers' body-worn camera footage and identify frames where Plaintiff was shot).  Additionally, Mr. Holdaway's testimony has a "valid connection to the pertinent inquiry," Fed. R. Evid. 702(a), insofar as Plaintiff's claims stem from defendant Irick's alleged firing of approximately five shots at Plaintiff from behind, see SAC ¶ 27.  See also Primiano, 598 F.3d at 565.

Further, Mr. Holdaway's testimony is "based on sufficient facts or data" and the videos are "the product of reliable principles and methods."  Fed. R. Evid. 702(b)-(c).  Mr. Holdaway is a video analyst instructor who has earned two degrees in digital media and numerous certifications in relevant editing software for examining law enforcement footage.  Dkt. 86, Declaration of Marcel F. Sincich ("Sincich Decl.") ¶ 2, Ex. B.  His opinion on the contents of the body camera footage has a reliable basis in the field of video analysis.  See Primiano, 598 F.3d at 565.  According to his expert report and deposition testimony, Mr. Holdaway enlarged, stabilized, and annotated video as part of a frame-by-frame analysis of the body-worn camera footage worn by law enforcement on the night of the incident.  Sincich Decl. ¶ 3, Ex. C (describing methodology); dkt. 75 at 52-55, 81.  Hence, the video reconstructions were made in a manner consistent with his knowledge and experience.  To the extent Defendants raise issues regarding Mr. Holdaway's credibility, dkt. 75 at 11, such concerns go to the weight of the evidence, and Defendants may cross-examine him accordingly, see Messick v.

---

[7] Defendants argue Mr. Holdaway is unqualified to testify about ballistics, dkt. 75 at 6-7, despite the fact Plaintiff does not purport to introduce Mr. Holdaway's testimony for that purpose, dkt. 86.  Moreover, Mr. Holdaway's report's conclusion about "indications" of gunshots do not qualify as ballistic evidence.  Id.; Declaration of Amie Bears ("Bears Decl.") ¶ 2, Ex. 1 (labeling gunshots based on "smoke," "recoil," and "flash"); cf. United States v. Johnson, 875 F.3d 1265 (9th Cir. 2017) (involving ballistic evidence such as the identification of bullets and guns).

Novartis Pharms. Corp., 747 F.3d 1193, 1199 (9th Cir. 2014) ("[I]ssues regarding the correctness of [her] opinion, as opposed to its relevancy and reliability, are a matter of weight, not admissibility.").

Accordingly, Defendants' Motion in Limine No. 3 is **DENIED**.

### 2.    **Defendants' Motion in Limine No. 4**

#### a.    **Dr. Ryan O'Connor**

Defendants' Motion in Limine No. 4 seeks to limit (1) testimony from medical expert Dr. Ryan O'Connor to the opinions in his report and (2) testimony on the reports' contents discussing Plaintiff's foot and colon injuries and "bullet trajectories." Dkt. 89 at 3-4, 6-8.

The Court finds Dr. O'Connor's testimony is admissible as both relevant and reliable.

First, Dr. O'Connor's testimony is relevant to assess the extent of Plaintiff's injuries caused by defendant Irick's use of force.

Second, Dr. O'Connor's testimony is sufficiently reliable and he is qualified to testify to the contents of his report. Dr. O'Connor is the Attending Physician in Emergency Medicine at Hollywood Presbyterian Medical Center and "has worked for over 20 years as an attending emergency room physician throughout the country." Dkt. 89 at 7; see also dkt. 89-2, Ex. B. In addition, Dr. O'Connor has conducted 200 hours of fieldwork at the Los Angeles County Department of Medical Examiner, completed coursework on forensic pathology, firearms, and crime scene reconstruction, and has advised pathologists and medical practitioners. See 89-2 at 2-6. Dr. O'Connor intends to testify regarding his review of Plaintiff's medical records. Dkt. 76 at 23-25. To form his opinions, Dr. O'Connor reviewed over 1,700 pages of Plaintiff's medical record and other materials relevant to this case, including emergency room medical records that he "routinely reviews" as an attending emergency room physician. Dkt. 89 at 6. Defendants argue Dr. O'Connor's testimony on injuries to Plaintiff's foot and colon should be limited because he is not an orthopedic surgeon or proctologist. Id. at 6-8. Though Dr. O'Connor is not an orthopedic surgeon or proctologist, the Court finds his years of training, experience, and coursework involving rotations in orthopedics, surgical critical care, and internal medicine sufficient to permit him to opine on these issues. Defendants' concerns go to weight not admissibility. Id. at 7; dkt. 89-2 at 2-6. Further, Dr. O'Connor is qualified to testify about Plaintiff's bullet wounds and the path of the bullets in his bodies. This testimony is based on his assessment of Plaintiff's gunshot wounds, education on forensic pathology, training, and experience. See dkt. 76 at 23-31 (providing analysis based on location of bullet fragments and Plaintiff's skin "from a neutral anatomic position"); see also Barillas v. City of Los Angeles, No. CV 18-08740-CJC-ASx, 2021 WL 4434977, at *13 (C.D. Cal. Apr. 12, 2021) (finding a forensic pathologist was qualified to testify about "nature of [plaintiff's] wounds and the path the bullets took through his body").

#### b.    **Non-Expert Witnesses**

Defendants' Motion in Limine No. 4 also seeks to limit testimony from Plaintiff's treating physicians on the night of the incident to "observations at the time of treatment." Dkt. 76 at 3, 8. Plaintiff has disclosed nine treating physicians from the Riverside University Health System Emergency Department as witnesses. Id. at 8, 16-19.

---

The Court finds Plaintiff's treating physicians are permitted to testify about Plaintiff's injuries, harm, diagnosis, and prognosis to the extent such testimony is rationally based on their perception, helpful to understanding their testimony, and not based on specialized knowledge. These individuals, as non-retained witnesses, are subject to Federal Rule of Civil Procedure 26(a)(2)(C) ("Rule 26(a)(2)(C)"), which requires Plaintiff to provide "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Evid. 26(a)(2)(C); see also Green v. Qatar Airways Co., No. CV 19-07950-SVW-MAAx, 2020 WL 9601990, at *2 (C.D. Cal. Nov. 13, 2020) ("Although a treating physician's disclosure need not include a full written report—a summary of facts and opinions will suffice—the disclosure must still include enough information to promote the goals underlying the rule: increasing efficiency and avoiding prejudicial surprise."). Plaintiff's disclosures are minimal, see dkt. 89 at 4-7, and barely satisfy the requirements of Rule 26(a)(2)(C) because they contain the subject matter of their testimony and the "facts" those non-expert witnesses are expected to testify on. See dkt. 16-19. Those topics include the care witnesses provided to Plaintiff, surgery conducted, and their medical evaluations of Plaintiff. Id. However, as the disclosures do not provide the "opinions to which [each] witness is expected to testify," Fed. R. Evid. 26(a)(2)(C), Plaintiff's counsel shall be prepared to provide a proffer as to what each treating physician will testify at the Final Pretrial Conference. The Court nonetheless reserves the right to exclude such witnesses under Federal Rule of Evidence 403 as needlessly cumulative and a waste of time, and will strictly limit their testimony to what has been disclosed in each witness's expert designation. Further, Plaintiff's Rule 26(a)(2)(C) disclosures do not present any basis for Plaintiff's non-expert witnesses to testify on bullet trajectory. Dkt. 89-1 at 2-7; cf. Barillas, 2021 WL 4434977, at *13. Therefore, such testimony is impermissible.

Accordingly, Defendants' Motion in Limine No. 4 is **DENIED** with respect to Dr. O'Connor's testimony and conditionally **DENIED** subject to the condition specified above.

### 3.        Defendants' Motion in Limine No. 5

Defendants' Motion in Limine 5 seeks to exclude non-expert opinion testimony by Plaintiff "relating to the issue of causation of Plaintiff's alleged injuries, diagnosis, and prognosis resulting from Defendants' conduct." Dkt. 77 at 2. Defendants argue this evidence is inadmissible under Federal Rules of Evidence 701 ("Rule 701") and 803(4) ("Rule 803"). Id. at 4-7. In his Opposition, Plaintiff asserts he "does not intend to provide expert testimony as to causation, diagnosis, or prognosis." Dkt. 90 at 2 (emphasis removed).

Rule 701 permits lay witness testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Further, Rule 803 permits admission of statements made for medical diagnosis or treatment and "describ[ing] medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4).

Here, the Court finds Plaintiff's testimony about his injuries, pain, and suffering admissible. Further, because Plaintiff seeks to testify about statements and records made at the hospital for medical diagnosis, dkt. 90 at 7-8, his testimony is admissible under Rule 803.

---

However, with respect to statements made to Plaintiff by his treatment providers, such testimony is inadmissible hearsay unless it falls within a recognized exception. Bulthuis v. Rexall Corp., 789 F.2d 1315, 1316 (9th Cir. 1985) ("Rule 803(4) applies only to statements made by the patient to the doctor, not the reverse"). Further, Plaintiff may not testify about scientific, technical, or other specialized knowledge about the causes of his injuries.

Accordingly, Defendants' Motion in Limine No. 5 is **DENIED in part** and **GRANTED in part**.

## IV.
## CONCLUSION

For the reasons set forth above, it is **HEREBY ORDERED** as follows:

1. Plaintiff's Motion in Limine Nos. 1, 2, and 4 are **GRANTED** (Dkts. 116, 117, 119);
2. Plaintiff's Motion in Limine No. 3 is **GRANTED** in part and **DENIED** in part (Dkt. 118);
3. Defendants' Motion in Limine No. 3 is **DENIED** (Dkt. 75);
4. Defendants' Motion in Limine No. 4 is **DENIED** subject to the condition specified above (Dkt. 76); and
5. Defendants' Motion in Limine No. 5 is **GRANTED** in part and **DENIED** in part (Dkt. 77).

Finally, to the extent Plaintiff seeks an order Plaintiff be permitted to dress in plain clothes during trial, the correctional officers accompanying Plaintiff be dressed in plainclothes, and Plaintiff not be handcuffed, shackled, or otherwise restrained, Plaintiff shall file an appropriate application with a proposed order in compliance with the Local Rules and this Court's Standing Orders.

**IT IS SO ORDERED.**