# "EXHIBIT 4"

Case 5:25-cv-00331-KK-DTB   Document 169-5   Filed 07/14/26   Page 2 of 19   Page
ID #:4337
Case 5:18-cv-00992-JGB-SP   Document 136   Filed 09/23/21   Page 1 of 18   Page ID #:1733

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 18-992 JGB (SPx)** | Date | September 23, 2021 |
|---|---|---|---|
| Title | *Richard Donastorg v. City of Ontario, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING IN PART Plaintiff's Motion for Attorneys' Fees (Dkt. No. 128).**

Before the Court is Richard Donastorg's ("Plaintiff") motion for attorneys' fees. ("Motion," Dkt. No. 128.)  The Court held a hearing on the Motion on September 20, 2021. Upon consideration of the papers filed in support of and in opposition to the Motion, as well as the argument of counsel, the Court GRANTS IN PART the Motion.

## I.   BACKGROUND

On May 7, 2018, Plaintiff commenced an excessive use of force action against the City of Ontario ("City") and fifteen City police officers. ("Complaint," Dkt. No. 1.)  The Complaint originally asserted a total of ten claims for relief. (Id.)  By stipulation of the parties, however, several of the original parties and claims were dismissed. (Dkt. Nos. 30, 36, 57.)  At the time of trial, the remaining Defendants were the City and twelve officers: Joe Estrada, Brennan Falconieri, Flesher, Edward Flores, Gabriel Gutierrez, Joseph Giallo, Corey Hettinga, Joshua Hovey, William Mlodzinski, Christina Nelsen, Matthew Ross, and Bryce Wilson (collectively, "Defendants"). (See Compl.; Dkts. Nos. 30, 36, 57.)  Plaintiff's two remaining claims alleged: (1) excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983, and (2) infliction of emotional distress.  (See Compl.; Dkt. Nos. 30, 36, 57.)

A jury trial began on June 8, 2021 and lasted seven days.  (Dkt. Nos. 98, 99, 100, 101, 105, 106, 108.)  On June 17, 2021, the jury reached a verdict in favor of Plaintiff's Fourth Amendment excessive use of force claim against Defendant Joshua Hovey.  ("Verdict," Dkt. No. 123.)  The jury awarded Plaintiff damages totaling $500,000.  (Id.)  The jury made no finding of liability as

---

Case 5:25-cv-00331-KK-DTB    Document 169-5    Filed 07/14/26    Page 3 of 19    Page
ID #:4338
Case 5:18-cv-00992-JGB-SP   Document 136   Filed 09/23/21   Page 2 of 18   Page ID #:1734

to Defendants City of Ontario, Bryce Wilson, James Flesher, William Mlodzinski, Joseph Estrada, Gabriel Gutierrez, Joseph Giallo, Edward Flores, Christian Nelsen, Matthew Ross, Corey Hettinga, and Brenna Falconieri.  (Id.)  On August 5, 2021, the Court entered judgment and allowed Plaintiff to apply to the Court for an award of costs and reasonable statutory attorneys' fees as permitted by federal law.  ("Judgement," Dkt. No. 127.)

On August 19, 2021, Plaintiff timely moved for an award of attorneys' fees against Defendants.  (See Mot.)  In support of the Motion, Plaintiff included the following documents:

- Declaration of Dale K. Galipo in Support of the Motion ("Galipo Declaration," Dkt. No. 128-1);
- Timekeeping Record for Dale K. Galipo ("Galipo Declaration, Ex. 1," Dkt. No. 128-2);
- Biography of Dale K. Galipo for the Irving Green Memorial Lecture ("Galipo Declaration, Ex. 2," Dkt. No. 128-3);
- Order on Motion for Attorneys' Fees in Ramirez, et al. v. Oxnard Police Dep't, No. 13-1615, slip op. (C.D. Cal. Sept. 17, 2015) ("Ramirez Order," Dkt. No. 128-4);
- Order on Motion for Attorneys' Fees in Craig v. County of Orange, 2019 WL 12379198, at *1 (C.D. Cal. Sept. 5, 2019) ("Craig Order," Dkt. No. 128-5);
- Order on Motion for Attorneys' Fees in Frias v. City of Los Angeles, 2020 WL 4001620, at *1 (C.D. Cal. Apr. 23, 2020) ("Frias Order," Dkt. No. 128-6);
- Declaration of James S. Terrell in Support of the Motion ("Terrell Declaration," Dkt. No. 128-7);
- Timekeeping Record for James S. Terrell ("Galipo Declaration, Ex. 6," Dkt. No. 128-8);
- Declaration of Sharon J. Brunner in Support of the Motion ("Brunner Declaration," Dkt. No. 128-9);
- Timekeeping Record for Sharon J. Brunner ("Galipo Declaration, Ex. 7," Dkt. No. 128-10);
- Declaration of Hang D. Le in Support of the Motion ("Le Declaration," Dkt. No. 128-11);
- Timekeeping Record for Hang D. Le ("Galipo Declaration, Ex. 8," Dkt. No. 128-12);
- Declaration of Karen Slyapich in Support of the Motion ("Slyapich Declaration," Dkt. No. 128-13);
- Timekeeping Record for Karen Slyapich ("Galipo Declaration, Ex. 9," Dkt. No. 128-14);
- Declaration of Marielle Sider in Support of the Motion ("Sider Declaration," Dkt. No. 128-15);
- Timekeeping Record for Marielle Sider ("Galipo Declaration, Ex. 10," Dkt. No. 128-16);
- Declaration of John Burton ("Burton Declaration," Dkt. No. 128-17);
- Declaration of Michael J. Haddad ("Haddad Declaration," Dkt. No. 128-18);
- Declaration of Paul Hoffman ("Hoffman Declaration," Dkt. No. 128-19); and
- Declaration of Benjamin Nisenbaum ("Nisenbaum Declaration," Dkt. No. 128-20).

//

Defendants opposed the Motion on August 30, 2021.  ("Opposition," Dkt. No. 130.)  In support of the Opposition, Defendants included the following documents:

- Declaration of Sean Struebing in Support of Opposition ("Struebing Declaration," Dkt. No. 131); and
- Declaration of Daniel S. Roberts in Support of Opposition ("Roberts Declaration," Dkt. No. 132.)

Plaintiff replied on September 3, 2021.  ("Reply," Dkt. No. 133.)

## II.  LEGAL STANDARD

### A.  42 U.S.C. § 1988

Under 42 U.S.C. § 1988, a court may, in its discretion, award reasonable attorneys' fees in a suit seeking to vindicate rights under 42 U.S.C. § 1983.  Braunstein v. Ariz. Dep't of Transp., 683 F.3d 1177, 1187 (9th Cir. 2012); 42 U.S.C. § 1988(b).  "In the Ninth Circuit, the customary method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method."  Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006). Under the lodestar method, the district court "multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."  Ballen, 466 F.3d at 746 (internal quotation marks omitted); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The product of this computation—the "lodestar figure"—is a "presumptively reasonable" fee under 42 U.S.C. § 1988.  See id.  "The district court may then adjust [the lodestar] upward or downward based on a variety of factors."  Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008).  These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Ballen, 466 F.3d at 746.  The moving party has the burden to produce evidence that the rates and hours worked are reasonable.  See Intel Corp. v. Terabyte Int'l, 6 F.3d 614, 623 (9th Cir. 1993).

//
//
//
//
//

### B. Prison Litigation Reform Act

"Congress has adopted special standards and limitations on attorney's fees for prevailing plaintiffs seeking monetary damages authorized by 42 U.S.C. § 1988 when the prevailing plaintiff is a prisoner." Rodriguez v. County of Los Angeles, 96 F. Supp. 3d 1012, 1017 (C.D. Cal. 2014). "[A]ttorney's fees which are subject to the PLRA are capped at 150% of the judgment awarded to prisoner plaintiffs." Id.; see also 42 U.S.C. § 1997e(d)(2). Moreover, "[n]o award of attorney's fees [under Section 1997e(d)] shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3).

## III. DISCUSSION

Plaintiff requests that the Court award attorneys' fees in the amount of $997,310.00 for 1,378.5 hours worked.[1]

### A. Prevailing Party

Defendants do not contest that Plaintiff is a prevailing party. (Opp'n at 1.) A jury found in favor of Plaintiff's Fourth Amendment claims against Defendant Hovey and awarded Plaintiff $500,000 in damages. (See Verdict; Mot. at 1, 4.) The Judgment entered pursuant to the Verdict confirmed that Plaintiff was "the prevailing party." (Judgment at 2.) Because Plaintiff "receive[d] at least some relief on the merits of his claim," the Court finds that he has prevailed. Hewitt v. Helms, 482 U.S. 755, 759 (1987); see also Farrar v. Hobby, 506 U.S. 103, 109 ("Under our 'generous formulation' of the term, 'plaintiffs may be considered "prevailing parties" … if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit'" (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).).

### B. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e

Defendants do not dispute Plaintiff's entitlement to attorneys' fees, but oppose the amount he seeks. Defendants argue that although Plaintiff is a prevailing party entitled to attorneys' fees under Section 1988, the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, applies here and limits his recovery. (Opp'n at 2.) Defendants contend that any civil rights action filed by a "prisoner," defined as one who is "confined to any jail, prison, or other correctional facility," 42 U.S.C. §§ 1997e(a), (d)(1), falls within the PLRA's scope, and Plaintiff

---

[1] Plaintiff's counsel initially requested $1,015,730 in attorneys' fees for 1,397.1 hours worked. (See Mot.) However, after Defendants identified errors in the number of hours billed, Plaintiff acknowledges that some of the hours billed should be stricken. (Reply at 3; Opp'n at 14–17.) Plaintiff's counsel also requests additional hours for time spent researching and drafting the Reply. (Reply at 11–12.) Based on those adjustments and the Court's own calculations, the Court construes Plaintiff's requested attorneys' fees amount as $997,310.00 for 1,378.5 hours worked.

was in custody at the time he filed his Complaint.  (<u>Id.</u> at 2–3.)  Thus, Defendants argue, even if Plaintiff's cause of action arose from preincarceration violations, his claim falls within the PLRA's scope, and he can only recover attorneys' fees as prescribed by the PRLA.

Plaintiff counters that the PLRA has no application to Plaintiff's case, because the PLRA pertains to causes of action arising from "prison conditions."  (Reply at 1.)  Defendants' expansive reading would contravene established law confirming that the PLRA is for prison-related actions.  (<u>Id.</u> at 1–2.)  Moreover, Plaintiff argues that broadening the PLRA's attorneys' fees provision to subsume preincarceration claims defeats the legislative intent of Section 1983 and Section 1988.  (<u>Id.</u> at 2–3.)

The PLRA limits attorneys' fees in civil rights actions brought by incarcerated persons as follows:

> In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that –
>
> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
>
> (B) (i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

42 U.S.C. § 1997e(d)(1).  The parties do not dispute that Plaintiff was a "prisoner," as defined by the PLRA, at the time he filed suit.  When Plaintiff brought the action, Plaintiff was confined at the West Valley Detention Center.  (Opp'n at 2.)

The Court finds that Section 1997e(d) does not apply to claims brought by incarcerated individuals for violations that occurred prior to their confinement.  Because Section 1997e(d) implicates civil rights claims brought under Section 1983 and attorneys' fees brought pursuant to Section 1988, the Court must consider the PLRA in conjunction with Sections 1983 and 1988.  Neither the PLRA nor the purpose and policies behind Sections 1983 and 1988 support Defendants' position.

The PLRA was created to address claims filed by prisoners regarding violations experienced in confinement.  The Supreme Court held so nearly twenty years ago.  In <u>Porter v. Nussle</u>, the Court determined that Section 1997e(a) of the PLRA, which requires incarcerated persons pursuing Section 1983 civil rights claims to exhaust administrative remedies, "applies to all inmate suits about <u>prison life</u>."  534 U.S. 516, 532 (2002) (emphasis added).  The Court specifically rejected the provision's application to "preincarceration claims."  <u>Id.</u> at 529.

---

According to the Court, "Congress inserted 'prison conditions' into the exhaustion provision simply to make it clear that preincarceration claims fall outside § 1997e(a), for example, … , a § 1983 claim against [a prisoner's] arresting officer." Id.  Though Porter dealt with Section 1997e(a) and not Section 1997e(d), it distinguished between preincarceration claims and claims arising from confinement.  The same line must be drawn with respect to Section 1997e(d).  See, e.g., Robbins v. Chronister, 402 F.3d 1047, 1053 (10th Cir. 2005) ("Robbins I"), reh'g granted, Robbins v. Chronister, 435 F.3d 1238 (10th Cir. 2006) ("Robbins II") ("Constitutional claims arising before the events causing the plaintiff's incarceration are unrelated to prison confinement" (emphasis in original).)

Defendants argue that the Court must read Section 1997e(d) independently from Section 1997e(a).  Whereas Section 1997e(a) explicitly identifies actions "with respect to prison conditions," Section 1997e(d) broadly references "any action brought by a prisoner," without the limiting language of "prison conditions."  (Opp'n at 5.)  Defendants contend that this evidences Congress's intent to treat Section 1997e(d) differently from Section 1997e(a), namely, to restrict attorneys' fees in all civil rights claims filed by incarcerated individuals, even for violations arising before their confinement.

The Court is not persuaded.  First, Defendants unwittingly explain why such a reading is untenable: "One provision of a statute should not be interpreted in a manner that renders other sections of the same statute 'inconsistent, meaningless or superfluous.'" (Opp'n at 11–12 (quoting United States v. Fiorillo, 186 F.3d 1136, 1153 (9th Cir. 1999)).)  When the text of the two provisions is not identical, this "whole act rule" requires the Court to read Section 1997e(a) and Section 1997e(d) consistently and in accordance with the PLRA's purpose.  Defendants assert that the correct construction of Section 1997e(d) is to not only replace the body of law restricting PLRA's scope to prison conditions with an unsupported proposition; but also to include preincarceration causes of actions that courts had explicitly kept out of the PLRA's scope.  The Court rejects this wholesale reinterpretation of the PLRA.  The Court's binding precedent, such as Porter, finds that Section 1997e(d) only applies to actions arising from prison life.

Application of Defendants' interpretation demonstrates why it cannot hold.  Under their theory, all litigants must quickly file their lawsuits as soon as a violating event occurs and prior to any incarceration (if they are able to anticipate such an event), or after their incarceration ends (if it does end).  This view would punish the act of filing a complaint while in any form of confinement, even when their confinement is incidental, unrelated to the constitutional violation, or unforeseen.  Here, Defendant Holvey violated Plaintiff's Fourth Amendment rights on May 8, 2016, at a gas station parking lot, not in jail, prison, or other correctional facility.  ("Summary Judgment Order," Dkt. No. 60, at 2; Judgment at 2.)  Plaintiff was arrested at the encounter, and his custodial status thereafter remained out of his control.  (Id.)  As Defendants acknowledge, "Plaintiff was incarcerated from May 2016 when he was first booked until October 2018," when he was released because his time in jail was credited to his full sentence.  (Opp'n at 2–3.)  For Plaintiff to file his civil rights lawsuit prior to confinement was impossible.  In Defendants' view, Plaintiff should have anticipated the exact timing of his release and then brought suit in order to

avoid the PLRA's reach.  This result is clearly irrational and bears no relation to Congress's intended goal of "curtail[ing] frivolous prisoners' suits."  Perez, 632 F.3d at 558.

Similarly, Plaintiff contends that "[t]he fee cap application would disproportionately affect the rights of low income and indigent individuals who are forced to remain in custody pending a resolution of their criminal case simply because they cannot afford bail."  (Reply at 3.) Such a consequence similarly runs counter to Section 1988, which functions "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel."  City of Riverside v. Rivera, 477 U.S. 561, 578 (1986) (quoting Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982)).  To cap attorney's fees for confined litigants would encourage them to abandon their claims, and would disproportionately affect those without bail resources.

Second, there is a simple explanation for why Section 1997e(a) specifies "prisons conditions" and Section 1997e(d) does not: Not all prisoners' rights claims necessarily pertain to prison conditions.  For example, prison conditions claims may allege the provision of "[in]adequate food, clothing, shelter, and medical care."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  But prisoners may also allege other constitutional violations, such as infringement of their free speech rights or due process rights that they suffer while confined.  Turner v. Safley, 482 U.S. 78, 84 ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.").  The statute seeks to capture all civil rights violations detained litigants experience in confinement.  It does not encompass violations that occur outside of that narrow context.  As such, the Court disagrees with Plaintiff to the extent that Plaintiff argues the PLRA governs "prison conditions."  (Reply at 1.)  The PLRA governs civil rights violations that occur in jail, prison, or other correctional facility.

Defendants cite Robbins II, 435 F.3d 1238 (10th Cir. 2006), in support of Section 1997e(d)'s expansion.  Robbins II, however, is non-binding and inapposite.  It purports to apply a "plain language" analysis of Section 1997e(d), then, viewing the provision in isolation, holds that the PLRA caps attorneys' fees for preincarceration civil rights claims.  Id. at 1244.  Robbins II ignores Section 1997e(a) and relevant case law.  This approach, therefore, is incompatible with the Ninth Circuit's whole act rule.

In addition, Robbins II court reaches its decision only by reversing itself.  In Robbins I, the court applied additional principles of statutory interpretation under the "absurdity doctrine"[2] and found that the PLRA's legislative history specifically addresses "prison conditions litigation."  402 F.3d at 1052.  Based on this evidence, the court reasoned that "[f]ailing to distinguish between pre-incarceration cases and post-incarceration cases would lead to absurd results."  Id. at 1054.  The Robbins I court concluded that "Congress gave no indication of any intent to impose a fee limitation on pre-incarceration civil rights claims brought by plaintiffs who

---

[2] The "absurdity doctrine" allows courts to look to a statute's purpose when "applying the plain language 'would produce an absurd and unjust result which Congress would not have intended."  Robbins I, 402 F.3d at 1050 (internal citations omitted).

subsequently become prisoners and file their action while in prison." Id. at 1051. Upon rehearing the matter en banc, however, the Robbins II court rejected the Robbins I court's compilation of legislative history and elected to look only at the "plain language." Robbins II, 435 F.3d at 1244. Citing no relevant authority, the Robbins II court simply concludes, "[T]here is simply nothing bizarre about treating prisoner suits alleging preincarceration civil-rights violations the same as prisoner suits alleging violations of civil rights during incarceration." Id. A conclusory statement and an imprecise analysis cannot support Defendants' position. Indeed, the conflicting Robbins decisions caution the Court against authorizing sweeping changes to the PLRA's scope.

Significantly, Robbins II's analysis fails to discuss Sections 1983 and 1988. As the Court discusses below, and as Robbins I recognized, interpreting Section 1997e(d) to include preincarceration claims would yield absurd and unjust results that are contrary to the important policies underlying Section 1983 and Section 1988. Accordingly, for the foregoing reasons, the Court declines to follow Robbins II and its interpretation of Section 1997e(d) of the PLRA.[3] While Defendants cite other authority, none are precedential, and they are either not on point or rely on Robbins II, which this Court rejects.

Defendants fail to discuss the impact of their position on the policy goals of Sections 1983 and 1988. Instead, Defendants argue that, because Section 1997e(d) of the PLRA limits attorney's fees to 150% of the hourly rates such established under section 3006A of Title 18, the hourly rates for Plaintiff's counsel are actually 20% to 35% of what Plaintiff requests. (Opp'n at 3–4.) Thus, Defendants contend that Plaintiff's lodestar is $244,145.75, rather than $1,015,730—or 24% of what Plaintiff initially requested.[4] (Id. at 24–25.) Defendants assert further reductions are necessary and claim that, because the PLRA requires a portion of the Plaintiff's damages award to pay for the attorney's fees, Defendants' responsibility is minimal, and likely $0. (Id. at 24–25.) Plaintiff argues that "[t]o apply the PLRA fee cap to pre-incarceration police misconduct and excessive force cases would undercut the intended deterrent effect under sections 1983 and 1988 and create a chilling effect on important civil rights police misconduct litigation." (Reply at 3.) The Court agrees.



//
//
//

---

[3] The facts of Robbins illustrate why Defendants' position is absurd. As a result of Robbins's encounter with police officers, he was taken to the hospital "for treatment of two gunshot wounds to the chest and one to his lower left side." Robbins I, 402 F.3d at 1048. Three days later, he was criminally charged. Trial Br. for Def. at *1, Robbins v. Chronister, 2000 WL 35627450 (D. Kan. Sept. 13, 2000) (No. 97-3489). Under Defendants' view, the plaintiff should have filed his complaint sometime after he was shot, while hospitalized for gunshot wounds, and before he was detained.

[4] Plaintiff's Reply acknowledges that the Motion contained errors in the lodestar calculation. (Reply at 3.)

---

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk NP

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–57 (1978)). In fact, "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." City of Riverside, 477 U.S. at 576. Reasonable attorneys' fees under Section 1988, thus, must be "sufficient to induce a capable attorney to undertake the presentation of a meritorious civil rights claim." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010). "Congress recognized that reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages." City of Riverside, 477 U.S. at 576. Indeed, "[a] rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting § 1988." Id. Therefore, while Congress subsequently enacted the PLRA to limit attorneys' fees in actions brought by detained litigants, this restriction must be applied narrowly to effectuate Section 1988's purpose.

Furthermore, "Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit 'does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress considered of the highest importance.'" City of Riverside, 477 U.S. at 575. Actions for preincarceration violations serve different interests and policy goals than those that seek to remedy conditions of confinement. Blurring this distinction would increase the burdens of litigating an already difficult area of law and create needless confusion in the applicable standards.

Accordingly, the Court concludes that Section 1997e(d) of the PLRA does not apply to preincarceration violations, even if Plaintiff was a "prisoner" as defined by the PLRA when he filed suit. Accordingly, the Court proceeds to review Plaintiff's request for attorneys' fees pursuant to Section 1988.

**C. Section 1988: Lodestar Analysis**

Plaintiff's counsel initially requested $1,015,730 in attorneys' fees for 1,397.1 hours worked. (See Mot.) However, after Defendants identified errors in the number of hours billed, Plaintiff acknowledges that some of the hours billed should be stricken. (Reply at 3; Opp'n at 14–17.) Plaintiff's counsel also requests additional hours for time spent researching and drafting the Reply. (Reply at 11–12.) Based on those adjustments and the Court's own calculations, the Court construes Plaintiff's requested attorneys' fees amount as $997,310 based on 1,378.5 hours worked.

Plaintiff's counsel presents the following lodestar calculation for four attorneys, one paralegal, and one legal intern:

//
//

Case 5:25-cv-00331-KK-DTB    Document 169-5    Filed 07/14/26    Page 11 of 19    Page
ID #:4346
Case 5:18-cv-00992-JGB-SP   Document 136   Filed 09/23/21   Page 10 of 18   Page ID #:1742

| Attorney / Biller | Years in Practice | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Dale K. Galipo | 32 | 500.1[5] | $1,100.00 | $550,110.00 |
| James S. Terrell | 27 | 369 | $600.00 | $221,400.00 |
| Sharon J. Brunner | 19 | 247[6] | $600.00 | $148,200.00 |
| Hang D. Le | 8 | 90.7[7] | $550.00 | $49,885.00 |
| Karen Slyapich | Paralegal | 39.2 | $200.00 | $7,840.00 |
| Marielle Sider | Leg. Intern | 132.5 | $150.00 | $19,875 |
| TOTAL | | 1,378.5 | | $997,310.00 |

Defendants contest the reasonableness of Plaintiff's attorneys' fees request based on high hourly rates, improper hours, and Plaintiff's success in the litigation. The Court first calculates a reasonable fee using the lodestar method, and then considers whether an upward or downward multiplier is appropriate.

### 1. Hourly Rate

Reasonable fees under Section 1988 are calculated according to the prevailing market rates in the relevant legal community. Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992). Generally, "the relevant community is the forum in which the district court sits." Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010). Thus, the prevailing rates in the Central District of California control.

The Court consults the 2020 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices ("Real Rate Report") as a starting point. See Relman Colfax PLLC v. Fair Housing Council, 2021 WL 1895905, at *4–5 (C.D. Cal. Mar. 16, 2021). Because the Real Rate Report "identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies," it provides "a much better reflection of true market rates than self-reported rates in all practice areas." Id.

//
//
//
//

---

[5] The Court reduces Mr. Galipo's hours from 513.5 to 510.3 hours, and subtracts the duplicative 10.2 hours noted in Plaintiff's Reply. (Galipo Decl., Ex. 1; Reply at 3.)

[6] The Court reduces by striking 16.4 hours from Ms. Brunner's originally reported time of 263.4 hours. (Reply at 3; Mot. at 15.)

[7] Plaintiff's Reply notes that Ms. Le worked an additional 11.2 hours to research and draft the Reply. Accordingly, the Court increases Ms. Le's billed time to 90.7 hours.

Case 5:25-cv-00331-KK-DTB   Document 169-5   Filed 07/14/26   Page 12 of 19   Page
ID #:4347
Case 5:18-cv-00992-JGB-SP   Document 156   Filed 09/23/21   Page 11 of 18   Page ID #:1743

### a. Dale Galipo

Plaintiff's counsel requests an hourly rate of $1,100 per hour for Dale Galipo. According to the 2020 Real Rate Report, partners working in commercial litigation at large firms in Los Angeles earn between $941 and $1,235. (Real Rate Report at 111.) Mr. Galipo's requested rate of $1,100 does not outpace what other litigation partners earn. See Frias v. City of Los Angeles, 2020 WL 4001620, at *3 (C.D. Cal. Apr. 23, 2020) (comparing Mr. Galipo's requested rate of $1,200 to the 2018 Real Rate Report). Nor does his rate appear inflated because of the contingent nature of the case, as Defendants contend. (Opp'n at 22.) Plaintiff's counsel has cited other cases in which he has been awarded attorney's fees at or around the rate he currently requests. (Galipo Decl., Exs. 4–6.)

The Court agrees with the courts that have recognized that, "[w]hen it comes to police excessive force cases in Los Angeles, Mr. Galipo is without question at the top of his field." Id. at *3 (quoting Valenzuela v. City of Anaheim, et al., SACV 17-278 CJC (DFMx), Dkt. No. 435, at 34). Plaintiff's counsel submits extensive documentation of Mr. Galipo's success trying police misconduct cases all around California, including in Southern California. (Galipo Decl. ¶¶ 13–18.) Declarations submitted by experienced civil rights litigators who practice in Southern California further support Mr. Galipo's exceptional skills. (See Burton Decl.; Haddad Decl.; Hoffman Decl.; Nisenbaum Decl.) Accordingly, the Court finds that Mr. Galipo's requested rate of $1,100 per hour is reasonable.

### b. James Terrell and Sharon Brunner

Plaintiff's counsel requests an hourly rate of $600 per hour for James Terrell and Sharon Brunner. The 2020 Real Rate Report lists the median rate for litigation partners in Los Angeles at $660 per hour. (Real Rate Report at 28.) Mr. Terrell and Ms. Brunner both manage their firms and have practiced for 27 years and 19 years, respectively. (Mot. at 15; Terrell Decl. ¶ 8; Brunner Decl. ¶ 8.) Both Mr. Terrell and Ms. Brunner litigate civil rights cases. (Terrell Decl. ¶¶ 9, 11, 19–20; Brunner Decl. ¶¶ 9, 11, 20.) They were the two attorneys representing Plaintiff prior to Mr. Galipo's association into the case. (Terrell Decl. ¶¶ 12, 18; Brunner Decl. ¶¶ 12, 19.) Accordingly, the Court finds that the requested rate of $600 per hour for Mr. Terrell and Ms. Brunner is reasonable.

### c. Hang Le

Plaintiff's counsel requests an hourly rate of $550 per hour for Hang Le, a senior associate attorney at the Law Offices of Dale K. Galipo. (Le Decl. ¶ 8.) The 2020 Real Rate Report provides that the median rate for litigation associates in Los Angeles is $535, with rates of $740 in the upper quartile. (Real Rate Report at 28.) Ms. Le has practiced for eight years. (Mot. at 15.) She has "worked almost exclusively on 42 U.S.C. § 1983 civil rights cases involving police excessive force," including on various civil rights cases resulting in multi-million-dollar verdicts and settlements. (Le Decl. ¶¶ 8, 10.) Accordingly, the Court finds that Ms. Le's requested rate of $550 per hour is reasonable.

### d. Karen Slyapich

Plaintiff's counsel requests an hourly rate of $200 per hour for Karen Slyapich, a litigation assistant at the Law Offices of Dale K. Galipo. (Slyapich Decl. ¶ 1.)  The 2020 Real Rate Report shows that paralegals typically earn between $175 and $311.  See Relman Colfax PLLC, 2021 WL 1895905, at *5 (citing the Real Rate Report at 11).  Ms. Slyapich has worked in the legal field for approximately 28 years and with the Law Offices of Dale K. Galipo for 5 years. (Slyapich, Decl. ¶¶ 2–3.)  This Court has previously found that $200 per hour is a reasonable rate for paralegals.  See, e.g., Di Gioia v. Ford Motor Co., 2020 WL 1955311, at *5 (C.D. Cal. Apr. 1, 2020).  Accordingly, the Court finds that Ms. Slyapich's requested rate of $200 per hour is reasonable.

### e. Marielle Sider

Plaintiff's counsel requests an hourly rate of $150 per hour for Marielle Sider, a legal intern with the Law Offices of Dale K. Galipo. (Sider Decl. ¶ 1.)  Ms. Sider is a rising third-year law student at Pepperdine University School of Law.  (Id. ¶ 2.)  She has served as a law clerk with the Public Defenders Office of Los Angeles and worked as a legal assistant for one year.  (Id.) Plaintiff's counsel presents only Ms. Sider's declaration and timesheet as evidence of her credentials.  Mr. Galipo's declaration attests to the work and experience of Ms. Le and Ms. Slyapich, but not of Ms. Sider.  Accordingly, the Court reduces Ms. Sider's hourly rate to $125 per hour.  See Greenpeace, Inc. v. Stewart, 2020 WL 2465321, at *7–9 (9th Cir. May 12, 2020) (finding the rate of $125 per hour reasonable for law student interns).

In sum, the Court concludes that the hourly rates of $1,100 for Mr. Galipo, $600 for Mr. Terrell and Ms. Brunner, $550 for Ms. Le, $200 for Ms. Slyapich, and $125 for Ms. Sider are reasonable.

### 2. Hours Billed

Plaintiff's counsel requests attorneys' fees for a total of 1,378.5 hours worked on this case:

| Attorney / Biller | Hours |
|---|---|
| Dale K. Galipo | 500.1 |
| James S. Terrell | 369 |
| Sharon J. Brunner | 247 |
| Hang D. Le | 90.7 |
| Karen Slyapich | 39.2 |
| Marielle Sider | 132.5 |
| **TOTAL** | **1,378.5** |

//

Defendants argues for a reduction of the total hours Plaintiff's counsel report based on: (a) Mr. Galipo's association into the case, (b) block billing, (c) duplicative time, and (d) administrative time. Moreover, Defendants requests that the Court apply a downward adjustment to the requested lodestar amount, because Plaintiff prevailed against only one of the Defendants.

Plaintiff's counsel also requests to include time spent working on the Motion and Reply.

### a. Work Performed Prior to the Law Offices of Dale K. Galipo's Association into the Case

Defendants assert that Plaintiff's counsel cannot seek fees for the 16.2 hours of work conducted by Mr. Galipo and Ms. Le before Mr. Galipo appeared as counsel of record for Plaintiff. (Opp'n at 15, 19.) Plaintiff's counsel responds that Plaintiff retained Mr. Galipo's firm prior to March 2020 "to perform certain work and consultations in the case." (Reply at 5.)

Plaintiff notified the Court that Mr. Galipo had associated into the case on March 11, 2020. (Dkt. No. 61.) Plaintiff reports 11.5 hours between August 28, 2019 and January 6, 2020 as time worked on the case. (Galipo Decl., Ex. 1 at 1.) Neither Mr. Terrell's nor Ms. Brunner's declarations or timesheets confirm when Plaintiff retained Mr. Galipo's firm. The Court notes, however, that Mr. Galipo's time entry for August 30, 2019 is recorded as "[r]eview 2-200 Agreement for co-counsel and client." (Galipo Decl., Ex. 1 at 1.) Moreover, Mr. Galipo's time entries reflect access to privileged materials and conversations:

- October 21, 2019: "Receive copy of the expert report by Ernest Burwell. Review Same."
- November 4, 2019: "Review defendants' Rule 26 expert reports. Meet with Hang Le to discuss."
- December 17, 2019: "Telephone call with Sharon Brunner re case."
- January 6, 2020: "Review mediation brief and discuss same with Hang Le and Sharon Brunner."

(Id.) Similarly, Ms. Le reports 4.7 hours worked between October 9, 2019 and February 7, 2020 that reflect those same entries. In addition, Ms. Le reports time for "[r]eviewing and provid[ing] input on Plaintiff's opposition to Defendants' MSJ" on February 7, 2020. Accordingly, the Court finds the 16.2 hours reported prior to the association of Mr. Galipo's firm into the case are reasonable.

### b. Block Billing

Defendants argue that a further reduction of Plaintiff's counsel's hours are appropriate, as they have been block-billed. (Opp'n at 15.) "Courts generally frown on block billing where discrete and unrelated tasks are lumped into one entry, as the practice can make it impossible … to determine the reasonableness of the hours spent on each task." Navarro v. Gen. Nutrition Corp., 2004 WL 2648373, at *9 (N.D. Cal. Nov. 19, 2004).

From May 30, 2021 to June 15, 2021, Plaintiff's counsel, Mr. Galipo, recorded his time as "trial preparation" or "trial and trial preparation" without specifying what tasks were completed.  A footnote accompanies these labels to explain that "[t]rial preparation includes: discussions and meetings with co-counsel and staff, meeting with and preparing witnesses, reviewing statements, investigation reports, medical records, photos, audio, video, depositions, expert reports, pre-trial documents including jury instructions, verdict form, exhibits, client preparation, preparation for voir dire, opening statement, direct and cross examination, opening, closing and rebuttal arguments." (Galipo Decl., Ex. 1 at 5.)  The Court acknowledges that two other courts in this district have admonished Plaintiff's counsel expressly for this method of block-billing and reduced Plaintiff's counsel's hours as a result.  See Frias v. City of Los Angeles, 2020 WL 4001620, at *5 (Apr. 23, 2020); Craig v. County of Orange, SACV 17-00491-CJC (KESx), Dkt. No. 231, at *8–9 (C.D. Cal. Sept. 5, 2019).  In those cases, however, counsel billed 300 to nearly 400 hours as "trial preparation."  Those courts found that 247.2 hours and 351.4 hours, respectively, were reasonable for trial preparation.  Here, Plaintiff's counsel's "trial preparation" and "trial and trial preparation" hours" total 224.8 hours over 17 days.  Because this amount of time is reasonable, the Court does not reduce for block-billing.  However, the Court warns Plaintiff's counsel to change his practice of block-billing.

### c.  Duplicative Time

Defendants request deductions from Mr. Terrell, Ms. Brunner, and Ms. Le's hours because Plaintiff's counsel improperly seeks compensation for duplicative hours.  "[D]etermining whether work is unnecessarily duplicative is no easy task."  Moreno, 534 F.3d at 1112.  For example, in cases drawn out over many years, "a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research[.]"  Id.  Moreover, courts are discouraged from second-guessing staffing decisions.  Id. at 1114–15.  Thus, this Court will only deduct unnecessarily duplicative work from a fee award.  Id. at 1112.

First, Defendants argue that Mr. Terrell's and Ms. Brunner's hours billed to the trial should be reduced because Mr. Galipo tried the case, and Mr. Terrell and Ms. Brunner did not substantially participate.  (Opp'n at 16–17.)  Plaintiff's counsel replies that this was a complex case, involving twelve defendant officers and expert witnesses.  (Reply at 5.)  Thus, it is reasonable to have three attorneys at trial, including to "serve as a sounding board or be necessary to assure that valuable testimony is obtained during the limited time allotted for depositions and trial."  (Id. (citing Rodriguez v. Cnty. of Los Angeles, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014)).  The Court agrees with Plaintiff's counsel.  As other courts recognize, "[e]mploying multiple attorneys or firms is per se not unreasonable," and "[m]ultiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law," including at trial.  PSM Holding Corp. v. Nat'l Farm Fin. Corp., 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010).  Accordingly, the Court will not reduce Plaintiff's counsel's hours for staffing three attorneys at trial.

Case 5:25-cv-00331-KK-DTB    Document 169-5    Filed 07/14/26    Page 16 of 19   Page
ID #:4351
Case 5:18-cv-00992-JGB-SP   Document 136   Filed 09/23/21   Page 15 of 18   Page ID #:1747

Second, Defendants contend that Mr. Terrell and Ms. Brunner's hours are duplicative, because they both billed time for propounding discovery requests, some of which were never served on Defendants.  (Opp'n at 17.)  As Defendants acknowledge, however, the time entries for Mr. Terrell and Ms. Brunner denote separate discovery requests.  Plaintiff's failure to serve those requests does not make them duplicative.  Accordingly, the Court finds that Plaintiff's counsel's hours for drafting discovery requests are reasonable.

Third, Defendants contend that time Ms. Le spent reviewing case files and documents duplicates work that Mr. Terrell and Ms. Brunner conducted.  (Opp'n at 18–19.)  In Defendants' view, time spent to "get up to speed" is unnecessarily duplicative.  (Id. at 18.)  The Court disagrees.  As Plaintiff notes, the Ninth Circuit has found that when "[a] lawyer [ ] needs to get up to speed with the research performed," it "is duplication, of course, but it's necessary duplication" and "inherent in the process of litigating over time."  Moreno, 534 F.3d at 1112. This Court has previously found that "[i]t is a dangerous proposition that only one attorney may properly spend time reviewing a case record, as no reasonable attorney could provide meaningful or ethical litigation support without being familiar with the critical documents."  Harlow v. Metro. Life Ins. Co., 379 F. Supp. 3d 1046, 1057 (C.D. Cal. 2019).  Thus, it is reasonable— indeed, responsible—that Ms. Le reviewed the record to familiarize herself.  There is no reason why Ms. Le "should perform this necessary work for free."  Moreno, 534 F.3d at 1112.  Thus, the Court finds that Ms. Le's hours for reviewing the case files are reasonable.

### d.  Purely Clerical Time

Defendants contend that Ms. Slyapich's time includes clerical tasks that must be excluded from the total hours billed.  In support, Defendants cite Nadarajah v. Holder, which states, "When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."  569 F.3d 906, 921 (9th Cir. 2009).  Plaintiff responds that only "purely clerical tasks" cannot be billed for attorneys' fees.  See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, ….").  The Court agrees that the standard, including as articulated under Nadarajah, is to exclude purely clerical tasks.

This Court has previously found that "copying and scanning documents and calendaring dates" are "purely clerical tasks," whereas "prepar[ing ] a letter to opposing counsel requesting production of documents," "prepar[ing ] deposition notices," "reviewing and organizing case files and creating and updating pleading clips" are not purely clerical tasks.  Smith v. County of Riverside, 2019 WL 4187381, at *8 (C.D. Cal. June 17, 2019).  The Court reduces Ms. Sidler's hours for any time billed as calendaring, which totals 0.5 hours.  In addition, the Court finds that time billed for confirming schedules of witnesses and making hotel accommodations are also purely clerical, and the Court reduces Ms. Sidler's hours by 0.7 hours.  Other hours that Defendants contest were not spent on clerical tasks.  Accordingly, the Court finds that Ms. Sidler reasonably incurred 38 hours of work on this case.

//

### e. Time Spent on the Motion

Plaintiff's counsel requests, and Defendants do not seem to oppose, attorneys' fees for work performed on the instant Motion and Reply. (Mot. at 14; Reply at 11–12.)  Time spent establishing an entitlement to fees under 42 U.S.C. § 1988 is compensable.  See Clark v. City of Los Angeles, 803 F.2d 987, 992 (9th Cir. 1986).  Accordingly, the Court finds that the 0.4 hours Plaintiff's counsel worked on the Motion and 11.2 hours worked on the Reply are reasonable.

Based on the adjustments discussed above, the Court finds that Plaintiff's counsel reasonably billed 1,377.3 hours.  Accordingly, the Court concludes that $993,757.50 is a reasonable lodestar amount.

| Attorney / Biller | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Dale K. Galipo | 500.1 | $1,100.00 | $550,110.00 |
| James S. Terrell | 369 | $600.00 | $221,400.00 |
| Sharon J. Brunner | 247 | $600.00 | $148,200.00 |
| Hang D. Le | 90.7 | $550.00 | $49,885.00 |
| Karen Slyapich | 38 | $200.00 | $7,600.00 |
| Marielle Sider | 132.5 | $125.00 | $16,562.50 |
| **TOTAL** | **1,377.3** | | **$993,757.50** |

### 3. Costs

Plaintiff does not request costs, so they are not at issue here.

### 4. Adjustments

Defendant argues that a downward adjustment of the lodestar figure is appropriate because Plaintiff only prevailed against Defendant Hovey, and not against the other eleven individual Defendants and one municipal Defendant.  (Opp'n at 21.)  Moreover, Defendants contend that Plaintiff spent a substantial time at trial trying to prove claims against other individual Defendants.  (Id.)  Accordingly, Defendants request a 50% reduction of the fee award. (Id. at 22.)  Plaintiff replies that a downward adjustment is not reasonable, because the time spent on the other named defendant officers directly relates to Plaintiff's success at trial.  (Reply at 7–8.)  "[T]he work performed to obtain deposition and trial testimony from the other defendant officers would have been done regardless," as the officers are "important witnesses to the incident."  (Id. at 8.)  Further, Plaintiff asserts that the damages award is five times the Defendants' last and highest settlement offer and, thus, a great result.  (Galipo Decl. ¶ 29.)  Plaintiff also argues that, by prevailing against even one Defendant, Plaintiff's counsel achieved exceptional results.  (Mot. at 12.)  In addition, because during its deliberations the jury asked whether answers on the special verdict form required unanimity, Plaintiff argues that "there is a strong possibility that the jury's finding of no liability for the individual defendants, except Joshua Hovey, was not unanimous."  (Reply at 8.)

"When a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley, 461 U.S. at 436. In the Ninth Circuit, courts evaluate the reasonableness of the fee award in light of the results obtained "by answering two questions: 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009). However, "[t]here is no precise rule or formula for making these determinations." Hensley, 461 U.S. at 436. The Court has "considerable discretion" to "determine whether the prevailing plaintiff achieved excellent results," but this discretion "must be accompanied by a clear explanation that the district court has considered the relationship between the amount of fees awarded and the results obtained." Navarro, 2004 WL 2648373, at *13.

First, the Court considers whether Plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded. "[I]n a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." McCown, 565 F.3d at 1103. "Instead, the court must proceed to the second part of the analysis and 'focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" Id. (quoting Hensley, 461 U.S. at 435). All of Plaintiff's claims arise from a common core of facts, namely, his arrest on May 8, 2016. The Court accepts Plaintiff's position that Plaintiff likely would have deposed and examined the other individual Defendants at trial as witnesses, if not as defendants. Accordingly, the Court finds that Plaintiff's claims are all related for the purpose of determining attorneys' fees.

Next, the Court considers whether Plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. Courts recognize that "success in a lawsuit is not always measured by the formal relief obtained." Clark, 803 F.2d at 990 (citing Maher v. Gagne, 448 U.S. 122, 129 (1980)); see also City of Riverside, 477 U.S. at 575 ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."). The Court must "consider not only the monetary results but also the significant nonmonetary results [Plaintiff] achieved for himself and other members of society." Morales v. City of San Rafael, 96 F.3d 359, 365 (9th Cir. 1996).

Plaintiff prevailed on his Fourth Amendment claim against Defendant Hovey and was awarded $500,000 in damages. The Court acknowledges that Plaintiff obtained success and agrees that it is challenging to prevail at all in civil rights claims against police officers. Moreover, as Plaintiff notes, the case has difficult facts, including Plaintiff's methamphetamine use (Mot. at 12), which present greater hurdles to prevailing. Importantly, the Court cannot discount that the "jury's verdict validates [plaintiff's] belief that [Defendant Holvey's] conduct was unconstitutional." Sanchez v. County of San Bernardino, 2014 WL 12734756, at *19 (C.D. Cal. Mar. 10, 2014).

Case 5:25-cv-00331-KK-DTB     Document 169-5     Filed 07/14/26     Page 19 of 19     Page
ID #:4354
Case 5:18-cv-00992-JGB-SP     Document 136     Filed 09/23/21     Page 18 of 18     Page ID #:1750

However, the Court cannot agree the results were excellent.  Because Plaintiff prevailed only as to one Defendant, and did not prevail on his Fourth Amendment claims against the other eleven individual Defendants, the intentional infliction of emotional distress claim against all twelve individual Defendants, or the vicarious liability claim against the City of Ontario Defendant, the Court concludes that Plaintiff achieved partial success.  Factors that would compel the Court to find otherwise do not exist here.  See, e.g., Ramirez, et al. v. Oxnard Police Dep't, No. 13-16165, slip op. at *11–13 (C.D. Cal. Sept. 17, 2015) (Dkt. No. 219) (deeming an almost $3 million award and jury verdict on half of the plaintiff's claims "substantial success"); Clark, 803 F.2d at 990 (finding that, where plaintiffs had not sought damages, but received injunctive relief, "they achieved the practical result they sought"); Sanchez, 2014 WL 12734756, at *19 (deeming a $200,000 award in damages and jury verdict against the sole defendant on plaintiffs' excessive force claim "an excellent recovery").

Even as the Court adjusts the lodestar downward, the Court remains cognizant of Section 1988's purpose: "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel."  City of Riverside, 477 U.S. 561, 578 (1986).  As such, the Court refuses to apply a 50% downward adjustment, as Defendants request.  Doing so would certainly discourage future civil rights plaintiffs, who may mistakenly believe that one must prevail on every claim against every defendant in order to recover.  Moreover, the case upon which Defendants rely, Harris v. Marhoefer, 24 F.3d 16 (9th Cir. 1994), only considers monetary results to determine the plaintiff's "success," and thus has limited value here.

In light of the presumptively reasonable lodestar, Plaintiff's partial success, and the strong policy of encouraging civil rights litigation through attorneys' fees, the Court concludes that a 15% downward adjustment to the lodestar is appropriate.  This conclusion results in an adjusted lodestar of $844,693.88.[8]

Plaintiff requests a multiplier only in the event that the Court determines the PLRA applies to the case.  Because the Court finds the PLRA does not apply, the Court does not address Plaintiff's request.  Moreover, because the time, labor, and skill of Plaintiff's counsel are already reflected in the fee award, the Court also does not find that a multiplier is warranted here.

## IV.  CONCLUSION

The Court GRANTS IN PART Plaintiff's motion for attorneys' fees with the aforementioned adjustments.  The Court AWARDS Plaintiff $844,693.88 in attorneys' fees.

**IT IS SO ORDERED.**

---

[8] The Court rounds the amount up to the nearest hundredth decimal place.