**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Tel:   (951) 682-9311

*Attorneys for Plaintiff*, GEORGE GONZALEZ

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE GONZALEZ,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF CALIRNIA, by and through California Highway Patrol, and SEAN IRICK,<br><br>Defendants. | Case No. 5:25-cv-00331-KK-DTB<br><br>[*Honorable Kenly Kiya Kato*]<br>Magistrate Judge David T. Bristow<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**<br><br>[*Filed concurrently with supporting declarations and exhibits*]<br><br>Date: August 27, 2026<br>Time: 9:30 a.m. |

Case No. 5:25-cv-00331-KK-DTB

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .........................................1

I.      INTRODUCTION ....................................................................................1

II.     LEGAL STANDARD FOR NEW TRIAL PURSUANT TO FEDERAL
        RULE OF CIVIL PROCEDURE 59 ........................................................5

III.    NEW TRIAL IS NOT WARRANTED BECAUSE THE COURT'S
        ADMISSION OF SCOTT HOLDAWAY'S TESTIMONY WAS
        NEITHER ERRONEOUS NOR SUBSTANTIALLY PREJUDICIAL.....7

        A.    The Court Properly Admitted Scott Holdaway's Video Analysis
              Testimony Under Rule 702........................................................7

        B.    Scott Holdaway is Qualified by Training and Experience to
              Perform Video Analysis and Enhancement.........................................9

        C.    Defendants' Arguments Lack Specificity and Are Waived ............12

        D.    Mr. Holdaway's Analysis of the Objective Video Evidence Did Not
              Mislead the Jury Nor Did It Taint the Jury Verdict ......................13

IV.     CONCLUSION......................................................................................16

L.R. 11-6.2. CERTIFICATE OF COMPLIANCE ...............................................17

# TABLE OF AUTHORITIES

Cases

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*
738 F.3d at 969 ........................................................................................8

*Allied Chem. Corp. v. Daiflon,*
449 U.S. 33 (1980) ....................................................................................5

*Berbereia v. Cnty. of Kings,*
No. 1:16-cv-00363LJOSKO, 2018 WL 1605689, at *3, 7 (E.D. Cal. Apr. 3, 2018) ...................................................................................................9

*Boyd v. City & Cnty. of San Francisco,*
576 F.3d 938 (9th Cir. 2009) .....................................................................7

*City of Pomona v. SQM North America Corp.,*
750 F.3d 1036 (9th Cir. 2014) ...................................................................8

*Cooper v. United States,*
133 F.3d 926 (9th Cir. 1998) ...................................................................12

*Crawford v. Tribeca Lending Corp.,*
815 F.3d 121 (2d Cir. 2016) ......................................................................6

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.,*
762 F.3d 829 (9th Cir. 2014) .....................................................................5

*Gomez v. Fachko,*
2021 WL 5630623, at *1 (N.D. Cal., Dec. 1, 2021, No. 19-cv-05266-LHK) ..9

*Grady v. Biter,*
No. 13-cv-2479-BAS (MDD), 2014 WL 12684213, at *20-21 (S.D. Cal. Dec. 16, 2014) ...........................................................................................9, 14

*Graham v. Connor,*
490 U.S. 386 (1989) ................................................................................14

*Harper v. City of Los Angeles*,
533 F.3d 1010 (9th Cir. 2008) ...................................................................6

*Kensington Rock Island Ltd. Partnership. v. American Eagle Historic Partners*,
921 F.2d 122 (7th Cir. 1990) ...................................................................12

*Lam v. City of San Jose*,
No. 14-cv-00877-PSG, 2015 WL 6954967, at *2 (N.D. Cal. Nov. 10, 2015) ..9

*Landes Const. Co., Inc. v. Royal Bank of Canada*,
833 F.2d 1365 (9th Cir. 1987) ...............................................................5, 6

*Lyons v. Jefferson Bank & Trust*,
994 F.2d 716 (10th Cir.1993) ..................................................................12

iii                 Case No. 5:25-cv-00331-KK-DTB

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

*Passantino v. Johnson & Johnson Consumer Prods.*,
212 F.3d 493 n.15 (9th Cir. 2000)..................................................................5

*Primiano v. Cook*,
598 F.3d at 564-65...........................................................................................8

*Puffer v. Allstate*,
675 F.3d 709 (7th Cir. 2012)...........................................................................12

*Ruvalcaba v. City of Los Angeles*,
64 F.3d 1323 (9th Cir. 1995)........................................................................6, 7

*Scott v. Harris*,
550 U.S. 372 (2007) .......................................................................................14

*See Jones v. City of Los Angeles*,
No. 2:20-cv-11147-FWS-SK, 2023 WL 2559230, at *3 (C.D. Cal. Feb. 24, 2023)................................................................................................................9

*Stroh v. Saturna Capital Corp.*,
746 Fed. App'x 639 (9th Cir. 2018)..................................................................7

*Zeen v. Cnty. of Sonoma*,
No. 17-cv-02056-LB, 2018 WL 3769867, at *2 (N.D. Cal. Aug. 9, 2018)......9

<u>Statutes</u>

Federal Rule of Civil Procedure 59 ...................................................................5

Federal Rule of Evidence 702............................................................................8

Federal Rule of Civil Procedure, Rule 61...........................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On May 13, 2026, this jury reached a unanimous verdict against Defendants State of California, by and through California Highway Patrol, and Sean Irick, on Plaintiff's claim for excessive force under 42 U.S.C. §1983, and state law claims for negligence, battery and violation of the Bane Act. Defendants now seek a new trial based solely on the allegation that the Court improperly allowed testimony by Plaintiff's video expert, Scott Holdaway.

As a preliminary matter, the Court ruled on this matter on motion *in limine* and ruled that Mr. Holdaway could testify at trial. Defendants' Motion is merely rehashing their motion *in limine* that was correctly denied by the Court. As a video expert, Mr. Holdaway provided qualified and helpful testimony to the jury including his frame-by-frame analysis of the videos to locate a visual cue for each shot fired by each officer. The primary video was from Officer Sobaszek's body-worn camera, showing his hands and firearm naturally at the top center of the screen given that he wore his BWC on the center of his chest. This obviously indicates *that* he fired his weapon and *when* he fired his weapon. Thus, other shots were naturally fired by the other officers, Irick and Reynoso. Sergeant Reynoso also was equipped with a BWC situated at the center of his chest, that likewise, clearly indicating *that* he fired, and *when* he fired each round. Mr. Holdaway knew from the records that there were 26 shots fired and discovered from Officer Sobaszek's BWC that he fired 10 rounds based on the visual indication which were marked and noted by frame. Likewise, Mr. Holdaway discovered from Sergeant Reynoso's BWC that he fired 6 rounds based on the visual indication which were also marked and noted by frame. Mr. Holdaway knew from the records that Irick fired 10 times. However, from his frame-by-frame analysis, found 9 visual indications of when Irick fired.

Defendants expressed trial theory was that Gonzalez pointed a gun at Irick and was turning toward Irick at the time of the shots, while standing and running

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

towards bystanders, that officers never even saw nor knew were there. Yet, Mr. Holdaway's testimony broke down the objective video evidence which directly contradicts Irick's testimony of the shooting. The video evidence showed that Gonzalez was not pointing a gun at Irick and was not turning towards Irick during any shot, that Irick shot at Gonzalez as he was falling to the ground and after dropping the gun, and was shot by Irick after being unarmed and while lying face down on the ground.

Defendants' Motion reiterates their facts, which are disputed by the video and other evidence presented at trial. For instance, the jury heard evidence including from Plaintiff's medical expert, Dr. Ryan O'Connor, and documented by CT scans and X-Ray images, that Plaintiff *must* have been shot while lying on the ground because the bullet entered his thigh with an extreme upward trajectory leaving a projectile lodged in his abdomen.

Mr. Holdaway's assignment for his matter was to analyze the video with his expertise looking for indication of when the shots occurred and from which officer, and Gonzalez's body position at the time of the shots. (T2 at 275:13-20.) In that regard, Mr. Holdaway toggled back and forth, frame-by-frame, through the videos looking for common indicators of gunshots being fired, including muzzle flashes from the barrel of the firearms, gun smoke from the barrel of the firearms, and the abrupt recoil of the firearm. (T2 at 276:2-14.) In Sobaszek video, Sobaszek's gun at the top-center of the screen is clearly distinguishable from Irick's gun to the left.

At trial, Mr. Galipo meticulously went through each demonstrative exhibit that was marked by Mr. Holdaway to lay a foundation to be published to the jury, without objection by the defense, showing the following:

Exh. 65 – Total Gunshot Number ("TGS #") 5, Irick Gunshot Number ("IGS #") 1, Frame 51851 – muzzle flash seen coming from Irick's gun – Gonzalez moving away, back exposed, not turning and not pointing the gun, no gun seen (Trial Transcript Day 2 ("T2") at 287:16-288:10);

Exh. 67 - TGS #6, IGS #2, Frame 51859 – gun smoke seen coming from Irick's gun – moving away, back exposed, not turning and not pointing the gun, gun already dropping to the ground, not in hand (T2 at 289:18-290:12);

Exh. 68 – (Frame 51865) showing gun hit the ground indicated by a green circle (T2 at 290:13-25);

Exh. 69 - TGS #7, IGS #3, Frame 51866 – gun smoke seen from Irick's gun – Gonzalez moving away, back exposed, not turning and not pointing the gun, no gun in hand, gun already on the ground (T2 at 291:5-292:6);

Exh. 71 - TGS #10, IGS #4, Frame 51873 – muzzle flash seen from Irick's gun – Gonzalez falling to the ground, back exposed, not turning and not pointing the gun, no gun in hand, gun already on the ground (T2 at 292:16-293:8);

Exh. 73 - TGS #12, IGS #5, Frame 51880 – muzzle flash seen from Irick's gun – Gonzalez on knees, on ground, not turning and not pointing the gun, no gun in hand, gun behind him on the ground (T2 at 293:9-21);

Exh. 76 - TGS #15, IGS #6, Frame 51887 – muzzle flash seen from Irick's gun – Gonzalez on ground, not turning and not pointing the gun, no gun in hand, gun behind him on the ground (T2 at 293:22-295:4);

Exh. 79 - TGS #18, IGS #7, Frame 51894 – gun smoke seen from Irick's gun – Gonzalez on ground, not turning and not pointing the gun, no gun in hand, gun behind him on the ground (T2 at 295:5-25);

Exh. 82 - TGS #21, IGS #8, Frame 51901 – gun smoke seen from Irick's gun – Gonzalez on ground, not turning and not pointing the gun, no gun in hand, gun behind him on the ground *T2 at 296:1-19);

Exh. 84 - TGS #24, IGS #9, Frame 51908 – gun smoke seen from Irick's gun – Gonzalez on ground, not turning and not pointing the gun, no gun in hand, gun behind him on the ground (T2 at 296:20-298:1).

Then Mr. Galipo laid the foundation for and published, again without objection, the corresponding enlarged and stabilized screenshots with graphics that

3                    Case No. 5:25-cv-00331-KK-DTB

have the matching frame numbers as above. (Exhs. 126, 127, 128, 129, 131, 133, 135, 140, 143, and 146; T2 at 298:7-303:16.)

Finally, Mr. Galipo then laid the foundation for and <u>admitted into evidence, **without objection**</u>, the enlarged and stabilized screenshots *without* graphics with the corresponding frame numbers as indicated above, <u>which show the body position of Gonzalez at the time of the shots</u>. (Exhs. 85, 86, 87, 88, 89, 90, 91, and 92; T2 at 303:23-306:12.)

The testimony revealed that Irick was standing to the left of Sobaszek during the shots – it is obvious when Irick fired and what Gonzalez was doing at the time based on the video alone. Not only was it obvious that Irick's use of deadly force was excessive and unreasonable, but he also admitted it himself:

> Q. And, in fact, you recall us talking in your deposition about whether based on your training you thought it would have been appropriate to shoot Mr. Gonzalez for running away with a gun in his hand if he had not turned towards you or pointed the gun towards you.
>
> Do you recall that question in your deposition?
>
> A. Yes.
>
> Q. And you said, no, it would not be appropriate.
>
> Do you recall that?
>
> A. Yes.

(T1 at 162:22-163:6.) The video showed that Gonzalez was running away and not turning towards anyone or pointing a gun when Irick was shooting.

> Q. You have stated that you felt, based on your training, it was inappropriate to use deadly force as he was going to the ground. Correct? And you're saying at that point you tried to stop shooting?
>
> A. Yes.
>
> Q. I take it you would also say, based on your training, it was inappropriate to shoot Mr. Gonzalez after he was on the ground. Is that a

4                                    Case No. 5:25-cv-00331-KK-DTB

fair statement?

A.    Yeah…

(T1 at 177:17-25.) The video showed that shots were fired by Irick at Gonzalez while he was going to the ground and while he was on the ground.

Q.    Would you also agree, if they drop the weapon, they no longer have the ability or the opportunity to use it?

A.    Yes.

Q.    And regarding this intent thing, this intent requirement -- and I think we talked about this to some extent -- a weapon in the hand is not enough. They have to appear to intend to want to use it against someone; true?

A.    Yes.

(T1 at 184:17-24.) The video showed that Gonzalez dropped the gun, therefore no longer had the ability or opportunity, yet Irick continued using deadly force.

## II.    LEGAL STANDARD FOR NEW TRIAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59

Authority to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980) (per curiam). Pursuant to Federal Rule of Civil Procedure 59, the Court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). The motion should only be granted, if after according "full respect to the jury's findings," the Court weighs the evidence and assesses the credibility of the witnesses and "is left with the definite and firm conviction that a mistake has been committed." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (citation omitted); *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014).

"Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." Fed. R. Civ. P. 61. "[T]he court must disregard all errors and defects that do not affect any party's substantial rights." *Id.* An error of law, including erroneous evidentiary rulings, can be a basis for granting a new trial, but only "when an erroneous evidentiary ruling 'substantially prejudiced' a party." *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). Prejudice is found only if the error "more probably than not…tainted the verdict." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008). A verdict should only be set aside where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed by the jury." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987). Courts "should not be quick to revisit a jury's credibility determinations, and must proceed with caution and great restraint when asked to do so." *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 128 (2d Cir. 2016).

As will be discussed below, none of the grounds Defendants raise in their Motion warrant granting a new trial. In fact, there was substantial objective evidence that Irick used excessive and unreasonable force against Gonzalez, especially in light of the jury properly following the Court's instruction on the law, including: "It is your duty to find the facts from all the evidence in the case. To those facts, you will apply the law as I give it to you. You must follow the law as I give it to you, whether you agree with it or not." (T3 at 573:7-10.) "Evidence may be direct or circumstantial…. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence." (T3 at 575:23, 576:2-4.) Specifically, regarding expert opinion testimony: "Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves…" (T3

at 576:20-22.) "In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says or part of it or none of it." (T3 at 579:17-20.)

One reasonable inference that can be made from the jury verdict is that the jury found Plaintiff's experts to be credible and found Defendants' experts lacked credibility.

## III. NEW TRIAL IS NOT WARRANTED BECAUSE THE COURT'S ADMISSION OF SCOTT HOLDAWAY'S TESTIMONY WAS NEITHER ERRONEOUS NOR SUBSTANTIALLY PREJUDICIAL

In terms of evidentiary error at trial, the Ninth Circuit has stated:

> The decision to admit potentially prejudicial evidence under Rule 403 is committed to the sound discretion of the trial court. Proof the evidence was prejudicial to one party is insufficient to establish that the prejudice was unfair, or that the trial court abused its discretion in weighing that prejudice against the evidence's probative value. As long as it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence before its admission, we conclude that the demands of Rule 403 have been met.

*Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009) (cleaned up). Even if the exclusion of evidence at trial was an abuse of discretion, a new trial should not be granted if the exclusion of evidence was harmless, and in light of the totality of the evidence presented at trial, the admission of the evidence unlikely would have changed the verdict. *See Stroh v. Saturna Capital Corp.*, 746 Fed. App'x 639, 640 (9th Cir. 2018) (Mem.) (citing *Rubalcava*, 64 F.3d at 1328). Here, a new trial is not appropriate because Defendants have not shown that any of the Court's evidentiary rulings were erroneous or that any prejudicial error occurred.

### A. The Court Properly Admitted Scott Holdaway's Video Analysis Testimony Under Rule 702

Under Federal Rule of Evidence 702, "A witness who is qualified as an expert

by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Prior to trial, this Court conducted the requisite analysis under Rule 702 and properly determined that Mr. Holdaway's expert opinions were admissible at trial. Specifically, the Court found that "Mr. Holdaway's testimony and video reconstructions are admissible" because his tesitmony "will help the jury understand the body camera footage in this case," "[h]is observations in the synchronized videos are relevant to presenting the body camera footage of the incident in a logical manner," his tesitmony "has a 'valid connection to the pertinent inquiry,'" and that his "video reconstructions were made in a manner cosnistent with his knowledge and experience." (Doc. No. 122 at 6).

The Court's ruling finds support in controlling precedent and prior case law. The test for admissibility of expert testimony "is not the correctness of the expert's conclusions but the soundness of his methodology." *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car,* 738 F.3d at 969. In conducting its inquiry, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969-70. "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d at 564-65. Here, the Court correctly determined that Defendants' issues

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

regarding Mr. Holdaway's credibility "go to the weight of the evidence, and Defendants may cross-examine him accordingly." (Doc. No. 122 at 6).

As to video and audio expert testimony in particular, "an expert witness may enhance videos or images and testify about the enhancement process." *See*, *e.g.*, *Zeen v. Cnty. of Sonoma*, No. 17-cv-02056-LB, 2018 WL 3769867, at *2 (N.D. Cal. Aug. 9, 2018) (holding that an expert witness "may testify about how he enhanced the video footage"); *Lam v. City of San Jose*, No. 14-cv-00877-PSG, 2015 WL 6954967, at *2 (N.D. Cal. Nov. 10, 2015), at *2 (holding that an expert witness "may explain how he enhanced the audio and play the enhanced audio to the jury"); *Gomez v. Fachko*, 2021 WL 5630623, at *1 (N.D. Cal., Dec. 1, 2021, No. 19-cv-05266-LHK); *Grady v. Biter*, No. 13-cv-2479-BAS (MDD), 2014 WL 12684213, at *20-21 (S.D. Cal. Dec. 16, 2014) (court did not err in admitting video expert's testimony that "helped the jury identify what portions of the video evidence required closer examination, and to interpret some of the less obvious information conveyed by the video evidence"). Courts have also admitted video expert testimony regarding what is depicted in the videos they analyze. *See Jones v. City of Los Angeles*, No. 2:20-cv-11147-FWS-SK, 2023 WL 2559230, at *3 (C.D. Cal. Feb. 24, 2023) (video expert's testimony as to his observations of what is depicted in the video are admissible and helpful to the jury as they were necessary to explain the basis for his expert opinions regarding his video analysis and editing and how he came to form his opinions); *Berbereia v. Cnty. of Kings*, No. 1:16-cv-00363LJOSKO, 2018 WL 1605689, at *3, 7 (E.D. Cal. Apr. 3, 2018) (relying on video expert testimony as to the body position of the decedent at the time the deputies fire their first shot to conclude that a reasonable jury could determine that the decedent did not pose a threat at the time of the shooting).

**B.    Scott Holdaway is Qualified by Training and Experience to Perform Video Analysis and Enhancement**

At trial, the jury learned that Mr. Holdaway is a forensic video analyst

employed by CVisual Evidence. (T2 at 272:13-20.) Generally, he reviews video footage from a forensic lens, looking at the video in detail, which he did here with the Sobaszek and Reynoso videos. (T2 at 273:4-14.) Mr. Holdaway went to California State Dominquez Hills and earned a bachelor's degree in digital media arts and has received training through CVisual. (T2 at 273:21-374:2.) He has 168 hours of training though LEVA, which is a law enforcement agency that provides training in forensic video analysis; 25 hours of training though Axon Intestate, which is the company that produced these body worn cameras. (T2 at 274:3-10.) His training includes metadata analysis, video enlargement, stabilization, color correction, and more. (T2 at 274:11-17.) Mr. Holdaway has been retained in other officer-involved shooting cases, and has testified in Court before based on his expertise. (T2 at 275:4-12.) Therefore, Mr. Holdaway is qualified to perform and present his expert video analysis in this matter. Mr. Holdaway also primarily relied on the BWC video footage. (T2 at 275:21-23.) Therefore, Mr. Holdaway relied on sufficient facts and data for his video analysis.

Mr. Holdaway's assignment here was to discover when the shots occurred by using visual indicators in the video and what was happening at that time, including Gonzalez's body position. (T2 at 275:15-20.) Mr. Holdaway reviewed the video footage frame-by-frame, toggling through 30 frames per second, forward and backward to pick up on any visual indicator for his assignment, including looping sections to review repeatedly. (T2 at 276:2-9.) In the portions of the videos where a shot was fired, Mr. Holdaway identified muzzle flashes from the firearms, plume of smoke from the firearms, and the recoil of the firearm (i.e., abrupt movement of the gun in the opposing direction of the bullet). (T2 at 276:10-20.) Mr. Holdaway also numbered each frame for reference and identification. (T2 at 277:6-19.) Thus, Mr. Holdaway demonstrated his reliable principles and methods.

Mr. Holdaway then gave extensive testimony on how he came to determine when the shots were fired and presented the exhibits to the jury as support and

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

evidence. (T2 at 277:20-306:12.)

Mr. Holdaway showed objective evidence pointing out the visual indicators of when each officer fired based on his expert video analysis though still frames of Sobaszek's BWC video. These exhibits were helpful for the jury to determine the facts of the case including: which officer was firing at which time; what Gonzalez was doing at the specific time the officer was firing and immediately prior to (i.e., body position, direction of movement, where he is looking, where the gun is located); and whether it was necessary to use deadly force against Gonzalez at the time—in other words, whether he was an immediate threat of death or serious bodily injury when the Irick fired each shot.

Notwithstanding the plain relevance of the evidence and Mr. Holdaway's expertise, Defendants first vaguely argue without a single citation to the record that Mr. Holdaway's "video manipulations were biased interpretations." (Doc. 166, Mot at 5:9-10.) Defendants' underdeveloped argument cannot be adequately addressed and should not be considered. However, Mr. Holdaway did not "manipulate" any videos at all. He merely enlarged the area of the video showing Gonzalez, stabilized the video because the camera bounced on the officer's chest as he moved, and added demonstrative indications on screen including the dropping of the gun, when a shot was fired, a frame counter, and a timer. These are not biased interpretations or based on speculation but based on obvious objective evidence and visual cues – which is what the jury considered in its verdict.

Defendants' present arguments are unpersuasive, go to the weight of the evidence not admissiblity, and were all subject to cross examination and objection. Yet, the jury found for Plaintiff on all claims despite Defendants' sustained objections, and vigorous cross examination of Mr. Holdaway, where the defense even published Mr. Holdaway's demonstrative exhibits to the jury. (T2 at 306:18-313:21.) Part of Mr. Holdaway's testimony was based on the gun smoke and muzzle flashes coming out of the barrel of Irick's gun. Defendants' cross examination of

Mr. Holdaway included the improper suggestion, without any evidentiary support, that the smoke coming from Irick's gun could have some other explanation, such as smoke coming form some other source in the factory. (T2 at 310:20-311:8.) As the Court pointed out, without any intention to present evidence that there was smoke in the vincinity of where the officers were from some other source, Defendants' attempted to mislead the jury by presentation of argument with no basis in fact. (T2 at 320:9-18.)

### C.    Defendants' Arguments Lack Specificity and Are Waived

It has long been held that underdeveloped, perfunctory, or conclusory arguments are waived. *See Cooper v. United States*, 133 F.3d 926 (9th Cir. 1998); *Puffer v. Allstate*, 675 F.3d 709 (7th Cir. 2012); *Kensington Rock Island Ltd. Partnership. v. American Eagle Historic Partners*, 921 F.2d 122, 124-25 (7th Cir. 1990); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 722 (10th Cir.1993). Defendants' Motion is so unclear and underdeveloped that it is impossible to ascertain what they are arguing given that it lacks citation to testimony or exhibits.

Not only did Defendant fail to object to the publication of any of the still frame exhibits showing when Irick fired his shots, but when the Court saw that more foundation was necessary, the Court *sua sponte* requested more foundation to be laid, which Mr. Galipo did and continued the examination without further objection. The Court indeed ensured that there was a fair trial for both sides. Ultimately, without making timely objections, Defendants' arguments are waived.

To be clear, Defense counsel objected several times during Mr. Holdaway's testimony. First a foundation objection to a demonstrative Exhibit 117, pertaining to the timer counting down to the first shot, which was sustained by the Court and was followed by Mr. Galipo laying additional foundation. (T2 at 278:2-280:1.) Second, after Mr. Galipo laid the foudation for the timer, Defense counsel's foundation objection as to determining the time of the first shot (fired by Sobaszek), was overruled. (T2 at 280:13-16.) Third, Defense counsel's foundation objected as to

12    Case No. 5:25-cv-00331-KK-DTB

Mr. Holdway's understanding of whose firearm was dipicted on Sobaszek's BWC shown in Demonstrative Exhibt 61 (Sobaszek's), was sustained by the Court, which was followed by Mr. Galipo laying addional foundation. (T2 at 281:2-282:20.) Fourth, Defense counsel's foundation objection as to Mr. Holdaway's understanding of who was firing the second shot as depicted in Demonstative Exhibit 63 (Sobaszek), was sustained by the Court, which was followed by Mr. Galipo laying additional foundation and thereafter was published to the jury with permission of the Court without objection by counsel. (T2 at 285:3-286:8.) No other objections were made by Defense counsel during Mr. Holdaway's testimony.

All of Defense counsel's objections during the direct examination of Mr. Holdaway pertained to Sobaszek's first two shots. The Court was very fair in ruling on objections, sustaining three of the four Defense' objections. Yet, no objections were made as to any testomony explaining what was depicted in the exhibits showing Irick's shots fired. Finally, when Mr. Galipo moved to admit Exhibits 85 through 92, the Court asked Defendants, "Any objection?", to which Defense counsel replied, "No, Your Honor." (T2 at 306:6-11.)

Defendants waived the arguments made in the present Motion. Therefore, Defendants' Motion for a New Trial should be denied.

### D. Mr. Holdaway's Analysis of the Objective Video Evidence Did Not Mislead the Jury Nor Did It Taint the Jury Verdict

Finally, Defendants argue that Mr. Holdaway's still-frame analysis, drawn from the body-worn cameras of two non-defendant officers, misled the jury into believing that what those cameras captured was what Irick perceived. That argument misreads both the record and the governing law. Mr. Holdaway's testimony was all based on objective video evidence of what occurred at the time. The video, in both real time and frame-by-frame, contradicts Irick's self-serving testimony that Gonzalez was upright and turning towards him with a gun pointed at him during all the shots. The video, in both real time and frame-by-frame, showed Plaintiff's

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

position and conduct, with his back to officers, moving away yet slowing down, not pointing the gun and not turning towards anyone at the time of any shot, shot at while moving away, shot after dropping the gun, shot at unarmed while falling to the ground, and shot at while unarmed and on the ground.

The Supreme Court in *Graham,* limits the jury's reasonableness analysis to the circumstances confronting the officer but does not exclude objective video of the event itself showing the circumstances the officer was confronted with. *See Scott v. Harris*, 550 U.S. 372, 378-81 (2007). "There are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Id*. at 378. Even without Mr. Holdaway's testimony, even without the still-shots of the videos, Sobaszek's BWC video unequivocally show the following, which must be inferred that the jury also found: Gonzalez never pointed the gun at any officer, thus Irick's credibility was damaged; Gonzalez was not pointing the gun during any shot; Gonzalez was not turning toward any officer during any shot; Gonzalez was slowing down; Irick shot at Gonzalez after he dropped the gun; Irick shot as Gonzalez was falling to the ground; and Irick shot at Gonzalez after he was already lying on the ground. (Exh. 1, Sobaszek BWC.) Exhibit 1, the Sobaszek BWC video, was stipulated by the parties as authentic as to foundation, pretrial (Doc. 135, Amended Joint Exhibit Stipulation at 3), and Exhibit 1 was published to the jury without objection. (T1 at 186:9-19.) There is ample evidence to support a verdict here. *See Grady*, 2014 WL 12684213, at *21 (finding that even if the court erred in admitting the video expert's testimony, the error was harmless because the expert's conclusions were readily apparent or readily verifiable from viewing the video).

Finally, Defendants' Motion provides no offer of proof, either in fact or law, that the excluded officers should have been able to testify as to their perspective of the incident. Before Mr. Holdaway's testimony, the jury heard Irick's testimony and

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

evidence, including: Irick fired 10 rounds (T1 at 138:5-139:3) and Sobaszek and Irick stood relatively close together (T1 at 152:20-25).

Irick's examination also discussed Sobaszek BWC video screenshots from Exhibit 92 (Frame 51799), Exhibit 93 (Frame 51829), Exhibit 94 (Frame 51836), Exhibit 95 (Frame 51843), Exhibit 96 (Frame 51849), Exhibit 97 (Frame 51851, Irick's first shot with visual cue), Exhibit 98 (Frame 51857), Exhibit 99 (Frame 51859, Irick's second shot), Exhibit 100 (Frame 51865, gun on ground), Exhibit 101 (Frame 51866, Irick's third shot), Exhibit 103 (Frame 51873, Irick's fourth shot), Exhibit 105 (Frame 51880, Irick's fifth shot), Exhibit 108 (Frame 51887, Irick's sixth shot), Exhibit 111 (Frame 51894, Irick's seventh shot), Exhibit 114 (Frame 51901, Irick's eighth shot), and Exhibit 116 (Frame 51908, Irick's ninth shot with visual cue), which were received into evidence without objection (T1 at 168:12-19, 170:14-25). From these exhibits, which depict the moments immediately prior to and when the shots began, Irick testified that Gonzalez was not looking backwards, he could not see a gun in his hand, does not appear to point a gun and was moving away from Irick. (T1 at 171:2-175:13.)

Irick finally agreed that when he started shooting, he "didn't know where the gun was" (T1 at 173:5-15) and that immediately prior to the first shot being fired, Gonzalez does not appear to be trying to shoot at Irick (T1 at 174:19-21). Irick was under the impression that before Gonzalez went to the ground, he had been impacted by at least one of Irick's shots. (T1 at 176:14-17.) The jury was also able to view the shooting from the stipulated video, Exhibit 1, so that the jury had the chance to see the incident in real time. (T1 at 186:9-187:12.)

Irick was the only defendant on trial and had opportunity to testify as to his perceptions and conduct. The Court properly ruled that the perceptions of other officers were more prejudicial than probative and irrelevant to the analysis of whether Irick's shooting was excessive or unreasonable.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

## IV.    CONCLUSION

The Court properly allowed the testimony of video expert Scott Holdaway, and his testimony was supported by adequate foundation. The Court sustained a few of the Defendants' objections as to foundation and Plaintiff's counsel asked additional questions to establish a proper foundation to those questions. Defense counsel made no further objections and did not object to the admissibility of the video or any of the still frames of the video, showing the sequence of the shots and shooting. Defendants have not established any error by the Court, and certainly no prejudicial error. Defendants cannot meet the standard for a new trial under Rule 59. Therefore, Defendants' Motion should be denied in its entirety.

Respectfully Submitted,

DATED:  July 24, 2026

**LAW OFFICES OF DALE K. GALIPO**
**GRECH, PACKER, & HANKS**


By: _____/s/_____ *Marcel F. Sincich*_____
Dale K. Galipo
Marcel F. Sincich
Trent C. Packer
*Attorneys for Plaintiff*

## L.R. 11-6.2. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,257 words (excluding the caption page, signature blocks, and certificate of compliance), which complies with the word limit of L.R. 11-6.1.

Respectfully Submitted,
DATED:  July 24, 2026

**LAW OFFICES OF DALE K. GALIPO**
**GRECH, PACKER, & HANKS**

By: _____/s/_____ *Marcel F. Sincich*_____
Dale K. Galipo
Marcel F. Sincich
Trent C. Packer
*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL