UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

HONORABLE KENLY KIYA KATO, U.S. DISTRICT JUDGE

GEORGE GONZALEZ,                          )
                                          )
                    Plaintiff,            )
                                          )
       v.                                 )          Case No.
                                          )     CV 25-331 KK (DTBx)
CITY OF HEMET, et al.,                    )
                                          )          Volume 2
                    Defendants.           )     (Pages 195 - 454)
_____   )

REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS
JURY TRIAL:  DAY TWO
MONDAY, MAY 11, 2026
8:24 AM
RIVERSIDE, CALIFORNIA

_____

MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET
RIVERSIDE, CALIFORNIA  92501
MYRAPONCECSR@GMAIL.COM

UNITED STATES DISTRICT COURT

Q.    And given the -- the fact that the shooters were standing upright when they shot, how could you get a shot to enter the thigh and travel upward into the abdomen?

A.    Uh, based on all the evidence I saw, including the body-worn camera video, I believe that Mr. Gonzalez was in the process of falling or already on the ground when the gunshot wound to the thigh occurred.

Q.    And why would, in your opinion, that position be consistent with that?

A.    If two people are standing on level ground and one is shooting at the other person, you'll have the back-to-front trajectory.  If someone is falling or lying on the ground when it's going back to front, it's also going to traverse upwards relative to how the body's positioned.  So there has to be a change in the body position from the neutral to explain the trajectory of these bullets.

Q.    So in your opinion, the shot to the thigh, Mr. Gonzalez was either going to the ground or on the ground?

A.    Yes.

Q.    And what did that bullet pass through in the body after entering?

A.    The musculature of the leg, and then when it entered into the abdominal cavity, it hit part of the colon and tore a hole in the colon, and then came to rest on the right side of the abdomen.

**UNITED STATES DISTRICT COURT**

their body.

Q.    So this would be 20 percent of the total blood supply?

A.    Yes.

Q.    Is that a critical amount from a medical perspective?

A.    Yeah.  A patient that loses that much blood will be in the early to middle stages of hemorrhagic shock.

Q.    Was the -- based on your review of the medical records, was the bullet close to any vital parts of the body?

A.    This bullet specifically, based on the reading of the CT scan, came to rest, I mentioned, near the soleus muscle, and right next to the bullet, as well, was the internal iliac artery, which is one of the main arteries in the body.  So this is one of the situations where if the bullet had traveled just an inch or two further, it would have hit the artery and the outcome might have been very different in that case.

Q.    And what type of treatment, generally, did Mr. Gonzalez receive in the hospital?

A.    From the emergency room, they stabilized him initially with a blood transfusion.  He was rushed to the operating room where they performed a procedure called an exploratory laparotomy.  So they put him under anesthesia and then they did an incision from the top of his stomach all the way down to the pubic bone and opened up his belly and explored

the entire abdomen for signs of injury.  I mentioned they found the damage to the colon that needed to be repaired.  And they were also able to locate and remove the bullet that we've been looking at in these images.

Q.    And how long, approximately, was he in the hospital for?

A.    I believe about two weeks.

Q.    Was there any issues that you noted with respect to infection?

A.    He developed an abdominal infection.  So he started making a lot of pus in his abdomen and got sick from that. They had to take him back to the operating room to do another surgical procedure to drain the infectious material and to put in a drain into the abdomen so that it could continue to drain the infection over the next several days while they were treating him with intravenous antibiotics.

Q.    You mentioned you looked at a few photographs of the injuries?

A.    Yes.

Q.    Can you turn to Exhibit 20, please.

(Exhibit No. 20 for identification.)

THE WITNESS:  Yes.

BY MR. GALIPO:

Q.    Is that a photograph that you understand was taken at the hospital?

**UNITED STATES DISTRICT COURT**

MR. GALIPO:  Thank you very much.

Nothing further at this time, Your Honor.

THE COURT:  Thank you.

Ms. Bears.

### CROSS-EXAMINATION

BY MS. BEARS:

Q.    Hello, Dr. O'Connor.

A.    Hello.

Q.    Just some follow-up questions --

A.    Certainly.

Q.    -- from counsel.

You mentioned one of the entries was -- you said it was a torn hole in the colon.  Could you describe that injury?

A.    It's -- in the medical records it's described as a serosal injury, so the substance of the colon -- the colon is like a tube, so the -- the substance of the colon was damaged by the bullet passing through and that needed to be repaired.

Q.    So a serosal injury, is that compared to a different type of injury to the colon?

A.    There's different types of injuries that can occur, yes.

Q.    And is a serosal injury more of a superficial injury to the colon?

A.    Yeah.  So as we described before, you know, you know, a bullet can go -- enter and then exit.  This is more of

### UNITED STATES DISTRICT COURT

understanding you were in the hospital for a couple weeks?

A.    Yes, sir.

Q.    And after your discharge from the hospital, did you continue to have any pain or any problems?

A.    Very much so.

Q.    Can you tell me what parts of your body you continue to have pain in?

A.    My abdomen, um, my colon, my thigh, my foot, my ribs, my knee, and just like headaches.

Q.    Do you have -- did you have any continued issues with your digestive system?

A.    Yes, sir.

Q.    I know it might be a little embarrassing and I apologize for that.   But what type of issues did you have?

A.    Um, well, since they -- they took my guts out and they put them back in, it's -- my body is not used to digesting that way.

Q.    Let me stop you for just a second.

I don't need necessarily an explanation of why you think it happened, but just what issues did you have?   In other words --

A.    It's hard for me to pass stool and I leak mucus from my colon and blood and feces.

Q.    I know this isn't a pleasant topic, but what do you do or have to do to deal with that issue of leaking mucus or

feces or blood?

A.    I've done a lot of different things.  I've worn diapers.  I've put toilet paper.  I've tried a tampon.  I have tried pads.  I've tried different soaps.  I've tried using wipies.  I've tried duct tape.  I've tried a lot of things.

Q.    Is it -- does it -- does it affect you on a daily basis?

A.    Yes, sir.

Q.    How does it affect you?

A.    It's -- it smells.  It smells like, um -- it smells like mucus, it smells like -- doesn't smell right.  It smells like you're -- smell like your insides kind of -- like, um -- it's a very harsh smell.  Sometimes people don't want to smell that.

Q.    You -- you -- you have children; is that right?

A.    Yes, I do.

Q.    Are you hoping to have some type of a medical procedure to -- to help fix the problem you currently have?

A.    Yes, I am.  I have an appointment scheduled to the gastro surgeon.

Q.    Okay.  In terms of your foot pain and thigh pain, have those gotten better to some extent over time?

A.    Yeah.  Just, like, arthritis and, like, just, my foot -- my foot feels okay now, but my thigh, I get, like, cramps where the muscle is torn, and when it's cold, my knee

**UNITED STATES DISTRICT COURT**

454

# CERTIFICATE OF OFFICIAL REPORTER

COUNTY OF RIVERSIDE      )
                         )
STATE OF CALIFORNIA      )

          I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

                         DATED THIS 11TH DAY OF MAY, 2026.


                         /S/ MYRA L. PONCE
                         _____
                         MYRA L. PONCE, CSR NO. 11544, CRR, RDR
                         FEDERAL OFFICIAL COURT REPORTER


# UNITED STATES DISTRICT COURT