ROB BONTA
Attorney General of California
CATHERINE WOODBRIDGE
Supervising Deputy Attorney General
AMIE BEARS
Deputy Attorney General
State Bar No. 242372
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone: (916) 210-7663
 Fax: (916) 322-8288
 E-mail: Amie.Bears@doj.ca.gov
*Attorneys for Defendant*
*California Highway Patrol and Officer Irick*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **GEORGE GONZALEZ,**<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF CALIFORNIA; CITY OF HEMET; PATRICK SOBASZEK; ANDREW REYNOSO; SEAN IRICK; and DOES 1-10, inclusive,**<br><br>Defendants. | 5:25-cv-00331-KK-DTB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** |

**INTRODUCTION**

Defendants object to Plaintiff's attorneys' request for fees of $2,893,210 inclusive of a 2.0 multiplier. The reasonable amount of fees that should be awarded is no more than $966,751.45 in fees with no multiplier.[1]

///

---

[1] Plaintiff failed to file a table required by Judge Kato's Civil Standing Order Section 9. Defendants have attached their specific objections in the format set forth in the Standing Order as well as a complete Excel File.

1

Plaintiff's counsel omits from their motion that they settled a significant portion of this litigation prior to trial with the co-defendants the City of Hemet and its Officers. Furthermore, Plaintiff's attorneys have not demonstrated the rates being sought in this matter are reasonable and appropriate market rates for them for the practice area in this community as outlined in this opposition and Mr. Schratz's declaration. Plaintiff's attorneys sought fees are duplicative, unreasonable and unnecessary. Plaintiff's attorneys do not justify a multiplier on fees that would grant Mr. Galipo $3,000 per hour. This is an unprecedented fee award that is not justified or supported by information provided by Plaintiff.

Defendants request:

- Plaintiff's attorney's billing rates be calculated based on a reasonable and supported rate;
- Work that is clerical and administrative be stricken from the fees sought ($4,200.00);
- Excessive time be stricken ($60,946.50);
- Vague time entries be adjusted ($54,156.00);
- Work done exclusively concerning the City of Hemet be stricken;
- No multiplier be awarded;
- The amount of fees awarded from this defendant be reduced by the amount already paid through the settlement with co defendants.

## STATEMENT OF FACTS

This litigation arises out of a non-fatal shooting following a vehicle and foot pursuit. Plaintiff was initially contacted on a felony warrant by three members of the Riverside County Regional Gang Task Force Region 3 (GTF3 that included California Highway Patrol (CHP) Officer Sean Irick, Hemet Police Department (HPD) Detective Patrick Sobaszek, and HPD Sergeant Andrew Reynoso. The initial contact was made while Plaintiff was standing outside of a vehicle. The three officers gave commands to take Plaintiff into custody, but he refused to comply and

instead entered his vehicle where he placed a sunscreen in the window and continued to move within the vehicle. Plaintiff threw items from the vehicle and made verbal statements to officers that they would have to kill him. Despite numerous efforts to get Plaintiff to comply with commands, Plaintiff decided to drive away at a high rate of speed, at which time a pursuit ensued. After a vehicle pursuit, Plaintiff's vehicle became disabled and stuck on train tracks. Rather than surrendering, Plaintiff exited the vehicle through the driver's door and fled on foot, ignoring officer commands to stop.  A foot pursuit then ensued, continuing into an industrial complex in the 500 block of B Street where Plaintiff Gonzalez presented a handgun in his right hand while continuing to flee. In response to his actions, all three officers engaged Gonzalez and discharged their firearms. Gonzalez was struck several times prior to dropping his firearm and falling to the ground. Medical aid was rendered prior to Gonzalez being transported to Riverside University Health System Medical Center in Moreno Valley where he was treated for nonfatal gunshot wound injuries. The Hemet Officers were wearing body worn cameras. The parties engaged in mediation with Panel Mediator Richard Copeland on April 3, 2026. (ECF 70.)  Plaintiff notified the Court that he settled with the City of Hemet and Officer Sobackech and Reynoso on April 13, 2026. (ECF 110) At the time the notice of settlement was filed, all pretrial documents, including Motion in Limine, proposed jury instructions and witness lists were filed.

The jury trial commenced on May 8, 2026. The trial concluded on the afternoon of May 12, 2026. The jury deliberated and returned a verdict on May 14, 2026, in favor of Plaintiff. The City of Hemet, Officers Sobaszek and Reynoso were finally dismissed from the case on May 21, 2026. (ECF 155.) Plaintiff's attorneys now are requesting fees of $2,893,210 inclusive of a 2.0 multiplier. (MPA, p. ii:7-8; see also MPA, pp. 1:7-10; 19:12, 25-26.) The unenhanced fee request is $1,446,605.00 (MPA, pp. 1:7-9; 19:25.) For the reasons set forth below, Defendants California Highway Patrol and Officer Irick oppose this request.

3

///

# ARGUMENT

**I. PLAINTIFF'S ATTORNEYS ARE ONLY TO BE COMPENSATED AT THE LODESTAR RATE FOR REASONABLE HOURS REDUCED BY A FACTOR WHICH TAKES INTO ACCOUNT THE SETTLEMENT REACHED WITH OTHER DEFENDANTS PRIOR TO TRIAL**

Under state and federal law, "a non-settling defendant is entitled to offset attorney's fees owed by the amount already paid by settling defendants." *Corder v. Brown,* 25 F.3d 833, 840 (9th Cir. 1994); see *Bravo v. City of Santa Maria,* 810 F.3d 659, 668 (9th Cir. 2016) (statute permitting recovery of reasonable attorneys' fees "does not require double reimbursement of identical litigation expenses" and thus "a district court abuses its discretion when it refuses to offset an award of attorney fees by a settling defendant's payment of those same fees"); *Regan Roofing Co. v. Superior Court*, 21 Cal. App. 4th 1685, 1694 (1994). This is because "a plaintiff's attorney is entitled only to a 'reasonable' fee," "[i]f an offset is denied, the plaintiff's attorney may receive a windfall," and "[a] windfall would be manifestly unreasonable." *Corder,* 25 F.3d at 840. "[A] district court abuses its discretion when it refuses to offset an award of attorney fees by a settling defendant's payment of those same fees." *Bravo v. City of Santa Maria*, 810 F.3d 659, 668 (9th Cir. 2016). Absent such an offset, the plaintiff would be permitted "double reimbursement of identical litigation expenses," which by definition is not a "reasonable" fee award. *Id.* The whole point of this Court's caselaw regarding offsets is to prevent prevailing parties' counsel from receiving a "windfall," because a windfall is "manifestly unreasonable." *Corder,* 25 F.3d at 840.

California law allows a non-settling tortfeasor to set off the amount of a jointly liable tortfeasor's settlement against damages awarded at trial. Cal. Code Civ. Proc. § 877; *Rashidi v. Moser* 60 Cal.4th 718, 722 (2014). Courts must allow juries to "apportion liability to a nonparty" including "defendants who settled

before trial and nonjoined alleged tortfeasors" *K.J.P. v. County of San Diego,* 621 F.Supp.3d 1097. (S.D. 2022). In *K.J.P.*, decedent's wife and children brought an action against San Diego County and San Diego County Deputy sheriffs for federal and state excessive force claims, negligence, and wrongful death. Plaintiffs voluntarily dismissed some of the deputies by stipulation and another deputy was dismissed at summary judgment. *Id*. at 1132. The Court ruled that under California law, the Court was required to ask the jury to apportion fault to nonparties because the fault of nonparties is relevant for comparative fault damages considerations. *Id*. at 1133.The Court cited to *Romine v. Johnson Controls, Inc*., 224 Cal. App. 4th 990, 1011 (2014), quoting that "[I]t is error for a trial court not to allow the jury to assess the comparative fault of defendants who settled before trial." *Id*. As a result, it was proper for the jury to apportion a percentage of fault to the officers and as such apportionment may still be relevant for reducing any damages award. *Id*.

In *Velez v. Roche,* 335 F. Supp. 2d 1022, 1042 (2004), the Court held that a non-settling defendant may claim an offset for amounts paid in settlement by other defendants only if two conditions are met. First, the non-settling defendant must demonstrate that the settlement and award (against which the offset is sought) were for the same injury. See *Getty Petroleum Corp. v. Island Transp. Corp.,* 862 F.2d 10, 15 (2d Cir.1988) (in trademark infringement case, upholding district court's decision not to offset because nonsettling defendants failed to establish that payments made to plaintiff by settling defendants were for same injury); *Banks ex rel. Banks V. Yokemick,* 177 F.Supp.2d 239. 264 (S.D.N.Y.2001) (in § 1983 case, stating that, for set-off rule to apply, "whether state or federal, the settlement must be predicated on the tortfeasors' liability for damages attributable to on the same injury"). Second, the injury must be indivisible such that there is joint and several liability among the settling and nonsettling defendants. See *Goad v. Macon County*, 730 F.Supp. 1425, 1426 (M.D.Tenn.1989) (in § 1983 case, stating that, "if the claims against the settling defendants were separate and distinct claims from the

trial defendants, the losing trial defendants cannot call for a set-off"); *Hoffman v. McNamara*, 688 F. Supp. 830, 831 (D.Conn.1988) *Id.* emphasis added.

Plaintiff's attorneys' fees motion is devoid of any mention of the settlement with the City of Hemet and Officers Sobacheck and Reynoso. There is no argument as to why the settlement amount should not count toward any offset for attorney fees. This is because they cannot. There is no question that the litigation surrounded the same set of facts, to such an extent that Plaintiff's key evidence at trial was the body worn cameras worn by the *settling defendants*.  Moreover, the claims against the City of Hemet concerned complicated *Monell* liability issues that were not alleged against the California Highway Patrol.  Litigation costs against the City of Hemet solely should be deducted before an amount of offset from the settlement with the City defendants is calculated.

The Court should compel Plaintiff to disclose the amount of settlement and require an offset for the fess already recovered.  To not do so will allow Plaintiff's attorneys an impermissible double recovery.

## II.   PLAINTIFF'S COUNSELS REQUESTED HOURLY RATES ARE UNREASONABLE.

In awarding attorney's fees, a federal court "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento,* 543 F.3d 1106, 1111 (9th Cir. 2008); *Lehr v. City of Sacramento.* 2013 U.S. Dist. LEXIS 42014, *10-11 (E.D. Cal. Mar. 22, 2013). Ultimately, a reasonable number of hours equals the number of hours which could reasonably have been billed to a private client. *Moreno*, at 1111. The determination of the proper amount of fees is typically done using the "lodestar" method in which the court determines the reasonable number of hours spent multiplied by the prevailing local rate for an attorney of the skill required to perform the litigation. *Blum v. Stenson,* 465 U.S. 886, 895 (1984); *Lehr,* at *10-11. Additionally, district courts may rely on their own knowledge of customary rates

6

and their experience considering reasonable and proper fees. See *Ingram v. Oroudjian,* 647 F.3d 925, 928 (9th Cir. 2011).  The district court must start by determining the number of hours that were reasonably expended on the litigation and then "multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno,* 534 F.3d at 1111; *Deocampo v. Potts*, 2014 U.S. LEXIS 24639, * 4 (E.D. Cal. Feb. 24, 2014).

### A. The rate sought is not the usual and customary rates that are paid by clients or awarded by courts.

The fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Dang v. Cross* 422 F.3d 800, 814 (9th Cir. 2005). Plaintiff's attorneys have not submitted evidence that would support the reasonableness of the hourly rates sought. Schratz Dec. p. 82. Mr. Sincich cites only to one case in 2020 in which he was awarded $400 per hour. Sincich Decl., ¶ 18. Other than that single case, he states that "a reasonable fee is $850 based on the recommendation of Carol Sobel." Sincich Decl, ¶ 22 at p. 10:1-3; see also Galipo Decl., ¶ 31. Mr. Johnson was admitted to the bar in 2025. Johnson Decl., ¶ 4. He states, without any citation to authority, that he is requesting $350 per hour. Johnson Decl., ¶ 12. Mr. Packer does not cite to any prior fee awards to seek to justify his requested $900 per hour rate. Instead, he relies upon his experience and Ms. Sobel's declaration. Packer Decl., ¶ 17.

### 1. Dale Galipo

Plaintiff seeks fees at $1,500 per hour for Mr. Galipo in addition to a multiplier of 2 taking his requested fees to $3,000 per hour. This is an unprecedented amount and not supported by any information provided.

7

## 2.    Marcel F. Sincich

Mr. Sincich's last reported award was made in 2020 when he sought, and received, $400 an hour. Galipo Decl., ¶ 19, Ex. 3.  He now seeks to more than double his rate to $850. There is no justification provided for a rate of $850 an hour for Mr. Sincich, a ninth-year attorney. Mr. Sincich did not examine any witnesses nor make any arguments at trial. In fact, he never presented any information to the jury. A rate of $506 an hour is a reasonable rate for him based on four percent per year increase utilized above for Mr. Galipo's rate. Schratz declaration p. 97.

## 3.    Trenton Packer

Mr. Packer is seeking $900 an hour.  Based on Mr. Packer's previous awards and accounting for a four percent a year increase in his rate, a reasonable rate for Mr. Packer is $787. Scharatz dec. 102.  It should be noted that Mr. Packer did not appear at counsel table during any court hearing. His presence at trial was in a supporting role in the gallery.

## B.    Upward adjustment to the lodestar is not warranted.

Plaintiff's counsel additionally seeks an upward enhancement of 50%. As a result, Mr. Galipo is seeking $3,000 per hour if the loadstar is awarded. This is an unprecedented amount and not justified.

The lodestar is presumptively reasonable. *Gonzalez*, 729 F.3d at 1202. However, in rare cases, a district court may make an upward adjustment based to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild*, *Inc.* that have not been subsumed in the lodestar calculation. *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973, 982 (2008).  Noting that the lodestar method already takes into account the risk of a contingent fee in its calculation, the Supreme Court has found that enhancements based on contingency are unwarranted in fee shifting cases and amount to double counting. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  The burden of justifying a deviation rests on the party proposing it. *See Blum v. Stenson*, 465 U.S. 886, 898

(1984) (stating that the burden of proving that an upward adjustment is necessary to the determination of a reasonable fee is on a fee applicant). Upward adjustment is not warranted where the skill of counsel, difficulty and novelty of the underlying legal issues, and the contingent nature of the fee awards are already baked into the unadorned lodestar. *See Willis v. Fresno*, 2014 WL 3563310 at *22 (denying request for upward adjustment of lodestar where the lodestar already included the *Kerr* factors).

The 12 *Kerr* factors concerning the hourly rate do not support the fee awards sought. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Of these factors, Plaintiff relies on the contingent risk and the delay in payment of the fees. (MPA, p. 17:10-12.) He also cites to the difficulty of the case and counsels' demonstrated skill. (MPA, p. 17:22-24.) Plaintiff also claims that the multiplier is warranted because of time spent defending the underlying criminal case, when there are no billing entries to justify this assertion.[2]

### 1. Contingent Risk

Plaintiff's counsel has not explained how this matter is different from any other matter brought by a single plaintiff in a tort matter. Virtually all of these types of matters of contingent fee agreement whereby counsel recovers fees only if plaintiff prevails. Schratz dec. pp 148.

### 2. Delay in payment

Plaintiff has not demonstrated why the lodestar amount sought does not sufficiently compensate counsel for any delay in payment. This is especially true in light of having received settlement from the City of Hemet.

/ / /

/ / /

/ / /

---

[2] This reference to defense of an underlying criminal matter seems to be due to a cut and paste from prior fee motions.

### 3. Novelty and Difficulty of the Questions Involved

This case was a straightforward Fourth Amendment violation case. The manner of the injury, a gun shout wound, and the results of the wound were not complex. The trial took only three days of testimony and the jury deliberated less than a day. This is not likely a case from which new civil rights law will be established.  While there were evidentiary issues, these are the types of issues which occur in civil rights trials when there is a dispute as to how events occurred. The main legal issues pertained to the admissibility of evidence. Mr. Galipo's experience was evidenced by him streamlining the issues, cross- and limiting the defense's ability to introduce evidence.  These skills are reflected in the hourly rates he has been awarded in the past. His requested amount in this case is $1,500 per hour, which is more than he has ever been awarded. But then Plaintiff seeks to double this amount making Mr. Galipo's requested rate $3,000 per hour, a sum that has never been awarded and is unprecedented. Certainly, a fee award of $3,000 per hour it is not supported by any information provided in the moving papers.

### 4. Plaintiff's counsel was not precluded from taking other employment

Plaintiff's brief alludes that this matter limited their ability to take other cases. This is not born out by the billing records. Schartz dec. pp 162-167.

### C. Plaintiff's attorneys are not entitled to fees incurred for litigation solely against the City of Hemet.

The City of Hemet and Officer Sobazack and Reynoso were separate defendants in this matter, with Monell claims alleged against the city.  Mr. Sharatz has identified billing entries attributable to work done in relation to these claims that have not been deleted from the billing entries submitted. (Schartz dec. Ex 14.) This amounts to 35.5 hours for Mr. Galipo, 1.7 hours for Mr. Sinich (after he removed other entries) and 1.2 hours for Mr. Packer. (*Id.*)

10

## III. PLAINTIFF SEEKS NONRECOVERABLE BILLS

### A. Clerical work is not recoverable.

Purely clerical tasks are generally not recoverable in a motion for attorney's fees and should instead be subsumed in normal overhead costs. *Nadorajah v. Hoder,* 569 F.3d 906, 921 (9th Cir. 2009) (filing, transcript and document organization were clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates) Plaintiffs may not recover for secretarial tasks such as calendaring, scheduling, copying documents, serving documents, mailing documents and bate stamp are secretarial task. See *Center v. for Biological Diversity v. Salazar*, No. CV10-2130-PHX-DGC, 2012 WL 5608094 at *4 (D. Ariz. Nov. 15, 2012) (concluding "researching USPS tracking and filing the complaint and other documents" were secretarial activities); *eMore v. SMD Software Inc*., No. CV-10-2052-PHX-JRG, 2012 WL 4856276 at * 7 (D. Ariz. Oct. 11, 2012) (noting tasks such as "filing, scheduling, calendaring activities and bates labeling documents" were secretarial tasks. *Robinson v. Padilla,* No. 2:07-cv-1072 GEB-KJM at * 1(E.D. Cal. 8, 2008.) (holding that serving documents is a secretarial task). "[C]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate." *Jeremiah B. v. Dep't of Educ*. Civil No. 09-00262 DAE-LEK, 2010 WL 34654, at *5 (D.Haw. Jan 29, 2010), citing *Sheffer v. Experian Info. Solutions, Inc*. 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003).

Three of the timekeepers billed to this case performed minimal work and/or mostly clerical and administrative work. Attorney Johnson billed 13 entries totaling 31.80 hours. He was admitted to the bar in December 2025 and began billing to this case in January 2026. While he did defend two depositions, his role in those depositions, per the transcripts, was primarily to interpose objections. Law clerk Peña-Pham billed 20 entries totaling 18.90 hours. Almost half of her time, 9.0 hours, was devoted to clerical and administrative work such as mailing and filing documents and working with Dropbox. Legal assistant De Leon billed 170 entries

11

totaling 55.70 hours. However, 49.1 hours of that time, or 88 percent of her total time, was devoted to clerical and administrative work. Schratz dec. pp 107-109. Clerical work is considered overhead, and as such, it is neither billable nor recoverable. Therefore, Plaintiff's request for fees should be adjusted accordingly.

**B.    Plaintiff cannot recover for excessive interoffice conferencing.**

The billings from Mr. Galipo, Mr. Sincich and Mr. Packer show an excess of conferencing hours.  Mr. Schratz created the following timetable showing the total number of conferring hours:

| Timekeeper | Lodestar Hours (LS) | Intra-Office Conferencing Hours (IOC) | IOC as a % of LS | 4% of LS | Excess IOC Hrs |
|---|---|---|---|---|---|
| Dale K. Galipo | 443.43 | 24.50 | 6% | 17.74 | 6.76 |
| Marcel F. Sincich | 584.20 | 60.80 | 10% | 23.37 | 37.43 |
| Trent Packer | 287.75 | 30.25 | 11% | 11.51 | 18.74 |

These conferences are unnecessary and should disallowed. In general, two attorneys cannot bill for communicating with each other as, such time is duplicative and unnecessary.  *Tarango v. City of Bakersfield, No*. 1:16-CV-0099-JLT, 2017 WL 5564917 at *11 (E.D. Cal. Nov. 20, 2017.) The amount of intra-office conference should be reduced. Schratz dec. III

**C.    Plaintiff cannot recover vague billing entries.**

Billing records should provide sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended. *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n. Local 307 v. G. & M Roofing & Sheet Metal Co. Inc.*, 732 F.2d 495, 502 n.2 (6th Cir. 2984.)  Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Billing records must at least identify the general subject matter of time expenditures so as to enable the reviewing court to determine whether the time

spent is related to a prevailing claim. *Id.* at 437, fn 12. If plaintiff's counsel fails to do so, the Court may be justified in "throwing up its hands and refusing to award any fees whatsoever." *Norris v. Sysco Corp.* 191 F.3d 1043, 1052 (9th Cir. 1999).

In this case Mr. Schratz has identified examples of vague billing by Mr. Galipo and Mr. Packer for trial preparation. Schratz dec. pp. 128 and 129. Because these entries do not provide sufficient detail, a reduction of these hours is warranted.

/ / /

/ / /

/ / /

**CONCLUSION**

Plaintiff should be awarded no more than $966,751.45. This amount is based on the reasonable fees and time spent on this case. This amount should further be reduced based on Plaintiff's settlement with the codefendants in this matter once Plaintiff's attorneys allow the Court to review the amount they retained in fees after the settlement. Defendants dispute any multiplier as Plaintiff's attorneys are already seeking hourly fees in excess of any amount typically awarded.

Plaintiff's attorneys are seeking fees of $2,893,210 inclusive of a 2.0 multiplier. The unenhanced fee request is $1,446,605.00. Mr. Galipo is requesting $1,500 per hour, which, by his own admission, is higher than any previously awarded amount. To add a 2.0 multiplier requested would take his hourly rate to $3,000 per hour, a sum that is unsupported by any evidence.

Plaintiff omits from his motion that he settled a significant portion of this litigation prior to trial with the co-defendants City of Hemet and its officers. Plaintiff's attorneys have not demonstrated the rates being sought in this matter are reasonable and appropriate market rates for them for the practice area in this community. The cost for Keneth Hubbs transcript should be stricken from Plaintiff's cost bill.

Dated:  July 28, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
CATHERINE WOODBRIDGE
Supervising Deputy Attorney General

*/s/ Amie Bears*

AMIE BEARS
Deputy Attorney General
*Attorneys for Defendant*
*California Highway Patrol*

SD2025300206
Opp to fees motion  [SF Version]

14

ROB BONTA
Attorney General of California
AMIE BEARS
Deputy Attorney General
MARIO E. GARCIA
Deputy Attorney General
State Bar No. 339990
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone: (916) 210-7663
 Fax: (916) 322-8288
 E-Mail: Mario.Garcia@doj.ca.gov
*Attorneys for Defendants State of California acting by and through the California Highway Patrol and Sean Irick*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE GONZALEZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>STATE OF CALIFORNIA; CITY OF HEMET; PATRICK SOBASZEK; ANDREW REYNOSO; SEAN IRICK; and DOES 1-10, inclusive,<br><br>                    Defendants. | 5:25-cv-00331-KK-DTB<br>Assigned to the Hon. Kenly Kiya Kato<br><br>**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS STATE OF CALIFORNIA ACTING BY AND THROUGH THE CALIFORNIA HIGHWAY PATROL AND SEAN IRICK'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>Hearing Date:    August 27, 2026<br>Time:                9:30 a.m.<br>Courtroom:        3<br><br>Trial Date:        May 8, 2026<br>Action Filed:    December 24, 2024 |

– i –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

## TABLE OF CONTENTS

EXECUTIVE SUMMARY ............................................................................................ 1

DECLARATION OF JAMES P. SCHRATZ ........................................................ 3

ADDITIONAL NOTES RE: AUDITS IN GENERAL ...................................... 5

SCOPE OF REVIEW ............................................................................................ 7

AUDIT METHODOLOGY .................................................................................. 8

SCOPE OF AUDIT ............................................................................................... 9

STANDARD OF REVIEW .................................................................................. 10

BILLING RECORDS ........................................................................................... 12

FINDINGS AND OPINIONS ............................................................................. 13

    I.    THE REQUESTED BILLING RATES
        ARE UNSUPPORTED AND UNJUSTIFIED ................................................. 13

        A.  Not Usual and Customary Rates That Are
            Paid by Clients or Awarded by Courts ........................................ 13
        B.  The Declaration of Carol A. Sobel Does Not
            Provide Relevant Data ................................................................. 16
        C.  There are No Declarations from Other Attorneys ..................... 19
        D.  The Rate Evidence Required ...................................................... 20
        E.  Reference Rates ........................................................................... 20
        F.  Reasonable Local Rates .............................................................. 21

    II.    BILLING BY TRANSIENT BILLERS ......................................................... 23

    III.    BILLING FOR EXCESSIVE INTRA-OFFICE CONFERENCING .......... 25

    IV.    VAGUE BILLING FOR TRIAL PREPARATION ...................................... 27

    V.    BILLING FOR CLAIMS AGAINST THE CITY OF HEMET ................... 30

    VI.    THE REQUESTED 2.0 OR 1.5 MULTIPLIER IS NOT JUSTIFIED ........ 31

SUMMARY OF FINDINGS ............................................................................... 38

– ii –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

**EXECUTIVE SUMMARY**

Plaintiff's attorneys move for an award of attorneys' fees, asking for base fees of **$1,446,605.00**, with a 2.00 multiplier for a total fee request of **$2,893,210.00**.

My audit of the fee motion found several areas of concern.

First, the actual amount of the unenhanced lodestar as evidenced by the billing records differs from the amount requested due to two discrepancies totaling $810.00. The actual unenhanced lodestar is **$1,445,795.00**.

Second, the requested billing rates are unsupported. Mr. Galipo and Mr. Sincich have submitted evidence of prior fee awards, but the increases they are seeking in this case from their previous awards far outpace inflation and are unsubstantiated by any reference to other fee awards to other comparable attorneyus. Mr. Galipo is asking for a rate that is 15.4 percent higher for trial-level work than a rate he received just two years ago. He has not referenced a case in which a comparable attorney performing comparable work has received $1,500 an hour. Mr. Sincich has reported only one fee award, made in 2020, and his rate request in this case is 212.5 percent higher than in that case. Further, he also has not provided any reference to a case in which an attorney with his experience in this or a similar practice area has received $850 an hour. Mr. Packer's requested rate of $900 is also unsubstantiated. The supporting declaration of Carol Sobel contains inconsistent methodology and does not provide relevant reference rates. It is my opinion that each of these rates should be reduced as discussed below.

Third, three of the timekeepers (attorney Johnson, law clerk Peña-Pham, and legal assistant De Leon) billed minimal work to this case or primarily billed for performing what should be unbillable clerical and administrative work. It is my opinion that their time should be totally disallowed. Doing so reduces the total fees requested by less than two percent.

Fourth, there was an excessive amount of intra-office conferencing. The three core timekeepers (attorneys Galipo, Sincich, and Packer) billed six, ten, and eleven percent of their time, respectively, in intra-office conferencing. In conducting over 4,000 audits, I have found that well-run litigation typically requires no more than four percent of time to be devoted to intra-

– 1 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

office conferencing. Some conferencing is necessary. Excessive conferencing simply inflates the fees and should be adjusted.

Fifth, I found that Mr. Galipo and Mr. Packer used vague, generic descriptions for trial preparation. Although Mr. Galipo attempts to cover over this billing deficiency by defining his vague entries to include at least twenty different types of discrete tasks, his doing so, along with concrete examples where he provided more specificity in trial preparation billing entries, demonstrates that he is aware of the vagueness of those entries. This time needs to be adjusted.

Sixth, it is my understanding that work on claims against the City of Hemet and its police officers were fully compensated in an eve-of-trial settlement between Plaintiff and the City. However, there are still a significant number of billing entries for such tasks that were not eliminated by Plaintiff's attorneys. That time should be removed.

Seventh, the requested 2.0 or 1.5 multiplier is not warranted based upon the analysis below.

My recommendation is that Plaintiff's attorneys be awarded no more than **$966,751.45** in fees with no multiplier.

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

## DECLARATION OF JAMES P. SCHRATZ

I, JAMES P. SCHRATZ, hereby declare:

1.      I am an attorney at law licensed to practice in the State of California and have been so licensed since 1976. I received my law degree from the University of San Francisco School of Law in June 1976, where I was the Editor-in-Chief of *The Law Review*. In September 1976, I joined the law firm of Heller, Ehrman, White & McAuliffe, where I worked as an associate in its litigation department. It must be emphasized that if the court has any questions about my declaration, I am more than willing to appear at the hearing to answer them. I never want to give the appearance that I am "hiding" from questioning by either opposing counsel or the court and merely relying on the declaration. The purpose of my declaration in all the cases I handle is to hopefully give the court whatever benefit there may be in my 50 years of experience. I have personally reviewed the case billings, deposition and trial transcripts, and other case documents as detailed below. I believe it is imperative to review all available pleadings, depositions, and, where available, arbitration or trial transcripts in order to give a full, fair opinion on the reasonableness of the fees requested and that any opinions that are based on other than such a complete review lack a proper foundation.

2.      In March 1978, I left Heller, Ehrman, White & McAuliffe and joined a smaller firm until August 1980, when I joined Fireman's Fund Insurance Company in San Francisco, California, in its General Counsel's Office. My responsibilities included representing Fireman's Fund as attorney of record in various litigation matters throughout the country. In addition, I supervised outside counsel throughout the country on various types of cases, including many complex civil litigation cases and many employment cases.

3.      In 1984, I left the General Counsel's Office and transferred to the Claims Department where I established the Major Litigation Unit, which was responsible for managing complex litigation throughout the country, including the $65 million bankruptcy of The Woodson Company. In this role, I was responsible for approximately 1,000 cases and a staff of ten people. I also became very familiar with the rates charged not only by Fireman's Fund "panel counsel,"

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

but also rates charged by solo practitioners and small, medium, and large law firms throughout the United States.

4.    In July 1990, I was promoted to Vice President Major Claims, where my duties were expanded to include responsibility for any case throughout the world that had potential exposure of $3 million or more, and responsibility for supervising approximately 100 adjusters. Again, I continued my involvement in supervising cases throughout the United States and stayed abreast of what solo practitioners and small, medium, and large law firms charged their respective clients.

5.    On January 1, 1994, I left Fireman's Fund to establish my own litigation management and consulting firm. I am the principal of Jim Schratz and Associates, a firm that conducts legal fee audits of various law firms throughout the country. Over the past thirty-two years, I have personally supervised or conducted approximately 4,000 legal fee audits throughout the country on behalf of both clients and law firms, including governmental agencies, insurance companies, corporations, and private individuals.

6.    Many of these audits have involved plaintiff's fee requests in fee-shifting cases. In that role, I have performed legal fee audits of various law firms on behalf of the California Department of Justice, the City and County of San Francisco, the City of Huntington Beach, the Sonoma County Sheriff's Office, the State of Wisconsin, United Airlines, and Avis Rent-A-Car, among others. The amount of the fee requests audited ranges from a low of a few hundred thousand dollars to approximately $60 million.

7.    A description of several of the cases in which I have provided expert opinions and/or testimony is attached as **Exhibit 1**.

8.    I know of no expert whose opinion is wholly accepted by courts 100 percent of the time. Like most other experts, not all courts have accepted my audit findings. Over the years we have attempted to track all cases that have rejected, in whole or in part, my opinions and it appears that out of approximately 4,000 audits only a few cases have done so.

9.    My analysis of those cases in which the courts have not accepted my audit findings or have criticized aspects of my methodology or credentials is attached as **Exhibit 2**.

– 4 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

10.     If the plaintiff in this case or anybody else has other cases to add to this list we are more than willing to do so. It is my firm belief that all experts should be fully transparent and inform both the court and all parties involved of all cases which did not accept their opinions. More specifically, I believe all the declarants in a case should provide any and all information concerning any declarations they have filed in the past where the courts have rejected, in whole or in part, their statements. I believe we all owe that to the court and to the opposing party.

<b>ADDITIONAL NOTES RE: AUDITS IN GENERAL</b>

11.     An audit does not always uncover overbilling. On numerous occasions, I have been retained by a client to audit a legal bill and have informed the client that there is little, if any, overbilling and that the client should pay most, if not all, of the invoice.

12.     For example, previously I have been retained by the California Department of Insurance to audit a number of law firms in connection with numerous matters, including the insolvency of Golden Eagle Insurance Company, which was located in San Diego, California (and was declared insolvent by the California Insurance Commissioner). On a number of these audits, I found that most, if not all, of the fees involved were reasonable and necessary, and recommended to the client that it pay most, if not all, of the fees audited.

13.     As a standard practice, I make an offer to all of my clients to review the bills free of charge and arrive at a preliminary opinion as to whether an audit would uncover any overbilling, so as to make an audit cost efficient. I estimate that in approximately 10 to 15 percent of the requests I receive, I suggest to the client that an audit is not cost justified.

14.     On numerous occasions, I have been retained by a law firm engaged in litigation with a client to conduct an audit, and if the audit discloses no overbilling, I testify as an expert witness on behalf of the law firm. The following is a partial list of the law firms that I have audited where the audit disclosed that most, if not all of the fees, were reasonable.

> Sidley & Austin
> Manatt, Phelps & Phillips
> Mower, Koeller, Nebeker, Carlson & Halluck
> Lanahan & Reilley
> Lurie & Zepeda
> Banning, Micklow, Bull & Lopez
> Robles & Castles

– 5 –

<b>DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'<br>OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES</b>

Thelen Reid & Priest
Stoel Rives
Robinson & Cole
LeBoeuf, Lamb, Greene & MacRae
Husch & Eppenberger
Parson, Behle & Latimer
Christiensen Miller Fink Jacobs Glaser Weil & Shapiro, LLP
Berding & Weil
Meredith Weinstein & Numbers
Spector Law Offices
Epstein Becker and Green
Pillsbury Winthrup
Latham and Watkins

15. The following is a sampling of cases where I have provided deposition and/or trial testimony in support of a law firm's fee request. It is important to emphasize that we use the same legal fee audit methodology whether we are retained by a law firm in support of its fee request or retained by an opposing party in opposition to the fee request. The purpose of the audit is to give an honest, unbiased opinion on the reasonableness of the legal fees.

- In *PNY Technologies, Inc. v. Miller, Kaplan, Arase & Co., LLP*, Case No. 3:15-cv-01728-MMC, in the United States District Court, Northern District of California, I testified in support of the national law firm Winston & Strawn's request for fees.

- In *Gen. Charles E. Yeager, Victoria Yeager, Charles E. Yeager Revocable Living Trust, and General Chuck Yeager Foundation v. Don A. Lesser, The Lesser Law Group, and Does 1 through 20, inclusive*, Case No. 34-2011-00109638, in the Superior Court of California, County of Sacramento, I testified in support of the law firm's request for fees.

- In *North Coast Engineering, Inc. v. State Farm General Insurance Company, et al.,* Case No. SCV 243762, in the Superior Court of California, County of Sonoma, I testified in support of a request for fees submitted by the Law Offices of Duncan James.

- In *Victaulic Company v. American Home Assurance Company, et al.,* Case No. RG12642929, in the Superior Court of California, County of Alameda, I testified in support of Pillsbury Winthrop's request for fees.

- In *Sonic Automotive, Inc., v. Chrysler Insurance Company, et al.,* Case No. 1:10CV717, in the United States District Court for the Southern District of Ohio – Western Division, we were retained to audit fees and expenses for over $10 million submitted by the law firms of Hinshaw & Culbertson LLP, Broad & Cassel, James McElroy & Diehl, P.A., and Williams & Connolly LLP. We performed a legal fee audit according to our standard audit methodology.

– 6 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

- In *EDUCAP, Inc. et al., v. Philadelphia Indemnity Insurance Company*, Civil Action No. 1:13-cv-72 LO/IDD, in the United States District Court for the Eastern District of Virginia – Alexandria Division, we were retained to audit $3.9 million in fees for the law firms of Williams & Connolly LLP, Simpson Thacher & Bartlett LLP, Skadden, Arps, Alte, Meagher & Flom LLP, and Jaffe Raitt Heuer & Weiss PC. We performed a legal fee audit according to our standard audit methodology.

16.     I have published approximately 35 articles, many of which involve the control of legal fees and abuses in the billing practices of attorneys. Over the past several years, I have given numerous presentations on legal auditing and controlling legal costs throughout the United States, Canada, and England. I have made a number of presentations to various Bar Associations, insurance industry groups, and other organizations, including the American Bar Association, on how to assist the court in analyzing fee requests. I wrote an article on employing legal fee auditors in fee-shifting cases, which was published in *Trial Diplomacy Journal.* I also wrote an article, "How to Win a Fee Petition," which was published in a number of publications including *The Rhode Island Bar Journal*, *The Practical Litigator*, *The Federal Lawyer* and Business Laws, Inc.'s *Law Department Management Adviser*. Among other points, this article listed various "red flags" or questionable billing practices that should be avoided in submitting a fee application.

17.     Attached hereto as **Exhibit 3** is a true and correct copy of my Curriculum Vitae, which lists my work history, my publications, and my general experience.

### SCOPE OF REVIEW

18.     On or around June 19, 2026, I was retained by the State of California through Deputy Attorneys General Amie Bears and Mario Garcia to review the Motion for Attorneys' Fees that was anticipated to be filed by Plaintiff's attorneys on or around July 14, 2026 and to provide an opinion as to the reasonableness and necessity of the requested fees. That motion was filed on July 14, 2026 as document 169 by attorneys Dale K. Galipo and Marcel F. Sincich of the Law Offices of Dale K. Galipo and Trenton C. Packer of Grech, Packer, & Hanks. Both of these law firms represented plaintiff in this matter.

19.     As part of this audit, I reviewed the following documents related to the fee motion:

- PLAINTIFF'S MOTION FOR ATTORNEY'S FEES ("MPA") (Doc. 169);

– 7 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

- DECLARATION OF DALE K. GALIPO IN SUPPORT OF PLAINTIFF GEORGE GONZALEZ'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988 ("Galipo Declaration" or "Galipo Decl.") (Doc. 169-1), Exhibit 1 (Galipo's Timekeeping Record) (Doc 169-2), and Exhibits 2 through 23 (various exhibits) (Docs 169-3 through 169-24);

- DECLARATION OF MARCEL F. SINCICH IN SUPPORT OF PLAINTIFF GEORGE GONZALEZ'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988 ("Sincich Declaration" or "Sincich Decl.") (Doc. 169-25), Exhibit 1 (Sincich's Timekeeping Record) (Doc 169-26);

- DECLARATION OF BRENDAN A. JOHNSON IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES ("Johnson Declaration" or "Johnson Decl.") (Doc. 169-27), Exhibit 1 (Johnson's Timekeeping Record) (Doc 169-28);

- DECLARATION OF LESLIE DE LEON IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES ("De Leon Declaration" or "De Leon Decl.") (Doc. 169-29), Exhibit 1 (De Leon's Timekeeping Record) (Doc 169-30);

- DECLARATION OF TRENTON C. PACKER IN SUPPORT OF PLAINTIFF GEORGE GONZALEZ'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988 ("Packer Declaration" or "Packer Decl.") (Doc. 169-31), Exhibit 1 (Packer's Time Entries) (Doc 169-32);

- DECLARATION OF KAYLA PEÑA-PHAM IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES ("Peña-Pham Declaration" or "Peña-Pham Decl.") (Doc. 169-33), Exhibit 1 (Peña-Pham's Time Entries) (Doc 169-34);

- [PROPOSED] ORDER RE. PLAINTIFF GEORGE GONZALEZ'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988 (Doc 171) (filed 7/15/2026).

20.     Collectively, these documents are referred to as "Plaintiff's Motion" or "Fee Motion." In addition, I reviewed all available deposition and trial transcripts as well as multiple pleadings as set forth in **Exhibit 4** and conferred with defense counsel regarding this case. In total, I read or reviewed at least 189 documents totaling 5,383 pages of case documents.

21.     I am not being compensated based upon my "success" at reducing the requested fees.

### AUDIT METHODOLOGY

22.     As part of the audit process the billing time records were input into a computer database to allow for comprehensive searching and analysis.[1] The computerized database

---

[1] I note that Plaintiff's attorneys did not comply with the Court's order to provide Excel files. For all Motions for Attorney's Fees, the Court's Civil Standing Order requires the moving party to provide "courtesy copies of the table [setting forth all of the billing entries for all (Continued…)

– 8 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

permitted creation of summary reports of billing by categories of activities. To the best of my information and belief, these reports accurately reflect the information contained in the submitted billing records. Having the records in the computer database also allowed for accurate quantification of various other issues including, but not limited to, those discussed in this declaration. My staff and I analyzed each of the 1,443 billing entries for necessity and reasonableness.

## SCOPE OF AUDIT

23.    The starting point in any audit is to determine the lodestar, or the amount being requested. Plaintiff's Notice states that they are requesting fees of $2,893,210 inclusive of a 2.0 multiplier. (MPA, p. ii:7-8; see also MPA, pp. 1:7-10; 19:12, 25-26.) The unenhanced fee request is $1,446,605.00 (MPA, pp. 1:7-9; 19:25.)

24.    The auditor's independent calculation of the billing records submitted with the Fee Motion found two discrepancies.

25.    Mr. Galipo's states that he is claiming 443.40 hours. (Galipo Decl., Ex. 1, p. 6; Galipo Decl., ¶ 2 at pp. 1:10, 16:4; MPA, p. 19:21.) However, independent calculation of the total of his hours billed in the Galipo Declaration, Exhibit 1 arrived at 443.43 hours. The difference of 0.03 hours appears to be the result of the final entry in his Timekeeping Record, dated July 14, 2026, which is for 1.13 hours. (Galipo Decl., Ex. 1, p. 6, entry of 7/14/2026.) For whatever reason, this is the only entry in which his time is recorded down to the hundredth hour as opposed to merely tenths of an hour. This discrepancy resulted in Plaintiff's attorneys seeking $45.00 less (0.3 x $1,500 = $45.00) than is supported by the billing records.

26.    The other discrepancy was in Mr. Packer's time records. Plaintiff's attorneys state that he is claiming 288.70 hours of work. (Packer Decl., ¶ 2 at pp. 1:10, 7:4; MPA, p. 19:24.) However, independent calculation of the total of his hours billed in the Packer Declaration,

---

timekeepers] shall be prepared in Excel, have all restrictions removed so the spreadsheets can be edited, and be emailed to opposing counsel …." (Judge Kato's Civil Standing Order, p. 11:4-6.) (located at https://apps.cacd.uscourts.gov/JpsApi/file/ef32d823-3680-46ab-84e6-08dea47fd29f, last accessed Jul. 26, 2026.) Defense counsel confirms that they did not receive Excel files from Plaintiff's attorneys.

– 9 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

Exhibit 1 (which contains time entries for both him as well as for Ms. Peña-Pham) arrived at a total of 287.75 hours, or 0.95 hours less than claimed. This discrepancy resulted in Plaintiff's attorneys seeking $855.00 more (0.95 x $900 = $855.00) than is supported by the billing records.

27.     The net difference resulting from these two discrepancies is that Plaintiff's attorneys' actual lodestar is $1,445,795.00, or $810.00 ($855.00 - $45.00 = $810.00) less than claimed. The auditor will use the amounts he calculated for the remainder of this report.

**STANDARD OF REVIEW**

28.     Based on my experience as an attorney, client, and legal fee expert, it is my opinion that billing standards have changed over the past 30 years. In the past, many courts and clients were not sensitive to the numerous potential problems caused by block billing, vague entries, or excessive minimum billing increments. However, as academics such as William G. Ross, the Albert P. Brewer Professor of Law and Ethics in Samford University's Cumberland School of Law in Birmingham, Alabama and author of The Honest Hour, published in 1996, began to study both the prevalence of such billing practices and their potentially harmful effects, both courts and clients began to pay close attention. In response, the profession of legal fee auditing developed to aid clients and the courts in quantifying those potentially harmful effects. Courts began to look at these expert reports and then developed an increasing body of case law that the legal fee experts used as part of their methodology.

29.     As law firm fees began to be reduced because they were employing these questionable billing practices, law firms began establishing their own internal billing guidelines requiring timekeepers to refrain from such practices. I have personally put on presentations to such law firms. In addition, many law firms instituted Quality Control procedures to assure themselves that such questionable billing practices would not be permitted within the law firm. These Quality Control procedures developed because the law firms realized that certain questionable billing practices such as block billing, vague entries, excessive minimum billing increments, and excessive intra-firm conferencing were within the control of the law firm and to the degree they could be controlled or eliminated the law firm increased its chances of recovering

– 10 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

its fees. Many of the more sophisticated law firms even issued their own internal billing guidelines prohibiting such practices.

30.    In conducting a legal fee audit, I analyze the invoices and work product generated in light of one of two standards. The first standard is contained in any retainer agreement between the law firm and client, or in billing guidelines or any other instructions provided by the client to the law firm. In addition to looking at such agreement, guidelines, or instructions, I look to established case law for what are acceptable billing practices as the second standard. To the extent there are instructions from the client, State Bar opinions and case law may supplement or even override the instructions. **The case law referenced in this report is not being cited for its legal authority, but to establish that there is a foundation for the opinions stated herein.** In that way the cases may be analogized to Generally Accepted Accounting Principles, commonly known as GAAP, which are a collection of commonly followed accounting rules and standards for financial reporting. I am not aware of any billing guidelines that may be in place in this matter.

31.    This case was taken on contingency. (MPA, p. 17:23; Galipo Decl., ¶ 36 at p. 14:24-25.) In a fee-shifting case such as this, if a jury or court found that the defense prevailed, plaintiff would not be entitled to any attorneys' fees whatsoever. On the other hand, if a jury or court found that plaintiff prevailed on the merits of a fee-shifting claim, then he would be entitled to seek to recover his reasonable and necessary attorneys' fees and costs related to those fee-shifting claims from the defendant(s) against whom he prevailed.

32.    In the auditor's experience a significant issue related to attorneys' fees in contingency fee matters is that there are no billing guidelines and the firm's billing is not contemporaneously, regularly, or ever reviewed by the client. Even if the client is given one or more opportunities to review the billing, as the client knows they are not responsible for paying any of the amounts, the review is, most likely, cursory and uncritical. The lack of any external oversight can lead to lax internal oversight of billing practices, particularly where billing overages accrue to the benefit of the ones who are billing. This lack of this extra, external incentive to control fees is especially troublesome in light of the magnitude of the fees requested in this case.

– 11 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

33.    The auditor approaches all legal fee audits with the assumption that most attorneys do not intentionally inflate their bills. However, where it is difficult to determine the nature and extent of the possible overbilling due to the firms' questionable billing practices, such as block billing or vague entries, it is incumbent upon the law firms, as the moving party, to justify their fees.

## BILLING RECORDS

34.    The auditor views a law firm's billing records as a representation by the law firm that a particular task was performed on a particular day, by a particular timekeeper, and that the timekeeper spent the amount of time stated on the invoice. Billing format or billing practice irregularities that bring into question the credibility, integrity or reliability of a law firm's billing records are not only unacceptable, they are potentially grounds for a significant disallowance of fees.

35.    Attorneys Galipo, Sincich, and Packer state that they recorded their time contemporaneously. (Galipo Decl., ¶ 2 at p. 1:7; Sincich Decl., ¶ 4 at p. 1:20; Packer Decl., ¶ 4 at p. 1:23.)

36.    Attorney Johnson states: "I have maintained a timesheet reflecting my work activity and time spent on this case." (Johnson Decl., ¶ 10 at p. 2:15-16.) He does not state that he recorded his time contemporaneously.

37.    Legal assistant De Leon and law clerk Peña-Pham mention nothing about how they recorded their time. (De Leon Decl., p. iii:14-16; Peña-Pham Decl., p. iii:13-15.)

38.    From these attorney Johnson, legal assistant De Leon, and law clerk Peña-Pham's statements, it is impossible to know how many of their entries were made contemporaneously and how many are reconstructed time records

39.    To the extent that reconstructed records (i.e., non-contemporaneously-recorded time entries) are submitted, a judge is not required to evaluate "reconstructed" time with the same credibility and presumption of accuracy as contemporaneously-recorded time. (*Horsford v. Board of Trustees of California State University*, F051782 (Cal. App. 9/4/2008), fn 2 ["This is not to say that contemporaneous time records are required as part of every attorney fee application; they are

– 12 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

not]; (see *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 270-272.) Still, the trial court is entitled to evaluate the records that are submitted and is not required to treat all records as equally informative or accurate. (See, e.g., *PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1096, fn. 4.)" A true and correct copy of the *Horsford* opinion is attached hereto as **Exhibit 5**.

40.    The burden of proof is initially on the party seeking the fees to justify their fee request and to that extent, the three timekeepers who have not affirmatively identified how they recorded their time have failed to show that the time records were made contemporaneously.

**FINDINGS AND OPINIONS**

**I.    THE REQUESTED BILLING RATES ARE UNSUPPORTED AND UNJUSTIFIED.**

41.    I regularly have access to current law firm rates in conducting legal fee audits and auditing law firms' billing invoices. I also regularly review court opinions on attorneys' fee motions and requests and I am familiar with what law firms practicing in Los Angeles County Superior Court and the United States District Court for the Central District of California are seeking as hourly rates and what courts are awarding. Based on my experience in having conducted approximately 4,000 legal fee audits, my experience as an attorney and expert in legal fees over the past 46 years, and my review of the above-mentioned material, I have personal knowledge of hourly billing rates for attorneys and staff in the Los Angeles County Superior Court and the United States District Court for the Central District of California market areas. On that basis, as well as my analysis of the evidence submitted by Plaintiff's attorneys, it is my opinion that the billing rates being claimed in Plaintiff's Motion are unreasonable for the reasons set forth below and that the requested rates should be adjusted. Furthermore, seeking these rates and then asking for a 2.0 or even 1.5 multiplier on top of these rates is even more excessive.

**A.    Not Usual and Customary Rates That Are Paid by Clients or Awarded by Courts.**

42.    Plaintiff's attorneys state that they have extensive experience over many years in the area of law involved in this matter. (See, e.g., Galipo Decl, ¶¶ 4, 17.) Despite this, they have not cited to a single prior fee order awarding the rates being sought in this matter.

– 13 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

43.    **Dale K. Galipo.** Mr. Galipo states that he was awarded $1,100 per hour in April 2020. (Galipo Decl., ¶ 19 at p. 8:9-10; Ex. 3.) According to the court order (Galipo Decl., Ex. 3, p. 3), he sought $1,200 per hour. After analysis, the court found that a "modest reduction of the requested rate [for Mr. Galipo] is warranted. Galipo requests $1,200 per hour, which outpaces the upper quartile of litigation partners in this forum [the Central District] by almost $300." (Galipo Decl., Ex. 3, p. 4.) The court awarded him the $1,100 he cites.

44.    Mr. Galipo states that he was also awarded $1,100 per hour in September 2021. (Galipo Decl., ¶ 20 at p. 8:22; Ex. 4.)

45.    Mr. Galipo states that he was also awarded $1,100 per hour in May 2022. (Galipo Decl., ¶ 21 at p. 9:4; Ex. 5.)

46.    Mr. Galipo states that he was awarded $1,200 per hour in February 2023. (Galipo Decl., ¶ 23 at p. 10:5-7; Ex. 7.) However, he fails to mention that this rate was for his work on *appeals* to the Ninth Circuit and the Supreme Court of the United States. (Galipo Decl., Ex. 7 at pp. 3:1-16; 5:22-23.) Appellate work falls into a different category of practice than does civil rights matters.

47.    Mr. Galipo states that he was awarded $1,300 per hour in June 2024. (Galipo Decl., ¶ 24 at p. 10:17, Ex. 8.)

48.    Mr. Galipo states that he was awarded $1,400 per hour in February 2024. (Galipo Decl., ¶ 25 at p. 10:26; Ex. 9.) However, as he points out, this was for his work on the appeal, not the underlying case. (Galipo Decl., ¶ 25 at p. 10:25; see also Galipo Decl., Ex. 9 at p. 6, ¶¶ 1-2.) As noted above, appellate work is different from trial level work. In addition, the defendant did "not contest Plaintiffs' requested rates." (Galipo Decl., Ex. 9 at p. 6, ¶ 1.)

49.    Mr. Galipo states that most recently he was awarded $1,300 per hour in April 2025. (Galipo Decl., ¶ 26 at p. 12:10-12, Ex. 11.)

50.    Mr. Galipo also cites to a fee awarded at $1,550 per hour in a 2025 case. (Galipo Decl., ¶ 28; Ex. 20.) However, Mr. Galipo fails to note that the attorney awarded that rate was admitted to the bar in 1974 and so had 51 years of practice experience at the time of the award. (Galipo Decl., Ex. 20, *16-17.)

– 14 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

51.    No court has awarded Mr. Galipo the $1,500 per hour that he requests here. Two courts awarded him $1,400 per hour for his appellate work. The highest award for trial-level work has been $1,300 per hour.

52.    **Marcel F. Sincich.** Mr. Sincich cites only to one case in 2020 in which he was awarded $400 per hour. (Sincich Decl., ¶ 18.) Other than that single case, he states that "a reasonable fee is $850 based on the recommendation of Carol Sobel." (Sincich Decl, ¶ 22 at p. 10:1-3. *See also* Galipo Decl., ¶ 31.)

53.    **Brendan A. Johnson.** Mr. Johnson was admitted to the bar in 2025. (Johnson Decl., ¶ 4.) He states, without any citation to authority, that he is requesting $350 per hour. (Johnson Decl., ¶ 12.)

54.    **Leslie De Leon.** Ms. De Leon is a legal assistant. (De Leon Decl., p. ii:4.) However, she references *paralegal* rates to seek to justify her requested rate. (De Leon Decl., p. iii:17-18.) She states: "Currently, paralegal fees are awarded at rates ranging from $150 to $315 per hour." (*Id.*) There are at least two problems with this statement.

55.    First, while both legal assistants and paralegals are non-attorneys, they have different roles and responsibilities. According to ThompsonReuters[2], "A legal assistant, also known as a legal secretary, is a professional who provides administrative and legal support to lawyers and law firms. Legal assistants are responsible for administrative and legal tasks …." In contrast, "A paralegal is a type of legal assistant who has received specialized education and training in legal procedures and practices, often with a college degree."

56.    In addition, California Business and Professions Code § 6450(c)-(d) imposes certain requirements on paralegals that are not required of legal assistants. Therefore, paralegal rates do not seem to be applicable for legal assistants.

57.    Second, Ms. De Leon does not cite to any cases, surveys, or other evidence to support her claim that the range of rates is accurate.

---

[2] https://legal.thomsonreuters.com/blog/legal-assistant-vs-paralegal-the-differences/, last accessed Jul. 26, 2026.

– 15 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

58.    **Trenton C. Packer.** Mr. Packer does not cite to any prior fee awards to seek to justify his requested $900 per hour rate. Instead, he relies upon his experience and Ms. Sobel's declaration. (Packer Decl., ¶ 17.)

59.    **Kayle Peña-Pham.** Ms. Peña-Pham is a law clerk. (Peña-Pham Decl., p. ii:4.) She states that "Currently, legal support staff fees are awarded at rates ranging from $150 to $325 per hour." (Peña-Pham Decl., p. iii:16.) As was the case with Ms. De Leon's range of rates, Ms. Peña-Pham does not cite to any cases, surveys, or other evidence to support her claim that her range of rates (which is slightly different from that espoused by Ms. De Leon) is accurate.

60.    In my opinion, Plaintiff's attorneys have not provided any evidence that the rates they are requesting here are their usual and customary rates that are paid by clients or awarded by courts.

**B.    The Declaration of Carol A. Sobel Does Not Provide Relevant Data.**

61.    Plaintiff's attorneys have submitted a declaration from Carol A. Sobel in support of the fee request. (Galipo Decl., ¶ 30; Ex. 12.) (For ease of reference, this document will be called the Sobel Declaration, or Sobel Decl.)

62.    Ms. Sobel states that she has attached fee awards and declarations in cases in the Los Angeles legal market to support her opinion on the reasonableness of the fees sought by this motion. (Sobel Decl., ¶ 28 at p. 9:18-20.) By "fees," I believe that she means the rates as she does not address the reasonableness or necessity of the tasks or hours billed, only the rates.

63.    While she does attach Los Angeles-area rates, most of them are in practice areas other than civil rights or excessive force. With all due respect to lemon law and debt collection lawyers, someone practicing in those areas of law for 37 years (the same length of time that Mr. Galipo has been a member of the bar) would be laughed out of court if they tried to compare themselves to Mr. Galipo and claimed $1,500 per hour as their reasonable rate. As legal technology company Clio states, "The types of legal services that lawyers provide will also affect how much they charge."[3]

---

[3] https://www.clio.com/resources/legal-trends/compare-lawyer-rates/, last accessed Jul. 26, 2026.

– 16 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

64.     The first case she references is a declaration from an attorney in an anti-SLAPP lawsuit. (Sobel Decl., ¶ 36.)

65.     The second case she references is a patent case. (Sobel Decl., ¶¶ 37-39.)

66.     The third case she references involved alleged violations of the Americans with Disabilities Act, Constitutional violations, and several state claims.[4] Ms. Sobel has attached a copy of a contract between the City of Los Angeles and Gibson, Dunn & Crutcher, one of the largest firms in the country, to handle that case. (Sobel Decl., ¶¶ 40-44.)

67.     The fourth case she references involved another anti-SLAPP motion in a defamation case.[5] (Sobel Decl., ¶ 45.) The pertinent attorney whose rate she is referring to is another Gibson, Dunn associate. (*Id*.)

68.     The fifth case she references is from another anti-SLAPP motion in an unfair competition law case. (Sobel Decl., ¶ 46.)

69.     The sixth case she references does involve disability rights and civil rights. (Sobel Decl., ¶ 47.) However, in that case, the motion for fees was effectively unopposed. (Sobel Decl., Ex. 8, attached as Galipo Decl., Ex. 20, Doc. 169-21, p. 8, ¶ 2.) Also, as noted above, the the attorney awarded a rate of $1,550 was admitted to the bar in 1974 and had 51 years of practice.

70.     Ms. Sobel also attaches a rate sheet for a class-action law firm. (Sobel Decl., ¶ 49.) The Ninth Circuit has a benchmark percentage for attorneys' fee awards in class actions (25 percent of the settlement) and the hourly rate usually, but not always, only comes into play as a lodestar cross-check on the size of fee award. (See, e.g., *Fischel v. Equitable Life Assurance Soc'y* (9th Cir. 2002) 307 F. 3d 997, 1006.) Similar percentage calculations for attorneys' fees are typical in class actions in other Federal Courts[6].

---

[4] https://clearinghouse.net/case/43959/, last accessed Jul. 23, 2026.

[5] https://globalfreedomofexpression.columbia.edu/cases/herring-networks-v-maddow/, last accessed Jul. 23, 2026.

[6] See https://www.daeryunlaw.com/us/insights/class-action-lawyers-nyc-on-class-action; https://legalclarity.org/class-action-attorney-fees-awards-and-settlement-deductions/; https://legalwritingexperts.com/attorney-fees-in-class-action-suits/. (All sites last visited Jul. 16, 2026.)

– 17 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

71.    In 2016, the California Supreme Court joined "the overwhelming majority of federal and state courts" in permitting the use of a percentage of a class action common fund to determine a reasonable attorneys' fee. (*Lafitte v. Robert Half Int'l., Inc.* (2016) 1 Cal. 5th 480, 503.) When using this method, the lodestar is simply used as a cross-check on the reasonableness of the fee award. (*Id.*, at p. 506.)

72.    If the lodestar cross-check comes within reasonable reach of the requested award in a class action (and sometimes even if it doesn't) the attorneys' fee award is typically unopposed and is approved. In rare instances, courts do adjust hourly rates in a class action, but this is not typical. Furthermore, class actions involve multiple plaintiffs typically against one or more large entities, entailing a different type of litigation than was encountered here. Therefore, fee awards in class actions are uninstructive and offer little to no relevant probative information for appropriate rates in the type of case at bar.

73.    The same analysis applies to Ms. Sobel's reference to a case in ¶ 53 of her declaration. That was a class action in which fees were awarded based on 30 percent of the common fund. The lodestar was simply used as a cross-check on the size of the award.

74.    Ms. Sobel also refers to the 2025 Real Rate Report. (Sobel Decl., ¶¶ 50-52.) However, earlier in her declaration, she stated the following:

> When the specific rate evidence identified in the preceding paragraph is available [rates awarded to the attorneys in previous cases and billing rates by attorneys engaged in similarly complex litigation], I usually do not rely on surveys because, in my opinion, they do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the individual attorneys included in the survey and often no indication of the relevant legal market. *See, e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where the lower court relied on a national survey rather than local rates).

(Sobel Decl., ¶ 25.)

75.    In one place in her declaration she states that in her opinion, "rate surveys do not meet the standards for the lodestar analysis." Then later in the same declaration, she approvingly cites to one such rate survey and says "The Real Rate Report for Los Angeles supports the reasonableness of the rates sought." (Sobel Decl., ¶ 50 at p. 16:7-8.) In my opinion, this is an inconsistency in methodology.

– 18 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

76.     I also note that Ms. Sobel states that the 2025 Real Rate Report identifies the third-quartile rate for partners in Los Angeles is $1,334 an hour. (Sobel Decl., ¶ 51 at p. 16:9-10.) This piece of data will become important below.

77.     In addition, the cases she cites are based on her opinion as to what constitutes "similarly complex litigation" with no supporting information as to how she makes that determination.

78.     One additional difficulty I have with Ms. Sobel's declaration is her adjustment for rates more than two years old. She states:

> To adjust for rates more than two years old, I apply a minimum of a 3.1 percent increase, which was the average legal services component increase in the Consumer Price Index for Los Angeles before the pandemic. *See* http://www.bis.gov/news.release/cpi.102.htm (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. expenditure category). For the last three years, I have used a slightly higher increase of five percent to reflect a rise in inflation rates.

(Sobel Decl., ¶ 28 at pp. 9:24-10:2.)

79.     I have used similar methodology in my previous audits. However, I cite to relevant surveys and statistics to evidence rate increases due to the Consumer Price Index (i.e., inflation). While Ms. Sobel cites to a reference for the 3.1 percent increase, she has not cited to any authority substantiating a five percent increase. In fact, the evidence is that the rate of inflation is remaining fairly level in Los Angeles at approximately 3.3 percent.[7]

**C.     There are No Declarations from Other Attorneys.**

80.     Plaintiff's attorneys typically submit declarations from other counsel in support of a fee request. In this case, they have not done so.[8]

---

[7] https://www.dir.ca.gov/oprl/CPI/PresentCCPIchange.PDF; https://usafacts.org/answers/what-is-the-current-inflation-rate/metro-area/los-angeles-ca/, both last accessed Jul. 26, 2026. See also the information at https://dof.ca.gov/forecasting/economics/economic-indicators/inflation/, last accessed Jul. 26, 2026.

[8] It should be noted that courts have indicated that such declarations are of limited use anyway. "Courts in the Ninth Circuit have questioned the value of attorney declarations purporting to be evidence of a reasonable rate because these declarations "are both self-serving and self-perpetuating." *Kochenderfer v. Reliance Standard Life Ins. Co.*, No. 06-CV-620 JLS (NLS), 2010 WL 1912867, *4 (S.D. Cal. Apr. 21, 2010); see also *Zeigler v. Cnty. of San Luis* (Continued…)

– 19 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

**D.    The Rate Evidence Required.**

81.    The fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." (*Dang v. Cross* (9th Cir. 2005) 422 F.3d 800, 814.)

82.    In my opinion, Plaintiff's attorneys have not submitted evidence that would support the reasonableness of the hourly rates sought.

**E.    Reference Rates.**

83.    As there are few attorneys practicing in this area of law, I have found a paucity of cases to reference other than previous fee awards to Mr. Galipo and the attorneys at his firm. However, it is my opinion that those cases do provide some relevant reference rates.

84.    Mr. Galipo has cited to the following cases and rates he has been awarded:

| Case (Cite) | Year | Award | Notes |
|---|---|---|---|
| *L.D. v. City of Los Angeles* (Galipo Decl., ¶ 19) | 2020 | $1,100 | Reduced from $1,200 |
| *Donastorg v. City of Ontario* (Galipo Decl., ¶ 20) | 2021 | $1,100 | |
| *French v. City of Los Angeles* (Galipo Decl., ¶ 21) | 2022 | $1,100 | |
| *Valenzuela v. City of Anaheim* (Galipo Decl., ¶ 23) | 2023 | $1,200 | For appellate work |
| *Zelaya v. City of Los Angeles* (Galipo Decl., ¶ 24) | 2024 | $1,300 | |
| *French v. City of Los Angeles* (Galipo Decl., ¶ 25) | 2024 | $1,400 | For appellate work |

---

*Obispo*, No. CV 17-9295-MWF (AFMx), 2023 WL 3432238, *4 (C.D. Cal. Mar. 1, 2023) ("The Court does not assign much weight to Plaintiff's attorneys' declaration given its self-serving nature."). This is particularly true where, as here, the declarant works in the same substantive area of law as the fee-seeking attorney. "A high award in this case would support the declarants' own high hourly rate requests in the future." *Kochenderfer*, 2010 WL 1912867 at *4." (*James v. Cheney*, No. 2:21-CV-08256-DSF-DTB (C.D. Cal. Aug. 5, 2024) *3, fn. 3.) A true and correct copy of the order in *James v. Cheney* is attached as **Exhibit 16**. *See also Sam K. v. State of Haw. Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015) ("That other attorneys may think that a given rate is 'reasonable' does not necessarily say what the prevailing market rates actually are. That is especially true when the opinion[s] are expressed by attorneys whose own professional interests might motivate them to favor higher rates.")

– 20 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

| | | | |
|---|---|---|---|
| *Hurtado v. State of California* (Galipo Decl., ¶ 26) | 2025 | $1,300 | |

85.    Taking out the awards Mr. Galipo received for his appellate work results in the following rate matrix:

| | |
|---|---|
| 2020 | $1,100 |
| 2021 | $1,100 |
| 2022 | $1,100 |
| 2024 | $1,300 |
| 2025 | $1,300 |

86.    Ms. Masongsong, a 2012 admittee, or someone with seven years fewer experience than Mr. Packer, was awarded $550 an hour in the 2020 L.D. case. (Galipo Decl., ¶19, Ex. 3.) If that rate were increased by four percent per year, it would result in the following 2026 rate:

| | |
|---|---|
| 2020 | $550 |
| 2021 | $572 |
| 2022 | $595 |
| 2023 | $619 |
| 2024 | $644 |
| 2025 | $670 |
| 2026 | $697 |

**F.    Reasonable Rates.**

87.    It is my opinion that Plaintiff's attorneys have not *demonstrated* the rates being sought in this matter are reasonable and appropriate market rates for them for the practice area in this community.

88.    They have not provided any evidence that they have been awarded fees at these rates nor have they provided rates awarded to comparable attorneys.

89.    Based upon the reference rates I cite it is my opinion that the requested rates are unsupported and unreasonable.

– 21 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

90.     Plaintiff's attorneys are asking for fees at $1,500 per hour for Mr. Galipo. Based upon his last reported award of $1,300 in 2025, this would constitute over a 15 percent increase in his rate in one year (200/1300 = 15.4 percent). If we go back to his $1,300 rate award in 2024, $1,500 currently would constitute an annual increase of 7.4 percent for two consecutive years. This is at least double the rate of inflation and even outruns Ms. Sobel's unsubstantiated five percent increase. It is also 12.4 percent higher than the third-quartile rate of $1,334 for Los Angeles-area partner reported by the 2025 Real Rate Report and approvingly cited by Ms. Sobel.

91.     The $1,500 per hour rate for Mr. Galipo does not appear to be justified.

92.     Using a generous four percent per year increase from the $1,300 per hour rate he was awarded in 2024 would result in the following 2026 rate for Mr. Galipo:

| 2024 | $1,300 |
|------|--------|
| 2025 | $1,352 |
| 2026 | $1,406 |

93.     There is no similar recent case for Mr. Sincich. His last reported award was made in 2020 when he sought, and received, $400 an hour. (Galipo Decl., ¶ 19, Ex. 3.)

94.     Using the same four percent per year increase for him would result in the following 2026 rate:

| 2020 | $400 |
|------|------|
| 2021 | $416 |
| 2022 | $433 |
| 2023 | $450 |
| 2024 | $468 |
| 2025 | $487 |
| 2026 | $506 |

95.     Plaintiff's attorney have provided no justification for a rate of $850 an hour for Mr. Sincich, a ninth-year attorney. It is my opinion that $506 an hour is a reasonable rate for him.

– 22 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

96.    Mr. Packer is seeking $900 an hour

97.    *Rudnicki v. Farmer's Insurance* (L.A. Superior Court, Jan. 20, 2023, Case No. BC630158) was a wrongful termination case. Plaintiff prevailed and was awarded $5,413,344 in compensatory damages and $150,000,000 in punitive damages. Plaintiff accepted a remittitur of the punitive damages to $18,945,000. Plaintiff's attorneys sought attorneys' fees of $6,663,815, inclusive of a 2.0 multiplier. After consideration, the court reduced the lodestar and multiplier and awarded $2,266,704. A true and correct copy of the order is attached as **Exhibit 6**.

98.    One of the attorneys, McDonnell, was a 1992 admittee to the Bar. He requested $1,000 per hour in fees but the court reduced his rate to $700. Mr. Packer is a 2005 admittee so has 13 years fewer than Mr. McDonnell has.

99.    Increasing the $700 by four percent per year would result in a 2026 rate of $787 per hour.

| 2023 | $700 |
|------|------|
| 2024 | $728 |
| 2025 | $757 |
| 2026 | $787 |

100.    It is my opinion that Mr. Packer's rate should be no more than $787 per hour.

101.    I do not have recommended rates for Mr. Johnson, Ms. Peña-Pham, or Ms. De Leon for reasons explained below

102.    I next address issues I identified in the billing records.

## II.    BILLING BY TRANSIENT BILLERS.

103.    While only six timekeepers billed to this case, three of them performed minimal work and/or mostly clerical and administrative work.

104.    Attorney Johnson billed 13 entries totaling 31.80 hours. He was admitted to the bar in December 2025 and began billing to this case in January 2026. While he did defend two depositions, his role in those depositions, per the transcripts, was primarily to interpose objections.

– 23 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

105.    Law clerk Peña-Pham billed 20 entries totaling 18.90 hours. Almost half of her time, 9.0 hours, was devoted to clerical and administrative work such as mailing and filing documents and working with Dropbox.

106.    Legal assistant De Leon billed 170 entries totaling 55.70 hours. However, 49.1 hours of that time, or 88 percent of her total time, was devoted to clerical and administrative work.

107.    Clerical or firm administrative work is generally not recoverable because it is considered overhead. Instead, it should be taken into account when a law firm sets its attorneys' hourly rates.

108.    Clerical work is considered overhead, and as such, it is neither billable nor recoverable. "[C]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate." (*Jeremiah B. v. Dep't of Educ.* (D.Haw. Jan 29, 2010) Civil No. 09-00262 DAE-LEK, 2010 WL 34654, at *5, citing *Sheffer v. Experian Info. Solutions, Inc.* (E.D. Pa. 2003) 290 F. Supp. 2d 538, 549.)

109.    As the Court in *Pelayo Playa, et al. v. Platinum Limousine Services, Inc., et al.* (D.Haw. 2016) 2016 WL 5402185 (Civil No. 15-00023, September 27, 2016) stated:

> Clerical costs, on the other hand, are part of an attorney's overhead and are subsumed in the attorney's charged hourly rate. *Jeremiah B. v. Dep't of Educ.*, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) (citation omitted). *See also Frankl v. HGH Corp.*, 2012 WL 1755423, at *8 (D. Haw. Apr. 23, 2012), F&R adopted by 2012 WL 1753644 (D. Haw. May 14, 2012) ("[I]t is not customary to bill for purely clerical or secretarial work separately from attorney's services. As previously stated, in this district, such tasks are subsumed in an attorney's overhead costs.")

*Pelayo* at *7.

110.    All time billed by the transient billers is attached as **Exhibit 7**. A separate Excel file containing this table is also being filed with the court and served on opposing counsel. All such time should be disallowed.

111.    My recommended fee adjustment based on billing for this category is set forth in the table contained in the section titled "SUMMARY" at the end of this declaration.

– 24 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

## III.   BILLING FOR EXCESSIVE INTRA-OFFICE CONFERENCING.

112.   Although attorneys and staff within a firm need to coordinate work and discuss strategy, when done to excess, such intra-office conferencing becomes troubling. Especially where law firms claim expertise and experience in a given area of law, the need for such conferencing should be minimal. Here, as discussed above, lead Plaintiff's attorneys all claim a great amount of experience with the type of claim involved in this case as well as experience with trials.

113.   I identified the following amounts of intra-office conferencing among the core attorneys:

| Timekeeper | Lodestar Hours (LS) | Intra-Office Conferencing Hours (IOC) | IOC as a % of LS | 4% of LS | Excess IOC Hrs |
|---|---|---|---|---|---|
| Dale K. Galipo | 443.43 | 24.50 | 6% | 17.74 | 6.76 |
| Marcel F. Sincich | 584.20 | 60.80 | 10% | 23.37 | 37.43 |
| Trent Packer | 287.75 | 30.25 | 11% | 11.51 | 18.74 |

114.   To quantify the extent of intra-office conferencing in Plaintiffs' attorneys' billing records, I conducted word searches for words pertaining to conferencing such as "meet with," "discuss," "call," "correspond," or "team." I also searched in the task descriptions for the names or initials of the timekeepers who billed to this matter for entries that would indicate communications with those personnel. All intra-office conferencing entries I identified are included in the table attached as **Exhibit 8**. A separate Excel file containing this table is also being filed with the court and served on opposing counsel.

115.   Conferencing is not necessarily directly related to any particular work product and consists of exactly what it says – attorneys and staff discussing the case amongst themselves, giving or receiving assignments, and other such communications. In my experience, excessive conferencing is typically subject to disallowance by courts. Some strategic conferencing among attorneys does have value, but not when done to excess.

– 25 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

116.    In *Munoz v. California Business Bureau, Inc.* (E.D. Cal., July 14, 2017) Case No. 1:15-cv-1345-BAM, 2017 U.S. Dist. LEXIS 212842, the court examined the issue of intra-office conferencing in the context of evaluating a fee request. A true and correct copy of this opinion is attached as **Exhibit 9**. The court reasoned as follows:

> With regard to the time and labor required, the Court has reviewed the billing records submitted by Plaintiff's counsel and finds that, with two exceptions, the number of hours expended to be reasonable. First, a review of counsels' billing records reveals that counsel billed over 10 attorney hours for interoffice conversations between all three attorneys to discuss case status or strategy. While it is reasonable to spend some time coordinating legal resources, it is not reasonable to double or triple-bill a client for internal meetings, many of which appear to be for partner, Mr. Hyde, to provide instructions to his junior associates, Mr. Connolly and Ms. Dorman. *See Gauchat-Hargis v. Forest River, Inc.*, No. 2:11-cv-02737-KJM-EFB, 2013 U.S. Dist. LEXIS 128508, 2013 WL 4828594, (E.D. Ca l. Sep. 6, 2013) (finding it unreasonable for partners and associates to collectively "triple-bill" a client for attending internal meetings).

> For example, on June 16, 2016, Mr. Connolly and Ms. Dorman each billed .4 hours to "speak with Robert Hyde" about "opposing counsel's summary judgment letter." (Doc. 29-8, Exh. A at 4). Mr. Hyde billed a slightly longer .6 hours for that same meeting ostensibly in preparation to provide Mr. Connolly and Ms. Dorman further instruction at the meeting. Given the triple-billing here for these kinds of internal communications, the Court agrees with Defendant that such charges are excessive. *See Chalmers,* 796 F.2d at 1211 (The court may reduce those hours where a case is overstaffed and hours are duplicated and where the hours expended are deemed to be excessive). Thus, while the billing of 3.3 hours to conduct strategy meetings by Mr. Hyde was reasonable, the additional duplicative billing to attend those meetings was not. Accordingly, the Court will deduct the 3.3 hours each spent by Ms. Dorman and Mr. Connolly to attend meetings with co-counsel for a total reduction of 6.6 hours.

(*12-13.)

117.    The court thus allowed the time for one timekeeper to be involved in a meeting, but disallowed the time billed by other timekeepers for that same meeting. The same analysis can apply in cases in which one timekeeper bills to draft and send an email or memo and another timekeeper bills to receive and review that communication.

118.    In *Scott v. Jayco, Inc.* (E.D. Cal. Dec. 18, 2021) 1:19-cv-0315 JLT, at *7-8, the court said:

> As this Court previously observed, "many courts ... reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) citing, *e.g., Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003); *see also United States v. One 2008 Toyota Rav 4 Sports Util. Vehicle,* 2012 WL 5272281 at *9 (C.D. Cal. Oct. 18, 2012) ("[w]hen attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys" [citation omitted]); *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D.

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

Cal. Jan. 4, 2007) (observing that billing for communications between attorneys may be a sign of overstaffing, warranting a reduction in hours billed).

A true and correct copy of this order is attached as **Exhibit 10**.

119. In *Lemmons v. Ace Hardware Corp.* (N.D. Cal. Feb. 1, 2015) Case No. 12-cv-03936-JST, the court reduced fees due to excessive and vague conferencing.

> The Court knows that co-counsel sometimes need to strategize. But lawyers who are experts in the field of disability litigation, working at a small firm that exclusively handles that kind of work, should not need to bill 259 separate entries for strategizing. "The Ninth Circuit has approved of reductions in fees for unnecessary and duplicative intra-office conferences," and other courts in this District have "previously been critical of excessive conferencing by Rein Law." *Hernandez*, 2014 WL 1724356 at *10. Compounding these concerns is that some entries lack any specificity, such as "Meet w/ co-co re: pending issues" or "Strategize w/ staff re current case issues," which make such review more difficult and cause the Court some concern. ECF No. 130-8 at 3, 5.

> Because the Court finds that Defendants' criticisms of the excessive nature of Plaintiff's counsel's billing for internal meetings are valid, it will exercise its discretion to reduce the $39,048.00 that Defendants characterize as having been billed for time spent on internal meetings by 50%, awarding $19,524.00 for these entries.

(*4.) A true and correct copy of this opinion is attached as **Exhibit 11**.

120. Plaintiff's attorneys state their credentials, experience, and expertise. However, given their credentials, experience, and expertise in this area of law, they have not explained the need for so much conferencing.

121. Over the past 30+ years, I have audited major national and international law firms and in general I have found that the amount of intra-office conferencing in well-managed litigation averaged between two to four percent of the total fees so the conferencing here by some of the timekeepers is not within this reasonable amount.

122. Based upon the above analysis, it is my opinion that the intra-office conferencing hours that are greater than 4.0 percent of the total hours for each timekeeper are excessive.

123. My recommended fee adjustment based on this category is set forth in the table contained in the section titled "SUMMARY" at the end of this declaration.

**IV.    VAGUE BILLING FOR TRIAL PREPARATION.**

124. Mr. Galipo, and to a far lesser extent, Mr. Packer, both used vague task descriptions for trial preparation.

125. Mr. Packer had two such entries:

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

| 4/20/26 | Trial prep | 6.60 |
|---|---|---|
| 5/11/26 | Trial, witness prep | 8.60 |

126. Mr. Galipo used s slightly different technique to record his time for trial preparation:

| 4/23/26 | Pre-trial/Preparation | 5.80 |
|---|---|---|
| 4/30/26 | Trial Preparation * | 12.20 |
| 5/1/26 | Trial Preparation * | 11.80 |
| 5/2/26 | Trial Preparation * | 12.40 |
| 5/3/26 | Trial Preparation * | 13.60 |
| 5/4/26 | Trial Preparation * | 14.70 |
| 5/5/26 | Trial Preparation * | 15.30 |
| 5/6/26 | Trial Preparation * | 16.20 |
| 5/7/26 | Trial Preparation * | 15.80 |
| 5/8/26 | Trial - Trial Preparation * | 11.10 |
| 5/9/26 | Trial Preparation * | 13.30 |
| 5/10/26 | Trial Preparation * | 12.70 |
| 5/11/26 | Trial - Trial Preparation * | 16.50 |

127. The asterisks in all but one of Mr. Galipo's time entries above are in his time records and were not added by the auditor. At the end of his billing entries, the following "explanation" is provided:

*Trial Preparation includes review of investigation reports, officer statements, witness statements, expert reports, deposition transcripts, exhibits, photos of scene, dispatch tape, motions in limine, witness list, exhibit list, jury instructions, verdict form, outlining examination of defendants and officers, outlining examination of witnesses, outlining examination of plaintiff, outlining examination of experts, preparing voir dire, preparing opening statement, and preparing for direct and cross examinations and closing arguments.

128. In other words, trial preparation means everything and anything that could conceivably go into the "trial preparation" bucket.

129. However, when he chose to do so, he could, and did, provide more substantive entries related to trial preparation. For example:

| 4/24/26 | Trial Preparation * Review Statements – Depositions | 9.20 |
|---|---|---|

– 28 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

| 4/25/26 | Trial Preparation * Review Statements – Depositions | 8.80 |
|---|---|---|
| 4/26/26 | Trial Preparation * Prepare Officer Examinations | 10.40 |
| 4/27/26 | Trial Preparation * Prepare Expert Examinations | 11.60 |
| 4/28/26 | Review trial exhibits with M. Sincich | 2.30 |
| 4/28/26 | Trial Preparation * Prepare Opening Examinations | 12.50 |
| 4/29/26 | Review trial exhibits with M. Sincich | 0.50 |
| 4/29/26 | Trial Preparation * Prepare Opening Examinations | 13.50 |

130. While these are not stellar examples of thoroughness in descriptiveness, they are at least somewhat descriptive.

131. All vague billing for trial preparation entries I identified are included in the table attached as **Exhibit 12**. A separate Excel file containing this table is also being filed with the court and served on opposing counsel.

132. The auditor is not questioning whether or not the work listed in the exhibit was done. However, vague entries have in common that they omit a basic element of information necessary to communicate what was done. As the Supreme Court notes in *Hensley v. Eckerhart* (1983) 461 U.S. 424 [76 L.Ed. 2d 40, 103 S. Ct. 1933], "plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." (*Hensley*, supra, 461 U.S. at p. 437 n. 12; see also *Davis v City and County of San Francisco* (9th Cir. 1992) 976 F.2d at 1542.)

133. In general, the billing records ought to provide: "…sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *United Slate, Tile & Composition v. G&M Roofing* (6th Cir. 1984) 732 F.2d 495, 502 n.2.

134. The California State Bar issued Arbitration Advisory 2016-02 on March 25, 2016. It is titled "Analysis of Potential Bill Padding and Other Billing Issues."

> Furthermore, generalized time entries such as "research issues", "review file", "attention to file", "discovery", "prepare for trial", "trial prep", and other similar general statements are not specific enough to let the client know what was done. If a lawyer uses such nonspecific task descriptions, it may be appropriate for the arbitrator to place on the lawyer the burden of clarifying what was actually done to assess whether the generalized time entries are actually compensable and appropriate.

– 29 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

Arbitration Advisory 2016-02, ¶ 5. A true and correct copy of this document is attached as **Exhibit 13**.

135.    It is the obligation of the moving party to "submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." (*Hensley, supra*, 461 U.S. at p. 433). Billing records must at least identify the general subject matter of time expenditures so as to enable the reviewing court to determine whether the time spent is related to a prevailing claim. *Id.* 461 U.S. at 437, fn 12. If plaintiff's counsel fails to do so, the Court may be justified in "throwing up its hands and refusing to award any fees whatsoever." (*Norris v. Sysco Corp.* (9th Cir. 1999) 191 F.3d 1043, 1052.) In the motion at hand, premised upon billing records that include vague entries, it is the auditor's opinion that there are sufficient grounds to disallow an appropriate portion of the vague fees claimed on account of inadequate documentation of hours billed.

136.    In *In re Samuel R. Pierce, Jr.* (D.C. Cir. 1999) 190 F.3d 586, 593-594, the D.C. Circuit confirmed that its general practice was to reduce vaguely entered hours of plaintiffs' attorneys by 10 percent. Similarly, the Eighth Circuit in *H.J. Inc. v. Flygt Corp.* (8th Cir. 1991) 925 F.2d 257, 260 upheld a district court's reduction of hours billed by the prevailing petitioner's attorneys by 20 percent for vague billing entries. Finally, in *Gratz v. Bollinger* (E.D. Mich. 2005) 353 F.Supp.2d 929, 939, District Judge Duggan reduced requested fees 10 percent due to block billing and vague entries.

137.    I recommend that 20 percent of the vague billing for trial preparation be adjusted. My recommended fee adjustment based on billing for this category is set forth in the table contained in the section titled "SUMMARY" at the end of this declaration.

## V.    BILLING FOR WORK ON CLAIMS AGAINST THE CITY OF HEMET.

138.    It is my understanding that Plaintiff settled with the City of Hemet and its police officers on the eve of trial. Mr. Sincich billed to review a stipulation for settlement on April 3, 2026. Ms. De Leon billed to draft the Notice of Settlement between Plaintiff and [the] City of Hemet on April 8, 2026.

– 30 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

139.    It is also my understanding that that settlement was inclusive of Plaintiff's attorneys' fees for work on claims against the City of Hemet. In that case, Plaintiff's attorneys have already been fully compensated for that work and none of it should be charged against the State of California or else Plaintiff's attorneys would be getting doubly compensation for that work.

140.    Mr. Sincich has self-deleted 132.50 hours of time that he attributes to claims against the city alone. (Sincich Decl., ¶ 4 at pp. 1:24-2:1.)

141.    However, Plaintiff's attorneys are still fees for work directly related to the City or partially against the City.

142.    All entries I identified as related exclusively to the claims against the City of Hemet are included in the table attached as **Exhibit 14**. A separate Excel file containing this table is also being filed with the court and served on opposing counsel. All of this time should be excluded from Plaintiff's attorneys' lodestar.

143.    All entries I identified as related partially to the claims against the City of Hemet and partially against the State are included in the table attached as **Exhibit 15**. A separate Excel file containing this table is also being filed with the court and served on opposing counsel. As the entry is too vague to allow a more specific allocation, half of this time should be excluded from Plaintiff's attorneys' lodestar.

**VI.    THE REQUESTED 2.0 OR 1.5 MULTIPLIER IS NOT JUSTIFIED.**

144.    Plaintiffs' Attorneys argue that a 2.0 multiplier is justified and that a multiplier of at least 1.5 should be ordered. (MPA, pp. 1:9-10, 19:17-18.) The expressed rationale for the requested multiplier are the contingent risk and the delay in payment of the fees. (MPA, p. 17:10-12.) They also cite to the difficulty of the case and counsel's demonstrated skill. (MPA, p. 17:22-24.)

145.    First, virtually all single-plaintiff tort cases are brought on this type of contingent fee agreement whereby counsel recovers fees only if plaintiff prevails. This case is no different.

146.    Counsel are expected to adjust for the risk in the hourly rates they seek.

– 31 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

147. The court in *Davis v. City and County of San Francisco* (9th Cir. 1992) 976 F.2d 1536, 1549-50 found that the risk of no-fees is not relevant vis-à-vis multipliers.

148. As for the delay in payment, Plaintiff's attorneys have already quoted a case that held awarding fees at current rates, as opposed to historical rates, sufficiently compensates for the delay in payment:

> [T]he Ninth Circuit "recognize[s] that district courts have discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use of funds." *Gates*, 987 F.2d at 1406. The prevailing practice is to award the current requested rate for all work performed. *See, e.g., Zeigler v. Cnty. of San Luis Obispo*, No. CV-179295-MWF-AFMx, 2023 WL 3432238, at *5 (C.D. Cal. Mar. 1, 2023) (awarding requested rates commensurate with current practice experience for work that commenced years prior); *French v. City of Los Angeles*, No. ED-cv-2000416-JGB-SPx, 2022 WL 2189649, at *1, 17-19 (C.D. Cal. May 10, 2022) (same); *Donastorg v. City of Ontario*, No. ED-cv-18992-JGB-SPx, 2021 WL 6103545, at *1, 8-9 (C.D. Cal. Sept. 23, 2021) (same).

(MPA, p. 10:6-16.)

149. If the Court were to accept the claim that a multiplier is *de facto* automatically warranted in each and every contingent case due to "the risk," it would be creating new law. Courts have never set forth this proposition and the fact that the California legislature did not make a multiplier a statutory requirement forcefully argues against this being the primary basis for any multiplier, much less a 2.0 or 1.5 multiplier. If counsel believes that their time is worth the enhanced rates, then they should set their billing rates at those higher levels.

150. In *Perdue v. Kenny A. ex rel. Winn* (2010) 559 U.S. 542, 550, the Supreme Court held, in the context of addressing a "reasonable fee" under a federal fee-shifting statute, that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." (*Id.*, at p. 552.) Moreover, with respect to whether a multiplier could be utilized under the lodestar method, the Supreme Court emphasized that a multiplier is warranted only in "rare and exceptional" circumstances, and provided the following explanation:

> [W]e have noted that the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee, and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably [are] fully reflected in the number of billable hours recorded by counsel. We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar because

– 32 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.

(*Id.* at p. 553 (quotations and citations omitted).)

151.    The Court then, after explicitly rejecting "any contention that a fee determined by the lodestar method may not be enhanced in any situation," held that superior attorney performance could only serve as a basis for an enhancement in *narrow* circumstances:

> In this case, we are asked to decide either the quality of an attorney's performance or the results obtained are factors that may properly provide a basis for an enhancement. We treat these two factors as one. When a plaintiff's attorney achieves results that are more favorable than would have been predicted based on the governing law and the available evidence, the outcome may be attributable to superior performance and commitment of resources by plaintiff's counsel. Or the outcome may result from inferior performance by defense counsel, unanticipated defense concessions, unexpectedly favorable rulings by the court, an unexpectedly sympathetic jury, or simple luck. Since none of these latter causes can justify an enhanced award, superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance. Thus, we need only consider whether superior attorney performance can justify an enhancement. And in light of the principles derived from our prior cases, we inquire whether there are circumstances in which superior attorney performance is not adequately taken into account in the lodestar calculation. We conclude that there are a few such circumstances but these circumstances are indeed "rare" and "exceptional" and require specific evidence that the lodestar fee would not have been "adequate to attract competent counsel."

(*Id.* at p. 554; see also *Scudder v. Department of Transportation* (2nd App. Dist., Case No. B293859, 7/14/2020) *5, *7 [unpublished] ("The trial court, however, declined to apply a multiplier. First, it found the case concerned workplace harassment and discrimination based on race for one plaintiff, which was not so unusual or complex that it required exceptional skill. The court further concluded that plaintiff's attorneys did not display such exceptional skill that exceeded the quality of an attorney with comparable skill and experience. Plaintiff does not dispute these findings.")

152.    "To the extent plaintiff contends the trial court was required, as a matter of law, to apply a multiplier, we disagree." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138 ["the trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof"]." A true and correct copy of this opinion is attached as **Exhibit 17**.

– 33 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

153.    On April 6, 2026, the United States Court of Appeals for the Ninth Circuit issued its opinion in *Thrower v. Academy Mortgage Corporation*, No. 24-6247 (9th Cir. 2026). A true and correct copy of this opinion is attached as **Exhibit 18**. In this opinion, the court held that the lower court abused its discretion in awarding an enhancement above the lodestar calculation.

154.    The lower court awarded rates based upon a previous request by the same attorneys, adding 20% to account for inflation in legal market rates, and then awarded a 1.75 multiplier. (Ex. 36, *7.) The defendant appealed the award of the multiplier.

155.    The appellate court quoted previous opinions related to multipliers. It said:

> Any modification [of the lodestar figure] must be "based on factors not subsumed in the lodestar figure." *Kelly*, 822 F.3d at 1099.

> Given the comprehensive nature of the lodestar calculation, any enhancements are "rare and exceptional." *Perdue*, 559 U.S. at 554 (simplified); *see also id.* at 561 (Thomas, J., concurring) ("[T]he lodestar calculation will in virtually every case already reflect all indicia of attorney performance relevant to a fee award." (simplified)). A multiplier may be awarded only upon "specific evidence" that the lodestar fee is "unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (simplified). "Any reliance on factors … subsumed in the lodestar determination will be considered an abuse of the trial court's discretion." *Parsons v. Ryan*, 949 F.3d 443, 467 (9th Cir. 2020) (simplified).

(Ex. 36, *8-9.)

156.    In *Zargarian v. BMW of N. Am., LLC* (C.D. Cal. 2020) 442 F. Supp. 3d 1216, 1230, the Court found a multiplier was not needed simply because the case was taken on contingency:

> The Court declines Plaintiff's request to apply an upward multiplier of 1.5 in this case. The amount of time and skill required to properly resolve this litigation, counsel's success in resolving the matter, and the case's novelty or complexity are reflected in the number of billable hours recorded and the reasonable hourly rate. Further, Plaintiff does not argue that counsel was prevented from taking other work because of the representation here. The Court acknowledges the contingent nature of this case; nonetheless, "[a]n attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not. To award a contingency enhancement under a fee-shifting statute would in effect pay for the attorney's time ... in cases where his client does not prevail." *City of Burlington v. Dague*, 505 U.S. 557, 565, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). While Plaintiff claims that Defendant's litigation tactics made the risks associated with the contingent nature of this litigation extremely high, the Court finds that this case does not warrant the requested enhancement. The lodestar reflects the reasonable amount of attorneys' fees Plaintiff should recover, and the Court DENIES the requested 1.5 multiplier enhancement.

– 34 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'**
**OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

157. As for the skill factor displayed by counsel, the court is best placed to decide whether that skill warrants the imposition of a multiplier. Would another attorney have been able to achieve the same result at trial?

158. The lodestar is presumptively reasonable and, in most cases, does not need to be enhanced.

> "The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' or 'exceptional' cases, supported by both specific evidence on the record and detailed findings … that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citation omitted). "[T]he trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof." *Ketchum*, 24 Cal.4th at 1138, 104 Cal.Rptr.2d 377, 17 P.3d 735 (emphasis in original).

(*Newton v. Equilon Enters.* (N.D. Cal. 2019) 411 F. Supp. 3d 856, 883.)

159. Plaintiff's attorneys also cite to *Bender v. Cty. Of Los Angeles* (MPA, p. 18:6-11) and cite that one of the reasons that court awarded a multiplier was that the case "limit[ed] counsel's availability for other cases." Although Plaintiff's attorneys in this case do not appear to have made this claim directly, the auditor analyzed the billing records to calculate the number of hours billed per month for the duration of this case.

160. For the Galipo firm, the following are the monthly totals:

| February | 2025 | 8.90 |
|---|---|---|
| March | | 23.60 |
| April | | 38.80 |
| May | | 34.20 |
| June | | 14.20 |
| July | | 55.90 |
| August | | 34.70 |
| September | | 27.50 |
| October | | 23.20 |
| November | | 28.10 |
| December | | 29.10 |
| **January** | **2026** | 63.80 |
| February | | 27.20 |
| March | | 127.10 |

– 35 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

| | | |
|---|---|---|
| April | | 249.60 |
| May | | 293.20 |
| June | | 15.60 |
| July | | 20.43 |
| **Grand Total** | | 1115.13 |

161.   Only in the two shaded months, April and May 2026, would the firm *as a whole* not be reasonably available to take on additional work. I further analyzed these two months to calculate the monthly totals per biller and arrived at the following:

| Attorney | | Hours |
|---|---|---|
| Brendan A. Johnson Total | **April 2026** | 1.50 |
| Dale K. Galipo Total | | 118.40 |
| Leslie De Leon Total | | 17.70 |
| Marcel F. Sincich Total | | 112.00 |
| **April 2026 Total** | | **249.60** |
| Dale K. Galipo Total | **May 2026** | 167.30 |
| Leslie De Leon Total | | 15.70 |
| Marcel F. Sincich Total | | 110.20 |
| **May 2026 Total** | | **293.20** |
| **Grand Total** | | **542.80** |

162.   Only Mr. Galipo, during the month in which the trial occurred, would have been hard pressed to take on additional work. None of the other billers would have been so proscribed.

163.   Mr. Packer's firm was not encumbered whatsoever. His monthly billing totals were:

| | | |
|---|---|---|
| **March** | **2024** | 1.50 |
| April | | 20.20 |
| May | | 0.10 |
| June | | 3.80 |
| July | | 5.50 |
| October | | 12.60 |
| November | | 2.70 |
| **January** | **2025** | 1.00 |
| February | | 11.40 |
| March | | 5.20 |
| April | | 8.00 |

– 36 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

| | | |
|---|---|---|
| May | | 13.80 |
| June | | 10.60 |
| July | | 3.90 |
| August | | 0.30 |
| September | | 15.60 |
| October | | 15.90 |
| November | | 7.30 |
| December | | 5.40 |
| **January** | **2026** | 12.85 |
| February | | 0.20 |
| March | | 22.80 |
| April | | 50.40 |
| May | | 66.60 |
| June | | 0.20 |
| July | | 8.80 |
| **Grand Total** | | **306.65** |

164. A reasonable argument cannot be made that work on this case precluded either firm from taking on additional work during the pendency of this matter.

165. If the 2.0 multiplier were to be awarded on top of the requested hourly rates, the fees awarded would be based on the following rates:

| Timekeeper | Requested Rate | x 2.0 |
|---|---|---|
| **Dale K. Galipo** | $1,500 | $3,000 |
| **Marcel F. Sincich** | $850 | $1,700 |
| **Trent Packer** | $900 | $1,800 |

166. To award these enhanced rates for the entirety of the case would be excessive in my opinion.

167. The factors raised by Plaintiff's attorneys do not support the request for the 2.0 or even the 1.5 multiplier.

– 37 –
**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

### SUMMARY OF FINDINGS

168.    The following tables summarize my findings by timekeeper:

| DALE K. GALIPO | |
|---|---:|
| **Requested Hours** | **443.43** |
| Excessive Intra-Office Conferencing | (6.76) |
| Vague Billing for Trial Preparation (20% x 171.4) | (34.38) |
| Billing for Claims Against the City of Hemet | (35.50) |
| Billing for Claims Against the City and State (50% x 40.6) | (20.30) |
| **Net Hours** | **346.49** |
| Recommended Rate | $1,406 |
| **Net Fees** | **$487,164.94** |

| MARCEL F. SINCICH | |
|---|---:|
| **Requested Hours** | **584.20** |
| Excessive Intra-Office Conferencing | (37.43) |
| Billing for Claims Against the City of Hemet | (1.70) |
| Billing for Claims Against the City and State (50% x 5.4) | (2.70) |
| **Net Hours** | **542.37** |
| Recommended Rate | $506 |
| **Net Fees** | **$274,439.22** |

| TRENT PACKER | |
|---|---:|
| **Requested Hours** | **287.75** |
| Excessive Intra-Office Conferencing | (18.74) |
| Vague Billing for Trial Preparation (20% x 15.2) | (3.04) |
| Billing for Claims Against the City of Hemet | (1.20) |
| Billing for Claims Against the City and State (50% x 8.2) | (4.10) |

– 38 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

| Net Hours | 260.67 |
|---|---|
| Recommended Rate | $787 |
| **Net Fees** | **$205,147.29** |

The above findings and adjustments would result in the following fee award:

| | |
|---|---|
| Dale K. Galipo | $487,164.94 |
| Marcel F. Sincich | $274,439.22 |
| Trent Packer | $205,147.29 |
| **TOTAL FEES** | **$966,751.45** |

In my opinion, the total fees that should be awarded to Plaintiff's Attorneys is **$966,751.45** with no multiplier.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 27th day of July 2026 at Sonoma, California.

_James P. Schratz_

_____

James P. Schratz

– 39 –

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

# Exhibit 1

1.      In March 1978, I left Heller, Ehrman, White & McAuliffe and joined a smaller firm until August 1980, when I joined Fireman's Fund Insurance Company in San Francisco, California, in its General Counsel's Office. My responsibilities included representing Fireman's Fund as attorney of record in various litigation matters throughout the country. In addition, I supervised outside counsel throughout the country on various types of cases, including many complex civil litigation cases and many employment cases.

2.      In 1984, I left the General Counsel's Office and transferred to the Claims Department where I established the Major Litigation Unit, which was responsible for managing complex litigation throughout the country, including the $65 million bankruptcy of The Woodson Company. In this role, I was responsible for approximately 1,000 cases and a staff of ten people. I also became very familiar with the rates charged not only by Fireman's Fund "panel counsel," but also rates charged by solo practitioners and small, medium, and large law firms throughout the United States.

3.      In July 1990, I was promoted to Vice President Major Claims, where my duties were expanded to include responsibility for any case throughout the world that had potential exposure of $3 million or more, and responsibility for supervising approximately 100 adjusters. Again, I continued my involvement in supervising cases throughout the United States and stayed abreast of what solo practitioners and small, medium, and large law firms charged their respective clients.

4.      On January 1, 1994, I left Fireman's Fund to establish my own litigation management and consulting firm. I am the principal of Jim Schratz and Associates, a firm that conducts legal fee audits of various law firms throughout the country. Over the past thirty-one years, I have personally supervised or conducted approximately 4,000 legal fee audits throughout the country on behalf of both clients and law firms, including governmental agencies, insurance companies, corporations, and private individuals. Approximately 500 to 1,000 audits have been in Southern California with most of them having been in Los Angeles and I have qualified as an expert witness on attorneys' fees in Los Angeles County Superior Court.

5.      Many of these audits have involved plaintiff's fee requests in fee-shifting cases. In that role, I have performed legal fee audits of various law firms on behalf of the California Department of Justice, the City and County of San Francisco, the City of Huntington Beach, the Sonoma County Sheriff's Office, the State of Wisconsin, United Airlines, and Avis Rent-A-Car, among others. The amount of the fee requests audited ranges from a low of a few hundred thousand dollars to approximately $60 million.

6.      In 1999, I was appointed by the District Court for the Northern Mariana Islands to audit approximately $22 million in legal fees in *In re the Estate of Larry Lee Hillblom*, one of the founders of DHL Express, whose estate was valued at approximately $1 billion. I was also retained by the United States Department of Justice to conduct an audit of a fee request in a nationwide class action lawsuit against the Immigration and Naturalization Service. I have served as an arbitrator for the Sonoma County Bar Association and the State Bar of California in their mandatory fee arbitration programs.

7.      In January 2010, I was retained by investor Carl Icahn to serve as special litigation counsel to review approximately $60 million in legal fees in *In re Tropicana Entertainment, LLC, et al*, Case No. 08-10856 (KJC) in the United States Bankruptcy Court for the District of Delaware.

8.    In February 2010, in *Department of Fair Employment and Housing v. United Dominion Realty* (Case Nos. 07CC12067, 02CC12069), the court accepted our audit findings stating:

In awarding fees in these amounts, the court has fully accepted the declaration of James P. Schratz in opposition to the motion, including all of his recommended reductions. The court finds his qualifications to be impressive. Likewise, his reasoning as to why the fees sought are excessive is persuasive.

9.    In April 2010, I was again retained by Mr. Icahn to serve as special litigation counsel to review an additional $6 million in legal fees in *In re Adamar of New Jersey, Inc. and Manchester Mall, Inc.*, Case No. 09-20711 and 09-20716 in the United States Bankruptcy Court for the District of New Jersey.

10.    I have qualified as an expert witness in numerous state courts, including San Francisco County Superior Court, Alameda County Superior Court, Sacramento County Superior Court, Los Angeles County Superior Court, Orange County Superior Court, and Sonoma County Superior Court, District Court in Corpus Christi, Texas, and Seattle Washington, and in Federal District Court in California, Pennsylvania, Michigan, and Oklahoma.

11.    In the case of *Madrid v. Gomez*, No. C-90-3094, United States District Court for the Northern District of California, I was retained by the California Department of Justice to audit a fee request of $8.3 million in connection with a prisoners' civil rights case at Pelican Bay State Prison. The audit disclosed a number of billing concerns and the audit report was submitted to Judge King, the settlement judge. The case resulted in a negotiated settlement of $4.25 million, or a reduction of approximately 50 percent. A copy of an article from *The Recorder* dated September 26, 1995, describing the settlement is attached as **Exhibit 1-1**.

12.    In *Rios v. Rowland*, No. 330211, Superior Court of California, County of Sacramento, I was retained to audit a fee request of $1.5 million. The audit disallowed a significant amount of the fees requested. The court upheld the audit results and reduced the fee request to approximately $227,000.

13.    In *CVB Corporation v. John Cavallucci*, No. 156505, Superior Court of California, County of Marin, I was retained to audit a fee request of approximately $2 million pursuant to a contractual provision. The audit uncovered a number of billing abuses and the court disallowed approximately 50 percent of the fee request.

14.    In *Aguilar v. Avis Rent-A-Car System*, No. 948597, Superior Court of California, County of San Francisco, I was retained to audit a fee request of approximately $1.3 million. The audit disclosed a number of problem areas and disallowed a significant amount. The court followed the audit findings and reduced the request by approximately 50 percent, to $650,000.

15.    In *McCauley v. BFC Direct Mailing*, No. 5711562, Superior Court of California, County of Orange, the plaintiff alleged violations of campaign election laws and sought attorneys' fees of $1.1 million. The defendant, Howard Jarvis Tax Reform Movement, hired this office to conduct a legal fee audit, and we disallowed approximately 50 percent of the fees. The court followed the audit findings and awarded approximately $525,000 of the $1.1 million requested.

16.    In *Florida Asset Financing Corp. v. Borton, Petrini & Conron*, United States District Court, Central District of California, Southern Division (Santa Ana), Case No. 8:96 cv 01144 AHS-MLG, we were retained by a private client to audit a fee request of $600,000. Based on the audit report, the court awarded $80,000.

17.    I conducted an audit of plaintiff's motion for attorneys' fees in *Adam v. Norton,* Northern District of California, Case No. C-98-2094 CW, a case in which plaintiff sought total fees in the sum of $1,726,312.92. The Special Master appointed by Judge Claudia Wilken to adjudicate the fee petition cited my declaration and recommended a total award of only $434,581.95 in attorneys' fees, less than 25 percent of the amount originally sought. The Special Master stated, "I believe Mr. Schratz' expert testimony meets the standard. Schratz's testimony is relevant, in that Schratz has provided a useful breakdown of the time spent by plaintiff's attorneys, and reliable, in that Schratz has accurately summarized the time and expenses claimed by plaintiff's attorneys." It must be stated the Special Master did not follow all of the audit recommendations. However, the Special Master did recommend reducing the fee request by approximately 75 percent, from $1,726,312.92 to $434,581.95, a result that Judge Claudia Wilken adopted in toto in July 2005.

18.    In January 2004, in *Frieders v. City of Glendale*, No. BC263271, Los Angeles County Superior Court Judge David A. Workman adopted our findings with respect to an audit of plaintiff's fee request. As a result, plaintiff's request of $4.1 million in fees was reduced to $1.1 million. The court specifically referred to our audit and reduced the fee request by approximately 75 percent. A copy of that order is attached as **Exhibit 1-2**.

19.    In August 2005, in *Rose v. Lancaster School District,* No. BC 303843, Superior Court of California, County of Los Angeles, the court adopted the methodology, analysis, and recommendations contained in our audit, and reduced plaintiff's request for fees by 58 percent from $498,000 to $209,000.

20.    In *North Pacifica, LLC v. City of Pacifica*, United States District Court, Northern District of California, Case No. C-01-4823 EMC, plaintiff sought damages at trial of approximately $16 million. I was retained by the defendant to audit plaintiff's request for $2,046,759.16 in fees and costs. In awarding plaintiffs only $453,810.75 in fees, Magistrate Judge Edward M. Chen cited my audit with approval with respect to various billing issues. A copy of the order dated December 16, 2005 is attached as **Exhibit 1-3**, and states, in pertinent part:

> [B]ased on the information provided in the declaration, Mr. Schratz has demonstrated that he is qualified to opine about fee awards and that his methodology in evaluating the billing records of NP's attorneys in this case is reasonable and sufficiently reliable. For example, Mr. Schratz's approach to categorizing the nature of the work of the attorneys is reasonable and sufficiently reliable as is, overall, his approach to unblocking the block-billed time entries.

21.    In *Poland v. L.A. Boxing*, Orange County Superior Court, Case No. 30-2009 0121184, plaintiff filed a lawsuit alleging eight causes of action against the defendants. Based upon their expert's testimony at trial, plaintiff had suffered $4,959,023 to $6,423,566 in damages. The jury found in favor of the plaintiff on two causes of action and on the statutory failure to pay owed wages claim awarded $2,800. This was the only cause of action on which they were successful that contained a statutory attorneys' fee provision. Plaintiff's counsel submitted a motion for attorneys' fees. They submitted bills totaling $709,242.50 and initially sought a 1/6 allocation (because two causes of action had been dismissed just prior to trial), or $118,207.08 in fees. I was retained by the defendant to audit plaintiff's request. Based upon deficiencies in the billing records such as block billing, redactions, excessive time to create deposition summaries, and excessive internal conferencing, and allocation issues, I

recommended that plaintiff's counsel only be awarded fees in the range of $25,000 to $30,000. In a subsequent supplemental declaration, plaintiff increased the amount of attorneys' fees sought to approximately $350,000. In July 2011, the Court found that plaintiff should only be awarded $30,000 – which is the amount that I had recommended.

22.	In *Shiow Huey-Chang v. County of Santa Clara, et al.*, Santa Clara County Superior Court, Case No. 5:15-cv-02502-RMW, plaintiff filed a lawsuit alleging excessive force by police. Plaintiff prevailed at jury trial and was awarded $40,000.00, although certain parts of the verdict were overturned by a defense post-trial motion for judgment as a matter of law. Plaintiff was deemed the prevailing party for purposes of attorneys' fees, and defendants did not dispute that finding for purposes of the fee motion. Plaintiff sought $970,063.74 in attorneys' fees and costs. I was retained by the defendant to audit plaintiff's request. I recommended that the billing rates being requested be reduced and that fees related to excessive staffing and time billed for certain aspects of the case be adjusted. I recommended that the fee request should be reduced to $236,860.38 plus costs of $27,575.72 for a total of $264,436.10. The court's reasoning and deductions tracked many of those set forth in my declaration and it ruled that plaintiff's fee award, including costs, should be reduced to $350,000.00.

23.	In *Carroll v. State of California, et al.,* Sacramento County Superior Court Case No. 34-2012-00135527-CU-OE-GDS, plaintiff was dismissed from her employment as a Staff Attorney with the California Commission on Teacher Credentialing. She filed suit alleging the termination was a wrongful retaliation for whistleblowing. Plaintiff prevailed at trial and sought attorneys' fees of $1,542,397.75, plus a 2.0 multiplier for a total of $3,084,795.50. I recommended that the billing rates being requested be reduced and that fees related to transient billers, unsuccessful claims, clerical billing, and duplicative billing be adjusted. I recommended that the fee request should be reduced to $323,720.37. The court awarded $638,484 or approximately 21 percent of the fees requested after reducing the requested billing rates, reducing the time billed for certain tasks, and reducing the requested multiplier.

24.	In *Violante v. Jayco, Inc.,* Los Angeles Superior Court Case No. 21AVC00911, plaintiffs brought suit under the Song-Beverly Act seeking damages for breach of express and implied warranties arising out of their purchase of a 2017 Jayco motorhome. The parties settled the matter but left the issue of attorneys' fees for the court. Plaintiffs' attorney claimed $140,342.00 as their reasonable fees based upon 11 generalized categories of work without submitting any billing records, let alone detailed billing records. Plaintiffs' attorney also requested a 0.50 multiplier. It was my opinion that the Song-Beverly Act was unique in explicitly requiring any award of fees to be tied to "actual time expended" and that generalized categories of work did not meet that requirement. I also identified block billing and billing for an unsuccessful appeal that mostly mirrored arguments made at the trial court level. Based upon my analysis, I recommended that no more than $41,860 be awarded as fees with no multiplier. This is precisely what the court awarded.

25.	In *Ashley Howell v. Department of State Hospitals for the State of California,* Napa County Superior Court Case No. 20CV000794, plaintiff asserted five causes of action against defendant claiming, among other issues, discrimination and wrongful termination. Plaintiff prevailed on a single cause of action before the jury and was awarded $28,941 in damages. Plaintiff's attorneys sought fees of $1,745,450. I reviewed the fee request and found that Plaintiff's attorneys had not provided detailed billing records but only broad, general categories of work; were requesting rates that were not reasonable; the fees requested were inconsistent with the representations they made at the Mandatory Settlement Conference earlier

in the year; claimed an apparently excessive number of hours for trial preparation; and that their request for a multiplier was not supported. In ruling on the fee motion, although the court did not directly reference my report, it reduced the lead plaintiff's attorney's rate to the rate I had recommended. The court also noted the discrepant representations of plaintiff's attorney's fees and found that a multiplier was not warranted. I had recommended that plaintiff's attorneys should be awarded no more than $395,460 in fees. The court awarded $135,102.

26.      In *Johnson v. City of San Jose*, USDC ND Cal. Case No. 5:21-cv-01849-BLF, plaintiff took part in a protest in the City of San Jose following the death of George Floyd. At the protest, plaintiff was struck by a police projectile, leading to his filing of a lawsuit against the police officer who shot the projectile and against the City. The jury found for plaintiff against only the officer. Thereafter, plaintiff's attorneys moved for attorneys' fees of $3,041,032.50 plus a 1.50 multiplier. I reviewed the fee request and among other issues found that the requested rates were unsupported and unreasonable. I also found and criticized a partner-heavy staffing model where more than half of the hours billed and two-thirds of the fees claimed were billed by partners. I further found excessive intra-office conferencing, with one timekeeper billing over half of their hours on conferencing and vague billing, including for trial preparation. Based upon my analysis, I opined that plaintiff's attorneys should receive no more than $2.10M in fees at requested rates and anywhere from $1.17M to $1.22M in fees at adjusted rates. In its August 15, 2025 order, the court found that some of the requested rates were justified but reduced other rates. The court agreed with me that the billing was "astonishingly partner heavy." The court also found that plaintiff's attorneys overbilled for trial preparation, including using vague task descriptions, allowing partner-level attorneys to bill approximately 75 hours in preparation for each hour of trial presentation. Based upon the court's adjustments and reductions, the lodestar was reduced to $1,884,867.25 and the court analyzed and rejected the request for a multiplier.

# Exhibit 2

1.    **Courts That Have "Rejected" My Methodology.** As an initial matter, although there may be an expert who proves to be the exception to the rule, I know of no expert whose opinion is wholly accepted by courts 100 percent of the time. I am aware of approximately ten (28) cases[1] (out of the approximately 4,000 audits I have performed around the country) in which the courts have criticized aspects of my methodology or credentials.

2.    The following is my analysis of those cases.

3.    ***Zuegel v. Mountain View Police Department***, United States District Court, Northern District of California, San Jose Division, Case No. 17-cv-03249-BLF ("*Zuegel*"). *Zuegel* alleged Fourth Amendment violations were committed by the Mountain View Police Department. The jury found that certain violations were committed and awarded $3,000 in damages. Subsequently, Plaintiff's attorneys sought $864,486.90 in attorney's fees plus additional charges for preparing a reply brief to the motion for fees. Following my analysis, I concluded that Plaintiff's attorneys should be awarded no more than $77,627.65 in fees.

4.    Plaintiff's counsel, Violet Grayson, requested fees at a rate of $675 per hour. Evaluating the information submitted in support of the fee motion and other rate information as well as the case documents, I recommended that she be compensated at no more than $525 per hour.

5.    The *Zuegel* court rejected my recommended rate for Ms. Grayson. It cited *Curtin v. County of Orange*, which in turn cited *Lopez v. San Francisco Unified Sell.* [sic] *Dist.* for the proposition that "multiple courts" had held my methodology lacked legal and factual support. I note that despite the *Curtin* case's reference to "multiple courts," *Curtin* only cited to a single case: *Lopez*. Furthermore, while the *Lopez* court did reject parts of my opinion, the court did not cite to any other case or court that had rejected my opinions.

---

[1] (1) *Zuegel v. Mt. View Police Dep't.*; (2) *Curtin v. County of Orange*; (3) *Kalani v. Starbucks Corp.*; (4) *Lopez v. San Francisco Unified Sch. Dist.*; (5) *Amphastar Pharms. Inc. v. Aventis Pharma SA*; (6) *Velez v. Roche*; (7) *Wit v. United Behav. Health*; (8) *Mahtesian v. Snow*; (9) *Branham v. Snow*; (10) *Duran v. United States Bank Nat'l Ass'n.* One additional case he references is *Cruz v. Starbucks Corp.*, which was cited in *Kalani v. Starbucks Corp.*

6.      The *Zuegel* court then cited to Judge Koh of the Northern District who rejected my opinion in *Kalani v. Starbucks* that solo practitioners should be paid less [than attorneys who work at large law firms] based on firm size alone because there was no Ninth Circuit authority for this holding.

7.      First, I have *never* stated that law firm size *alone* should dictate an appropriate hourly rate. However, I have stated that law firm size does affect what an appropriate hourly rate may be.

8.      In support of my opinion in *Zuegel* that smaller law firms typically do not charge rates that larger law firms can or do charge, I cited to seven cases out of the United States District Court for the Southern District of New York and one case out of the District Court for Kansas. I also referenced the 2016 Real Rate Report that confirmed law firm size has the largest impact on hourly rates. The Real Rate Report is an analysis of law firm rates based on invoice data published by Wolters Kluwer that has been cited with approval by courts nationwide, including in California. I also cited to a case out of the Central District of California (*Common Cause v. Jones* (C.D. Cal. 2002) 235 F.Supp.2d 1076, 1081-1082) as well as a Los Angeles Superior Court case (*Streisand v. Adelman*, Los Angeles Superior Court Case No. SC077 257 (ruling filed on May 10, 2004, at p. *4)) that both recognized that the size of a law firm could be taken into consideration when determining rates for lawyers.

9.      As the Ninth Circuit has stated (quoting Carl Sagan and possibly others), "the absence of evidence is not evidence of absence." (*Altera Corp. v. Comm'r* (9th Cir. 2019) 926 F.3d 1061, 1099; see also *International Ass'n of Machinists Workers, Local Lodge 964 v. BF Goodrich Aerospace Aerostructures Group* (9th Cir. 2004) 387 F.3d 1046, 1055; *AirWair International Ltd. v. Pull & Bear Espana SA* (N.D. Cal. July 12, 2021) 19-cv-07641-SI, at p. *1.) The lack of 9th Circuit authority for the proposition that firm size affects billing rates does not mean that firm size does not affect billing rates.

10.      As referred to later in this report, the 2016 Real Rate Report stated law firm size *does* have an impact on hourly rates. Furthermore, earlier this year, in June 2022, LexisNexis

published the <u>LexisNexis CounselLink® Enterprise Legal Management Trends Report</u> ("LexisNexis Report"). The LexisNexis Report is based on data derived from over $49 billion in legal spending, more than 350,000 timekeepers, and more than 1.2 million matters. The key metrics were based on charges billed by outside counsel in 2021. The LexisNexis Report stated that: "The size of a law firm is highly correlated to the rates billed by its lawyers." (LexisNexis Report, p. 14.) Based on their analysis of $49 billion in legal spending, they found that the median partner rate at the largest (750+ attorneys) law firms was $895 while the median partner rate at the smallest law firms (<50) was $300. (*Id.*) Thus, the largest law firms were billing rates almost 300 percent (298 percent to be accurate) higher than the smallest law firms.

11.     The lack of Ninth Circuit precedent does not establish that law firm size does not affect billing rates. The Real Rate Report and the LexisNexis Report establish that law firm size *does* affect billing rates.

12.     The *Zuegel* court independently calculated Plaintiff's attorney's lodestar based upon an updated billing table (*Zuegel*, p. 15:12-13). The updated billing table requested an award of $952,222.50. (*Id.*) This was inclusive of a 1.1 multiplier. The court determined that they were requesting $882,545.80. (*Zuegel*, p. 20:3-8.) After analysis of various factors, the court eventually awarded $449,166.19 in fees, or a 49 percent reduction from the calculated lodestar.

13.     Thus, although the *Zuegel* court made a broad, sweeping statement that "multiple courts had rejected my methodology" (quoting from *Curtin*), the only specific objection it had with my "methodology" related to law firm size affecting appropriate hourly rates, which I have addressed above.

14.     ***Curtin v. County of Orange***, United States District Court, Central District of California, Case No. SACV16-00591-SVW-PLA ("*Curtin*"), 2018 U.S. Dist. LEXIS 233110. *Curtin* alleged violations of the United States Constitution were committed by the Orange County Sheriff's Department. Plaintiff prevailed on certain claims and her attorneys sought $1,044,055.00 in attorney's fees. Following my analysis, I concluded that Plaintiff's attorneys should be awarded no more than $480,840.40 in fees.

15.    The *Curtin* court stated:

Multiple courts, including the Ninth Circuit, have already held that his [i.e., my] methodology in calculating fees lacks legal and factual support. See e.g. *Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 992-993 (N.D. Cal. 2005)

*Curtin*, *33.

16.    However, despite claiming that multiple courts had criticized my methodology, the only case cited by *Curtin* was *Lopez*, a Northern District of California case that is discussed below.

17.    The *Curtin* court stated that it had three concerns with my qualification as an expert under Federal Rule of Evidence 702. First, it stated that my opinions were not based on personal knowledge. Second, it stated that I was not qualified to opine on the reasonableness of attorney fees. Third, it stated that my opinions were not based on a reliable methodology but frequently relied on speculation. (*Curtin*, *34.)

18.    Regarding the court's first concern, it stated:

Regarding personal knowledge and a lack of foundation, Schratz does not have personal knowledge of the facts he asserts in his declaration. Schratz was not at the hearings where he disputes the number of plaintiffs' attorneys in attendance. Furthermore, Schratz makes broad sweeping generalizations about contingency fees as a whole, without providing [*35]  and specific or factual support to show the contingency fee in the case at hand was problematic. Schratz Decl. ¶ 58.

*Curtin*, *34.

19.    My understanding of FRE 702 is that expert testimony needs to be "based on sufficient facts or data." "Personal knowledge" is not mentioned or referred to anywhere in the Rule. As I state in virtually all my declarations, as part of the audit in *Curtin* I reviewed *all* the pleadings, deposition transcripts, trial transcripts, motions, and discovery. Although I was not at the various events to count the number of plaintiff's attorneys present, the court records, transcripts, and plaintiff's attorneys' billing records themselves provided the "facts and data" upon which I based my opinions.

20.     With regard to the alleged "broad sweeping generalizations about contingency fees as a whole," I stated the following in the referenced paragraph (Schratz Decl. in *Curtin*, ¶ 58):

> This type of agreement [a fee-shifting contingency agreement] appears to reward liberal, if not actual excessive billing by the attorneys and other legal professionals: That is, the more they billed, the more fees they could claim under the fee petition, and the more the attorneys stand to recover.

21.     I am unsure where the court found "broad sweeping generalizations" in this paragraph. There are only two opinions in this paragraph.: Attorneys may choose to engage in liberal billing practices; if they bill more, they can recover more. The fact is that in every single case I have audited involving this type of fee agreement, as far as I have been made aware, the plaintiff has *never* seen, let alone reviewed at any time, the attorney's invoices. Regular client review of attorney invoices serves an important function in seeking to ensure that billing records accurately reflect the work done. Without that regular review, improper or inaccurate billing can happen and not be flagged. The second statement, that if attorneys bill more they stand to recover more, is simply a truism.

22.     I stated that attorneys *may* overbill, but two paragraphs later I also stated: "The auditor approaches all legal fee audits with the assumption that most attorneys do not intentionally inflate their bills." (Schratz Decl. in *Curtin*, ¶ 60.)

23.     Regarding the court's second concern, it stated that I was not qualified to provide opinions on the reasonableness of attorneys' fees because I had no experience with the issues in the case and the reference cases I cited for the recommended rates were not from the Central District of California.

24.     Returning to FRE 702, experience is one basis on which an expert may be qualified, but it is only one out of the five enumerated bases: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion …."

25.     While it is true that I have never been involved in a *Monell* case as a practicing attorney or supervising attorney, the *Curtin* court nowhere addressed my knowledge, skill, training, or education as a legal fee expert. The court also did not acknowledge my experience as a legal fee auditor.

26.     As for the recommended rates, my exhaustive search found only one case, which happened to be from the Eastern District of California, in which any of the Plaintiff's attorneys had been awarded fees by a Court. I used that case, adjusted for time and location, as the basis for the recommended rates in *Curtin* as the Eastern District court had already determined Plaintiff's attorney's reasonable rate rather than using a rate awarded to another attorney.

27.     Regarding the court's final concern, it stated that my opinions were not based on a reliable methodology but frequently relied on speculation. The court did not cite to any specific methodology that it found to be unreliable so I do not know what the court was thinking when it made this statement. Furthermore, I have re-reviewed my declaration in *Curtin* and have not found a single instance where I *speculated* on an auditing issue. In certain instances, I made estimates or arrived at educated conclusions, but I do not, and did not, guess on any auditing issue.

28.     ***Kalani v. Starbucks Corp.***, United States District Court, Northern District of California, San Jose Division, Case No. 13-CV-00734-LHK ("*Kalani*"), 2016 U.S. Dist. LEXIS 12445. *Kalani* was an ADA access case. The court granted injunctive relief and a statutory damage award of $4,000. Plaintiff's attorneys sought $135,931 in fees.

29.     Unbeknownst to me, rather than file any actual opposition to the motion for fees, defense counsel simply "adopted" my declaration as the opposition and asked the court to accept my conclusions. As my declaration was not intended to be an opposition brief, it contained no legal arguments.

30.     ***Lopez v. San Francisco Unified Sch. Dist.*** (N.D. Cal. 2005) 385 F. Supp. 2d 981. *Lopez* was a class action. The *Lopez* opinion is basically a precursor to the *Curtin* opinion,

making many of the same points related to FRE 702 as the later *Curtin* court made. I have the same response to those points here as I made in *Curtin.*

31.   ***Amphastar Pharms. Inc. v. Aventis Pharma SA*** (C.D. Cal. Nov. 13, 2020) Case No. No. 5:09-cv-00023-SHK, 2020 U.S. Dist. LEXIS 251236. The *Amphastar court* rejected my argument on conferencing and there were some errors in specifically identifying certain types of billing entries among the over 8,400 entries in that case.

32.   In my declaration in *Amphastar* while I identified conferencing entries and listed in an exhibit, I neglected to specify *how* I had identified them. I always endeavor to specify how searches are performed but in that instance I did not. As far as errors are concerned, there were over 8,400 billing entries and over $16 million in fees so despite my best efforts to manually double-check all entries that were identified by computerized searches and analysis, some errors were not caught. Those errors were minimal and I still stand by my overall analysis.

33.   ***Velez v. Roche*** (N.D. Cal. Sep. 22, 2004) Case No. No. C-02-0337 EMC, 2004 U.S. Dist. LEXIS 29848. The *Velez* court rejected my argument on conferencing. The court made an independent determination that the number of hours of conferencing in the case was not unreasonable, despite my opinion to the contrary. However, the court rejected the plaintiff's wholesale opposition to my qualifications, stating, "The Court disagrees. Mr. Schratz's expert opinion on fee awards, including hourly rates, has sufficient foundation."

34.   ***Wit v. United Behav. Health*** (N.D. Cal. 2022) 578 F. Supp. 3d 1060, 1081. The *Wit* court rejected my recommended hourly rates for certain personnel, rejected my conferencing argument, and rejected my argument regarding duplicative work.

35.   As for the court's rejection of my opinion on hourly rates, the court's comment was specifically addressing the issue of appropriate rates for paralegals and litigation support personnel. I had noted that Plaintiff's attorneys had provided some, but insufficient, information in their moving papers as to the qualifications of the paralegals for whom they were seeking compensation. This opinion is what the court rejected. Plaintiff's attorney's initial declaration contained only three paragraphs identifying the paralegals and providing limited information

regarding them. Following receipt of my declaration, plaintiff's attorneys found it necessary to submit 19 additional paragraphs of new information in a reply declaration discussing the qualifications of their paralegals. My criticism was directed at their original filing, which I found to be lacking. Obviously, plaintiff's attorneys agreed that their original submittal was lacking in this aspect as they supplemented it in a reply. If plaintiff's attorneys had provided more complete information in their initial moving papers, I would not have criticized the lack of information regarding paralegal qualifications.

36.    The court also noted that I had stated plaintiff's attorneys had not provided evidence that the rates sought were the rates billed to fee-paying clients when, in fact, they had. That was an error on my part in overlooking that phrase in the motion.

37.    The court also found my evidence of reasonable paralegal rates to be unpersuasive. I only presented one data point on the recommended paralegal rates although I could and should have presented more reference cases to support my recommendation.

38.    The court stated that it found my opinion on conferencing "unpersuasive." It did not object to or challenge my methodology in identifying conferencing, agreed with me that conferencing can become excessive, and even cited to three cases in which a court did reduce time for excessive conferencing where the amount of conferencing identified in those cases was similar to what I had found in Plaintiff's attorneys' billing records. However, the challenge was my alleged overcounting of the conferencing time. Plaintiff's attorneys, in their reply declaration, provided new information related to those billing entries that, if it had been presented initially, would have changed my analysis. With the reduced conferencing hours, the court did not find the amount of conferencing sufficient to warrant adjustment.

39.    The court also chose not to follow my recommendation on duplicative work. My primary issue with duplication was multiple attendance at depositions by personnel who did not ask any questions or make any substantive comments during the depositions according to the transcripts. In their reply declaration, Plaintiff's attorneys provided additional information

regarding these depositions or deponents. Again, Plaintiff's attorneys had not provided that information when I prepared my opinion or my opinion on duplication might have changed.

40.     *Mahtesian v. Snow* (N.D. Cal. Dec. 14, 2004) Case Nos. 03-5372 13MMC, 04-1306 MMC, 2004 U.S.Dist. LEXIS 25656. The *Mahtesian* court rejected my recommended rates and rejected my argument that the declaration in support of the fee motion was deficient. Both issues related to the requested rate.

41.     My rate recommendation was based on the limited information Plaintiff had submitted in support of the fee motion. The court disagreed and found the information supplied to be sufficient.

42.     *Branham v. Snow* (S.D. Ind. June 19, 2006) Case No. 1:01-cv-0152-JDT-WTL, 2006 U.S.Dist. LEXIS 42405. The *Branham* court rejected my recommended  hourly rate.

43.     In *Branham*, I referenced the fees that had recently been awarded in a similar Federal case out of Indiana to recommend a rate lower than what Plaintiff's attorney was requesting. The original fee motion was filed on January 17, 2006. I submitted my declaration based upon those moving papers. At a hearing held on May 2, 2006, the court ordered supplemental briefing of the motion. The court ultimately based its ruling on the motion, in part, on the supplemental information provided by the parties after May 2, 2006, well after my analysis had been performed. Certain information relevant to the issue of the reasonableness of the rate being requested was included in that supplemental briefing. If I had had access to that additional information in preparing my declaration, I might have arrived at a different opinion on the reasonableness of the requested rate.

44.     *Duran v. United States Bank Nat'l Ass'n*, Alameda County Superior Court Case No. 2001-035537, 2010 Cal. Super. LEXIS 1058. At issue was the trial court's order regarding fees following trial. The class action was appealed to the Court of Appeal although the court's ruling on attorney's fees was not part of the appeal. (*Duran v. U.S. Bank National Assn.* (2012) 203 Cal. App. 4th 212). The Court of Appeal called the court's "trial management plan … fatally

flawed," decertified the class, and reversed an order awarding certain expert witness fees to the plaintiffs. It also remanded certain claims to be re-evaluated by the trial court.

45.     The Court of Appeal held that the judge's trial plan barred the defendant from introducing "manifestly relevant evidence," denied defendant's Due Process rights, and committed prejudicial errors. The Court of Appeal's opinion was subsequently depublished when the California Supreme Court accepted review of the Court of Appeal's decision but it was later affirmed by the Supreme Court's opinion. (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1.)

46.     I do not know why or how the judge found me to be partisan and non-independent. Without further information as to the court's reasoning, I cannot respond. I can only state that I had no bias in the case, no conflicts in the case, and I approached and conducted the audit the same way that I do all audits, whether I am retained by a law firm in support of its fee request or retained by an opposing party in opposition to the fee request.

47.     ***Gober v. Ralph's Grocery Co.*** (Superior Court of California, County of San Diego 2007) Case No. N72142. I understand that the Court sustained plaintiff's objections to that portion of my declaration that stated there is a percentage allowable for attorney conferencing. The court also stated that I had included time entries that were not attorney conferencing under the category of "conferencing." Despite sustaining this discrete objection, the court agreed with my finding that there was excessive intra-office conferencing, but disagreed on the amount of such conferencing. Furthermore, "The Court adopts Mr. Schratz's recommendation of a 25% reduction in [Rosen Bien's fees for the preparation of the fee motion]." "The Court also adopts [Mr. Schratz's] recommendation that that Mr. Kay's fees for the instant motion be reduced by 25%."

48.     ***California DUI Lawyers Assn et al. v California Dept. of Motor Vehicles*** (Superior Court of California, Los Angeles County 2022) Case No. BC553552. The issue of attorney's fees was fully briefed, argued, and decided by the trial court in a written opinion. I was not involved in that initial round of briefing. The case went up on appeal and, on remand, I opined that the number of hours billed should be reduced as well as the hourly rates for some or all of the

attorneys involved. A different Superior Court judge handled the motion for attorney's fees on remand and stated: "the court considered Schratz's opinion, he did not persuade the court to reduce Plaintiff's counsel's hours." The court chose not to accept my opinion on the number of hours billed, choosing to follow what the prior judge had already decided was the lodestar.

49.     The court did not make any specific finding or comment on my rate recommendation, choosing rather to follow what the prior judge had awarded.

50.     ***Bickley v. CenturyLink, Inc.***, Case No. CV 15-1014-JGB (ASX), 2016 WL 9046911 (C.D. Cal. Nov. 29, 2016). The court stated that I had provided no evidence in support of my proposed rates, and no evidence to support the rates I provided for smaller firms. "Defendant does not, for example, identify similarly-sized employment law firms whose attorneys charge the rates he recommends."

51.     Despite extensive research, it is true that I was unable to locate any fee awards made to similarly-sized employment law firms in the Central District of California. My recommendations were based on other data but the court's issue was that I did not provide data for similarly-sized employment law firms.

52.     ***Duffy v. City of Desert Hot Springs***, No. EDCV06385VBFOPX, 2008 WL 11429368 (C.D. Cal. Mar. 25, 2008). The Court's only expressed issue with my declaration in this case, as I understand, was my opinion that there is a difference in billing rates between small firms and large firms, citing to other courts that had questioned or rejected such a distinction. That was in 2008. As seen elsewhere in my declaration in this case, this distinction in billing rates between small firms and large firms is now being more readily recognized by courts and is backed up by major rate surveys.

53.     ***Johnson v Sears*** (Superior Court of California, Sacramento County 2012) Case No. 34-2009-00054053-CU-WT-GDS. The court stated that it found my declaration to be "of minimal assistance." It also stated: "The declarations do identify certain areas of inquiry typically utilized by fee auditors. Too often however, the declarations adopt questionable or incorrect factual assumptions in an effort to support the reduction or disallowance of various amounts claimed."

However, the Court did not identify what it found questionable or incorrect in my declaration and I was not called upon to testify so I have no way to respond. The Court also found partisanship in my declaration, again without any further elaboration, so I cannot respond to this other than to state that whether I am retained to support fee motions or to oppose them, I utilize the same methodology and criteria and have been retained by both. I can also state that in my 42 years of performing approximately 3,600 audits I have only been accused of being partisan twice.

54.    ***Bobol v. HP Pavilion Management*** (N.D. Cal. 2006) Case No. C-04-0082 (Order Granting Motion for Attorneys Fee, dated April 10, 2006). The court's issue with my declaration concerned recommended billing rates. The court stated that I did not factor the skill and reputation of the attorney or the nature of the work into my analysis. I do incorporate an attorney's skill into my opinion if it's a relevant factor based upon comments made by the court or by opposing counsel, however I'm not sure how to factor reputation into billing rates. Furthermore, simply because an attorney has a generally favorable reputation overall does not mean that that attorney performed at a level commensurate with that reputation in any particular case.

55.    ***Brown v. City of Pittsburgh*** (W.D. Pennsylvania 2010) 2010 WL 2207935 (May 27, 2010). The court referred to my opinion multiple times, claiming that it was rejecting my opinions because I lacked experience with civil rights trials. Nevertheless, the court ultimately made many reductions to the requested lodestar consistent with several of my opinions.

56.    ***Branham v. Snow*** (S.D. Ind. 2006) 2006 WL 1750443, Entry on Plaintiff's Motion for Reasonable Attorneys' Fees and Costs, dated June 19, 2006. The court found my testimony on attorney rates to be "somewhat arbitrary" and portions of my declaration to be "conclusory and argumentative." The court rejected my opinion on rates and block billing. As noted above, not all courts accept my opinions. In addition, since that time I have modified my declarations to address the issues noted by the court.

57.    ***Campbell v. National Passenger R.R. Corp.*** (N.D. Cal. 2010) 718 F.Supp.2d 1093. The court rejected my proposed cuts to the attorneys' time for not prevailing on every

claim, and for the time they spent conferencing. Again, no expert's opinions are accepted by all courts every time.

58.     ***Miller v. Vicorp Restaurants, Inc.*** (N.D. Cal. 2006) 2006 WL 212021. The court simply noted that it did not find my declaration to be helpful. I was not presented to testify in that case (other than through my declaration). Regardless of what the court wrote regarding my declaration, plaintiffs' attorneys sought fees of $907,676.03. The Court adjusted the hourly rates and hours billed and awarded fees of only $410,728.95.

59.     ***Millar v. San Francisco Bay Area Rapid Transit*** (Superior Court of California, County of Alameda 2004) Case No. C830013-9, Order Awarding Plaintiff and His Counsel Reasonable Attorneys Fees, dated April 12, 2004. The Court found the foundations for my opinions defeated plaintiff's evidentiary objections, but found my opinions to be inadequately supported. As noted above, not all courts accept my opinions.

60.     ***Oberfelder v. City of Petaluma*** (N.D. Cal. 2002) 2002 WL 472308. According to the Court, I used a "computer generator report" to erroneously object to "whole categories of work" without analyzing whether any particular item was "reasonably spent." The court misunderstood (or I insufficiently described) the computerized reports, but accepted my opinions on vagueness.

61.     ***Oberfelder v. City of Petaluma*** (N.D. Cal. 2002) No. C-98-1470 MHP, 2002 WL 472308, aff'd sub nom. *Oberfelder v. Bertoli*, 67 F. App'x 408 (9th Cir. 2003)**.** The Court found the clerical tasks I identified and recommended adjusting were contained in block-billed entries and were essentially *de minimus*. The Court also found the long billing days in this case were reasonable. As noted above, not all courts accept my opinions.

62.     ***Velez v. Wynne***, 220 F. App'x 512 (9th Cir. 2007). The only issue the Court had with my declaration was my use of a 2-year old survey in support of the hourly rates I recommended. At the time, despite extensive research, that was the only reference rates I could find.

63.    *Myles v. County of San Diego* (Case No. 3:15-cv-01985-JAH-BLM, Doc 484, Sep. 29, 2023). Although the Court acknowledged that my opinion referenced my experience with rates charged by San Diego law firms and a fee survey conducted by Judge Anelleo, the Court stated that it was "not persuaded by [my] opinion [on reasonable rates] which is based on criteria the Court finds irrelevant, namely the size of the firm." However, one, my opinion was not solely based on the size of the law firm as the Court itself acknowledged. Two, a case involving the relevance of law firm size to rates is awaiting an opinion from the Ninth Circuit.

64.    *Mirabelli v. Olson* (USDC SD Cal., Mar. 30, 2026) Case No. 3:23-cv-00768-BEN-VET. In it's order on the fee motion, the court stated: "[T]he court disregards the Schratz opinion because it lacks objectivity, as other courts have mentioned, and because it relies on a large firm / small firm distinction for allowable hourly rates—a distinction the Ninth Circuit Court of Appeals has recently rejected."

65.    The court nowhere identified any lack of objectivity on my part and did not cite to any other courts that may have mentioned this. Furthermore, the opinion in the Ninth Circuit case referenced by the Court was filed on February 24, 2026. My declaration was signed and filed two days before that opinion was issued.

66.    The above are the only cases of which I am currently aware that have criticized or explicitly rejected my opinions, in whole or in part, on legal fees. If I am made aware of any other such cases by opposing counsel or a court I will add to this discussion in future declarations.

# Exhibit 3



## JIM SCHRATZ
*President*

- In *Department of Fair Employment and Housing v. United Dominion Realty* (Case Nos. 07CC12067, 02CC12069) the court accepted our audit findings stating, "In awarding fees in these amounts, the court has fully accepted the declaration of James P. Schratz in opposition to the motion, including all of his recommended reductions. The court finds his qualifications to be impressive. Likewise his reasoning as to why the fees sought are excessive is persuasive."

- Retained by investor Carl Icahn and other shareholders as special litigation counsel to review approximately $60 million in professional fees in *In re Tropicana Entertainment, LLC, et al*, Case No. 08-10856 (KJC) ("Tropicana") in the United States Bankruptcy Court for the District of Delaware.

- Retained by investor Carl Icahn and other shareholders to serve as special litigation counsel to review approximately $8 million in legal fees in In *re Adamar of New Jersey, Inc. and Manchester Mall, Inc.*, Case No. 09-20711 and 09-20716 in the United States Bankruptcy Court for the District of New Jersey.

- Appointed by District Court in Northern Mariana Islands to audit $22 million in legal fees in *The Estate of Larry Lee Hillblom*, one of the founders of DHL Express, whose estate was estimated to be worth $1 billion.

- Described by the American Bar Association Journal as a "major player in the field of legal fee audits."

- *In Victaulic Company v. American Home Assurance Company, et al.*, (Case No. RG12642929, Superior Court of the State of California for County of Alameda), I testified on behalf of an $8.3 million Brandt fee request by Victaulic's law firm Pillsbury Winthrop Shaw Pittman LLP, which is what the jury awarded.

- *In Lathrop & Gage v Kenney, (*Civil Action No. 07CC09697, In the Superior Court of California for the County of Orange), I testified at trial and assisted the law firm in recovering approximately $1 million in fees from the client.

- *In Gen. Charles E. Yeager, Victoria Yeager, Charles E. Yeager Revocable Living Trust, and General Chuck Yeager Foundation v. Don A. Lesser, The Lesser Law Group, and Does 1 through 20, inclusive,* Superior Court of California, County of Sacramento, Case No. 34-2011-00109638, I testified at trial and assisted the law firm in successfully seeking its fees from a former client.

- In *North Pacifica, LLC v. City of Pacifica*, United States District Court, Northern District of California, Case No. C-01-4823 EMC, I was retained by the defendant to audit plaintiff's request for $2,046,759.16 in fees and costs. In awarding plaintiffs only $453,810.75 in fees, Magistrate Judge Edward M. Chen cited my audit with approval with respect to various billing issues and noted:

> [B]ased on the information provided in the declaration, Mr. Schratz has demonstrated that he is qualified to opine about fee awards and that his methodology in evaluating the billing records of NP's attorneys in this case is reasonable and sufficiently reliable. For example, Mr. Schratz's approach to categorizing the nature of the work of the attorneys is reasonable and sufficiently reliable as is, overall, his approach to unblocking the block-billed time entries.

- Qualified as expert witness on issues involving reasonableness of attorneys' fees and proper claims handling procedures in state and federal court.

**PRIOR WORK HISTORY:**

- Vice President, Major Claims, Fireman's Fund Insurance Company

- Director, Corporate Litigation, Fireman's Fund Insurance Company

- Assistant General Counsel, Fireman's Fund Insurance Company

- Associate, Rosenblum, Fenolio, Parish, Jack & Bacigalupi, San Francisco

- Associate, Heller, Ehrman, White, & McAuliffe, San Francisco

**EDUCATION:**

University of San Francisco Law School, J.D., 1976, Editor-in-Chief, Law Review

University of Illinois, M.A. Political Science, 1972

State University of New York at Buffalo, B.A., 1969

- Taught at various law schools and universities in the Bay Area and lectured throughout the United States and in Europe.

- References furnished upon request.

**PUBLICATIONS:**

April 1991, "Managing Insurer, Insured Conflicts of Interest by Use of Independent Counsel," American Bar Association, Section of Litigation, Committee on Insurance, Mid-Year Meeting

June 1992, "Do The Right Thing," California Lawyer

June 1992, "Resolving the Cumis Quandary: Guidelines for Reasonable Fees," Insurance Litigation Reporter

October 1992, "The Alliance Lives," Underwriters Report

October 1992, "The Need For Legal Audits," Verdict

February 1993, "Cumis Counsel's Obligation To Provide Information To The Insurance Company," American Bar Association, Insurance Coverage Litigation Committee, Mid-Winter Meeting

Spring 1993, "The Other Side of the Cumis Coin:  The Insurer's Ability To Select Associate Defense Counsel Under Civil Code, Section 2860 (f)" (with Jon R. Mower), Western State Law Review

July 1993, "Is Your Insurance Company Doing Enough To Fight Fraud?" Risk Management

July 1993, "Why We Lost The Battle Against Insurance Fraud," Claims

September 1993, "Customer Satisfaction - The Secret Weapon in Law Firm Marketing," Washington State Bar News

October 1993, "Tactical Defenses:  An Insurance Company's Guide to Working with Cumis Counsel" (with Jon R. Mower), Claims

October 1993, "Fighting Insurance Fraud Takes Persistence," Missouri Agent

Spring 1994, "Legal Auditing Makes Sense," Legal Audit Review

September 1994, "Empowering Adjusters For Creative Solutions," Best's Review

February 1995, "How To Avoid A Fee Dispute With Your Client," American Bar Association, Insurance Coverage Litigation Committee (with Susan R. Brown)

February 1995, "Billing Guidelines and Fee Disputes," American Bar Association, Insurance Coverage Litigation Committee

April 1995, "Bad Faith for Legal Work? Your Insurer May Be Liable for Mishandling Its Lawyers," Claims Magazine

April 1995, "Is Your Company's Insurance Firm Guilty of Litigation Mismanagement?" The American Lawyer's Corporate Counsel Magazine

May 1995, "Billing Guidelines and Fee Disputes:  A Case Law Review," Trial Diplomacy Journal, Volume 18, Number 3

July 1995, "How to Avoid Fee Disputes" (with Susan Brown), The Practical Litigator, Volume 6, Number 4

April 1996, "Take A Psychological Approach To Managing Legal Fees," Claims

May 1996, "Cross-Examining the Legal Auditor,"  The Practical Litigator, Volume 7, Number 3

August 1996, "Is your Insurance Company Liable for Bad Faith Litigation Management," Business Laws, Inc., Litigation Management

August 1996, "Is Your Company's Insurance Firm Guilty of Litigation Mismanagement," Business Laws, Inc.'s Law Department Management Adviser, Issue No. 149

Fall 1996, "Cross-Examining a Legal Auditor," American Journal of Trial Advocacy, Volume 20:1

November 1996, "Cross-Examining a Legal Auditor," Business Laws, Inc., Law Department Management Adviser, Issue No. 152

August 1997, "The Recovery of Legal Fees and the Use of A Legal Fee Auditor in Fee-Shifting Cases" (with Susan R. Brown), Business Laws, Inc., Law Department Management Adviser

September-October, 1997, "Recovering Legal Fees and using Legal Fee Auditors" (with Susan R. Brown), Trial Diplomacy Journal, Volume 20, Number 5

Winter 1997, "How to Avoid a Fee Dispute with Your Client," (with Susan R. Brown), American Bar Association The Brief, Vol. 26, No. 2

March, 1998, "How the Legal Auditor Can Help You in the Fee-Shifting Case" (with Susan R. Brown), The Practical Litigator, Volume 9, Number 2

March/April 1998, "Strategic Inflection Points in the Legal Profession," American Journal of Trial Advocacy

April 1998, "Controlling the Uncontrollable: When Insurers Must Pay Plaintiff's Legal Fees," Commercial Claims

July 1998, "Strategic Inflection Points in the Legal Profession,"  Business Laws, Inc., Law Department Management Adviser

Summer 1998, "I Told You to Fire Nicholas Farber -- A Psychological and Sociological Analysis of Why Attorneys Overbill," Rutgers Law Review, Vol 50; No. 4.

April 2001, "Winning an Attorney's Fee Petition," Rhode Island Bar Journal, Volume XLIX, Number 7

May 2001, "How To Win a Fee Petition," The Practical Litigator, Volume 12, Number 3

August 2001, "How To Win a Fee Petition," The Federal Lawyer, Volume 48, Number Seven

December 2001, "How To Win a Fee Petition:  What the Plaintiff Should Avoid, What the Defendant Should Look For," Business Laws, Inc., <u>Law Department Management Adviser</u>

April 2002, "How to Win a Fee Petition:  What the Plaintiff Should Avoid, What the Defendant Should Look For," Business Laws, Inc., <u>Corporate Counsel's Guide to Litigation Management</u>

May 31, 2002, "Ballooning Costs – Avoiding Questionable Billing Practices Improves Chance of Recovering Fees," <u>Los Angeles Daily Journal, Dicta</u>

December 14, 2010,  "Winning a Fee Application in Hawaii," <u>Hawaii Bar Journal</u>

# Exhibit 4

| DOCUMENT | Pages |
|---|---|
| Amended Memo of Contentions of Fact & Law.#113 | 21 |
| Amended MIL #1.#116 | 16 |
| Amended MIL #2.#117 | 26 |
| Amended MIL #3.#118 | 12 |
| Amended MIL #4.#119 | 13 |
| App. for Writ of Habeas Corpus Ad Testificandum.#141 | 1 |
| App. for Writ of Habeas Corpus.#129 | 1 |
| App. for Writ of Habeas Corpus.#136 | 1 |
| Memo of Contentions of Fact & Law.#91 | 23 |
| Oppo to City Defs.' MIL #1.#84 | 10 |
| Oppo to City Defs.' MIL #2.#85 | 34 |
| Oppo to Defs.' MIL #3.#86 | 38 |
| Oppo to Defs.' MIL #4.#89 | 64 |
| Oppo to State Defs.' MIL #5.#90 | 9 |
| Proposed Voir Dire.#101 | 8 |
| Req. for Order Directing Officers Accompanying Plf to Trial to Dress in Plain Clothes.#125 | 5 |
| Subpoena to Amanda McKinley.#137 | 3 |
| Subpoena to Jaclyn Corso, M.D.#131 | 3 |
| Subpoena to Marquis Bridgman.#138 | 3 |
| Subpoena to Navpreet Dhillon, M.D.#130 | 3 |
| Subpoena to Riverside County Sheriff's Office.#139 | 3 |
| [Proposed] Joint Agreed Upon Jury Instructions (redline).#108 | 55 |
| [Proposed] Joint Agreed Upon Special Verdict Form.#106 | 7 |
| [Proposed] Joint Disputed Jury Instructions.#109 | 13 |
| [Proposed] Order Granting City Defs.' MSJ.#62-4 | 2 |
| [Proposed] Order Granting Plf's MIL #1.#71-1 | 3 |
| [Proposed] Order Granting Plf's MIL #2.#72-1 | 4 |
| [Proposed] Order Granting Plf's MIL #3.#73-1 | 2 |
| [Proposed] Order Granting Plf's MIL #4.#74-1 | 2 |
| [Proposed] Plf's Amended Jury Instructions.#123 | 3 |
| 2026-01-30 - PDF - CONDENSED - GEORGE GONZALEZ - VOL. IV | 44 |
| 2026-01-30 - PDF - FULL SIZE - GEORGE GONZALEZ - VOL. IV | 133 |
| 6727 Noble, Jeff 01-19-2026_FULL TEXT hyperlinked exhs. | 115 |
| 6727 Noble, Jeff 01-19-2026_MINI TRANSCRIPT | 49 |
| 6807A O'Connor, Ryan 01-22-2026  MINI TRANSCRIPT | 27 |
| 6807B Holdaway, Scott 01-22-2026  FULL TEXT w linked exhibits | 83 |
| 6807B Holdaway, Scott 01-22-2026  MINI TRANSCRIPT | 32 |
| Amended Joint Exhibit Stip.#135 | 23 |
| Andrew Reynoso Depo Transcript.CONDENSED | 42 |
| Andrew Reynoso Depo Transcript.FULL TEXT | 108 |
| Att. 1 (Defs.' Disputes to Plf's Addit'l Material Facts) to Defs.' Reply to MSJ.#67-1 | 44 |
| Attachments # (1) Declaration of Dale K. Galipo | 17 |
| Attachments # (10) Exhibit 9 | 8 |
| Attachments # (11) Exhibit 10 | 9 |
| Attachments # (12) Exhibit 11 | 42 |
| Attachments # (13) Exhibit 12 | 19 |
| Attachments # (14) Exhibit 13 | 10 |
| Attachments # (15) Exhibit 14 | 10 |

| | |
|---|---|
| Attachments # (16) Exhibit 15 | 10 |
| Attachments # (17) Exhibit 16 | 21 |
| Attachments # (18) Exhibit 17 | 45 |
| Attachments # (19) Exhibit 18 | 28 |
| Attachments # (2) Exhibit 1 | 7 |
| Attachments # (20) Exhibit 19 | 57 |
| Attachments # (21) Exhibit 20 | 17 |
| Attachments # (22) Exhibit 21 | 2 |
| Attachments # (23) Exhibit 22 | 8 |
| Attachments # (24) Exhibit 23 | 8 |
| Attachments # (25) Declaration of Marcel F. Sincich | 12 |
| Attachments # (26) Exhibit 1 to MFS Declaration | 25 |
| Attachments # (27) Declaration of Brendan A. Johnson | 4 |
| Attachments # (28) Exhibit 1 to BAJ | 2 |
| Attachments # (29) Declaration of Leslie De Leon | 3 |
| Attachments # (3) Exhibit 2 | 3 |
| Attachments # (30) Exhibit 1 to LDL | 10 |
| Attachments # (31) Declaration of Trenton C. Packer | 8 |
| Attachments # (32) Exhibit 1 to TCP | 10 |
| Attachments # (33) Declaration of Kayla Pena Pham | 3 |
| Attachments # (34) Exhibit 1 to KPP | 10 |
| Attachments # (4) Exhibit 3 | 11 |
| Attachments # (5) Exhibit 4 | 19 |
| Attachments # (6) Exhibit 5 | 31 |
| Attachments # (7) Exhibit 6 | 16 |
| Attachments # (8) Exhibit 7 | 13 |
| Attachments # (9) Exhibit 8 | 13 |
| City Defs.' Answer to FAC.#21 | 26 |
| City Defs. Answer to Plf's SAC.#40 | 28 |
| City Defs.' MIL #1.#78 | 7 |
| City Defs.' MIL #2.#79 | 6 |
| City Defs.' MSJ.#62 | 31 |
| City Defs.' Oppo to Plf's MIL #1.#94 | 9 |
| City Defs.' Oppo to Plf's MIL #2.#95 | 8 |
| City Defs.' Oppo to Plf's MIL #4.#96 | 4 |
| City Defs.' Reply ISO MSJ.#67 | 9 |
| City Defs.' Reply ISO MSJ.#67 | 9 |
| City Defs.' Rule 26 Supp Disclosures.072225 | 13 |
| City Defs.' SSUMF ISO MSJ.#62-1 | 7 |
| City Defs.' Supp Expert Disclosures.010826 | 66 |
| City Defs.'Answer to Plf's SAC.#41 | 26 |
| Clarence Chapman Depo Transcript.CONDENSED | 40 |
| Clarence Chapman Depo Transcript.FULL TEXT | 101 |
| Court's List of Exhibits & Witnesses.#147 | 10 |
| Defs.' Ex Parte Mtn for Modification of SO.#57 | 12 |
| Defs.' MIL #3.#75 | 108 |
| Defs.' MIL #4.#76 | 73 |
| Defs.' MIL #5.#77 | 52 |
| Exh. 1 to Plf's Rule 26 Expert Disclosures.Noble.120425 | 44 |

| | |
|---|---|
| Exh. 1 to State Defs.' Supp Report of Expert Rod Englert.011626 | 105 |
| Exh. 2 to Plf's Rule 26 Expert Disclosures.Holdaway.120425 | 10 |
| Exh. 3 to Plf's Rule 26 Expert Disclosures.O'Connor.120425 | 29 |
| Exh. A - Reynoso Depo. to Plf's Oppo to Defs.' MSJ.#65-2 | 51 |
| Exh. B - Sobaszek Depo.to Plf's Amended MIL #4.#119-2 | 9 |
| Exh. B (Sobaszek's Depo) to Plf's Oppo to Defs.' MSJ.#65-3 | 55 |
| Exh. C - Chapman's Depo.to Plf's Amended MIL #4.#119-3 | 8 |
| Exh. C (Irick's Depo) to Plf's Oppo to Defs.' MSJ.#65-4 | 50 |
| Exh. D (Chapman's Depo) to Plf's Oppo to Defs.' MSJ.#65-5 | 10 |
| Exh. E (Hubbs's Depo) to Plf's Oppo to Defs.' MSJ.#65-6 | 14 |
| Exh. F (City Defs.' Rsps. to RFAs) to Plf's Oppo to Defs. MSJ.#65-7 | 22 |
| Exh. G (Plf's Rsps. to City Defs.' 2nd Set of RFAs) to Plf's Oppo to Defs.' MSJ.#65-8 | 8 |
| Exh. H (Warehouse Surveillance Video) to Plf's Oppo to Defs.' MSJ.#65-9 | 1 |
| Exh. I (Reynoso BWC Video) to Plf's Oppo to Defs.' MSJ.#65-10 | 1 |
| Exh. J (Still Photos fr. Reynoso BWC) to Plf's Oppo to Defs.' MSJ.#65-11 | 84 |
| Exh. K (Sobaszek's BWC Video) to Plf's Oppo to Defs.' MSJ.#65-12 | 1 |
| Exh. L (Sobaszek's BWC Video) to Plf's Oppo to Defs.' MSJ.#65-13 | 148 |
| Exh.A - Irick Depo.to Plf's Amended MIL #4.#119-1 | 24 |
| George Gonzalez - Depo of Plf.Vol. 2.CONDENSED TRX | 66 |
| George Gonzalez - Depo of Plf.Vol. 2.FULL TEXT | 201 |
| Gomez Dec ISO City Defs.' MSJ.#62-3 | 3 |
| Holdaway Dec. to Plf's Oppo to Defs.' MSJ.#65-14 | 17 |
| Hubbs, Kenneth.CONDENSED TRANSCRIPT | 39 |
| Hubbs, Kenneth.FULL TEXT TRANSCRIPT | 98 |
| Joint Exhibit Stip.#102 | 51 |
| Joint Pretrial Stip re Exhibits.#92 | 57 |
| Joint Rule 26(f) Report.#29 | 16 |
| Joint Statement of the Case.#105 | 3 |
| Joint Status Report on Settlement.#115 | 2 |
| Joint Stip for Dismissal with Prejudice.#154 | 2 |
| Joint Stip for Extension of Time to File Mtn for Attys Fees.#156 | 3 |
| Joint Stip of the Facts.#104 | 2 |
| Joint Witness List.#103 | 11 |
| Joint Witness List.#93 | 12 |
| Jury Verdict Form (completed).#152 | 7 |
| Kornblau Dec ISO of City Defs.' MSJ.#62-2 | 3 |
| MIL #1.#71 | 15 |
| MIL #2.#72 | 16 |
| MIL #3.#73 | 13 |
| MIL #4.#74 | 13 |
| Minutes of Jury Trial - 1st Day.050826.#142 | 1 |
| Minutes of Jury Trial - 2nd Day.051126.#143 | 1 |
| Minutes of Jury Trial - 3rd Day.051226.#144 | 1 |
| Minutes of Jury Trial - 4th Day.051326.#145 | 1 |
| Mtn to Extend Discovery.#47 | 14 |
| Noble Dec. to Plf's Oppo to Defs.' MSJ.#65-15 | 51 |
| Not. of Amending Pretrial Docs.#114 | 3 |
| Not. of Lodging of [Proposed] Pretrial Conference Order.#107 | 31 |
| Not. of Lodging of Plf's [Proposed] Judgment.#157 | 2 |

| | |
|---|---|
| NOTICE OF MOTION AND MOTION | 29 |
| O'Connor Dec. to Plf's Oppo to Defs.' MSJ.#65-16 | 16 |
| O'Connor, Ryan 01-22-2026  FULL TRANSCRIPT w linked exhibits | 65 |
| Order on Plf's App for Writ of Habeas Corpus.#129-1 | 1 |
| Patrick Sobaszek Depo Transcript.CONDENSED | 42 |
| Patrick Sobaszek Depo Transcript.FULL TEXT | 109 |
| Plaintiff's Complaint.122424 | 38 |
| Plaintiff's Judgment.#165 | 8 |
| Plf's Addit'l Material Facts.to Plf's Oppo to Defs.' MSJ.#65-18 | 24 |
| Plf's First Amended Complaint.#20 | 40 |
| Plf's Memo of Ps&As in Oppo to City Defs.' MSJ.#65 | 26 |
| Plf's Objs. to Def.'s Supp. Expert Reports.#56 | 4 |
| Plf's Oppo to Defs.' Ex Parte App. to Modify SO.#58 | 11 |
| Plf's Oppo to Defs.' Ex Parte Mtn to Extend Discovery.#48 | 3 |
| Plf's Oppo to State Defs.' MTD FAC.#25 | 19 |
| Plf's Rsp. & Objs. to RFP to Expert Holdaway.011926 | 14 |
| Plf's Rsp. & Objs. to RFP to Expert Noble.011926 | 14 |
| Plf's Rsp. & Objs. to RFP to Expert O'Connor.011926 | 14 |
| Plf's Rule 26 Initial Expert Disclosures.120425 | 8 |
| Plf's Second Amended Complaint.#38 | 42 |
| Plf's Statement of Genuine Disputes.to Plf's Oppo to Defs.' MSJ.#65-17 | 19 |
| Sean Irick Depo Transcript.CONDENSED.072225 | 41 |
| Sean Irick Depo Transcript.FULL TEXT | 108 |
| Sincich ec ISO Plf's Oppo to Defs. MSJ.#65-1 | 5 |
| State Defs.' Answer to Plf's SAC.#39 | 21 |
| State Defs.' Brief Addressing Spec Rogs.#134 | 6 |
| State Defs.' Initial Disclosures.052125 | 10 |
| State Defs.' Memo of Contentions of Fact & Law.#83 | 19 |
| State Defs.' Not. of Mtn & MTD FAC.#23 | 22 |
| State Defs.' Not. of Withdrawal of MTD Plf's Complaint | 3 |
| State Defs.' Obj. to Plf's [Proposed] Judgment.#159 | 8 |
| State Defs.' Oppo to Plf's MIL #1.#80 | 6 |
| State Defs.' Oppo to Plf's MIL #1.#98 | 6 |
| State Defs.' Oppo to Plf's MIL #2.#81 | 6 |
| State Defs.' Oppo to Plf's MIL #3.#87 | 202 |
| State Defs.' Oppo to Plf's MIL #4.#82 | 5 |
| State Defs.' Proposed Voir Dire Questions.#100 | 6 |
| State Defs.' Reply to Plf's Oppo to MTD FAC | 9 |
| State Defs.' Supp Report of Expert Rod Englert.011626 | 6 |
| TX26-05-08 - George Gonzalez v. City of Hemet et al_ | 194 |
| TX26-05-11 - George Gonzalez v. City of Hemet et al_ | 260 |
| TX26-05-12 - George Gonzalez v. City of Hemet et al_ | 210 |
| TX26-05-13 - George Gonzalez v. City of Hemet et al_ | 11 |
| **TOTAL of 189 docs: 5,383** | **5383** |
| | |
| | |
| | |
| | |
| | |
| | |

# Exhibit 5

Page 1

**DANIEL HORSFORD et al., Plaintiffs and Appellants,**
**v.**
**THE BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY, Defendant and Respondent.**
**F051782**
**Court of Appeals of California, Fifth Appellate District**
**September 4, 2008**
**Not to be Published**

Appeal from a judgment of the Superior Court of Fresno County, No. 600186-1, Donald R. Franson, Jr., Judge.

Law Office of Dean B. Gordon, Dean B. Gordon; Murray & Associates, Lawrence D. Murray; Johnson & Beck, Mark D. Johnson; Law Offices of Richard M. Pearl and Richard M. Pearl for Plaintiffs and Appellants.

Murphy, Campbell, Guthrie & Alliston, George E. Murphy and Suzanne M. Nicholson for Defendant and Respondent.

**OPINION**

VARTABEDIAN, Acting P.J.

Header ends here.

This is an appeal from a judgment for attorney fees entered after remand on a previous appeal. We will conclude that in all respects but one the record shows that the trial court applied the correct legal standards in determining the amount to be awarded as attorney fees; as to those areas, appellants have not demonstrated that the court abused its discretion. In one important respect, however, the record does not permit us to determine whether the trial court applied the correct legal standard, and the resolution of that ambiguity has, potentially, a significant impact on the trial court's exercise of

discretion. Accordingly, we conditionally reverse the judgment.

**Facts and Procedural History**

The facts concerning the underlying action are set forth in detail in *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359 (*Horsford*). In short, *Horsford* was an employment discrimination action brought under the California Fair Employment and Housing Act, Government Code section 12900 et seq. (hereafter FEHA). Appellants Daniel Horsford, Richard Snow, and Steven King were prevailing plaintiffs at the trial of that action and, as such, were eligible for an award of reasonable attorney fees. (See Gov. Code, § 12965, subd. (b).) As one of several issues in *Horsford,* we determined the trial court had applied the wrong standards in awarding fees. (*Horsford, supra,* at pp. 395-396.) We reversed that portion of the judgment and "remanded for further proceedings consistent with the views expressed in this opinion." (*Id.* at p. 402.)

On remand, appellants submitted a revised and augmented motion for attorney fees. Respondent opposed the motion, contending appellants' fee claims were grossly exaggerated and that the fee motion should be denied in its entirety, or that the fees at least should be substantially less than requested. Appellants submitted another revised request, acknowledging some errors in the first request and contending that other objections were unfounded.

The trial judge had recused himself during posttrial proceedings. On remand the matter was assigned to Judge Donald R. Franson, Jr., for consideration of the new fee motion. After full review of the record, and after hearings on the fee motion and a motion for new trial, the court entered a corrected fee award of $3,229,709.50. In doing so, the court reduced the fees from the requested amount of approximately $10.4 million.



Horsford v. Board of Trustees of California State University, F051782 (Cal. App. 9/4/2008)(Cal. App., 2008)

Appellants filed a timely notice of appeal. They contend the court failed to follow our directions on remand, denied counsel a reasonable hourly fee, impermissibly reduced the number of hours to be compensated, inadequately compensated for the risk associated with prosecuting this case, and failed to award the correct statutory interest on the fee award.

## Discussion

### A. Standard for Award of Fees and Standard of Review on Appeal

The overarching theme of appellants' opening and reply briefs is that this court, in *Horsford,* said that attorney fees awarded under FEHA should "fully compensate" the prevailing plaintiffs' attorneys for time spent on the case. (See *Horsford, supra,* 132 Cal.App.4th at p. 395, quoting from *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133.) The problem with appellants' argument is that "full compensation" does not mean "payment at the top permissible rate for all the hours counsel actually devoted to the case," which seems to us a fair restatement of appellants' proposed standard for "full compensation."

Instead, the goal of an FEHA attorney fee award is, in the ordinary case, to compensate counsel at a reasonable rate for hours reasonably spent on the case. (*Horsford, supra,* 132 Cal.App.4th at p. 394.) To accomplish this purpose, the statute and case law commit to the broad discretion of the trial court the determination of a reasonable billing rate and the number of hours reasonably spent on the case. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095; see *Horsford, supra,* at p. 394.) The resulting "lodestar" fee, that is, the number of hours times the hourly rate, may then be adjusted, in the discretion of the trial court, to achieve fair, market-rate compensation of prevailing counsel. (See *Ketchum v. Moses, supra,* 24 Cal.4th at pp. 1137-1138; *Horsford, supra,* at p. 395.) The goal in the trial court is full

compensation of counsel "at the fair market value for the particular action." (*Ketchum v. Moses, supra,* at p. 1132.)

On appeal, we review the trial court's fee award for abuse of discretion. If the trial court has applied the correct legal standards, we determine only whether the trial court's action "`falls within the permissible range of options set by the legal criteria.'" (*Robbins v. Alibrandi* (2005) 127 Cal.App.4th 438, 452.) In such circumstances, "[t]he only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134.)[1]

### B. Reduction of Hours

Appellants challenge the trial court's reduction of hours claimed by attorneys Lawrence Murray and Dean Gordon and reduction of hours claimed for support staff in Gordon's office. Apart from appellants' erroneous contention, addressed above, that counsel were entitled to full compensation for all hours spent on the case, appellants assert two primary objections to the court's determination of hours reasonably spent on the litigation. Cognizant of the broad scope of the trial court's discretion and the narrow scope of our review, we briefly address each of the contentions.

#### 1. Inadequate Explanation of Reductions

Citing several federal court attorney fee decisions, appellants contend the trial court is not permitted to drastically reduce counsel's hours without providing sufficient details to permit counsel to respond to (i.e., contest) the award or to "discern what the court believes they should do differently when prosecuting discrimination cases in the future." Among the cases relied upon are *Ferland v. Conrad Credit Corp.* (9th Cir. 2001) 244 F.3d 1145,



1151, and *Gates v. Deukmejian* (9th Cir. 1992) 987 F.2d 1392, 1399.

No California cases impose a similar obligation on the trial court. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294 [no statement of decision required]; but see *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 622 [remanded for more detailed explanation of fee award where record made it unclear whether court had applied applicable legal standards].)

While the trial court is not required to provide a detailed accounting of its treatment of the hours claimed by plaintiffs' attorneys, it is equally true that greater, rather than less, specificity aids the appellate court in reviewing the trial court's fee award. In the present case, while the court explained its reductions of claimed hours in rather broad terms, the court's discussion for the most part is sufficiently focused to permit review of the award. The court expressly stated that it had reviewed all billing records, as well as the declaration filed in support of the fee claim. The court expressly enumerated those areas in which it found all hours noncompensable (recreating billing records, purely clerical functions, and redundant record review in summary judgment and appellate proceedings). And the court gave reasons for those areas in which it determined that counsels' time records failed to provide direct evidence of reasonable expenditure of time.

It is clear from the record that three factors were particularly important to the trial court in its evaluation of the hours claimed by counsel. First, most time records for work done prior to the original appeal were not contemporaneous records, but were reconstructed by counsel based on their calendars, their recollections, and their review of the pleadings and other documents in the case. As a result, the court was justified in rejecting these approximations when the entries seemed unjustified or implausible.[2] Second, where entries in the time records

provided only a vague description of counsel's activities, particularly for large blocks of time, there was no basis to determine whether the time was reasonably spent and, therefore, compensable.[3] Third, there were numerous instances in which, after review of respondent's objections to the fee claim, appellants acknowledged that the time records were incorrect, either as a result of duplicate time entries or typographical errors in data entry. Not only was the trial court permitted to reject counsel's explanations for these errors as not credible (or merely as inaccurate, given the reconstructed nature of many of the records), the court was permitted to conclude that the errors undermined the credibility of time claims where entries otherwise seemed unjustified or implausible.[4]

As we stated in our earlier opinion in this case, "the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." (*Horsford, supra,* 132 Cal.App.4th at p. 396.) That does not mean that the time records are sacrosanct, however; it merely means the trial court must examine the records and use them as the basis for its lodestar determination where the records are found accurate and reliable.[5] (See *ibid.*) In the present case, the trial court expressly stated that it had done this, and that its determination of hours reasonably spent was based on the court's "extensive and careful review and analysis of the bills submitted by each of the plaintiffs' attorneys...."

In one important respect, however, the trial court's order on attorney fees, while sufficiently particularized, is, nevertheless, ambiguous, as respondent's counsel candidly acknowledged at oral argument. Thus, with respect to "block billing" of the type described in footnote 3, *ante,* the order says that such billing made it impossible to determine from the billing records whether the hours were spent reasonably and productively and were, therefore, "compensable." It appears vague



block billing was a problem in numerous areas, including discovery, "consultation" among attorneys, trial preparation, trial, and appeal.

We cannot determine from the order what steps the court took after coming to this conclusion, however. If, on the one hand, the trial court *excluded* the entire block of time in each instance of block billing, the court would have erred. If, on the other hand, the court *adjusted* the hours claimed (for example, by determining the amount of time that reasonably could have been spent overall on the type of activity reflected in the block billing, such as "trial prep" (see fn. 3, *ante*)), the court's statement that it had done so would adequately reflect its exercise of discretion.

This case involved a fee claim based on almost 10,000 hours of attorney time; a rather significant amount of that time is recorded in the block-billing format. (About 4,300 hours were disallowed for various reasons.) In fairness to the parties and to the trial court, we believe we must conditionally reverse this matter for clarification of this issue by the trial court. If it turns out the trial court did adjust, and not exclude, the block-billing hours, we cannot conclude the amount of the fee award was an abuse of discretion even though we may have made a higher award if the matter was before us in the first instance. If it turns out the trial court excluded all block-billed hours whenever the court determined the billing record did not directly permit a reasonableness determination, then on remand the court must exercise its discretion to award reasonable fees for the activities reflected in the block billings.[6] Our disposition of this appeal reflects this conditional determination. Except to the extent just stated, we conclude the court's "Order on Motion for Statutory Attorneys' Fees" was sufficiently specific under California law.

2. No Reasonable Basis for Reductions

Appellants contend there is no "reasonable basis" in the record for the trial court's reduction of counsel's claims for hours dedicated to this case, including the hours of paralegal staff. As discussed generally in the previous section, we conclude the court's reasoning is supported by the record. We briefly discuss appellants' specific claims concerning the reasonable basis for the trial court's conclusions.

Appellants contend the trial court should be limited to those reductions proposed in respondent's points and authorities in opposition to the fee claim. No California cases support such a limitation. (Appellants rely on *Cunningham v. City of McKeesport* (3d Cir. 1986) 807 F.2d 49, 50, in which the defendants filed no opposition at all to the plaintiff's fee request.)

We find no basis to impose a duty on opposing parties to quantify each objection or to impose on the trial court a limitation on its exercise of discretion based on such quantification. One example will demonstrate our reasoning. In this case, one disputed area was whether appellants needed three attorneys every day at trial or in attendance at strategy meetings. An opposition claim raising this issue in general terms would be sufficient.[7] The trial court would be permitted to adjust a claim for this reason whether or not it was raised by the opposition, since the trial court may exercise its own judgment about the reasonable necessity of legal services. (*Ketchum v. Moses, supra,* 24 Cal.4th at pp. 1137-1138.)

In the present case, respondent extensively objected to appellants' fee claim based both on quantified examples and on general categories. Respondent requested, inter alia, reduction of the claimed lodestar fee of $4.8 million by $1.1 million "for non-compensable billings" based on individually identified time-record entries. It then requested that the remaining lodestar amount be "reduced by an across-the-board



percentage of anywhere from one-half to two-thirds to reflect a `reasonable fee' for counsel had they managed this case with even a bare minimum of efficiency." We conclude the trial court appropriately considered the broader issues of inefficiency and duplication of effort by counsel.

Appellants find it "puzzling" that the trial court's reduction of allowable hours in most instances approximated the reductions proposed by respondent even though the court rejected "most" of respondent's criticisms as unfair. Viewed in context, there is no inconsistency in the trial court's conclusions.

The single most striking feature of respondent's trial court opposition to appellants' fee request is its intemperate tone. The opposition in various places accuses appellants' counsel of "shocking" "fraud" by "unscrupulous attorneys" who "seek to line their own pockets by artificially inflating their fee requests." Respondent concluded: "In the end, the egregiousness and sheer audacity of the fees claimed by plaintiffs' counsel warrants this court denying their fee request altogether" as a "sanction" for "their wildly inflated fee request."

While the trial court found that counsel's time records demonstrated "[e]xcessive billing, sometime flagrant," it rejected respondent's criticism of counsel's "numbers, efforts, veracity, and talent": "Some of the criticism is fair, most not." The court concluded: "Whatever the criticism, however, the fact remains that plaintiffs and their attorneys appeared for trial, day after day, and secured a very large jury award." The court was not required to ignore what it perceived as excessive time claims just because it rejected respondent's characterization of that excess as intentional or fraudulent.

### C. Reduction of Hourly Fee

The trial court awarded appellants' counsel fees based on a lower hourly rate than counsel requested. Appellants contend their evidence supported higher hourly awards, respondent did not contest this evidence, and the trial court was required, as a matter of law under the circumstances, to award the hourly fee established by the evidence.

The hourly rates awarded by the trial court reflected a reasoned exercise of discretion. They were within the range of fees suggested by some of appellants' evidence. In addition, the court stated it was relying on its own knowledge of fees locally and in the San Francisco area (where Murray normally practiced) and on findings by the original trial judge. These were permissible factors upon which to base the hourly rates. (See *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1096.)

Appellants contend, however, that where uncontradicted evidence establishes that counsel's claimed rates are reasonable, it is an abuse of discretion for the court to award a different hourly fee. We reject this premise as inconsistent with the overarching responsibility of the trial court to exercise its discretion in the award of a reasonable fee.

It is true, as appellants assert, that several Court of Appeal cases seem to support their proposed rule. (See *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 156; *Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682.)

In *Graciano,* the trial court set the hourly fee "solely on an unrelated local rule capping expert witness hourly fees, disregard[ing] unopposed declarations" in support of a higher hourly fee. (*Graciano v. Robinson Ford Sales, Inc., supra,* 144 Cal.App.4th at p. 155.) In light of the trial court's application of the wrong legal standard for determining the hourly rate, the *Graciano* court concluded that appellant's "unrebutted declarations established the prevailing rates in the region



for attorneys with comparable skills and expertise, and her evidence compelled a finding that the requested hourly rates were within the reasonable rates for purposes of setting the base lodestar amount." (*Id.* at p. 156.) We believe this is dictum. The holding of the case was that the trial court's arbitrary reliance on the local expert witness rule was an abuse of discretion. (*Ibid.*)

In *Hadley v. Krepel, supra,* 167 Cal.App.3d at page 682, appellant, according to the court, contended the trial court "ignored *uncontradicted* evidence contained in the cost bill that [appellant's] actual fees and costs were both reasonable and necessary." The appellate court, while finding that the record did not demonstrate "passion or prejudice" on the part of the trial court, concluded: "[W]e suspect *something* was amiss. The only explanation we can divine for the meager award is the trial judge's unrealistic view of what constitutes a reasonable value for legal services. An award of attorney's fees and costs must be measured by the economics of the times." (*Id.* at pp. 686-687, original italics.)

In both of these cases, the appellate court remanded for reconsideration of the attorney fee award, in part, because the hourly fee award was far below prevailing reasonable rates. That is not the case in the matter before us. To the extent these cases stand for the proposition that the trial court is required to accept counsel's claimed hourly rates, we disagree.

The other case on which appellants primarily rely is *Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 783. That case is inapposite because the trial court had exercised its discretion to award fees, in essence, at the hourly rate requested by the prevailing party and the question on appeal was whether the award was too high. The appellate court found that "the hourly rates allowed by the trial court are within the range of reasonable

rates charged by and judicially awarded comparable attorneys for comparable work." (*Ibid.*) The case neither holds nor implies that the trial court *must* award fees at the hourly rate requested by the prevailing party.

Finally, we note that there was evidence submitted by appellants' counsel that supported the court's determination of the hourly rate, namely, counsel's statements that they charged, during a large portion of the time in question, the exact rate awarded by the trial court. Counsel argued that their hourly rate at the time of the initial fee motion, rather than the rate at the time services were rendered, should be used. The trial court, however, properly exercised its discretion to use the rates effective at the time services were rendered. Appellants have not shown that the trial court abused its discretion in setting the hourly rates upon which the lodestar was based.

### D. The Lodestar Multiplier

As noted, the lodestar is computed by multiplying the reasonable number of hours spent by the prevailing parties' counsel, by the reasonable hourly rate for such services. However, "the lodestar figure may be increased by application of a fee enhancement, or reduced as appropriate, after the trial court has considered other factors concerning the lawsuit, including the contingent nature of the fee award." (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1134.) The goal of such adjustment is to ensure a fair and just award that effectuates the purposes of the statute under which the prevailing party has sued, in this case the FEHA. (*Horsford, supra,* 132 Cal.App.4th at p. 394.) That act depends heavily on private litigation for its enforcement, and such litigation is usually prosecuted by plaintiffs whose attorneys are paid only if the plaintiff prevails; the award of attorneys fees in such cases, as a general matter, should be adequate to encourage attorneys to undertake such



litigation in potentially meritorious cases. (*Id.* at p. 395.)

In this case, the lower court awarded a "blended" multiplier of 1.5 for services performed by attorneys Murray, Gordon, Johnson, and Pearl through and including the first appeal. The court stated that it had considered the "contingency and delay" factors discussed in *Ketchum v. Moses, supra,* 24 Cal.4th at page 1134, and in our previous opinion. (See *Horsford, supra,* 132 Cal.App.4th at p. 400.) We interpret the court's use of the term "blended" multiplier to imply both that the court recognized some services were performed longer ago than others and that a different balancing of the factors may have been applicable to the trial and appellate phases.

Appellants contend the court abused its discretion in selecting the 1.5 multiplier because the court stated it had considered, as part of its exercise of discretion, that some of counsel's "bills have been clearly overstated, as defendant argues, and plaintiffs admitted to some. This has been taken into consideration by the court in determining an appropriate multiplier." They contend the court already had accounted for any such discrepancies in reducing the number of hours allowed in the lodestar calculation and that considering it again for multiplier purposes constitutes prohibited "double counting" of the deficiency. While recognizing that the trial court considered a range of factors in selecting the multiplier, appellants contend that, "[h]ad the Court not double-counted, it would have applied a significantly higher enhancement." They reach this conclusion by enumerating all of the aspects of the case that would lead to a higher multiplier.

We do not perceive any significant "double counting." In reducing the allowable hours, the trial court was attempting, based on all the available information, to reach totals of hours actually and reasonably spent

on the case by each counsel. In selecting the multiplier, the court was engaged in a much more generalized evaluation of a fair compensatory award, without an attempt to quantify each of the various factors. (See *Ketchum v. Moses, supra,* 24 Cal.4th at p. 1134.) Indeed, quantification at that stage would be virtually impossible, which is why the Supreme Court has emphasized the necessity for an objectively reasonable lodestar as a starting point in the fee determination. (See *ibid.*) In any event, consideration of counsel's billing practices as a "quality of representation" or related factor is conceptually different from reducing particular claimed hours as unreasonably spent. (See *Serrano v. Unruh* (1982) 32 Cal.3d 621, 635.) Appellants have not established an abuse of the trial court's discretion.

### E. Date of Commencement of Interest on Attorney Fee Award

Appellants expressly disclaimed the "delay" factor in arguing for a lodestar multiplier in the trial court. They argued instead that they should receive statutory interest on counsel's trial-phase fees beginning on the original judgment date and on the appellate phase fees beginning when their entitlement to fees was adjudicated in the appellate opinion. We disagree.

It is clear the trial court did not determine, expressly or impliedly, that it would award interest on the fee award as part of its selection of a lodestar multiplier: At the hearing on appellants' motion for new trial on the attorney fee award, the court had already decided on the multiplier after the first hearing but treated the interest issue as undecided. It did not increase the multiplier after it determined that statutory interest commenced only on the date of its award of fees after remand from this court. Accordingly, we reject respondent's contention that the interest issue was subsumed in the multiplier determination.



Nevertheless, it is clear under settled law that the trial court awarded interest from the correct date. There are two components of our determination.

First, an appeal can result in a partial reversal. Such a reversal has the same effect, as to the portion of the judgment reversed, as any other reversal. (See generally 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 774, 777, pp. 802, 805-806.) While a partial reversal is not always appropriate, in this case the contested judgment for attorney fees was severable and we treated it as severable in our disposition of the prior appeal. (See *id.* at § 202, p. 255; *Horsford, supra,* 132 Cal.App.4th at p. 402.) In fact, the attorney fee order had been the basis of a separate notice of appeal and later consolidated with the appeal on the merits. (See *id.* at p. 366.)

Second, under the rule of *Stockton Theatres, Inc. v. Palermo* (1961) 55 Cal.2d 439, 446, interest on a judgment after reversal on appeal accrues from the date of the new judgment; interest on a judgment modified on appeal, whether modified up or down, accrues from the date of the original, preappeal judgment. Appellants contend the disposition in the prior appeal was a modification of the judgment because their fundamental entitlement to attorney fees was not altered and a portion of the fee was not reversed. (See *Horsford, supra,* 132 Cal.App.4th at p. 396, fn. 10.) However, neither entitlement to fees nor the portion of fees not affected by the appeal was an issue on appeal; the issue was the amount of the award to appellants for attorney fees. The disposition was a reversal with directions, investing the trial court with the power and obligation to determine that matter de novo. The situation is no different than any other in which a party obtains on appeal the right to a new trial, either on all or some of the issues.

In some FEHA cases, the issue of commencement of postjudgment interest is relatively unimportant: as a personal injury cause of action, the FEHA claim accrues prejudgment interest from the date of the injury. (See *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976.) Where the defendant is a governmental entity, however, no prejudgment interest may be awarded. (Civ. Code, § 3291.) Thus, whether a plaintiff in such a case obtains a reversal on the merits or on some severable issue, the plaintiff is not compensated for the delay in payment for his or her injury.

The trial court was correct in rejecting appellants' interest claims in the present case.

## Disposition

The order for attorney fees is conditionally reversed and is remanded for further proceedings. Upon remand, the trial court shall determine whether block-billing hours, as described above, were excluded from the fee award. If the court so determines, the court must permit the parties to make further submissions concerning the block-billing hours and, after hearing, the court shall enter a new order for attorney fees, having exercised its judicial discretion in adjusting the block-billing hours to reflect the reasonable compensation for the services in question. However, if the trial court determines that it did not exclude block-billing hours and that it already has exercised its discretion to adjust those hours, the trial court shall reinstate its previous order, which shall become the final order on attorney fees. Each party shall bear its own costs on appeal. The trial court shall award attorney fees on appeal to appellants if proceedings on remand result in an increase in the original order for fees.

WE CONCUR:

WISEMAN, J.

GOMES, J.

--------------



Notes:

1. It often is stated in the cases that the basis for application of the abuse of discretion standard of review is the fact that the trial judge is particularly capable of evaluating the services provided in his or her own courtroom. In this case, the judge making the attorney fee order on remand was not the trial judge. Nevertheless, it has long been the law that a substitute judge in posttrial proceedings exercises the same discretion as the original judge. (See, e.g., *Churchill v. Flournoy* (1899) 127 Cal. 355, 362; *Kershner v. Morgali* (1957) 152 Cal.App.2d 884, 885.) Here, the court stated it had relied, in part, on the observations of the original trial judge contained in the earlier attorney fee proceeding.

2. This is not to say that contemporaneous time records are required as part of every attorney fee application; they are not. (See *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 270-272.) Still, the trial court is entitled to evaluate the records that are submitted and is not required to treat all records as equally informative or accurate. (See, e.g., *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1096, fn. 4.)

3. For example, for July 22, 23 and 24, 2000, Murray claimed 10 hours, 10.5 hours, and 5 hours, respectively, for "trial prep — Shell." Similarly, on July 16 and 17, 2000, Gordon claimed 12 hours and 12.5 hours for "trial prep." While one can imagine this number of hours actually spent on trial preparation on a given day, it is, as the trial court concluded, not possible to determine from this type of "block billing" whether the hours were spent productively and reasonably.

4. The trial court cited an example in which an initial claim of 2.2 hours for preparation of a 12-line motion to exclude witnesses was reduced to .2 hours after respondent pointed out the unreasonableness of the initial claim. At the hearing on the motion for attorney fees, the court also referred to claims for two hours "or even longer" for "boilerplate" motions.

5. At the hearing on the attorney fee motion, the court stated: "I'm not accusing or even buying into the idea that any of you [appellants' counsel] are dishonest or doing anything. I truly believe reading the record that everybody put in the time that they say they did." Nothing in the trial court's statement implies its wholesale acceptance of the time claims. In fact, the court's next sentence was: "The question is, is it efficient, duplicative in that area?" Indeed, appellants' reply to respondent's objections acknowledged that *some* time entries were incorrect — i.e., that counsel did not "put in the time" originally claimed and, at the hearing on the motion, Murray acknowledged that some of the specific entries were approximations, although he said the overall time claims were accurate.

6. Given the magnitude of the present case, the court might find it useful to require respondents to submit a billing summary for discovery, trial preparation, trial, and the first appeal, redacted so the summary would not disclose privileged information. While the hours and hourly rates of opposing counsel would not be dispositive of plaintiffs' fee claims, such information could well help place plaintiffs' claims in some perspective. (See *Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1251.) At the hearing in this case, Judge Franson posed the question whether respondent's failure to disclose this information, in itself, supported an inference that plaintiffs' original fee claim was not unduly high. The parties did not answer that question nor raise it on appeal. We do not decide the matter; we merely point out the possible usefulness of opposing party's legal bills in evaluating the number of hours plaintiffs' counsel say was reasonably required to litigate this case. (See generally Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar, 2d ed. 2007 Supp.) § 14.36, pp. 444.1-444.2.)



Horsford v. Board of Trustees of California State University, F051782 (Cal. App. 9/4/2008) (Cal. App., 2008)

7. As with a fee claimant's time records, objections to the fee claim might be more persuasive the more specific they are, but there is no requirement of specificity for objections to be legally sufficient to permit consideration by the trial court.

---------------



# Exhibit 6

**FILED**
Superior Court of California
County of Los Angeles

**JAN 20 2023**

Sherri R. Carter, Executive Officer/Clerk of Court

By: S. Barrera, Deputy

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

### DEPARTMENT 89

### RULING ON SUBMITTED MATTER

| | |
|---|---|
| ANDREW RUDNICKI, | Case No: BC630158 |
| Plaintiff, | |
| v. | |
| FARMERS INSURANCE EXCHANGE, *et al.*, | Hearing Date: November 30, 2022 |
| Defendants. | |

**Plaintiff's Andrew Rudnicki's motion for attorney fees is GRANTED in the reduced amount of $2,266,704.00, inclusive of a modest multiplier of 1.1.**

On August 10, 2016, Plaintiff Andrew Rudnicki ("Plaintiff") initiated this wrongful termination action against Defendants Farmers Insurance Exchange, Farmers Group, Inc., and other Farmers-related entities.

On December 14, 2021, the jury returned a verdict in favor of Plaintiff, awarding him $5,413,344.00 in compensatory damages. The jury found that Plaintiff was employed by Defendants Farmers Insurance Exchange and Farmers Group, Inc. (collectively, "Defendants") and that Defendants retaliated against Plaintiff and terminated Plaintiff in violation of public policy. On December 16, 2021, the jury awarded Plaintiff $75,000,000.00 in punitive damages against each defendant.

On March 17, 2022, judgment was entered against Defendants.

On April 1, 2022, Plaintiff filed his memorandum of costs.

On May 27, 2022, the Court denied Defendants' Motion for Judgment Notwithstanding the Verdict. On the same day, the Court also granted in part Defendants'

Page 1 of 11

Motion for New Trial on the issue of punitive damages, unless Plaintiff accepted a remittitur of the punitive damages in the amount of $18,945,000 (3.5 to 1 ratio), jointly and severally, against Defendants.

On June 9, 2022, Plaintiff filed a notice of acceptance of remittitur of punitive damages.

On June 28, 2022, the Court granted Defendants' Motion to Tax Costs in part, awarding Plaintiff costs in the reduced amount of $181,135.76.

Now under consideration is Plaintiff's motion for attorney fees, which was filed on September 7, 2022. Plaintiff moves pursuant to Government Code § 12965(c)(6) for an award of attorney fees in the total amount of $6,663,815.00, inclusive of a lodestar multiplier of 2.0, on the ground that the requested attorney fees are reasonable, and the lodestar multiplier is warranted. Defendants oppose Plaintiff's motion.

## Legal Standard

A prevailing party is entitled to reasonable attorney fees in addition to other costs. (CCP § 1033.5(a)(10).) "Prevailing party" includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. (CCP § 1032(a)(4).) In all other circumstances, the "prevailing party" shall be as determined by the court. (*Id.*)

The fee setting inquiry ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal. 4th 1084, 1095.) "The lodestar figure may then be adjusted, based on consideration of facts specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Gorman v. Tassajara Dev. Corp.* (2008) 162 Cal.App.4th 770, 774.)

The prevailing party bears the burden of proof and the amount is left to the trial court's sound discretion. (*Christian Research Institute v. Alnor* (2008) 165 Cal. App. 4th 1315, 1320.) "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635.)

## Discussion

### 1. Prevailing Party

"Because FEHA does not define the term 'prevailing party,' prevailing party status is determined in this context based on an evaluation of whether a party prevailed on a practical level, and the trial court's decision should be affirmed on appeal absent an abuse of discretion. In applying this standard, the trial court must identify the prevailing party "by analyzing the extent to which each party has realized its litigation objectives." (*Bustos v. Global P.E.T., Inc.* (2017) 19 Cal.App.5th 558, 562–563 [internal citations omitted].)

The Plaintiff achieved the relief sought in monetary recovery, therefore, the Court finds that Plaintiff is the prevailing party in this action.

## 2. Reasonableness of Requested Attorney Fees

Plaintiff seeks a lodestar attorney fee award of $3,331,907.50. Plaintiff claims that his requested attorney fees award is reasonable in both the hourly rates of his attorneys as well as the hours spent litigating this action.

"Even after determining that a party is entitled to fees because it 'prevailed,' the trial court must still determine what amount of fees would be 'reasonable' in light of the relative extent or degree of the party's success in obtaining the results sought." (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 247.) It has long been settled in California that the experienced trial judge is in the best position to determine the reasonableness of a request for attorney fees. (*Serrano v. Priest* (1977) 20 Cal. 3d 25, 49.) While the starting point is the "lodestar calculation," other considerations come into play, including the nature and difficulty of the case, the amount of money at issue, the skill required and the success or failure of the lawyers. (*EnPaim, LLC v. Teitler* (2008) 162 Cal. App. 4th 770, 774.)

The Court shall address the reasonableness of the hourly rates and of the hours for work performed in turn.

### a. Reasonableness of Hourly Rate

Defendants object to the hourly rates of Plaintiff's counsel. (Opposition at pp. 10-11.)

Here, Plaintiff presents the following hourly rates for each counsel associated with this case: (1) $1,425.00 for Shegerian; (2) $1,100.00 for Nguyen; (3) $1,000.00 for Reed; (4) $1,000.00 for McDonell; (5) $900.00 for Counsel Madjidi; (6) $850.00 for Counsel Rodriguez; (7) $825.00 for Counsel Lim; (8) $750.00 for Counsel Gbewonyo; (9) $750.00 for Avagyan; (10) $700 for Livshits; (11) $625.00 for David; and (12) $550.00 for Lynch. (See Motion at pg. 13; Shegerian Decl. ¶¶ 7-8, 24-27; Nguyen Decl. ¶ 10;

Reed Decl. ¶ 4; Leovshits Decl. ¶ 3; Madjidi Decl. ¶ 11; Rodriguez Decl. ¶ 3; Lim Decl. ¶ 3.)

In support of these rates, Plaintiff first relies on market noncontingent rates from partners, associates, and law clerks of a few large sized law firms. (Motion at pp. 10-11.) However, the usage of this data is misleading because by presenting hourly rates from only large sized firms, it does not accurately represent comparable legal services in the Los Angeles area, which should at least include mid-sized firms. (See *Ketchum, supra*, 24 Cal.4th at 1132.) The Court notes that the Shegerian firm falls in the category of a larger small sized firm. Second, Plaintiff relies on prior hourly rates that have been found reasonable by other courts within Los Angeles County. (Motion at pp. 11-12.) Plaintiff claims that "Attorneys Shegerian, Nguyen, Lim, Livshits, and David have court-approved hourly rates of $1,300, $1,000, $750, $600, and $500 respectively." (Motion at pg. 12; Exh. 21.) Plaintiff's evidence suggests that Mr. Shegerian's hourly rate of $1,200 has been approved since 2020, and before then, his hourly rates of $1,100 was approved in four instances. (Shegerian Decl. ¶¶ 7.) Third, Plaintiff presents evidence to show that hourly rates exceeding $1,000 has become common place since the early and mid-2010s. (Motion at pg. 12; Exhs. 23-26.) And fourth, Plaintiff relies on declarations from long practicing and experienced attorneys Nicholas Rowley, Gary A. Dordick, and Arash Homampour who all assert that the requested rates are reasonable. (Rowley Decl. ¶¶ 11, 18-19; Dordick Decl. ¶ 9; Homampour Decl. ¶¶ 18-22.)

In opposition, Defendants argue that the fees of attorneys Shegerian, Nguyen, Reed and McDonell are excessively high and point out that more than 50% of the hours spent by all attorneys were billed by partners or senior associates, which suggest an improper delegation of tasks performed. (Opposition at pg. 10.) Defendants also argue that the hourly rates should be reduced to represent historical billing rates because Plaintiff repeatedly delayed trial. (Opposition at pp. 10-11.) Defendants propose the following rates: "Mr. Shegerian ($1,000), Mr. Nguyen ($800), Mr. Reed ($700), Mr. Livshits ($325), Ms. Madjidi ($600), Mr. Lim ($600), and Mr. David ($250)." (Opposition at pg. 11.) Furthermore, Defendants rely on prior rulings by various judges that reduced the hourly rates proposed by Plaintiff's counsel. (Opposition, RJN Exhs. 1-6.) Additionally, Defendants contend that the Court should decline awarding any fees associated with attorneys McDonnell, Gibewonyo, Avagyan, and Lynch because they did not submit a declaration or evidence regarding the reasonableness of their rates. (Opposition at pg. 11.) However, support for their rates are found in Mr. Shegerian's declaration. (See Shegerian Decl. ¶¶ 24-27.) Defendants fail to cite to any legal authority that a declaration by a managing partner is insufficient to attest to the experience of the timekeepers, who are his associates or associated counsel.

The Court finds that the hourly rates requested for each attorney excessive. As noted above, Plaintiff has failed to present sufficient evidence to establish comparable rates of the community. (See *Ketchum, supra*, 24 Cal.4th at 1132.) The hourly rate should

also represent a blend of historical billing rate based on reasonable fees at the time the work was performed and current rate since the case spanned 6 years. Based on the Court's evaluation of the attorneys' skills and experience, this Court finds the following rates to be reasonable:

| Name of Counsel | Yr Admitted | Hourly Rate requested | Adjusted Hourly rate |
|---|---|---|---|
| Shegarian | 1990 | $1,425 | $1050 |
| Nguyen | 2008 | $1,100 | $825 |
| Reed | 2008 | $1,000 | $700 |
| Livshits | 2020 | $700 | $400 (blended rate) |
| Madjidi | 2014 | $900 | $550 |
| Rodriguez | 2015 | $850 | $550 |
| Lim | 2016 | $825 | $600 |
| Mcdonnell | 1992 | $1000 | $700 |
| Gbewonyo | 2017 | $750 | $450 |
| Avagyan | 2013 | $750 | $500 |
| David | 2021 | $625 | $225 (blended rate) |
| Lynch | 2021 | $550 | $250 |
| Total | -- | -- | -- |

**b.** Reasonableness of Hours for Actual Work Performed

Defendants also object to the hours worked by Plaintiff's counsel.

Although detailed time records are not required, California Courts have expressed a preference for contemporaneous billing and an explanation of work. (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.) "Of course, the attorney's testimony must be based on the attorney's personal knowledge of the time spent and fees incurred. (Evid. Code, § 702, subd. (a) ['the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter'].) Still, precise calculations are not required; fair approximations based on personal knowledge will suffice." (*Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269.)

Page 5 of 11

Here, Plaintiff claims that 3,374 hours of attorney time was spent on litigating this action since its inception and has submitted documentation supporting the claimed number of hours worked. (Motion at pg. 13; Shegerian Decl. ¶¶ 7-8, 24-27, Exhs. 1, 8-12; Nguyen Decl. ¶ 10, Exh. 2; Reed Decl. ¶ 4, Exh. 3; Leovshits Decl. ¶ 3, Exh. 4; Madjidi Decl. ¶ 11, Exh. 5; Rodriguez Decl. ¶ 3, Exh. 6; Lim Decl. ¶ 3, Exh. 7.)

In opposition, Defendants argue that the total lodestar fee request should be reduced for several reasons. The Court shall address each in turn.

      i.    Limited Success

Defendants argue that even if Plaintiff were entitled to recover attorney fees, Plaintiff should not recover on claims where he achieved limited success. (Opposition at pg. 5.)

"[U]nder state law as well as federal law, a reduced fee award is appropriate when a claimant achieves only limited success" (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 249.) However, where a successful claim is factually related or closely intertwined with claims that were unsuccessfully litigated, then fees are not reduced. (see *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 431.)

Here, Defendants assert that Plaintiff achieved limited success because he only prevailed on his claim for FEHA retaliation, which was not factually intertwined with his claims for breach of contract, FEHA gender, age and disability discrimination claims. (Opposition at pp. 5-6.) Defendants argue that Plaintiff is unable to show the claims involved a common set of facts or legal theories. (Opposition at pg. 6, relying on *Harman, v. City and Cnty. Of San Francisco* (2007) 158 Cal. App.4th 407, 417.) They further assert that retaliation claim involved a legal theory that was separate and apart from the one relied upon in his discrimination claims, and during a six-week trial, testimony regarding Plaintiff's retaliation claim spanned only a number of days. (Opposition at pg. 6.) Thus, Defendants requested the fee award be reduced by at least 50%. (*Id.*)

Plaintiff argues that Defendants proposed fee reduction based on limited success is inappropriate. First, Plaintiff contends that a blanket reduction for unsuccessful claims is disallowed. (Reply at pg. 3, relying on *Hogar Dulce Hogar v. Cmty. Dev. Com. of City of Escondido* (2007) 157 Cal.App.4th 1358, 1369 ["the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."].) Second, Plaintiff asserts that all the claims arose from the same course of conduct that Defendants carried out during Plaintiff's last year of employment, and as a result, all of the claims were factually intertwined. (Reply at pp. 3-4.) Third, Plaintiff asserts that he ultimately prevailed and achieved the relief that he sought in the form of general, special and punitive damages. (Reply at pg. 4.)

The Court finds that Defendants suggested blanket reduction of 50% inappropriate.  Apportionment is permissible where the opposing party has identified work that was "chargeable only to her unsuccessful causes of action." (See *Cordero-Sacks v. Housing Authority of City of Los Angeles* (2011) 200 Cal.App.4th 1267, 1286.) The Court rejects Defendants' contention that Plaintiff's claims are not factually related. Plaintiff alleged he was retaliated against "for seeking to exercise rights guaranteed under FEHA and/or assisting and/or participating in an investigation." (Opposition at pg. 6; Compl. ¶ 21.) "[E]mployment discrimination cases, by their very nature, involve several causes of action arising from the same set of facts." (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1251.)  Further, the Defendants' reasons for terminating Plaintiff are the same, irrespective of the various legal theories or claims brought by Plaintiff for recovery.  Much of the trial focused on whether those reasons were pretextual.  "[T}he liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not" because of the overlapping nature of FEHA claims. (See *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133.

### ii.    Duplicative Billing

Next, Defendant argues that Plaintiff's case was overstaffed with attorneys and billing entries evidence duplicative billing. (Opposition at pp. 7-8.)

Inefficient and duplicative efforts by counsel are not to be compensated. (*Ketchum v. Moses* (2001) 24 Cal. 4th 1122, 1132 (2001); *Premier Medical Mgmt. Systems, Inc. v. Calfornia Ins. Guarantee Assn.* (2008) 163 Cal. App. 4tl 550, 556 ["padded" fee bills are not to be compensated].) However, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." (*Etcheson v. FCA US LLC* (2018) 30 Cal. App. 5th 831, 848.)

Here, Defendants reason that no explanation has been provided as to why this case necessitated 12 attorneys to prosecute and argue that the Court should exercise its discretion in reducing fees on this ground. (Opposition at pg. 7, relying on *Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 271 and *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 39.) Defendants further argue that duplicative billing was evident during trial where several of Plaintiff's attorneys were present during trial but did not meaningfully participate. (Opposition at pp. 7-8.) This was acknowledged by the Court on the record. (Opposition; Moss Decl., Exh. 3 (Nov. 18, 2021 Tr. at pp. 233:20-234:22 ["If there is an attorney's fees motion, I'm not giving you five people sitting here all day.") Defendants further point to other instances of duplicative/excessive billing as it related to the depositions of Suzanne Elliot and Alfred Bottalico where more than one attorney would be present, but their participation was limited or nonexistent. (Opposition at pg. 8.)

In reply, Plaintiff argues that Defendants fail to show any time entries were necessarily duplicative or that the trial time sought by multiple attorneys was excessive. (Reply at pg. 5.) The Court finds this argument to be unpersuasive. Excessive billing was evident from the fact that several attorneys billed for days spent at trial when they were not all meaningfully contributing to the prosecution of this case each trial day. Further, the Court clearly indicated on the record that it found the presence of several attorneys during trial to be unnecessary. (Moss Decl., Exh. 3 (Nov. 18, 2021 Tr. at pp. 233:20-234:22.) Moreover, the Court is not going to award fees for attorneys who sat in depositions to merely observe. (See Moss Decl., Exh. 1 at pp. 8:1-11, 129:8-15, 189:1-4 and Exh. 2 at pp. 38:9-10, 52:25-53:1.)

The Court finds an across-the-board reduction of 10% is appropriate to account for the overstaffing and the instances of duplicative/excessive billing.

### iii.    Fees for Travel Time

Defendants generally object to the fees associated with travel time. (Opposition at pg. 9.) They claim that stand-alone travel entries account for 92.8 hours and that 1,194.4 hours are block-billed to include some travel. (*Id.*) Defendants asserts that the entries that state "travel to and from trial and trial" amount to block-billing because they were billed between 9.1 to 10.9 hours and trial was typically 8 hours. (*Id.*) Thus, Defendants assert that Plaintiff's counsels were each billing 1-2 hours for travel for each day of trial.

In reply, Plaintiff argues that the time spent traveling was necessary for trial, depositions (in and out-of-state) and other hearings. (Reply at pg. 6.) The Court agrees.

The Court's across-the-board- reduction of 10% would also cover any excessive travel time, to the extent there were any.

### Unnecessary Discovery

Furthermore, Defendants argue that Plaintiff should not be rewarded for his attorneys' inefficient method of discovery, which was evident from the fact that 30 depositions were conducted, and of the people deposed fewer than half were called as witnesses during trial. (Opposition at pg. 9.) While Defendants generally complain about Plaintiff's discovery, they failed to meet their burden in identifying the depositions that were improper or unnecessary. Thus, without any substantiating evidence, Defendants' objections to the time spent on discovery merely amounts to speculation. (See *Etcheson, supra,* 30 Cal. App. 5th at 848.)

iv.    Exclusion of Non-Attorney Work

Lastly, Defendants argue that the non-attorney work conducted by attorneys Livshits pre-June 24, 2020 and by David pre-November 24, 2021 should be omitted from the fee award because they had not been admitted into the California State Bar prior to those dates. (Opposition at pp. 9.) Thus, Mr. Livshits billed 216.9 hours and Mr. David billed 33 hours, respectively, prior to their admission. (*Id.*)

In reply, Plaintiff argues that recovery of fees for law clerks is permissible. (Reply at pg. 9, relying on *Margolin v. Reg'l Planning Com.* (1982) 134 Cal.App.3d 999, 1006-1007.) The Court finds it appropriate to allow Plaintiff to recovery fees for hours worked by attorneys Livshits and David when they were law clerks at a reduced rate. Therefore, the rates for them reflect a blended rate of time as law clerks and attorneys.

v.    Summary of Hours and Calculations

The Court determines the calculation based on the rates found to be reasonable:

| Name | Total Hours | Adjusted Hourly rate | Total Charge requested | Adjusted Total Charge (based on adjusted hourly rate) |
|---|---|---|---|---|
| Shegarian | 584.2 | $1050 | $832,485.00 | $613,410.00 |
| Nguyen | 758.3 | $825 | $834,130.00 | $625,597.50 |
| Reed | 341.3 | $700 | $341,300.00 | $238,910.00 |
| Livshits | 713.6 (216.9 hours before admission) | $400 (blended rate) | $499,520.00 | $285,440.00 |
| Madjidi | 388.3 | $550 | $349,470.00 | $213,560.00 |
| Rodriguez | 250.8 | $550 | $213,180.00 | $137,500.00 |
| Lim | 206.6 | $600 | $170,445.00 | $123,960.00 |
| Mcdonnell | 5.6 | $700 | $5,600.00 | $3,920.00 |
| Gbewonyo | 8.2 | $450 | $6,150.00 | $3,690.00 |
| Avagyan | 61.3 | $500 | $45,975.00 | $30,650.00 |
| David | 39.5 (33 hours billed before admission) | S225 (blended rate) | $24,687.50 | $8,887.50 |
| Lynch | 16.3 | $250 | $8,965.00 | $4,075 |

Page 9 of 11

| | | | |
|---|---|---|---|
| Total | -- | -- | $3,331,907.50 | **$2,289,600.00** |
| Total w/ a 10% reduction | -- | -- | -- | **$2,060,640.00** |

Based on the foregoing, the Court finds Plaintiff's reasonable lodestar attorney fee award to be $2,060,640.00.

### 3. Lodestar Multiplier

Plaintiff seeks a lodestar multiplier of 2. (Motion at pg. 13.)

While the lodestar reflects the basic fee for comparable legal services in the community, it may be adjusted based on various factors, including "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award" and (4) the success achieved. (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) The burden of proof to support such a multiplier is on the prevailing party. (*Ketchum, supra*, 24 Cal.4th at 1138.)

Nonetheless, the court must not consider extraordinary skill and the other *Serrano* factors to the extent these are already included with the lodestar. (*Id.* at 1138-1139.) "[A] trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting and be unreasonable." (*Id.* at 1139.)

"Government Code section 12965, subdivision (b) thus authorizes an award of *reasonable* attorney fees, not an award of reasonable fees plus an enhancement. Nonetheless, it is recognized that some form of fee enhancement may be appropriate and necessary to attract competent representation of cases meriting legal assistance." (*Weeks v. Baker McKenzie* (1998) 63 Cal.App.4th 1128, 1172.)

Here, Plaintiff argues that the application of a lodestar multiplier is warranted because the factors set forth in *Serrano* have been met. (Motion at pp. 14-15; Reply at pp. 9-10.)

In opposition, Defendants argue that Plaintiff is not entitled to a lodestar fee enhancement because the case did not involve novel issues, there is no proof that Plaintiff's counsel was precluded from taking on other matters, and the firms' contingency risk is exaggerated. (Opposition at pp. 11-15.)

The Court finds that the requested lodestar multiplier of 2.0 is not warranted. However, due to the success achieved by Plaintiff, a modest multiplier is warranted. First, although Government Code § 12965(c) involves a fee-shifting provision that creates "a reasonable expectation that attorney fees would not be limited by the extent of recovery and that [plaintiff's] attorneys would receive full compensation for their efforts" (*Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1175.), there is still a contingency risk to the case in the event the Plaintiff is not successful.  Second, although the skill portrayed by Plaintiff's attorneys is represented in their lodestar award, the Court finds the Plaintiff's trial legal team displayed extraordinary skill beyond the lodestar fee. Plaintiff's attorneys successfully prosecute the client's claims against one of the best defense teams.  Ms. Hermle and her team of lawyers were excellent in every respect.  In fact, the defense team was successful in defeating many of Plaintiff's claims.  The quality of the legal representation afforded to Plaintiff exceeded the rates that are charged by comparably skilled attorneys. (See *Ketchum, supra*, 24 Cal.4th at 1138-1139.) Third, it is clear from the evidence presented by Defendants that Plaintiff's attorneys were not precluded from taking on new cases. (See Moss Decl., Exh. 5.)  However, Plaintiff's attorneys were precluded from trying other cases that were ready for trial during the timeframe of this trial. (RT 11/30/22 p.18, lines 14-22.)  Finally, despite the fact that this is a single Plaintiff case, it is not a run of the mill employment case.  This case involves a high level executive, an older white male, whose employers claimed to have terminated him for his alleged inappropriate conduct, amongst other things, toward women.  For his attorneys to successfully show and argue the reasons for his termination were pretextual during the height of the "me too" movement required exceptional skills.

Accordingly, a modest multiplier of 1.1 is warranted.

Conclusion

The Court grants Plaintiff's Motion for Attorney Fees in the amount of $2,266,704, which included a modest multiplier of 1.1 ($2,060,640 x 1.1= $2,266,704)

It is so ordered.

Dated:  January 20, 2023

Hon. Ruth A. Kwan
Judge of the Superior Court

# Exhibit 7

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Brendan A. Johnson | 1/16/26 | Review expert reports to prepare defending depositions | 2.40 | 2.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 1/19/26 | Prepare and defend the deposition of Plaintiff's expert Jeffrey Noble | 3.00 | 3.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 1/22/26 | Defend the deposition of Plaintiff's expert Dr. Ryan O'Connor | 1.50 | 1.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 1/22/26 | Review exhibits and report prepared by Plaintiff's expert Scott Holdaway (.4); defend the deposition of Mr. Holdaway (2.1) | 2.50 | 2.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 2/18/26 | Research issue presented in depositions | 0.50 | 0.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/4/26 | Draft Jury Instructions | 2.00 | 2.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/20/26 | Research and draft Plaintiff's Motion in Limine No. 1 to exclude information unknown | 3.50 | 3.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/23/26 | Research and draft Plaintiff's Motion in Limine No. 2 | 3.50 | 3.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/26/26 | Draft objections to Defendants' exhibit lists | 2.50 | 2.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/27/26 | Research legal issues regarding Defendants' motions in limine | 1.40 | 1.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/30/26 | Drafting Plaintiff's opposition to Defendants MILs 1, 2, and 5. | 5.50 | 5.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 4/1/26 | Revise drafts of Plaintiff's opposition to Defendants MILs with supervising attorney's feedback. | 1.50 | 1.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 7/13/26 | Prepare time sheet and attorney's fee declaration | 2.00 | 2.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 7/8/24 | Mailing of claims for damages | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Kayla Pena-Pham | 12/23/24 | Prepared initial civil documents (summonses, civil cover sheet, & certificate of counsel); proofread and finalized complaint to prepare for filing | 2.50 | 2.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 12/24/24 | Filing of initial civil documents to open case | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 2/19/25 | Review and proofread draft of opposition to State Defendant's motion to dismiss | 2.00 | 2.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 2/27/25 | Created Dropbox folder containing case materials to share with co-counsel | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 6/11/25 | Reviewed and annotated RUHS medical records (1358 pages) | 1.00 | 1.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 7/8/25 | Redacted RUHS medical records (1358 pages) | 2.00 | 2.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 7/29/25 | Summary to team of efforts made so far in obtaining medical records | 0.20 | 0.20 | Transient and Intra-Office Conferencing | Minimal apparent value added to case given limited hours billsd; intra-office conferencing of administrative nature |
| Kayla Pena-Pham | 8/14/25 | Prepared Dropbox with discovery and emailed to expert Ryan O'Connor | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 9/17/25 | Assisted with editing drafts of discovery responses to State Defendant | 0.40 | 0.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 10/22/25 | Summarized all medical records in our possession and produced summary | 2.00 | 2.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 11/6/25 | Prepared records and Dropbox folders to be served with discovery responses to State Defendant | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 4/28/26 | Served RUHS Subpoenas by personal service | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Kayla Pena-Pham | 4/30/26 | Crated exhibit binder sheets and delivered physical binders to PIP Printing for creation of exhibits | 0.60 | 0.60 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 4/30/26 | Created and cut out yellow clerk tabs for clerk's exhibit binder | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 4/30/26 | Created trial exhibit flash drives | 1.00 | 1.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 4/30/26 | Reviewed and prepared exhibits for PIP printing | 1.00 | 1.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 5/7/26 | Prepared writ of habeas corpus ad testificandum and associated documents | 0.40 | 0.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 7/13/26 | Assisted in inputting and formatting TCP's time entries and preparing time sheet in support of motion for attorney's fees | 3.00 | 3.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 7/14/26 | Draft Declaration of KPP in support of Plaintiff's Motion for Attorneys' Fees | 0.40 | 0.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 1/7/26 | Sent email to defense re availability of experts | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/15/26 | Sent email to defense following up on the amended deposition notice | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/16/26 | Sent email to defense following up on the amended deposition notice | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/19/26 | Sent email to defense coordinating schedules for expert depositions | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 1/19/26 | Sent email to defense requesting to move Dr. O'Connor's deposition from 10:00 am to 9:30 am | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/19/26 | Sent emails to experts re deposition schedule | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Call facility to schedule call with Plaintiff George Gonzalez | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Call Lisa Martinez (Plaintiff's mother) to schedule call with Plaintiff George Gonzalez | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Email facility to schedule call with Plaintiff | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Process invoice for Focus Litigations (deposition transcript of Kenneth Hubbs) | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Receive NEF, Dkt 53, download and save to file | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Sent email to defense coordinating schedules for expert depositions | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Sent emails to expert Ryan O'Connor re deposition schedule | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Sent emails to expert Scott Holdaway re deposition schedule | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/21/26 | Process invoice for Kenneth Hubbs (expert depo fee) | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 1/21/26 | Receive deposition notice for plaintiff. Save to file and forward to client | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/21/26 | Receive deposition notices for plaintiff's experts. Save to file and forward to experts | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/21/26 | Sent email to defense following up on the amended deposition notice | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/22/26 | Receive email invoice from Ryan O'Connor. Save to file and process payment | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/26/26 | Receive deposition notice for plaintiff. Save to file and forward to client | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/26/26 | Receive NEF, Dkt 57, save to file and calendar deadline | 0.40 | 0.40 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/27/26 | Proofread, format and e-file Plaintiff's Opposition to Defendants' Ex Parte to Continue Trial Dates; Dkt 58 | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/28/26 | Email defense – forward Ryan O'Connor's invoice for his deposition | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/28/26 | Receive deposition notice for plaintiff. Save to file and forward to client (4th amended notice) | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/28/26 | Receive NEF, Dkt 59, save to file and calendar dates | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/29/26 | Receive NEF, Dkt 60 download and save to file; calendar deadlines, | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 1/30/26 | Receive NEF, Dkt 61 download and save to file; calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/6/26 | Receive and process invoice for Plaintiff's deposition | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/6/26 | Receive email from defense – proposed jury instructions | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/9/26 | Receive email re deposition transcript of Plaintiff George Gonzalez; download and save to file | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/12/26 | Receive NEF, Dkt 62, Defendant City of Hemet, et al.'s Motion for Summary Judgment; download and save to file; calendar deadlines | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/12/26 | Receive NEF, Dkt 63, Defendant City of Hemet, et al.'s Notice of Lodging; download and save to file; | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/12/26 | Receive NEF, Dkt 64, Defendant City of Hemet, et al.'s Exhibits; download and save to file; | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/19/26 | E-file Plaintiff's Opposition to Motion for Summary Judgment, Dkt 65 and 66 | 0.70 | 0.70 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/19/26 | Prepare and format pleadings for e-filing (Plaintiff's Opposition to MSJ) | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/19/26 | Put together exhibits for Plaintiff's Opposition to MSJ | 1.00 | 1.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 2/20/26 | Prepare Dropbox link and email defense counsel Plaintiff's manually filed exhibits | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/25/26 | Email defense counsel Andrea Kornblau re word version of Plaintiff's Separate Statements | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/27/26 | Receive NEF, Dkt 67, Defendant City of Hemet, et al.'s Reply to Plaintiff's Opposition to MSJ; download and save to file; | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/2/26 | Process check payment request for Plaintiff's medical records | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/4/26 | Receive NEF, Dkt 68, Order taking Defendants' MSJ under submission; update calendar | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/5/26 | Receive NEF, Dkt 69, Notice of Appearance of Defense Counsel Kimberly L. Aceves; update proof of service | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/9/26 | Receive and process invoices for expert Scott Holdaway | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/12/26 | Receive and process invoices for ACE Attorney Service | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/17/26 | Receive Plaintiff's medical records from Loma Linda Medical Center; download and save to file | 0.40 | 0.40 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/20/26 | Receive email from defense re Proposed Jury Instructions, Exhibit and Witness List | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 3/24/26 | Call Wasco Prison and Riverside University Health System (RUHS) re subpoenaed documents | 0.30 | 0.30 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 3/24/26 | Review documents produced by defense | 0.30 | 0.30 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 3/25/26 | Update Plaintiff witness list with name pronunciations | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Email chambers the word version of Plaintiff's Proposed Orders on MILs | 0.40 | 0.40 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Email defense – Plaintiff's Objections to City of Hemet's Proposed Jury Instructions; Joint Stipulation re Exhibits; and Proposed Final Pretrial Conference Order | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Format and e-file Plaintiff's Motions in Limine, Dkt 71 - 74 | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Prepare Proposed Orders for Plaintiff's four (4) Motions in Limine | 1.50 | 1.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 3/26/26 | Receive NEF, Dkt 70, Statement on Scheduling of ADR Proceedings; download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Receive NEF, Dkt 75, Defendant State of California's Motion in Limine #3; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Receive NEF, Dkt 76, Defendant State of California's Motion in Limine #4 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Receive NEF, Dkt 77, Defendant State of California's Motion in Limine #5 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 3/27/26 | Receive NEF, Dkt 78, Defendant City of Hemet's Motion in Limine #1 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/27/26 | Receive NEF, Dkt 79, Defendant City of Hemet's Motion in Limine #2 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/30/26 | Put together potential exhibits for Plaintiff's Opposition to Defendants' MILS | 1.40 | 1.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 4/1/26 | Format and Email Plaintiff's Confidential Mediation Brief with Exhibits to Richard Copeland | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/1/26 | Receive and process invoice from Richard Copeland re Mediation | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Email defense re Joint Witness List | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Format and e-file Plaintiff's Oppositions to Defendants' Motions in Limine, Dkt 84 – 86, 88, 89, 90, and Plaintiff's MCFL Dkt 91 | 1.00 | 1.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Prepare and format Exhibits for Plaintiff's Opposition to Defendant's MILS | 1.50 | 1.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Receive NEF, Dkt 80, Defendant State of California's Opposition to Plaintiff's Motion in Limine #1; | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Receive NEF, Dkt 81, Defendant State of California's Opposition to Plaintiff's Motion in Limine #2 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/2/26 | Receive NEF, Dkt 82, Defendant State of California's Opposition to Plaintiff's Motion in Limine #4 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Receive NEF, Dkt 83, Defendant State of California's MCFL | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Receive NEF, Dkt 87, Defendant State of California's Opposition to Plaintiff's Motion in Limine #3 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Finalize case costs | 2.00 | 2.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 92, Joint Pretrial Stipulation re Exhibits; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 93, Plaintiff's Witness List; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 94, Defendant's City of Hemet's Opposition to Plaintiff's MIL #1 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 95, Defendant's City of Hemet's Opposition to Plaintiff's MIL #2 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 96, Defendant's City of Hemet's Opposition to Plaintiff's MIL #4 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 97, Defendant's State of California's Notice of Errata; download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 98, Defendant's State of California's Opposition to Plaintiff's MIL #1; download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/6/26 | Receive email with Dropbox link containing Plaintiff's RUHS Radiology records; download and save to file | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/7/26 | Prepare Dropbox and send link to defense containing the manually filed exhibits to Plaintiff's Opposition to MIL #3 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/8/26 | Draft Notice of Settlement between Plaintiff and City of Hemet | 0.50 | 0.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 4/9/26 | Receive NEF, Dkt. 100, Proposed Voir Dire Questions by Defendant State of California | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/9/26 | Receive NEF, Dkt. 99, Scheduling Notice by Judge Kato; calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/9/26 | Send email to defense re Exhibit List and Joint Stipulation of Facts | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 101, Proposed Voir Dire Questions by Plaintiff | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 102, Joint Pretrial Stipulation Re Exhibits | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 103, Plaintiff's Witness List | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 104, Joint STIPULATION for Admissions of Fact | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 105, Statement of the Case | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 106, Plaintiff's Proposed Special Verdict Form | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 107, Notice of Lodging Proposed Pretrial Conference Order | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 108, Joint Proposed Jury Instructions (Clean Set) | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 109, Joint Disputed Jury Instructions (Clean Set) | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/13/26 | Email draft of Notice of Settlement to Defendant City of Hemet | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/13/26 | Format and e-file Notice of Settlement; Dkt 110 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/14/26 | Receive NEF, Dkt. 111, Order by Judge Kato; calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/14/26 | Receive NEF, Dkt. 112, Order by Judge Kato; calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 113, Amended Memorandum of Contentions of Fact and Law; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 114, Notice of Amendments to Pretrial Documents; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 115, Status Report – Joint Status Report Re Settlement Discussions; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 116, Amended Motion in Limine #1; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 117, Amended Motion in Limine #2; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 118, Amended Motion in Limine #3; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 119, Amended Motion in Limine #4; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt. 120, Scheduling Notice by Judge Kato; calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt. 121, Defendant State of California's Response to Scheduling Notice | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/22/26 | Emailed Judge Kato's Chambers requesting permission for Marcel to appear and listen it at the FPTC | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/22/26 | Receive NEF, Dkt. 122, Order by Judge Kato Granting and Denying in part Plaintiff's and Defendants' Motions in Limine; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/23/26 | Email word version of Proposed order for Dkt 125 to Chambers | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/23/26 | Format and e-file Plaintiff's Request re Plain Clothes; Dkt 125 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/23/26 | Format and e-file Proposed Amended Jury Instructions; Dkt 123 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/23/26 | Reached out to providers in Plaintiff's witness list re their availability for trial and if they have the records | 0.60 | 0.60 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/23/26 | Receive NEF, Dkt. 124, Order by Judge Kato re trial; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/23/26 | Updated trial calendar pursuant to Judge Kato's Order | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/24/26 | Reached out to court reporting agencies to order electronic copies of deposition transcripts of Plaintiff's experts | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/24/26 | Receive NEF, Dkt. 126, Order by Judge Kato re Plain Clothes; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/24/26 | Received email from court reporting agency re electronic copies of deposition transcripts.  Download and save to file. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/27/26 | Emailed deposition transcripts to Plaintiff's experts (Holdaway, O'Connor, Noble) | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/27/26 | Receive NEF, Dkt. 127, Proof of Service re Order on Motion; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/27/26 | Transcribed audio dispatch recordings and Sobaszek video | 1.50 | 1.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 4/28/26 | Emailed Defense Experts' reports and deposition to Plaintiff's Experts | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/28/26 | Receive NEF, Dkt. 128, re update on Court policies re use of artificial intelligence. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/28/26 | Receive NEF, Dkt. 129, Application for Writ of Habeas Corpus | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/28/26 | Receive NEF, Dkt. 130, Subpoena in a Civil Case issued to Navpreet Dhillon. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/28/26 | Receive NEF, Dkt. 131, Subpoena in a Civil Case issued to Jaclyn Corso. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/28/26 | Receive NEF, Dkt. 132, Notice to Filer of Deficiencies; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/29/26 | Arranged and saved photo exhibits to be used in trial | 1.50 | 1.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/29/26 | Receive NEF, Dkt. 133, Re Plaintiff's Application for Writ of Habeas Corpus | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/30/26 | Format and e-file Amended Joint Exhibit List; Dkt 135 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/30/26 | Receive NEF, Dkt. 134, Brief filed by Defendants California Highway Patrol, Sean Irick, re Pretrial Conf.; Download and save to file. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/1/26 | Set up zoom meeting with experts; email link to experts. | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/4/26 | Reached out to court reporting to request original transcripts of expert depositions. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/4/26 | Trial preparation – print out deposition transcripts (3 copies each), print out exhibits and assemble them in four exhibit binders, save audio/video files to USB flash drives | 5.00 | 5.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/5/26 | Continue to print exhibits and assemble them in exhibit binders; print out copies of officer statements, witness statements, declarations, autopsy reports. | 4.00 | 4.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Emailed experts the Order Granting and Denying MILs | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Emailed the Joint Exhibit List to the Court | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 136, Application for Writ of Habeas Corpus ad Testificandum as to Plaintiff | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 137, Subpoena in a Civil Case issued to Amanda McKinley | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 138, Subpoena in a Civil Case issued to Marquis Bridgman | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 139, Subpoena in a Civil Case issued to Riverside County Sheriff's Office. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 140, Order by Judge Kato re Application for Writ of Habeas Corpus Ad Testificandum. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 141, Writ of Habeas Corpus Ad Testificandum. | 0.00 | 0.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/11/26 | Receive NEF, Dkt. 142, Minutes of Jury Trial Day 1 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/12/26 | Receive NEF, Dkt. 143, Minutes of Jury Trial Day 2 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/12/26 | Receive NEF, Dkt. 144, Minutes of Jury Trial Day 3 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/13/26 | Receive NEF, Dkt. 145 – 150, Minutes of Jury Trial and Jury Notes | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/14/26 | Receive NEF, Dkt. 151 – 153, Jury Notes | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/14/26 | Request for payment of expert fees; Send out checks and updated costs folder | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/19/26 | Drafted Proposed Judgment | 0.70 | 0.70 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 5/20/26 | Emailed defense counsel Andrea Kornblau re Proposed Stipulation to Dismiss Defendant City of Hemet | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/20/26 | Finalize, format and e-file Joint Stipulation for Order Dismissing Defendants City of Hemet, Sobaszek and Reynoso; Dkt. 154 | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/21/26 | Emailed defense counsel Amie Bears the draft of Stipulation to Extend Briefing Schedule | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/21/26 | Finalized case costs | 1.50 | 1.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/21/26 | Receive NEF, Dkt. 155, Order Granting Stipulation to Dismiss City Defendants | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/22/26 | Emailed word version of Proposed Order to Chambers | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/22/26 | Finalize, format and e-file Joint Stipulation for Order Extending Time for Plaintiff to File Motion for Attorney Fees and Application to Tax Costs; Dkt. 156 | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/26/26 | Finalize, format and e-file Notice of Lodging Proposed Judgment; Dkt. 157 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/27/26 | Receive NEF, Dkt. 158, Order Granting Stipulation to Modify Briefing Schedule | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 6/11/26 | Receive NEF, Dkt. 159, Defendants' Objection to Plaintiff's Proposed Judgment | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

Exhibit 7

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 6/17/26 | Receive NEF, Dkt. 160 - 164, Notice of Filing Transcripts | 0.40 | 0.40 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 6/17/26 | Receive NEF, Dkt. 165, Plaintiff's Judgment; Calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 6/24/26 | Requested for payment for trial transcripts; sent out check to court reporter | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/1/26 | Prepare a template for Mr. Galipo's time spent on the case. | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/6/26 | Emailed defense re Meet and Confer on Plaintiff's Motion for Attorney fees | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/8/26 | Receive email re Trial Transcripts; download and save to file | 0.40 | 0.40 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/9/26 | Update Mr. Galipo's timesheet | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/13/26 | Prepare exhibits for Motion for Attorney Fees | 0.40 | 0.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 7/13/26 | Update Mr. Galipo's timesheet | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/14/26 | Format and e-file Motion for Attorney Fees and Opposition to Defendants' Motion to Stay | 1.50 | 1.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/14/26 | Update Mr. Galipo's timesheet | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

# Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 2/21/25 | Case Review with Marcel F. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 2/27/25 | Case Review with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/3/25 | Discuss association with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/3/25 | Review Stipulation to Withdraw and Amend Complaint with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/7/25 | Review Client Communication with Trent Packer and M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/13/25 | Case Review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 4/1/25 | Discuss planning and strategy with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/15/25 | Discuss Motion to Dismiss with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/25/25 | Discuss scheduling and Rule 26(f) Report with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 5/2/25 | Discuss Rule 26(f) Report and Initial Disclosures with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 5/6/25 | Case Review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 5/20/25 | Discuss amending complaint and Initial Disclosures with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 5/22/25 | Discuss Statement to Proceed on Claims with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 5/29/25 | Discuss and review Statement to Proceed with M. Sincich and M. Packer | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 6/2/25 | Discuss and review Second Amended Complaint with M. Sincich and M. Packer | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 6/13/25 | Discuss terms of mediation with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 6/30/25 | Discuss discovery and scheduling with M. Sincich and M. Packer | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 7/7/25 | Discuss discovery and scheduling with M. Sincich and M. Packer | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 7/8/25 | Discuss mediation with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 7/15/25 | Discuss mediation with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 7/19/25 | Case Review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 7/29/25 | Discuss discovery and criminal matter with M. Sincich and M. Packer | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 8/20/25 | Discuss experts with M. Sincich and M. Packer | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 8/29/25 | Case review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 9/1/25 | Case review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/6/25 | Case review with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/7/25 | Case review with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/8/25 | Case review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/20/25 | Discuss demand with M. Sincich and M. Packer | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/21/25 | Case review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 10/27/25 | Discuss discovery with M. Sincich and M. Packer | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/31/25 | Discuss damages with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 11/6/25 | Review and discuss Opposition to Ex Parte with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 11/13/25 | Review discovery statement with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 11/20/25 | Discuss discovery conference with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 11/26/25 | Case review with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 12/3/25 | Discuss experts with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 12/5/25 | Discuss experts with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 12/11/25 | Case Review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 1/1/26 | Discuss experts with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 1/15/26 | Discuss experts with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 1/23/26 | Case Review with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 1/23/26 | Discuss discovery conference neutral statement with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 1/27/26 | Discuss discovery conference with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 2/4/26 | Preparation and planning for trial with M. Sincich and M. Packer | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 2/23/26 | Discuss MSJ with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/4/26 | Review and discuss proposed jury instructions and verdict form | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/12/26 | Planning and strategy meeting with M. Sincich and M. Packer | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 3/18/26 | Discuss exhibit list and witness list with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/19/26 | Discuss pretrial documents with M. Sincich | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/26/26 | Discuss pretrial documents with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/31/26 | Discuss memorandum of contentions of fact and law with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/2/26 | Discuss Oppositions to Motions in Limine with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/2/26 | Review and discuss memorandum of contentions of fact and law with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 4/3/26 | Discuss Oppositions to Motions in Limine with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/8/26 | Review and discuss jury instructions with M. Sincich | 0.80 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/8/26 | Review and discuss Proposed Final Pretrial Conference Order with M. Sincich | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Discuss and Review Proposed Voir Dire with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Review and discuss exhibit list with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Review and discuss Proposed Final Pretrial Conference Order with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 4/9/26 | Review and discuss verdict form with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Review and discuss witness list with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Review Defendants' proposed Jury Instructions and discuss with M. Sincich | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Review Joint Disputed Jury Instructions with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/17/26 | Discuss and review Amended MCFL with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/20/26 | Case Review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 4/22/26 | Discuss planning and strategy with M. Sincich and M. Packer | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/22/26 | Review Defense Expert Reports with M. Sincich | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/23/26 | Discuss planning and strategy with M. Sincich and M. Packer | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/28/26 | Review trial exhibits with M. Sincich | 2.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/29/26 | Review trial exhibits with M. Sincich | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 5/6/26 | Trial preparation and theory meeting with M. Sincich and M. Packer | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 5/7/26 | Review opening exhibits with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 7/9/26 | Discuss Rule 59 Motion with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 7/10/26 | Discuss Rule 59 Motion with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 2/21/25 | Case review with Dale K. Galipo ("DKG") regarding ("re") association, incident facts and analysis, case procedural history, planning and discovery strategy | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 2/21/25 | Communication ("Comms") with Trent C. Packer ("TCP") regarding incident facts and analysis, case procedural history, planning and discovery strategy | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 2/27/25 | Case review with DKG | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 3/3/25 | Draft Notice of Association and discuss with DKG | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/3/25 | Review Stip to Withdraw and Amend Complaint, and discuss with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/6/25 | Comms with TCP re case detail including analysis of total number of shots fired, number of shots fired by each officer, and timing of shots fired | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/7/25 | Case Review with litigation assistants Stefany Anderson and Alejandro Monguia | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/7/25 | Review Client comms with TCP and DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/7/25 | Review comms from TCP to Client | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 3/11/25 | Case Review with TCP re discovery and FAC | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/13/25 | Case review with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/13/25 | Draft FAC | 1.00 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/17/25 | Comms with TCP re finalizing FAC to file | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/21/25 | Comms with TCP regarding State letter and planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/1/25 | Case review with DKG | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 4/7/25 | Comms with TCP re case planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/15/25 | Discuss Opp to MTD FAC with DKG (-0.2) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/16/25 | Comms with TCP regarding edits to Opp to MTD FAC (-0.1) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/25/25 | Comms with TCP re scheduling and draft Rule 26(f) Report | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/2/25 | Comms with DKG regarding Rule 26(f) Report and Initial Disclosures | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/6/25 | Case review with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 5/6/25 | Discuss discovery plan with TCP | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/8/25 | Comms with TCP re discovery plan | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/9/25 | Comms with TCP re initial disclosures and subpoena | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/13/25 | Comms with TCP re meet and confer | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/15/25 | Review Comms from TCP to Defense re meet and confer | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/18/25 | Comms with TCP regarding Initial Disclosures and review draft of the same | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 5/20/25 | Comms with DKG re amended complaint and initial disclosures (-0.1) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/20/25 | Comms with TCP re an amended complaint and initial disclosures (-0.1) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/22/25 | Comms with TCP re amending complaint (-0.1) | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/22/25 | Draft and Review with DKG Statement to Proceed on Claims | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/26/25 | Comms with TCP re Client | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/29/25 | Comms with TCP, DKG, and edit Statement to Proceed for filing (Doc. 36) | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 6/2/25 | Case Review with TCP and DKG and edit SAC (-0.4) | 1.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/5/25 | Comms with TCP re SAC clean and redline edits | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/6/25 | Comms with TCP re defense request and planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/13/25 | Comms from Mr. Copeland re mediation and discuss terms with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/26/25 | Comms with TCP re medical records and depos | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/30/25 | Review calendar and comms with TCP and DKG to schedule depos and re extension to Defense responses and medical records | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 7/7/25 | Comms with TCP and DKG re discovery | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/15/25 | Research into mediator and Comms with DKG re mediation and mediator | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/19/25 | Case review with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/22/25 | Assist DKG with Officer Irick Deposition | 2.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/29/25 | Discuss update on criminal case, medical records and treatment with DKG and TCP | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/30/25 | Review criminal file docs and Comms with TCP regarding the same | 1.00 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 8/29/25 | Case review with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 9/1/25 | Case review with DKG (-0.1) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 9/1/25 | Comms with TCP re discovery and client | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 9/17/25 | Comms with TCP re discovery responses | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 9/23/25 | Review records, prepare discovery docs to serve and comms with TCP re same | 3.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/6/25 | Case review with DKG | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 10/9/25 | Research and comms with TCP re experts | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/15/25 | Comms with TCP and Defense re discovery | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/17/25 | Comms with TCP re discovery and criminal case | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/20/25 | Discussion with TCP and DKG re demand | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/21/25 | Case update and review with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/24/25 | Review stip and Comms with Defense and TCP | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 10/27/25 | Comms with TCP and DKG re discovery dispute (-0.1) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/28/25 | Review TCP comms with Defense re update of Pl. | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/31/25 | Discuss damages with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/3/25 | Review Stip to Modify with TCP (-0.1) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/5/25 | Comms with TCP re ex parte | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/6/25 | Draft Opp to Ex Parte, review with TCP and DKG, finalize for TCP to file | 2.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 11/13/25 | Draft and review discovery dispute statement with TCP and DKG | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/13/25 | Prep and planning discussion with TCP and DKG prior to Def conference call | 0.60 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/18/25 | Research discovery issues and comms with TCP on same | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/20/25 | Discuss IDC with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/26/25 | Case review with DKG | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 12/3/25 | Discuss expert reports and disclosures with DKG | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 12/5/25 | Discuss expert reports with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 12/8/25 | Comms with TCP re payment of experts | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 12/11/25 | Case update and review with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 12/22/25 | Review criminal file and comms with TCP | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 12/29/25 | Comms with TCP planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/1/26 | Discuss defending depos with Brendan Johnson (-0.3) | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 1/1/26 | Discuss defense expert discovery with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/6/26 | Comms with Mr. Johnson and prep for depos | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/6/26 | Comms with TCP re expert depos and MSJ | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/7/26 | Comms with Mr. Johnson re depos | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/15/26 | Suppl expert disclosures objection and comms with DKG and TCP | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/16/26 | Comms with TCP and draft objections to RFPs to Pl. experts | 1.00 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 1/22/26 | Comms with Mr. Johnson re depos | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/23/26 | Comms with DKG and TCP re depo and neutral statement, and draft the same | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/26/26 | Case Review with TCP and DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/27/26 | Prep for IDC and comms with DKG | 1.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/30/26 | Comms with TCP re Pl. depo | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 2/4/26 | Comms with TCP and DKG re trial | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 2/23/26 | Discuss MSJ with DKG (-0.2) | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/4/26 | Discuss proposed jury instruction and verdict form with DKG | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/4/26 | Discuss proposed jury instruction and verdict form with TCP | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/10/26 | Comms with TCP and Defense re scheduling meeting (-0.1) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/12/26 | Planning and strategy comms with TCP and DKG | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/18/26 | Discuss exhibit list and witness list with DKG | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 3/19/26 | Comms from State re demand and discuss with TCP | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/19/26 | Comms with TCP re MILs | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/19/26 | Discuss pretrial docs with DKG and TCP including jury instructions, verdict form, statement of the case, and FPTCO | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/25/26 | Comms with TCP office and defense re mediation | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/26/26 | Comms with DKG re pretrial docs | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/31/26 | Draft Memorandum of Contentions of Fact and Law ("MCFL"), discuss with DKG | 3.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 4/1/26 | Comms with TCP re trial strategy and exhibits | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/2/26 | Comms with State re Joint Witness List; Finalize and file (Doc. 93) | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/2/26 | Discuss MCFL with TCP and DKG; Finalize and file MCFL (Doc. 91) | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/2/26 | Review Opp to MILs with DKG | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/3/26 | Discuss Defense MILs with DKG | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/8/26 | Comms with State re pretrial docs | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 4/8/26 | Comms with TCP re pretrial docs | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/8/26 | Draft Joint Agreed Upon Jury Instructions and discuss with DKG and TCP | 2.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/8/26 | Draft Plaintiff's Disputed Jury Instructions and discuss with DKG and TCP | 1.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/8/26 | Review file, Research, and Draft Proposed FPTCO, review State additions to FPTCO, and discuss with DKG and TCP | 2.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Discuss and review Pl.'s Proposed Voir Dire with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Joint Exhibit List; discuss with DKG; add responses to objections; finalize and file (Doc. 102) | 1.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 4/9/26 | Review State edits to Joint Proposed Special Verdict Form; review with DKG; finalize and file (Doc. 106) | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Joint Statement of the Case; review with DKG; finalize and file (Doc. 105) | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Joint Stipulation of Facts; review with DKG; finalize and file (Doc. 104) | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Joint Witness List; review with DKG; finalize and file (Doc. 103) | 0.60 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Proposed FPTCO; review with DKG; finalize and file (Doc. 107) | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Proposed Joint Disputed Jury Instructions; review with DKG; finalize and file (Doc. 109) | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 4/9/26 | Review State version of Jury Instructions and discuss with DKG | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/16/26 | Comms and planning with TCP re trial binders | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/16/26 | Comms with TCP re amending pretrial docs | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/17/26 | Discuss and review Pl.'s Amended MCFL with DKG | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/20/26 | Discuss Order with TCP and DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/22/26 | Discuss Order re MILs with DKG and TCP, planning and strategy | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 4/22/26 | Review Defense Expert Reports with DKG | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/23/26 | Discuss FPTC, planning and strategy with DKG and TCP | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/27/26 | Comms with TCP re writ of habeas corpus and TCP response to Court | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/28/26 | Comms with TCP re subpoena to Riverside re investigation docs | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/28/26 | Comms with TCP re trial subpoenas for non-retained experts, and Docs. 130-131 | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/28/26 | Review trial exhibits with DKG | 2.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 4/29/26 | Review photo exhibits with DKG | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/30/26 | Comms with TCP re notice of flier deficiencies | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/30/26 | Review Brief filed by State and discuss with DKG (Doc. 134) | 0.80 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/1/26 | Comms with TCP re Exhibit Binders and delivery | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/6/26 | Trail preparation and theory meeting with TCP and DKG | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/7/26 | Comms with TCP re Client transport and trial planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 5/7/26 | Review opening exhibits with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/18/26 | Comms with TCP re ordering transcripts and planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/9/26 | Discuss Rule 59 Motion with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/10/26 | Discuss Rule 59 Motion with DKG | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 2/21/25 | Communication with M. Sincich regarding Case history, planning, and facts. | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 2/28/25 | Conference with co-counsel M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 3/6/25 | Communicated with M. Sincich re case detail including number of shots and who was shooting. | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/11/25 | Planning Communication with M. Sincich | 2.00 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/17/25 | Communication with M. Sincich regarding finalizing FAC to file. | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/21/25 | Email correspondence with M. Sincich re: meet and confer letter on MTD | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/7/25 | Communication with M. Sincich re case planning. | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/15/25 | Communication with M. Sincich re Opp to MTD FAC | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 4/16/25 | Revise MTD and communicate with M. Sincich re: same | 0.80 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/25/25 | Communication with M. Sincich re scheduling | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/6/25 | Discuss discovery plan with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/8/25 | Communication with M. Sincich re discovery plan | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/9/25 | Communication with M. Sincich re initial disclosures and subpoena | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/13/25 | Communication with M. Sincich re meet and confer | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 5/15/25 | Communication with M. Sincich regarding operative complaint and court order | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/18/25 | Communication with M. Sincich regarding Initial Disclosures | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/20/25 | Communication with M. Sincich re an amended complaint and initial disclosures | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/21/25 | Communication with M. Sincich regarding SAC | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/22/25 | Communication with M. Sincich re amending complaint | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/29/25 | Communication with M. Sincich re editing Statement to Proceed for filing | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 6/2/25 | Communication with M. Sincich and D. Galipo re SAC | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/5/25 | Communication with M. Sincich re SAC clean and redline edits | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/6/25 | Communication with M. Sincich re defense request and planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/19/25 | Communication with M. Sincich re medical records | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/26/25 | Communication with M. Sincich re medical records and depos | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/30/25 | Communication with M. Sincich and D. Galipo re scheduling depos and re extension to Defense responses and medical records | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 7/7/25 | Communication with M. Sincich and D. Galipo re discovery | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 7/7/25 | Communication with M. Sincich re assisting with depo | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 7/30/25 | Communication with M. Sincich regarding the criminal file docs | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 9/5/25 | Communication with M. Sincich and Client | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 9/11/25 | Communication with M. Sincich re discovery and client | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 9/17/25 | Communication with M. Sincich re discovery responses | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 9/23/25 | Communication with M. Sincich re records and docs to be served. | 1.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/9/25 | Communication with M. Sincich re experts | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/15/25 | Communication with M. Sincich and Defense re discovery | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/17/25 | Communication with M. Sincich re discovery and criminal case | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/20/25 | Communication with M. Sincich re meeting with client | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/20/25 | Discussion with M. Sincich and D. Galipo re demand | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 10/21/25 | Communication with M. Sincich re depo | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/24/25 | Communication with M. Sincich re stip | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/27/25 | Communication with M. Sincich and D. Galipo re discovery dispute | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 11/5/25 | Communication with M. Sincich re ex parte | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 11/13/25 | Prep and planning discussion with M. Sincich and D. Galipo prior to Def conference call | 0.60 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 11/13/25 | Review drafted statement with M. Sincich and D. Galipo | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 11/18/25 | Communication with M. Sincich re discovery issues | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 12/8/25 | Communication with M. Sincich re payment of experts | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 12/22/25 | Communication with M. Sincich re criminal file | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 12/29/25 | Communication with M. Sincich re planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 1/6/26 | Communication with M. Sincich re expert depos | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 1/23/26 | Communication with M. Sincich and D. Galipo re depo and neutral statement | 0.45 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 1/30/26 | Communication with M. Sincich re Pl. depo | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 2/4/26 | Communication with M. Sincich and D. Galipo re trial | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/4/26 | Discuss proposed jury instruction and verdict form with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/10/26 | Communication with M. Sincich and Defense re scheduling meeting | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/11/26 | Communication with M. Sincich and Defense re scheduling meeting | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/12/26 | Planning and strategy communication with M. Sincich and D. Galipo | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 3/19/26 | Communication with M. Sincich re MILs | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/19/26 | Discuss pretrial docs with M. Sincich and D. Galipo including jury instructions, verdict form, statement of the case, and FPTCO | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/19/26 | Discuss state communications re demand with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/25/26 | Communication with M. Sincich re demand | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/1/26 | Communication with M. Sincich re trial strategy and exhibits | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/2/26 | Discuss MCFL with M. Sincich and D. Galipo | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 4/3/26 | Mediation; communication with Client, M. Sincich, and D. Galipo | 5.00 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/8/26 | Communication with M. Sincich re pretrial docs | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/8/26 | Discuss draft of Joint Agreed Upon Jury Instructions with M. Sincich and D. Galipo. | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/8/26 | Discuss draft of Plaintiff's Disputed Jury Instructions with M. Sincich and D. Galipo. | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/8/26 | Discuss Draft of Proposed FPTCO with M. Sincich and D. Galipo. | 0.60 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/16/26 | Communication and planning with M. Sincich re trial binders | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 4/16/26 | Communication with M. Sincich re amending pretrial docs | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/20/26 | Discuss Order with M. Sincich and D. Galipo | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/22/26 | Discuss Order re MILs with M. Sincich and D. Galipo; planning and strategy | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/23/26 | Conference with co-counsel D. Galipo and M. Sincich re: pretrial rulings and final pretrial conference | 1.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/27/26 | Communication with M. Sincich re writ of habeas corpus and TCP response to Court | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/28/26 | Trial prep phone conference with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

Exhibit 8

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 4/30/26 | Communication with M. Sincich re notice of filer deficiencies | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/1/26 | Communication with M. Sincich re Exhibit Binders and delivery | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/6/26 | Trial preparation and theory meeting with M. Sincich and D. Galipo | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/26/26 | Communication with M. Sincich re Client | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/18/26 | Communication with M. Sincich re ordering transcripts and planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

# Exhibit 9



Neutral

As of: January 26, 2018 1:30 AM Z

## *Munoz v. Cal. Bus. Bureau, Inc.*

United States District Court for the Eastern District of California

July 14, 2017, Decided; July 14, 2017, Filed

Case No. 1:15-cv-1345-BAM

**Reporter**

2017 U.S. Dist. LEXIS 109855 *; 2017 WL 3009210

GEORGE MUNOZ, Plaintiff, v. CALIFORNIA BUSINESS BUREAU, Inc., Defendant.

**Prior History:** *Munoz v. Cal. Bus. Bureau, Inc., 2016 U.S. Dist. LEXIS 151495 (E.D. Cal., Nov. 1, 2016)*

## Core Terms

expended, hourly rate, costs, attorneys, attorney's fees, billing, statutory damages, cases, duplicative, awarding, consumer, attend, per hour, depositions, prevailing, time spent, declarations, Practices, litigating, maximum, records, rates, summary judgment, Collection, violations, reminders, meetings, parties, reply

**Counsel:** [*1] For George R. Munoz, Plaintiff: Jessica Rene' King Dorman, Robert Lyman Hyde, LEAD ATTORNEYS, Crosby Scott Connolly, Hyde & Swigart, San Diego, CA.

For California Business Bureau, Inc., Defendant: Franklin J Love, LEAD ATTORNEY, Franklin J. Love, Covina, CA.

**Judges:** Barbara A. McAuliffe, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** Barbara A. McAuliffe

## Opinion

**ORDER REGARDING PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY**

**FEES AND COSTS**

(Doc. 29)

## I. INTRODUCTION

Plaintiff George Munoz ("Plaintiff") brings the instant action against Defendant California Business Bureau, Inc. ("Defendant") alleging claims under the *Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.*, and *California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 et seq.* On November 11, 2016, the Court granted summary judgment in favor of Plaintiff on his FDCPA and RFDCPA claims, but instructed the parties to address the issue of damages and attorney's fees in a separate motion. (Docs. 25, 27).[1] The parties are presently before the Court on Plaintiff's motion for statutory damages, attorney's fees, and costs. (Doc. 29). Defendant opposes the motion. (Doc. 31). The Court deemed the matter suitable for decision without oral argument pursuant to *Local Rule 230(g)*, and took the matter [*2] under submission. (Doc. 35). Having considered the moving, opposition, reply papers, and the entire file, the Court hereby GRANTS IN PART AND DENIES IN PART Plaintiff's motion for the reasons stated below.[2]

---

[1] Pursuant to *28 U.S.C. § 636(c)(1)*, the parties consented to have a United States Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment. (Docs. 4, 8).

[2] The Court assumes the parties' familiarity with the factual background of this case, which has been set forth in greater detail in

2017 U.S. Dist. LEXIS 109855, *2

## II. DISCUSSION

In the instant motion Plaintiff seeks an award of $81,773.40, consisting of: (1) maximum statutory damages under the FDCPA and RFDCPA in the amount of $2,000; (2) attorney's fees in the amount of $77,853.50;[3] and (3) costs in the amount of $1,919.90. In response, Defendant contends that Plaintiff is not entitled to an award of statutory damages under the FDCPA and/or the RFDCPA because there has been no showing that Defendant had a knowing intent to violate the statutes. In addition, Defendant challenges the reasonableness of Plaintiff's attorney's fees request.

### A. Statutory Damages

If a debt collector fails to comply with any provision of the FDCPA, a plaintiff may recover statutory damages not to exceed $1,000. *15 U.S.C. § 1692k(a)(2)(A)*. In determining the amount of liability, the court must consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." **[*3]** *15 U.S.C. § 1692k(b)(1)*. Under the RFDCPA, any debt collector who willfully and knowingly violates the RFDCPA with respect to any debtor is also liable to the debtor for a penalty in such amount as the court may allow, which shall be no less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000). *Cal. Civ. Code §§ 1788.30(a)* and *(b)*.

In granting summary judgment for the Plaintiff, the Court found that Defendant violated the FDCPA and RFDCPA when, following a settlement agreement between the parties in a related state court action, Defendant sent Plaintiff two separate

---

the Court's summary judgment Order. (Doc. 25).

[3] This sum includes Plaintiff's initial fee request of $70,919.00 for 187.2 hours of time expended plus an additional sum of $6,934.50 for 20.1 hours expended since the filing of the underlying fee motion. (Docs. 29-1 at 27; 33 at 7).

payment reminders stating the remaining balance owed by Plaintiff on his debt obligation. (Doc. 25). The Court found that Defendant's payment reminders violated the Acts in two ways. First, Defendant erred by contacting Plaintiff despite knowledge that he was represented by an attorney; a violation of section *15 U.S.C. § 1692c(a)(2)* and its state law counterpart. Second, in viewing Defendant's payment reminders under "the least sophisticated consumer standard," the letters misrepresented Plaintiff's debt obligation by stating an amount owed in excess of negotiated settlement amount; a violation of *15 U.S.C. § 1692e*.

These violations of the FDCPA and RFDCPA warrant an award of statutory damages, **[*4]** although not in the amounts Plaintiff seeks. While Defendant contacted Plaintiff twice, in writing, regarding the settled debt, this contact was not sufficiently frequent or egregious to suggest that Defendant's letters were intended to intimidate or harass Plaintiff. Rather, the Court found that Defendant's misconduct was largely based on its mistaken belief that Plaintiff was no longer represented by counsel once the settlement agreement was signed. As for Defendant's monthly balance reminders, the representation that Plaintiff owed more than the agreed upon settlement amount was willfully and knowingly misleading, however, Plaintiff received only two of these payment reminders over a two-month period. This conduct is therefore less serious than other harassing and threatening conduct that violates the FDCPA and RFDCPA. *See Esget v. TCM Fin. Servs. LLC, 2014 U.S. Dist. LEXIS 8583, 2014 WL 258837, at *5, 7 (E.D. Cal. Jan. 23, 2014)* (awarding maximum statutory damages where defendant "repeatedly" contacted plaintiff's place of work in an attempt to collect an alleged debt, including contacting plaintiff's supervisor and disclosing the alleged debt, and made false threats, including a threat to file a lawsuit and garnish plaintiff's wages); *Mulvihill v. St. Amant & Assocs., 2014 U.S. Dist. LEXIS 57422, 2014 WL 1665229, at *2 (E.D. Cal. Apr. 24, 2014)* (finding nearly 20 calls, even after plaintiff **[*5]** instructed defendant to stop calling

him, warranted maximum statutory penalty).

Given the nature and extent of Defendant's noncompliance with the FDCPA and RFDCPA, Plaintiff has failed to show that a maximum statutory damage award is warranted for these two violations. However, because Defendant sent two letters that ran afoul of the Acts, the Court finds that an award of $250 per letter be awarded under the FDCPA and the RFDCPA. *See Davis v. Hollins L., 25 F. Supp. 3d 1292 (E.D. Cal. 2014)* (awarding $250 for a one-time violation under the FDCPA); *Mejia v. Marauder Corp., 2007 U.S. Dist. LEXIS 21313, 2007 WL 806486, at *11 (N.D. Cal. 2007)* (concluding that $250 in statutory damages was appropriate where there was only a single collection letter and the violations of the FDCPA were not frequent or persistent). Accordingly, the Court awards Plaintiff $500 in damages under the FDCPA and $500 under the RFDCPA for a total of $1,000 in statutory damages.

## B. Attorney's Fees

The Fair Debt Collection Practices Act allows a plaintiff to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." *15 U.S.C. § 1692k(a)(3)*; *Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008)*. A similar award is also available under the RFDCPA. *Klein v. Law Offices of D. Scott Carruthers, 2015 U.S. Dist. LEXIS 75269, 2015 WL 3626946, at *2 (N.D. Cal. June 10, 2015)* (citing *Cal. Civil Code § 1788.30(c)*).

The Court calculates an attorney's fees award using the "lodestar" method. *Camacho, 523 F.3d at 978*. Under the lodestar method, "a district court must start by determining **[*6]** how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008)*. The fee applicant bears the burden of documenting the appropriate hours

expended in the litigation. *Klein, 2015 U.S. Dist. LEXIS 75269, 2015 WL 3626946 at *2* (*citing Hensley v. Eckerhart, 461 U.S. 424, 433-34, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*. The Court may reduce the award "[w]here the documentation of hours is inadequate," and may "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley, 461 U.S. at 433*. The Court has "'a great deal of discretion in determining the reasonableness of the fee." *Camacho, 523 F.3d at 978* (*quoting Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992))*.

### 1. Plaintiff's Position

Plaintiff contends that he is the prevailing party in this litigation and therefore entitled to an award of reasonable attorney's fees. As mentioned, Plaintiff requests $77,853.50 in attorney's fees comprised of 207.3 hours of attorney time at hourly rates ranging from $295 per hour to $545 per hour for three attorneys: Crosby Connolly, Jessica Dorman, and Robert Hyde. (Docs. 29-11, 33-3).

To support these rates, Plaintiff's counsel directs the Court to several cases where they have been awarded hourly rates between $295 and $375 per hour based on expertise and experience.[4] Specifically, Mr. Connolly **[*7]** states that he has been engaged with consumer protection litigation for four years. *See* Declaration of Crosby S. Connolly ("Connolly Decl."), (Doc. 29-2). He also recently attended the National Association of Consumer Advocates conference which is an event that provides extensive training on consumer rights litigation, including the Fair Debt Collection Practices Act. Connolly Decl. at ¶ 23. Practicing for

---

[4] Mr. Connolly has been approved by the Eastern District of California at an hourly rate of $295. *See Lyon v. Bergstrom Law, Ltd., Case No. 1:16-cv-00401-DAD-SKO, 2016 U.S. Dist. LEXIS 152148, 2016 WL 6522746 (E.D. Cal. Nov. 2, 2016)*. Jessica Dorman has recently been approved by the Los Angeles County Superior Court in an FDCPA class action at an hourly rate of $375 in *Scheuerman v. Vitamin Shoppe*, Case No. BC592773. (Doc. 33-2, Ex. D). Mr. Hyde does not direct the Court to any cases where he was awarded an hourly rate of $545 per hour.

2017 U.S. Dist. LEXIS 109855, *7

four years, Ms. Dorman states that her extensive experience practicing FDCPA law justifies her requested $345 rate. *See* Declaration of Jessica R. K. Dorman ("Dorman Decl."), (Doc. 29-4). Finally, Mr. Hyde, a founding partner of the prevailing law firm Hyde & Swigart, was admitted to practice in 2003 and he has practiced consumer law for over thirteen years. *See* Declaration of Robert L. Hyde ("Hyde Decl."), (Doc. 29-3). Plaintiff's counsel also introduces the declarations of consumer protection attorneys Stephen Recordon and Clinton Rooney, as well as the 2013-2014 United States Consumer Law Attorney Fee Survey Report, by Ronald L. Burdge to support their respective rates. (Doc. 29-9, Exh. B).

In support of the hours expended, **[*8]** Plaintiff attaches itemized billing records which contain descriptions of the activities performed by Plaintiff's counsel and the time expended. (Docs. 29-9). The billing records reflect that Mr. Connolly expended 82.1 hours, Ms. Dorman expended 52.9 hours, and Mr. Hyde expended 52.2 hours during the course of this litigation. *Id.* Additionally, Ms. Dorman seeks supplemental fees for an additional 20.1 hours spent since the filing of the underlying fee motion. (Doc. 33-3 at 8).

Plaintiff asserts that both the number of hours expended and the respective hourly rates are reasonable based on counsels' qualifications and experience. Plaintiff further contends that he is entitled to an award of costs in the amount of $1,919.90 for out of pocket expenses occurred in bringing this action.

## 2. Defendant's Position

Defendant raises one primary objection to Plaintiff's billing records. Defendant contends that the hours and fees claimed by Plaintiff's counsel are unreasonable because the decision to staff three attorneys on this "comparatively simple area of law" resulted in excessive conferencing and duplicative efforts. (Doc. 31 at 6). As an example of overstaffing, Defendant argues that "Jessica **[*9]**

Dorman and Crosby Connolly attended the depositions, but yet Crosby Connolly did nothing but watch." (Doc. 31 at 6). Defendant also asserts that time spent by the three attorneys consulting with each other resulted in duplicative work. As a result, Defendant argues that the Court should discount all the hours expended by Ms. Dorman and Mr. Hyde and only award compensation based on the 82.1 hours expended by lead attorney Mr. Connolly.

In reference to Plaintiff's counsels' proposed hourly rates, Defendant argues that the Court should not credit the declarations submitted by outside attorneys Stephen Recordon and Clinton Rooney as lacking merit to support Plaintiff's counsels' hourly rates.

As a final matter, Defendant does not appear to challenge the amount requested in costs.

## 3. Reasonable Hourly Rate

Having considered the moving papers, arguments and relevant lodestar factors, the Court finds that the requested amount of attorneys' fees should be reduced. The primary basis for such a reduction is the Court's determination that counsels' requested hourly rates are unreasonable because the evidence submitted by Plaintiff does not justify an hourly rate between $295-$545.

A reasonable hourly **[*10]** rate is not defined by reference to the rates actually charged by the prevailing party." *Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986)*. Rather, reasonable fees must be calculated based on the prevailing market rates charged by "attorneys in the relevant community engaged in 'equally complex Federal litigation.'" *Van Skike v. Dir., Off. of Workers' Comp. Programs, 557 F.3d 1041, 1046 (9th Cir. 2009)*.

Here, Plaintiff cites one case in the Eastern District approving Mr. Connolly's $295 hourly rate—a case awarding Mr. Connolly $1,475.00 in discovery

sanctions (5.0 hours) for prevailing on a discovery motion. *Lyon v. Bergstrom Law, Ltd., No. 1:16cv0401DAD-SKO, 2016 U.S. Dist. LEXIS 152148, 2016 WL 6522746, at *1 (E.D. Cal. Nov. 2, 2016)*. None of the other cases cited by Plaintiff granting a fee request in excess of $295 per hour are from the Eastern District. In other words, each case counsel has previously been granted a rate in excess of $295 reflects the prevailing rates of other communities, not the Eastern District.

The Court similarly is not persuaded by Plaintiff's reference to the United States Consumer Law Attorney Fee Survey Report, nor the declarations of Stephen Recordon or Clinton Rooney. These exhibits do not demonstrate that Mr. Recordon, Mr. Rooney, Plaintiff's counsel, or any other FDCPA practitioner in the Eastern District has been awarded an hourly rate over $295.

To the contrary, **[*11]** the Court's review of some of the most recent attorney fee awards in FDCPA cases indicate that the most common hourly rate awarded to Plaintiff's counsel in FDCPA cases is $250 with a maximum of $300-$315 for the most experienced attorneys. *See, e.g.*, *Miranda v. Law Office of D. Scott Carruthers, No. 1:10-CV-01487-BAM, 2012 U.S. Dist. LEXIS 2866, 2012 WL 78236, at *7 (E.D. Cal. Jan. 10, 2012)* ("The Court's review of some of the most recent attorney fee awards in FDCPA cases indicate[s] that the most common hourly rate awarded to plaintiff's counsel in FDCPA cases is $250."); *Alonso v. Blackstone Fin. Group. LLC, 2014 U.S. Dist. LEXIS 24677 (E.D. Cal. Feb. 25, 2014)* (average rate awarded in FDCPA cases is $250 per hour but awarding $300 per hour to attorney with 35 years of experience); *Valero v. Bryant, LaFayette and Associates, LLC, 2011 U.S. Dist. LEXIS 40578, 2011 WL 1438436 (E.D. Cal. 2011)* ($250); *Brablec v. Paul Coleman & Associates, P.C., 2010 U.S. Dist. LEXIS 4500, 2010 WL 235062 (E.D. Cal., 2010)* ($250); *Hartung v. J.D. Byrider, Inc., 2009 U.S. Dist. LEXIS 54415, 2009 WL 1876690 (E.D. Cal., 2009)* ($250).

According to counsels' declarations, Mr. Connolly and Ms. Dorman have approximately four years of experience, and Mr. Hyde thirteen years of experience all devoted primarily to consumer protection litigation. Counsels' proposed rates are therefore well outside the prevailing market rates for attorneys with comparable experience in Fresno. As addressed above, courts in the Eastern District repeatedly have found $250 per hour to be a reasonable rate for attorneys with less than fifteen years of experience bringing actions under the FDCPA. Further, while **[*12]** the Court accepts that Plaintiff's attorneys have specialized experience in consumer protection litigation, this case did not involve complicated legal or factual issues. Indeed, the present case was relatively simple and not an exceptional case meriting a higher fee. While the Court has identified cases in which FDCPA practitioners were awarded $300-$315 hourly rates, *see e.g.*, *Costa v. National Action Financial Services, 2008 U.S. Dist. LEXIS 35339, 2008 WL 1925235 (E.D. Cal., 2008)* ($315); *Johnson v. JP Morgan Chase Bank, N.A., 2010 U.S. Dist. LEXIS 133096, 2010 WL 4977648 (E.D. Cal., 2010)* ($300), those awards are outliers reserved for those FDCPA practitioners with the highest degree of skill, experience and reputation.

Thus, in light of counsels' comparatively shorter experience and the minimal complexity of this case, there is nothing to justify awarding or exceeding the maximum hourly rate found to be reasonable in non-class action FDCPA cases in this district. Considering these factors, rate determinations for similarly skilled and experienced counsel in other cases in this forum, and this Court's own knowledge of the local value of legal services comparable to those rendered here, a reasonable hourly rate for Mr. Connolly, Ms. Dorman, and Mr. Hyde is $250 per hour, respectively.

**4. Hours Reasonably Expended**

With regard to the time and labor required, the Court has reviewed the billing **[*13]** records

submitted by Plaintiff's counsel and finds that, with two exceptions, the number of hours expended to be reasonable. First, a review of counsels' billing records reveals that counsel billed over 10 attorney hours for interoffice conversations between all three attorneys to discuss case status or strategy. While it is reasonable to spend some time coordinating legal resources, it is not reasonable to double or triple-bill a client for internal meetings, many of which appear to be for partner, Mr. Hyde, to provide instructions to his junior associates, Mr. Connolly and Ms. Dorman. *See Gauchat-Hargis v. Forest River, Inc., No. 2:11-cv-02737-KJM-EFB, 2013 U.S. Dist. LEXIS 128508, 2013 WL 4828594, (E.D. Cal. Sep. 6, 2013)* (finding it unreasonable for partners and associates to collectively "triple-bill" a client for attending internal meetings).

For example, on June 16, 2016, Mr. Connolly and Ms. Dorman each billed .4 hours to "speak with Robert Hyde" about "opposing counsel's summary judgment letter." (Doc. 29-8, Exh. A at 4). Mr. Hyde billed a slightly longer .6 hours for that same meeting ostensibly in preparation to provide Mr. Connolly and Ms. Dorman further instruction at the meeting. Given the triple-billing here for these kinds of internal communications, the Court **[*14]** agrees with Defendant that such charges are excessive. *See Chalmers, 796 F.2d at 1211* (The court may reduce those hours where a case is overstaffed and hours are duplicated and where the hours expended are deemed to be excessive). Thus, while the billing of 3.3 hours to conduct strategy meetings by Mr. Hyde was reasonable, the additional duplicative billing to attend those meetings was not. Accordingly, the Court will deduct the 3.3 hours each spent by Ms. Dorman and Mr. Connolly to attend meetings with co-counsel for a total reduction of 6.6 hours.

Second, the Court has reviewed Plaintiff's request for fees-on-fees[5] and finds the requested award excessive. Along with the work performed on the merits of this case, Plaintiff billed approximately

32.8 hours for preparing and drafting the underlying fee motion and reply (24 hours to draft the motion and 8.8 hours for the reply). (Doc. 29-8 at Ex. A at 9-10; Doc. 33-3, Ex. E at 3). Plaintiff is entitled to recover attorney's fees for time reasonably expended on a motion for attorney fees and costs, however, an inflated request for a "fees-on-fees" award may be reduced to an amount deemed reasonable by the awarding court. *See Brown v. Sullivan, 916 F.2d 492, 497 (9th Cir.1990); Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1140 (E.D. Cal. 2011)* (denying attorney's motion for "fees-on-fees" **[*15]** due to lack of a reasonable basis for such an award).

Defendant does not contend that any specific time entry relating to attorney's fees is excessive however; an independent review of the billing records reveals that the time spent pursuing fees is disproportionate to the time spent litigating the merits of this case. For comparison, whereas Ms. Dorman dedicated 32.8 hours in pursuit of fees in this matter, counsel expended approximately 36.4 hours drafting the summary judgment motion and reply. (Doc. 29-8 at Ex. A at 9-10; Doc. 33-3, Ex. E at 3). While Courts in the Ninth Circuit reject the notion that an automatic reduction in fees is warranted where the time spent on litigating fees begins to approach the time spent litigating the case's merit, the Court must still determine the reasonable number of hours expended in light of the issues and tasks involved. *See Golden Gate Audobon Soc'y, Inc. v. United States Army Corps of Eng'rs, 732 F. Supp. 1014, 1021-22 (N.D. Cal. 1989)*.

Here, while the time expended on litigating the summary judgment and fees was similar, the fee motion is far less complex. Indeed, the issues raised in the fee motion are not novel or difficult—a fact further demonstrated by Defendant's meager six-page opposition to the fee motion. (Doc. 31). Further, the fee motion and supporting **[*16]** documents contained a high degree of duplication and a large amount of boilerplate. Thus, because the motion was not particularly complicated, it does

---

[5] Fees for time spent litigating the fees motions.

not warrant essentially the same amount of effort expended on the motion for summary judgment. As a result, the Court finds the fees sought on the fee motion to be excessive. Accordingly, the Court reduces the time spent by Ms. Dorman preparing and drafting the fee motion and reply by 10 hours.

Finally, although Defendant challenges the duplicative attendance of Ms. Dorman and Mr. Connolly at the deposition, having two attorneys present at a deposition is not necessarily duplicative, especially if the deponent is a key witness. *PSM Holding Corp. v. Nat'l Farm Fin. Corp., 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010)* ("[D]ivision of responsibility may make it necessary for more than one attorney to attend activities such as depositions and hearings."). Although the Ninth Circuit has instructed courts to "examine with skepticism claims that several lawyers were needed to perform a task," it has also emphasized that staffing multiple lawyers on a single task is not by itself evidence of excessive billing. *Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1286 (9th Cir. 2004)*; *see also Moreno, 534 F.3d at 1113* (emphasizing that "[f]indings of duplicative work should not just become a shortcut for reducing a fee award without identifying **[*17]** just why the requested fee was excessive").

Here, the record reflects that on March 15, 2016, Mr. Connolly and Ms. Dorman billed 8.1 hours each to "travel and attend" the depositions of two of Defendant's employees. (Doc. 29-8, Exh. A at 4). The Court is familiar with the issues in the case and finds that in light of the significance of the testimony of Defendant's employees, it was reasonable for both Ms. Dorman and Mr. Connolly to attend these depositions. *PSM Holding Corp., 743 F. Supp. 2d at 1157*. Further, it is not duplicative to have a second attorney serve as a sounding board or be present to assure that valuable testimony is obtained during the limited time allotted in a deposition. *See Moreno, 534 F.3d at 1112* ("By and large, the court should defer to the winning lawyer's professional judgment as to how

much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker"). The Court, therefore, does not reduce Plaintiff's requested fee based on duplicative attendance at the depositions.

Having considered all the relevant factors, the Court finds that of the requested 207.3 hours, 190.7 hours of attorney time was reasonably expended in litigating this case. This reflects a deduction of 3.3 hours of Mr. **[*18]** Connolly's requested 82.1 hours for duplicative interoffice conferences and a 13.3 hour deduction of Ms. Dorman's 73 hours for 3.3 hours of similar interoffice conferences and 10 hours of excessive work on the fee application. Given these deductions, the Court will award counsel a total fee award of $47,675.00.

## C. Costs

Plaintiff seeks $1,919.90 in costs and has submitted a statement of itemized costs in support of his request. (Doc. 29-8). Plaintiff seeks reimbursement for filing fees, travel costs, service fees, and court reporter fees. (Doc. 29-8). Defendant has not challenged any item of costs. Having reviewed Plaintiff's statement of costs, the Court finds that the costs Plaintiff seeks to recover were reasonably incurred and recoverable. *See Garcia v. Resurgent Capital Services, L.P., 2012 U.S. Dist. LEXIS 123889, 2012 WL 3778852, at *12 (N.D. Cal. 2012)* ("in FDCPA cases, 'expenses that are generally charged to paying clients may be awarded, even though they are not normally taxable as costs.'"). Accordingly, Plaintiff's motion for costs in the amount of $1,919.90 is GRANTED.

## III. CONCLUSION

Based on the foregoing, Plaintiff's motion for an award of statutory damages, attorney's fees, and costs is GRANTED IN PART AND DENIED IN PART. Plaintiff is awarded a total amount of $50,594.90, comprised **[*19]** of $500 in statutory damages under the FDCPA; $500 in statutory

2017 U.S. Dist. LEXIS 109855, *19

damages under the RFDCPA; $47,675.00 in reasonable attorneys' fees; and $1,919.90 in costs.

The Clerk shall enter judgment and close the case file.

IT IS SO ORDERED.

Dated: **July 14, 2017**

**/s/** Barbara A. McAuliffe

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**

# Exhibit 10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN H. SCOTT and JACQUIE L. SCOTT, ) <br><br> Plaintiffs, ) <br><br> v. ) <br><br> JAYCO INC., ) <br><br> Defendant. ) | Case No.: 1:19-cv-0315  JLT <br><br> ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS <br><br> (Doc. 70) |

The Scotts are California residents who purchased a new RV in Iowa. After a short time, they discovered the RV suffered from various defects and required repairs.  Plaintiffs sought to hold Jayco, Inc. liable for damages and injunctive relief under California's Unfair Competition Act and Consumer Legal Remedies Act, and under federal law with the Magnuson-Moss Warranty Act.  The parties have settled the underlying claims and agreed Jayco shall pay attorney fees and costs in an amount to be determined by the Court.  (*See* Doc. 70-3.)

Plaintiffs now seek an award of attorney fees in the amount of $170,385.75 and costs in the amount of $1,509.13.  (Doc. 71 at 15.)  Jayco opposes the motion, asserting the fees requested are excessive.  (Doc. 72.)  The Court found the matter suitable for decision without oral argument, and the motion was taken under submission pursuant to Local Rule 230(g). For the reasons set forth below, Plaintiffs' motion is **GRANTED** in part, with fees in the modified amount of **$67,634.35** and costs in the modified amount of **$400.00**.

1

## I.      Background

In December 2016, "Plaintiffs purchased a new 2017 Jayco Seneca RV" online through RV One Superstores.  (Doc. 1 at 4; *see also* Doc. 11-4 at 1-2.)  On December 30, 2016, Mr. Scott travelled to Des Moines, Iowa and signed the purchase contract for the RV.  (*See* Doc 11-4 at 2, ¶ 3.)  Plaintiffs assert that after purchasing the RV, they discovered it suffered from numerous defects and repeatedly sought repairs.  (Doc. 1 at 5-13.)  Plaintiffs assert the they suffered "ongoing and recurring problems with fit and finish, and a myriad of mechanical issues."  (*Id.* at 12, ¶ 23.)  According to Plaintiffs, Jayco "had multiple repair attempts on the RV, through its Dealer, and … refused and or failed to remedy, fix or remediate the serious issues."  (*Id.*, ¶ 24.)

On June 22, 2018, Plaintiff initiated this action by filing a complaint asserting the following causes of action: (1) breach of an express warranty in violation of the Song-Beverly Consumer Warranty Act;  (2) breach of an implied warranty in violation of the Song-Beverly Consumer Warranty Act; (3) unlawful, unfair, and fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200; (4) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and (5) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301.  (*See generally* Doc. 1.)  However, the parties stipulated that Plaintiffs' claims under the Song-Beverly Act be dismissed with prejudice on September 10, 2021.  (Doc. 10.)

On July 15, 2021, the parties informed the Court that they had reached a settlement in the action.  (Doc. 64.)  They agreed on the substantive settlement terms, including that Plaintiffs would file a motion for fees and costs, which they have now done (Docs. 70, 71.)

## II.      Legal Standards

In general, "[t]he starting point for determining a reasonable fee is the 'lodestar' figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate."  *Gates v. Deukmejian*, 987 F.2d 1390 (9th Cir. 1992); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016) (a lodestar involves "multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate").

When the parties are unable to "settle the amount of a fee," "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly

2

rates." *Hensley v. Eckerhart*, 461 U.S. at 424, 437 (1983). Thus, the burden of proof is on fee applicants. *Id.*; *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Any party opposing the fee request must make specific objections to the hours expended. *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1993); *see also Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th at 550, 564 (2008) ("[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice"). Thus, the burden shifts to opposing party to demonstrate the hours spent are duplicative or excessive. *See id.; see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable").

Courts are given discretion when calculating a fee award. *Hensley,* 416 U.S. at 437. However, the Supreme Court explained "it remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award." *Id.* Thus, the Court should provide sufficient information on how it arrived at the total of compensable hours for which fees were awarded to allow for meaningful appellate review. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 485 (9th Cir. 1988) ("Courts need not attempt to portray the discretionary analyses that leads to their numerical conclusions as elaborate mathematical equations, but they must provide sufficient insight into their exercises of discretion to enable [the appellate court] to discharge our reviewing function").

### III.    Discussion and Analysis

Pursuant to the terms of the settlement agreement, "Jayco agrees to pay Plaintiff's (sic) attorney's fees and costs in an amount to be determined by the Court, by way of noticed motion, to have been reasonably incurred by Plaintiffs in the commencement and prosecution of this action." (Doc. 70-3 at 6, ¶ 1(b), emphasis omitted.) Thus, there is no dispute that Plaintiffs are entitled to fees in the action. Rather, Jayco challenges the number of hours "reasonably incurred" and the hourly rates sought by counsel and the administrative professionals. (*See generally* Doc. 72.)

Plaintiffs seek an award of "$106,090.55 in fees, plus an additional $7,5000 for bringing this Motion, reviewing Jayco's Opposition to Plaintiffs' Motion, drafting Plaintiffs' Reply, preparing and attending any relating hearing, preparing any needed filings to satisfy the order, for time to wrap up the settlement and ultimately collect any amount awarded by this Court." (Doc. 71 at 6.) Plaintiffs request

3

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 194 of 381    Page
ID #:5201
Case 1:19-cv-00315-JLT    Document 75    Filed 12/20/21    Page 4 of 41

multiplier to enhance the lodestar in the amount of 1.5, for the total amount of $170,385.75.  (*Id.* at 6, 15.)  Finally, Plaintiffs seek costs and expenses in the amount of $1,509.13.  (*Id.*)

### A.    Hours expended

A fee applicant must provide records documenting the tasks completed and the amount of time spent.  *Hensley,* 461 U.S. at 424 (1983); *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (party must provide records sufficient for the court to "carefully review … [the] hours expended" to determine whether the time reported was reasonable).  "Where the documentation of hours in inadequate, the district court may reduce hours accordingly."  *Hensley*, 461 U.S. at 433; *see also Ketchum*, 24 Cal.4th at 1131-32.

Plaintiffs seek fees for 270.3 hours of work in the action, plus anticipated time for future work on this motion.[1]  (Doc. 70-1 at 12-13; Doc. 71 at 7-8, 15.)  This time includes work by attorneys Jon Jacobs, Terry Baker, Chad David, Rene Dupart, Jon Feeley, Elana Midda, and Nicolas, Dillavou; as well as paralegals Lisa Tyler, Gabriela Torres, Kimberly Riley, Kayla Goettman, Cindy Lewandowski, and Shaina Cateldge.  (*Id*.)  Jayco contends the time reported reflects overstaffing of the work with "transient timekeepers."  (Doc. 72 at 3, 7-9.)  In addition, Jayco objects the hours reported includes "numerous clerical entries, which should be considered as overhead" and "impossibly vague billing entries" that should be excluded from the fee award.  (*Id.* at 3-4, 9-12.)  Finally, Jayco argues the time sheets reflect overbilling with tasks that should not take six minutes to complete.  (*Id.* at 12.)

### 1.    Exhibits in opposition

Jayco enlisted James Schratz to "provide an audit and opinion regarding the reasonableness of the attorneys' fees requested" by Plaintiffs.  (*See* Doc. 72-1 at 1, ¶ 1.)  According to Mr. Schratz, he "reviewed Plaintiffs' Fee Motion and accompanying declarations and exhibits in support thereof, including billing records covering the time period from February 9, 2018 through August 27, 2021," as well as "various pleading and written discovery provided by Jayco, Inc.'s counsel."  (*Id.* at 14, ¶ 46.) Based upon his review, Jayco compiled billing entries that were challenged for overstaffing with

---

[1] Although the table in the motion indicates a total of 230.7 hours, this appears to be a clerical error.  (*See* Doc. 71 at 8.)  Rather, Mr. Jacobs reports: "The Law Offices of Jon Jacobs has spent 230.7 hours on this matter."  (*See* Doc. 70-5 at 4.)  In addition, Mr. Baker billed 39.6 hours prior to joining as co-counsel with the firm of Mr. Jacobs.  (*See id.*; Doc. 70-4 at 7-8.)  These hours are reflected in the billing records and the table in the motion, and when combined total 270.3 hours.

4

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 195 of 381   Page
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 5 of 41
ID #:5202

"transient timekeepers" in "Exhibit 8," clerical tasks in "Exhibit 11," and vague billing entries in "Exhibit 12."

Significantly, whether fees should be awarded—and the reasonableness of the fees requested—are matters of law for the Court to decide.  *See Hensley,* 416 U.S. at 437.  Thus, the Court declines to simply adopt the opinions of Mr. Schratz related to the reasonableness of the fees requested by Plaintiffs' counsel.  The Court has reviewed each exhibit, as discussed below, and used the exhibits to identify the more than 400 billing entries challenged by Jayco in support of the assertion that the hours billed by Plaintiffs' counsel should be reduced for overstaffing, clerical tasks, and vagueness.[2]

### 2. Overstaffing

Jayco observes that while Plaintiffs' counsel "professes expertise in consumer warrant law," the firm "collectively staffed this matter with 13 different timekeepers consisting of 7 attorneys and 6 paralegals."  (Doc. 72 at 7.)  Jayco contends "at least 9 of the 13 timekeepers are transient or excessive timekeepers that each billed less than 20 hours for the entire case," for which Plaintiffs requested fees in the amount of $15,569.50.  (*Id.*)  In addition, Jayco observes that six individuals "billed less than 3 hours, with 3 of those timekeepers billing less than a half hour total."  (*Id.*)  Jayco compiled the challenged billing entries for these individuals in "Exhibit 8."  (*See id.* at 8; Doc. 72-3 at 125-129.)

According to Jayco, "in staffing cases, counsel is required to exercise 'billing judgment', which means exercising judgment to adjust or write down fees and/or expenses incurred when the fees would be excessive, duplicative, or unnecessary."  (Doc. 72 at 8, citing *Hensley v. Eckerhart*, 103 S.Ct. 1933 (1983).)  Jayco notes the Supreme Court explained:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here."

(*Id.* at 8-9, quoting *Hensley, 103* S.Ct. at 1939-40.)  Based upon the limited tasks performed, Jayco

---

[2] Due to the significant number of entries challenged, the Court declines to list each and every billing entry challenged by Jayco in its exhibits.  However, the Court categorized the billing entries below, to identify which categories of tasks were not compensable—particularly with clerical tasks— and which of the challenged entries are not stricken from the fee award.

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 196 of 381   Page
ID #:5203
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 6 of 41

contends the time of attorneys Jon Jacobs, Elena Midda, Rene Dupart, Jon Feely, and Nicolas Dillavou should be deducted from the fee award.  (*Id.* at 7-8.)  For the same reason, Jayco contends the Court should deduct the time of the following administrative professionals: Gabriela Torres, Kimberly Riley, Cindy Lewandowski, and Shaina Cateldge.  (*Id.*)

Plaintiffs contend the number of timekeepers on the action "would only be relevant had the billing been duplicative with multiple timekeepers performing the same task."  (Doc. 73 at 2.)  According to Plaintiffs, "[t]he Law Offices of Jon Jacobs was retained by Plaintiffs in March of 2018, and multiple attorneys and paralegals left the law firm over the course of this case."  (*Id.*)  Plaintiffs explain: "During the pendency of the lawsuit, timekeeper Rene Dupart, Jon Feely, Shaina Catley, Kimberly Riley, Gabriela Torres, and Elana Midda all left the law firm."  (*Id.* at 5.)  Plaintiffs argue that a review of the billing records indicates "it is clear that the case was primarily handled by attorneys Rene Dupart and Terry Baker, then Chad David and Terry Baker upon Mr. Dupart's departure from the law firm."  (*Id.* at 3.)  Further, Plaintiffs assert: "There was not one billing entry related to any attorney catching up on the facts of the case or performing duplicative tasks."  (*Id.* at 2-3.)

Importantly, the Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'"  *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)).  The Ninth Circuit recently determined a district court erred in striking all hours billed by several attorneys on the grounds that "the case was overstaffed."  *Fernandez v. Torres*, 2021 U.S. App. LEXIS 30145 at *1-2, 2021 WL 4690940, at *1 (9th Cir. Oct. 7, 2021).  In *Fernandez*, five attorneys billed for work on an action, and the district court "ignored the time billed by three of Fernandez's five attorneys."  *Id.* The Ninth Circuit concluded "[t]he district court abused its discretion," because the identified attorneys "performed at least <u>some</u> necessary work, such as drafting a joint Rule 26 report and a settlement agreement."  *Id.* (emphasis in original).  The Ninth Circuit explained: "To the extent that overstaffing resulted in inefficiencies, the district court should reduce the fee award in proportion to those inefficiencies, rather than through a 'shortcut'" in striking all actions. *Id.*, citing *Moreno v. City of Sacramento,* 534 F.3d 1106, 1113 (9th Cir. 2008).

As in *Fernandez*, the number of attorneys on the action suggests that the firm overstaffed the

6

matter.  However, the Court declines to strike time billed on these grounds.  *See Fernandez*,  2021 U.S. App. LEXIS 30145 at *1-2, 2021 WL 4690940, at *1.  Rather, the Court will review the challenged billing records in "Exhibit 8" to determine whether "overstaffing resulted in inefficiencies," and whether unnecessary time or duplicative tasks were included in the billing records.

### a.    Time reported by Jon Jacobs

Notably, contrary to Plaintiffs' assertion, challenged entries from Jon Jacobs indicate an effort to "catch[] up on the facts of the case."  Mr. Jacobs was the first to review the action on March 2, 2018, when he conducted an "intake review."  (Doc. 70-5 at 43.)  He then billed for further review and assigning the case on March 9, 2018.  (*Id.*)  Presumably, review had to occur for his law firm to determine whether to take the action and identify the attorney(s) who would work on the action.  Thus, the Court declines to strike these hours.  However, the billing records do not include any other entries from Mr. Jacobs for more than three years.  (*See id.* at 9-43.)

On July 14, 2021, Mr. Jacobs billed 0.4 hours for reviewing the file to determine the authorized amount and determine where the sales contract was signed.  (Doc. 70-5 at 9.)  If Mr. Jacobs worked on the action consistently, it would not be necessary to review the file to determine where the contract was signed.  (*See* Doc. 11-4 at 2; Doc. 19 at 1-2.)  Further, Chad David drafted a confidential settlement conference statement a week before—which was provided to the Court on July 9, 2021—and the parties were already actively engaged in settlement discussions when Mr. Jacobs reviewed the file. (*See id.* at 9-10.)  Thus, Mr. Jacobs' file review on July 14, 2021 was unnecessary to the action, and 0.4 hour will be deducted from his time.

Finally, Mr. Jacobs billed 0.2 hour for his review of the file in advance of preparing the fees motion and a memo on August 16, 2021.  (Doc. 70-5 at 7.)  Importantly, the record indicates that Mr. Jacobs was involved with the preparation of the motion for fees now pending before the Court, as he executed a declaration in support of the motion.  (*Id.* at 1-5.)  Therefore, the Court is unable to find this review related to the motion for fees was unnecessary, and declines to deduct this challenged time.

### b.    Time billed by Jon Feely

Jayco objects to the 0.2 hour billed by Jon Feely in this action. (Doc. 72 at 7.)  Mr. Feely billed the 0.20 hour for "Choice of Law" on May 14, 2019.  (Doc. 70-5 at 32.)  Curiously, this entry is the

7

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 198 of 381   Page
ID #:5205
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 8 of 41

*only* one for Mr. Feeley, and the only work entered for the entirety of the month of May 2019.  (*See id.* at 31-32.)  Further, Terry Baker began to research the "choice of law" issue—or "controlling law," as counsel used the terms interchangeably in the billing records—in February 2019.  (Doc. 70-4 at 7; *see also* Doc. 70-5 at 21-24.)  Mr. Baker continued to research the issue, prepared the motion to establish controlling law, reviewed the opposition, prepared the reply brief, attended the hearing, and communicated with the client regarding the Court's ruling.  (Doc. 70-5 at 21-24.)  In total, Mr. Baker billed approximately 36 hours related to that motion, through March 2020.  (*See id.*; Doc. 70-4 at 7.)  Because there is no indication in the billing records that Mr. Feely offered any assistance to Mr. Baker with the preparation of the motion—particularly where Mr. Baker did not bill for any work on the issue between February 2019 and January 2020—it appears work by Mr. Feely was duplicative of the efforts of Mr. Baker.  Therefore, the 0.2 hour will be deducted from the fee award.

*c.*      *Time billed by Nicolas Dillavou*

On June 22, 2021, Mr. Dillavou billed 0.3 hour for a "[p]hone call with [Chad David] re status of case, settlement, and next steps."  (Doc. 70-5 at 14.)  Jayco asserts this time should not be awarded, noting it was the only work completed by Mr. Dillavou on the action.  (Doc. 72 at 7; *see also* Doc. 72-3 at 128.)

Notably, Mr. David also billed 0.3 hour for a call with Mr. Dillavou "re legal strategy" on June 22, 2021.  (Doc. 70-5 at 14.)  In general, two attorneys cannot bill for communicating with each other, as such time is duplicative and unnecessary.  *In re Mullins*, 84 F.3d 459, 467, 318 U.S. App. D.C. 19 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010).  As this Court previously observed, "many courts ... reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) citing, *e.g., Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003); *see also United States v. One 2008 Toyota Rav 4 Sports Util. Vehicle,* 2012 WL 5272281 at *9 (C.D. Cal. Oct. 18, 2012) ("[w]hen attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys" [citation omitted]); *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan. 4, 2007) (observing that billing for communications between attorneys may be a sign of overstaffing, warranting

8

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 199 of 381   Page
ID #:5206
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 9 of 41

a reduction in hours billed).  Because Mr. David has billed for the same conference, the Court finds the billing by Mr. Dillavou was duplicative and unnecessary.  Therefore, the 0.3 hour will be deducted from the Court's lodestar calculation.

### d.      Time billed by Elena Midda

On March 13, 2018, Ms. Midda billed 2.0 hours for her review of the initial file documents and preparation of a notice and demand.  (Doc. 70-5 at 43.)  On March 21, 2018, she billed for her review of Jayco's response.  (*Id.*)  Jayco object to the entries from Ms. Midda, asserting she is a "transient timekeeper" and the 2.2 hours she billed for these tasks should not be included in the fee award.  (Doc. 72 at 7-8; Doc. 72-3 at 126.)

Notably, the billing records indicate that while the action was originally assigned by the firm to Ms. Midda for work, the assignment changed to Rene Dupart in May 2018.  (*Id.* at 43.)  Plaintiffs also report Ms. Midda left the firm during the pendency of this action, although it is unclear when her departure occurred.  (*See* Doc. 73 at 5.)  Jayco does not assert the work performed by Ms. Midda prior to the reassignment or her departure was not relevant or unnecessary to the matter.  (*See* Doc. 72 at 7-9.)  Further, there is no indication her work was duplicative of other attorneys.  Accordingly, the Court declines to deduct the challenged time for Ms. Midda from the lodestar.

### e.      Time billed by Rene Dupart

Jayco contends Plaintiffs should not receive any fees for the time billed by Mr. Dupart.  (Doc. 72 at 7-9.)  Again, however, Jayco does not address the substance of the work performed by the attorney.  (*Id.*)  Mr. Dupart billed 19.7 hours for tasks that included: communicating with Plaintiffs and opposing counsel; drafting the complaint (Doc. 1) drafting the Joint Scheduling Report filed on September 13, 2018 (Doc. 8); attending the conference via telephone on September 20, 2018; and drafting the opposition to the motion to change venue filed October 18, 2018 (Doc. 16).  (*See* Doc. 70-5 at 35-43; *see also* Doc. 72-3 at 128.)  It is indisputable that such tasks were necessary and relevant to the litigation.  Because no other attorney billed for drafting the identified pleadings, it does not appear there was duplicative billing to warrant a deduction.  Consequently, the Court declines Jayco's request to strike the 19.7 hours billed by Mr. Dupart from the fee award.

///

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 200 of 381   Page
ID #:5207
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 10 of 41

*f.      Challenged time billed by paralegals*

On the grounds that several paralegals were also "transient timekeepers," Jayco objects to the 12.8 hours billed by Gabriela Torres, the 5.4 hours billed by Kimberly Riley, the 0.2 hour billed by Cindy Lewandowski, and the 2.4 hours billed by Shaina Cateldge.  (Doc. 72 at 7-9.)  Review of the records for each of the individuals does not reveal duplicative tasks.  Therefore, the Court declines to deduct this time based upon Jayco's objection to "the high number" of individuals who worked on the action and limited number of tasks completed.  *See Fernandez*, 2021 U.S. App. LEXIS 30145 at *1-2, 2021 WL 4690940, at *1.  Review of the records for each of the individuals does not reveal any duplicative efforts among the paralegals. To the extent Jayco also argues to the time billed by Gabriela Torres and Kimberley Riley should not be awarded because the tasks performed were clerical in nature (Doc. 72 at 8), such objections are addressed below.

### 3.      Clerical tasks

The Supreme Court determined that "purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them."  *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).  As a result, courts have approved of elimination of clerical tasks from fee awards.  *See, e.g., Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Marquez v. Harper Sch. Dist.*, 546 F. App'x 659, 660 (9th Cir. 2013) ("[t]he district court was within its discretion" when it declined to award fees for clerical tasks); *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the deduction of hours spent on secretarial tasks from the lodestar calculation). Such tasks may include: "creating indexes for a binder; filing emails, memoranda, and other correspondence; updating the case calendar with new dates; copying, scanning, and faxing documents; and filing or serving documents."  *Moore v. Chase, Inc.*, 2016 (E.D. Cal. July 7, 2016), citing *Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095, 1102 (N.D. Cal. 2008).

Jayco argues counsel billed more than 60 hours in "clerical tasks such as uploading and saving documents, calendaring, intra-office coordinating and scheduling, and e-filing documents," and prepared "Exhibit 11" as table of 256 challenged billing entries.[3]  (Doc. 72 at 10; Doc. 72-3 at 153-67.)

---

[3] Again, the Court relies on the exhibit only to determine the challenged entries, which were then identified in Plaintiffs' original billing records.

10

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 201 of 381   Page
ID #:5208
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 11 of 41

In addition, Jayco asserts paralegals it previously identified as "transient timekeepers" performed clerical tasks.  (*Id.* at 8-9.)  Specifically, Jayco contends that "Gabriel[a] Torres billed a total of 12.8 hours consisting of 14 entries for clerical work with the most hours billed in round numbers (2 entries for 2 hours and 1 entry for 6 hours) totaling 10 hours for reviewing the file and preparing discovery shells."  (*Id.*)  Jayco also asserts, "Kimberly Riley billed a total of 5.4 hours consisting of 22 entries for clerical work such as calendaring, uploading documents, and client communication."  (*Id.*)

In reply, Plaintiffs argue "many of the indicated billing entries offered by Defendant as Exhibit 11 of their Opposition do not fall under clerical tasks."  (Doc. 73 at 5.)  According to Plaintiffs, "A review of the billing entries show that many of the tasks complained of are fully recoverable."  (*Id.*)  However, Plaintiffs do not offer the Court any assistance by identifying which billed tasks they believe to be "fully recoverable," or which tasks Plaintiffs indirectly concede are not recoverable.  (*See id.*)

### a.      Updating and reviewing the firm's file

Previously, this Court determined that organizing and updating files appeared to be clerical work.  *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 899 (E.D. Cal. 2009).  Thus, the Court declined to award fees where the applicant "tendered no evidence that these are tasks that required the skill of a paralegal."  *Id.*  Approximately 30 billing entries challenged by Jayco as clerical involve updates and reviews of the firm's file by Kimberly Riley, Gabriela Torres, Lisa Tyler, and Kayla Goettman.  (*See, e.g.,* Doc. 72-3 at 127-28, 157-59, 161-63, 165-66.)

For example, Ms. Tyler billed 0.2 hours to indicate in the system that the "attorney assignment [changed]" from Rene Dupart to Elana Midda on May 25, 2018; and billed an additional 0.2 hour to indicate the attorney assignment changed back to Mr. Dupart on May 31, 2018.  (Doc. 70-5 at 43.) Ms. Tyler billed 2.8 hours for updates to the firm's file that included, but were not limited to: meeting dates; tasks for the deadline sheet; and information concerning the parties, assigned judges, and contact information of opposing counsel "for easy access." (*See id.* at 8, 31.)  Likewise, Ms. Goettman billed 0.8 hour for updates with party information, "case details," and "case numbers" for the Eastern District of California and Northern District of Indiana.  (*See, e.g. id.* at 33, 36, 41-42.)  Ms. Goettman also billed 0.8 hour for reviewing the file to confirm the "case is in [the] Eastern District," document filing, and the prior demand for a jury trial.  (*Id.* at 20-21.)  Similarly, Ms. Riley billed 0.9 hour for file

review in an effort to locate a letter, which she was unable to find.  (Doc. 70-5 at 25.)  Ms. Riley also billed 0.4 hour to upload documents to the file such as an email from Plaintiffs and a "conformed copy of stipulation."  (*Id.* at 25-26.)  Ms. Torres billed 1.3 hours for file updates that were requested when Mr. David and Ms. Tyler were away from the office, reviewing the file, and organizing documents. (*Id.* at 22-23, 27-28, 31.)

Plaintiffs do not argue these file updates or reviews "required the skill of a paralegal," or present any evidence that would support such a conclusion.  Based upon the Court's review of the challenged records, 7.8 hours will be deducted from the lodestar, which includes 3.6 hours for Lisa Tyler, 1.6 hours for Kayla Goettman, 1.3 hours for Kimberly Riley, and 1.3 hours for Gabriela Torres.

### b.     *Document retrieval and saving*

Courts have declined to award fees for "retrieving electronic court documents or copying" due to the clerical nature of the tasks.  *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012); *Schmidt v. City of Modesto*, 2018 WL 6593362, at *9 (E.D. Cal. Dec. 18, 2018) (indicating clerical work included downloading, saving, and printing documents); *T.B. v. San Diego Unified Sch. Dist.*, 2017 U.S. Dist. LEXIS 218434, at *97 (S.D. Cal. Oct 2, 2017) ("scanning and saving" documents is clerical work).  Thus, to the extent the billing records include such tasks, fees for such tasks should not be awarded.

As Jayco argues, the billing records from Plaintiffs' counsel include many entries related to document retrieval from the docket, printing copies, and saving numerous documents to the firm's file. For example, Kayla Goettman billed 0.2 hour to "[d]ownload/retrieve Docket No. 2 [the Summons]; upload to case file" and another 0.2 hour to "[d]ownload/retrieve Docket No. 3 [the New Case Documents]; upload to case file" on June 22, 2018.  (Doc. 70-6 at 42; Doc. 72-3 at 154.)  On June 28, 2018, Ms. Gotteman billed 0.2 hour to scan a copy of the complaint with supporting documents and "upload to the case file."  (*Id.* at 41.)  On July 17, 2018, she billed 0.2 hour to "Retrieve Docket No. 4; upload to the case file."  (*Id.* at 43.)  Similarly, in October 2018, Lisa Tyler billed 0.4 hour to upload and save Documents 14 and 15.  (*Id.* at 37.)  Ms. Tyler also billed 0.3 hour to print documents for Rene Dupart and "put [them] on his chair" with a "pad, pen and business cards" prior to a hearing. (*Id.* at 35.)  Ms. Riley also billed for 0.4 saving documents to the firm's file, such a copy of the signed

12

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 203 of 381    Page
ID #:5210
Case 1:19-cv-00315-JLT    Document 75    Filed 12/20/21    Page 13 of 41

mediation agreement. (*Id.* at 27.)

Though these are only a handful of examples, throughout the duration of the action, paralegals billed for document retrieval from the Court's docket and save copies, with more than 30 billing entries for document retrieval and uploading to the firm's file. (*See generally* Doc. 70-5 at 5-43; *see also* Doc. 72-3 at 154-167.)  However, tasks such as saving, scanning, and printing documents should be included in the firm's overhead, and fees will not be awarded.  *Jones*, 845 F. Supp. 2d at 1027.  Accordingly, based upon the Court's review of the billing records, 8.4 hours will be deducted from the requested fee award, which includes 4.4 hours for Lisa Tyler, 3.6 hours for Kayla Goettman, and 0.4 hour for Kimberly Riley.

c.      *Document finalizing and filing*

"Finalizing" a document generally refers to the preparation of documents for filing and service after an attorney has drafted the document.  Courts throughout the Ninth Circuit determined the "finalizing" of a document is a clerical task for which fees should not be awarded.  *See, e.g.*, *Moores v. Berryhill*, 2017 WL 4386050, at *3 (E.D. Cal. Oct. 3, 2017) (declining to award fees for finalizing a complaint as clerical work); *United States v. Haw. Student Suites*, 2021 WL 3134925, at *10 (D. Haw. May 28, 2021) ("Finalizing a document" is a "clerical task[]" for which time is not compensable); *Velu v. Aristotle Air Conditioning & Heating, LLC*, 2021 WL 4122297, at *2 (D. Az. Sept. 9, 2021); (declining to include time billed for finalizing and filing a document in the court's calculation of fees).

Further, the Ninth Circuit indicated "filing, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead."  *See Nadarajah*, 569 F.3d at 921.  *see also Garcia v. Colvin*, 2013 WL 5347494, at *7 (E.D. Cal. Sept. 23, 2013) (observing the "document emailing and e-filing constitutes clerical or secretarial work and should not be awarded as these activities should be considered overhead costs," and explaining "filing documents is a clerical task, regardless of whether counsel has delegated the authority to his paralegal to access his CM/ECF account"); *United States v. One 2008 Toyota Rav 4 Sports Utility Vehicle*, 2012 WL 5272281, at *12 (C.D. Cal. Oct. 18, 2012) (declining to award fees for time spent e-filing documents with the court).

As indicated by Jayco in "Exhibit 11," the billing records include many entries for finalizing documents and e-filing with the Court.  For example, Kayla Gottman billed 0.8 hour for e-filing the

13

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 204 of 381   Page
ID #:5211
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 14 of 41

Summons, and finalizing and e-filing the Joint Scheduling Report. (Doc. 70-5 at 39-40; Doc. 72-3 at 154-55.) Lisa Tyler billed 0.9 hour to related to finalizing the complaint and coversheet, e-filing, and upload the documents to the firm's case file. (Doc. 70-5 at 42; Doc. 72-3 at 154.) Additionally, Ms. Tyler billed for finalizing and e-filing other documents including, but not limited to, a stipulation to dismiss, the motion regarding controlling law, and a notice of appearance. (*See, e.g.* Doc. 70-5 at 15, 38.) For example, she billed 1.1 to talk to Mr. Baker about what needed to be done to finalize the documents for the motion controlling law and then "made [the documents] pretty for filing." (*Id.* at 24.) Therefore, based upon the Court's review of the challenged billing records and the entries for "finalizing" and e-filing documents, 3.2 hours will be deducted from the lodestar calculation, which includes 0.8 hour for Kayla Goettman and 2.4 hours for Lisa Tyler.

*d.        Document revision by paralegals*

In several billing entries challenged by Jayco, Lisa Tyler billed for reviewing and revising documents previously drafted by attorneys prior to saving the document to the firm's system or e-filing with the Court. For example, after attorney Rene Dupart spent 4.0 hours drafting the complaint in the action, Ms. Tyler billed 0.5 hour for the following: "[r]eview revise complaint, and uploaded and saved to Merus." (Doc. 70-5 at 43; *see also* Doc. 72-3 at 154.) After Mr. Dupart spent 1.0 hour drafting a stipulation to dismiss on September 24, 2018, Ms. Tyler billed 0.2 hour to "[r]eview revise stip to dismiss" and upload the document to the system. (*Id.* at 38; *see also* Doc. 72-3 at 156.) Again, in October 2018, Mr. Dupart spent 10 hours drafting the opposition to the motion to change venue after which Ms. Tyler billed 0.8 hour for the following: "Review revise oppo. Review court's website for judge's info. Prepared GOS label for delivery of judge's copy. Uploaded and saved docs to merus. Uploaded and saved conformed copy." (*Id.* at 37; Doc. 72-3 at 157.) Similarly, after Mr. Baker worked more than 15.00 hours on a reply to the motion to establish controlling law and supporting documents, Ms. Tyler billed 1.3 hours to: "Review revise finalize Reply to oppo, TB decl and RJN. Uploaded/saved docs to file. Updated calendar. Efiled with the court. Uploaded and saved conformed copies to file." (*See* Doc. 70-5 at 22-23; Doc 72-3 at 161.)

To the extent Ms. Tyler reviewed and revised documents, her work was duplicative of the efforts performed by attorneys on the complaint, stipulation, opposition to the motion, and reply to the

14

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 205 of 381   Page
ID #:5212
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 15 of 41

motion.  In addition, courts have determined proofreading is clerical when the review of work completed by counsel.  Further, it is indisputable that the tasks identified in the billing entries— including uploading documents, preparation of mailing labels, calendaring, and e-filing— are clerical tasks that should not be included in the lodestar calculation, as they do not require the skill of a paralegal.  *See, e.g., Nadarajah*, 569 F.3d at 921; *Smith v. A Check Am.*, 2017 U.S. Dist. LEXIS 143717, at \*26 (C.D. Cal. July 18, 2017) (identifying "proofreading, making copies, uploading data to a server, formatting documents, and managing databases" as clerical tasks); *Garcia*, 2013 WL 5347494, at \*7.  Therefore, 2.8 hours will be deducted from the requested fee award for Ms. Tyler.

> e.      Calendaring

Repeatedly, this Court and others in the Ninth Circuit indicated calendaring deadlines is a clerical task that should not being included in a fee award.  *See, e.g., Hill v. Comm'r of Soc. Sec.*, 428 F. Supp. 3d 253, 265 (E.D. Cal. 2019) (observing clerical staff could "easily" complete "calendaring of court dates" and reducing the fee award); *Campbell v. AMTRAK*, 718 F.Supp.2d 1093, 1105 (N.D. Cal. 2010) (deducting calendaring as clerical work from the awarded fees); *Doran v. Vicorp Rests., Inc.*, 407 F.Supp.2d 1120, 1125 (C.D. Cal. 2005) (noting "calendaring court dates" is clerical and reducing the fee award); *T.B.*, 2017 U.S. Dist. LEXIS 218434, at \*97 ("calendaring [an] event is clerical").

As Jayco indicated in its exhibit of challenged billing, Kayla Goettman and Lisa Tyler billed for calendaring deadlines and their review of documents for calendaring.  (*See generally* Doc. 72-3 at 154-56, 158-64, 166-67.)  For example, after the Court issued the new case documents on June 22, 2018 (Doc. 3), Ms. Goettman billed 0.3 hour to review and add the scheduling conference and joint scheduling report deadlines to the firm's calendar.  (Doc. 70-5 at 42.)  The following week, Ms. Tyler billed 0.2 hour for calendaring the deadline for Jayco's answer.  (*Id.* at 41.)  On August 22, 2018, Ms. Goettsman billed 0.3 hour to again "Review Docket No. 3; update calendar."  (*Id.*)  The following month, she billed 0.4 hour to update the firm's calendar with the initial disclosure due date and the scheduling conference date.  (*Id.* at 39.)  On April 3, 2019, Ms. Gottesman billed 0.4 hour for calendaring discovery deadlines—before the Court issued its scheduling order—and proposed dates in the firm's calendar.  (*Id.* at 32.)  Once the order was issued on April 9, 2019 (Doc. 45), Ms. Gottesman billed another 1.0 hour for calendaring the deadlines ordered by the Court.  (*Id.*)  In November 2019,

15

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 206 of 381   Page
ID #:5213
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 16 of 41

Kimberly Riley billed for calendaring the deposition dates, and Ms. Gottesman billed for updating the calendar with amended dates.  (*Id.* at 26.)

In total, there are more than 35 challenged entries related to calendaring or updating dates—such a discovery deadlines, the date of the vehicle inspection, deposition dates, or other unidentified events—and the paralegals billed a minimum of 0.2 hour for the task each time.  (*See, e.g.,* Doc. 70-5 at 16-17, 22-23, 27-28, 32-33, 37-39, 42-42.)  Because the tasks are clearly clerical, the time will be deducted from the lodestar calculation.  *See Hill*, 428 F.Supp.3d at 265; *Campbell*, 718 F.Supp.2d at 1105.  Based upon the Court's review of the billing entries related to calendaring, 9.2 hours will be deducted from the lodestar calculation, which includes 5.1 hours for Kayla Goettman, 3.9 hours for Lisa Tyler, and 0.2 Hour for Kimberly Riley.

> *f.*     *Clerical internal communications*

Billing entries challenged by Jayco include communications within the firm, whether to another paralegal or to counsel.  (*See generally* Doc. 72-3 at 154-167.)  Courts decline to award fees for staff emailing documents.  *See Schmidt v. City of Modesto*, 2018 WL 6593362, at *9 (E.D. Cal. Dec. 18, 2018) (declining to award fees for emailing documents, noting emailing was a clerical task rather than a paralegal task); *LaToya A. v. S.F. Unified Sch. Dist.*, 2016 WL 344558, at *9 (N.D. Cal. Jan. 28, 2016) (forwarding documents to attorneys is "purely clerical work").  In addition, courts have disapproved of two individuals billing for communicating with each other, as such time is duplicative and unnecessary. *In re Mullins*, 84 F.3d 459, 467 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010).  Consequently, "many courts have ... reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013), citing *Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003) (reducing the fee award where the attorneys "billed an inordinate amount of time for interoffice conferences").

In "Exhibit 8" and "Exhibit 11," Jayco objects to more than 80 entries—each billed for a minimum of 0.2 hour—related to emails, chats, and telephone conferences between the paralegals and counsel.  (*See generally* Doc. 72-3 at 154-67.)  Again, though the Court declines to identify each of the internal communications given the significant number, challenged entries related to forwarding emails

16

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 207 of 381   Page
ID #:5214
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 17 of 41

or documents to others working on the action.  (*See, e.g., id.* at 154, 155, 157, 158, 165, 167.)  For example, Ms. Tyler billed for forwarding emails on April 11, 2020; September 22, 2020; November 3, 2020; and July 9, 2021. (*See, e.g.,* Doc. 70-5 at 10, 18, 21.)  Shaina Cateldge billed 0.2 for forwarding documents to others, including Ms. Tyler.  (*Id.* at 32.)  In addition, Ms. Goettman and Ms. Tyler billed for emailing documents and attachments including, but not limited to: the executed summons, a draft of the initial disclosures, the joint discovery plan, the court's conference notice, an invoice from JAMS, court orders, and settlement breakdown.  (*See, e.g.,* Doc. 70-5 at 7, 19, 27, 32, 33, 41.)  Likewise, Terry Baker billed 0.2 hour for receiving a transcript and forwarding the document to Ms. Goettman.  (Doc. 70-4 at 7.)  Given the clerical nature of these tasks, the requested fee award will be reduced for the forwarding of emails and documents.  *See Schmidt*, 2018 WL 6593362, at *9.

The paralegals also repeatedly billed for communications with others working on the case, including telephonic conversations, electronic chats, texting, and emailing.  (*See generally* Doc. 70-5 at 7-43.)  For example, Ms. Tyler and Ms. Goettman each billed 0.2 hour on April 15, 2019, for emailing one another regarding completing calendaring in the firm's system.  (Doc. 70-5 at 32.)  Ms. Tyler regularly billed for emailing counsel reminders of upcoming deadlines and actions needed.  (*See, e.g.*, *id.* at 7, 9-11, 13, 16, 32, 43.)  Ms. Tyler also billed for communications with counsel "regarding who the case is assigned to;" a hearing location; and document and task status, such as changing the attorney assignment in the firm's system, filing the summons, and "calendaring the settlement conference." (*See, e.g., id.* at 7, 14, 34-36, 41.)  Further, Ms. Cateldge billed 0.2 hour for each of the electronic chats in which she simply notified Ms. Tyler and Mr. Dupart of Plaintiffs' phone calls.  (*Id.* at 35-36, 39.)  Similarly, Ms. Goettman billed for chat and text messages that included date confirmation.  (*See, e.g.*, Doc. 70-5 at 17-18.)  In addition, Ms. Goettman billed 1.0 hour for communications with co-counsel, such as emails with Terry Baker related to the motion to reset the scheduling conference, his pro hac vice application, and forwarding documents on December 5, 2018.[4]  (*Id.* at 32.)

Due to the clerical nature of internal communications among those working on the action—as well as the significant number of entries related to the interoffice communication by the paralegals—

---

[4]  Notably, Mr. Baker also billed for the email exchange on December 5, 2018.  (Doc. 70-4 at 6.)  Thus, this time for Ms. Goettman is also duplicative in nature. *See In re Mullins*, 84 F.3d at 467; *Robinson*, 717 F. Supp. 2d at 1099.

17

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 208 of 381   Page
ID #:5215
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 18 of 41

the requested fee award should be reduced.  *See In re Mullins*, 84 F.3d at 467; *Gauchat-Hargis*, 2013 WL 4828594 at \*3; *Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d at 1194.  Accordingly, based upon the Court's review of the challenged billing records, 19.5 hours will be deducted from the lodestar calculation, which includes: 0.2 hour for Terry Baker, 11.7 hours for Lisa Tyler, 6.4 hours for Kayla Goettman, 0.6 hour for Shaina Cateldge, 0.2 hour for Kimberly Riley, and 0.4 hour for Gabriela Torres.

### g.      Docket review

Entries to which Jayco objects include docket reviews by Lisa Tyler and Kayla Goettman. (Doc. 72-3 at 157, 162.)  Specifically, on October 31, 2018, Ms. Tyler billed 0.2 hour for reviewing the "court website to see if any tentative issued" prior to the hearing on the motion for change of venue, and noted she "didn't see anything."  (Doc. 70-5 at 36.)  Ms. Goettman also billed 0.2 hour to review the docket to determine whether any hearings were continued on April 13, 2020. (*Id.* at 21.)  Reviewing the docket is a clerical task, for which this Court has declined to award fees. *See, e.g., Moore v. Chase, Inc.*, 2016 U.S. Dist. LEXIS 88293, at \*12 (E.D. Cal. July 7, 2016).  Therefore, 0.4 hour will be deducted from the lodestar, including 0.2 hour for Lisa Tyler and 0.2 hour for Kayla Goettman.

### h.      Scheduling

Jayco identifies and challenges 16 billing entries related to scheduling depositions, and the vehicle inspection.  (*See* Doc. 72-3 at 160-161; Doc. 72-3 at 126.)  In September 2019, Ms. Tyler billed 0.2 hour for contacting Plaintiffs regarding scheduling a vehicle inspection, while Ms. Torres billed 0.3 hour for contacting opposing counsel to confirm the vehicle inspection date.  (*Id.* at 128, 160; Doc. 70-5 at 28.)  In addition, Ms. Tyler billed at total of 2.4 hours between December 2019 and March 2020 for emails to Plaintiffs and opposing counsel related to scheduling Plaintiffs' deposition dates.  (*Id.* at 160-161; *see also* Doc. 70-5 at 22-25.)  Kimberly Riley also billed 0.4 hours related to confirming the deposition dates.  (Doc. 72-3 at 126; Doc. 70-5 at 26.)

Courts in the Ninth Circuit have repeatedly indicated that communication related to scheduling, even with a client, is a non-compensable clerical task.  *See, e.g., Soler v. County of San Diego*, 2021 WL 2515236, at \*10 (S.D. Cal. June 18, 2021) (identifying "time spent scheduling depositions… [as] clerical tasks non-compensable at any billing rate"); *Brown v. Cascade Mgmt., Inc.*, 2018 WL 4207097, at \*5, 14 (D. Or. Sept. 4, 2018) (emails with the client regarding "deposition scheduling" were deduced

from the fee award); *Schrum v. Burlington N. Santa Fe. Ry. Co.*, 2008 WL 2278137, at *12 (D. Az. May 29, 2018) (identifying "scheduling depositions" as "tasks which the court deems clerical or secretarial, and hence not compensable as part of the attorneys' fee award").  Likewise, the Court finds communications regarding scheduling a vehicle inspection are clerical in nature.  Thus, given the clerical nature of the challenged entries related to scheduling, the lodestar will be reduced by 2.6 hours for Lisa Tyler, 0.4 hour for Kimberly Riley, and 0.3 hour for Gabriela Torres.

i.      *Communications with clients*

"A lawyer has an ethical responsibility to communicate with a client."  *Clendon v. Astrue*, 570. F.Supp. 2d 1164, 1667 (D. Az. 2008).  Nevertheless, as one district court observed, "some client communications may be considered clerical or ministerial, such as merely informing the client that a document has been filed or what a hearing date is, [while] others that are more substantive are part of an attorney's duties, and therefore billable."  *See James v. City & County of Honolulu*, 2014 WL 6908313, at *10 (D.Haw. Dec. 8, 2014) (internal quotation marks omitted).

Billing entries challenged by Jayco include non-clerical communications with Plaintiffs, related to questions or case issues.  By way of example, on October 4, 2018, Ms. Tyler noted she received a voicemail from Plaintiffs "regarding whether or not he should move forward with fixing the damage to his unit, while at the dealership," and billed 0.6 hour for several communications related to the phone call.  (Doc. 70-5 at 37.)  The Court declines to deduct the challenged time for these ongoing communications with Plaintiffs.  Similarly, the Court declines to find communications with Plaintiffs regarding discovery requests and verifications and addressing the settlement agreement were purely clerical in nature.

On the other hand, eight challenged entries indisputably include clerical communications.  (*See* Doc. 72-3 at 127, 154, 151, 146-45.)  Ms. Riley billed 0.4 hour related to forwarding a document for signature and the needed signature from Plaintiff.  (Doc. 70-5 at 27.)  In addition,  emailing Plaintiff simply to "confirm[] receipt of documents" was a clerical task, and the 0.2 hour billed by Ms. Tyler will be deducted.  (Doc. 70-5 at 42.)  Similarly, Ms. Tyler billed 0.2 hour to email Plaintiffs a declaration for signature and 0.2 hour "confirming receipt" once Plaintiffs responded on January 24, 2020.  (*Id.* at 23.)  Ms. Tyler also billed 0.6 hour for communications with Plaintiffs regarding the

19

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 210 of 381   Page
ID #:5217
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 20 of 41

settlement conference date and appearances.  (*Id.* at 11-13)  Given the clerical nature of the tasks related to scheduling, sending documents, and confirming receipt, the time billed should be omitted from the lodestar. *See, e.g. Schmidt*, 2018 WL 6593362, at *9 (emailing documents is a clerical task); *Soler*, 2021 WL 2515236, at *10 (identifying scheduling as clerical work).  Thus, based upon the Court's review of the challenged billing records related to client communications, the lodestar calculation will be reduced by 0.4 hour for Kimberly Riley and 1.2 hours for Lisa Tyler.

*j.*        *Communications with opposing counsel*

Jayco challenges two entries in "Exhibit 8" and two  billing entries in "Exhibit 11" that indicate emailed communication with opposing counsel, objecting the time should not be awarded as "clerical" in nature.  (*See* Doc. 72 at 9-10; Doc. 72-3 at 128.)

Specifically, Kimberly Riley billed 0.4 hour for two emails attaching document production to opposing counsel on October 13, 2019. (Doc. 70-5 at 27.)  Chad David billed 0.2 hour to send the settlement agreement to Defendant's counsel on August 6, 2021.  (Doc. 72-3 at 166.)  Because Plaintiffs and counsel had previously executed the agreement[5], it appears Mr. David was only required to forward the document to opposing counsel.  As discussed above, mailing and forwarding documents is deemed clerical work that is included in a firm's overhead costs.  *See Schmidt*, 2018 WL 6593362 at *9; *see also Chavez v. Stomp*, 2014 WL 12796784, at *5 (N.M.D.C. Feb. 27, 2014) (delivering documents to opposing counsel is a clerical task for which billing at an attorney's rate "is not consistent with the obligation to exercise billing judgment").  In addition, Mr. David billed 0.2 hour for communications related to "payment instructions" for opposing counsel.  (*Id.*)  However, emailing payment instructions was clerical, work as it did not require any legal work or analysis of the information.  Accordingly, 0.4 hour is deducted from the lodestar for Kimberley Riley and 0.4 hour is deducted for Chad David.

*k.*        *Communications with the Court and JAMS*

This Court and others declined to award fees for communicating with the Court—such emailing or calling courtroom deputy—due to the clerical nature of the task.  *See, e.g., Miller v. Schmidt*, 2017

---

[5] Plaintiffs executed the settlement agreement on August 3, 2021; and Mr. David executed the agreement on August 5, 2021.  (Doc. 70-3 at 11.)

20

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 211 of 381   Page
ID #:5218
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 21 of 41

WL 633892, at *7 (E.D. Cal. Feb. 15, 2017) (agreeing with the party opposing the fee request that "communicating with the Court staff and court reports is purely clerical work" and excluding the time billed for communications with the courtroom deputies from a fee award); *Robinson v. Plourde,* 717 F. Supp. 2d 1092, 1099-1100 (D. Haw. 2010) ("communication with court staff, scheduling, and corresponding regarding deadlines, are clerical and not compensable [tasks]"); *Comcast of Illinois X v. Kwak*, 2010 WL 3781768, at *6 (D. Nev. Sept. 20, 2010) (declining to award fees for "ministerial tasks such as contacting court staff for scheduling reasons or noting due dates").

Ms. Tyler billed 0.2 hour on several occasions for contacting the court, both by email or phone call. For example, on September 14, 2018, Ms. Tyler billed 0.2 hour for her "[e]mail to court regarding appearing telephonically" and another 0.2 hour for her "response to [the] clerk confirming Plaintiff can appear telephonically." (Doc. 70-5 at 39.) On November 21, 2018, Ms. Tyler billed 0.2 hour for emailing the court clerk regarding the status of an order, and 0.2 hour for leaving a voicemail regarding the status with a request for a return call. (*Id.* at 34.) She billed another 0.3 hour for contacting the court with status requests on November 26, 2018. (*Id.*) Ms. Tyler billed 0.2 hour for review of "court emails" on April 5, 2019. (*Id.* at 32.) Further, between June 30 and July 9, 2021, Ms. Tyler billed 1.9 for contacts regarding the conference, availability, inquiring whether only Kevin Scott could appear during the conference, confirming the date, and Zoom information. (*Id.* at 10-13.) Given the clerical nature of these communications, 3.2 hours shall be deducted from the lodestar for Ms. Tyler. *See Miller*, 2017 WL 633892, at *7; *Robinson,* 717 F. Supp. 2d at 1099-1100.

In addition, Cindy Lewandowski billed 0.2 hour for forwarding an email from the Court that informed the parties there would be no jury trials in April 2021, and asking Mr. Baker to respond as soon as possible for calendaring purposes. (Doc. 70-5 at 17.) Given the communications concerned scheduling, 0.2 hour will be deducted from the fee award for Ms. Lewandowski.

Likewise, given the quasi-judicial nature of JAMS, and communications between Plaintiffs' counsel and the mediation organization—and actions related thereto—appear clerical. Ms. Goettman billed 0.2 for her review of the "mediation confirmation from JAMS and confirm[ing] details on [the] calendar." (Doc. 72-3 at 160; Doc. 70-5 at 26.) She also billed 0.2 hour to "[r]eview the JAMS deposit request form" and "update [the] costs in the case file." (*Id.* at 160; Doc. 70-5 at 25.) Ms. Riley billed

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 212 of 381    Page
ID #:5219
Case 1:19-cv-00315-JLT    Document 75    Filed 12/20/21    Page 22 of 41

0.2 hour for her receipt of an email from JAMS and saving it to the firm's system. (*Id.* at 126; Doc. 70-5 at 27.) There is nothing suggesting review of the mediation confirmation, confirming the date, or noting the cost in the firm's file requires the work of a paralegal. Thus, the 0.4 hour billed by Ms. Goettman and the 0.2 hour billed by Ms. Riley related to communications from JAMS will also be omitted from the fee award.

### l.    Document preparation and mailing

On July 9, 2018, Ms. Goettman billed 0.3 hour to "[f]ill out Summons & attach proof of return receipt from the certified mailing; upload to the case files." (Doc. 72-3 at 154; Doc. 70-5 at 42.) It is unclear what Ms. Goettman filled out, as the Summons was issued by the Court on June 22, 2018. (Doc. 2.) Regardless, the Ninth Circuit identified "preparing and serving summons" as "purely clerical tasks." *Neil v. Comm'r of Soc. Sec.,* 495 F. App'x 845, 847 (9th Cir. 2012). In addition, tasks related to mailing and drafting a certificate of service are clerical. *Acosta v. Martinez*, 2020 WL 1026890 at \*10 (E.D. Cal. Mar. 2, 2020) ("drafting certificates of service… and sending documents" are clerical tasks). Therefore, this time billed by Ms. Goetteman will be deducted.

Ms. Tyler billed 0.2 hour to complete a form declining consent to magistrate judge jurisdiction and e-file it on August 22, 2018. (Doc. 70-5 at 40; Doc. 72-3 at 155.) The Court's consent form is a single-page, check-the-box document could not take more than moments to complete. Previously, this Court noted that "completing and filing a consent to proceed before a magistrate judge form" is work that may be "completed by experienced support staff," but allowed minimal billed time, considering the documents should be review by a counsel. *Kirk*, 244 F.Supp.3d at 1084. On the other hand, e-filing the form, as discussed above, is clerical work. *Nadarajah*, 569 F.3d at 921. Thus, the Court will deduct 0.1 for Ms. Tyler for the e-filing. *See Calderon v. Astrue,* 2010 WL 4295583 at \*5 (E.D. Cal. Oct. 22, 2010) (permitting only 0.1 hour for completion of the form regarding magistrate judge jurisdiction). Likewise, the Court will deduct the challenged 0.2 hour billed by Ms. Tyler to draft the certificate of service for Plaintiff's initial disclosures and 0.2 hour for generating a mailing label due to the clerical nature of the work. (Doc. 72-3 at 155, 157, Doc. 70-5 at 33, 39.)

Conversely, the preparation of representation agreements and declarations is not *purely* clerical work, as it is appropriate for paralegals and counsel to prepare such agreements. The Court declines to

22

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 213 of 381   Page
ID #:5220
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 23 of 41

deduct the challenged billed time related to preparation of these documents.  Based upon the Court's review of the challenged entries related to document preparation, 0.8 hour will be deducted from the lodestar calculation, which includes 0.3 hour for Kayla Goettman and 0.5 hour for Lisa Tyler.

*m.*     *Discovery*

Jayco objects to the time billed by Gabriela Torres related to discovery and preparation of "discovery shells," including an entry for 6.0 hours, asserting it was clerical work.  (Doc. 72 at 8.)  However, the Court declines to assume the identified tasks were purely clerical in nature.  Indeed, the challenged billing entries indicates the work completed by Ms. Torres included preparing "rough responses" to the written discovery requests from Jayco, including responses interrogatories and requests for production of documents.  (*See* Doc. 70-5 at 30.)  Because this work is not purely clerical, the lodestar will not be reduced.  *See, e.g., Chloe SAS v. Sawabeh Information Servs. Co.*, 2015 WL 12763541, at *26 (C.D. Cal. June 22, 2015) (hours billed by professional staff for collecting and reviewing discovery was not clerical, and were "substantive case-related tasks"); *Triplett v. N.C. Dept' of Pub. Safety,* 2017 WL 3840422, at *11 (W.D.N.C. Aug. 31, 2017) (declining to reduce a fee award for billing entries challenged to which the defendant objected as clerical because"[t]he drafting and editing of discovery requests and answers… is far from a clerical task and is a task appropriate delegated to a paralegal").

*n.*     *Tasks related to admission*

Jayco objects to the time billed by Ms. Tyler for her "[r]eview [of] Indiana Northern district for admission requirements," which she then printed for Mr. Dupart.  (Doc. 72-3 at 157.)  In addition, Jayco objects to the time billed by Mr. Baker for contacting Ohio attorney services regarding a certificate of good standing as clerical.  (*Id.* at 158.)  Previously, the Ninth Circuit indicated tasks related to "attorney admission" are clerical in nature.  *See Nadarajah*, 569 F.3d at 921 (reducing the requested fee award for the time award billed by a paralegal related to counsel's admission).  Based upon the clerical nature of the tasks concerning Mr. Dupart's admission to the Northern Indiana District Court, the 0.2 hour billed by Lisa Tyler and 0.2 hour billed by Terry Baker will be deducted from the lodestar calculation.

///

23

*o.*        *Mixed entries with block-billed tasks*

As explained by one district court, "[b]lock billing, which bundles tasks in a block of time, makes it extremely difficult for a court to evaluate the reasonableness of the number of hours expended." *Aranda v. Astrue*, 2011 U.S. Dist. LEXIS 63667, at *13 (D. Ore. June 8, 2011); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("block billing makes it more difficult to determine how much time was spent on particular activities"). In addition, a court may reduce a fee award when "documentation of hours is inadequate." *Hensley*, 461 U.S. at 433.  Accordingly, the Ninth Circuit has explained that, where time is billed in "blocks," the Court may "simply reduce[] the fee to a reasonable amount." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Welch*, 480 F.3d at 948 ("We do not quarrel with the district court's authority to reduce hours that are billed in block format.").

Although the Court addressed several block-billed entries above that included only clerical tasks, there were also many challenged entries that involved legal research.  As identified below, Ms. Goettman and Ms. Tyler billed for performing legal research—including reviewing local rules and the Federal Rules—which is not clerical work.  *See Nechitaylo v. Wedum Family Ltd. P'ship*, 2015 WL 8479627, at *2 (E.D. Cal. Dec. 10, 2015) (finding "tasks involving legal research" were not clerical); *Chloe SAS*, 2015 WL 12763541, at *26 (fees billed by staff who assisted counsel "performing legal research" were recoverable).  Thus, to the extent the billed records below involve legal research, such time is compensable.

| DATE | BILLER | TASK | TIME |
|---|---|---|---|
| 6/28/18 | KG | Review FRCP 4 re service of the Summons and Complaint; the rule states that we can follow state rules regarding service. Print Docket No. 1-4 and give all to SJ in addition to Jayco's registered agent information for certified mailing to D today | 0.6 |
| 9/27/18 | LT | Review local rule re motion deadlines and saved to Merus. Calendared motion and deadlines. Uploaded and saved motion docs to file. Print hard copy for RD, and noted d/l to file oppo on docs. Also printed rules for him, and summary of calendar of events with upcoming deadlines, etc. Put on his chair for review. | 0.7 |
| 4/1/21 | LT | Review TB's email regarding dates for matter. Check file, and saw trial date and pre-trial needed to be calendared, with related deadlines. Email response to TB and updated him dates needed to be added. Review file for docs, and emails from the court, to figure out dates to be calendared, and for related deadlines to be saved…. | 1.5 |

24

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 215 of 381   Page
ID #:5222
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 25 of 41

| | | Review order #45. Review local rules. Updated notes, calendar and d/l sheet, and saved notes to file. | |
|---|---|---|---|
| 6/4/21 | LT | Review local forms for appearance/withdrawal for eastern, and there weren't any. Found Central, but that won't work. Kept trying to find forms. Found general one for appearance and drafted for CD review. Went ahead and revised a withdrawal on pleading, that way if CD wants to mess with language, he can. Uploaded/saved docs to file, and updated chat. | 0.6 |
| 6/21/21 | LT | Link court email and saved Doc#61 to file. Review order signed by court. Review local rule re settlement conference. Review doc #45. Review dept. rules. Updated notes, calendar, and d/l sheet. | 0.6 |

Where, as here, the billing records present time in blocks, the Court may "simply reduce[] the fee to a reasonable amount." *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Welch*, 480 F.3d at 948 ("We do not quarrel with the district court's authority to reduce hours that are billed in block format"). Because the firm billed in a minimum of 0.2 hour increments—as discussed further below—the Court will deduct 0.2 hour from each of the above entries to reflect the inclusion of clerical tasks, such as printing, uploading. and saving documents; file reviews and updates; calendaring deadlines; and internal communications about clerical matters. This results in a reduction of the lodestar by 0.2 hour for Ms. Goettman and 0.8 hour for Ms. Tyler.

### 4. Vague entries and overbilling

Jayco asserts that it "identified a number of entries in … counsel's records that are vague and lack sufficient specificity about what was done to justify the time and fees billed." (Doc. 72 at 11.) As discussed above, counsel has a burden to document the hours expended, and do so in "in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. The Court may reduce hours to offset the "poorly documented" billing. *Fischer v. SJN-P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Mendez v. County of San Bernardino*, 540 F.3d 1109 (9th Cir. 2008) (finding district courts have broad discretion to reduce the number of hours included in the fee award where the billing records are vague, insufficiently descriptive, or inflated).

This Court and others in the Ninth Circuit have reduced fee awards where the billing entries were too vague to conduct "a meaningful review" or determine whether the time expended was reasonable. *See, e.g., McCarthy v. R.J. Reynolds Tobacco Co.,* 2011 WL 4928623, at *4 (E.D. Cal. Oct. 17, 2011) (reducing time for a fee award where "most of the entries refer only generally to 'legal

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 216 of 381    Page
ID #:5223
Case 1:19-cv-00315-JLT    Document 75    Filed 12/20/21    Page 26 of 41

research' and 'conversations with [co-counsel]' without identifying the subject of the research or conversations"); *Nolan v. City of Los Angeles,* 2014 WL 12564127, at *7 (C.D. Cal. Feb. 10, 2014) (criticizing "entries that merely indicate that an email was sent or that a phone call was made without describing in any way the reason for or topic of the particular correspondence" and reducing the lodestar); *Davis v. Prison Health Serv*., 2012 WL 4462520, at *11 (N.D. Cal. Sept. 25, 2012) (concluding billing entries were "too vague to enable the Court to assess the reasonableness of the time claimed" when there were "scores of time entries such as 'review e-mail from opposing counsel,' 'review e-mail chain,' and 'draft e-mail' without any further detail provided").

Jayco contends the billing records the billing records of Plaintiffs' counsel also are vague, warranting a reduction in fees.  (Doc. 72 at 10-12.)  Specifically, Jayco asserts:

> Plaintiff counsel's billing contains numerous entries that say "E-mail client", "E-mail opc", or "E-mail exchange with...", without providing any details as to the substance of the communication. There are also entries that are devoid of any information as to what tasks were specifically performed such as a description on 8/21/19 that is simply "Scott v. Jayco" for .5 hours. The vagueness of these and other similarly deficient billing entries makes it impossible for the Court to assess whether the time claimed by Plaintiffs' counsel was reasonably expended.

(*Id.* at 12.)  Jayco compiled 99 billing entries it asserts should be stricken as vague in "Exhibit 12," totaling 27.9 hours.  (*See id.*; *see also* Doc. 169-71.)  In addition, Jayco contends "there are numerous examples of billing entries that typical would be billed at .1 even though 6 minutes is more than what it would take to complete a task," such as calling Plaintiffs and leaving voice messages and calendaring deadlines.  (*Id.* at 12.)  Thus, Jayco "requests a 75% reduction due to the considerable vague nature of the excessive billing entries in Exhibit 12 where the lack of specificity severely interferes."  (*Id.*)

In response, Plaintiffs argue that "many of the entries are sufficiently specific" in Exhibit 12. (Doc. 73 at 6.)  For example, Plaintiffs observe: "Billing entries such as "Email D" or "Email OPC" are well known to mean email Defendant and email Opposing Counsel."  (*Id.*)  Plaintiffs contend: "All correspondence with opposing counsel is recoverable billing. Further specificity of the entries is not necessary when Defense counsel has records of the emails received that correspond to the billing entries."  (*Id.*)  Plaintiffs also assert "any further specificity on the billing entries more than 'email opc' or 'spoke with client' would lead to issues concerning attorney-client privilege and the attorney

work product doctrine." (*Id.*)  Finally, Plaintiffs observe that "defense counsel makes no arguments that any of the alleged vague billing entries did not in fact occur as they also have records of the communications that were billed for." (*Id.*)  Therefore, Plaintiffs "request[] that no billing entries be disallowed due to being vague." (*Id.*)

Significantly, Jayco's presentation of the challenged billing entries in Exhibit 12—pulling the entries out of the chronological order from the original billing records and reorganizing them into alphabetical order of the identified tasks—gives the appearance that the billing records are more vague than, in fact, they are.  Review of the challenged entries in the context of the original billing records provides clarity as to many of the topics of communications with Plaintiffs and opposing counsel.  For example, Jayco challenges three entries that state "Email D" on September 13, 2018 as vague.  (Doc. 72-3 at 169.)  However, the billing records clearly indicate Plaintiffs' counsel and Defendant's counsel were engaged in ongoing communications that day related to preparation of and revisions to the Joint Scheduling Report (*See* Doc. 70-5 at 39-40.)  Similarly, Jayco challenges 12 entries related to communications between July 13 and July 15, 2021, including calls, voice messages, and emails to Plaintiffs and opposing counsel. (Doc. 72-3 at 169-71.)  Other entries with these in the billing records show the challenged entries were a portion of ongoing communications regarding settlement, prior to the parties notifying the Court that the action settled on July 15, 2021.  (*See* Doc. 70-5 at 9-10; *see also* Doc. 64 [indicating the parties informed the Court on July 15 that a settlement was reached, and vacating the settlement conference for July 16].)  A simple review of the original billing records also easily reveals the topics of ongoing communications challenged in Exhibit 12 including, but not limited to: emails with opposing counsel regarding the motion to transfer venue, discussion regarding the parties' stipulation to transfer the action back to the Eastern District, preparation prior to a settlement conference, and email exchanges with Plaintiffs concerning availability.  (*E.g., compare* Doc. 72-3 at 169-171 *with* Doc. 70-4 at 7, Doc. 70-5 at 9, 13-14, 19-20.)  Consequently, the Court declines to find the billing records are poorly documented or too vague to evaluate.

On the other hand, the Court notes that counsel and the professional staff billed a minimum of 0.2 hour for each task. This is comparable to the quarter-hour billing repeatedly criticized by the courts, because it inflates the time billed on the matter. *See e.g., Welch v. Metro Life Ins. Co.,* 480 F.3d

27

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 218 of 381    Page
ID #:5225
Case 1:19-cv-00315-JLT    Document 75    Filed 12/20/21    Page 28 of 41

942, 949 (9th Cir. 2007) (affirming a reduction after finding the billing practice inflated the time recorded); *Robinson v. Plourde,* 717 F. Supp. 2d 1092, 1100-01 (D. Haw. 2010) (applying a 20% reduction for billing with a minimum of 0.25 hour); *Prudential Ins. Co. v. Am. v. Remington,* 2014 WL 294989 at *4 (E.D. Cal. Jan. 24, 2014) (also applying a 20% reduction where counsel billed a minimum of 15 minutes and in 15-minute increments).

In *Welch*, the district court "imposed a 20 percent across-the-board reduction on [the] requested hours" because the law firm "billed in quarter-hour increments." *Welch*, 480 F.3d at 948. The court concluded the "practice of billing by the quarter-hour resulted in a request for excessive hours . . . because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* The Ninth Circuit also reviewed the time sheets and noted: "Our own review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intraoffice conferences." *Id.* Therefore, the Court affirmed the reduction for quarter-hour billing. *Id.*

The thorough review of counsel's billing records strongly suggests the 0.2 hour minimum resulted in overbilling. Counsel and professional staff billed 12 minutes on numerous occasions for voices messages, reviewing minute orders, more than 50 emails[6]. (*See e.g.,* Doc. 70-5 at 6; Doc. 70-5 at 8-9, 13-15, 20, 22.) Notably, Plaintiffs do not disavow a practice of billing a 0.2 hour minimum or otherwise address Jayco's arguments concerning how the practice results in overbilling in the reply. In *Remington*, this Court observe that "15-minute billing for reading the three-sentence Minute Order, which should have been read in 30 seconds or less time, obviously inflated the time spent performing that task, and causes concern that other unverifiable tasks likely took a fraction of the time billed to complete." *Remington*, 2014 WL 294989 at *4. Similarly, billing 12 minutes for noting a minute order to the file (*see, e.g.* Doc. 70-5 at 36) suggests the reported time was inflated significantly by the 0.2 hour billing minimum on other tasks such as reviewing emails, leaving a telephone message, and telephone conferences with Plaintiffs and co-counsel. *See id; Welch*, 480 F.3d at 948-49. Therefore, the remaining time reported by counsel is reduced by 15% for purposes of the lodestar calculation.

---

[6] This excludes intraoffice emails addressed above.

28

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 219 of 381    Page
ID #:5226
Case 1:19-cv-00315-JLT    Document 75    Filed 12/20/21    Page 29 of 41

### 5.    Unsupported and "anticipated" time

Plaintiffs contend, "It is well established that Plaintiffs are entitled to fees for bringing in this motion to enforce their right to attorney fees."  (Doc. 71 at 14, citing *Serrano v. Unruh*, 32 Cal.3d 621, 637-639 (1982); *State v. Mayer*, 174 Cal.App.3d 1061, 1075 (1986).)  Therefore, Plaintiffs seek "an additional $7,500 for bringing [the] Motion, reviewing Jayco's Opposition to Plaintiffs' Motion, drafting Plaintiffs' Reply, preparing and attending any related hearing, preparing any needed filings to satisfy the order, for time to wrap up the settlement and ultimately collect any amount awarded by this Court."  (*Id.* at 6.)

Importantly, Plaintiffs failed to provide any evidence with the Reply related to the time actually spent preparing the motion, reviewing the opposition, and drafting the brief.  In addition, the motion was taken under submission without oral arguments.  (Doc. 74.)  The Court declines to speculate as to the actual time spent by counsel in preparation of the instant motion and the reply, as it is the fee applicant's burden to present evidence to support the fee request.  *See Hensley*, 461 U.S. at 424; *Welch*, 480 F.3d at 945-46.  Accordingly, the Court declines to bolster the lodestar with the monetary amount requested.

### B.    Hourly rates

The Supreme Court determined attorney fees are to be calculated with "the prevailing market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000) ("[t]he reasonable hourly rate is that prevailing in the community for similar work").  The fee applicant has the burden to establish the rates are reasonable within the community, and meets this burden by "produc[ing] satisfactory evidence—in addition to counsel's own declarations—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum*, 465 U.S. at 896 n.11.  For example, the Court may refer to "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding fees in the community" and rates paid in other cases.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits."  *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 220 of 381   Page
ID #:5227
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 30 of 41

Cir. 2008). Thus, when a case is filed in this Court, the Eastern District of California "is the appropriate forum to establish the lodestar hourly rate." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011); *see also Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June 19, 2014). The court may apply "rates from outside the forum… 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)).

### 1. Rates for counsel

Although the Law Offices of Jon Jacobs is currently located in Temecula, California—which is within the Central District of California—the law office was headquartered near Sacramento when the complaint was filed. (*See* Doc. 1 at 1; Doc. 73 at 4.) Thus, the Court finds, for purposes of this motion, that counsel were "local" to the Eastern District, such that the Court need not determine whether rates outside the form are applicable. Rather, the Court must evaluate whether the hourly rates requested are reasonable for the Eastern District of California.[7]

The attorneys on this action seek hourly rates ranging from $350 to $650. (Doc. 71 at 7-8.) Specifically, Mr. Jacobs seeks the hourly rate of $495 for the 2.2 hours of work he completed in 2018 and the rate of $550 for his 0.6 hour of work in 2021. (*See* Doc. 71 at 8; Doc. 70-4 at 7, 9, 43.) Mr. Baker reports his "hourly rate started at $525, and increased to $650 per hour…[i]n March of 2020." (Doc. 70-4 at 3, Baker Decl. ¶ 12.) In addition, Plaintiffs seek $495 per hour for work completed by Rene Dupart, who was admitted to the California State Bar in 2013, and Elana Midda, who was admitted to the bar in December 2004.[8] (Doc. 70-5 at 4, Jacobs Decl. ¶ 19.) In addition, they seek $175 per hour for work completed by Chad David while he was a law clerk, and $350 per hour for work completed after his admission to the Bar in November 2019. (Doc. 70-3 at 2, David Decl. ¶¶ 7-

---

[7] With the Eastern District, the Sacramento Division and Fresno Division award comparable rates. *See Fitzgerald v. Law Office of Curtis O. Barnes*, 2013 WL 1627740, n.5 (E.D. Cal. Apr. 15, 2013) (observing that "[c]ases from this Court's Sacramento Division largely mirror the rate determinations from the Fresno Division").

[8] Plaintiff did not provide any information regarding when Elana Midda began practicing law. However, the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014). Thus, the Court takes judicial notice of the admission date of Elana Midda as December 2004, as represented on the website of the State Bar of California. *See id.*; Fed. R. Evid. 201(b).

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 221 of 381   Page
ID #:5228
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 31 of 41

8; Doc. 71 at 7-8.)

Jayco objects to the hourly rates sought by Plaintiffs' counsel "are unreasonable compared to what small litigation firms bill and should be adjusted accordingly." (Doc. 72 at 4.) According to Jayco, "there is no indication in any of the moving papers that the rates being sought here by Plaintiffs' counsel are their usual and customary rates and that their clients routinely pay these rates or that any court has awarded them these rates." (*Id.*, emphasis omitted.) Jayco observes: "Mr. Jacob's Declaration and Mr. Baker's Declaration both lack any sort of information to identify which cases, if any, they have been awarded the requested hourly rates or the outcome of court rulings on prior fee motions." (*Id.* at 5.) Further, Jayco notes that in *Flores v. FCA US LLC*, "this Court granted in part an attorneys' fees motion and reduced a fee request," finding reasonable hourly rates for "in the Eastern District of California's Fresno Division … generally rang[e] from $250 to $400 for attorneys." (*Id.* at 5-6, citing *Flores*, 2019 U.S. Dist. LEXIS 203497 (E.D. Cal. Nov. 19, 2019).)

In reply, Plaintiffs' contend "the *Flores* case is readily distinguishable to the case at hand both factually and in regards to the basis of the attorney fees sought." (Doc. 73 at 4.) Plaintiffs observe: "Flores involved a Dodge RAM passenger vehicle that was purchased in California and contained a known defect," and "[f]rom all records available, it appears *Flores* was a 'simple' lemon law case." (*Id.*, citing *Flores*, 2019 U.S. Dist. LEXIS 203597, at *4.) In addition, Plaintiffs contend, "[i]n August of 2020, the Eastern District of California found that Mr. Jacobs' and Mr. Baker's hourly rate for lodestar purposes to be $505 per hour." (*Id.* at 3, citing *Seebach v. BMW of N. Am., LLC*, 2020 U.S. Dist. LEXIS 152330 at *9, 2020 WL 4923664 at *3 (E.D. Cal. Aug. 21, 2020).) Plaintiffs assert, "In *Seebach*, the Court also confirmed the rates of attorney Ryan Gomez of $300 and $350 per hour who has the same level of experience as attorney Chad David at the time." (*Id.* at 3-4.)

Previously, the Court observed: "A recent comprehensive analysis of attorney's fees in this district found the following hourly rates to be reasonable: $450 for partners with at least 20 years of experience; $400 for partners with between 10 and 20 years of experience; and $250 for associates with between four and 10 years of experience." *Price Simms Holdings v. Candle3*, 2021 WL 1884995, at *2 (E.D. Cal. May 11, 2021), citing *Firstsource Sols. USA, LLC v. Tulare Reg'l Med. Ctr.*, 2019 WL 2725336, at *8 (E.D. Cal. June 28, 2019); *but see Acosta v. Perez*, 2021 WL 3910543, at *12 (E.D. Cal.

Sept. 1, 2021) ("District Judge Anthony W. Ishii … surveyed prevailing rates in this district and found that reasonable hourly rates … are between $175 and $380, depending on the attorney's experience and expertise, with $300 being the upper range for attorneys with 10 years or less experience"). However, as Plaintiffs assert, this Court recently awarded higher hourly rates to counsel in *Seebach*.

In *Seebach*, the plaintiffs were also represented by Jon Jacobs and Terry Baker in a lemon law action filed originally in December 2017. *See id.*, 2020 WL 4923664 at *2-3. The parties reached a settlement, but "could not agree on a reasonable attorneys' fee amount" and filed a motion for fees. *Id.* at *1. Counsel requested hourly "rates ranging from $350 to $650 per hour for work performed on the case," including $650 per hour for Mr. Baker and $550 per hour for Mr. Jacobs, $400 for an attorney "with roughly one year of experience," and $300 to $350 per hour for an attorney "with roughly 4 years of experience." *Id.* at *3. The Court noted opined the "requested rates [were] not reasonable for lodestar purposes." *Id.* Given the experience of Mr. Jacobs and Mr. Baker—which each had "roughly 20 years of experience"—the Court reduced their hourly rate to $505, noting it was taking into account state court judgments cited by Mr. Baker in which he was awarded $475 to $505 per hour in similar actions. *Id.* In addition, the Court reduced the hourly rate of Mr. Walker to $200 to reflect that he had "one year and two months of experience litigating." *Id.*

Based upon the Court's prior surveys of hourly rates awarded in this district, Plaintiffs fail to demonstrate the reasonableness of the rates requested by counsel, and the hourly rates must be adjusted to rates that are reasonable in this forum to calculate the lodestar. *See Seebach,* 2020 WL 4923664, at *3. John Jacobs seeks the rate of $495 per hour for his work completed in 2018, and $550 for his work completed in 2021. (*See* Doc. 71 at 8.) As previously noted, Mr. Jacobs has practiced law for more than 20 years. This Court found the reasonable rate for attorneys in the Eastern Division was "$450 for partners with at least 20 years of experience." *See Price Simms Holdings*, 2021 WL 1884995 at *2, citing *Firstsource Sols. USA, LLC*, 2019 WL 2725336 at *8 (E.D. Cal. June 28, 2019); *see also Eagle Sys. & Servs. v. Int'l Assoc. of Machinists,* 2017 WL 1213373 at *3 (E.D. Cal. Mar. 31, 2017) (finding the rate of $450 was acceptable in this district "for partners with 20 to 35 years of experience"). Therefore, the hourly rate for work completed by Mr. Jacobs in 2018 will be reduced to the rate of $450. In addition, his hourly rate for work completed in 2021 will be reduced to $505, to

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 223 of 381   Page
ID #:5230
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 33 of 41

align with the hourly rate previously approved as reasonable for Mr. Jacobs by this Court. *See Seebach*, 2020 WL 4923664, at *3. Likewise, the hourly rates requested by Mr. Baker will be reduced to $505 to mirror the fees awarded in *Seebach* and the state court judgments previously reviewed by the Court. *See id.*

The requested hourly rate of $495 for Elana Midda and Rene Dupart must also be reduced to be reasonable for this forum. The rate for Ms. Midda, who was admitted to practice in 2004 and had approximately 14 years of experience when she worked on the action, will be reduced to $350 per hour. *See In re Taco Bell Wage & Hour Actions,* 222 F. Supp. 3d 813, 839 (E.D. Cal. 2016) (noting courts in the Eastern District have awarded attorneys "with less than fifteen years of experience … $250.00 to $350.00 per hour"); *see also Estrada v. iYogi, Inc.,* 2016 WL 310279, at *6 (E.D. Cal. Jan. 26, 2016) (approving $400 requested rate for attorneys with as much as 19 years of experience). Similarly, the hourly rate will be reduced to $250 for Mr. Dupart, who had been admitted to the bar for approximately five years when he worked on the action in 2018. *See Perkins v. City of Modesto*, 2020 WL 4547325, at *2 (E.D. Cal. Aug. 5, 2020) (finding "$250 per hour to be a reasonable rate" for an attorney who "had been licensed for fewer than seven years" when the fees were incurred); *Lowery v. Account Outsourcing Group, LLC*, 2018 WL 3769430 at *2 (E.D. Cal. Aug. 9, 2018) (finding the requested rate of $250 was appropriate for a lawyer who had been "a consumer protection attorney" for three years); *Mike Murphy's Enters., v. Fineline Indus,* 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (case awarding the hourly rate of $250 for an attorney who had been practicing for seven years); *see also Seebach*, 2020 WL 4923664, at *3 (noting that for an attorney with 4 years of experience, $300 was "within the reasonable range for the Sacramento market," though it is unclear what year(s) these fees were incurred).

Finally, the hourly rates for Chad David, who was admitted to the bar in November 2019 exceed those awarded in this forum. When Mr. David began working on the action, he was a law clerk with the firm. Although the Court approved the requested rate of $175 in *Seebach*, the Court noted this rate was "for a *certified* law clerk." *Seebach*, 2020 WL 4923664 at *3 (emphasis added). Here, there is no evidence that Mr. David completed the process to become a certified law clerk with the California bar. Thus, the Court finds the hourly rate should be reduced to $125 for his work prior to admission to the

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 224 of 381   Page
ID #:5231
Case 1:19-cv-00315-JLT   Document 73   Filed 12/20/21   Page 34 of 41

bar. *Compare Lowery v. Account Outsourcing Group, LLC*, 2018 WL 3769430 at *2 (E.D. Cal. Aug. 9, 2018) (awarding the hourly rate of $125 to a law clerk) *with Seebach*, 2020 WL 4923664 at *3 (awarding the rate of $175 for a certified law clerk).  Further, as of the filing of the reply to this motion, Mr. David had been practicing law for only two years.  The requested hourly rate for Mr. David once he was admitted to the bar is reduced to $200, to be within the reasonable range for the Eastern District. *See Seebach*, 2020  WL 4923664, at *3 (reducing the requested hourly rate of $400 to $200 for an attorney who had less than two years of practicing law).

### 2.     Paralegals

Plaintiffs seek an hourly rate of $150 for each of the paralegals on the action.  (Doc. 71 at 7-8.) Mr. Baker reports that he has "charged $150 per hour for paralegal time for at least seven years" and "received that amount in nearly every settlement with every major vehicle, motor home, RV, and boat manufacturer."  (Doc. 70-5 at 3, Jacobs Decl. ¶ 12.)  In addition, Mr. Baker stated he "obtained that rate in a fee motion in Sacramento County."  (*Id.*, citing *Brown v. FCA US LLC*, Case No. 34-2016-00202429.)  Jayco objects to the rate and requests it be reduced to $115.  (Doc. 72 at 6.)

Notably, Plaintiffs' counsel report—without identifying any supporting evidence or documentation—"the contingency fee agreement signed by the Plaintiffs specifically provides for the billing of paralegal time at $150.00 an hour."  (Doc. 71 at 13.)  However, Mr. Scott reports that the "Letter of Engagement" he signed with the Law Offices of Jon Jacobs made it "clear" that Plaintiff "would not pay a penny out of [his] pocket for their legal services or costs."  (Doc. 71-1 at 1-2, ¶ 5.) Thus, it is not clear whether Plaintiffs agreed they would pay $150 per hour for paralegals' work on the action, or if they simply acknowledged this was the hourly rate typically billed by the firm. Regardless, any agreement between Plaintiffs and counsel is not dispositive of the issue of whether fees requested are reasonable.  Instead, the Court has an obligation to determine whether a proposed hourly rate is reasonable for the forum. *See Gates*, 987 F.2d 1390; *Moreno v*, 534 F.3d at 1111.

Paralegal rates within the Eastern District range between $75 to approximately $150.00, depending on experience. *Schmidt v. City of Modesto,* 2018 WL 6593362, at *6 (E.D. Cal. Dec. 14, 2018) ("the reasonable rate of compensation for a paralegal would be between $75.00 to $150.00 per hour depending on experience"); *see also Phillips 66 Co. v. Cal. Pride*, 2017 WL 2875736, at *15

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 225 of 381    Page
ID #:5232
Case 1:19-cv-00315-JLT    Document 73    Filed 12/20/21    Page 35 of 41

(E.D. Cal. July 6, 2017) (identifying the same range of hourly rates); *Trujillo v. Singh*, 2017 WL 1831941 at *3 (E.D. Cal. May 8, 2017) (finding requested hourly rates of $95-115 were reasonable within the Eastern District). Although the requested rate is within the range approved by this district, Plaintiffs' counsel fails to provide any information regarding the levels of education or experience for the paralegals.  The Court is unable to assume, as counsel would have it, that the hourly rate awarded in prior actions was to the same paralegals, or to individuals with the same level of experience. Without such information, Plaintiffs fail to show an hourly rate at the highest end of the spectrum is appropriate. *See, e.g,, Freshko Produce Servs. v. ILA Prods*, 2021 WL 4033176, at *4 (E.D. Cal. Sept. 2, 2021) (approving $150 per hour as reasonable "for a paralegal with more than 30 years of experience" for purposes of calculating the lodestar).

When counsel has failed to provide information related to the experience of paralegals, the Court has reduced the requested fee award to the lower end of the hourly rate range.  *See, e.g., Englert v. City of Merced*, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020) (rejecting the requested rate of $125 to $150 per hour for the paralegals and reducing them to $75 when the plaintiffs "provided no information on the experience of the paralegals"); *Freshko Produce Servs. v. Write on Mktg.*, 2019 WL 3798491 at *3 (E.D. Cal. Aug. 13, 2019) (finding the proposed hourly rate of $150 was not reasonable because counsel "fail[ed] to identify the education and experience of [the] paralegal to justify the upper rate of $150," and adjusting the hourly rate to $100); *Mora v. Cal W. Ag Servs., Inc.*, 2019 WL 2084725, at *9 (E.D. Cal. May 13, 2019) (applying adjusted rate for paralegals of $100 per hour where counsel failed to identify the experience of the paralegals).  Because counsel has not provided any information regarding the education and experience of *any* of the paralegals who worked on this action, the hourly rate for each paralegal will be reduced to $100.  *See Freshko Produce*, 2019 WL 3798491 at *3; *Mora,* 2019 WL 2084725, at *9.

Based upon the Court's prior surveys of the attorney fees awarded in the Eastern District and the Court's own knowledge, these hourly rates are reasonable for the tasks completed by counsel and the professional staff in this action. *See Roach,* 2017 WL 5070264 at *9; *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 226 of 381   Page
ID #:5233
Case 1:19-cv-00315-JLT   Document 75   Filed 12/20/21   Page 36 of 41

## C.     Lodestar Calculation

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate."  *Florida* , 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433); *see also Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 489 (2016). With the time and rate adjustments set forth above, the lodestar in this action is **$67,634.35**:

| LEGAL PROFESSSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Jon Jacobs (2018) | 1.87 | $450 | $841.50 |
| Jon Jacobs (2021) | 0.17 | $505 | $85.85 |
| Terry Baker | 109.10 | $505 | $55,095.50 |
| Chad David (as a law clerk) | 0.34 | $125 | $42.50 |
| Chad David (after admission) | 21.34 | $200 | $4,268.00 |
| Rene Dupart | 16.75 | $250 | $4,187.50 |
| Jon Feely | 0 | N/A | N/A |
| Elana Midda | 1.87 | $350 | $654.50 |
| Nicolas Dillavou | 0 | N/A | N/A |
| Lisa Tyler | 7.65 | $100 | $765.00 |
| Gabriela Torres | 9.18 | $100 | $918.00 |
| Kimberly Riley | 1.81 | $100 | $181.00 |
| Kayla Goettman | 3.91 | $100 | $391.00 |
| Cindy Lewandowski | 0 | N/A | N/A |
| Shaina Cateldge | 2.04 | $100 | $204.00 |
| | | | |
| **TOTAL** | | | **$67,634.35** |

## D.     Application of a multiplier

Plaintiffs request that the lodestar figure be enhanced by a multiplier of 1.5.  (Doc. 71 at 9.) Once a court has calculated the lodestar, "it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented."  *Laffitte,* 1 Cal.5th at 504 (citation omitted); *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (indicating the court may adjust the fee award considering "the following factors: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award").  The party seeking a lodestar enhancement bears a "heavy" burden to overcome the "strong presumption" that the lodestar is reasonable. *Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993).

36

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 227 of 381    Page
ID #:5234
Case 1:19-cv-00315-JLT    Document 73    Filed 12/20/21    Page 37 of 41

Plaintiffs contend, "This case calls for a multiplier to enhance the lodestar fee amount." (Doc. 71 at 9.) According to Plaintiffs, "Lemon Law litigation is a specialized field that involves complex interplay between state and federal consumer statutes and the Uniform Commercial Code as interpreted by state and federal courts." (*Id.*) In addition, Plaintiffs assert this case was "especially complex" with novel issues raised "at multiple times during the lawsuit." (*Id.* at 10.) Plaintiffs observe:

> [T]he facts of this case involve a motor home purchased in Iowa by residents of California with a warranty provision that litigation be prosecuted in Indiana. As evidenced by this Court's ruling on Plaintiff's Motion for Order Establishing the Controlling Law, complex issues of law arose with little case precedent to guide Plaintiffs' claims. Specifically, here, this case was transferred to the Northern District of Indiana and subsequently transferred back to this venue upon discovery of Defendants utilizing improper evidence to support their transfer of venue. Attorney Terry Baker was required to be admitted *pro hac vice* to prosecute this case in Indiana.

(*Id.*) As a result, Plaintiffs contend they "had to overcome procedural hurdles prior to litigating this case on the merits." (*Id.*)

Further, Plaintiffs argue the skill counsel displayed also supports application of a multiplier. (Doc. 71 at 10.) They contend counsel's "overall skill … is evidenced by the claim's survival through litigation and the outcome achieved in Plaintiffs." (*Id.*) Plaintiffs report:

> In over 20 years of practicing exclusively in the field of Lemon Law, Jon Jacobs has handled approximately 2,000 Lemon Law cases. Last year alone, the Law Offices of Jon Jacobs handled over 300 Lemon Law cases. Jacobs Decl. ¶ 4.
> Similarly, Terry Baker has over 20 years of litigation and trial experience working for multiple law firms specializing in consumer warranty protection. He alone has successfully taken over 25 cases to trial and has handled over 100 Lemon Law cases during the pendency of this current action. Baker Decl.

(*Id.*) Plaintiffs assert "they spent more than 200 hours on this matter, with an additional 25 hours anticipated to close out this case," and that "[u]ntil this case is fully resolved, Plaintiffs' counsel is unable to allow another case to take its' (sic) place." (*Id.* at 11.)

Finally, Plaintiffs argue the contingency fee contract between Plaintiffs and counsel supports the application of a multiplier. (Doc. 71 at 11-12.) Plaintiffs assert, "counsel prosecuted this case on a contingency fee basis and advanced *all* of the costs of litigation." (*Id.* at 11, emphasis in original.) According to Plaintiffs, the application of a fee multiplier also "encourage[s] competent counsel to protect consumers on a contingency fee basis." (*Id.* at 12, emphasis omitted.) Plaintiffs assert, "[w]ithout full compensation for successful cases, experienced and competent counsel will be deterred

37

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 228 of 381    Page
Case 1:19-cv-00315-JLT    Document 73    Filed 12/20/21    Page 38 of 41
ID #:5235

from accepting consumer cases." (*Id.*)

Jayco opposes the request for a multiplier, asserting that "Plaintiff's counsel lists the factors that support such a determination, but fails to demonstrate why such an entitlement is justified on the instant facts." (Doc. 72 at 13.)  Jayco contends that while "Plaintiffs' counsel repeatedly refers to the excellent result achieved …, Plaintiffs settled their claims for a diminished value payment of $42,500.00 – not a repurchase or replacement of their motor home." (*Id.*)  According to Jayco, it "always argued that Plaintiffs' damages must only be calculated as a 'diminished value' recovery," while Plaintiffs "refused to acknowledge that Song-Beverly repurchase remedies were unavailable until the eve of trial." (*Id.*) In addition, Jayco contends "Plaintiffs' Counsel were clearly not precluded from taking on any work as a consequence of their work in this case," as a review of the hours billed reveals that "Counsel billed less than 10 hours per month in this matter for 27 of the 40 months of the litigation between February 2018 and August 2021." (*Id.* at 14.)  Jayco observes that "[t]he most hours billed for any month was 21 hours in February 2020." (*Id.*)  Thus, Jayco contends "Counsel could have accepted other cases, assuming such cases were available." (*Id.*)

Significantly, it does not appear counsel faced truly novel and complex issues of law in this action, contrary to their assertions.  Indeed, the only substantive motions filed with the Court related to a motion to change venue and motion to resolve the parties' dispute related to the controlling law. (*See* Docs. 11, 49.)  Despite the representations of counsel, the level of skill and experience of Mr. Jacobs and Mr. Baker were not particularly reflected in the prosecution of this action.  Counsel was not required to face significant factual disputes or dispositive motions in this action, such as a motion to dismiss, motion to strike, or motion for summary judgment.  Indeed, of the 230.7 hours originally billed by the Law Offices of Jon Jacobs, approximately 40% of the hours were billed by paralegals and 10% by an attorney who was licensed to practice during the pendency of this action. (*See* Doc. 71 at 7-8.)  Thus, the Court finds the issues presented and skill required do not support the application of a multiplier. *See, e.g., Steel v. GMC*, 912 F. Supp. 724, 746 (N.J. Dist. 1995) ("the issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading"); *Ketchum*, 24 Cal. 4th at 1138 (explaining that "[a] more difficult legal question typically requires more attorney hours").

38

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 229 of 381    Page
ID #:5236
Case 1:19-cv-00315-JLT    Document 73    Filed 12/20/21    Page 39 of 41

Furthermore, there is no evidence that the nature of the litigation precluded other employment by counsel. To the contrary, Plaintiffs' counsel expended a total of fewer than 275 hours of work on this action over the course of three years. Indeed, Plaintiffs' counsel admits that "[l]ast year alone, the Law Offices of Jon Jacobs handled over 300 Lemon Law cases" and Mr. Baker "handled over 100 [other] Lemon Law cases during the pendency of this current action." (Doc. 71 at 10.) Finally, the Court finds the contingent nature of the fee award is outweighed by the other factors, particularly in this action where the disputed facts and issues were minimal. *See Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1217 (2008) (enhancement for contingent risk is appropriate where "[t]he claims and defenses . . . raised a significant number of complex legal issues of first impression, and class counsel took a substantial risk that it would not prevail on these issues and thus would not recover a full fee"). Accordingly, the Court finds the lodestar amount of **$67,634.35** is reasonable for the work completed and results achieved, and declines to award a multiplier.

### E.    Costs to be Awarded

Plaintiff requests costs and expenses in the amount of $1,509.13, as reflected in their "Bill of Costs." (Doc. 71 at 6; Doc. 70-5 at 106-08.) In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law. *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)). This is because "federal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Thus, federal procedural law governs a request for an award of costs.

Rule 54 of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce*, 342 F.3d at 1022. "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). For example, costs may be declined in light of "a losing party's limited financial resources" or

Case 5:25-cv-00331-KK-DTB   Document 178   Filed 07/28/26   Page 230 of 381   Page
ID #:5237
Case 1:19-cv-00315-JLT   Document 73   Filed 12/20/21   Page 40 of 41

where there has been "misconduct by the prevailing party." *Champion Produce*, 342 F.3d at 1022.

The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987).  Costs that may be taxed under 28 U.S.C. § 1920 include:

> (1)  Fees of the clerk and marshal;
> (2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3)  Fees and disbursements for printing and witnesses;
> (4)  Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5)  Docket fees under section 1923 of this title;
> (6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Section 1920 imposes "rigid controls on cost-shifting in federal courts," and "federal courts are bound by the limitations set out in." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).  Generally, the court may not award costs under Rule 54(d) not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006). Thus, "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (citation omitted).

### 1.   Filing fee

Section 1920 specifically provides that a prevailing party may recover costs for fees to the court clerk. 28 U.S.C. § 1920(1).  *See also Carr v. Tadin, Inc.*, 51 F.Supp.3d 970, 985 (S.D. Cal. 2014) ("the filing fee is recoverable as a fee of the clerk"). Therefore, Plaintiffs are entitled to recover the $400 filing fee.

### 2.   Mediation fees

Plaintiffs seeks $987.50 for "[m]ediation fees paid to JAMS." (Doc. 70-5 at 108.)  However, "nothing in 28 U.S.C. § 1920 provides for the costs of a mediator." *Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.* 260 F.3d 1054, 1061 (9th Cir. 2001); *see also Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt., Inc.,* 491 F.3d 266, 277 (5th Cir. 2007) (mediation fees are not taxable costs because Section 1920 does not expressly permit their recovery). Plaintiffs are therefore not entitled to recover mediation fees pursuant to Section 1920.

40

Case 5:25-cv-00331-KK-DTB    Document 178    Filed 07/28/26    Page 231 of 381    Page
ID #:5238
Case 1:19-cv-00315-JLT    Document 73    Filed 12/20/21    Page 41 of 41

### 3.    Certificate of good standing

Finally, Plaintiffs seek $121.63 for obtaining a certificate of good standing from the State Bar of California.  (Doc. 70-5 at 108.)  However, courts have determined costs related to a *pro hac vice* application are not recoverable under Section 1920.  *See Kalitta Air L.L.C. v. Central Texas Airborne System, Inc.,* 741 F.3d 955 (9th Cir. 2013) (finding Section 1920 does not provide for recovery of costs expended on *pro hac vice* applications); *see also Eagle Ins. Co. v. Johnson*, 982 F. Supp. 1456, 1459 (M.D. Ala. 1997), *aff'd*, 162 F.3d 98 (11th Cir. 1998) (finding no statute authorizes compensation for certificate of good standing or *pro hac vice* filing fees).

## IV.    Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1.    Plaintiff's motion for fees is **GRANTED** in the modified amount of $**67,634.35**; and

2.    Plaintiff's motion for costs is **GRANTED** in the amount of $**400.00**.

IT IS SO ORDERED.

Dated:    **December 18, 2021**                    _         /s/ Jennifer L. Thurston_
CHIEF UNITED STATES MAGISTRATE JUDGE

# Exhibit 11

Case No. 12-cv-03936-JST

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

# Lemmons v. Ace Hardware Corp.

## Case No. 12-cv-03936- JST (N.D. Cal. Feb. 1, 2015)

Decided February 1st, 2015

JON S. TIGAR United States District Judge

## ORDER GRANTING IN PART MOTION FOR ATTORNEY FEES

Re: Dkt. No. 122

Before the Court is Plaintiff's motion for attorney fees, litigation expenses, and costs totaling $272,912 in this action for discrimination on the basis of disability relating to the Berkeley Ace Hardware store located in Berkeley, CA.

## I. BACKGROUND

### A. Factual Background

Plaintiff Portia Lemmons brought this action against Defendants Ace Hardware Corporation ("Ace"), Berkeley Hardware, Inc., and EQR-Acheson Commons Limited Partnership ("EQR") for claims arising out of Defendants' purported denial of access to disabled persons at the Berkeley Ace Hardware store in Berkeley, California ("the store"). Complaint, ECF No. 1. Lemmons has lived with cerebral palsy since birth and claimed that she had encountered numerous barriers that prevented her from fully accessing the store during the course of visits over the last several years. ECF No. 107 at 2-4.

Ace and Berkeley Hardware have a franchising agreement that permits Berkeley Hardware to operate the store while using the "Ace" name. Id. at 1. EQR owns the building in which the *2 store is located and leases it to Berkeley Hardware. Id. Defendants insist that EQR plans to tear down the building that houses the store in the near future and that the store plans to relocate to a new space. ECF No. 130 at 7. As of the date of this order, the store remains in operation in the EQR building. ECF No. 122 at 4.

### B. Procedural History

The Defendants entered into a court-enforceable settlement agreement with Lemmons. The parties did not reach any agreement as to damages or attorney's fees. Id.

The parties subsequently brought cross-motions for summary judgment. ECF No. 64, 80. The Court granted summary judgment in favor of Plaintiff that the Defendants Berkeley Hardware and EQR-Acheson Commons Limited Partnership ("EQR") were liable for $52,000 in damages under the Unruh Act for the "difficulties, discomfort, or embarrassment" she suffered during her visits to the store. ECF No. 107 at 21-22. Lemmons had agreed to limit her recovery to the statutory minimum of $4,000 per visit to the store. Id. at 22. The Court found Lemmons could not recover for her California Disabled Persons Act claim because she had already recovered under the Unruh Act and plaintiffs are not permitted to recover under both statutes. Id. at 25-26.

The Court granted summary judgment in favor of Defendant Ace Hardware, concluding that Ace could not be held liable as an "operator" under the ADA because



Lemmons v. Ace Hardware Corp., Case No. 12-cv-03936-JST (N.D. Cal. Feb. 1, 2015)

Ace, as a franchisor, lacked "specific control" over the store. Id. at 11-12.

### C. Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

## II. LEGAL STANDARD

Recognizing the "need for private lawsuits to enforce disabled access," California disability laws and the Americans with Disabilities Act both provide for fee shifting to successful plaintiffs. Blackwell v. Foley, 724 F. Supp. 2d 1068 at 1075 (N.D. Cal 2010). "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any *3 action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Cal. Civ. Proc. Code § 1021.5. California Civil Code § 55 also provides that the prevailing party in an action for injunctive relief under California's disability laws "shall be entitled to recover reasonable attorney's fees."

"California courts, like their federal counterparts, utilize the lodestar (or 'touchstone') approach to determine a proper fee award to a prevailing plaintiff in a civil rights law suit." Muniz v. United Parcel Serv., Inc., 738 F.3d 214, 222 (9th Cir. 2013). Under the lodestar, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Courts "should ex-

clude from this initial fee calculation hours that were not reasonably expended." Id. at 434 (internal quotation and citation omitted). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Id. If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Id. at 436.

## III. ANALYSIS

### A. Hourly Rate

Plaintiff's request that the "reasonable hourly rate[s]" used by the Court for calculating the lodestar in this case should be as follows: "Paul L. Rein, $645; Celia McGuinness, $550; Catherine 'Cat' Caballo, $475; senior paralegal Aaron Clefton, $190; paralegal Emily O'Donohoe, *4 $155, and paralegal Holly Jaramillo, $135." ECF No. 122 at 12. In support of their proposed hourly rates, Plaintiff's counsel point to their "education, experience, and expertise in disability rights law," declarations provided by other attorneys practicing in the field, and other decisions in this District awarding similar hourly rates for attorneys practicing in the Rein Law Office. Although Defendants take issue with the reasonableness of the hours expended by Plaintiff's counsel on the litigation, they do not appear to contest the proposed hourly rates. Nonetheless, the Court will satisfy itself that Plaintiff's proposed hourly rate is reasonable before moving on to evaluate the reasonableness of the hours expended.

When determining a reasonable hourly rate for a lawyer's service, "the lodestar looks to the prevailing market rates in the relevant community." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010) (internal quotations and citations omitted). "The burden is on the fee applicant to produce satisfactory evi-



Lemmons v. Ace Hardware Corp., Case No. 12-cv-03936-JST (N.D. Cal. Feb. 1, 2015)

dence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).

Rein has forty-five years of litigation experience, including forty years of disability representation, during which time he worked on many cases that achieved substantial victories for disabled plaintiffs. Cabalo has thirteen years of practice as a litigator who has practiced with the Rein firm in the field of disability law for the last five years. McGuinness has twenty-four years of litigation experience and has practiced with the Rein firm for the past six years. Plaintiff's counsel has provided charts documenting orders by courts in this District, which have calculated fees for other attorneys and paralegals with similar amounts of litigation experience using hourly rates similar to or greater than those requested here. ECF No. 122 at 18-20. This evidence is not disputed.

Furthermore, Plaintiff's counsel has shown that other judges in this District have approved *5 payments to these same lawyers using hourly rates either identical to or similar to the rates currently sought. Earlier this year, Judge Seeborg noted that, in the prior fifteen months, Rein's $645 per hour rate had been approved by "four different judges in this district . . . in light of Rein's skill, reputation, and extensive experience." Rodriguez v. Barrita, Inc., No. 09-04057-RS, 2014 WL 2967925 at *2 (N.D. Cal July 1, 2014) (citing Hernandez v. Grullense, No. 12-cv-03257-WHO, 2014 WL 1724356 at *5 (N.D. Cal. April 30, 2014), Moralez v. Whole Foods Mkt., Inc., No. 12-01072-CRB, 2013 WL 3967639 at *4 (N.D. Cal. July 31, 2013); Cruz v. Starbucks Corp., No. 10-01868-JCS, 2013 WL 2447862 at *5 (N.D. Cal. June 5, 2013); Delson v. CYCT Mgmt. Grp., Inc., No. 11-03781-MEJ, 2013 WL 1819265 at *5 (N.D. Cal. Apr. 30, 2013)).

Judge Seeborg also approved compensating Cabalo at an hourly rate of $425 per hour in that litigation. Rodriguez, 2014 WL 2967925 at *2. Although Cabalo requests $475 per hour in the current motion, the Court concludes that an increase is appropriate. Cabalo acted as lead attorney in this matter. The charts provided by Plaintiff's counsel indicate that, in the last several years, other judges in this District have approved hourly rates within this range for plaintiffs' attorneys with a similar amount of litigation experience. ECF No. 122 at 19. Finally, as already noted, Cabalo's hourly rate is unopposed by Defendant.

Judge Breyer has previously approved a rate of $495 per hour for McGuinness, who now seeks an hourly rate of $550. Moralez, 2013 WL 3967639 at *3. The Court finds the $550 hourly rate now sought by McGuinness is reasonable, in light of the rates approved by other judges in this District over the last several years for plaintiffs' attorneys with similar amounts of litigation experience. ECF No. 122 at 19-20. McGuiness's requested rate is also unopposed.

Lastly, the Court finds the hourly rates requested for the work done by the firm's paralegals are reasonable. Judge Breyer has previously approved compensating Clefton at a rate of $175 an hour, noting that two other judges in the District had compensated Clefton at that rate. In early 2013, Judge James reasoned that the $175 rate was an appropriate adjustment from the *6 $165 hourly rate courts had approved for Clefton in 2010 and 2011. Delson, 2013 WL 1819265 at *5 (N.D. Cal. Apr. 30, 2013). The Court finds that the $190 rate is appropriate for Clefton, given his extensive experience, the rates approved for other paralegals by courts in this District, and the fact that his requested hourly rate is unopposed. ECF No. 122 at 20. The Court similarly concludes that the hourly rate requested for the work of the firm's other two paralegals is appropriate given the prevailing rates in the community. Id.



Lemmons v. Ace Hardware Corp., Case No. 12-cv-03936-JST (N.D. Cal. Feb. 1, 2015)

The Court finds that Plaintiff's counsel has established that the lodestar should be calculated using the hourly rates they have requested.

## B. Hours Reasonably Expended

Defendants principally contest the reasonableness of the number of hours billed by Plaintiff's counsel. Defendants contend that Plaintiff's counsel: 1) billed excessively for internal meetings and conferences; 2) billed excessively on particular motions; 3) billed for an ultimately unsuccessful claim against Ace Hardware; and 4) billed for services performed on behalf of deceased plaintiff Bertha Johnson. Defendants ask that the Court cut Plaintiff's requested fees by half "across the board" in light of the "excessive and redundant billing." ECF No. 130 at 11.

### 1) Entries for Meetings

Defendants argue that Plaintiff's counsel billed an unreasonable number of internal meetings, comprising in Defendants' calculation a total of $39,048.00 in fees over 259 separate entries. Defendants have compiled the hours billed for such meetings into a single spreadsheet, submitted as Exhibit H to their opposition. ECF No. 130-8. Additionally, Defendants note that many of these meetings were of short duration, such as .1 hour or .2 hour increments--six or twelve minutes. The practice of billing for many short meetings has been criticized by other judges in this District as having the effect of potentially inflating a fees award. See, e.g. Hernandez, 2014 WL 1724356, at *8-9; Cruz v. Int'l Collection Corp., No. 08-00991-JF (RS), 2010 WL 2509988, at *4 (N.D. Cal. June 17, 2010).

*7 Although the Court has approved the substantial hourly rates requested by Plaintiff's counsel, it has done so based on the attorneys' experience and expertise in disability litigation. This same expertise undercuts the reasonableness of some of their hours. "One of the trade-offs of being an expert in a specific filed of law is the expectation that tasks will be completed with greater efficiency because the knowledge base and resources have already been well-established." Delson v. CYCT Mgmt. Grp., Inc., No. C 11-03781 MEJ, 2013 WL 1819265, at *8 (N.D. Cal. Apr. 30, 2013). The Court knows that co-counsel sometimes need to strategize. But lawyers who are experts in the field of disability litigation, working at a small firm that exclusively handles that kind of work, should not need to bill 259 separate entries for strategizing. "The Ninth Circuit has approved of reductions in fees for unnecessary and duplicative intra-office conferences," and other courts in this District have "previously been critical of excessive conferencing by Rein Law." Hernandez, 2014 WL 1724356 at *10. Compounding these concerns is that some entries lack any specificity, such as "Meet w/ co-co re: pending issues" or "Strategize w/ staff re current case issues," which make such review more difficult and cause the Court some concern. ECF No. 130-8 at 3, 5.

Because the Court finds that Defendants' criticisms of the excessive nature of Plaintiff's counsel's billing for internal meetings are valid, it will exercise its discretion to reduce the $39,048.00 that Defendants characterize as having been billed for time spent on internal meetings by 50%, awarding $19,524.00 for these entries.

### 2) Summary Judgment Motions

Defendants contend that Plaintiff's counsel billed an excessive number of hours on motions practice, including the summary judgment proceedings, administrative motions, and the current motion for fees. Defendants first object to the 102.8 hours they have classified as having been billed for the summary judgment proceedings, ECF No. 130-7, claiming that many of the arguments made is Plaintiff's opposition to Defendants' cross-motion overlap with arguments *8 made in Plaintiff's affirmative motion. The Court agrees the time billed for these motions was substantial. But Defendants' themselves created some of these costs by filing affirmative motions for summary judgments on



Lemmons v. Ace Hardware Corp., Case No. 12-cv-03936-JST (N.D. Cal. Feb. 1, 2015)

claims where summary judgment was ultimately granted against them.

The Court also notes that Plaintiff's well-drafted and ultimately-successful summary judgment motion resulted in a lower total amount of fees by bringing the litigation to an end without the need for a trial. Any concerns the Court might have regarding the amount of time Plaintiff's counsel have billed for that motion are counterbalanced by this fact. In the same vein, the Court notes that Plaintiff also compromised on certain issues of injunctive relief and agreed to limit her damages claim, decisions that also prevented the need for a trial and lowered the amount of fees. The Court finds these hours were reasonably expended.

**3) Fee Motions**

Defendants object to the number of hours Plaintiff's counsel spent preparing the present attorney's fees motion. Defendants note that the motion is "nearly identical" to a motion the Rein firm submitted in <u>Gerardo Hernandez v. Taqueria El Grullense</u>, 12-cv-3257-WHO. Defendants include the fees motion from that case as Exhibit L. ECF No. 130-12. Defendants also call the Court's attention to the fee decision issued in <u>Hernandez</u>, wherein Judge Orrick observed that "Judges in this District have, on several occasions, criticized the fees sought by Rein Law for work on re-purposed fees motions," and deducted $6,276 of the $16,474 requested relating to this briefing. 2014 WL 1724356, at *13 (collecting cases). The Court has compared the motion filed in <u>Hernandez</u> and the opening brief filed herein and finds many sections regarding the statutes and public policies at issue do overlap substantially. The opening brief does not appear to have required substantial time to draft in light of Rein Law's ability to use a template motion. The Court will therefore award just 2 of the 10.4 hours Caballo has sought to bill on the opening motion for attorney's fees. The Court will therefore reduce the lodestar figure by $3,990 for time spent on preparing the initial fees motion.

*9 **4) Administrative Motions**

Defendants' also point to $6,018.50 requested for time Plaintiff's counsel spent preparing a motion to seek a continuance of defendants' motion for summary judgment from the Court and related declarations. ECF No. 130-10. That number is indeed substantial, but the motion was important to Plaintiff's litigation strategy. Moreover, Defendants opposed the motion and the Court ultimately granted it. ECF No. 72.

When the motions for summary judgment were submitted to the Court several months later, after which time the Plaintiff had been able to conduct further discovery, the Court ruled largely in Plaintiff's favor. ECF No. 107. Defendants' criticism that this motion should have been routine for the Rein Law attorneys, and therefore should have taken less time, is not well taken. Defendants increased Plaintiff's counsel's costs by refusing to stipulate to a continuance, see ECF Nos. 68, 69, and should not be heard now to complain about those costs. The Court finds that time spent by lawyers and paralegals on this motion was reasonably expended.

On the other hand, the Court notes that Paul Rein billed 4 hours strategizing and preparing an opposition to Defendant Berkeley Hardware's motion to amend their answer to include a statute of limitations defense. ECF No. 45. The Court ultimately granted Defendant's motion to amend over this objection, as discovery had not yet begun and the trial date was almost a year in the future. ECF No. 58. The Court will deduct the four hours Rein seeks to bill for preparing this motion from its fees award, finding that this time was not reasonably expended. An administrative motion of this kind need not have been drafted by a lawyer of Rein's experience, charging Rein's substantial hourly rate. "With four decades of experience in this area, Rein is an authority on ADA litigation. But in light of that specialized knowledge and his commensurately high billing rate, Rein should reasonably limit his involvement to matters requiring his level



Lemmons v. Ace Hardware Corp., Case No. 12-cv-03936-JST (N.D. Cal. Feb. 1, 2015)

of skill." Hernandez, 2014 WL 1724356 at *8. Furthermore, a lawyer of Rein's experience and expertise should have recognized that it would be difficult at best to defeat a motion to amend an answer *10 when discovery had not yet even started and trial was almost a year away, and simply stipulated to permit the amendment. The Court will therefore reduce the lodestar figure by $2,580 for time spent on this opposition.

**5) Ace Hardware**

Defendants argue that time Plaintiffs spent pursuing claims against Ace Hardware should be deducted from Plaintiff's fees, because the Court ultimately granted summary judgment in favor of Ace Hardware, concluding that, as a franchisor, Ace lacked operational control over the store. Defendants claim that law was clear at the outset of the litigation that "a franchisor or licensor that does not control the day to day operations of the franchisee or licensee is not liable under the ADA." ECF No. 130 at 13 (citing Neff v. Am. Dairy Queen Corp., 58 F.3d 1063, 1066 (5th Cir. 1995) and Lentini v. California Ctr. for the Arts, Escondido, 370 F.3d 837, 849 (9th Cir. 2004)). In light of this backdrop, Defendants contend that this claim thus should not have been brought against Ace, because Defendants' counsel told Plaintiff's counsel at the outset of the litigation that Ace had no right or obligation to operate the store.

"California law requires a trial court to adjust a lodestar award to account for time spent exclusively on an unsuccessful claim." Muniz v. United Parcel Serv., Inc., 738 F.3d 214, 224 (9th Cir. 2013). "[T]he court must find that the time deducted did not aid in proving the successful claims." Id., 738 F.3d at 224. The Court agrees with Defendants that time spent by Plaintiff's counsel on claims against Ace Hardware exclusively should not be included in the fees award. The Court ruled in favor of Ace on the issue of damages at summary judgment, as the Court concluded that Lentini and Neff dictated that Ace was not liable

as it lacked day to day operational control over the store. Although Plaintiff claims that the injunctive settlement reached with EQR states that Plaintiff is the prevailing party as to all Defendants, nothing agreed to in the settlement required Ace to take any action. See ECF No. 57. Therefore, the Court concludes that Plaintiff's claims against Ace were unsuccessful and time spent exclusively on those claim should be *11 deducted from the fees award.

Defendants have identified $13,713.50 in entries that they contend reflect time spent exclusively on claims against Ace Hardware. ECF No. 130-6. The Court does not agree with Defendants' characterization of all of the entries. For instance, Defendants have included time entries by McGuinness and Cabalo on April 3, 4, 7, and 8 relating to drafting a discovery letter brief that pertained to Plaintiff's claims against all three Defendants, located at ECF No. 74. The Court will not deduct these hours, as they include time spent on successful claims. Additionally, Defendants characterize entries made by Cabalo on May 12, 14, 16, and 19 as pertaining to the claims against Ace. These entries relate to a further discovery letter brief, located at ECF No. 79, and the discovery issues discussed in that brief did not involve Ace Hardware at all, but only involved Plaintiff's claims against Berkeley Hardware and EQR - on which Plaintiff prevailed. The Court will likewise not deduct these hours from the lodestar figure.

Defendants additionally ask the Court to consider that some of the time billed on summary judgment briefing was spent on drafting sections pertaining to the claims against Ace and to reduce the summary judgment fees accordingly. Plaintiff's affirmative motion did not pertain specifically to its claim against Ace and was successful, so therefore does not represent time spent exclusively on pursuing the unsuccessful claims. During summary judgment, Plaintiff opposed the portion of Defendants' motion that sought summary judgment in favor of Ace. Ace prevailed. It appears that Plaintiff's counsel billed 18.8 on its opposition to Defendants' motion. In light of this, the Court will subtract 4 hours



Lemmons v. Ace Hardware Corp., Case No. 12-cv-03936-JST (N.D. Cal. Feb. 1, 2015)

of Cabalo's time spent drafting the opposition, to reflect the amount of time spent on opposing summary judgment as to the claims against Ace.

The Court will therefore deduct from the award of fees $10,378.50 of the $13,713.50 that Defendants have characterized as time Plaintiff's counsel spent pursuing claims against Ace Hardware. ECF 130-6. The Court will also deduct an additional $1,900 for time spent opposing the portions of Defendants' motion for summary judgment relating to Ace.

**\*12 7) Bertha Johnson**

Defendants also argue the Court should further reduce the fees award due to the time Plaintiff's counsel spent performing work on behalf of co-Plaintiff Bertha Johnson, who passed away during the course of the litigation. This does not provide a basis for further reducing the fees awarded to Plaintiff's counsel. The Rein declaration specifically addresses this issue, stating that "[a]ll work done on this case prior to Ms. Johnson's death was done on behalf of both plaintiffs, and no work was done, or time kept separately, for decedent Johnson." ECF No. 123 at 1 n.1. The Court credits this, as Johnson's claims were identical to Lemmons' and involved the same store location.

**8) Conclusion**

Defendants have identified some billing items which give the Court pause, particularly a large number of internal strategic meetings and an excessive amount of time spent on some items in motions practice. Nonetheless, the Court does not agree with all of Defendants' criticisms of the billing and does not find that Defendants' proposed 50% across the board slashing of the requested fees is justified. Plaintiff's counsel have thoroughly documented how they spent their time and have secured a victory for the Plaintiff and other disabled individuals seeking to access the store.

The Court will reduce the amount of hours Plaintiff's counsel spent billing internal strategic meetings by

50% in light of the excessive number of such meetings. The Court will also subtract from the hours requested 8.4 hours billed by Caballo in preparing the attorney's fees motion, 4 hours spent by Rein in preparing an opposition to Defendant Berkeley Hardware's motion for leave to amend its answer, and $10,378.50 in time spent pursuing claims against Ace Hardware. The Court therefore awards Plaintiff's counsel $218,237.5 of the $256,610 they have requested.

**\*13 C. Degree of Success**

In addition to their claims regarding excessive billing, Defendants also ask the Court to reduce the fees due to Plaintiff's "limited success in light of the scope of the litigation." ECF No. 130 at 9-11, 17. In considering whether to reduce a fees award due to the limited success of a litigation, a district court "must deduct from the lodestar hours spent exclusively on unrelated unsuccessful claims; and second, the court must evaluate the remaining hours to determine if they were reasonably necessary to achieve the result obtained." Muniz, 738 F.3d at 224. The Court does not agree with Defendants' characterizations of the outcome of the litigation.

As a result of the injunctive settlement reached in this case, the store has become substantially more accessible to the disabled population. Specifically, the store created van-accessible parking and signage, provided bells for disabled customers to ring for assistance at a services counter, and removed barriers that had previously prevented wheelchairs from turning around aisles and obstructed elevator doors. ECF No. 131 at 2. The store also agreed to provide on its main floor a catalogue of items found on other floors that disabled customers could consult before attempting to access those floors. Id. Additionally, the settlement secured a number of changes to employee training at the store regarding assisting disabled customers. Id.

The Court also granted Plaintiff summary judgment for liability and damages against EQR and Berkeley Hardware, over the Defendants' cross-motions for



Lemmons v. Ace Hardware Corp., Case No. 12-cv-03936-JST (N.D. Cal. Feb. 1, 2015)

summary judgment. ECF No. 107. The Court awarded Plaintiff $52,000 in damages. Id. The Court denied Defendants' motion for reconsideration. ECF No. 114. Given the number of defenses raised by Defendants' and Defendants' own summary judgment motion, Plaintiff's victory at summary judgment was hard-fought and the damages achieved for Plaintiff provided a substantial compensation for the "difficulties, discomfort, or embarrassment" she experienced upon visiting the store.

Defendants insinuate throughout their briefing that the fact that EQR intends to tear down the building in the near future somehow renders this litigation inappropriate or undermines the *14 value of the results achieved by Plaintiff. Defendants also claim that the litigation was potentially unnecessary, as Plaintiff never requested alterations to the premises before filing her complaint and may have been able to obtain them without bringing suit. The Court is not persuaded by these arguments (which are somewhat in tension with each other). Plaintiff was not required to request changes prior to bringing suit. Defendants' continued insistence that the allegedly-impending closure of the store somehow absolves them from making the premises accessible to disabled individuals indicates that Plaintiff would have been unlikely to persuade them to make the alterations without this litigation. Indeed, the parties did not reach an injunctive settlement agreement until almost a year after the complaint was filed and Plaintiff compromised on several of her initial requests.

"The reason for the fee-shifting provisions of both the ADA and California law is to motivate plaintiffs' attorneys to advocate for full and equal access for the disabled to public accommodations." Blackwell, 724 F. Supp. 2d at 1076. The store remains open in the EQR building to this day and Plaintiff's lawsuit achieved an injunctive settlement which has ensured a greater degree of access for disabled people to the public accommodation. This is the exact outcome the laws govern-

ing disabled individual's ability to access to public accommodations are intended to encourage.

### D. Plaintiff's Costs

Plaintiff requests an award of costs in the amount of $16,302. The costs are well-documented and the request is unopposed. The Court will grant the request in full.

## *15 IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's request for attorney's fees in part, and award $218,237.50. The Court also grants the Plaintiff's award of costs in the amount of $16,302. The total amount awarded by this order is $234,539.50.

**IT IS SO ORDERED**. Dated: February 1, 2015

/s/_____


JON S. TIGAR


United States District Judge



# Exhibit 12

Exhibit 12

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 4/20/26 | Trial prep | 6.60 | 1.32 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 4/23/26 | Pre-trial/Preparation | 5.80 | 1.16 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 4/30/26 | Trial Preparation * | 12.20 | 2.44 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/1/26 | Trial Preparation * | 11.80 | 2.36 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/2/26 | Trial Preparation * | 12.40 | 2.48 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/3/26 | Trial Preparation * | 13.60 | 2.72 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 5/4/26 | Trial Preparation * | 14.70 | 2.94 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/5/26 | Trial Preparation * | 15.30 | 3.06 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/6/26 | Trial Preparation * | 16.20 | 3.24 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/7/26 | Trial Preparation * | 15.80 | 3.16 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/8/26 | Trial - Trial Preparation * | 11.10 | 2.22 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/9/26 | Trial Preparation * | 13.30 | 2.66 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 5/10/26 | Trial Preparation * | 12.70 | 2.54 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/11/26 | Trial - Trial Preparation * | 16.50 | 3.30 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Trent Packer | 5/11/26 | Trial, witness prep | 8.60 | 1.72 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |

# Exhibit 13

# ARBITRATION ADVISORY

## 2016-02

## ANALYSIS OF POTENTIAL BILL PADDING AND OTHER BILLING ISSUES

## Replaces and Supersedes Arbitration Advisory 2003-01

## March 25, 2016

> Points of view or opinions expressed in this document are those of the Committee on Mandatory Fee Arbitration.  They have not been adopted or endorsed by the State Bar's Board of Trustees and do not constitute the official position or policy of the State Bar of California.

### QUESTION PRESENTED

When a lawyer's fee bill overstates the amount of time spent for work performed, it is called "bill padding."  If a client alleges that a lawyer's bills are not accurate or truthful, how can an arbitrator assess the evidence, including the fee bills, for possible bill padding?  This advisory explores the question of how an arbitrator may assess the evidence to identify bill padding.[1]

### INTRODUCTION

Most hourly fee bills are a collection of time entries itemizing work performed in the privacy of a lawyer's office.  Therefore, it is difficult to verify the accuracy of the time entries.  Accordingly, arbitrators should do at least four things:

A. Evaluate the process by which the fee bill was prepared and the specificity of the time entries;
B. Evaluate the staffing used on the matter;
C. Evaluate the work performed against the time billed, and
D. Look for certain patterns in the descriptions of the work performed, including the time entries.

### DISCUSSION

---

[1] Rules and observations about determining reasonable attorney's fees in general are addressed in other Arbitration Advisories.  This advisory focuses on a subset of that topic: when too much time is alleged to have been recorded for the individual units of work performed.  In the event that an arbitrator encounters bill padding, he/she may refer to our other arbitration advisories for assistance in determining an appropriate charge under the circumstances.

1

**A.      Evaluate the process by which the fee bill was prepared and the specificity of the time entries**

In order to understand the likely areas to look for bill padding, it is useful to consider the historical background of professional fees charged by a lawyer [*See* American Bar Association Commission on Billable Hours Report (August, 2002), referred to hereinafter as "ABA Report" (See http://www.abanet.org)].  Prior to the 1960s, the majority of lawyers billed clients in flat sums or fixed amounts - often at the conclusion of the matter. This required some estimating and discretion on the part of the lawyer.  A lawyer's fee bill often read something like this:

"Fee for services rendered, $ 750.00."

Clients sometimes paid their bills six months or a year after receipt of the fee bill, which reflected services performed long before the fee bill was even sent.

In Gisbrecht v. Barnhart, 535 U.S. 789 (2002), the Supreme Court wrote:

> ". . . .  An American Bar Association (ABA) report, published in 1958, observed that attorneys' earnings had failed to keep pace with the rate of inflation; the report urged attorneys to record the hours spent on each case in order to ensure that fees ultimately charged afforded reasonable compensation for counsels' efforts. (*citation omitted).*
>
> Hourly records initially provided only an internal accounting check.  See Honest Hour 19. The fees actually charged might be determined under any number of methods: the annual retainer, the fee-for-service method, the "eyeball" method under which the attorney estimated an annual fee for regular clients, or the contingent-fee method, recognized by this Court in Stanton v. Embrey, 93 U.S. 548, 556 (1877), and formally approved by the ABA in 1908.  See Honest Hour [W. Ross, The Honest Hour: The Ethics of Time-Based Billing by Attorneys (1996),13-19]. As it became standard accounting practice to record hours spent on a client's matter, attorneys increasingly realized that billing by hours devoted to a case was administratively convenient; moreover, as an objective measure of a lawyer's labor, hourly billing was readily impartable to the client.  Id., at 18. By the early 1970's, the practice of hourly billing had become widespread. *See id*., at 19, 21."

**1.      Evaluate the process by which the fee bill was prepared**

In the now-standard chronological fee bill used by lawyers, almost all time is (or should be) itemized by day and by timekeeper.  If a lawyer or other timekeeper does several things in one day on a particular matter then he or she must decide how to best describe this work and how much time to record for that work.  An arbitrator's review of fee bills should include an assessment of the method and timing used to prepare the bills in order to form an understanding regarding the accuracy of the data shown by the fee bills.

2

Some lawyers still use word processing programs to generate fee bills.  Others use specialized billing software programs.  Many billing software programs in use today have a timer feature that allows the user to input "start" and "stop" commands for one or more matters.  The billing software program then automatically calculates the elapsed time for each task in the same manner as a stopwatch.  If the evidence at the arbitration reveals that lawyers properly utilized the timer feature that is a factor tending toward accuracy.

While it is almost universally acknowledged that contemporaneous records are the best practice, many times the press of business is such that a day or two (or more) passes without the lawyer recording his/her time.  Sometimes a month may pass without any entries.  In rare cases, a year or more may pass before a lawyer goes through his/her case file and attempts to re-create what transpired in the case since its inception. It is generally at the point when a fee bill needs to be generated that the lawyer is faced with the need to reconstruct what happened a day or two or a month ago (or a year ago) with great precision.  If the lawyer is able to prepare the fee bills using information from notes he/she made contemporaneous with the tasks actually performed, that is a factor tending towards accuracy.  But if the reconstruction is done by the lawyer going through his or her file and then ascribing a time entry to each e-mail, letter, document and calendar entry in the file, then it is much less likely that the time entries are truly accurate.  While the corresponding fee bills may appear to be very precise, with exact times noted for each specific and itemized activity, the appearance of accuracy may be deceptive and the time recorded should be assessed by the arbitrator.  Under such circumstances, it may be appropriate to put the burden of providing evidence/facts to support the accuracy of the time entries onto the lawyer.

The arbitrator should also examine who recorded the entries and created the fee bills.  The original time entries are generally recorded by the lawyer or other person who performed the task.  However, in some firms, a support person, such as a secretary, paralegal, or billing clerk, records the time entries ultimately charged to the client.  Variations for this practice abound.  In some firms, lawyers hand-write their entries on paper and some other person inputs them in the billing software.  In other firms, a billing clerk may go through the case file on a periodic basis and record a time entry for every scrap of paper in that file.  For instance, if the file contains a letter from opposing counsel, the billing clerk may charge the client an agreed-upon minimum charge irrespective of whether the lawyer actually reviewed that letter and how long it took.  Suffice it to say, the arbitrator may consider evidence of who actually recorded the time entries [and when they were recorded] to assess the accuracy of the corresponding fee bills.

It is customary for larger law firms to have a draft of the fee bill, commonly referred to as a "pre-bill," reviewed by the partner or lawyer in charge of billing on the matter.  The billing partner may not have actually worked on the file, but is otherwise in control of the relationship with the client.  If pre-bills are utilized, the billing partner should scrutinize and edit the time entries in the "pre-bills" to ensure that they are accurate.  The recorded time entries may be increased or decreased in an exercise called "billing judgment" by the billing partner. However, any evidence that the pre-bills were adjusted upwards should be examined carefully, as it may indicate that the client is being charged more time than actually expended by his/her lawyer.  Absent clearly defined and explained terms in the written fee agreement allowing such upward adjustments, the increased time may be evidence of bill padding.  For example,

3

increasing a time entry to a contractually agreed-upon minimum charge may be appropriate, as would an increase to reflect time inadvertently omitted by the lawyer. On the other hand, increasing a time charge for the sake of inflating the fee bill is not. If an arbitrator encounters such circumstances, the lawyer should bear the burden to clarify and substantiate such increased time entries.

The pre-bills may not be carefully reviewed by the billing partner for a number of reasons, including the fact that most billing partners are very busy and do not have or want to allocate the time to check each pre-bill carefully, the entries may be for a lawyer who is not readily available, or the billing partner may have a huge stack of pre-bills to go through and only a short time to do so since the firm wants to "get the bills out". Consequently, arbitrators should consider facts and evidence concerning the pre-bill process, including whether the lawyer(s) that actually worked on the matter also verified the accuracy of the fee bills, and whether the pre-bill process increased or decreased the accuracy and transparency of the fee bills ultimately delivered to the client for payment.

**2.      Evaluate the specificity of the time entries**

Many lawyers no longer physically handwrite what they do on paper time-sheets but contemporaneously input a description of their tasks directly into their computers. These types of entries can usually be identified because they are often longer and more detailed. For example, if a fee bill reads: "meeting with client to discuss the elements of the separate statement of facts and the source of evidence for each element (1.8); research new opinion on the presumptions and burden of proof under <u>Festo</u> and progeny (2.5)" [Example 1], this is likely (but not necessarily) something directly inputted into the billing software program by the lawyer. On the other hand, the briefer description for the same work of: "meeting with client re MSJ and research burden of proof (4.3)" [Example 2] is probably something initially written in longhand and then later inputted into the billing software program.

Arbitrators should be aware that regardless of the method of time keeping or billing used, it is not the format of the fee bill but the information provided which is important. Accordingly, the arbitrator's primary focus should be on analyzing those facts that tend to demonstrate the accuracy, or inaccuracy, of the information contained in the fee bills. When examining the fee bills it is very important to remember that in the vast majority of cases each time entry in a fee bill is merely an estimate of how much time was required for the task performed that is being described in a summary fashion. Therefore, the longer the time period between when the task was performed and the corresponding time entry is recorded, the greater the probability that the time entry may lack accuracy.

If, in Example 1 above, the client is certain that the meeting required only 30 minutes (with no travel time), then perhaps one could question the entry of 1.8 hours. But how can one prove that the time for, say, a specific letter was really 12 minutes rather than 30?[2]  If the time is

---

[2] It is just about impossible to be certain that any one single time entry is wrong or faked or padded. "The 'perfect crime' [is the] padding of bills…" [William G. Ross, <u>The Honest Hour: The Ethics of Time Based Billing by Attorneys</u> (1996)].

block-billed and one does not even know how much time is being claimed for the letter, then what?  In such cases, look at the totality of the evidence.

## B.       Evaluate the staffing used on the matter

The staffing of a legal matter by a lawyer presents the potential for bill padding that an arbitrator may consider.  The main staffing issues that should be assessed include: (1) Did multiple lawyers work on the same task simultaneously? and (2) Was the task performed by the proper lawyer?

### 1.       Did multiple lawyers work on the same task simultaneously?

A recurring complaint by clients concerns charges for tasks involving more than one lawyer, paralegal, or support staff from the same firm at the same time.  This typically occurs when a client is charged for multiple lawyers attending a court hearing or deposition, or where two or more lawyers participate in a meeting or telephone call.  Generally, the determination of whether the matter was overstaffed is a question of fact the arbitrator must resolve.  In a mandatory fee arbitration it is appropriate to place the burden of proof on the lawyer to demonstrate that the disputed matters/tasks were properly staffed and not attempts to inflate time charged to a client.

Issues that may affect this factual determination may include the complexity or significance of the case, the litigious nature of the parties, the amount in controversy, client consultation in advance, the client's awareness and lack of objection, or any other fact tending to demonstrate whether it was appropriate for more than one lawyer or support staff to participate in a disputed task.

In some firms, newly admitted lawyers sometimes accompany their supervising lawyer to depositions or court hearings for training purposes.  In most instances, the client should not be charged solely for training time.

It is also generally accepted that the more timekeepers on a case, the higher the bill will be.  Pay particular attention to time recorded by newer associates who record time on the matter only briefly, such as one or two months, particularly if accompanied by entries reflecting the associate recorded "get up to speed" activities, such as "review file."  Such entries by a transient biller may not be an appropriate charge/expense to impose on a client.

### 2.       Was the task performed by the proper lawyer/person?

In some cases, a client may complain that some necessary task was performed by a senior lawyer charging a much higher hourly rate, when it could have been completed by a cheaper associate or support staff.  For instance, in a commercial real estate lease dispute, the firm's main real estate partner, charging $700.00-plus per hour, personally drives to the commercial site to deliver the keys to the complaining landlord.  Even assuming that it was necessary for a licensed lawyer to deliver the keys, the issue becomes why it was done by the most expensive lawyer in the firm.  Was it because some circumstance actually required that specific high-priced lawyer to undertake that task, or was it an inadvertent or intentional attempt to pad the client's bill.  The

5

client may also challenge delegation of tasks to inexperienced lawyers/staff with resulting inefficiencies.  In examining such complaints, arbitrators should consider all of the circumstances relevant to the issue, as well as the custom in the community and the terms of the written fee agreement.

**C.      Evaluate some or all of the work produced against the hours claimed**

Arbitrators may consider evidence and facts concerning the actual tasks/work performed by the lawyer, including an analysis of the major items of work performed.  How many hours were recorded for this work?  How many timekeepers were involved?  What did they do?  Did they duplicate each other's work?  Was some of this "training" time for new lawyers? [3]

Major tasks.  It may be appropriate for an arbitrator to review and assess the fee bills to determine how much cumulative time was recorded by the lawyer [or lawyers] to complete a major task.  Major tasks may include specific motions, appellate briefs, and transactional documents.  An arbitrator may need to quantify the cumulative time first.  This task will require the arbitrator to go through the fee bills and essentially group separate billing entries.  For example, an arbitrator may have to group all of the entries that refer to the preparation of a specific document, like a demurrer.  The arbitrator would then cumulate all of the billing entries referring to or concerning the demurrer, including the review of the complaint and file, conducting legal research, telephone conferences and other communications regarding the demurrer or the sufficiency of the complaint,  and then the time entries for the drafting, revising and finalizing and filing the demurrer.

Once the cumulative time to complete a major task is obtained, then the arbitrator may look at the actual work product [or demurrer in foregoing example] to see if the time falls into a range that appears reasonable.  This can be hard to do without some experience in the particular legal area involved.   But, in the above example, if the fee bills reveal that a lawyer recorded 25-plus hours to research, draft, and file the demurrer, the arbitrator should review the actual demurrer to determine if the time recorded is reasonable.  If the evidence reveals that the demurrer is a four page boilerplate document attacking the sufficiency of a fraud claim lacking specificity, then the arbitrator may put the burden on the lawyer to explain why it took so long to prepare such a simple document.   On the other hand, if the evidence reveals a 20-page masterpiece artfully advocating novel concepts of law, then that may be evidence tending towards accuracy and reasonableness.

While a times-by-task assessment can be hard to assemble, sometimes the fee bills themselves will have guides to that information within them if the lawyer or law firm utilizes

---

[3] Arbitrators may also consider whether the client was given an estimate or a budget.  An "estimate" is not binding.  On the other hand, a budget typically involves a more detailed forecast and is supposed to be reasonably accurate (subject to disclosed caveats and assumptions).  Moreover, a budget should be revised if circumstances change and the client should be promptly notified of the revision(s).  Accordingly, if an estimate or budget was given, it may be reviewed to determine whether the disputed tasks were contemplated and explained to the client.

6

task-based billing codes like the "Uniform Task-Based Management System" published by the American Bar Association (ABA Task Codes).[4]  Task-based billing codes are in fairly wide use but are not standard and there is some debate over their usefulness.  For example, one may know that certain hours were recorded for "L240 - Motions For Judgment" but not how many hours were shown for a specific Motion for Summary Adjudication.  Where such codes are not used, the arbitrator may wish to ask the lawyer to provide evidence of the cumulative time expended on major tasks.  For instance, in Example 1 on page 4, Section A(2) *supra*, assuming that the lawyer utilized the ABA Task Codes, the time billed for meeting with the client to prepare the statement of facts would show the codes "L240" / "A106" in or right after the descriptions of the activities and the totals for these things would (or could) appear on the bill. Once the ABA Task Codes key is in hand, this will help to break down the time and fees into broad tasks, which may be useful information.  Once it is known that a motion for summary judgment required many hours of several timekeepers' time, an arbitrator can then come to a conclusion or ask for an explanation of whether or not the time spent on this particular task is reasonable.

Documents.  There often is a good deal of time shown for "reviewing documents" ("L320 - Document Production") in many litigation matters.  First, ascertain how many document pages were produced or reviewed.  This is sometimes stated in terms of "boxes" which is a standard file storage box normally holding anywhere from 2,000 to 3,500 pages of documents, depending on how tightly the documents are packed.  Some courts and commentators mention 2,500 as the average number of pages per box.  Assess how many timekeepers reviewed the documents and how long it took.  Were summaries of the document reviews created?  Were relevant documents culled?  Were relevant documents scanned and tagged?  If the foregoing tasks were not done, did it then result in multiple lawyers having to review the same documents?   Arbitrators must assess all evidence and facts regarding whether the lawyer's document review was efficient and judicious rather than inadvertent or intentional bill padding.

Also, the propriety of tasks must be considered within the context performed.  For instance, it may be entirely reasonable for a lawyer to charge a client eight-plus hours to carefully review a 100-page prospectus in a federal securities case involving claims of securities fraud and misrepresentation.  On the other hand, it may not be appropriate for a lawyer to charge a client eight-plus hours to review the same 100-page prospectus if the claims in the subject lawsuit are unrelated to the contents of the prospectus [like the wrongful termination of a broker or analyst involved in the securities offering].

Lastly, the arbitrator may consider evidence or facts concerning the timeliness of the client's objection or complaint concerning any fee bill, including when and if the client objected or made inquiries upon receiving the now contested fee bill, and whether the fee agreement

---

[4] The ABA Task Codes assign litigation time within five groups: case assessment, pre-trial, discovery, trial and appeal.  There are also 11 optional Activities Codes (such as "A106 - Communication (with client)" which may be used within each of the five groups in the Litigation Code Set.  The various ABA Task Codes may be accessed at www.americanbar.org/groups/litigation/resources/uniform_task_based_management_system.html

contained an agreement that the client would reasonably or promptly notify the lawyer if there were questions or objections to the fee bills or time entries.

**D.    Consider the format and content of the fee bills**

> **1.    High minimum increments**

Many fee agreements state that the lawyer shall bill in minimum increments of .10 hour [or six minutes].  When properly disclosed to a client, such a term may provide support or justify charging that client at least .10 hour for any single task irrespective of how long the task took.  Consequently, if the lawyer participates in a phone call regarding the case with opposing counsel that lasts less than two or three minutes, pursuant to the terms of the written fee agreement, the lawyer may be justified in billing .10 hour.

On the other hand, some lawyers still bill in minimum increments of .25 hours or greater. Consequently, they may charge .25 hours for any compensable task, irrespective of how long the task actually takes.  Assume that such a lawyer charges $300/hour. Assume further that on any given day, that lawyer completes at least four separate compensable tasks, each task taking less than 3 minutes each to complete.  Billing in increments of .25 hours means that the client would be billed $300 for the four tasks [4 x .25 hours x $300/hour = $300]. However, in this example, the client is being charged $300 for less than 12 minutes of actual work, essentially requiring the client to pay an effective hourly rate greater than $1,500.

Courts and fee arbitrators view high incremental charges with suspicion as they may constitute an unreasonable or unconscionable fee, particularly where application of high incremental charges results in overstating the fees owed by a client.  *Your Bill: A Behind the Scene look at a Legal Audit*, Mekler Bulger Tilson Marick & Pearson Legal Audit Group, 1, 2 (March 2007) (high incremental charges artificially inflate fees).  Relevant factors an arbitrator may consider in this regard include the terms of the written fee agreement, the frequency with which apparent minimum billing entries appeared on the bills, and whether there is evidence that the lawyer was judicious in not employing the high minimum billing entries for brief activities either by (1) not recording such activities, (2) aggregating them with other related activities, or (3) "no charged" the entry.

> **2.    Billing all tasks separately**

Like high minimum increments, billing every task separately may artificially inflate time entries.  For example, it does not take more than a few seconds to read most routine documents or correspondence.  If a lawyer reads a group of documents or correspondence in a minute or two and then records a minimum time entry for each such document/correspondence, this may artificially increase the time billed to the client.

> **3.    Large whole number time entries**

If the bills show time entries in whole numbers, especially large time entries such as 8.0, 9.0, or 10.0, these are probably estimates rather than actual time spent and should be scrutinized,

8

[except where the event involved trial, mediation, day-long deposition, or other inherently extended activity].

### 4.      Block billing

Block billing is the practice of assigning one time charge to multiple separate tasks.  An extreme example would be a fee bill mailed to a client at the end of the case with a single entry for 200 hours for "work on case" without identifying, among other things, the various individual tasks performed, who performed them, and when.  A more subtle example would be a 3.6 hour charge for "review client's e-mail, retrieve file, call with DR re same, and prepare/send reply."  In the foregoing example, a client would be unable to determine how much time any one of the listed tasks actually took.  More importantly, this type of block billing is prone to hide accountability and prevents a client from discerning which of the listed tasks are compensable and which are not.   For instance, in the foregoing example, what if the lawyer [charging $300/hour] decided to personally make a 3-hour drive to and from an off-site storage facility to retrieve the file rather than sending his secretary [whom he pays $15/hour]?   In such an instance, the itemized tasks actually took the lawyer 3.6 hours to complete, but in most instances, the 3 hours the lawyer spent retrieving the file may not be compensable.   By utilizing block-billing, the client's [and arbitrator's] ability to assess the accuracy [and propriety] of the 3.6 hour charge is impeded.

Block billing may also inadvertently or intentionally inflate the actual time a lawyer takes to complete the listed tasks.  For example, if a lawyer bills a client 8.0 hours on a given day to "prepare for trial," that block of time would most likely include, among other things, time for coffee and restroom breaks, personal calls and non-compensable administrative/managerial tasks.  Since block billing has the potential of, among other things, camouflaging non-compensable tasks, many judges, fee arbitrators, and commentators regard its persistent and egregious use with suspicion, and some consider the practice a violation of Business and Profession Code §6148(b).

The basic rule is that courts [and arbitrators] have wide discretion to require additional evidence to support the accuracy of block-billed entries.  In a mandatory fee arbitration, it is the lawyer's burden to provide such additional support, which may include testimony and documentary evidence.   After consideration of such additional support, or lack thereof, arbitrators may assign a reasonable percentage to the block billed entries, disregard them altogether, or determine that other evidence is sufficient to substantiate the hours aside from the block billed entries.  The court in *Heritage Pacific Financial v. Monroy*, (2013) 215 Cal.App.4th 972, 1010 held "trial courts retain discretion to penalize block billing when the practice prevents them from discerning which tasks are compensable and which are not." Previously, the court in *Bell v. Vista Unified School Dist.*, (2001) 82 Cal.App.4th 672, 689, held that "the trial court should exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside" if counsel "cannot further define his billing entries …."   In a much harsher tone, the court in *Christian Research Institute v. Alnor*, (2008) 165 Cal.App.4th 1315, 1329 held:

> Similarly, counsel may not submit a plethora of noncompensable, vague, block-billed attorney time entries and expect particularized, individual deletions as the

only consequence. The trial court could reasonably conclude counsel made no effort to prune the fee request to comply with the law. Counsel erred grievously by attempting to transfer that responsibility onto the trial court. The trial court could reasonably conclude counsel's disregard for the law undercut the credibility of their fee request and, as officers of the court, warranted a severe reaction.

If a lawyer uses block-billing, it may be appropriate for the arbitrator to place on the lawyer the burden of proving that all of the time entries that were block billed are actually compensable and appropriate.

In our prior version of this arbitration advisory titled "Detecting Attorney Bill Padding" (Arbitration Advisory 2003-01)(January 29, 2003), at section C 4 on page 7, the State Bar's Committee on Mandatory Fee Arbitration ["Committee"] opined that block billing "hides accountability and may increase time by 10% to 30%." However, the arbitrator's discretion is not limited to the 10% to 30% range. Rather, as noted above, an arbitrator may consider all evidence to determine the propriety of any block billed entry and may conclude, upon due consideration of all such evidence, that the entire time billed is appropriate or some portion is not.

## 5.    Standardized work descriptions and lack of detail

If an arbitrator encounters the exact same phrases used again and again in the fee bills, it is likely that some routine has set in. This may allow some "down time" to find its way into the fee bills. An entry such as "review documents produced by opposition, 7.5 hours" is typical.

Furthermore, generalized time entries such as "research issues", "review file", "attention to file", "discovery", "prepare for trial", "trial prep", and other similar general statements are not specific enough to let the client know what was done. If a lawyer uses such non-specific task descriptions, it may be appropriate for the arbitrator to place on the lawyer the burden of clarifying what was actually done to assess whether the generalized time entries are actually compensable and appropriate.

## 6.    Wrong times

Sometimes a client knows that a specific task took less time than was billed. For example, a lawyer charges four hours to attend a deposition in his office, but the corresponding deposition transcript confirms that the deposition started at 10 am and finished at 11 am. A fee bill may charge a client for the lawyer attending an in-person meeting with the client in his Los Angeles office, but the client was out of the country on that day. The lawyer may charge an hour to prepare a letter to the client, but cannot produce the letter at the arbitration. In each instance, the arbitrator should examine all of the evidence presented by the parties to determine whether the disputed task was actually performed and if so, that it took the time recorded in the fee bills. Demonstrably false or inaccurate entries, unless explained, may justify the arbitrator viewing with distrust other disputed billings or time entries.

10

### 7.    Timeliness of invoices

As noted above, if too much time has elapsed between the disputed task and generating the fee bill, the times shown might be estimates or best guesses of the time involved.  On the other hand, it is possible that the timekeeper recorded his or her time contemporaneously but did not generate the fee bill for some reason.  The lawyer should clarify why the fee bills were not timely delivered.  The arbitrator may also examine the fee agreement to determine if the lawyer committed to delivering periodic billing, and other factors such as (1) whether delayed billing came during a period of substantial activity, (2) whether the fee bill was a surprise to the client, (3) whether the claimed fee exceeds estimates or budgets, and (4) whether there were legitimate reasons that prevented the lawyer from timely delivering a fee bill to the client.

### 8.    Experts and outside investigators

Lawyers sometimes retain expert witnesses, consultants, investigators and other third-party professionals to assist a client.  These third-party professionals typically forward their bills to the lawyer for payment.  Sometimes the lawyer pays such third party bills directly and then subsequently sends the client an invoice for the advanced costs.  Other times, the lawyer forwards the third party bill directly to the client for payment.  Whatever the process used, it is imperative that such third party bills state what was done with adequate detail to allow a client to decipher what was done and how much is being charged.  If the lawyer advanced payment for such third party bills, representations and proof that these charges were actually paid should also be produced.

### 9.    Overhead items

A lawyer's hourly fee should include consideration for overhead items like rent, support staff wages, telephone service, internet fees, office supplies, library charges, seminars, continuing legal education charges, malpractice insurance and a whole host of expenses a lawyer will incur every day to keep his/her practice operating.  Consideration for such expenses explains why lawyers in located in urban cities, like downtown Los Angeles and San Francisco, may generally charge higher hourly rates than their colleagues who rent much less expensive office space in the suburbs and outlying farming communities.  Since overhead expenses are a cost of doing business, and should be reflected in the professionals' hourly rates, they should not be passed on to the client unless the client has clearly agreed otherwise in the fee agreement.  (*See* American Bar Association Standing Committee on Ethics and Professional Responsibility, Formal Opinion 93-379, *Billing for Professional Fees, Disbursements, and Other Expenses*, (December 6, 1993).

### 10.    Ministerial, administrative and secretarial tasks

As noted above, a lawyer's hourly fee should include consideration for support staff wages.  Accordingly, it may be inappropriate to allow a lawyer to also charge a client his/her hourly rate for doing secretarial work.  For instance, the vast majority of lawyers are able to prepare judicial form interrogatories in less than 5-10 minutes.  Their assistants or secretaries then prepare the actual hard document, prepare and attach the proof of service, generate the

11

stamped envelope and then serves it on the opposing party.  Typically, the only service the client should be charged for is the lawyer's 5-10 minutes to determine what boxes to check off on the form interrogatories.  But arbitrators will inevitably encounter situations where the lawyer also charges the client the time spent preparing the proof of service and mailing.  It is not uncommon to encounter fee bills that charge clients up to an hour for a simple task like preparing and serving form interrogatories. Arbitrators will also encounter situations where lawyers personally type their own correspondence, motions and other documents.  This is typically not a problem, unless of course, the lawyer can only type 10-20 word a minute.  In such circumstances, the arbitrator should consider the lawyer's typing proficiency, whether support staff is available for such tasks, and whether the hourly fee agreed-upon by the client includes consideration of support staff wages.

Also, operating a law practice requires substantial efforts on the part of the lawyers wholly unrelated to representing clients.  This includes dozens of administrative, managerial, and ministerial tasks lawyers must perform every day.  In the vast majority of cases, it is inappropriate to seek to charge a client for such non-legal tasks.

### 11.    Paralegals

The use of paralegals and unlicensed legal assistants is wide-spread and completely appropriate if disclosed to the client.  Guideline 8 of the 2004 update of the ABA Model Guidelines for the Utilization of Paralegal Services states that:  "A lawyer may include a charge for the work performed by a paralegal in setting a charge and/or billing for legal services." Courts have addressed and accepted the theory that paralegal fees are appropriately billed and recovered by lawyers under various prevailing party attorney fee recovery statutes. *Missouri v. Jenkins* (1989) 491 U.S. 274; *Richlin Security Service Co. v. Chertoff* (2008) 553 U.S. 571; and *Guinn v. Dotson* (1994) 23 Cal. App. 4th 262.  In California, paralegal fees are only compensable if in total compliance with Business and Profession Code §6450.  This requires that the paralegal actually qualifies as a paralegal and the type of work/tasks he/she purports to perform is compensable.

Surprisingly, many lawyers do not realize that some tasks performed by a paralegal are not compensable.  The test to determine whether a task performed by a paralegal is compensable is not predicated on the person that performs it, but rather on the nature of the task itself.  Business and Profession Code §6450 (a) states:

(a) "Paralegal" means a person who holds himself or herself out to be a paralegal, who is qualified by education, training, or work experience, who either contracts with or is employed by an attorney, law firm, corporation, governmental agency, or other entity, and **who performs substantial legal work under the direction and supervision of an active member of the State Bar of California**, as defined in Section 6060, or an attorney practicing law in the federal courts of this state, that has been specifically delegated by the attorney to him or her. **Tasks performed by a paralegal include, but are not limited to, case planning, development, and management; legal research; interviewing clients; fact gathering and retrieving information; drafting and analyzing legal**

12

**documents; collecting, compiling, and utilizing technical information to make an independent decision and recommendation to the supervising attorney; and representing clients before a state or federal administrative agency if that representation is permitted by statute, court rule, or administrative rule or regulation**.

(Emphasis added).

Furthermore, Business and Profession Code §6454 states that the "terms "paralegal," "legal assistant," "attorney assistant," "freelance paralegal," "independent paralegal," and "contract paralegal" are synonymous for purposes of this chapter.  Consequently, billing a client for a paralegal or legal assistant's ministerial, administrative, or secretarial duties may be improper, particularly if not disclosed in the fee agreement and explained to the client.  However, even if the lawyer disclosed the use of a paralegal or unlicensed legal assistant for ministerial, administrative or secretarial tasks in the fee agreement, the arbitrator may assess whether the consequent fees agreed upon were unconscionable at the time the fee agreement was entered into pursuant to Rule 4-200 of the Rules of Professional Conduct.

Lastly, it is imperative to remember that it is improper for a paralegal to establish the fees charged to the client for the paralegal's services.  Business and Professions Code §6450 (b)(8). This prohibition may prove to be a minefield for lawyers utilizing their paralegals to act as calendar clerks, office managers, supervisors or administrators who control and prepare the lawyer's/firm's fee bills.

### 12.    Canned Briefs-Recycled Work

Even newly admitted lawyers have access to a library or cache of canned briefs and template documents they may utilize in their practice.  These include, but are not limited to, canned or standardized pleadings, motions, discovery requests, and transactional documents like trusts and leases.  These canned or standardized documents may have been created by the lawyer or some third source.  The issue becomes whether it is appropriate for the lawyer to bill a client any premium for the creation of the original document, or may the lawyer only bill for the revisions made to the canned or standardized document.

As a threshold matter, the ABA long ago opined that:

In addressing the hypothetical regarding...recycled work product, it is helpful to consider these questions, not from the perspective of what a client could be forced to pay, but rather from the perspective of what the lawyer actually earned....  A lawyer who is able to reuse old work product has not re-earned the hours previously billed and compensated when the work product was first generated. Rather than looking to profit from ... the luck of being asked the identical question twice, the lawyer who has agreed to bill solely on the basis of time spent is obliged to pass the benefits of these economies on to the client. The practice of billing several clients for the same time or work product, since it results in the

13

earning of an unreasonable fee, therefore is contrary to the mandate of the Model Rules. Model Rule 1.5.

(American Bar Association Standing Committee on Ethics and Professional Responsibility, Formal Opinion 93-379, *Billing for Professional Fees, Disbursements, and Other Expenses*, (December 6, 1993); *See also Ethics and Time-Based Billing*, Michael Downey, Law Practice Today, ABA Law Practice Management Section, (January 2006) (Over-billing occurs when "billing the client who received the recycled work product time already billed to another client when that work product was originally created."); *See also, The Moral Compass of the American Lawyer*, Richard Zitrin and Carol Langford, (1999 Ballantine Books)(examples of cases in which lawyers were prosecuted and convicted of bill padding practices including billing multiple clients simultaneously and for recycled work product).

Similarly, the authors of the well-regarded Rutter Guide, caution:

Attorneys who prepare standardized documents for clients (e.g., wills, partnership agreements) often keep forms of those documents on their computers to use as "templates" that can be revised and customized to suit each client. Absent clear disclosure to the client, attorneys billing on an hourly basis cannot properly add additional hours to a client's bill when revising such an "in-house" form to reflect the time spent preparing the original (template) form. [Orange County Bar Ass'n Form.Opn. 99–001]

*California Practice Guide: Professional Responsibility*, Paul W. Vapnek, Mark L. Tuft, Ellen R. Peck and Justice Howard B. Wiener (Ret.), Chapter 5. Attorney Fees And Fee Agreements, Paragraph 5-945 (2012).

Given the foregoing, in the event a lawyer seeks to charge a client a "premium" for the use of recycled work, the arbitrator should determine if that "premium" was properly stated and disclosed in the written fee agreement. (State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 1998-03, *Determination of a "Reasonable" Fee*, pages 15-16 (Updated March 20, 2015). If it is not, it may be evidence of bill padding.

**13.     Billing multiple clients for the same time**

An arbitrator may encounter situations where the lawyer simultaneously worked on matters of several clients. For example, a lawyer charges two clients the full five hours it took him to attend two court hearings for the two separate clients on the same morning in the same court. The issue is whether each client can be properly billed for the full five hours. Generally, billing multiple clients for the same time raises questions of potential impropriety. The answer typically depends on whether the terms of the fee agreements actually disclosed and explained the manner of billing to the all of the affected clients and the fee agreements of every affected client is fair and reasonable. (*See* American Bar Association Standing Committee on Ethics and Professional Responsibility, Formal Opinion 93-379, *Billing for Professional Fees, Disbursements, and Other Expenses*, (December 6, 1993); State Bar of California Standing Committee on Professional Responsibility and Conduct, Formal Opinion No. 1996-147).

Therefore, if a lawyer seeks to bill the same time to more than one client simultaneously, that arrangement must be fair, reasonable, fully disclosed in the written fee agreements of all affected clients, and fully explained to each client.  If it is not, then it may be evidence of bill padding.  Additionally, the arbitrator must ensure that, irrespective of how much time the lawyer ultimately bills to any one client for such a collective task, the resulting fees are not unconscionable pursuant to Rule 4-200 of the Rules of Professional Conduct.

### 14.   Ghost Billing

"Ghost billing" occurs when a lawyer bills for work or task(s) performed by another person.  Variations abound.   For example, a paralegal or associate prepares a motion, but the partner in charge bills the time as his/her own.  Or a non-employee contract attorney attends a status conference, but the lawyer of record bills the time as his/her own.  Ghost billing should be scrutinized as it may constitute (1) a deceptive practice, (2) a violation of Business and Professions Code Section 6148(b), (3) bill padding, and (4) an attempt to collect an unconscionable fee or cost in violation of Rule 4-200 of the Rules of Professional Conduct.

### 15.   Contract Attorneys

Another recurring complaint in fee disputes concerns charges for the use of contract attorneys.  Lawyers use contract attorneys for a myriad of purposes, including court appearances, conducting legal research, drafting motions or appeals briefs, etc.  The resulting complaints typically concern how much the client is ultimately charged for these tasks.   The ABA has opined that, if properly disclosed, it is appropriate for the lawyer to mark-up the cost [or add a profit] for work performed by contract attorneys.  (*See* American Bar Association Standing Committee on Ethics and Professional Responsibility Formal Opinion 00-420, Surcharge to client for use of a contract attorney (November 29, 2000)).  However, disputes result when a lawyer chooses to use a "contract attorney" and then bills for the work performed as a fee at the lawyer's hourly rate, when, in fact, the lawyer is paying the contract attorney a lesser rate.[5]

Anticipated use of contract attorneys should be addressed in the written fee agreement. The written fee agreement should state whether the contract lawyer is billed out as a cost or their time is charged as a fee at indicated rates along with the time of the lawyer's or law firm's other timekeepers (partners and associates).  (*See* State Bar of California Standing Committee on Professional Responsibility and Conduct, Formal Opinion No. 2004-165; and The Professionalism and Ethics Committee of the Orange County Bar Association, Formal Opinion 2014-1).  Absent such disclosure, the client should only be charged the out-of-pocket cost of the contract attorney.

---

[5]       There are numerous other non-billing, ethical considerations that are triggered by the use of contract lawyers. As COPRAC concluded in its Opinion 2004-165: Contract attorney services, and individual lawyers providing contract legal services to lawyers, may provide cost-effective alternatives to consumers of legal services. In using these services, those lawyers hiring the contract attorneys must comply with the ethical rules concerning the disclosure to the client of significant developments in the representation. Both those lawyers doing the hiring and those lawyers who are hired must comply with the ethical rules concerning competence, confidentiality, advertising, and conflicts of interest that apply to their respective roles in any such arrangement.

15

For example, assume that a lawyer [a solo practitioner], charging her client $300/hour, is unable to attend a status conference. She engages a contract attorney to attend a status conference. The contract attorney then delivers an invoice to the lawyer indicating that it took him 1½ hours to attend the status conference and the cost to the lawyer is $100, which the lawyer pays. Generally, given the foregoing facts, the client should only be charged the $100 paid to the contract attorney. If the lawyer seeks to charge the client some other amount, more than $100 or $450 (1½ hours it took to attend the status conference multiplied by her $300/hour rate), it must be clearly disclosed in the written fee agreement. If it is not, then it may be evidence of bill padding.

However, there are circumstances where the facts are not so clear-cut. For example, some law firms [including large multi-national law firms], occasionally find it necessary to hire groups of contract attorneys to conduct special assignments, like document reviews in large cases involving hundreds of thousands, if not millions, of hard and digital documents. In addition to the hourly rate for the contract attorneys, such law firms also incur office and transportation [and other] costs associated with using the contract attorneys. For example, the law firm may have to allocate a portion of their office space, or rent some additional office space, for the contract attorneys to do their work. In such cases, assuming that the use and charge of the contract attorneys are properly disclosed in the written fee agreement, it may be appropriate for the law firm to charge a premium for the use of the contract attorneys. If there is no such disclosure, in addition to the contract attorney's actual hourly rate, the law firm may also be able to properly charge the client for the associated costs described above. Of course, in such circumstances, it is the law firm's obligation to bear the burden of proof to quantify the associated costs chargeable to the client.

The arbitrator should consider the terms of the written fee agreement and whether the client agreed to pay for contract attorneys at some rate other than the actual cost to the lawyer. In the vast majority of written fee agreements, the term "attorney" or "lawyer" is typically defined to mean only the lawyer and/or law firm hired by the client. While a reasonable extension of this definition may include the defined lawyer's employee associates and partners, it does not necessarily include non-employee contract attorneys to which the client has no relationship. Accordingly, the arbitrator should assess those facts regarding whether the client agreed or acknowledged the use and expense of contract attorneys.

## CONCLUSION

The vast majority of lawyers are honest and their bills are reliable statements of the work and time billed to the client. However, if a client claims to have been over-billed, the arbitrator should, at the very least, (1) evaluate the specificity of the time entries and the process by which the fee bill was prepared, (2) evaluate the staffing used on the matter, (3) evaluate the work performed against the time billed, and (4) look for certain patterns in the descriptions of the work performed, including the time entries, to assess the accuracy and propriety of the time charged to the client.

16

# Exhibit 14

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 5/14/25 | Comms from City re draft of proposed protective order | 0.10 | 0.10 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 6/20/25 | Review Answer to Complaint (Hemet) | 0.70 | 0.70 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Marcel F. Sincich | 6/30/25 | Comms from City re officer depos and discovery responses | 0.10 | 0.10 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Marcel F. Sincich | 6/30/25 | Finalize and serve Notice of Depositions on City Officers | 0.10 | 0.10 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 7/22/25 | Sobaszek Deposition – Preparation | 4.50 | 4.50 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Marcel F. Sincich | 7/23/25 | Review file and prepare for Officer Sobaszek Deposition | 0.60 | 0.60 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |

Exhibit 14

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 8/13/25 | Prepare for Reynoso Deposition | 3.70 | 3.70 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 8/14/25 | Reynoso Deposition – Preparation | 4.30 | 4.30 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Marcel F. Sincich | 8/14/25 | Assist with preparation of Depo of Sgt. Reynoso | 0.60 | 0.60 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Marcel F. Sincich | 11/11/25 | Comms from City re scheduling Pl. depo | 0.20 | 0.20 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 11/16/25 | Review Deposition of Sobaszek | 1.90 | 1.90 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 11/17/25 | Review Deposition of Reynoso | 2.00 | 2.00 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 1/2/26 | Hubbs Deposition / Preparation | 3.50 | 3.50 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 1/19/26 | Prepare for Noble Deposition | 1.00 | 1.00 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 2/12/26 | Review MSJ | 1.80 | 1.80 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 2/13/26 | Review MSJ – Legal Research | 2.20 | 2.20 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 2/14/26 | Review MSJ– Legal Research | 2.50 | 2.50 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 2/17/26 | Review Opposition to MSJ – Legal Research | 2.90 | 2.90 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 2/18/26 | Review Opposition to MSJ – Legal Research | 2.10 | 2.10 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 2/19/26 | Review Opposition to MSJ | 1.00 | 1.00 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 2/26/26 | Review Reply to Opposition to MSJ | 1.20 | 1.20 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 4/13/26 | Review Notice of Settlement with City of Hemet | 0.20 | 0.20 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Trent Packer | 4/17/26 | Attention to settlement issues | 0.20 | 0.20 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Trent Packer | 5/5/26 | Attn to Reynoso transcribed statement | 1.00 | 1.00 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |

# Exhibit 15

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 10/23/24 | Draft complaint | 5.60 | 2.80 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 3/10/25 | Draft First Amended Complaint ("FAC") | 1.00 | 0.50 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 3/21/25 | Research, drafting, and reviewing FAC for Opp to pending MTD FAC | 0.50 | 0.25 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 3/23/25 | Review First Amended Complaint | 0.60 | 0.30 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |

Exhibit 15

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 3/24/25 | Research and review FAC and draft Opp to pending MTD FAC | 2.00 | 1.00 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 4/9/25 | Depo Prep re Officers Irick, Sobaszek and Reynoso: gathering docs, videos and photo | 0.30 | 0.15 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 4/9/25 | Draft notice of deposition of Officers Irick and Reynoso | 0.20 | 0.10 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 4/10/25 | Depo Prep re Officers Irick, Sobaszek and Reynoso: gathering docs, videos and photo | 0.40 | 0.20 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |

Exhibit 15

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 7/19/25 | Prepare for Officer Depositions | 4.10 | 2.05 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 7/20/25 | Prepare for Officer Depositions | 3.90 | 1.95 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 7/21/25 | Prepare for Officer Depositions | 3.30 | 1.65 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 8/11/25 | Review File and Draft: RFA to City, RFA to Irick, ROGG to Irick | 1.00 | 0.50 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 12/31/25 | Prepare for Chapman/Hubbs Depositions | 3.50 | 1.75 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 1/1/26 | Prepare for Chapman/Hubbs Depositions | 3.60 | 1.80 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 3/7/26 | Review Depositions | 4.90 | 2.45 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 3/12/26 | Review Investigation Reports | 2.50 | 1.25 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 3/13/26 | Review Expert Reports | 2.70 | 1.35 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 3/20/26 | Review Depositions | 3.30 | 1.65 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 3/26/26 | Review Motions in Limine | 3.20 | 1.60 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Trent Packer | 4/1/26 | Review and revise oppositions to MILs | 2.60 | 1.30 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |

| Timekeeper | Date | Description | Hours Billed | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 4/2/26 | Review Oppositions to Motions in Limine | 2.80 | 1.40 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 4/3/26 | Review Oppositions to Motions in Limine | 2.20 | 1.10 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |

# Exhibit 16

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Fahren James,<br>        Plaintiff,<br><br>                    v.<br><br>Richard Cheney,<br>        Defendant. | 2:21-CV-08256-DSF-DTB<br><br>Order Granting in Part<br>Plaintiff's Motion for Fees and<br>Costs (Dkt. 121) |

Plaintiff Fahren James requests that the Court award attorneys' fees and costs relating to her claims against pro se defendant Richard Cheney.  Dkt. 121 (Mot.).[1]  Cheney asks that the Court not award fees or costs, but offers no substantive argument.  Dkts. 123, 124.  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the following reasons, the Court awards James $302,988.37 in fees.

James seeks attorneys' fees pursuant to the Bane Act, which provides that a court "may award the . . . plaintiff reasonable attorney's

---

[1] The Court notes that James completely disregarded the Court's ORDER RE REQUIREMENTS FOR MOTION FOR ATTORNEYS' FEES.  See Dkt. 6.  There is no joint statement or spreadsheet similar to that used as an example in the order.  The time and expense records submitted ignore the Court's ORDER RE FORMAT OF TIME AND EXPENSE RECORDS.  See id.  There is no indication that the parties met and conferred as required by the local rules and the Court's order, although they had done so on other issues.  Nevertheless, the Court will consider James's motion.

fees." Cal. Civ. Code § 52.1(i). James is the prevailing party; a jury awarded her $10,000 in compensatory damages and $45,000 in punitive damages. Dkt. 120. Her attorneys seek $673,307.50 in fees and $6,893.30 in costs.[2] Dkt. 121.

The computation of attorney's fees under a statute authorizing recovery to a prevailing party is generally determined under the lodestar adjustment method. See Ketchum v. Moses, 24 Cal. 4th 1122, 1131-36 (2001). The "lodestar" is calculated by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996), opinion amended on denial of reh'g, 108 F.3d 981 (9th Cir. 1997) (citing McGrath v. Cnty. of Nevada, 67 F.3d 248, 252 (9th Cir. 1995)).

The Court generally may refer to both state and federal law to determine whether a fee is reasonable. See, e.g., Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1112 (9th Cir. 2014); see also Rios v. City of Los Angeles, 2:21-cv-05341-RGK-MAA, 2023 WL 3432164, *2 (C.D. Cal. Mar. 2, 2023) (relying in part on federal law to determine reasonable attorneys' fees under the Bane Act).

District courts have broad "discretion in determining the amount of a fee award . . . in view of [their] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). If a court determines that some hours billed are not reasonable, it may exclude them using one of two methods. Gonzalez v. City of Maywood, 729 F.3d 1196, 1203 (9th Cir. 2013). The court may either conduct an "hour-by-hour analysis" of the fee request or make an "across-the-board percentage cut" either to the number of hours claimed or the final lodestar figure. Id. (quoting Gates v. Deukmejian, 987 F.2d 1392, 1399 (9th Cir. 1992)). If the court finds the time expended or the amount requested is not reasonable, it may

---

[2] James has already been awarded costs pursuant to her bill of costs. See Dkts. 122, 131.

2

award attorneys' fees in a lesser amount.  <u>Morris v. Hyundai Motor America</u>, 41 Cal. App. 5th 24, 34 (2019).

"The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed."  <u>Welch v. Metropolitan Life Ins. Co.</u>, 480 F.3d 942, 945-46 (9th Cir. 2007) (citing <u>Hensley</u>, 461 U.S. at 433).  It is the losing party's burden to identify entries that should be stricken and produce "a sufficiently cogent explanation" as to why they are "excessive or duplicative[.]"  <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1116 (9th Cir. 2008).  "If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut."  <u>Id.</u>

The Court finds that James has met her burden as to much of her request, but not all: there are issues about the hourly rates[3], the

---

[3] Courts in the Ninth Circuit have questioned the value of attorney declarations purporting to be evidence of a reasonable rate because these declarations "are both self-serving and self-perpetuating."  <u>Kochenderfer v. Reliance Standard Life Ins. Co.</u>, No. 06-CV-620 JLS (NLS), 2010 WL 1912867, *4 (S.D. Cal. Apr. 21, 2010); <u>see also</u> <u>Zeigler v. Cnty. of San Luis Obispo</u>, No. CV 17-9295-MWF (AFMx), 2023 WL 3432238, *4 (C.D. Cal. Mar. 1, 2023) ("The Court does not assign much weight to Plaintiff's attorneys' declaration given its self-serving nature.").  This is particularly true where, as here, the declarant works in the same substantive area of law as the fee-seeking attorney.  "A high award in this case would support the declarants' own high hourly rate requests in the future."  <u>Kochenderfer</u>, 2010 WL 1912867 at *4.

allocation of fees between Cheney and the other defendants,[4][5] the reasonableness of some of the time entries, and the rates charged and work performed by "case managers" and others[6]. James seeks an

---

[4] On about April 25, 2023, James and her co-Plaintiff settled their claims against the City of South Pasadena and five South Pasadena police officers. Dkt. 81 (MIL II) at 3. This resolved six of James's seven claims and the bulk of the legal issues. See Dkt. 56 (SAC). Both sides agreed "to bear their own costs and attorneys' fees." Dkt. 71 at 2. Cheney was involved in only one of six incidents that formed the basis of the lawsuit. Dkt. 121-2 (Hoq Decl.) ¶9 and the co-Plaintiff was not involved in the incident involving Cheney. Cheney should not be held responsible for fees incurred litigating against other defendants.

[5] In Laboni Hoq's entries prior to April 25, 2023, some tasks that appear to relate to all defendants are reduced by 85%. For example, two hours of "docs review" on October 2, 2022 are recorded as only 18 minutes of compensable time. Other tasks that appear solely related to Cheney are categorized as compensable in full, such as "review grace letter re Cheney discover deficiencies; edits re same[.]" Id. DeSimone Decl., Ex. B at 2. However, some entries that appear to relate to all defendants are not discounted. In V. James DeSimone's time entries prior to the settlement with the other defendants, work related to all defendants appears to be discounted by only 50%. Hoq's percentage reduction is much more appropriate.

[6] James seeks fees for persons described as "case managers" in the billing, but are referred to in the motion as paralegals. "[A] paralegal's work is only compensable when it is not purely clerical or administrative, because those tasks should not be billed at paralegal rates but should instead be subsumed in the overhead costs of a firm." Zeigler, 2023 WL 3432238 at *9 (collecting cases). "On the other hand, 'functions that would have been performed by lawyers or at least reviewed by them if they had not been performed by experienced paralegals' are not purely clerical and may, in some circumstances, be billed." Id. Some of the case managers' tasks are purely clerical or administrative. For example, on March 20, 2024, Kimberly Medina billed .9 hours to "Prepare and Provide Zoom link for Attorney and Client Fahren James Meeting and send email to all parties with Zoom link Details[.]" Dkt. 121-1 (Ex. E). The Court is skeptical that it took 54 minutes

4

extraordinary amount for a case that resulted in a comparatively small recovery on only one of the two claims originally asserted with two experienced attorneys proceeding at trial against a pro se defendant.[7] For the reasons described, James has not met her burden to support all the fees submitted. But is not the Court's responsibility to evaluate these issues or perform its own hour by hour evaluation of the billing records. Therefore, the Court concludes it should exercise its discretion to reduce the fee request by 10%. See Moreno, 534 F.3d at 1112 ("the district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation.").

That results in a generous lodestar of $605,976.75.

Under California law, "a reduced fee award is appropriate when a claimant achieves only limited success." Chavez v. City of Los Angeles, 47 Cal. 4th 970, 989 (2010) (quoting Sokolow v. Cnty. of San Mateo, 213 Cal. App. 3d 231, 249 (1989)). The fee award "need not be strictly proportionate to the damages recovered," but should be "reasonable in relation to the results obtained." Id. (citing City of Riverside v. Rivera, 477 U.S. 561, 574 (1986)). "On this point, California law is consistent with federal law." Chavez, 47 Cal. 4th at 989.

At closing argument, James's attorneys asked the jury for between $500,000 and $700,000. James was awarded only $55,000. Dkt. 120. In Farrar v. Hobby, the Supreme Court reiterated that "[w]here recovery of private damages is the purpose of civil rights

---

to create a Zoom link and send it over email. Regardless, this is not a function performed by a lawyer or reviewed by one.

[7] For example, at the requested rates, James would have been charged $2,250 an hour to proceed on a single claim that did not present particularly novel or difficult questions. No reasonable person would pay that amount. The Court bases its award on the requested hourly rates only because Cheney does not dispute them. The Court has not affirmatively found that the rates are reasonable, and counsel should not represent to any court or otherwise that this Court found them to be so.

5

litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." 506 U.S. 103, 114 (1992) (citing City of Riverside). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Id. at 115.[8]

Given James's limited success, the Court deems it appropriate to reduce the lodestar by 50%.[9] See Mann v. Quality Old Time Serv., Inc., 139 Cal. App. 4th 328, 345-46 (2006) (holding attorneys' fee request on anti-SLAPP motion merited a 50% reduction due to motion's partial success); Kottle v. Unifund CCR, LLC, 992 F. Supp. 2d 982, 986 (C.D. Cal. 2014) (finding 50% reduction of attorneys' fees warranted because two of three claims were unsuccessful); Malama Makua v. Hagel, No. CV 09-00369 SOM-RLP, 2013 WL 12284635, *10 (D. Haw. Apr. 22, 2013) (finding "after carefully considering the factual and procedural background of this matter, . . . that Plaintiff's base fee award should be reduced by 50% to reflect Plaintiff's partial success"); Vogel v. Dolanotto, LLC, No. 2:16-CV-02488-ODW-KSx, 2018 WL 1684303, *7 (C.D. Cal. Apr. 5, 2018) ("Plaintiff gained only partial success in this action, which warrants a reduction in these expenses by 50%.").

This results in a fee award of 302,988.37, which the Court finds is more than reasonable.

---

[8] The Court notes that, unlike many civil rights cases, the verdict against Cheney, a private citizen engaged in conduct not likely to recur, provided no public benefit. This fact must be considered when evaluating a fee request. McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009) (citing Hensley, 461 U.S. at 440.).

[9] James abandoned her § 1983 claim based on the First Amendment shortly before trial. In addition, the Court found that James could not proceed on her Bane Act claim to the extent it was based on the First Amendment, an issue counsel themselves should have identified. See Dkt. 112. It does not appear that counsel made any adjustment based on legal research or other services that related only to the abandoned § 1983 and First Amendment related claims.

IT IS SO ORDERED.

Date: August 5, 2024

Dale S. Fischer
United States District Judge

# Exhibit 17

# Ketchum v. Moses (2001)

[No. S077350. Feb. 26, 2001.]

SMITH A. KETCHUM III, Plaintiff and Appellant, v. JOHN M. MOSES, Defendant and Respondent.

(Superior Court of Marin County, No. 165699, Richard H. Breiner, Judge.)

(The Court of Appeal, First Dist., Div. Three, No. A076353.)

(Opinion by Mosk, J., expressing the unanimous view of the court.)

**COUNSEL**

Krause & Baskin, Marshall W. Krause and Lawrence A. Baskin for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Pamela Smith-Steward, Chief Assistant Attorney General, Margaret A. Rodda, Assistant Attorney General, Tyler B. Pon and Lisa A. Tillman, Deputy Attorneys General, for California Highway Patrol as Amicus Curiae on behalf of Plaintiff and Appellant.

Casey Gwinn, City Attorney (San Diego), as Amicus Curiae on behalf of Plaintiff and Appellant.

Remcho, Johansen & Purcell, Robin B Johansen and James C. Harrison for Education Legal Alliance as Amicus Curiae on behalf of Plaintiff and Appellant.

Jeremy L. Friedman; Law Office of Richard M. Pearl and Richard M. Pearl for Defendant and Respondent.

Law Offices of Charles B. Renfrew, Charles B. Renfrew; Lieff, Cabraser, Heimann & Bernstein, Robert J. Nelson, Joshua P. Davis and Caryn Becker for The Bar Association of San Francisco as Amicus Curiae on behalf of Defendant and Respondent.

The Sturdevant Law Firm, James C. Sturdevant and Jack P. Hug for Consumer Attorneys of California as Amicus Curiae on behalf of Defendant and Respondent.

Saperstein, Goldstein, Demchak & Baller, Linda M. Dardarian, Debra Smith; and Brad Seligman for The Impact Fund, et al. as Amici Curiae on behalf of Defendant and Respondent.

Mark Goldowitz for California Anti-SLAPP Project as Amicus Curiae on behalf of Defendant and Respondent. **[24 Cal. 4th 1127]**

**OPINION**

**MOSK, J.-**

Defendant sought mandatory attorney fees after he moved to strike allegations in a so-called strategic lawsuit against public participation, or SLAPP action, under section 425.16 of the Code of Civil Procedure. The superior court granted the motion and awarded attorney fees, including fee enhancements based on contingent risk and the exceptional quality of the legal services provided. We granted review to address the question whether the attorney fees were properly calculated in this matter. As will appear, based on our review of record, we conclude that they were not.

I

Plaintiff Smith A. Ketchum III owns a multi-unit apartment building in Sausalito. His tenant, defendant John M. Moses, reported numerous code violations to government agencies, including the Sausalito fire and building departments. According to another tenant, Ketchum referred to Moses as a "troublemaker" and stated that he would "get [him] into court" and "keep him there," asserting that he could "afford the best lawyers" while Moses could obtain only "cheap legal aid."

In October 1995, Ketchum filed an action against Moses seeking compensatory and exemplary damages, including allegations that he had made false complaints to the various local government agencies in an effort to harass, annoy, and inflict emotional distress on him. Attorney Jeremy L. Friedman agreed to represent Moses on a contingent fee basis. In January 1996, he filed a special motion to strike under Code of Civil Procedure section 425.16, on the ground that the suit constituted a SLAPP action. The special motion was supported by declarations of government officials to the effect that their inspections based on Moses's reports revealed numerous code violations involving hazardous conditions, and that tenants should not be discouraged from reporting such information. Friedman attempted to negotiate a dismissal without formal court action, but was informed by Ketchum's counsel that there was no possibility of settlement. Instead, Ketchum filed an opposition to the motion, supported by declarations by himself and an attorney.

In April 1996, the superior court granted the special motion. Other claims by the parties, including a claim by Ketchum of assault and battery, and **[24 Cal. 4th 1128]** claims by Moses of harassment, breach of the warranty of habitability, and retaliatory eviction, were subsequently settled by the parties.

In June 1996, Moses moved for an award of attorney fees, as authorized by Code of Civil Procedure section 425.16, subdivision (c). The motion was supported by extensive documentation, including itemized time and expense notes and a declaration describing Attorney Friedman's experience and expertise. Moses also included declarations of attorneys in the area averring to the local market rate for comparable representation, including the additional premium typically charged for representation undertaken on a contingent fee basis. The declarations stated, inter alia, that upward adjustments in the range of two to four times normal hourly rates are the prevailing practice in the area for contingent risk cases and that a fee enhancement of at least 2.0 is required to attract competent counsel to cases where statutory fees are authorized; they provided numerous examples of fee enhancements awarded in cases involving statutory fee-shifting provisions.

Ketchum sought a full evidentiary hearing, including oral testimony of experts and cross-examination of Moses's counsel. Although the superior court observed that the motion was "being overtried" by Ketchum, it permitted him to depose Moses's counsel and to submit the declaration of a fee expert. With regard to the possibility of an additional fee request based on the fee dispute, Ketchum's attorney replied: "I'll take the risk."

At the hearing, in August 1996, the superior court explained: "I practiced law mostly as a litigator for about 15 years. I've been on the bench 18 years reviewing fee requests on numerous types of cases, being familiar with many law firms practicing in rural areas as well as in the big city south of here [i.e., San Francisco] .... I know what the going rates are. I know what lawyers have to do and I know what cases are worth and how much time it takes." With respect to the fee enhancement, it continued: "[T]he case law is clear that the Court should consider seriously setting the fees in the form of a lodestar and considering a multiplier, and I think this is a good case for it." It ruled that a fee enhancement should be applied to the lodestar figure, based on "the contingent nature of the case and because of the exceptional representation by Mr. Friedman and his qualifications as proven by the quality of his work as well as declarations as to his legal expertise." It acknowledged that attorney fees under the statute should not be punitive but indicated that it was troubled by the evidence concerning Ketchum's motivation for bringing the action: "There shouldn't be anything punitive in this proceeding although I will say I can't get out of my mind the alleged statement that Dr. Ketchum made [about] Mr. Moses that Mr. Friedman quoted in his opening paper several months ago," apparently referring to **[24 Cal. 4th 1129]** Ketchum's statement to another tenant that he would make the case so expensive that Moses would not be able to afford a lawyer. With regard to additional attorney fees incurred in the fee dispute, it found that Ketchum was responsible for the increased fees, describing his "full formal battle" as "somewhat like building a sand castle at low tide."

In August 1996, the superior court awarded Moses attorney fees in the amount of $140,212. The fees included a lodestar amount of $70,106, for costs incurred in the motion to strike and for the fee motion. The lodestar was based on the market rate for comparable legal services in a noncontingent matter. The superior court applied a fee enhancement of 2.0 based on the contingent risk of nonpayment and the exceptional quality of representation by Friedman.

Ketchum substituted new counsel and sought reconsideration and a stay of the fee order. He asserted, for the first time, that he was unaware of the filing of the SLAPP litigation until April 1996, after the motion to strike had been granted. Moses responded that the assertion was false and perjurious, citing in-court statements by Ketchum prior to April 1996 acknowledging his personal knowledge of the SLAPP litigation.

The superior court denied the motions for reconsideration and a stay. At the hearing on the motions, in November 1996, the superior court referred to the basis for its award: "I remember something about six months ago pointing out to Dr. Ketchum the fact that his statement to one of the other tenants in the apartment building was that he would really put the defendant, Mr. Moses, through hoops and make it impossible for him to get a lawyer. That was part of my thinking and ruling on the amount of attorney's fees and the multiplier as well. And I intended by that to give my message that that kind of statement goes against his interests." It also indicated that it was inclined to award supplemental fees and costs for work expended on the motion for reconsideration and enforcement of the judgment subject to the same multiplier that was applied to the August 1996 award: "And I pointed out that Mr. Moses isn't being decompensated if he worked for fees, but has to spend three times that to collect them, and therefore, I awarded fees on fees. And that doesn't indicate my bias, or prejudice, or inten[t] to punish, but it is a message."

In December 1996, the superior court awarded supplemental attorney fees and costs in the amount of $112,160. At the hearing, the superior court again referred to Ketchum's apparent motivation in bringing the SLAPP action: "[A]ssigning blame for the length and complexity of this proceeding

doesn't serve any purpose no matter who's blamed. And I don't know if the genesis **[24 Cal. 4th 1130]** of all this problem was the five lines that [original counsel for Ketchum] put in the complaint or Dr. Ketchum's alleged statement to the other tenant of the apartment building that he denies making. I say alleged statement that he denies making, that he's going to make this so expensive for Mr. Moses that he'll never be able to afford a lawyer. And if he did say that, that I think is the genesis of his problems ...."

Ketchum appealed. He contended, inter alia, that the superior court abused its discretion in calculating the amount of the attorney fees award. The Court of Appeal reversed. It held that there was no abuse of discretion with regard to the lodestar amount or the award of fees incurred both for the motion to strike and to defend the fee claim. But it concluded that the superior court lacked authority to apply a fee enhancement to the lodestar figure. Relying in large part on the majority opinion in Burlington v. Dague (1992) 505 U.S. 557 [112 S. Ct. 2638, 120 L. Ed. 2d 449] (hereafter sometimes Dague), which addressed the use of fee enhancements in calculating attorney fees under the fee-shifting provisions of two federal statutes, it concluded that the use of a fee enhancement "will at best serve no purpose and at worst encourage pursuit of unmeritorious claims."

We granted review; we now affirm the judgment of the Court of Appeal on the basis that the superior court abused its discretion in the awarding of the fees.

II

Code of Civil Procedure section 425.16, subdivision (b), in relevant part provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

The purpose of the so-called anti-SLAPP provision is expressly stated in the statute as follows. "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly." (Code Civ. Proc., § 425.16, subd. (a).) The statute protects, inter alia, direct petitioning of the government and petition-related statements and writings, **[24 Cal. 4th 1131]** whether or not the statement is made in connection with a public issue. (Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal. 4th 1106, 1123 [81 Cal. Rptr. 2d 471, 969 P.2d 564].)

The special motion to strikeor so-called anti-SLAPP motionis subject to statutory fee shifting as follows. "In any action subject to [the special motion to strike], a prevailing defendant ... shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [Code of Civil Procedure] [s]ection 128.5." (Code Civ. Proc., § 425.16, subd. (c).)

[1] Thus, under Code of Civil Procedure section 425.16, subdivision (c), any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees. The fee-shifting provision was apparently intended to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to "chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Id., subd. (a).) The fee-shifting provision also encourages private representation in SLAPP cases, including situations when a SLAPP defendant is unable to afford fees or the lack of potential monetary damages precludes a standard contingency fee arrangement. As will appear, by its terms, Code of Civil Procedure section 425.16 permits the use of the so-called lodestar adjustment method under our long-standing precedents, beginning with Serrano v. Priest (1977) 20 Cal. 3d 25 [141 Cal. Rptr. 315, 569 P.2d 1303] (hereafter Serrano III).

In Serrano III, we concluded that the court could award attorney fees under a "private attorney general" theory to public interest law firms that had successfully represented plaintiffs in an action challenging the constitutionality of the then existing California public school financing system. In so holding, we expressly declined to follow United States Supreme Court precedent precluding such fees. (Serrano III, supra, 20 Cal.3d at p. 43 [rejecting majority holding in Alyeska Pipeline Co. v. Wilderness Society (1975) 421 U.S. 240 [95 S. Ct. 1612, 44 L. Ed. 2d 141].) We explained that "the fashioning of equitable exceptions" to the California rule that parties must bear their own costs "is a matter within the sole competence of this court." (Serrano III, supra, 20 Cal.3d at p. 43.) As we later reemphasized, with regard to questions about how attorney fee awards must be assessed, "[w]e envision an independent state rule." (Serrano v. Unruh (1982) 32 Cal. 3d 621, 639, fn. 29 [186 Cal. Rptr. 754, 652 P.2d 985] (Serrano IV).)

Under Serrano III, a court assessing attorney fees begins with a touchstone or lodestar figure, based on the "careful compilation of the time spent and **[24 Cal. 4th 1132]** reasonable hourly compensation of each attorney ... involved in the presentation of the case." (Serrano III, supra, 20 Cal.3d at p. 48.) We expressly approved the use of prevailing hourly rates as a basis for the lodestar, noting that anchoring the calculation of attorney fees to the lodestar adjustment method " 'is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts.' " (Id. at p. 48, fn. 23.) In referring to "reasonable" compensation, we indicated that trial courts must carefully review attorney documentation of hours expended; "padding" in the form of inefficient or duplicative efforts is not subject to compensation. (See id. at p. 48.)

Under Serrano III, the lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. (Serrano III, supra, 20 Cal.3d at p. 49.) The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services. The " 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " (Ibid.)

[2] As we explained in Rader v. Thrasher (1962) 57 Cal. 2d 244, 253 [18 Cal. Rptr. 736, 368 P.2d 360]: " '[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable.' " The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights, such as those protected under the anti-SLAPP provision, into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis.

The economic rationale for fee enhancement in contingency cases has been explained as follows: "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional **[24 Cal. 4th 1133]** loans." (Posner, Economic Analysis of Law (4th ed. 1992) pp. 534, 567.) "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." (Leubsdorf, The Contingency Factor in Attorney Fee Awards (1981) 90 Yale L.J. 473, 480; see also Rules Prof. Conduct, rule 4-200(B)(9) [recognizing the contingent nature of attorney representation as an appropriate component in considering whether a fee is reasonable]; ABA Model Code Prof. Responsibility, DR 2-106(B)(8) [same]; ABA Model Rules Prof. Conduct, rule 1.5(a)(8).)

Such fee enhancements are intended to compensate for the risk of loss generally in contingency cases as a class. (Beasley v. Wells Fargo Bank (1991) 235 Cal. App. 3d 1407, 1419 [1 Cal. Rptr. 2d 459].) In cases involving enforcement of constitutional rights, but little or no damages, such fee enhancements may make such cases economically feasible to competent private attorneys. (Weeks v. Baker & McKenzie (1998) 63 Cal. App. 4th 1128, 1172 [74 Cal. Rptr. 2d 510].) "[M]ost lawyers of this quality do seem to consider the prospects of success and the fee recoverable before adding to their crowded calendars a case in which payment is contingent." (Leubsdorf, The Contingency Factor in Attorney Fee Awards, supra, 90 Yale L.J., at p. 501.)

In Serrano IV, applying the same principles to the statutory fee award under Code of Civil Procedure section 1021.5, we reiterated that fee awards should be fully compensatory. We approved the calculation of attorney fees beginning with a lodestar figure based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type. (Serrano IV, supra, 32 Cal.3d at p. 625.) We remarked that the reasonable value of attorney services is variously defined as the " 'hourly amount to which attorneys of like skill in the area would typically be entitled.' " (Id. at p. 640, fn. 31; see also id. at p. 643 ["Services compensable under [Code of Civil Procedure] section 1021.5 are computed from their reasonable market value"].) We noted that the lodestar figure was subject to augmentation based on factors including the contingent nature of the litigation. (32 Cal.3d at p. 626, fn. 6.)

We held in Serrano IV that, absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee. (Serrano IV, supra, 32 Cal.3d at pp. 624, 639.) We explained that the purpose behind statutory fee authorizationsi.e., encouraging attorneys to act as private attorneys general and to vindicate important rights affecting the **[24 Cal. 4th 1134]** public interest"will often

be frustrated, sometimes nullified, if awards are diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee claim." (Id. at p. 632.) Fees would not be recoverable for an appeal that reversed an award entirely or reversed as excessive an award that was contested as inadequate. (Id. at p. 639, fn. 28.)

Subsequently, in Press v. Lucky Stores, Inc. (1983) 34 Cal. 3d 311, 322 [193 Cal. Rptr. 900, 667 P.2d 704], we underscored the importance of the "proper determination and use of the lodestar figure" in calculating awards of statutory attorney fees. We acknowledged the discretion of the trial court in setting attorney fees, but emphasized that because the determination of the lodestar figures is so fundamental to arriving at an objectively reasonable amount, "the exercise of that discretion must be based on the lodestar adjustment method." (Ibid.) We also reiterated that the lodestar figure may be increased by application of a fee enhancement, or reduced as appropriate, after the trial court has considered other factors concerning the lawsuit, including the contingent nature of the fee award. (Ibid.)

Maria P. v. Riles (1987) 43 Cal. 3d 1281, 1294-1295 [240 Cal. Rptr. 872, 743 P.2d 932], reaffirmed the use of the lodestar adjustment method first announced in Serrano III. We again explained that the lodestar figure may be increased or decreased depending on a variety of factors, including the contingent nature of the fee award. (Ibid.)

More recently, in PLCM Group, Inc. v. Drexler (2000) 22 Cal. 4th 1084, 1095 [95 Cal. Rptr. 2d 198, 997 P.2d 511], we instructed: "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate.... The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. (Serrano [III], supra, 20 Cal.3d at p. 49.) Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary."

The lodestar adjustment method prescribed in Serrano III, Serrano IV, Press, Maria P., and Drexler has also been widely applied by the Courts of Appeal under a broad range of statutes authorizing attorney fees. (See, e.g., Meister v. Regents of University of California (1998) 67 Cal. App. 4th 437, 448-449 [78 Cal. Rptr. 2d 913] [Information Practices Act (Civ. Code, § 1798.48, subd. (b)]; Flannery v. California Highway Patrol (1998) 61 Cal. App. 4th 629, 647 [71 Cal. Rptr. 2d 632] [Fair Employment and Housing Act (Gov. Code, § 12900 et seq.)]; Downey Cares v. Downey Community **[24 Cal. 4th 1135]** Development Com. (1987) 196 Cal. App. 3d 983, 995-996 [242 Cal. Rptr. 272] [Political Reform Act of 1974 (Gov. Code, § 81000 et seq.)]; Beasley v. Wells Fargo Bank, supra, 235 Cal. App. 3d 1407, 1412 [Code Civ. Proc., § 1021.5]; City of Oakland v. Oakland Raiders (1988) 203 Cal. App. 3d 78, 83-84 [249 Cal. Rptr. 606] [eminent domain]; Sternwest Corp. v. Ash (1986) 183 Cal. App. 3d 74, 75-76 [227 Cal. Rptr. 804] [Civ. Code, § 1717]; Salton Bay Marina, Inc. v. Imperial Irrigation Dist. (1985) 172 Cal. App. 3d 914, 957-958 [218 Cal. Rptr. 839] [inverse condemnation].)

Indeed, as the Court of Appeal in Flannery observed: "[T]he Legislature appears to have endorsed the [lodestar adjustment] method of calculating fees, except in certain limited situations." (Flannery v. California Highway Patrol, supra, 61 Cal. App. 4th 629, 646.) When the Legislature has determined that the lodestar adjustment approach is not appropriate, it has expressly so stated. Thus, in 1993, it amended Code of Civil Procedure section 1021.5 to provide that attorney fees

awarded to a public entity under the section "shall not be increased or decreased by a multiplier based upon extrinsic circumstances, as discussed in [Serrano III, supra,] 20 Cal. 3d 25, 49." (Stats. 1993, ch. 645, § 2, p. 3747.) Its express restriction on the use of fee enhancements therein "can be read as an implicit endorsement of their use in other contexts." (Flannery v. California Highway Patrol, supra, 61 Cal.App.4th at p. 643; see also Meister v. Regents of University of California, supra, 67 Cal.App.4th at pp. 448-449 [lodestar adjustment method applies to a statutory fee award unless the statutory authorization for the award provided for another method of calculation].) fn. 1

[3] When legislation has been judicially construed and subsequent statutes on a similar subject use identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears. (In re Jerry R. (1994) 29 **[24 Cal. 4th 1136]** Cal.App.4th 1432, 1437 [35 Cal. Rptr. 2d 155]; People v. McGuire (1993) 14 Cal. App. 4th 687, 694 [18 Cal. Rptr. 2d 12] ["The Legislature 'is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted ... a statute in light thereof.' "].) Here, because the anti-SLAPP provisions refer to attorney fees and costs without indicating any restrictions on how they are to be calculated, we accordingly presume that the Legislature intended courts use the prevailing lodestar adjustment method. (Cf. Trope v. Katz (1995) 11 Cal. 4th 274, 282 [45 Cal. Rptr. 2d 241, 902 P.2d 259] [in enacting Civ. Code, § 1717, the Legislature is presumed to have adopted the definition of "attorney's fees" under existing decisional law].)

We emphasize, however, that although we are persuaded that the lodestar adjustment approach should be applied to fee awards under Code of Civil Procedure section 425.16, we are not mandating a blanket "lodestar only" approach; every fee-shifting statute must be construed on its own merits and nothing in Serrano jurisprudence suggests otherwise.

III

[4] The Court of Appeal concluded that the superior court was without authority to award any fee enhancement. It erred in so holding. The lodestar adjustment approach we adopted in Serrano III, and which is permitted under Code of Civil Procedure section 425.16, allows a court awarding attorney fees to include a fee enhancement for the purpose, e.g., of compensating the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment, in an amount approaching the market rate for comparable legal services.

Nor was the Court of Appeal correct, as a matter of policy, that fee enhancements under Code of Civil Procedure section 425.16 "at best serve no purpose." As discussed, the legislative aim in including the attorney fee provision was apparently to strengthen enforcement of certain constitutional rights, including freedom of speech and petition for redress of grievances, by placing the financial burden of defending against so-called SLAPP actions on the party abusing the judicial system, and by encouraging private representation, including instances when a litigant cannot afford fees. "The experience of the marketplace indicates that lawyers generally will not provide legal representation on a contingent basis unless they receive a premium for taking that risk." (Berger, Court Awarded Attorneys' Fees: What is "Reasonable"? (1977) 126 U.Pa. L.Rev. 281, 324-325.)

Ketchum urges that we should adopt the policy arguments in the United States Supreme Court decision in Burlington v. Dague, supra, 505 U.S. 557, **[24 Cal. 4th 1137]** which barred the use of fee enhancements in certain types of cases in the federal courts. After careful consideration we

decline to do so. We are not, of course, bound by the decision in Dague. "[T]he fashioning of equitable exceptions" to the California rule that parties must bear their own costs "is a matter within the sole competence of this court." (Serrano III, supra, 20 Cal.3d at p. 43.) More important, the lodestar adjustment method, including discretion to award fee enhancements, is well established under California law. In the more than 20 years since Serrano III, both before and after the decision in Dague, our courts have applied the lodestar adjustment method and our Legislature has enacted numerous fee-shifting statutes, including the one at issue here, presumptively acquiescing in the long-standing use of the lodestar adjustment method by courts determining the amount of fee awards.

Nor are the considerations of the majority opinion in Burlington v. Dague, supra, 505 U.S. 557, which involved issues of federal law and practice, applicable herein. fn. 2

Specifically, we disagree that permitting a fee enhancement for contingency cases under Code of Civil Procedure section 425.16 will encourage unmeritorious claims. Indeed, the provision authorizes recovery of attorney fees only to defend against unmeritorious claims. (Id., subd. (c).) It discourages unmeritorious strike motions by imposing attorney fees on the defendant if the court finds that such motion is frivolous or solely intended to cause unnecessary delay. (Ibid.) Because a prevailing party will receive attorney fees only if the case is successful, there is little or no incentive to pursue nonmeritorious cases. And, in any event, attorney fees may be awarded only for hours reasonably spent, thus discouraging unnecessary or frivolous litigation. "Prevailing parties are compensated for hours reasonably spent on fee-related issues. A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (Serrano IV, supra, 32 Cal.3d at p. 635.)

For similar reasons, we disagree that a fee enhancement improperly permits attorneys to "pool" the risk in contingency cases, and thus, in effect, receive payment for cases in which their clients did not prevail. Code of Civil Procedure section 425.16, subdivision (c), permits only a prevailing party to recover attorney fees; the calculation of an appropriate fee has nothing to do with the amount of time his or her attorney may actually invest **[24 Cal. 4th 1138]** in other, unrelated, losing cases. As discussed, the purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class. To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether. fn. 3

Nor is it true that applying a fee enhancement will inevitably result in unfair double counting or a windfall to attorneys representing SLAPP defendants. Under our precedents, the unadorned lodestar reflects the general local hourly rate for a fee-bearing case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider under Serrano III. The adjustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed, constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees. In this case, for example, the lodestar was expressly based on the general local rate for legal services in a noncontingent matter, where a payment is certain regardless of outcome.

Of course, the trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof. In each case, the trial court should consider whether, and to what extent, the attorney and client have been able to mitigate the risk of nonpayment, e.g., because the client has agreed to pay some portion of the lodestar amount regardless of outcome. It should also consider the degree to which the relevant market compensates for contingency risk, extraordinary skill, or other factors under Serrano III. We emphasize that when determining the appropriate enhancement, a trial court should not consider these factors to the extent they are already encompassed within the lodestar. The factor of extraordinary skill, in particular, appears susceptible to improper double counting; for the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar. A more difficult legal question typically requires more attorney hours, and a more skillful and **[24 Cal. 4th 1139]** experienced attorney will command a higher hourly rate. (See Margolin v. Regional Planning Com. (1982) <u>134 Cal. App. 3d 999</u>, 1004 [<u>185 Cal. Rptr. 145</u>].) Indeed, the " 'reasonable hourly rate [used to calculate the lodestar] is the product of a multiplicity of factors ... the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case.' " (Ibid.) [5] Thus, a trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting and be unreasonable. Nor should a fee enhancement be imposed for the purpose of punishing the losing party.

[6] Ketchum proposes that even if fee enhancements are not precluded under all fee-shifting provisions, at the very least they should not be permitted in the case of anti-SLAPP motions. As a matter of statutory construction, he urges that by using the phrase "his or her attorney's fees and costs" rather than a "reasonable attorney's fee," the Legislature, in Code of Civil Procedure section 425.16, subdivision (c), indicated the intention to limit a prevailing defendant's attorney fees to "actual expenses caused by the improper pleading." The omission of the word "reasonable" does not imply any such purpose. Ketchum offers no persuasive support for his contention, either in precedent or the legislative history. As discussed, when the Legislature has intended to preclude fee enhancements, it has done so expressly.

Finally, Ketchum argues that because anti-SLAPP motions involve "relatively simple" issues and are subject to "quick resolution," we should therefore eliminate the discretion of trial courts to award fee enhancements. Again, he is unpersuasive. This matter, which involved years of contentious litigation and prolonged delays, belies his premise. The ability to recover fees for representing a client under the anti-SLAPP provisions is contingent on prevailing on the special motion to strike and on postmotion disputes whose resolution may be complex and time consuming. We do not suggest that contingent risk or other fee enhancements are required in every SLAPP case. But in the absence of any indication by the Legislature of the intent to specially limit attorney fees in anti-SLAPP actions, we decline to impose a per se rule against such fee enhancements. fn. 4 **[24 Cal. 4th 1140]**

IV

Ketchum contends that the superior court made numerous errors in applying the legal standards for setting and adjusting the lodestar attorney fees in this case. We agree in part, and address each contention in turn.

[7] With regard to the lodestar figure set by the superior court, we agree with the Court of Appeal that the superior court did not abuse its discretion. The lodestar was based on detailed documentation by counsel and there was extensive litigation concerning the time spent and the prevailing hourly rate in the area for comparable services.

We also reject Ketchum's contention that the superior court merely "rubber stamped" the request without an independent assessment. The record reflects that the superior court reviewed extensive documentation concerning the amount of the fees, including deposition testimony of Moses's attorney and Ketchum's fee expert, and declarations by Bay Area attorneys concerning the prevailing rates for contingency fee cases. There was also extensive oral argument with regard to the fee award. We have no reason to doubt that the superior court conducted an independent assessment of the evidence presented. fn. 5

Ketchum also contends that the superior court erred by failing to provide a "reasoned explanation" for denying his objections to specific items in the billing records. The superior court was not required to issue a statement of decision with regard to the fee award. (See Maria P. v. Riles, supra, 43 Cal.3d at p. 1294.) Moreover, although Ketchum opposed the motion for attorney fees, he did not request a statement of decision with specific findings. " 'All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (Denham v. Superior Court (1970) 2 Cal. 3d 557, 564 [86 Cal. Rptr. 65, 468 P.2d 193].) As we explained in Maria P.: "It is the **[24 Cal. 4th 1141]** burden of the party challenging the fee award on appeal to provide an adequate record to assess error. [Citations.] Here, [Ketchum] should have augmented the record with a settled statement of the proceeding. [Citations.] Because [he] failed to furnish an adequate record of the attorney fee proceedings, [Ketchum's] claim must be resolved against [him]." (Maria P. v. Riles, supra, 43 Cal.3d at pp. 1295-1296.)

[8] Ketchum further asserts that the fee award improperly included "fees on fees," i.e., fees incurred in litigating the award of attorney fees. The Court of Appeal correctly rejected the argument: an award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees under Code of Civil Procedure section 425.16. As we explained in Serrano IV, supra, 32 Cal.3d at page 639, "follow[ing] the rule of the overwhelming majority of courts that have considered the question .... [w]e hold ... that, absent circumstances rendering the award unjust, fees recoverable ... ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim." The amount of litigation on this issue typically lies in the plaintiff's hands: having litigated the matter tenaciously, Ketchum " 'cannot ... be heard to complain about the time necessarily spent by the [defendant] in response.' " (Id. at p. 638.) fn. 6

[9] With regard to the amount of the fee enhancement, and its application to the award of fees on fees, however, we are persuaded that Ketchum's assertions of error have sufficient merit to require remand of this matter for recalculation of attorney fees under an appropriate exercise of discretion pursuant to the standard we have clarified herein.

Thus, even assuming that Moses did not, as Ketchum asserts, intentionally waive any enhancement for "fees on fees," it appears that no enhancement for contingent risk was properly applied to such fees. Although the entitlement to attorney fees on the motion to strike was subject to the risk that Moses and his attorney might not prevail on the motion and thus not be entitled to attorney fees, once the motion was successful, attorney fees were **[24 Cal. 4th 1142]** mandatory under Code of Civil Procedure section 425.16, subdivision (c). An award of fees was, accordingly, no longer contingent. For this reason, it was error for the superior court to apply an enhancement for contingent risk to the fees on fees accrued after the motion to strike was granted.

We are also concerned that the substantial enhancement herein purportedly based on exceptional quality of representation may have included improper double counting. The record is not entirely clear on this point. At the hearing in August 1996, the superior court justified the enhancement based in part on "the exceptional representation by Mr. Friedman and his qualifications as proven by the quality of his work as well as declarations as to his legal expertise that he submitted in connection with the original [fees] motion in this case." The qualifications of Mr. Friedman, however, were presumably included in the hourly rate used to calculate the lodestar. (See Margolin v. Regional Planning Com., supra, 134 Cal.App.3d at p. 1004.) Indeed, the declarations referenced by the court at the hearing described the qualifications of Mr. Friedman in terms of the rates charged by other attorneys of similar experience and skill. By using counsel's qualifications and the submitted declarations to justify both the hourly rate and the multiplier, the court appears to have counted the same factor twice.

Finally, Ketchum points to indications in the record suggesting that the superior court may improperly have permitted its disapproval of his litigation strategy to influence its selection of the enhancement amount. Indeed, the superior court repeatedly adverted to allegations that Ketchum threatened to "keep Moses in court." Regardless of what he may or may not have said to another tenant concerning his litigation strategy, an enhancement for contingent risk or quality of representation may not properly be imposed merely for the purpose of punishing Ketchum.

V

For the foregoing reasons, we affirm the judgment of the Court of Appeal and remand the case with directions that it be remanded in turn to the superior court for recalculation of attorney fees consistent with the views expressed herein.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

Respondent's petition for a rehearing was denied May 16, 2001.

FN 1. The legislative history of the 1993 amendment to Code of Civil Procedure section 1021.5 supports this conclusion. Thus, an analysis of the Senate bill to amend the statute explains: "Fee awards to public entities may not be increased or decreased by use of a 'multiplier,' as otherwise authorized by law." (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 764 (1993-1994 Reg. Sess.) as amended Sept. 2, 1993, p. 1, italics added.) Moses requests that we take judicial notice of this item of the legislative history; we grant the request. He also requests that we take judicial notice of certain materials concerning unrelated proposed legislation; because such materials have little relevance to a material issue in this matter, we deny the request. (See Mangini v. R. J. Reynolds Tobacco Co. (1994) 7 Cal. 4th 1057, 1063 [31 Cal. Rptr. 2d 358, 875 P.2d 73]

[matter to be judicially noticed must be relevant to a material issue].) Amici curiae The Impact Fund et al. request us to take judicial notice of matters reflected in several specified documents, including analysis of proposed legislation and a report by the State Bar Access to Justice Working Group, which they claim are related to the issue whether California attorney fees law authorizes payment for contingent risk in order to provide an incentive for private attorneys to prosecute public interest cases. Because the materials are relevant to a material issue in this case, we grant the request.

FN 2. Burlington v. Dague, supra, 505 U.S. 557, addressed a fee-shifting provision under two federal environmental protection statutes. Significantly, the federal courts have not applied the rationale of the majority in Dague to other types of cases involving contingent attorney fees. (See, e.g., In re Washington Public Power Supply Sys. Lit. (9th Cir. 1994) 19 F.3d 1291, 1298 [Dague does not operate to bar risk fee enhancements in common fund cases].)

FN 3. The "pooling" argument is theoretical at best: we have no basis for concluding that defendant's attorneys intended to use their fees to make up for losses in other, unsuccessful anti-SLAPP cases. In principle, however, any such "pooling" by individual attorneys would be no different from what takes place in the private legal market for contingency matters and would thus not be inconsistent with the aim of compensating attorneys at the fair market value for their services as an inducement to accepting such matters.

FN 4. Moses entered a contingent fee arrangement under which counsel would receive no attorney fees in the event the anti-SLAPP motion failed; counsel indicated that, absent a contingent fee arrangement, he would not have agreed to representation because of Moses's inability to pay hourly fees. When a SLAPP defendant is not impecunious, it seems unlikely that an attorney would accept such representation, involving the risk of complete nonpayment if the anti-SLAPP motion failed. When an attorney is compelled to receive fees, if at all, subject to a contingent risk, a contingent risk enhancement may be appropriate under Code of Civil Procedure section 425.16, subdivision (c); when an attorney is not so compelled, such an enhancement may pose difficult policy issues. We need not, and do not, decide the point here.

FN 5. Ketchum urges that the superior court erred in denying his belated motion to reconsider the fee award. Even if Ketchum was unaware of the SLAPP litigation until April 1996a fact disputed by MosesKetchum offered no satisfactory explanation of why he failed to produce the evidence of this until September 1996. The motion was rejected by the superior court and the Court of Appeal affirmed. Even assuming that the order denying the motion was appealable (see Alioto Fish Co. v. Alioto (1994) 27 Cal. App. 4th 1669, 1679 [34 Cal. Rptr. 2d 244] [noting a split of authority on the appealability of an order denying reconsideration]), we see no reason to second-guess the conclusion of the superior court concerning these points, which turn on questions of credibility and timeliness.

FN 6. Ketchum also asserts that Code of Civil Procedure section 685.040 precludes an award of "collection" fees. He is incorrect. The statute provides that attorney fees incurred in enforcement efforts "are not included in costs collectible under this title unless otherwise provided by law." Under its provisions, a litigant entitled to costs for successfully enforcing a judgment is entitled to costs, but not attorney fees unless there is some other legal basis for such an award. Because Code of Civil Procedure section 425.16, subdivision (c) provides a legal right to attorney fees, they are a permissible item of costs. (See also Downey Cares v. Downey Community Development Com.,

supra, 196 Cal.App.3d at pp. 997-998 [court may award attorney fees, including a fee enhancement, for all time spent, including on fee-related issues].)

# Exhibit 18

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| United States of America ex rel. GWEN THROWER, Relator, | No. 24-4103 |
| *Plaintiff - Appellee*, | D.C. No. 3:16-cv-02120-EMC |
| and | |
| UNITED STATES OF AMERICA, | OPINION |
| *Plaintiff*, | |
| v. | |
| ACADEMY MORTGAGE CORPORATION, | |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted September 15, 2025
San Francisco, California

Filed April 6, 2026

Before: Milan D. Smith, Jr. and Patrick J. Bumatay, Circuit
Judges, and J. Campbell Barker, District Judge.[*]

Opinion by Judge Bumatay;
Partial Concurrence and Partial Dissent by Judge M. Smith

## SUMMARY[**]

### False Claims Act / Attorneys' Fees

Reversing the district court's order awarding attorneys' fees and expenses under 31 U.S.C. § 3730(d)(2) to the plaintiff and remanding in a qui tam action under the False Claims Act, the panel held that the district court abused its discretion in awarding an enhancement above the lodestar calculation.

Under the lodestar method for determining what fees are reasonable, district courts calculate the prevailing market rate in the relevant community and then multiply it by the number of hours reasonably worked on the case. The panel held that only a "rare and exceptional case" will justify an enhancement above the lodestar calculation, and a multiplier may be awarded only upon specific evidence that the lodestar is unreasonably low. In awarding counsel a 1.75 multiplier, the district court cited (1) the exceptional result that counsel achieved in surviving a motion to dismiss and

---

[*] The Honorable J. Campbell Barker, United States District Judge for the Eastern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

(2) counsel's investigative work, but the panel concluded that these considerations were adequately subsumed in the lodestar calculation. The panel further concluded that even assuming a multiplier was appropriate, the district court abused its discretion by failing to provide a reasoned basis for its selection of a 1.75 multiplier.

Concurring in part and dissenting in part, Judge M. Smith wrote that he agreed with the majority's recitation of the facts and procedural history but disagreed that the district court abused its discretion by applying an enhancement above the lodestar calculation. He would instead conclude that the district court acted within its discretion when it determined that this was the "rare and exceptional" case justifying such an enhancement. Judge M. Smith agreed, however, that the district court abused its discretion by imposing a 1.75 multiplier without a reasonably specific explanation for that particular multiplier, and so he concurred in the majority's decision to reverse the district court's choice of multiplier and remand.

---

## COUNSEL

Sanford J. Rosen (argued) and Adrienne P. Harrold (argued), R. Van Swearingen, Rosen Bien Galvan & Grunfeld LLP, San Francisco, California; J. Nelson Thomas, Thomas & Solomon LLP, Rochester, New York; for Plaintiff-Appellee.

Timothy P. Ofak (argued) and Joseph M. Katz (argued), Weiner Brodsky Kider PC, Washington, D.C.; Thomas M. McInerney, Ogletree Deakins Nash Smoak & Stewart PC, San Francisco, California; for Defendant-Appellant.

4                 THROWER V. ACADEMY MORTGAGE CORP.

**OPINION**

BUMATAY, Circuit Judge:

In our legal system, each party is generally responsible for paying its own attorneys' fees and expenses. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).   But Congress sometimes legislates to modify this default rule, providing that a losing party must pay the prevailing party's attorneys' fees. *See*, *e.g.*, 42 U.S.C. § 1988(b).  Congress included such a fee-shifting provision in the False Claims Act ("FCA"). When a relator successfully litigates a claim (and the government has not taken over the claim), the relator is entitled to "reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs."    31 U.S.C. § 3730(d)(2); *see Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 266 (2019).

To guide this open-ended inquiry into what fees are "reasonable," the Supreme Court has endorsed a means of calculating these fees—the lodestar method.  *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010).  Under the lodestar method, district courts calculate the "prevailing market rate[] in the relevant community" and then multiply it by the number of hours reasonably worked on the case. *See id.* at 551 (simplified); *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024).   The benefit of the lodestar method is that it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results."  *Perdue*, 559 U.S. at 552. This case asks when courts may depart from a straight application of the lodestar method and award enhancements multiple times greater than the lodestar calculation.

Because this is not the "rare and exceptional" case justifying an enhancement above the lodestar calculation, *id.* (simplified), we reverse.

## I

Under the FCA, the federal government may sue any person who knowingly submits, or causes to submit, false claims to the United States. 31 U.S.C. §§ 3729(a), 3730(a). The FCA also allows private citizens, called "relators," to file claims alleging this fraud—known as "qui tam" actions—on behalf of the United States. *Id.* § 3730(b). If a relator brings a qui tam action, the government may choose to intervene and take over prosecution of the case. *Id.* § 3730(b)(4). Not only that, but the government may also intervene and seek to have the claim dismissed. *Id.* § 3730(c)(2)(A), *see United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 438 (2023). No matter whether the government intervenes, if the qui tam action succeeds, the relator is entitled to a portion of the recovery, and reasonable attorneys' fees and costs "shall" be awarded. *Id.* § 3730(d)(1)–(2).

In 2016, Gwen Thrower sued her former employer, Academy Mortgage Corporation, under the FCA. Thrower alleged that Academy falsely certified compliance with requirements of the Federal Housing Administration's Direct Endorsement Program. Under that program, mortgage lenders may underwrite and endorse residential mortgages for government insurance. If a borrower defaults, the Department of Housing and Urban Development is on the hook for the loan. Thrower was initially represented by Rochester-based law firm Thomas & Solomon LLP ("T&S") on a contingency-fee basis.

Thrower's claim quickly experienced setbacks.  First, the government decided not to intervene in the qui tam action, telling Thrower's attorneys that there was too little evidence of systemic fraud at Academy to justify the suit.  Thrower proceeded anyway.   T&S then undertook a multi-week investigation of Academy's lending practices.  T&S created a hundreds-of-pages-long call sheet of former Academy employees nationwide, cold-called the former employees, and conducted detailed interviews regarding Academy's underwriting practices.  Armed with new evidence gained from this investigation, T&S filed an amended complaint.

Then came the second hurdle.  After Academy moved to dismiss the suit, the government also entered the case and moved to dismiss based on its own cost-benefit analysis of the litigation.  Thrower and her attorneys didn't give up.  In two rounds of supplemental briefing, T&S defended the suit against the motions to dismiss.  The district court sided with Thrower and denied both the government's and Academy's motions.  The government appealed.  Without reviewing the merits, a panel of this court dismissed the appeal for lack of appellate jurisdiction.  *See United States v. United States ex rel. Thrower*, 968 F.3d 996, 1000 (9th Cir. 2020).

After that, things went Thrower's way.  In late 2022, Thrower and Academy settled.  T&S and another law firm, Reese Marketos, helped negotiate the terms of the $38,500,000 settlement.    That means that just under $27,000,000 would be returned to the government and Thrower would receive $11,511,500 for her trouble.  Under an agreement with T&S, Thrower was to provide T&S 40% of her proceedings, or $4,604,600.  But in a later agreement between T&S and Reese Marketos, T&S's share of Thrower's award was reduced to 16%, or $1,841,840.

The settlement did not resolve Thrower's entitlement to attorneys' fees under the FCA.  In seeking attorneys' fees, Thrower sought to double T&S's fees with a 2.0 multiplier based on Thrower's "extraordinary" victory.  In 2024, the district court granted Thrower's fee request in part and denied it in part.  The district court found the requested rates were "on the high end" for the local legal market, though "not entirely out of range."  Instead, the district court adopted the rates requested by T&S attorneys in a previous Northern District of California case and added 20% to account for inflation in legal market rates.  After arriving at the hourly rate and determining the number of hours reasonably worked, the district court arrived at a lodestar amount of $4,374,532.25 for T&S's fees.

The district court then agreed with Thrower that an upward multiplier for T&S's work was warranted.  It concluded that the firm achieved an "exceptional result" in keeping the case "alive" despite the government's attempt to dismiss it.  To the district court, Thrower not only had to "battl[e]" Academy but also the government.  To do this, T&S conducted "a multi-week investigation, . . . identifying, locating, and interviewing former employees across the country" to determine whether Academy's alleged fraud was pervasive.  That Thrower prevailed against the two was, "if not the first of its kind, very rare."  But the district court determined that a 2.0 multiplier was not appropriate and reduced it to 1.75 on account of T&S's reduced involvement in later stages of the litigation.  The district court did not, though, provide any calculations underpinning its determination of the multiplier figure.  After applying the multiplier of 1.75 to T&S's merits work, the district court awarded Thrower $8,585,530.20 in attorneys' fees.

Academy appeals the award of the multiplier.   We review a district court's award of attorneys' fees for abuse of discretion.  *See Kelly v. Wengler*, 822 F.3d 1085, 1094 (9th Cir. 2016).

## II

To determine "reasonable attorneys' fees" under the FCA, we use the lodestar method.  *See Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014) (noting that the lodestar method is the correct framework for calculating reasonable attorneys' fees under federal fee-shifting statutes).  The lodestar method is useful because it "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue*, 559 U.S. at 551.

The lodestar method proceeds in two steps.  *See Edmo*, 97 F.4th at 1168.  First, the district court is to tally the number of hours an attorney "reasonably expended" on the case and then multiply it by the "reasonable hourly rate" in the market.  *Id.*  The result is the "presumptively reasonable award."  *Id.*  Second, the district court considers whether a modification of the lodestar figure—either upward or downward—is appropriate.  *Id.*  Any modification must be "based on factors not subsumed in the lodestar figure." *Kelly*, 822 F.3d at 1099.

Given the comprehensive nature of the lodestar calculation, any enhancements are "rare and exceptional." *Perdue*, 559 U.S. at 554 (simplified); *see also id.* at 561 (Thomas, J., concurring) ("[T]he lodestar calculation will in virtually every case already reflect all indicia of attorney performance relevant to a fee award." (simplified)).   A multiplier may be awarded only upon "specific evidence"

that the lodestar fee is "unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (simplified).  "Any reliance on factors . . . subsumed in the lodestar determination will be considered an abuse of the trial court's discretion." *Parsons v. Ryan*, 949 F.3d 443, 467 (9th Cir. 2020) (simplified).

## A

This is not the "rare and exceptional" case that overcomes the "strong presumption that the lodestar is sufficient." *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (simplified).  The district court provided two reasons for awarding T&S a 1.75 multiplier for its merits work.  First, the district court cited the "exceptional result" that T&S achieved in surviving the motion to dismiss, "notwithstanding the Government's attempts to extinguish [the case]."  Second, the district court attributed the firm's successful defense against dismissal to "T&S's investigative work."  Because these considerations were adequately subsumed in the lodestar calculation, it was an abuse of discretion to grant the multiplier.  And even if an enhancement were appropriate, the district court failed to provide a sufficient reason for its seemingly arbitrary 1.75 multiplier.

## 1

Consider first the "exceptional result" in surviving the government's motion to dismiss and obtaining a sizable settlement for Thrower and the government.  The district court focused on the unprecedented nature of T&S's win.  Recall that the government entered the case and pushed for dismissal because it believed that the narrow scope of the alleged fraud didn't warrant the FCA suit.  Thus, Thrower had to battle not only Academy, but also the government to

defeat dismissal.  The district court denied the government's motion to dismiss because it discounted the government's cost-benefit analysis—believing that the scope of the analysis was too geographically and temporally limited.  As the district court observed in its order granting fees, the case was "unprecedented" and attracted media attention; no court had ever permitted a qui tam action to proceed against the government's wishes.  The district court thus credited T&S with obtaining a "very rare" "if not the first of its kind" settlement.

Without more, this doesn't amount to "specific evidence" justifying a multiplier.  Ordinarily, the "novelty or complexity of the issues should not be considered at the multiplier stage."  *Van Gerwen*, 214 F.3d at 1045 n.2 (citing *Blum v. Stenson*, 465 U.S. 886, 898–901 (1984)).  That's because the "quality of representation and results obtained are ordinarily subsumed in the lodestar determination."  *Id.*  Indeed, the complexity in battling two parties at once should be "fully reflected in the number of billable hours recorded by counsel."  *Chambers*, 980 F.3d at 666 (quoting *Perdue*, 559 U.S. at 553).

Of course, "superior results" can *sometimes* justify a fee enhancement.  *See Perdue*, 559 U.S. at 554.  "When a plaintiff's attorney achieves results that are more favorable than would have been predicted based on the governing law and the available evidence," courts can reward "superior attorney performance."  *Id.*  But once again, an enhancement for "superior attorney performance" can be considered only when that "performance is not adequately taken into account in the lodestar calculation."  *Id.*  *Perdue* offers three examples in which the lodestar figure might not capture superior performance: (1) when the lodestar hourly rate fails to measure "the attorney's true market value," *id.* at 554–55;

(2) when attorney performance includes "an extraordinary outlay of expenses and litigation is exceptionally protracted," *id.* at 555; and (3) when "extraordinary circumstances" involve an "exceptional delay in the payment of fees," *id.* at 556. Though the Court didn't say these examples were exhaustive, it stressed that these circumstances must be "rare and exceptional." *See id.* at 553–57 (simplified).

The district court made no finding that any circumstance left the lodestar calculation unreasonably low. The district court didn't find that T&S risked an extraordinary outlay of expenses, endured an exceptionally protracted litigation, or suffered an exceptional delay in payments. Nor did the district court believe that the lodestar calculation undervalued T&S's "true market value." As we've said, an enhancement may be appropriate when the "value of [an attorney's] services exceeds what the court determines to be the prevailing market rate for otherwise comparable attorneys." *Kelly*, 822 F.3d at 1102. Yet the district court made no finding that T&S's services exceeded the area's prevailing market rate. Instead, it found the opposite. It concluded that T&S's requested rates were "on the high end of the scale for large firms in the area." It then lowered T&S's requested rates based on an analysis of the 2022 mean rates of litigation partners in San Francisco and the rates that T&S itself requested in other local cases from 2021. It found that the 2021 rates were the appropriate hourly rates but increased them by 20% to account for inflation in market rates since that time. Finally, the district court didn't indicate that it was intentionally lowering the hourly rate on the expectation that it would make up any shortfall on the back end through the multiplier, as Thrower suggests.

And, as the district court noted, no statutory cap artificially lowered T&S's hourly fee, which is often used to justify an enhancement. *Cf. Kelly*, 822 F.3d at 1102. In *Kelly*, we affirmed 1.3 and 2.0 multipliers because plaintiff's counsel's "extraordinary performance yield[ed] extraordinary results." *See id.* at 1091, 1093–94, 1103. But importantly, *Kelly* was governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d). In PLRA cases, courts must "calculate the lodestar figure using a base rate no greater than the PLRA rate specified in § 1997e(d)(3)." *Id.* at 1102–03. And "the PLRA rate virtually always replaces the prevailing market rate as the presumptively reasonable rate in the court's determination of the lodestar figure because actual prevailing rates are very unlikely to be as low as the PLRA rate." *Id.* at 1103. Thus, the statutorily constrained lodestar analysis justified the enhancement based on superior performance. *See id.* at 1102. In other words, superior performance merited an enhancement only because the prevailing rate was artificially capped by statute. In that case, "the quality of the work that produced [extraordinary results] was underrepresented in the hourly fee" mandated by the PLRA. *Id.* at 1102 (simplified). But "in a non-PLRA case," the lodestar method "generally subsumes the factors relevant to the determination of a reasonable attorney's fee, including the novelty and complexity of the case and the quality of the attorney's performance." *Id.* at 1103. That is the situation here.

## 2

The district court's second reason for the multiplier—to account for T&S's investigative work—is even easier to discount. According to the district court, T&S engaged in a multi-week investigation to review Academy's policies and

practices nationwide. This investigation involved identifying, locating, and interviewing former Academy employees across the country to see if the alleged fraudulent practices were pervasive throughout the company. Through extensive interviews, T&S apparently uncovered other evidence of fraud relevant to Thrower's FCA allegations.

While these Herculean efforts clearly led to the denial of the government's motion to dismiss and the eventual settlement of this case, the lodestar calculations adequately account for the investigative work. Indeed, the district court carefully looked through T&S's time entries and granted the firm around 7,000 hours of billable work for its efforts—or around 875 workdays. And nothing shows that these massive billables don't properly account for T&S's investigative work. When "time and labor spent by [counsel] were subsumed within th[e] lodestar figure," they may not be used to "justify an upward multiplier." *See Chambers*, 980 F.3d at 665 (simplified). Likewise, the skill reflected by T&S's attorneys during this investigation was subsumed in the determination of the reasonable market rate. *See Perdue*, 559 U.S. at 553 ("[C]onsiderations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." (simplified)). As mentioned, the district court awarded hourly rates higher than the mean of litigation partners in San Francisco.

### 3

We agree with the dissent that district court judges *may* apply an enhancement for an "exceptional result." But it's wrong to say that we improperly disregard the district court's evidence of an "exceptional result," including T&S's hard-fought result and diligent investigative efforts. The flaw in

the district court's analysis was not a failure to adequately show an exceptional result or extraordinary investigative efforts. The critical issue is that it didn't provide specific evidence for why the lodestar method could not reflect T&S's true market rate. Thus, unlike in *Kelly*, which specifically relied on statutory rate caps as justification for the enhancement, 822 F.3d at 1102–03, the district court identified no constraint on market rates here. Instead, the district court resorted too quickly and without adequate explanation to the assignment of a multiplier. This breaks the back of the lodestar method, allowing resort to a "judge's subjective opinion regarding particular attorneys or the importance of the case" outside the proper constraints of the two-step lodestar process. *Perdue*, 559 U.S. at 558.

\* \* \*

Departures from the lodestar rate are to be "rare" and reserved only for when "the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554. Because the multiplier here was based on considerations already subsumed into the lodestar calculation, its award was an abuse of discretion.

**4**

Even assuming a multiplier was appropriate, the district court abused its discretion by failing to provide a reasoned basis for its selection of a 1.75 multiplier. "It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement." *Perdue*, 559 U.S. at 558. Absent this, the multiplier leaves parties without any understanding of the risk of having to pay a sizable enhancement and defeats the

lodestar's benefit of "providing an objective and reviewable basis for fees." *See id.* at 558–59.

To pass muster then, district courts must reasonably show their work in arriving at a multiplier amount. In other words, the district court should answer, "why 75% rather than 50% or 25% or 10%?" *Id.* at 557. At a minimum, this includes identifying the factors justifying the enhancement and then showing how much of "the enhancement . . . is attributable" to those factors. *Id.* at 558. For example, when an extraordinary delay justifies an enhancement, the district court should "provide a calculation of the cost to counsel" resulting from that delay. *Id.* Or when a district court relies on a comparison of counsel's performance, the district court must offer "specific proof linking the attorney's ability to a prevailing market rate." *Id.* at 555. *Perdue* thus instructs that a district court must link the factors showing the lodestar's inadequacy with the amount of the multiplier needed to close the gap.

Consider again *Kelly*. Recall we affirmed the award of a 2.0 and a 1.3 multiplier. *See Kelly*, 822 F.3d at 1093, 1102. There, the district court noted that the PLRA-compliant lodestar rate was $213 but found that comparable market rate for the two attorneys in the case was roughly $435 for one and between $275 and $300 for the other. After finding an enhancement justified, the district court here applied a multiplier of 2.0 (raising one attorney's rates to $426 an hour) and 1.3 (raising the other's to $277). Given these calculations, the parties could understand and predict the fees involved and this court could provide meaningful appellate review.

The district court failed to explain how it selected a 1.75 multiplier. After concluding that an enhancement was

warranted given the exceptional result and the investigative work involved, the district court didn't then link the 1.75 multiplier to a shortfall in the lodestar calculation based on those factors.  Instead, as best we can tell, the district court just started with Thrower's requested 2.0 multiplier and then reduced it to 1.75 because T&S had a reduced role in later stages of the litigation, didn't negotiate the settlement, and was already guaranteed a share of Thrower's portion of the settlement.    This explanation isn't enough.    Rather, the district court needed to show how T&S's superior performance justified a rate 1.75 times the lodestar rate.  As a result, the district court's determination of a multiplier was not evidently derived from the factors necessary to bring the lodestar calculation to a more appropriate rate.  Because the district court's choice of a 1.75 multiplier lacked an adequately reviewable methodology, it is an independent reason to reverse the enhancement.

### III

For these reasons, we reverse the award of a multiplier and remand.

M. SMITH, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's recitation of the facts and procedural history.  However, I disagree that the district court abused its discretion by applying an enhancement above the lodestar calculation.  I would instead conclude that the district court acted within its discretion when it determined that this is the "rare and exceptional" case justifying such enhancement.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (internal quotation marks omitted).  That being said, I agree that the district court abused its discretion by imposing a 1.75 multiplier without a "reasonably specific explanation" for that particular multiplier, so I ultimately concur in the majority's decision in Part II.4 to reverse the district court's choice of multiplier and remand.

**I.**

The majority concludes that the district court abused its discretion by applying a multiplier to its attorney's fee award because its justifications for the enhancement "were adequately subsumed in the lodestar calculation."  Maj. Op. at 9.  I agree that it is an abuse of discretion to rely on subsumed factors when awarding an enhancement.  *See Parsons v. Ryan*, 949 F.3d 443, 467 (9th Cir. 2020).  But I disagree that the district court relied on subsumed factors here.  In other words, I disagree that it was an abuse of discretion for the district court to conclude that Thomas &

18                THROWER V. ACADEMY MORTGAGE CORP.

Sullivan LLP's (T&S) "true market value" is measured by the lodestar hourly rate. *Perdue*, 559 U.S. at 554–55.[1]

### A.

I will begin with the majority's first conclusion: that it was an abuse of discretion for the district court to enhance the attorney's fees award based on the "exceptional result" in this case. The Supreme Court has explained that courts can reward "superior performance and commitment of resources by plaintiff's counsel" when they determine that "a plaintiff's attorney [has] achieve[d] results that are more favorable than would have been predicted based on the governing law and the available evidence." *Id.* at 554. The district court's analysis makes clear that it did so here.

While the district court noted that the recovery amount in this case was "in line with a median range" of other settlements in cases brought pursuant to the False Claims Act (FCA), it concluded that "what is clearly distinct about this case is that [Thrower] prevailed in receiving a settlement, notwithstanding the Government seeking to prevent the case from proceeding." It explained that Thrower "battl[ed]" not only Defendant-Appellant Academy Mortgage Corporation (Academy), but also the government, which not only declined to intervene in this qui tam action but actively sought to dismiss it while Academy did the same. Moreover, the district court highlighted the

---

[1] *Perdue* offers three examples of cases where an enhancement may be warranted for "superior attorney performance" may not be adequately subsumed by the lodestar. Because I agree with the majority that this case does not implicate "an extraordinary outlay of expenses" in "exceptionally protracted litigation" or an "exceptional delay in the payment of fees," I address only whether T&S's "true market value" is measured by the lodestar hourly rate. *Perdue*, 559 U.S. at 555–56.

government's own acknowledgement that "no court had ever permitted the continuation of a qui tam action in the United States' name that the United States sought to end."[2]  *See* Reply Brief for United States, *United States v. United States ex. rel. Thrower*, No. 18-16408 (9th Cir. Aug. 21, 2019), 2019 WL 4132218, at *2.  "Accordingly," the district court concluded, "an upward modifier [wa]s appropriate" because "T&S effected the exceptional result achieved in the case by keeping it alive against stacked odds at the outset." According to the district court, the case was, "if not the first of its kind, very rare."

The majority disagrees that the "exceptional result" justifies an enhancement here.  The majority concludes that an exceptional result is "ordinarily" subsumed as a reflection of the "novelty or complexity of the issues."  *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 n.2 (9th Cir. 2000).  And it concludes that the "complexity in battling two parties at once" is reflected in the number of billable hours.  Maj. Op. at 10.  Even so, the majority misconstrues the district court's analysis.  The district court did not rely on the "complexity" of opposing two parties at once to justify the enhancement; it relied on Thrower's exceptional and unexpected *result* despite opposing two parties at once.  We have repeatedly stated that "exceptional" success that is accompanied by "superior" attorney performance can justify an enhanced award.  *Van Gerwen*, 214 F.3d at 1046.  *See also Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1170–71 (9th Cir. 2024); *Kelly v. Wengler*, 822 F.3d

---

[2] Our court similarly acknowledged that "this is the first time a district court in our circuit has *ever* found the Government's argument for dismissal lacking."  *United States v. United States ex. rel. Thrower*, 968 F.3d 996, 1008–09 (9th Cir. 2020).

1085, 1102–04 (9th Cir. 2016).  The Supreme Court has said the same.  *See Perdue*, 559 U.S. at 554; *Blum v. Stenson*, 465 U.S. 886, 901 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 435–36 (1983).

In this case, the district court found T&S's work to be "substantial, successful and heroic," "allowing for the unlikely, positive settlement in [Thrower's] favor."  This conclusion is sufficient to justify an enhancement under our precedent.  What was extraordinary in this case is not merely the effort and risk that T&S shouldered to litigate the case.  What was extraordinary is that T&S successfully did so despite facing "stacked odds."  For example, consider that T&S is a firm of only seven attorneys, who worked on this litigation for over seven years (2016 to 2024).  Yet the firm obtained a settlement of $38.5 million.  Of that $38.5 million, just under $27 million was restored to the United States Treasury.  The majority acknowledges that T&S's investigative efforts were "Herculean," Maj. Op. at 13, but it minimizes that T&S—like Hercules—successfully fought Cerberus.  I would hold that the district court did not abuse its discretion by concluding that this is the "rare" and "extraordinary" circumstance that warrants an enhancement.

The majority disagrees because it concludes that "the district court [did not] believe that the lodestar calculation undervalued T&S's 'true market value.'"  Maj. Op. at 11. The fact that the district court enhanced the award suggests otherwise.[3]  The majority distinguishes this case from *Kelly*

---

[3] The majority puts a fair degree of emphasis on the district court's finding that T&S's *requested* rates were "on the high end of the scale for large firms in the area" to conclude that the district court found that T&S's services did not "exceed[] what the court determines to be the prevailing market rate for otherwise comparable attorneys."  *See Kelly*,

*v. Wengler*, 822 F.3d 1085, 1102–04 (9th Cir. 2016), in which we affirmed a district court's use of 1.3 and 2.0 multipliers for "extraordinary performance" that led to "extraordinary results." *See id.* at 1093–94. The majority distinguishes *Kelly* because it was governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(d), which imposes a statutory cap on attorney's fees. *See id.* at 1093. Because there is no similar cap for FCA cases, the majority reads *Kelly* entirely out of the equation. Specifically, the majority concludes that the "superior performance [in *Kelly*] merited an enhancement *only* because the prevailing rate was artificially capped by statute," and there is no similar justification in this case. Maj. Op. at 12 (emphasis added).

The majority's interpretation of *Kelly* is inconsistent with its text. In *Kelly*, we analyzed both whether an enhanced award is consistent with the PLRA (*i.e.*, whether an enhancement could be applied in a PLRA case *at all*), *see* 22 F.3d at 1100–02, and also "whether the district court in [that] case provided clear reasons, supported by specific evidence in the record, for enhancing the lodestar figure" (*i.e.*, whether an enhancement was warranted *in that case*), *id.* at 1102–05. We answered both questions in the affirmative. In doing so, we affirmed the district court's reliance on "non-subsumed factors to justify its attorney's

---

822 F.3d at 1102. This misconstrues the relevant comparison: it is not whether T&S's *requested* lodestar fee exceeds the prevailing market rate (*i.e.*, the rate that the district court *actually imposed* as the lodestar hourly rate); it is whether T&S's "true market value" exceeds the prevailing market rate. The lodestar calculation is not raised on appeal.

fees enhancement—superior performance and the need to attract competent counsel." *Id.* at 1102.  We explained that

> Like the prevailing rate in a non-PLRA case, the PLRA rate *generally* subsumes the factors relevant to the determination of a reasonable attorney's fee, including the novelty and complexity of the case and the quality of the attorney's performance. However, as in non-PLRA cases, the district court may enhance the lodestar figure when plaintiff's counsel's "superior performance and commitment of resources" is "rare" and "exceptional" as compared to the run-of-the-mill representation in such cases.

*Id.* at 1103 (emphasis added).  In practical effect, it is difficult to see the majority doing anything other than reading "generally" as "always."  The PLRA may explain why the lodestar rate undervalues an attorney's "true market value" in some cases.  But *Kelly* does not suggest that a statutory cap is the only reason that an enhancement may be warranted.  To reiterate: whether or not a statutory cap is implicated, district courts may apply an enhancement when the result is "more favorable than would have been predicted based on the governing law and the available evidence," and that result is due to attorney performance.  *Perdue*, 559 U.S. at 554.  That is indeed the case here, where the government declined to intervene in the lawsuit specifically because it found insufficient evidence of systemic fraud, and it was T&S's extensive investigative efforts that suggested otherwise.

The district court did not abuse its discretion in finding an extraordinary result, nor did it abuse its discretion in finding that T&S's investigative work was the reason for that result.   The district court's descriptions of T&S's performance ("substantial, successful and heroic," successful in "battl[e]" against "stacked odds") demonstrate its conclusion that T&S went above and beyond "otherwise comparable attorneys." *Kelly*, 822 F.3d at 1102.  In other words, the extraordinary result was the result of T&S's superior performance, representing a higher "true market value" than the prevailing market rate that the district court used to determine the lodestar.[4] *Id.*  Certainly, the district court was in a better position to evaluate T&S's true market value than we are sitting as a court of appeal.[5]

The majority acknowledges that it is not an abuse of discretion to award a multiplier where a party achieves an "unprecedented" result.  Maj. Op. at 10, 13–14.  It merely explains that "[w]*ithout more*, [an unprecedented result] doesn't amount to 'specific evidence' justifying a multiplier," and it reverses the enhancement because it finds nothing more here.  Maj. Op. at 10 (emphasis added).  I

---

[4] Here, the district court based the lodestar rate on the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."

[5] "[I]t is the district judge, and only the district judge, who will have read all of the motions filed in the case, witnessed the proceedings, and been able to evaluate the attorneys' overall performance in light of the objectives, context, legal difficulty, and practical obstacles present in the case.  In a word, the district judge will have observed the attorney's true value, as demonstrated during the litigation.  By contrast, a court of appeals, faced with a cold and perhaps lengthy record, will inevitably have less time and opportunity to determine whether the lawyers have done an exceptionally fine job." *Perdue*, 559 U.S. at 563 (Breyer, J., concurring in part and dissenting in part) (cleaned up).

disagree.  I would conclude that an enhancement is justified by the extraordinary result, although I agree that the particular multiplier used to enhance the award here was insufficiently supported.  In ruling otherwise, the majority "discount[s]" an important part of the district court's reasoning: its consideration of T&S's extensive investigative work.  Maj. Op. at 12.  I turn to this factor in the next section.

**B.**

The majority's second conclusion is that T&S's investigative work cannot be used to justify an enhancement because the lodestar calculation "adequately account[s] for the investigative work" at issue.  Maj. Op. at 13.  In my view, this asks the wrong question, resulting in the majority erroneously discounting the district court's reasoning.  The district court did not examine T&S's extensive investigation as an independent justification to award an enhancement; it examined T&S's investigative work to explain why it found that the "extraordinary" result in this case was due to T&S's superior performance.  It was necessary for the district court to do so because the Supreme Court has stated that "superior results are relevant only to the extent it can be shown that they are *the result of* superior attorney performance." *Perdue*, 559 U.S. at 554 (emphasis added).  Courts "treat th[o]se two factors as one." *Id.*  "[I]nferior performance by defense counsel" or "unexpected favorable rulings by the court" are not enough to warrant an enhancement. *Id.* Whether T&S's time spent investigating is subsumed in the lodestar is not the relevant question.  The relevant question is whether T&S's investigative work is responsible for the extraordinary result in this case.

The district court found that it was, concluding that "the case surviving is directly attributable to T&S's investigative work." Accordingly, the district court awarded an enhancement because T&S's superior attorney performance (demonstrated through its investigative work) led to the extraordinary result (surviving the government's motion to dismiss). It explained that "the narrowness of the Government's investigation, which was the basis for denying the motion to dismiss, was made apparent precisely because of the scope and breadth of the investigation that T&S engaged in in bringing its claims against Academy."

Accordingly, I would conclude that T&S's superior attorney performance provides something "more" to justify the enhancement and would hold that the district court did not abuse its discretion by relying on the unprecedented, extraordinary result to award an enhancement here. When a district court reasonably finds that an attorney's superior performance resulted in an extraordinary result, such finding suggests that the attorney's "true market value" is higher than the lodestar hourly rate.

## II.

That being said, I agree with the majority that the district court abused its discretion by failing to provide a "reasonably specific explanation" for its selection of a 1.75 multiplier. *See Perdue*, 559 U.S. at 558. The district court explained that it was reducing the requested 2.0 multiplier to 1.75 because "the firm took a lesser role as the suit progressed, [it] was not primarily responsible for negotiating the settlement, and the risk it took was counterbalanced to some extent by the private contingency agreement entitling it to fully 40% of the settlement fee paid to [Thrower]

(roughly \$4 million) in addition to the fee awarded."[6]  But
when a case is the "rare case where it is not possible to
address fully the attorney's performance by setting the
appropriate, reasonable hourly rate used in calculating the
lodestar," the district court must "determine, and [] explain
how, counsel's service—particularly given the results
obtained—relates to the service and results reasonably
expected of an attorney working the number of hours at the
hourly rate the district court sets in determining the
lodestar." *Van Gerwen*, 214 F.3d at 1047.  Put another way:
After determining that an enhancement is justified, the
district court must support its decision to enhance the award
using a multiplier with "specific evidence." *Edmo*, 97 F.4th
at 1169, 1170–71 ("If an enhancement is justified, then the
court 'may adjust the lodestar upward . . . using a
multiplier,'" which "must be supported by 'specific
evidence.'" (quoting *Van Gerwen*, 214 F.3d at 1045)).  That
is, it must support "the precise amount of the enhancement"
with specific evidence.  *Id.* at 1171.  I agree that the district
court failed to support the "precise amount" of its
enhancement here.  *Id.*

Because I agree that the district court failed to adequately
explain how T&S's services and the results obtained
"relate[] to the service and results reasonably expected of an
attorney working" at the lodestar rate, *id.*, I agree with the
majority's decision to reverse the application of the 1.75
multiplier and remand.  On remand, I would have the district
court provide a "reasonably specific explanation" for the
enhancement that allows "adequate appellate review" with a
"discernible methodology."  *Perdue*, 559 U.S. at 558–59 &

---

[6] As the majority notes, T&S's share of Thrower's award was reduced to
16%, not 40%.

n.8.  In contrast, the majority concludes that the district court abused its discretion by awarding an enhancement at all.

\*\*\*

We do not hold all attorneys that practice before us to an extraordinary standard; doing so would turn the exception into the norm.  The majority discounts as ordinary diligence what the district considered to be superior attorney performance that achieved an extraordinary result in the face of "stacked odds."  Where attorneys go above and beyond the ordinary levels of competence, diligence, and zealous advocacy, district courts have discretion to fashion an attorney's fee award that reflects the "true market value" of their performance when they achieve "extraordinary results" that can be attributed to their performance.  Here, I would conclude that it was not abuse of discretion for the district court to conclude that this is a "rare and extraordinary circumstance" warranting an enhancement.

Because the majority would narrow the court's ability to compensate attorneys beyond what our case law supports, I respectfully dissent from the majority's conclusion that the district court abused its discretion by enhancing the attorney's fee award here.  However, because I agree that the district court abused its discretion by failing to provide a "reasonably specific explanation" for its selection of a 1.75 multiplier, I concur in the majority's conclusion to reverse the enhancement and remand.

# Attachment

**All Challenged Billing Entries**

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Brendan A. Johnson | 1/16/26 | Review expert reports to prepare defending depositions | 2.40 | 2.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 1/19/26 | Prepare and defend the deposition of Plaintiff's expert Jeffrey Noble | 3.00 | 3.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 1/22/26 | Defend the deposition of Plaintiff's expert Dr. Ryan O'Connor | 1.50 | 1.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 1/22/26 | Review exhibits and report prepared by Plaintiff's expert Scott Holdaway (.4); defend the deposition of Mr. Holdaway (2.1) | 2.50 | 2.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 2/18/26 | Research issue presented in depositions | 0.50 | 0.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/4/26 | Draft Jury Instructions | 2.00 | 2.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/20/26 | Research and draft Plaintiff's Motion in Limine No. 1 to exclude information unknown | 3.50 | 3.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/23/26 | Research and draft Plaintiff's Motion in Limine No. 2 | 3.50 | 3.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/26/26 | Draft objections to Defendants' exhibit lists | 2.50 | 2.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/27/26 | Research legal issues regarding Defendants' motions in limine | 1.40 | 1.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 3/30/26 | Drafting Plaintiff's opposition to Defendants MILs 1, 2, and 5. | 5.50 | 5.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 4/1/26 | Revise drafts of Plaintiff's opposition to Defendants MILs with supervising attorney's feedback. | 1.50 | 1.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Brendan A. Johnson | 7/13/26 | Prepare time sheet and attorney's fee declaration | 2.00 | 2.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Dale K. Galipo | 2/21/25 | Case Review with Marcel F. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 2/27/25 | Case Review with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 3/3/25 | Discuss association with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/3/25 | Review Stipulation to Withdraw and Amend Complaint with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/7/25 | Review Client Communication with Trent Packer and M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/13/25 | Case Review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/23/25 | Review First Amended Complaint | 0.60 | 0.30 Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 4/1/25 | Discuss planning and strategy with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/15/25 | Discuss Motion to Dismiss with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/25/25 | Discuss scheduling and Rule 26(f) Report with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 5/2/25 | Discuss Rule 26(f) Report and Initial Disclosures with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Time Challenged | Reduce By | | Objection | Reason for Objection |
|---|---|---|---|---|---|---|---|
| Dale K. Galipo | 5/6/25 | Case Review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 5/20/25 | Discuss amending complaint and Initial Disclosures with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 5/22/25 | Discuss Statement to Proceed on Claims with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 5/29/25 | Discuss and review Statement to Proceed with M. Sincich and M. Packer | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 6/2/25 | Discuss and review Second Amended Complaint with M. Sincich and M. Packer | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 6/13/25 | Discuss terms of mediation with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 6/20/25 | Review Answer to Complaint (Hemet) | 0.70 | | 0.70 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 6/30/25 | Discuss discovery and scheduling with M. Sincich and M. Packer | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 7/7/25 | Discuss discovery and scheduling with M. Sincich and M. Packer | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | | Objection | Reason for Objection |
|---|---|---|---|---|---|---|---|
| Dale K. Galipo | 7/8/25 | Discuss mediation with M. Sincich | 0.20 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 7/15/25 | Discuss mediation with M. Sincich | 0.40 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 7/19/25 | Prepare for Officer Depositions | 4.10 | 2.05 | Work on claims related to the City of Hemet and its officers as well as to the State of California | | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 7/19/25 | Case Review with M. Sincich | 0.20 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 7/20/25 | Prepare for Officer Depositions | 3.90 | 1.95 | Work on claims related to the City of Hemet and its officers as well as to the State of California | | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 7/21/25 | Prepare for Officer Depositions | 3.30 | 1.65 | Work on claims related to the City of Hemet and its officers as well as to the State of California | | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 7/22/25 | Sobaszek Deposition – Preparation | 4.50 | 4.50 | Work on claims related to the City of Hemet and its officers | | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 7/29/25 | Discuss discovery and criminal matter with M. Sincich and M. Packer | 0.40 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 8/13/25 | Prepare for Reynoso Deposition | 3.70 | 3.70 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 8/14/25 | Reynoso Deposition – Preparation | 4.30 | 4.30 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 8/20/25 | Discuss experts with M. Sincich and M. Packer | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 8/29/25 | Case review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 9/1/25 | Case review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/6/25 | Case review with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/7/25 | Case review with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/8/25 | Case review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/20/25 | Discuss demand with M. Sincich and M. Packer | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 10/21/25 | Case review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/27/25 | Discuss discovery with M. Sincich and M. Packer | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 10/31/25 | Discuss damages with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 11/6/25 | Review and discuss Opposition to Ex Parte with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 11/13/25 | Review discovery statement with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 11/16/25 | Review Deposition of Sobaszek | 1.90 | 1.90 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 11/17/25 | Review Deposition of Reynoso | 2.00 | 2.00 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 11/20/25 | Discuss discovery conference with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 11/26/25 | Case review with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 12/3/25 | Discuss experts with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 12/5/25 | Discuss experts with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 12/11/25 | Case Review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 12/31/25 | Prepare for Chapman/Hubbs Depositions | 3.50 | 1.75 Work on claims related to the City of Hemet and its officers as well as to the State of California | | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 1/1/26 | Prepare for Chapman/Hubbs Depositions | 3.60 | 1.80 Work on claims related to the City of Hemet and its officers as well as to the State of California | | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 1/1/26 | Discuss experts with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 1/2/26 | Hubbs Deposition / Preparation | 3.50 | 3.50 Work on claims related to the City of Hemet and its officers | | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 1/15/26 | Discuss experts with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 1/19/26 | Prepare for Noble Deposition | 1.00 | 1.00 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 1/23/26 | Case Review with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 1/23/26 | Discuss discovery conference neutral statement with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 1/27/26 | Discuss discovery conference with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 2/4/26 | Preparation and planning for trial with M. Sincich and M. Packer | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 2/12/26 | Review MSJ | 1.80 | 1.80 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 2/13/26 | Review MSJ – Legal Research | 2.20 | 2.20 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 2/14/26 | Review MSJ– Legal Research | 2.50 | 2.50 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 2/17/26 | Review Opposition to MSJ – Legal Research | 2.90 | 2.90 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |

**All Challenged Billing Entries**

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 2/18/26 | Review Opposition to MSJ – Legal Research | 2.10 | 2.10 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 2/19/26 | Review Opposition to MSJ | 1.00 | 1.00 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 2/23/26 | Discuss MSJ with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 2/26/26 | Review Reply to Opposition to MSJ | 1.20 | 1.20 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 3/4/26 | Review and discuss proposed jury instructions and verdict form | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/7/26 | Review Depositions | 4.90 | 2.45 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 3/12/26 | Review Investigation Reports | 2.50 | 1.25 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 3/12/26 | Planning and strategy meeting with M. Sincich and M. Packer | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 3/13/26 | Review Expert Reports | 2.70 | 1.35 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 3/18/26 | Discuss exhibit list and witness list with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/19/26 | Discuss pretrial documents with M. Sincich | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/20/26 | Review Depositions | 3.30 | 1.65 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 3/26/26 | Review Motions in Limine | 3.20 | 1.60 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 3/26/26 | Discuss pretrial documents with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 3/31/26 | Discuss memorandum of contentions of fact and law with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 4/2/26 | Review Oppositions to Motions in Limine | 2.80 | 1.40 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 4/2/26 | Discuss Oppositions to Motions in Limine with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/2/26 | Review and discuss memorandum of contentions of fact and law with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/3/26 | Review Oppositions to Motions in Limine | 2.20 | 1.10 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Dale K. Galipo | 4/3/26 | Discuss Oppositions to Motions in Limine with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/8/26 | Review and discuss jury instructions with M. Sincich | 0.80 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/8/26 | Review and discuss Proposed Final Pretrial Conference Order with M. Sincich | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Discuss and Review Proposed Voir Dire with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

**All Challenged Billing Entries**

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 4/9/26 | Review and discuss exhibit list with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Review and discuss Proposed Final Pretrial Conference Order with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Review and discuss verdict form with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Review and discuss witness list with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Review Defendants' proposed Jury Instructions and discuss with M. Sincich | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/9/26 | Review Joint Disputed Jury Instructions with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/13/26 | Review Notice of Settlement with City of Hemet | 0.20 | 0.20 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Dale K. Galipo | 4/17/26 | Discuss and review Amended MCFL with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/20/26 | Case Review with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 4/22/26 | Discuss planning and strategy with M. Sincich and M. Packer | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/22/26 | Review Defense Expert Reports with M. Sincich | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/23/26 | Pre-trial/Preparation | 5.80 | 1.16 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 4/23/26 | Discuss planning and strategy with M. Sincich and M. Packer | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/28/26 | Review trial exhibits with M. Sincich | 2.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/29/26 | Review trial exhibits with M. Sincich | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 4/30/26 | Trial Preparation * | 12.20 | 2.44 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/1/26 | Trial Preparation * | 11.80 | 2.36 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/2/26 | Trial Preparation * | 12.40 | 2.48 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/3/26 | Trial Preparation * | 13.60 | 2.72 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/4/26 | Trial Preparation * | 14.70 | 2.94 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Dale K. Galipo | 5/5/26 | Trial Preparation * | 15.30 | 3.06 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/6/26 | Trial Preparation * | 16.20 | 3.24 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/6/26 | Trial preparation and theory meeting with M. Sincich and M. Packer | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 5/7/26 | Trial Preparation * | 15.80 | 3.16 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/7/26 | Review opening exhibits with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 5/8/26 | Trial - Trial Preparation * | 11.10 | 2.22 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/9/26 | Trial Preparation * | 13.30 | 2.66 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/10/26 | Trial Preparation * | 12.70 | 2.54 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 5/11/26 | Trial - Trial Preparation * | 16.50 | 3.30 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Dale K. Galipo | 7/9/26 | Discuss Rule 59 Motion with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Dale K. Galipo | 7/10/26 | Discuss Rule 59 Motion with M. Sincich | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Kayla Pena-Pham | 7/8/24 | Mailing of claims for damages | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 12/23/24 | Prepared initial civil documents (summonses, civil cover sheet, & certificate of counsel); proofread and finalized complaint to prepare for filing | 2.50 | 2.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 12/24/24 | Filing of initial civil documents to open case | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 2/19/25 | Review and proofread draft of opposition to State Defendant's motion to dismiss | 2.00 | 2.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 2/27/25 | Created Dropbox folder containing case materials to share with co-counsel | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 6/11/25 | Reviewed and annotated RUHS medical records (1358 pages) | 1.00 | 1.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 7/8/25 | Redacted RUHS medical records (1358 pages) | 2.00 | 2.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 7/29/25 | Summary to team of efforts made so far in obtaining medical records | 0.20 | 0.20 | Transient and Intra-Office Conferencing | Minimal apparent value added to case given limited hours billsd; intra-office conferencing of administrative nature |
| Kayla Pena-Pham | 8/14/25 | Prepared Dropbox with discovery and emailed to expert Ryan O'Connor | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 9/17/25 | Assisted with editing drafts of discovery responses to State Defendant | 0.40 | 0.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 10/22/25 | Summarized all medical records in our possession and produced summary | 2.00 | 2.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 11/6/25 | Prepared records and Dropbox folders to be served with discovery responses to State Defendant | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 4/28/26 | Served RUHS Subpoenas by personal service | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 4/30/26 | Crated exhibit binder sheets and delivered physical binders to PIP Printing for creation of exhibits | 0.60 | 0.60 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Kayla Pena-Pham | 4/30/26 | Created and cut out yellow clerk tabs for clerk's exhibit binder | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 4/30/26 | Created trial exhibit flash drives | 1.00 | 1.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 4/30/26 | Reviewed and prepared exhibits for PIP printing | 1.00 | 1.00 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 5/7/26 | Prepared writ of habeas corpus ad testificandum and associated documents | 0.40 | 0.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Kayla Pena-Pham | 7/13/26 | Assisted in inputting and formatting TCP's time entries and preparing time sheet in support of motion for attorney's fees | 3.00 | 3.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Kayla Pena-Pham | 7/14/26 | Draft Declaration of KPP in support of Plaintiff's Motion for Attorneys' Fees | 0.40 | 0.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 1/7/26 | Sent email to defense re availability of experts | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/15/26 | Sent email to defense following up on the amended deposition notice | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/16/26 | Sent email to defense following up on the amended deposition notice | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/19/26 | Sent email to defense coordinating schedules for expert depositions | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/19/26 | Sent email to defense requesting to move Dr. O'Connor's deposition from 10:00 am to 9:30 am | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/19/26 | Sent emails to experts re deposition schedule | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Call facility to schedule call with Plaintiff George Gonzalez | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 1/20/26 | Call Lisa Martinez (Plaintiff's mother) to schedule call with Plaintiff George Gonzalez | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Email facility to schedule call with Plaintiff | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Process invoice for Focus Litigations (deposition transcript of Kenneth Hubbs) | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Receive NEF, Dkt 53, download and save to file | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Sent email to defense coordinating schedules for expert depositions | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Sent emails to expert Ryan O'Connor re deposition schedule | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/20/26 | Sent emails to expert Scott Holdaway re deposition schedule | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/21/26 | Process invoice for Kenneth Hubbs (expert depo fee) | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/21/26 | Receive deposition notice for plaintiff. Save to file and forward to client | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/21/26 | Receive deposition notices for plaintiff's experts. Save to file and forward to experts | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/21/26 | Sent email to defense following up on the amended deposition notice | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/22/26 | Receive email invoice from Ryan O'Connor. Save to file and process payment | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/26/26 | Receive deposition notice for plaintiff. Save to file and forward to client | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 1/26/26 | Receive NEF, Dkt 57, save to file and calendar deadline | 0.40 | 0.40 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/27/26 | Proofread, format and e-file Plaintiff's Opposition to Defendants' Ex Parte to Continue Trial Dates; Dkt 58 | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/28/26 | Email defense – forward Ryan O'Connor's invoice for his deposition | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/28/26 | Receive deposition notice for plaintiff. Save to file and forward to client (4th amended notice) | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/28/26 | Receive NEF, Dkt 59, save to file and calendar dates | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/29/26 | Receive NEF, Dkt 60 download and save to file; calendar deadlines, | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 1/30/26 | Receive NEF, Dkt 61 download and save to file; calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/6/26 | Receive and process invoice for Plaintiff's deposition | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/6/26 | Receive email from defense – proposed jury instructions | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/9/26 | Receive email re deposition transcript of Plaintiff George Gonzalez; download and save to file | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/12/26 | Receive NEF, Dkt 62, Defendant City of Hemet, et al.'s Motion for Summary Judgment; download and save to file; calendar deadlines | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/12/26 | Receive NEF, Dkt 63, Defendant City of Hemet, et al.'s Notice of Lodging; download and save to file; | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 2/12/26 | Receive NEF, Dkt 64, Defendant City of Hemet, et al.'s Exhibits; download and save to file; | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/19/26 | E-file Plaintiff's Opposition to Motion for Summary Judgment, Dkt 65 and 66 | 0.70 | 0.70 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/19/26 | Prepare and format pleadings for e-filing (Plaintiff's Opposition to MSJ) | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/19/26 | Put together exhibits for Plaintiff's Opposition to MSJ | 1.00 | 1.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/20/26 | Prepare Dropbox link and email defense counsel Plaintiff's manually filed exhibits | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/25/26 | Email defense counsel Andrea Kornblau re word version of Plaintiff's Separate Statements | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 2/27/26 | Receive NEF, Dkt 67, Defendant City of Hemet, et al.'s Reply to Plaintiff's Opposition to MSJ; download and save to file; | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/2/26 | Process check payment request for Plaintiff's medical records | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/4/26 | Receive NEF, Dkt 68, Order taking Defendants' MSJ under submission; update calendar | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/5/26 | Receive NEF, Dkt 69, Notice of Appearance of Defense Counsel Kimberly L. Aceves; update proof of service | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/9/26 | Receive and process invoices for expert Scott Holdaway | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/12/26 | Receive and process invoices for ACE Attorney Service | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 3/17/26 | Receive Plaintiff's medical records from Loma Linda Medical Center; download and save to file | 0.40 | 0.40 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/20/26 | Receive email from defense re Proposed Jury Instructions, Exhibit and Witness List | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/24/26 | Call Wasco Prison and Riverside University Health System (RUHS) re subpoenaed documents | 0.30 | 0.30 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 3/24/26 | Review documents produced by defense | 0.30 | 0.30 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 3/25/26 | Update Plaintiff witness list with name pronunciations | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Email chambers the word version of Plaintiff's Proposed Orders on MILs | 0.40 | 0.40 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Email defense – Plaintiff's Objections to City of Hemet's Proposed Jury Instructions; Joint Stipulation re Exhibits; and Proposed Final Pretrial Conference Order | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Format and e-file Plaintiff's Motions in Limine, Dkt 71 - 74 | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Prepare Proposed Orders for Plaintiff's four (4) Motions in Limine | 1.50 | 1.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 3/26/26 | Receive NEF, Dkt 70, Statement on Scheduling of ADR Proceedings; download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Receive NEF, Dkt 75, Defendant State of California's Motion in Limine #3; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/26/26 | Receive NEF, Dkt 76, Defendant State of California's Motion in Limine #4 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 3/26/26 | Receive NEF, Dkt 77, Defendant State of California's Motion in Limine #5 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/27/26 | Receive NEF, Dkt 78, Defendant City of Hemet's Motion in Limine #1 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/27/26 | Receive NEF, Dkt 79, Defendant City of Hemet's Motion in Limine #2 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 3/30/26 | Put together potential exhibits for Plaintiff's Opposition to Defendants' MILS | 1.40 | 1.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 4/1/26 | Format and Email Plaintiff's Confidential Mediation Brief with Exhibits to Richard Copeland | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/1/26 | Receive and process invoice from Richard Copeland re Mediation | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Email defense re Joint Witness List | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Format and e-file Plaintiff's Oppositions to Defendants' Motions in Limine, Dkt 84 – 86, 88, 89, 90, and Plaintiff's MCFL Dkt 91 | 1.00 | 1.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Prepare and format Exhibits for Plaintiff's Opposition to Defendant's MILS | 1.50 | 1.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Receive NEF, Dkt 80, Defendant State of California's Opposition to Plaintiff's Motion in Limine #1; | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Receive NEF, Dkt 81, Defendant State of California's Opposition to Plaintiff's Motion in Limine #2 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Receive NEF, Dkt 82, Defendant State of California's Opposition to Plaintiff's Motion in Limine #4 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/2/26 | Receive NEF, Dkt 83, Defendant State of California's MCFL | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/2/26 | Receive NEF, Dkt 87, Defendant State of California's Opposition to Plaintiff's Motion in Limine #3 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Finalize case costs | 2.00 | 2.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 92, Joint Pretrial Stipulation re Exhibits; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 93, Plaintiff's Witness List; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 94, Defendant's City of Hemet's Opposition to Plaintiff's MIL #1 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 95, Defendant's City of Hemet's Opposition to Plaintiff's MIL #2 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 96, Defendant's City of Hemet's Opposition to Plaintiff's MIL #4 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 97, Defendant's State of California's Notice of Errata; download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/3/26 | Receive NEF, Dkt. 98, Defendant's State of California's Opposition to Plaintiff's MIL #1; download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/6/26 | Receive email with Dropbox link containing Plaintiff's RUHS Radiology records; download and save to file | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/7/26 | Prepare Dropbox and send link to defense containing the manually filed exhibits to Plaintiff's Opposition to MIL #3 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/8/26 | Draft Notice of Settlement between Plaintiff and City of Hemet | 0.50 | 0.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 4/9/26 | Receive NEF, Dkt. 100, Proposed Voir Dire Questions by Defendant State of California | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/9/26 | Receive NEF, Dkt. 99, Scheduling Notice by Judge Kato; calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/9/26 | Send email to defense re Exhibit List and Joint Stipulation of Facts | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 101, Proposed Voir Dire Questions by Plaintiff | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 102, Joint Pretrial Stipulation Re Exhibits | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 103, Plaintiff's Witness List | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 104, Joint STIPULATION for Admissions of Fact | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 105, Statement of the Case | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 106, Plaintiff's Proposed Special Verdict Form | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 107, Notice of Lodging Proposed Pretrial Conference Order | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 108, Joint Proposed Jury Instructions (Clean Set) | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/10/26 | Receive NEF, Dkt. 109, Joint Disputed Jury Instructions (Clean Set) | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/13/26 | Email draft of Notice of Settlement to Defendant City of Hemet | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/13/26 | Format and e-file Notice of Settlement; Dkt 110 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/14/26 | Receive NEF, Dkt. 111, Order by Judge Kato; calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/14/26 | Receive NEF, Dkt. 112, Order by Judge Kato; calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 113, Amended Memorandum of Contentions of Fact and Law; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 114, Notice of Amendments to Pretrial Documents; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 115, Status Report – Joint Status Report Re Settlement Discussions; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 116, Amended Motion in Limine #1; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 117, Amended Motion in Limine #2; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 118, Amended Motion in Limine #3; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt 119, Amended Motion in Limine #4; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt. 120, Scheduling Notice by Judge Kato; calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/21/26 | Receive NEF, Dkt. 121, Defendant State of California's Response to Scheduling Notice | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/22/26 | Emailed Judge Kato's Chambers requesting permission for Marcel to appear and listen it at the FPTC | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/22/26 | Receive NEF, Dkt. 122, Order by Judge Kato Granting and Denying in part Plaintiff's and Defendants' Motions in Limine; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/23/26 | Email word version of Proposed order for Dkt 125 to Chambers | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/23/26 | Format and e-file Plaintiff's Request re Plain Clothes; Dkt 125 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/23/26 | Format and e-file Proposed Amended Jury Instructions; Dkt 123 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/23/26 | Reached out to providers in Plaintiff's witness list re their availability for trial and if they have the records | 0.60 | 0.60 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/23/26 | Receive NEF, Dkt. 124, Order by Judge Kato re trial; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/23/26 | Updated trial calendar pursuant to Judge Kato's Order | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/24/26 | Reached out to court reporting agencies to order electronic copies of deposition transcripts of Plaintiff's experts | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/24/26 | Receive NEF, Dkt. 126, Order by Judge Kato re Plain Clothes; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/24/26 | Received email from court reporting agency re electronic copies of deposition transcripts.  Download and save to file. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/27/26 | Emailed deposition transcripts to Plaintiff's experts (Holdaway, O'Connor, Noble) | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 4/27/26 | Receive NEF, Dkt. 127, Proof of Service re Order on Motion; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/27/26 | Transcribed audio dispatch recordings and Sobaszek video | 1.50 | 1.50 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 4/28/26 | Emailed Defense Experts' reports and deposition to Plaintiff's Experts | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/28/26 | Receive NEF, Dkt. 128, re update on Court policies re use of artificial intelligence. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/28/26 | Receive NEF, Dkt. 129, Application for Writ of Habeas Corpus | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/28/26 | Receive NEF, Dkt. 130, Subpoena in a Civil Case issued to Navpreet Dhillon. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/28/26 | Receive NEF, Dkt. 131, Subpoena in a Civil Case issued to Jaclyn Corso. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/28/26 | Receive NEF, Dkt. 132, Notice to Filer of Deficiencies; Download and save to file | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/29/26 | Arranged and saved photo exhibits to be used in trial | 1.50 | 1.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/29/26 | Receive NEF, Dkt. 133, Re Plaintiff's Application for Writ of Habeas Corpus | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/30/26 | Format and e-file Amended Joint Exhibit List; Dkt 135 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 4/30/26 | Receive NEF, Dkt. 134, Brief filed by Defendants California Highway Patrol, Sean Irick, re Pretrial Conf.; Download and save to file. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 5/1/26 | Set up zoom meeting with experts; email link to experts. | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/4/26 | Reached out to court reporting to request original transcripts of expert depositions. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/4/26 | Trial preparation – print out deposition transcripts (3 copies each), print out exhibits and assemble them in four exhibit binders, save audio/video files to USB flash drives | 5.00 | 5.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/5/26 | Continue to print exhibits and assemble them in exhibit binders; print out copies of officer statements, witness statements, declarations, autopsy reports. | 4.00 | 4.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Emailed experts the Order Granting and Denying MILs | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Emailed the Joint Exhibit List to the Court | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 136, Application for Writ of Habeas Corpus ad Testificandum as to Plaintiff | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 137, Subpoena in a Civil Case issued to Amanda McKinley | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 138, Subpoena in a Civil Case issued to Marquis Bridgman | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 139, Subpoena in a Civil Case issued to Riverside County Sheriff's Office. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 140, Order by Judge Kato re Application for Writ of Habeas Corpus Ad Testificandum. | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 5/7/26 | Receive NEF, Dkt. 141, Writ of Habeas Corpus Ad Testificandum. | 0.00 | 0.00 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/11/26 | Receive NEF, Dkt. 142, Minutes of Jury Trial Day 1 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/12/26 | Receive NEF, Dkt. 143, Minutes of Jury Trial Day 2 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/12/26 | Receive NEF, Dkt. 144, Minutes of Jury Trial Day 3 | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/13/26 | Receive NEF, Dkt. 145 – 150, Minutes of Jury Trial and Jury Notes | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/14/26 | Receive NEF, Dkt. 151 – 153, Jury Notes | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/14/26 | Request for payment of expert fees; Send out checks and updated costs folder | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/19/26 | Drafted Proposed Judgment | 0.70 | 0.70 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 5/20/26 | Emailed defense counsel Andrea Kornblau re Proposed Stipulation to Dismiss Defendant City of Hemet | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/20/26 | Finalize, format and e-file Joint Stipulation for Order Dismissing Defendants City of Hemet, Sobaszek and Reynoso; Dkt. 154 | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/21/26 | Emailed defense counsel Amie Bears the draft of Stipulation to Extend Briefing Schedule | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/21/26 | Finalized case costs | 1.50 | 1.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/21/26 | Receive NEF, Dkt. 155, Order Granting Stipulation to Dismiss City Defendants | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 5/22/26 | Emailed word version of Proposed Order to Chambers | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/22/26 | Finalize, format and e-file Joint Stipulation for Order Extending Time for Plaintiff to File Motion for Attorney Fees and Application to Tax Costs; Dkt. 156 | 0.50 | 0.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/26/26 | Finalize, format and e-file Notice of Lodging Proposed Judgment; Dkt. 157 | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 5/27/26 | Receive NEF, Dkt. 158, Order Granting Stipulation to Modify Briefing Schedule | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 6/11/26 | Receive NEF, Dkt. 159, Defendants' Objection to Plaintiff's Proposed Judgment | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 6/17/26 | Receive NEF, Dkt. 160 - 164, Notice of Filing Transcripts | 0.40 | 0.40 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 6/17/26 | Receive NEF, Dkt. 165, Plaintiff's Judgment; Calendar deadlines | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 6/24/26 | Requested for payment for trial transcripts; sent out check to court reporter | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/1/26 | Prepare a template for Mr. Galipo's time spent on the case. | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/6/26 | Emailed defense re Meet and Confer on Plaintiff's Motion for Attorney fees | 0.10 | 0.10 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/8/26 | Receive email re Trial Transcripts; download and save to file | 0.40 | 0.40 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/9/26 | Update Mr. Galipo's timesheet | 0.30 | 0.30 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Leslie De Leon | 7/13/26 | Prepare exhibits for Motion for Attorney Fees | 0.40 | 0.40 | Transient timekeeper | Minimal apparent value added to case given limited hours billsd |
| Leslie De Leon | 7/13/26 | Update Mr. Galipo's timesheet | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/14/26 | Format and e-file Motion for Attorney Fees and Opposition to Defendants' Motion to Stay | 1.50 | 1.50 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Leslie De Leon | 7/14/26 | Update Mr. Galipo's timesheet | 0.20 | 0.20 | Transient and Clerical | Minimal apparent value added to case given limited hours billsd; task is clerical or administrative |
| Marcel F. Sincich | 2/21/25 | Case review with Dale K. Galipo ("DKG") regarding ("re") association, incident facts and analysis, case procedural history, planning and discovery strategy | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 2/21/25 | Communication ("Comms") with Trent C. Packer ("TCP") regarding incident facts and analysis, case procedural history, planning and discovery strategy | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 2/27/25 | Case review with DKG | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/3/25 | Draft Notice of Association and discuss with DKG | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/3/25 | Review Stip to Withdraw and Amend Complaint, and discuss with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/6/25 | Comms with TCP re case detail including analysis of total number of shots fired, number of shots fired by each officer, and timing of shots fired | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

**All Challenged Billing Entries**

| Timekeeper | Date | Description | Time Challenged | Reduce By | | Objection | Reason for Objection |
|---|---|---|---|---|---|---|---|
| Marcel F. Sincich | 3/7/25 | Case Review with litigation assistants Stefany Anderson and Alejandro Monguia | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/7/25 | Review Client comms with TCP and DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/7/25 | Review comms from TCP to Client | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/10/25 | Draft First Amended Complaint ("FAC") | 1.00 | | 0.50 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 3/11/25 | Case Review with TCP re discovery and FAC | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/13/25 | Case review with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/13/25 | Draft FAC | 1.00 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/17/25 | Comms with TCP re finalizing FAC to file | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 3/21/25 | Research, drafting, and reviewing FAC for Opp to pending MTD FAC | 0.50 | 0.25 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 3/21/25 | Comms with TCP regarding State letter and planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/24/25 | Research and review FAC and draft Opp to pending MTD FAC | 2.00 | 1.00 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 4/1/25 | Case review with DKG | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/7/25 | Comms with TCP re case planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/25 | Depo Prep re Officers Irick, Sobaszek and Reynoso: gathering docs, videos and photo | 0.30 | 0.15 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 4/9/25 | Draft notice of deposition of Officers Irick and Reynoso | 0.20 | 0.10 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 4/10/25 | Depo Prep re Officers Irick, Sobaszek and Reynoso: gathering docs, videos and photo | 0.40 | 0.20 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 4/15/25 | Discuss Opp to MTD FAC with DKG (-0.2) | | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/16/25 | Comms with TCP regarding edits to Opp to MTD FAC (-0.1) | | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/25/25 | Comms with TCP re scheduling and draft Rule 26(f) Report | | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/2/25 | Comms with DKG regarding Rule 26(f) Report and Initial Disclosures | | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/6/25 | Case review with DKG | | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/6/25 | Discuss discovery plan with TCP | | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/8/25 | Comms with TCP re discovery plan | | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/9/25 | Comms with TCP re initial disclosures and subpoena | | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | | Objection | Reason for Objection |
|---|---|---|---|---|---|---|---|
| Marcel F. Sincich | 5/13/25 | Comms with TCP re meet and confer | 0.10 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/14/25 | Comms from City re draft of proposed protective order | 0.10 | 0.10 | | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Marcel F. Sincich | 5/15/25 | Review Comms from TCP to Defense re meet and confer | 0.10 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/18/25 | Comms with TCP regarding Initial Disclosures and review draft of the same | 0.20 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/20/25 | Comms with DKG re amended complaint and initial disclosures (-0.1) | 0.10 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/20/25 | Comms with TCP re an amended complaint and initial disclosures (-0.1) | 0.10 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/22/25 | Comms with TCP re amending complaint (-0.1) | 0.20 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/22/25 | Draft and Review with DKG Statement to Proceed on Claims | 0.30 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/26/25 | Comms with TCP re Client | 0.10 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 5/29/25 | Comms with TCP, DKG, and edit Statement to Proceed for filing (Doc. 36) | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/2/25 | Case Review with TCP and DKG and edit SAC (-0.4) | 1.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/5/25 | Comms with TCP re SAC clean and redline edits | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/6/25 | Comms with TCP re defense request and planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/13/25 | Comms from Mr. Copeland re mediation and discuss terms with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/26/25 | Comms with TCP re medical records and depos | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/30/25 | Comms from City re officer depos and discovery responses | 0.10 | 0.10 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Marcel F. Sincich | 6/30/25 | Finalize and serve Notice of Depositions on City Officers | 0.10 | 0.10 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Marcel F. Sincich | 6/30/25 | Review calendar and comms with TCP and DKG to schedule depos and re extension to Defense responses and medical records | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 7/7/25 | Comms with TCP and DKG re discovery | 0.40 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/15/25 | Research into mediator and Comms with DKG re mediation and mediator | 0.40 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/19/25 | Case review with DKG | 0.20 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/22/25 | Assist DKG with Officer Irick Deposition | 2.50 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/23/25 | Review file and prepare for Officer Sobaszek Deposition | 0.60 | 0.60 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Marcel F. Sincich | 7/29/25 | Discuss update on criminal case, medical records and treatment with DKG and TCP | 0.40 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/30/25 | Review criminal file docs and Comms with TCP regarding the same | 1.00 | | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 8/11/25 | Review File and Draft: RFA to City, RFA to Irick, ROGG to Irick | 1.00 | 0.50 | Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Marcel F. Sincich | 8/14/25 | Assist with preparation of Depo of Sgt. Reynoso | 0.60 | 0.60 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 8/29/25 | Case review with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 9/1/25 | Case review with DKG (-0.1) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 9/1/25 | Comms with TCP re discovery and client | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 9/17/25 | Comms with TCP re discovery responses | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 9/23/25 | Review records, prepare discovery docs to serve and comms with TCP re same | 3.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/6/25 | Case review with DKG | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/9/25 | Research and comms with TCP re experts | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/15/25 | Comms with TCP and Defense re discovery | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/17/25 | Comms with TCP re discovery and criminal case | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 10/20/25 | Discussion with TCP and DKG re demand | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/21/25 | Case update and review with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/24/25 | Review stip and Comms with Defense and TCP | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/27/25 | Comms with TCP and DKG re discovery dispute (-0.1) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/28/25 | Review TCP comms with Defense re update of Pl. | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 10/31/25 | Discuss damages with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/3/25 | Review Stip to Modify with TCP (-0.1) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/5/25 | Comms with TCP re ex parte | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/6/25 | Draft Opp to Ex Parte, review with TCP and DKG, finalize for TCP to file | 2.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 11/11/25 | Comms from City re scheduling Pl. depo | 0.20 | 0.20 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Marcel F. Sincich | 11/13/25 | Draft and review discovery dispute statement with TCP and DKG | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/13/25 | Prep and planning discussion with TCP and DKG prior to Def conference call | 0.60 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/18/25 | Research discovery issues and comms with TCP on same | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/20/25 | Discuss IDC with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 11/26/25 | Case review with DKG | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 12/3/25 | Discuss expert reports and disclosures with DKG | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 12/5/25 | Discuss expert reports with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 12/8/25 | Comms with TCP re payment of experts | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 12/11/25 | Case update and review with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 12/22/25 | Review criminal file and comms with TCP | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 12/29/25 | Comms with TCP planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/1/26 | Discuss defending depos with Brendan Johnson (-0.3) | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/1/26 | Discuss defense expert discovery with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/6/26 | Comms with Mr. Johnson and prep for depos | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/6/26 | Comms with TCP re expert depos and MSJ | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/7/26 | Comms with Mr. Johnson re depos | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/15/26 | Suppl expert disclosures objection and comms with DKG and TCP | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 1/16/26 | Comms with TCP and draft objections to RFPs to Pl. experts | 1.00 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/22/26 | Comms with Mr. Johnson re depos | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/23/26 | Comms with DKG and TCP re depo and neutral statement, and draft the same | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/26/26 | Case Review with TCP and DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/27/26 | Prep for IDC and comms with DKG | 1.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 1/30/26 | Comms with TCP re Pl. depo | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 2/4/26 | Comms with TCP and DKG re trial | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 2/23/26 | Discuss MSJ with DKG (-0.2) | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/4/26 | Discuss proposed jury instruction and verdict form with DKG | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 3/4/26 | Discuss proposed jury instruction and verdict form with TCP | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/10/26 | Comms with TCP and Defense re scheduling meeting (-0.1) | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/12/26 | Planning and strategy comms with TCP and DKG | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/18/26 | Discuss exhibit list and witness list with DKG | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/19/26 | Comms from State re demand and discuss with TCP | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/19/26 | Comms with TCP re MILs | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/19/26 | Discuss pretrial docs with DKG and TCP including jury instructions, verdict form, statement of the case, and FPTCO | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/25/26 | Comms with TCP office and defense re mediation | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 3/26/26 | Comms with DKG re pretrial docs | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 3/31/26 | Draft Memorandum of Contentions of Fact and Law ("MCFL"), discuss with DKG | 3.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/1/26 | Comms with TCP re trial strategy and exhibits | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/2/26 | Comms with State re Joint Witness List; Finalize and file (Doc. 93) | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/2/26 | Discuss MCFL with TCP and DKG; Finalize and file MCFL (Doc. 91) | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/2/26 | Review Opp to MILs with DKG | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/3/26 | Discuss Defense MILs with DKG | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/8/26 | Comms with State re pretrial docs | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/8/26 | Comms with TCP re pretrial docs | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/8/26 | Draft Joint Agreed Upon Jury Instructions and discuss with DKG and TCP | 2.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 4/8/26 | Draft Plaintiff's Disputed Jury Instructions and discuss with DKG and TCP | 1.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/8/26 | Review file, Research, and Draft Proposed FPTCO, review State additions to FPTCO, and discuss with DKG and TCP | 2.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Discuss and review Pl.'s Proposed Voir Dire with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Joint Exhibit List; discuss with DKG; add responses to objections; finalize and file (Doc. 102) | 1.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Joint Proposed Special Verdict Form; review with DKG; finalize and file (Doc. 106) | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Joint Statement of the Case; review with DKG; finalize and file (Doc. 105) | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Joint Stipulation of Facts; review with DKG; finalize and file (Doc. 104) | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Joint Witness List; review with DKG; finalize and file (Doc. 103) | 0.60 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State edits to Proposed FPTCO; review with DKG; finalize and file (Doc. 107) | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 4/9/26 | Review State edits to Proposed Joint Disputed Jury Instructions; review with DKG; finalize and file (Doc. 109) | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/9/26 | Review State version of Jury Instructions and discuss with DKG | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/16/26 | Comms and planning with TCP re trial binders | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/16/26 | Comms with TCP re amending pretrial docs | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/17/26 | Discuss and review Pl.'s Amended MCFL with DKG | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/20/26 | Discuss Order with TCP and DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/22/26 | Discuss Order re MILs with DKG and TCP, planning and strategy | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/22/26 | Review Defense Expert Reports with DKG | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/23/26 | Discuss FPTC, planning and strategy with DKG and TCP | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 4/27/26 | Comms with TCP re writ of habeas corpus and TCP response to Court | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/28/26 | Comms with TCP re subpoena to Riverside re investigation docs | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/28/26 | Comms with TCP re trial subpoenas for non-retained experts, and Docs. 130-131 | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/28/26 | Review trial exhibits with DKG | 2.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/29/26 | Review photo exhibits with DKG | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/30/26 | Comms with TCP re notice of flier deficiencies | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 4/30/26 | Review Brief filed by State and discuss with DKG (Doc. 134) | 0.80 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/1/26 | Comms with TCP re Exhibit Binders and delivery | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/6/26 | Trail preparation and theory meeting with TCP and DKG | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Marcel F. Sincich | 5/7/26 | Comms with TCP re Client transport and trial planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 5/7/26 | Review opening exhibits with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 6/18/26 | Comms with TCP re ordering transcripts and planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/9/26 | Discuss Rule 59 Motion with DKG | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Marcel F. Sincich | 7/10/26 | Discuss Rule 59 Motion with DKG | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/23/24 | Draft complaint | 5.60 | 2.80 Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted |
| Trent Packer | 2/21/25 | Communication with M. Sincich regarding Case history, planning, and facts. | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 2/28/25 | Conference with co-counsel M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/6/25 | Communicated with M. Sincich re case detail including number of shots and who was shooting. | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 3/11/25 | Planning Communication with M. Sincich | 2.00 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/17/25 | Communication with M. Sincich regarding finalizing FAC to file. | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/21/25 | Email correspondence with M. Sincich re: meet and confer letter on MTD | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/7/25 | Communication with M. Sincich re case planning. | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/15/25 | Communication with M. Sincich re Opp to MTD FAC | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/16/25 | Revise MTD and communicate with M. Sincich re: same | 0.80 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/25/25 | Communication with M. Sincich re scheduling | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/6/25 | Discuss discovery plan with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/8/25 | Communication with M. Sincich re discovery plan | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 5/9/25 | Communication with M. Sincich re initial disclosures and subpoena | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/13/25 | Communication with M. Sincich re meet and confer | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/15/25 | Communication with M. Sincich regarding operative complaint and court order | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/18/25 | Communication with M. Sincich regarding Initial Disclosures | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/20/25 | Communication with M. Sincich re an amended complaint and initial disclosures | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/21/25 | Communication with M. Sincich regarding SAC | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/22/25 | Communication with M. Sincich re amending complaint | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/29/25 | Communication with M. Sincich re editing Statement to Proceed for filing | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/2/25 | Communication with M. Sincich and D. Galipo re SAC | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 6/5/25 | Communication with M. Sincich re SAC clean and redline edits | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/6/25 | Communication with M. Sincich re defense request and planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/19/25 | Communication with M. Sincich re medical records | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/26/25 | Communication with M. Sincich re medical records and depos | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/30/25 | Communication with M. Sincich and D. Galipo re scheduling depos and re extension to Defense responses and medical records | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 7/7/25 | Communication with M. Sincich and D. Galipo re discovery | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 7/7/25 | Communication with M. Sincich re assisting with depo | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 7/30/25 | Communication with M. Sincich regarding the criminal file docs | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 9/5/25 | Communication with M. Sincich and Client | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 9/11/25 | Communication with M. Sincich re discovery and client | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 9/17/25 | Communication with M. Sincich re discovery responses | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 9/23/25 | Communication with M. Sincich re records and docs to be served. | 1.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/9/25 | Communication with M. Sincich re experts | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/15/25 | Communication with M. Sincich and Defense re discovery | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/17/25 | Communication with M. Sincich re discovery and criminal case | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/20/25 | Communication with M. Sincich re meeting with client | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/20/25 | Discussion with M. Sincich and D. Galipo re demand | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/21/25 | Communication with M. Sincich re depo | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 10/24/25 | Communication with M. Sincich re stip | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 10/27/25 | Communication with M. Sincich and D. Galipo re discovery dispute | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 11/5/25 | Communication with M. Sincich re ex parte | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 11/13/25 | Prep and planning discussion with M. Sincich and D. Galipo prior to Def conference call | 0.60 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 11/13/25 | Review drafted statement with M. Sincich and D. Galipo | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 11/18/25 | Communication with M. Sincich re discovery issues | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 12/8/25 | Communication with M. Sincich re payment of experts | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 12/22/25 | Communication with M. Sincich re criminal file | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 12/29/25 | Communication with M. Sincich re planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 1/6/26 | Communication with M. Sincich re expert depos | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 1/23/26 | Communication with M. Sincich and D. Galipo re depo and neutral statement | 0.45 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 1/30/26 | Communication with M. Sincich re Pl. depo | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 2/4/26 | Communication with M. Sincich and D. Galipo re trial | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/4/26 | Discuss proposed jury instruction and verdict form with M. Sincich | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/10/26 | Communication with M. Sincich and Defense re scheduling meeting | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/11/26 | Communication with M. Sincich and Defense re scheduling meeting | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/12/26 | Planning and strategy communication with M. Sincich and D. Galipo | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/19/26 | Communication with M. Sincich re MILs | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 3/19/26 | Discuss pretrial docs with M. Sincich and D. Galipo including jury instructions, verdict form, statement of the case, and FPTCO | 0.90 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/19/26 | Discuss state communications re demand with M. Sincich | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 3/25/26 | Communication with M. Sincich re demand | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/1/26 | Review and revise oppositions to MILs | 2.60 | 1.30 Work on claims related to the City of Hemet and its officers as well as to the State of California | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. As the time is not allocated, a 50% adjustment is warranted | |
| Trent Packer | 4/1/26 | Communication with M. Sincich re trial strategy and exhibits | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/2/26 | Discuss MCFL with M. Sincich and D. Galipo | 0.50 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/3/26 | Mediation; communication with Client, M. Sincich, and D. Galipo | 5.00 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/8/26 | Communication with M. Sincich re pretrial docs | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/8/26 | Discuss draft of Joint Agreed Upon Jury Instructions with M. Sincich and D. Galipo. | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | | Objection | Reason for Objection |
|---|---|---|---|---|---|---|---|
| Trent Packer | 4/8/26 | Discuss draft of Plaintiff's Disputed Jury Instructions with M. Sincich and D. Galipo. | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/8/26 | Discuss Draft of Proposed FPTCO with M. Sincich and D. Galipo. | 0.60 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/16/26 | Communication and planning with M. Sincich re trial binders | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/16/26 | Communication with M. Sincich re amending pretrial docs | 0.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/17/26 | Attention to settlement issues | 0.20 | | 0.20 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Trent Packer | 4/20/26 | Trial prep | 6.60 | | 1.32 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Trent Packer | 4/20/26 | Discuss Order with M. Sincich and D. Galipo | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/22/26 | Discuss Order re MILs with M. Sincich and D. Galipo; planning and strategy | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/23/26 | Conference with co-counsel D. Galipo and M. Sincich re: pretrial rulings and final pretrial conference | 1.30 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/27/26 | Communication with M. Sincich re writ of habeas corpus and TCP response to Court | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |

All Challenged Billing Entries

| Timekeeper | Date | Description | Time Challenged | Reduce By | Objection | Reason for Objection |
|---|---|---|---|---|---|---|
| Trent Packer | 4/28/26 | Trial prep phone conference with M. Sincich | 0.40 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 4/30/26 | Communication with M. Sincich re notice of filer deficiencies | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/1/26 | Communication with M. Sincich re Exhibit Binders and delivery | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/5/26 | Attn to Reynoso transcribed statement | 1.00 | 1.00 | Work on claims related to the City of Hemet and its officers | Plaintiff settled with the City of Hemet and its officers inclusive of attorneys' fees. Allowing fee recovery for this task would be a double recovery. |
| Trent Packer | 5/6/26 | Trial preparation and theory meeting with M. Sincich and D. Galipo | 0.70 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 5/11/26 | Trial, witness prep | 8.60 | 1.72 | Vague Billing for Trial Preparation | The description, as provided, fails to provide sufficient information to understand what work was being done |
| Trent Packer | 5/26/26 | Communication with M. Sincich re Client | 0.10 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |
| Trent Packer | 6/18/26 | Communication with M. Sincich re ordering transcripts and planning | 0.20 | Total Intra-Office Conferencing hours in excess of 4.0% of the timekeeper's lodestar | Excessive Intra-Office Conferencing | Fails to explain the necessity of this amount of Intra-Office Conferencing |