**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Tel:   (951) 682-9311

*Attorneys for Plaintiff*, GEORGE GONZALEZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEORGE GONZALEZ;<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIRNIA, by and through California Highway Patrol, and SEAN IRICK,<br><br>Defendants. | Case No. 5:25-cv-00331-KK-DTB<br><br>[*Honorable Kenly Kiya Kato*]<br>Magistrate Judge David T. Bristow<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>[*Declarations and Exhibits thereto filed concurrently herewith*]<br><br>Date: August 27, 2026<br>Time: 9:30 a.m. |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.      INTRODUCTION ............................................................................................ 1

II.     AN OFFSET OF FEES IS NOT WARRANTED ........................................... 2

III.    A 2.0 MULTIPLIER IS JUSTIFIED .............................................................. 4

IV.     THE REQUESTED HOURLY RATES ARE REASONABLE ....................... 6

        A.    Defendants Have Failed to Rebut Plaintiff's Evidence
              Supporting the Requested Hourly Rates ............................................ 6

        B.    Plaintiff's Attorneys and Staff Requested Reasonable Rates ............. 7

              1.    Dale K. Galipo ...................................................................... 7

              2.    Marcel F. Sincich ................................................................. 9

              3.    Trent C. Packer .................................................................. 10

              4.    Brendan A. Johnson ........................................................... 10

              5.    Support Staff Rates ............................................................ 11

V.      THE NUMBER OF HOURS SPENT WAS REASONABLY
        NECESSARY TO LITIGATION ................................................................. 12

        A.    Billing related to the City of Hemet ................................................ 12

        B.    Secretarial and Administrative Tasks ............................................... 13

        C.    Inter/Intraoffice Conferences .......................................................... 13

        D.    Vague Billing ................................................................................... 14

        E.    Excessive Time ................................................................................ 16

VI.     PLAINTIFF'S SHOULD BE COMPENSATED FOR ATTORNEYS'
        WORK ON THIS REPLY ANY OTHER RELATED POST-TRIAL
        WORK AND APPEAL ................................................................................ 16

VII.    CONCLUSION ............................................................................................ 17

L.R. 11-6.2. Certificate of Compliance ..................................................................... 18

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Amphastar Pharms. Inc. v. Aventis Pharma SA*,
No. 5:09-cv-00023-SHK, 2020 WL 8680070, at *18 (C.D. Cal. Nov. 13, 2020)................................................................................................14

*Bazarganfard v. Club 360, LLC*,
No. 2:21-cv-02272-CBM-PLAx, 2026 WL 1625655, at *2 (C.D. Cal. May 15, 2026)................................................................................................9

*Bravo v. City of Santa Maria*,
810 F.3d 659 (9th Cir. 2016)................................................................3

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*,
532 U.S. 598 (2001) ................................................................1

*C.B. v. Moreno Valley Unified Sch. Dist.*,
No. ED-cv-21-0194 JGB-SPx, 2025 WL 3040876, at *7 (C.D. Cal. Oct. 3, 2025)................................................................................................8

*Carson v. Billings Police Dep't*,
470 F.3d 889 (9th Cir. 2006)................................................................8

*Chaudhry v. City of Los Angeles*,
751 F.3d 1096 (9th Cir. 2014)................................................................4, 5

*Clark v. City of Los Angeles*,
803 F.2d 987 (9th Cir. 1986)................................................................16

*Corder v. Brown*,
25 F.3d 833 (9th Cir. 1994)................................................................2, 3

*Craig v. Cnty. of Orange*, Case
No. SA-cv-17-00491-CJC-KESx, Dkt. 280, at 5-6................................................................9

*Cruz ex rel. Cruz v. Alhambra Sch. Dist.*,
601 F. Supp. 2d 1183 (C.D. Cal. 2009)................................................................14

*Dang v. Cross*,
422 F.3d 800 (9th Cir. 2005)................................................................6

*Davis v. City & Cnty. of San Francisco*,
976 F.2d 1536 (9th Cir. 1992)................................................................6, 14

*Donastorg v. City of Ontario*,
Case No. ED-cv-18-992-JGB-SPx, 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021)................................................................9, 10, 16

*Downey Cares v. Downey Community Development Com.*,
196 Cal. App. 3d 983 (1987)................................................................5

*Estate of Aguirre v. Cnty. of Riverside*,
No. CV 18-762-DMG (SPX), 2024 WL 2107727 (C.D. Cal. Mar. 29, 2024)...10

*Flannery v. California Highway Patrol*,
61 Cal. App. 4th 629 (1998)......................................................................5

*Fox v. Vice*,
563 U.S. 826 (2011) ...................................................................................1

*French v. City of Los Angeles*,
No. ED-cv-2000416-JGB-SPx, 2022 WL 2189649, at *19 (C.D. Cal. May 10, 2022)......................................................................................................11, 17

*Frias v. City of Los Angeles*,
Case No. CV 16-4626-PSG-SKx, 2020 WL 4001620, at *4 (C.D. Cal. Apr. 23, 2020)......................................................................................................9, 15

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992).................................................................6

*Griffin v. City of Los Angeles*,
No. 2:24-cv-06312-RGK-MAR, 2026 WL 1747212, at *5 (C.D. Cal. June 11, 2026).........................................................................................................8

*Hardisty v. Astrue*,
592 F.3d 1072 (9th Cir. 2010).................................................................1

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...................................................................................1

*Horsford v. Bd. of Trustees of Cal. State Univ.*,
132 Cal. App. 4th 359 (2005)..................................................................6

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001)............................................................................5

*Mangold v. California Pub. Utilities Comm'n*,
67 F.3d 1470 (9th Cir. 1995)...................................................................5

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .................................................................................11

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008)..........................................................12, 14

*Parsons v. Ryan*,
949 F.3d 443 (9th Cir. 2020)..................................................................16

*Pickett v. Sheridan Health Care Center*,
664 F.3d 632 (7th Cir. 2011)....................................................................7

*Pollinator Stewardship Council v. U.S. EPA*,
No. 13-72346, 2017 WL 3096105, at *7 (9th Cir. June 27, 2017) ................16

*Prison Legal News v. Schwarzenegger*,
561 F. Supp. 2d 1095 (N.D. Cal. Apr. 2008) ...................................................... 11

*Pritchett v. Slauson Gas Station*, LLC,
No. CV 20-7915 DSF (SKX), 2022 WL 319989, at *2 (C.D. Cal. Jan. 10,
2022) ................................................................................................................... 9

*Rahman v. FCA US LLC*,
594 F.Supp.3d 1199 (2022) ............................................................................... 11

*Rodriguez v. Barrita, Inc.*,
96 F. Supp. 3d 1268 at 1026 (2014) .................................................................... 6

*Schwarz v. Sec'y of Health & Hum. Servs.*,
73 F.3d 895 (9th Cir. 1995) ................................................................................. 1

*Serrano v. Priest*,
20 Cal. 3d 25 (1977) ............................................................................................ 5

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990) ........................................................................... 6, 8

*Valenzuela v. City of Anaheim*,
No. SA-cv-1700278-CJC-DFMx, 2023 WL 2249178, at *3 (C.D. Cal. Feb.
23, 2023) .............................................................................................................. 9

*Venegas v. Mitchell*,
495 U.S. 82 (1990) .............................................................................................. 7

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007) .............................................................................. 8

*Wit v. United Behav. Health*,
578 F. Supp. 3d 1060 (N.D. Cal. 2022) ....................................................... 14, 15

*Zelaya v. City of Los Angeles*,
No. 2:20-cv-08382-ODW-MAAx, 2024 WL 3183882, at *3 (C.D. Cal. June
25, 2024) .................................................................................... 9, 10, 11, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011).

"A request for attorneys' fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). This admonition holds true here. Indeed, the Supreme Court and the Ninth Circuit have rejected this sort of merit-based, highly fact-bound review in awarding attorney fees that Defendants appear to request in arguing for reduction in fees. *See*, *e.g.*, *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 609-10 (2001); *Hardisty v. Astrue*, 592 F.3d 1072, 1078 (9th Cir. 2010); *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 902 (9th Cir. 1995).

Plaintiff's lead counsel distilled complex issues into simple inquiries for the jury to understand, which provides support for Mr. Galipo's requested hourly rate rather than reduction, and supports the request for a multiplier. In a world where more and more police interactions are being captured on video, an officer's contradictory testimony requires plaintiff's counsel to lead the jury through a detailed review of the videos, circumstantial evidence, forensic evidence, inconsistent testimony, and police officer training and practices, to show that the shooting did not happen as described, here by Officer Sean Irick, in order for the jury to reach its verdict in favor of Plaintiff George Gonzalez.

Additionally, each counsel's requested hourly rate and lodestar is reasonable. Plaintiff's counsel were prepared and efficient at trial similar to their work in the entire case. Plaintiff's counsel's requested hourly rates are supported by their own declarations, exhibits detailing their prior fee awards filed concurrently with their

attorney fee motion, and by the Declaration of Carol Sobel. Thus, Plaintiff respectfully requests that this Court permit the full fee award and grant Plaintiff's requested attorneys' fees in their entirety, including with a multiplier.

## II.    AN OFFSET OF FEES IS NOT WARRANTED

State Defendant's comment that Plaintiff settled a significant portion of this litigation prior to trial is misleading. Plaintiff settled his claims with the City defendants and was forced to trial against Defendant CHP Officer Sean Irick alone. No claims against Defendant Irick were settled prior to trial. Defendants argue that Plaintiff's fee award should be offset by the settlement with the City to prevent a windfall by double recovery. This argument is unpersuasive especially considering that there was no settlement related to Plaintiff's attorneys' fees and all of Plaintiff's requested fees were necessary for the prosecution of claims against Defendants State and Irick.  Additionally, even Defendants' supporting declaration points out that Mr. Sincich "self-deleted 132.5 hours" for work against the City. (Schratz Decl. ¶140.)

Defendants' reliance on *Corder v. Brown*, 25 F.3d 833 (9th Cir. 1994) is greatly mistaken. In *Corder*, the Court only ordered an offset of attorneys' fees because the settling officer provided for a specific amount in damages and a specific amount in attorney's fees. *Id*. at 835. There, several defendants were dismissed on summary judgment, and a jury awarded a total of $24,006 in damages against the remaining defendants at trial and the plaintiffs were awarded attorney's fees, which were reduced by 20% because of the plaintiff's limited success and rejection of a $45,000 settlement offer. *Id*. Here the opposite is true. Plaintiff succeeded on every claim brought to trial against Irick after the State Defendants refused to make any offer for settlement. In fact, Plaintiff made an opening demand specific to the State Defendants at mediation that was lower than the jury's damages award in anticipation that the jury award would be more. Yet, State Defendants not only refused this offer and did not counter but refused to negotiate entirely forcing the case to trial. Ultimately, a defendant is only entitled to offset an attorney's fee award

by the amount of attorney's fees already paid by a settling defendant to ensure only a reasonable fee is awarded. *Id*. at 840. Here, there were no attorney's fees paid by the settling City defendants. Thus, no offset is required or authorized.

The Court in *Bravo v. City of Santa Maria*, 810 F.3d 659 (9th Cir. 2016) is no different. There the settling defendants paid a specific amount in damages, a specific amount in costs, and a specific amount in attorney fees. *Id*. at 664. That is simply not the case here. In *Bravo*, like *Corder*, the jury awarded nominal damages. "However, [the Court] should [] only [exercise its discretion to consider settlement payment by other defendants in evaluating plaintiff's degree of success] if and to the extent that plaintiff's counsel's time spent on settling defendants cannot be fairly separated from the time spent on non-settling defendants." *Id*. at 666. Here, even if the Court looked to offset, which Plaintiff contends it should not because there was no prior attorney fee payment received, the Court also should not consider an offset because the time spent solely on the settling defendants' claims can be fairly separated. In fact, Plaintiff already reduced his request for fees specifically eliminating time spent solely on the settling defendants' claims. Further, the three claims against the City of Hemet only, which were settled (*Monell* liability), are not based on related legal theories and in fact are divisible.

Defendant Irick must show, but cannot, that the settlement and award were for the same injury. According to Defendants, this is a necessary first element that they cannot meet. Thus, Defendants' request for offset should be denied. Second, Defendant Irick must show, bur cannot, that the injury is indivisible such that the non-settling and seting defendants are jointly and severally liable.

There is no windfall here. Plaintiff settled with the City based on claims against the City and went to trial against Irick based on claims against Irick, for which the jury awarded damages. Now Plaintiff seeks reasonable attorney fees pursuant to Section 1988 as the prevailing party at a trial that State Defendants forced.

Again, Defendants' proposals (here and by their post-trial motions) are untenable. Defendants seek an offset on the damages, an offset based on contributory negligence, and an offset on attorney fees. This triple offset does not equate to "reasonable" damages or a reasonable fee award. Irick shot Gonzalez including while he was unarmed and on the ground, and while Gonzalez was not an immediate threat of death or serious bodily injury, when no warning was given and several reasonable alternatives existed. Irick severely injured Gonzalez and the jury agreed. Irick refused to negotiate a settlement, Irick forced the case to trial where the jury found in favor of Gonzalez. Now Irick desperately seeks to find any way to avoid taking responsibility even after the jury unanimously found liability against him.

## III.    A 2.0 MULTIPLIER IS JUSTIFIED

Defendants fundamentally misunderstand the mechanics of the Bane Act multiplier in this Circuit and their reframing of the multiplier as to reflect an increase in attorney rate is misguided. These are separate analyses: the Court first determines the reasonable rate and reasonable hours worked in prosecuting the case (Lodestar), then the Court determines the multiplier. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014). Defendants' Opposition challenges Plaintiff's multiplier. However, the facts they assert in their Opposition demonstrate the truly great result in a difficult and vigorously defended case. Defendants point out how Plaintiff entered the vehicle, put a sunscreen in the window, and told officers they would have to kill him. Then how Plaintiff took officers on a high-speed chase until the vehicle was disabled, just to continue to not surrender by leading them on a foot pursuit and ignoring officer commands. Defendants paint a picture where Plaintiff "presented" a gun while fleeing, then assert that he was struck several times by gunfire prior to dropping his gun, which lacks credibility and is contradicted by objective evidence and testimony.

This Court should apply an upward multiplier of 2.0, or at minimum, a 1.5

-4-    Case No. 5:25-cv-00331-KK-DTB

multiplier, to the lodestar because the factors identified in *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977), weigh heavily in Plaintiff's favor, and the jury returned a verdict in Plaintiff's favor on his Bane Act claim. As to the first factor—the novelty and difficulty of the questions involved and the skill displayed in presenting them—in this case, "the quality of representation far exceed[ed] the quality of representation that would have been provided by an attorney of comparable skill and experience." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1139 (2001). Mr. Galipo is one of the top one hundred trial lawyers in the nation, and no lawyer has achieved anywhere near as many verdicts and settlements against the police in excessive force cases.

As to the second factor—the extent to which this litigation precluded other employment—this case has been ongoing since 2024, it is clear that this case precluded Mr. Galipo and his associates from handling or focusing on other matters.

The third factor—the contingent nature of the fee award—also weighs heavily in Plaintiff's favor. Applying an upward multiplier to the lodestar "reflect[s] the risk that the attorney will not receive payment if the suit does not succeed." *Id*. at 1138. A number of California cases have relied on the contingent risk factor to apply a lodestar multiplier when there is an applicable statutory fee provision (here, the Bane Act). *See, e.g., Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 640-47 (1998); *Downey Cares v. Downey Community Development Com.*, 196 Cal. App. 3d 983, 995-97 (1987). The Ninth Circuit has held that where state law provides a greater award than federal law, the prevailing party is entitled to draw from state law to determine its fee award. *See, e.g., Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995). Because Plaintiff succeeded "on both federal and state claims that support a fee award, the state-law multiplier is available." *Chaudhry*, 751 F.3d at 1106 (holding that "[i]f the Estate had prevailed on its § 52.1 claim, [as opposed to just a §1983 claim] it could have received a multiplier of its attorneys' fees to account for the risk of contingent representation."). Additionally, "[r]efusing a multiplier in a civil rights case based

only on the source of the fee would 'effectively immunize large or politically powerful defendants' engaging in conduct that harms the public." *Rodriguez v. Barrita, Inc.*, 96 F. Supp. 3d 1268 at 1026 (2014) (*quoting Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 399-401 (2005)).

## IV.   THE REQUESTED HOURLY RATES ARE REASONABLE

### A.   Defendants Have Failed to Rebut Plaintiff's Evidence Supporting the Requested Hourly Rates

It is unclear to Plaintiff as to why Defendants use the twelve *Kerr* factors in assessing the reasonableness of Plaintiff's attorneys' requested hourly rates. As stated in Plaintiff's Motion, to determine whether hourly rates are reasonable under §1988, fees "are calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill and reputation of the attorney." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992); *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1546-47 (9th Cir. 1992), *modified on other grounds*, 984 F.2d 335 (9th Cir. 1993). Defendants have not provided any evidence to rebut Plaintiff's attorneys' submitted proof of their skill and ability to provide the required representation to Plaintiff in this matter nor have Defendants provided any evidence to rebut Plaintiff's submitted proof that the requested rates are the prevailing hourly rates in the legal community. Defendants' conclusory argument that Plaintiff provided insufficient evidence is not persuasive.

Despite Defendants' suggestion that Plaintiff's counsels' statutory attorneys'

fees should be reduced to avoid a "windfall," the lodestar method is to be used for attorney fees even where a §1983 case was taken on a contingency basis. *See Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 640-41 (7th Cir. 2011). The contractual fee that an attorney earns from his client, if any, and the statutory fee that a plaintiff recovers from the losing party, are two distinct entitlements. *Id.*; *see also Venegas v. Mitchell*, 495 U.S. 82, 110 (1990). In reviewing a fee motion, a district court is tasked only with examining whether the rate and hours requested are reasonable; the total amount that the attorney stands to recover must not influence this determination. *Pickett*, 664 F.3d at 640-41. For purposes of this analysis, the contingent nature of the representation should be considered for the sole limited purpose of determining the risk taken by Plaintiff's counsel in accepting the case and all the time spent working on the case. Here, Plaintiff's counsel bore a high risk of not receiving any payment and incurring significant costs in litigating this case for over four years if Defendants prevailed.

**B.    Plaintiff's Attorneys and Staff Requested Reasonable Rates**

**1.    Dale K. Galipo**

Defendants' argument that attorney Dale Galipo's requested hourly rate is "not reasonable" misses the mark as it is based on a fundamental misunderstanding of controlling precedent in determining what constitutes a reasonable, prevailing market rate and blatantly ignores ample evidence submitted by Plaintiff justifying the requested rate. With regard to Mr. Galipo, Defendants offer no authority or citation in their opposition, but merely state that his request is "unprecedented." (Opp at 7:22-25.) Plaintiff contends that if there is a civil rights lawyer deserving of an hourly rate of $1,500 or more, it is Mr. Galipo. Truly, with all his accomplishments, a request of $2,000 would be reasonable.

The Ninth Circuit has repeatedly held,

*the determination of a reasonable hourly rate is not made by reference to the rates actually charged the prevailing party…[r]ather, billing rates*

-7-                    Case No. 5:25-cv-00331-KK-DTB

> should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.

*Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (cleaned up) (emphasis added); *see Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) (the court is supposed to use the prevailing market rates for attorneys of comparable experience, skill, and reputation to calculate the lodestar rather than the prevailing attorney's individual contracted hourly rate). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Plaintiff not only submitted declarations from Plaintiff's attorneys and Ms. Sobel, another civil rights attorney in this district, but Plaintiff also provided evidence of past rate awards to Mr. Galipo. *See Welch*, 480 F.3d at 947 (plaintiff satisfied her burden of demonstrating the requested hourly rates were reasonable by submitting rate awards to her attorneys in other cases and declarations from comparable attorneys); *Griffin v. City of Los Angeles*, No. 2:24-cv-06312-RGK-MAR, 2026 WL 1747212, at *5 (C.D. Cal. June 11, 2026) (plaintiffs' submission of affidavits, prior court awards to plaintiffs' counsel, and citation to prior cases within the district approving comparable rates satisfied plaintiffs' burden of showing the requested rates were reasonable). Plaintiff also cited a 2025 fee award in a comparable single-plaintiff civil rights case in this district wherein the founding partner of the firm was awarded an hourly rate of $1,550. *C.B. v. Moreno Valley Unified Sch. Dist.*, No. ED-cv-21-0194 JGB-SPx, 2025 WL 3040876, at *7 (C.D. Cal. Oct. 3, 2025) (approving hourly rate of $1,550 for a founding partner). Plaintiff further provided rate ranges from the 2025 Real Rate Report, which courts in this

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

district have routinely referred to in assessing "the reasonableness of hourly rates in the Central District of California." *Bazarganfard v. Club 360, LLC*, No. 2:21-cv-02272-CBM-PLAx, 2026 WL 1625655, at *2 (C.D. Cal. May 15, 2026); *Pritchett v. Slauson Gas Station*, LLC, No. CV 20-7915 DSF (SKX), 2022 WL 319989, at *2 (C.D. Cal. Jan. 10, 2022).

Plaintiff also provided ample evidence regarding Mr. Galipo's skill, experience, and reputation, including recognition from a number of district court judges in this district that Mr. Galipo is at the top of his field in police excessive force cases. *See, e.g.*, *Zelaya v. City of Los Angeles*, No. 2:20-cv-08382-ODW-MAAx, 2024 WL 3183882, at *3 (C.D. Cal. June 25, 2024); *Valenzuela v. City of Anaheim*, No. SA-cv-1700278-CJC-DFMx, 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023); *Craig v. Cnty. of Orange*, Case No. SA-cv-17-00491-CJC-KESx, Dkt. 280, at 5-6; *Donastorg v. City of Ontario*, Case No. ED-cv-18-992-JGB-SPx, 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021). Additionally, while Mr. Galipo's requested hourly rate may exceed the upper quartile for litigation partners in Los Angeles, at least one court in this district has recognized that because of Mr. Galipo's reputation and skill in police excessive force cases, Mr. Galipo "should receive a rate *above* the upper quartile." *Frias v. City of Los Angeles*, No. CV 16-4626-PSG-SKx, 2020 WL 4001620, at *3 (C.D. Cal. Apr. 23, 2020).

Defendants have failed to meet their burden. Defendants have failed to present any evidence that would support their argument that Mr. Galipo's requested hourly rate is not reasonable. Instead, Defendants rely on the unsupported and unreliable declaration of Mr. Schratz alone.

Accordingly, Mr. Galipo's requested hourly rate of $1,500 is reasonable given his experience, reputation, and skill in civil rights cases and the prevailing market rate of this Court's community.

## 2.    Marcel F. Sincich

Mr. Sincich requested an hourly rate of $850, based on previous hourly rate

awarded six years ago in the Central District and recent hourly rates awarded to his colleagues with comparable experience and skills. *See Estate of Aguirre v. Cnty. of Riverside*, No. CV 18-762-DMG-SPx, 2024 WL 2107727, at *4 (C.D. Cal. Mar. 29, 2024); *Donastorg*, 2021 WL 6103545, at *9; *Zelaya*, 2024 WL 3183882, at *3. Mr. Sincich has worked almost exclusively on civil rights police excessive force cases for nearly ten years. He has been the managing day-to-day attorney in cases with Mr. Galipo that resulted in seven-figure settlements and verdicts, including verdicts in which Mr. Sincich has been second chair at trial. (Doc. 169-25, Sincich Decl. ¶¶19-20.) Mr. Sincich was selected to the "Southern California Rising Stars" list in the field of civil rights from 2023 and 2026 (*id.* ¶12); Mr. Sincich has been a panelist on civil rights related webinars (*id.* ¶¶13-14); and co-authored civil rights published papers (*id.* ¶¶15-16). Further, based on the recommendation of Ms. Sobel, $850 per hours is reasonable for Mr. Sincich. Accordingly, Plaintiff has submitted sufficient evidence of prevailing community rates and evidence of Mr. Sincich's experience, skill and reputation to show that her requested hourly rate is reasonable.

### 3.     Trent C. Packer

Mr. Packer requested an hourly rate of $900, based on recent hourly rates awarded to his colleagues with comparable experience and skills. *See Aguirre*, 2024 WL 2107727, at *4; *Donastorg*, 2021 WL 6103545, at *9; *Zelaya*, 2024 WL 3183882, at *3. Mr. Packer is a named partner in his firm with 21 years of litigation experience. (Doc. 169-31, Packer Decl. ¶¶6, 9.) Mr. Packer has been the managing day-to-day attorney in civil rights cases for over ten years achieving great results for his clients. (*Id.* ¶¶11-14). Further, on the recommendation of Ms. Sobel of $1,000 per hour, Mr. Packer's request for $900 per hour is very reasonable. Accordingly, Plaintiff has submitted sufficient evidence of prevailing community rates and evidence of Mr. Packer's experience, skill and reputation to show that his requested hourly rate is reasonable.

### 4.     Brendan A. Johnson

Mr. Johnson requested an hourly rate of $350. Having recently been admitted to the bar, Mr. Johnson has already acquired significant experience at the Law Offices of Dale K. Galipo. Defendants challenge Mr. Johnson's requested fees merely because they are minimal as compared to the other attorneys on the case. Their argument is unpersuasive. In general, the minimal nature of an attorney's work is not a sufficient basis to deny fees altogether. *See Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1101 (N.D. Cal. Apr. 2008). Courts instead consider the reasonableness of the fee request. *Id*. Defendants failed to cite any authority finding that 31 hours is too low a number to consider, nor that a certain number of hours must be billed before they are subject to a fee motion. Defendants do not argue against the reasonableness of the amount of hours billed, and therefore the Court should calculate these hours in determining Plaintiff's attorney fee award. Accordingly, Plaintiffs have submitted sufficient evidence of prevailing community rates and evidence of Mr. Johnson's experience, skill and reputation to show that his requested hourly rate is reasonable.

### 5.      Support Staff Rates

With respect to paralegals like Ms. De Leon and Ms. Peña-Pham, the Supreme Court in *Missouri v. Jenkins,* directly addressed whether paralegal and law clerk work should be compensated at prevailing market rates or merely at cost to the attorney. 491 U.S. 274 (1989). The Court held that separate compensation for paralegals and law clerks at prevailing market rates was "fully in accord" with the Civil Rights Attorney's Fees Awards Act. *Id*. The Plaintiff's support staff have years of experience and request a rate based on that experience. *See French v. City of Los Angeles*, No. ED-cv-2000416-JGB-SPx, 2022 WL 2189649, at *19 (C.D. Cal. May 10, 2022) (awarding staff $200 hourly rate); *Zelaya*, 2024 WL 3183882, at *4. Further, the Courts in the Central District routinely approve paralegal rates in the $300 to $400 per hour range for experienced paralegals. In *Rahman v. FCA US LLC*, a 2022 case from the Central District of California, the court found that the

requested hourly rates were reasonable where "numerous recent opinions had approved the same or substantially similar rates" for the legal team members. 594 F.Supp.3d 1199 (2022). Plaintiff contends that he has submitted sufficient evidence of prevailing community rates and evidence of the legal assistants' experience and skills to show that their requested rates are reasonable.

## V. THE NUMBER OF HOURS SPENT WAS REASONABLY NECESSARY TO LITIGATION

> [The Court] must [] be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

### A. Billing related to the City of Hemet

By their opposition, Defendants merely claim that Mr. Schartz has identified, unreliably, billing entries attributable to work done in relation to claims against the City yet cites no authority and provides no analysis to support their contention. (Opp at 10:21-28). Defendants ignore that they wanted and benefitted from the Protective Order in both producing and receiving documents in discovery. Further, preparing for and conducting depositions of eye-witness officers (even if they are from the City) was necessary in this matter, especially because State Defendants called these officers as witnesses at trial. Defendants also claim that preparation for the deposition of Plaintiff's police practices expert, Jeffrey Noble, is somehow related to only claims against the City despite Mr. Noble opining that Irick's use of deadly force was excessive and unreasonable in his Rule 26 Report, and State Defendants' participation and examination of Mr. Noble at both deposition and trial. Finally, Plaintiff contends that opposing summary judgment filed by City also kept alive

claims against the State. Had the City succeeded on their motion, it is very likely that the State would have attempted to argue *res judicata* prior to trial. Although only City defendants moved for summary judgment, this comports with the State's general stance throughout litigating this matter, as it appeared to Plaintiff—to allow the City to take the lead and join where possible and/or beneficial.

As stated above, Plaintiff already "self-deleted 132.5 hours" for work litigating claims against the City, which reflects Plaintiff's execution of billing judgment and reasonable request for attorney fees.

### B.    Secretarial and Administrative Tasks

Defendants request $4,200 in "clerical and administrative" fees be stricken without any explanation as to how that was calculated or what they contend are unrecoverable clerical and administrative fees. Defendants contend that the Court should disallow all hours sought by Plaintiff's legal assistants because purely clerical or secretarial tasks are not compensable. While that may be true, legal assistants do not perform purely clerical tasks, and "it is appropriate to distinguish between non-legal, 'purely clerical' work, which is not compensable, and substantive legal work, which may be." *Zelaya*, 2024 WL 3183882, at *5. "[T]asks like drafting discovery correspondence, preparing deposition notices, and reviewing and organizing case files are not necessarily purely clerical tasks and may be compensable. *Id.* The tasks performed by the legal assistants were not all purely clerical tasks. Thus, the Court should not disallow all hours billed by the legal assistants.

### C.    Inter/Intraoffice Conferences

Defendants cursorily claim that Plaintiff's attorneys' fees are duplicative without any explanation as to what is duplicative besides "Intra-Office Conferencing." Defendants claim that "conferences are unnecessary" (Opp at 12:15) while their Mr. Schratz even admits that "conferencing is necessary" (Schratz Decl. at 2:1). The Ninth Circuit has recognized that duplication is necessary and inherent

in the process of litigation over time. *Moreno v. City of Sacramento*, 534 F.3d at 1112. "Time billed for internal conferencing is recoverable to the extent it is reasonably necessary to conducting the litigation." *Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1192 (C.D. Cal. 2009) (citing *Davis*, 976 F.2d at 1545). Again, Mr. Schratz concedes that "attorneys within a firm need to coordinate work and discuss strategy," and that "strategic conferencing among attorneys does have value." (Schratz Decl. ¶¶112, 115). The nature of this case required a lot of communication and updating to bring the case to trial, including because the Plaintiff's counsel is composed of two firms. Plaintiff's attorneys and staff only put in the amount of work that was necessary as they had zero incentive to overstaff or overbill due to the contingency-based compensation and difficulty in winning police excessive force cases. It was necessary for Plaintiff's counsel to communication with Plaintiff to keep him informed; communicate with led trial counsel on all matters as they are being accomplished under his supervision; and conduct theory and strategy conferences.

Additionally, Mr. Schratz's opinions on excessive conferencing are unreliable because his methodology in identifying inter/intraoffice conferencing is flawed. (See Objection filed concurrently herewith). Mr. Schratz overstates the time attorneys spend on conferencing and includes numerous entries that describe tasks that do not involve communications between counsel and/or are not properly considered only conferencing. *See Wit v. United Behav. Health*, 578 F. Supp. 3d 1060, 1086 (N.D. Cal. 2022); *Amphastar Pharms. Inc. v. Aventis Pharma SA*, No. 5:09-cv-00023-SHK, 2020 WL 8680070, at *18-20 (C.D. Cal. Nov. 13, 2020). Thus, Defendants' entire argument regarding inter/intraoffice conferencing, which wholly relies on Mr. Schratz's opinions, is unconvincing because Mr. Schratz's opinions are unreliable.

**D.    Vague Billing**

Defendants also claim vague time entries should be stricken in the amount of $54,156.  Again, Defendants' argument regarding vague entries depends entirely on

Defendants' alleged billing expert, Me. Schartz's opinions on Plaintiff's billing entries. However, a review of Exhibit 12 to Mr. Schratz's declaration, which Mr. Schratz contends is a list of the vague entries he identified, reveals that a large bulk of those entries are not vague at all. Every entry he identified dealt with trial preparation, during which Plaintiff's attorneys spent necessary time preparing for trial; debriefing and strategizing; investigating the reports, statements, depositions, photographs and videos; drafting and analyzing the jury instructions and verdict form; and drafting opening statement, examinations for all potential witnesses and closing agreements. The Court was able to observe firsthand the level and quality of work on the case, including the preparation and presentation at trial. Thus, Plaintiff's attorneys' description for trial preparation was sufficiently detailed to enable the court to determine the reasonableness of the hours expended. Additionally, Mr. Schratz does not explain the methodology he employs in identifying vague entries, and courts have previously found Mr. Schratz's methodology in identifying vague entries to be flawed and unreliable. *See Wit*, 578 F. Supp. 3d at 1085.

As Defendants even acknowledge, Mr. Galipo's timesheet included a footnote describing the specific tasks involved in his "trial preparation." (Schratz Decl ¶127.) "Although courts can reduce fees due to block-billing when it hinders their ability to discern the reasonable hours worked, block billing is not per se objectionable." *Frias v. City of Los Angeles*, Case No. CV 16-4626-PSG-SKx, 2020 WL 4001620, at *4 (C.D. Cal. Apr. 23, 2020) (internal citations omitted). Here, Mr. Galipo's "trial preparation," which Defendants identify as "vague," provide enough clarity for the Court to discern the reasonable hours worked. The nature of trial preparation generally lends itself to block-billing. For example, drafting closing arguments essentially requires review of everything that may be presented at trial. "Counsel is not required to record in great detail how each minute of [their] time was expended.'" *Pollinator Stewardship Council v. U.S. EPA*, No. 13-72346, 2017 WL

3096105, at *7 (9th Cir. June 27, 2017) (internal quotations and citations omitted). To do so, Plaintiff contends would require exposure of privilege and work product. "[A]ttorneys need only keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Parsons v. Ryan*, 949 F.3d 443, 462 (9th Cir. 2020) (internal quotations and citations omitted).

### E. Excessive Time

Defendants cursorily claim that excessive time should be stricken in the amount of $60,946.50, with no explanation as to what is excessive or how that number was determined, and no authority to support the statement. (Opp at 2:15.) Plaintiff therefore respectfully contends that this line should not be considered.

### VI. PLAINTIFF'S SHOULD BE COMPENSATED FOR ATTORNEYS' WORK ON THIS REPLY ANY OTHER RELATED POST-TRIAL WORK AND APPEAL

Plaintiff is entitled to fees for the time Plaintiff's counsel spends in establishing their right to attorneys' fees in the amount request. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986). Mr. Sincich, Mr. Packer, and Mr. Galipo have spent considerable additional time researching case law and drafting Plaintiff's Opposition to Defendants' Motion for New Trial (Doc. 175); Plaintiff's Opposition to Defendants' Motion to Amend the Judgment (Doc. 177); negotiating and reaching an agreement with regard to Plaintiff's Application to Tax Costs (Doc. 179); and in reply to this Motion. Additional fees are anticipated based on the hearing of these motions, and Defendants pending Appeal (Doc. 168). Thus, Plaintiff requests that within two weeks of the Court's hearing of the post-trial motions, Plaintiff will submit a supplement to the Motion for Attorney's Fees with the additional time litigating this case, other than the appeal. *See Donastorg*, 2021 WL 6103545, at *12 (awarding time spent on drafting the motion for attorneys' fees and reply). Then, within two weeks of the appeal being dismissed or finalized,

Plaintiff will submit an additional supplement with the hours litigating the appeal. *See French*, 2022 WL 2189649, at *1 (awarding time spent on appeal). Thus, Plaintiff requests that the Court award additional attorneys' fees related to this reply, for work related to and the hearing of any post-trial motions, and appeal.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Attorneys' Fees in its entirety.

Respectfully Submitted,

DATED:  August 11, 2026                **LAW OFFICES OF DALE K. GALIPO**
                                       **GRECH, PACKER, & HANKS**


                                       By: _____/s/_____ *Marcel F. Sincich*_____
                                       Dale K. Galipo
                                       Marcel F. Sincich
                                       Trent C. Packer
                                       *Attorneys for Plaintiff* George Gonzalez

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

**L.R. 11-6.2. Certificate of Compliance**

The undersigned, counsel of record for Plaintiff George Gonzalez, certifies that this brief contains 5,449 words (excluding the caption page, signature blocks, and certificate of compliance), which complies with the word limit of L.R. 11-6.1.

Respectfully Submitted,

DATED:  August 11, 2026

**LAW OFFICES OF DALE K. GALIPO**
**GRECH, PACKER, & HANKS**

By: ____/s/____ *Marcel F. Sincich*____
Dale K. Galipo
Marcel F. Sincich
Trent C. Packer
*Attorneys for Plaintiff* George Gonzalez

PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES